UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DAVID STEBBINS, PLAINTIFF

VS. <u>Case 23-15531</u>

KARL POLANO, et al DEFENDANTS

### REPLY IN SUPPORT OF MOTION FOR SUMMARY REVERSAL

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Reply to the Appellees' Opposition to Motion for Summary Reversal.

**The District Court Judge has indeed admitted to holding a grudge against me.**

1. First, the Appellees argue that the district court judge holding a grudge against me is "nonsense," and that the judge never admitted to holding a grudge against me. To support their argument, they *only* point to Dkt. 158 and not anywhere else on the record.

2. The District Court did not merely admit to this grudge in that one instance. He admitted to holding this grudge against me on, at a minimum, three separate occasions. The first was in Dkt. 134, when he first acknowledged the validity of the voluntary dismissal. There, he also admitted that he disapproved of the voluntary dismissal, was angry at me for filing it, and threatened to declare me a vexatious litigant if I did it again. See Dkt. 134, p. 1, lines 24-26.

3. The second time was, as the appellees concede, in Dkt. 158 when the District Court admitted that my alleged "bad faith" was a factor in granting the motion to intervene. The third time was when he was denying my motion for reconsideration (which was, in fact, a motion for leave to file a motion for reconsideration which the District Court improperly miscategorized as a motion for reconsideration), when he declined to recuse himself. See Dkt. 186, p. 8, lines 2-14.

4. In this paragraph, he fails to rebut (and therefore tacitly admits to it, pursuant to the common law maxime "qui tacet consentir videtur") the accusation that he holds a grudge against me and is seeking to punish me with dismissal as punishment for the dismissal. In fact, he even seems to double down when he reiterates that he is still angry at me for the voluntary dismissal, when he calls the dismissal "abusive behavior" (line 5).

5. If any one of these three declarations were taken in a vacuum, they might have raised

-1-

suspicion, but may have just barely avoided being recusal-worthy. See Liteky, supra at 555-56 ("Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display"). But after three instances, when the judge brings up his anger at me nearly every chance he gets, this is clearly a pattern, not a one-off occurrence.

6. It is telling that the appellees make no effort to argue against ¶¶38-41 of the Motion, and only nominally addresses ¶¶50-58 of same. When arguing that the district court's dismissal of the §512(f) claim was motivated by the grudge, my point wasn't that he admitted to using this grudge as a factor in his decision. My point was that his decision literally makes no sense *unless* the grudge was a factor.

7. For example, why would the judge change his mind about the sufficiency of my factual allegations, first finding that I had adequately alleged that Mateas didn't own the copyright to the picture he was claiming and that he had conspired to issue retaliatory takedowns against me in order to extrajudicially punish me for the takedowns I had issued against Polano, only to change his story at the last minute to say that I had inadequately alleged that Mateas knew or should have known that the takedown was false, for no apparent reason? Aside from the grudge, what could possibly have happened since then that would have changed his mind? Judge White certainly doesn't *tell us* about anything that has happened since then that would have caused this epiphany, meaning that he must know that his new consideration would be seen as inappropriate if he spoke of it out loud, and the grudge is by far the most likely cause.

8. My point with ¶¶50-58 of the motion – and with ¶55 in particular – was to demonstrate that the grudge is, either consciously or subconsciously, seeping into literally every decision that Judge White makes about my cases that are even nominally discretionary.

9. In many other areas of law where the accused's motive is a pertinent factor (such as employment discrimination or First Amendment retaliation claims under 42 USC §1983), when the accused provides a facially-valid reason for the adverse action, that proffered motive can typically be rebutted by showing that it is pretextual, e.g. that it makes no sense given the totality

of the circumstances and therefore is likely made up after the fact. But here, the district court doesn't even give *any* facially valid reasons for his sudden change of mind! No pretextual excuse is even offered!

<u>Reversal is still warranted, even if recusal is not required.</u>

10.   Let's not forget that the appellees do not challenge my assertion that the dispositive order was done, at least in part, to punish me for the voluntary dismissal. They don't even nominally acknowledge it, like they did with Footnote #4 of their Opposition. Therefore, my allegations are uncontested.

11.   Even if this Court does not agree that recusal is required, it must still overturn the judgment, since my constitutional rights under Bordenhicker v. Hayes were still violated. See Liteky, supra 555 ("Almost invariably, they are proper grounds for appeal, not for recusal"). Therefore, due to the appellees' failure to contest at least one point on appeal, I am still entitled to have the judgment overturned.

**Dismissal does not have to "close the file" to be absolute.**

12.   Next, the appellees argue that the right to voluntary dismissal only becomes absolute if it "closes the file" and "terminates the entire action." They seem to concede that, but for this limitation on the right, the District Court did indeed commit reversible error.

13.   This is a blatant misreading of the precedent and, in fact, relies on the very trick they accuse me of trying to pull: Leaving out pertinent language. At Commercial, supra at 1077, it states in pertinent part "The filing of notice itself closes the file… the court has no role to play… There is not even a perfunctory order of court closing the file. Its alpha and omega was the doing of the plaintiff alone… the filing of a notice of voluntary dismissal with the court automatically terminates the action as to the defendants who are the subjects of the notice." As you can clearly see from these excepts, when the precedent said "closes the file," it was not referring to the absoluteness of the Plaintiff's right, but to the effect that the filing of the notice had.

14.   Appellees' insistence that the dismissal is only absolute if it terminates the entire action and all defendants is further rebutted by the case of Pedrina v. Chun, 987 F. 2d 608 (9th Cir. 1993). In fact, a good chunk of the excerpts from Comm. Space Man. v. Boeing that I provided

were themselves quoted verbatim from this precedent!

15. In that case, the *central issue* on appeal was "whether Rule 41(a)(1) allows a plaintiff to dismiss without a court order fewer than all of the named defendants, or whether the Rule is limited to dismissals of the plaintiff's entire case." See id at 609. The 9th Circuit definitively resolved that question in favor of permitting partial dismissal. See id at 610: "Rule 41(a)(1) allows a plaintiff to dismiss without a court order any defendant… Rule 41(a)(1) is designed to permit a disengagement of the parties at the behest of the plaintiff… Permitting a plaintiff to dismiss fewer than all of the named defendants is consistent with this purpose." (citations and quotations omitted)

16. Later, the Padrina court affirmed that the voluntary dismissal is still absolute, even in when it terminated "fewer than all" defendants. See id at 610: "Plaintiffs content that… Rule 41(a)(1) granted them an ***absolute right*** to dismiss Hong without prejudice and without prior leave of court. ***We agree***. The language of Rule 41(a)(1) is unequivocal." (emphasis added). They then go onto repeat the same "absoluteness" that I described in ¶32 of the motion for summary reversal, including the parts where "[t]here is nothing the defendant can do to fan the ashes of that action into life," and that the dismissal "may not be extinguished or circumscribed by adversary or court." See id at 610. They said this despite the fact that *fewer than all defendants were dismissed*, which was the central issue on appeal!

17. Clearly, terminating "fewer than all" defendants does not affect the absoluteness of the dismissal, and therefore does not expand the grounds upon which it may be circumvented. The appellees appear to concede that, if the language I rely on to support my argument for absoluteness and impenetrability were indeed applicable, it would indeed be an absolute bar to them being allowed intervenor status. Rather, they insist that it isn't applicable because "the court's explanation of the 'absolute right' was expressly cabined[1] to cases where a plaintiff voluntarily dismisses and thus terminates the ***entire*** action." (emphasis in original). But the very precedent that *created this rule in the first place*[2] was centered around, and explicitly rejected,

---

1 I assume they mean "confined," since "cabined" makes no sense here.
2 At least in the 9th Circuit. The Pedrina court incorporated language from the 5th Circuit. But this is the first time the 9th Circuit used this language and therefore made it binding precedent in this Circuit.

that very distinction!

18. Therefore, the appellees are objectively wrong in their interpretation of the law. My right to voluntary dismissal, even against fewer than all defendants, is indeed absolute and cannot be circumscribed in any way, shape, or form. Since the appellees do not deny that, if the dismissal were absolute, then it was reversible error for the District Court to grant the motion to intervene, summary reversal is warranted.

### The District Court did indeed "invalidate" the registration.

19. Next, the appellees argue that the District Court did not "invalidate" the registration, but simply that they (the appellees) overcame the presumption of copyright validity.

20. This is a lie. The District Court did indeed attack the registration itself. First, the District Court clearly found that the registration had "inaccurate information" when it miscategorized the work as a dramatic work rather than an audiovisual work. That has nothing to do with the level of creativity in the work itself; it only makes sense if the Court was attacking the registration itself. Second, immediately prior to making this finding, the Court acknowledged the legal requirements that (A) the inaccuracy must have been made knowingly, and (B) the inaccuracy must have been fatal enough that the Copyright Office would have refused registration had it known the truth. In acknowledging these two requirements, the Court obviously referenced 17 USC §411(b), even if it didn't cite that statute directly. But that statute clearly governs the *registration* of the work, not the work itself. Put simply, the District Court's words in this section of his Order make no sense unless he is talking about the registration.

21. Then, in the related case, as I pointed out in ¶¶47-49 of the motion for summary reversal, the District Court made an extremely prejudicial and far-reaching ruling, where he relied on the fact that the *registration* in this case contained inaccurate information. He then proceeded to declare "once a liar, always a liar" and declared all of my copyright registrations invalid. Again, it was clearly the registration, not the work itself, that was the target of the District Court's attack.

22. Now, is it possible that the District Court might have found fault with *both* the registration *and* the work itself? When the appellees say they overcame the presumption of copyright validity with evidence, could they be sincere in that belief? Sure. The District Court

absolutely might have done both. But if that were the case, I am still entitled to summary reversal on this ground. It's not like the judge *didn't* declare the registration invalid, did he? And as I pointed out, his already unlawful and prejudicial ruling is having a domino effect in other cases, so summary reversal is not only proper, but necessary to protect me from further prejudice.

**The District Court very clearly did treat the leave motion as a reconsider motion.**

23. Next, the appellees argue that the District Court did not, in fact, treat my motion for leave as a motion for reconsideration, but simply denied the motion for leave.

24. This is blatantly and demonstrably false. Reviewing even the *first page* of the order clearly shows that the District Court treated the motion as a "motion for reconsideration." Here is a screenshot of the top half of the first page, with two sections highlighted where he clearly says "motion for reconsideration" instead of "motion for leave to file."



25. In addition to that, we must remember that, in the related case, the District Court granted in part my motion. However, instead of granting me leave to file the proper motion for reconsideration, he instead cut straight to allowing me to file a Second Amended Complaint. See

**Exhibit A** attached to this Reply.

26.     I am certainly grateful for being given that limited relief. The problem is that this relief should have been inappropriate at that stage, since I hadn't filed the motion for reconsideration yet. The judge granting even that much relief only makes sense if we accept that he is treating the motions in both cases as motions for reconsideration rather than motions for leave to file.

27.     The appellees do not argue that treating the motion this way is grounds for summary reversal. They only argue the purely factual assertion that this wasn't, in fact, what the District Court did. But since this is, very clearly, what the District Court did, I am entitled to summary reversal, and the appellees have not even attempted to argue otherwise.

## Conclusion

28.     In conclusion, none of the appellees' arguments for why this motion should be denied are valid. Even barring that, they do not contest two of the points I raised in my motion (the remaining Sec. 512(f) claim, and the fact that the judge sought to punish me for issuing the voluntary dismissal), and so my right to summary reversal on those grounds goes uncontested.

29.     Wherefore, premises considered, I respectfully pray that the Motion for Summary Reversal be granted.

So requested on this, the 24th day of April, 2023.

/s/ David Stebbins
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com