## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**David Stebbins**

Appellant(s),

vs.

**Karl Polano, et al**

Appellee(s).

9th Cir. Case No. **23-15531**

District Court or
BAP Case No. **4:21-cv-04184-JSW**

### APPELLANT'S INFORMAL OPENING BRIEF

*(attach additional sheets as necessary, up to a total of 50 pages including this form)*

**JURISDICTION.** This information helps the court determine if it can review your case.

1.  Timeliness of Appeal:

    a.  What is the date of the judgment or order that you want this court to review?**July 11, 2022**

    b.  Did you file any motion, other than for fees and costs, after the judgment was entered? Answer yes or no: **Yes**

        • If you did, on what date did you file the motion? **July 11, 2022**

        • For prisoners or detainees, what date did you give the motion to prison authorities for mailing? **n/a**

        • What date did the district court or bankruptcy appellate panel (BAP) decide the motion that you filed after judgment? **March 28, 2023**

    c.  What date did you file your notice of appeal? **April 3, 2023**

        • For prisoners or detainees, what date did you give your notice of appeal to prison authorities for mailing? **n/a**

9th Cir. Case No. __23-15531_____            Page 2

**FACTS.** Include all facts that the court needs to know to decide your case.

2.     What are the facts of your case?

**See the attached "Supplemental Statement of Facts," because I cannot possibly include everything on this one page.**

9th Cir. Case No. **23-15531**                                     Page 3

**PROCEEDINGS BEFORE THE DISTRICT COURT OR THE BAP.** In this section, we ask you about what happened before you filed your notice of appeal with this court.

3.    What did you ask the district court or the BAP to do—for example, did you ask the court to award money damages, issue an injunction, or provide some other type of relief?

**I asked for injunctive relief and damages.**

4.    What legal claim or claims did you raise in the district court or at the BAP?

**Intentional infliction of emotional distress, copyright infringement, and DMCA misrepresentation under 17 USC § 512(f).**

5.    **Exhaustion of Administrative Remedies.** For prisoners, did you use up all administrative remedies for each claim before you filed your complaint in the district court? If you did not, please tell us why.

**I'm not a prisoner, so this is not applicable.**

9th Cir. Case No. **23-15531**                                    Page 4

**PROCEEDINGS BEFORE THE COURT OF APPEALS.** In this section, we ask you about issues related to this case before the court of appeals and any previous cases you have had in this court.

6.    What issues are you asking the court to review in this case? What do you think the district court or the BAP did wrong?

First, the District Court erred in dismissing with prejudice my claim for intentional infliction of emotional distress. Second, the intervenors should not have been allowed to intervene. Third, the District Court abused its discretion when it considered my voluntary dismissal as a factor when granting the Motion to Intervene. Fourth, the District Court erred in finding that the April 10, 2021 livestream lacked minimal creativity. Fifth, the District Court properly found that I improperly categorized the livestream as a "dramatic work" when registering the copyright. Sixth, the District Court erred when it found that the livestream was not one of human authorship. Seventh, the District Court committed reversible error when it declined to give me any relief for the Sec. 512(f) claim. Eighth, leave to amend was improperly denied. Ninth, the District Court abused its discretion when it denied my Motion for Sanctions. Lastly, Judge Jeffrey White should have recused himself.

Please see, attached to this informal brief, my Supplemental Arguments, for more details.

7.    Did you present all issues listed in Question 6 to the district court or the BAP? Answer yes or no: **yes**

      If not, why not?

9th Cir. Case No. **23-15531**                                    Page 5

8. What law supports these issues on appeal? (You may refer to cases and statutes, but you are not required to do so.)

**Rules, Statues, & Treatises**
    **Fed.R.Evid. 602**
    **17 USC §107A**
    **17 USC §410**
    **17 USC §411**
    **17 USC §512**
    **28 USC §455**
    **28 USC § 1915**
    **"Toward a Fair Use Standard", 103 Harv. L. Rev. 1105 (1990)**

**Case Law**
    **Arizona v. Fulminante, 499 US 279, 308 (1991)**
    **Alfred Bell & Co. v. Catalda Fine Arts, 191 F. 2d 99 (2nd Cir. 1951)**
    **Bafford v. Northrop Grumman Corp., 994 F.3d 1020 (9th Cir. 2021)**
    **Bell Atlantic Corp. v. Twombly, 550 US 544 (2007)**
    **Bordenkircher v. Hayes, 434 US 357 (1978)**
    **Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074 (9th Cir. 1999)**
    **Does 1-6 v. Reddit, Inc., 51 F. 4th 1137 (9th Cir. 2022)**
    **Dukes v. Wal-Mart Stores, Inc., Case No. 01-cv-02252-CRB, 5    (N.D. Cal. Aug. 15, 2016)**
    **Feist Publications, Inc. v. Rural Telephone Service Co., 499 US 340 (1991)**
    **Fort Sill Apache Tribe of Okla. v. United States1, 2008 WL 2891654, at *1 (W.D. Okla. July 23, 2008)**
    **Foman v. Davis, 371 US 178 (1962)**
    **Garcia v. Google, Inc., 786 F. 3d 733 (9th Cir. 2015)**
    **Haines v. Kerner, 404 US 519 (1972)**
    **In re Michael, 326 US 224 (1945)**
    **In re Stoll, 252 BR 492 (9th Cir. 2000)**
    **Kern v. TXO Production Corp., 738 F. 2d 968 (8th Cir. 1984)**
    **Liljeberg v. Health Services Acquisition Corp., 486 US 847 (1988)**
    **Liteky v. USA, 510 US 540 (1994)**
    **Naruto v. Slater, 888 F. 3d 418 (9th Cir. 2018)**
    **Pedrina v. Chun, 987 F. 2d 608 (9th Cir. 1993)**
    **Purcell v. Gonzalez, 549 US 1 (2006)**
    **Unicolors v. H&M, 142 S. Ct. 941 (2022)**
    **US v. Burrell, 622 F. 3d 961 (2010)**
    **Willemijn Houdstermaatschappij v. Standard Micro., 103 F. 3d 9 (2nd Cir. 1997)**

9th Cir. Case No. **23-15531**                                    Page 6

9.   **Other Pending Cases.** Do you have any other cases pending in the court of appeals? If so, give the name and docket number of each case.

**No, I do not have any other pending cases in the Court of Appeals.**

10.  **Previous Cases.** Have you filed any previous cases that the court of appeals has decided? If so, give the name and docket number of each case.

**None that are relevant to this case.**

**David Stebbins**
Name
**123 W. Ridge Ave.,**
**APT D**

**Harrison, AR 72601**
Address

Signature

**06/02/2023**
Date

# <u>SUPPLEMENTARY STATEMENT OF FACTS</u>

1.      I am a YouTuber and Twitch streamer who goes by the alias "Acerthorn." In late February 2021, I began to be harassed and stalked by a person who goes by the alias "InitiativeKookie," who I later discovered was either Frederick Allison of the state of Georgia, or his teenage son Jonathan Allison. He would relentlessly harass me on every social media platform where I had an account, and would upload illegally-acquired clips of my videos and streams, often without any commentary or criticism whatsoever, or with only bare minimum alterations. When I blocked him from contacting me, he would simply create a new account and recommence his harassment and doxxing. He eventually recruited the likes of Karl Polano of Switzerland and Raul Mateas of the United Kingdom to join in the harassment, doxxing, and copyright infringement. Together, these three people make up the "individual defendants" in this case.

2.      On April 10, 2021, I accidentally turned my streaming software on without realizing it. For nearly two hours, I inadvertently streamed my daily life to my audience. Clips of this accidental stream began being posted by the individual defendants, so I, of course, issued DMCA takedowns against them.

3.      When I issued a DMCA Takedown against Karl Polano, he issued a DMCA Counter-Notification, forcing me to file this lawsuit on June 2, 2021. I also included Alphabet, Inc., Discord, Inc., and Amazon.com, Inc. (the parent companies of the websites where these copyright infringements occurred – Youtube, Discord, and Twitch, respectively) as nominal defendants so they could be ordered to terminate the individual defendants' accounts pursuant to 17 USC § 512(j).

4.      I applied for leave to proceed in forma pauperis. Pursuant to 28 USC § 1915, the District Court reviewed the complaint sua sponte for sufficiency of claim. Both Magistrate Judge Jaqueline Corley and District Judge Jeffrey White certified that I had alleged sufficient facts to establish that I owned a copyright as the "original and sole author." See Dkt. 10, p. 4, lines 22-23. See also Dkt. 21, p. 3, lines 10-11 (adopting Magistrate Judge Corley's findings on this issue). The both made these findings, despite me clearly stating that the stream happened by accident, so clearly, they did not see "accidental creation" as a barrier to copyright ownership.

# <u>SUPPLEMENTARY STATEMENT OF FACTS</u>

5.    Because two of the individual defendants were in other countries, I had to conduct service of process on them pursuant to the Hague Convention, which was a long and tedious process. For this reason, despite the fact that the lawsuit was originally filed with the Court on June 2, 2021, it was not until March 15, 2022 that the last of the defendants was served with process. The individual defendants were all entered in default for failure to appear, with the latest occurring on April 6, 2022. See Dkt. 91, 123, & 125.

6.    Because the corporations were only included as nominal defendants, I made the tactical choice to voluntarily dismiss them as parties to the action. So on April 11, 2022, I issued a Notice of Voluntary Dismissal pursuant to my right under Fed.R.Civ.P. 41(a)(1). Judge White was greatly angered by this filing, called it "blatant gamesmanship," and threatened to declare me a vexatious litigant if I did it again. See Dkt. 134, p. 1, lines 24-26.

7.    On April 20, 2022, Alphabet, Inc., alongside its subsidiary company YouTube LLC, once again re-filed its motion to dismiss, but styled it as a "motion to intervene." See Dkt. 138. See In this motion, they openly admitted that they were filing this in an attempt to circumvent the voluntary dismissal. See p. 6, lines 21-22.

8.    In this motion, they sought dismissal on the pleadings, for failure to state a claim, on the grounds that …

   (a)    Because the stream happened by accident, it was devoid of creativity. Apparently, they believe that creativity can *only* come from intent.

   (b)    Because I used the phrase "of its own accord" in the Complaint, that necessarily means that the stream happened as a result of autonomous processes, and therefore was not a product of "human authorship," and therefore was not copyrightable.

9.    I filed an Opposition to this motion, arguing, among other things, that …

   (a)    The motion to intervene sits in violation of the voluntary dismissal, and

# <u>SUPPLEMENTARY STATEMENT OF FACTS</u>

since the voluntary dismissal is absolute and cannot be circumvented in any way, shape, or form, the motion to intervene must be denied just on that alone.

(b)     Copyrightable expression can absolutely be created by accident and still be eligible for a copyright, just as patentable inventions can be invented by accident and still be eligible for a patent. I even cited the case of Alfred Bell & Co. v. Catalda Fine Arts, 191 F. 2d 99 (2nd Cir. 1951) in support of the assertion that accidental works can be copyrighted.

(c)     When I said, in the Complaint, that the streaming software turned on "of its own accord," that was a figure of speech, not literal. In fact, if you look at the full context of the paragraph where the phrase "of its own accord" is found, it is clear that I don't know for sure exactly how the software turned on, meaning that my attempts to guess as to the cause are just that: A guess, not based on personal knowledge!

10.     The intervenors filed a reply brief, arguing that …

(a)     The case of Alfred v. Catalda only permits copyright for accidental works in the ultra-specific situation where the accident is caused by "a defect in eyesight or musculature," or "a surprise caused by a clap of thunder."

(b)     They insisted, without offering any proof, that my use of the phrase "of its own accord" was literal rather than figurative, simply because they say so.

(c)     They stated, for the first time, that the registration had

11.     On July 11, 2022, the District Court entered an order dismissing the case with prejudice, finding the following:

(a)     He was granting the intervenors' motion to intervene, in part, to punish me for issuing the voluntary dismissal he did not approve of.

(b)     I didn't show any case law stating that motions to intervene, specifically, could not be used to circumvent a voluntary dismissal, even though I had

# <u>SUPPLEMENTARY STATEMENT OF FACTS</u>

provided case law that already said that voluntary dismissals are absolute.

(c)     The copyright registration was invalid *just* because it has inaccurate information. Even though he admitted that the law also required he make the findings that (1) I provided this inaccurate information knowing that it was inaccurate, and (2) if I had told the truth, the Copyright Office would have refused registration, he failed to make either finding.

   i.     In a related case, he used the fact that this registration had inaccurate information in order to invalidate every other registration I had with the Copyright Office.

(d)     The April 10, 2021 livestream lacked minimal creativity, even though it had multiple instances of copyrightable expression, *solely* because the recording happened by accident.

(e)     To be copyrightable, I have to be in the process of creating an intentional work.

(f)     Rather than interpreting the factual allegations in a light most favorable to the plaintiff, he was instead going to simply pick which interpretation of "of its own accord" he wanted to use, decided that it was a literal interpretation, and then proceeded to declare the stream as lacking human authorship.

12.     I immediately filed a motion for leave to file a motion for reconsideration, arguing …

(a)     The judge has admitted to holding a grudge against me because of the voluntary dismissal, and has admitted to using that grudge as a factor against me. Therefore, recusal was required since the judge, by his own admission, was no longer impartial.

(b)     The voluntary dismissal was already absolute, so no exceptions (such as motions to intervene) were even necessary.

# SUPPLEMENTARY STATEMENT OF FACTS

(c)     The judge never made the finding that the inaccuracy in the registration was made knowingly, nor that the Copyright Office would have denied registration had I properly categorized it as an audiovisual work.

(d)     If given leave to file the motion for reconsideration itself, I could easily prove that I was, almost certainly, in the process of creating an intentional work, and that the accidental livestream was simply an accidental byproduct of that work.

(e)     The words "of its own accord" were not admissible because they were not based on personal knowledge. Therefore, there was no admissible evidence that the stream lacked human authorship. In fact, if given leave to file the motion for reconsideration, I can show proof that the stream software was most likely turned on by an errant keystroke, not purely autonomous means.

13.     On January 12, 2023, I filed another lawsuit in the Northern District of California, this time against Google LLC, because they refused to take down another infringement of my copyright. Despite this being a completely new case of infringement, Alphabet and YouTube, as intervenor defendants, nonetheless filed a motion in this case (Dkt. 174), seeking to have that case be declared "related" to this one, and thus overseen by the same judge (Jeffrey White). They were unable to articulate a single way in which that case involved similar issues, parties, or facts to this one. Rather, their *entire* case for having the two lawsuits be declared related boiled down to them considering the other lawsuit to be frivolous. Even if that were sufficient as a matter of law to have the two cases be considered related (which it is not), the intervenors still provided absolutely no justification whatsoever for having the other lawsuit be considered frivolous. Literally, their entire case for having the other lawsuit be declared frivolous was … because they said so. They literally didn't even *try* to argue anything beyond that.

14.     So, on February 7, 2023, I moved for the intervenors to be sanctioned, pointing out that their motion was based entirely on the logical fallacies of invincible ignorance, appeal to the stone, and ad hominem attacks, which are bad faith and frivolous per se.

# SUPPLEMENTARY STATEMENT OF FACTS

15.    On March 28, 2023, the District Court issued an order (Dkt. 186), not denying the motion for leave, but instead denying a motion for reconsideration that I had not yet filed. He also proceeded to refuse to reconsider any of his previous positions, and refused to recuse himself. Immediately thereafter, he also entered a 1-page order (Dkt. 187) denying the motion for sanctions, but giving absolutely no reasons whatsoever for the denial.

16.    This timely appeal ensued.

# <u>SUPPLEMENTAL ARGUMENT</u>

### Judge White should be made to recuse himself.

1.     Recusal is mandatory whenever a judge's impartiality might reasonably be questioned. See 28 USC §455(a). Recusal under this section does not require a showing of *actual* judicial partiality, only the *reasonable appearance* of judicial partiality. See Liljeberg v. Health Services Acquisition Corp., 486 US 847 (1988). Moreover, the right to an impartial judge is so fundamental that it can "never be treated as harmless error." Arizona v. Fulminante, 499 US 279, 308 (1991) (citing Tumey v. Ohio, 273 U.S. 510 (1927)).

2.     Here, actual judicial bias (not merely the appearance thereof) is proven by the District Court's own admission. In denying the motion to recuse, the District Court admitted to holding a grudge against me as I feared; he simply felt that he was legally exempt from recusal because of the *source* of the grudge. He cites Toth v. Trans World Airlines in support of his conclusion of law.

3.     However, that precedent is not absolute, as the District Court appears to believe. It was partly superseded by the Supreme Court in the case of Liteky v. USA, 510 US 540 (1994), which states in pertinent part that "opinions formed by the judge on the basis of … events occurring in the course of the current proceedings" do indeed constitute grounds for recusal when "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." See id at 555. Such a showing *necessarily* constitutes grounds for recusal, as evidenced by the word "will" in italics immediately prior to that excerpt, juxtaposed with the word "may" (also in italics) earlier in that same sentence.

4.     Here, the level of antagonism required by Liteky is proven by the District Court's own admission. He does not deny holding a grudge against me, nor does he deny that this grudge would be grounds for recusal, were it not for this alleged exception to bias which stems from on-record sources.

5.     Moreover, he admits on-record that he used this grudge against me as a factor in deciding the motion to intervene, and will likely continue to use it as a factor in all future rulings if he is allowed to remain as my judge. This is not

# SUPPLEMENTAL ARGUMENT

speculative; this is a tangible, proven effect that his bias against me has had that has directly affected my legal rights.

6.     All of this is proven *by the judge's own admission*!

7.     For this reason, this Court should (A) reverse the judgment in the District Court, (B) order Judge White to recuse himself from both this case and the case of Stebbins v. Rebolo, (C) vacate all orders of the district court in both cases that occur on or after April 11, 2022, and (D) order the new district judge to issue new rulings for all of the motions whose orders were vacated. Anything short of this is a violation of my absolute constitutional right to an impartial judge.

### Leave Motion vs. Reconsider Motion

8.     After this, the District Court abused its discretion when it proceeded to treat my Motion *for leave to file* a motion for reconsideration as the motion for reconsideration itself. The district court's local rules explicitly require movants to file a motion for leave to file *before* filing the motion for reconsideration itself. See NDCA L.R. 7-9(a) ("No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion").

9.     On multiple occasions throughout the case, I repeatedly made it clear, in no uncertain terms, that this motion was not a reconsider motion, but merely a leave motion. See, for example, …

   (a)     The leave motion itself (Dkt. 159), where I repeatedly made such statements as…

      i.      ¶2 ("leave to file a motion to reconsider should be granted so I can provide this legal authority which the Court says I lack.")

      ii.     ¶6 ("If given leave to file the motion to reconsider, I can show ample argument-")

   (b)     Dkt. 167 (Reply to Opposition to Motion to Vacate Judgment), where I

# <u>SUPPLEMENTAL ARGUMENT</u>

make such statements as...

    i.       ¶2 ("I would like to emphasize that the Motion for Leave to File a Motion for Reconsideration... was not meant to be dispositive on its own. As per the local rules, I cannot simply file the motion for reconsideration without first seeking leave of Court. If leave is granted, then and only then will I file the motion for reconsideration which will contain the actual arguments, facts, and evidence")

    ii.      ¶4 ("But I need leave from the Court to file the motion to reconsider before I can do that")

    iii.     ¶6 ("I will provide more if the motion for leave to file a motion for reconsideration is granted")

(c)    Dkt. 172-1, ¶13 ("Because I was only supposed to file a motion *for leave to file a motion* for reconsideration, my arguments contained in the motion were admittedly underdeveloped. This was not meant to be the main motion for reconsideration, so I saved my best arguments for the motion proper")

10.    Despite these numerous, unambiguous notifications, the District Court nonetheless proceeded to treat the leave motion as a reconsider motion. See …



# <u>SUPPLEMENTAL ARGUMENT</u>

11.    It then proceeded to deny the motion based on the fact that the motion does not contain fleshed out arguments or legal citations *that weren't supposed to be there*! This is a manifest abuse of judicial power and it deserves reversal.

12.    At this point, I'm in an impossible situation. If I follow the local rules, the Court can simply treat my leave motion like a reconsider motion and deny it on the basis of how undeveloped my arguments are. But if I file it like a reconsider motion and properly develop my arguments, the District Court can deny the motion on the grounds that it was a reconsider motion improperly styled as a leave motion, and was filed without leave of court as required by Local Rule 7-9(a). At this point, the District Court is *literally* making up the rules as it goes along!

13.    If the District Court wishes to abolish the leave requirement and allow motions for reconsideration to be filed without leave of court, it is absolutely within its power to do so. But it must actually amend its local rules in order to do so. Whatever it chooses, this Court should command the District Court to pick a policy and *stick with it*.

14.    As for the current case, however, reversal is warranted because the District Court flagrantly abused its power and restyled the motion to one it knew full well wasn't actually before it, just so it could have an easier time justifying denying it.

### Absoluteness of Voluntary Dismissal

15.    Barring that, the District Court still violated a bright line rule when it granted the motion to intervene. The reason this motion to intervene should not have been granted is because it effectively nullified the voluntary dismissal.

16.    By the District Court's and Intervenor Defendants' own admission, nullifying the voluntary dismissal was, in fact, the whole point of seeking intervenor standing in the first place. By the Intervenors' own admission, this motion was designed to "deal with" the voluntary dismissal by giving the court "another way" to allow them to stay in the case despite being dismissed. See **Dkt. 138**, p.6, lines 21-22. The Court also openly admitted that it was granting this motion, at least in part, in

# SUPPLEMENTAL ARGUMENT

order to nullify the voluntary dismissal which it disapproved of. See above.

17.     However, they cannot do this. The right to a voluntary dismissal is absolute and impenetrable. See Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074, 1077-80 (9th Cir. 1999):

> "a court has no discretion to exercise once a Rule 41(a)(1) dismissal is filed. It is well settled that under Rule 41(a)(1)(i), a plaintiff has an absolute right to voluntarily dismiss his action… There is nothing the defendant can do to fan the ashes of that action into life… and may not be extinguished or circumscribed by adversary or court… the defendant can't complain, and the district court lacks jurisdiction to do anything about it… the whole point of a Rule 41(a)(1) dismissal is to give the plaintiff an 'absolute' way out."

18.     The law makes itself perfectly clear on this. Now that these defendants have been dismissed from the case, they cannot reignite their interest in litigating the case for any reason whatsoever. As a result, the District Court should not have granted the defendants' motion to intervene, as that effectively gave the defendants a back door to allow them to fan the ashes of the action back into life, and to circumscribe (however indirectly) the dismissal by adversary or by court. Such a result is explicitly not allowed under the binding precedent. They were dismissed. The dismissal is absolute. There is nothing they can do about it, directly or indirectly. It's over. They're gone. Period.

19.     When granting the Motion to Intervene, the judge's logic for how it had the power to supersede the voluntary dismissal that *literally cannot be superseded* was merely that "Plaintiff cites no authority for the proposition that Rule 41(a) dismissal prevents permissive intervention Rule 24(b) under these circumstances."

20.     But the judge is wrong. I did indeed cite an authority to that effect. Specifically, I cited Comm. Space Man. v. Boeing, which unequivocally and unambiguously held that the effect of a voluntary dismissal is ***absolute***! This means that it necessarily encompasses everything under the sun, literally the entire

# SUPPLEMENTAL ARGUMENT

universe of attorney creativity, from zero to infinity on the X, Y, and Z axes. What's next? If I ask an astronomer to give me the total mass in the entire universe, should I be expected to spell out for him that Jupiter, specifically, is meant to be included in that calculation?! If anything, there should be a positive law stating that a motion to intervene *can* be used to circumvent this otherwise impenetrable right, not a citation stating that it *can't* be used to do that!

21.     But even barring that, there are indeed case laws out there that affirmatively state that a motion to intervene cannot be used to get around a voluntary dismissal under Rule 41(a)(1). See Dukes v. Wal-Mart Stores, Inc., Case No. 01-cv-02252-CRB, 5 (N.D. Cal. Aug. 15, 2016)[1] ("[T]he Court lacks jurisdiction to adjudicate the Proposed Intervenors' Motion to Intervene") and Fort Sill Apache Tribe of Okla. v. United States[2], 2008 WL 2891654, at *1 (W.D. Okla. July 23, 2008) ("The fact that a motion to intervene is pending at the time the notice is filed does not affect the automatic dismissal provided for by Rule 41(a)(1)(A)(i) and (B)… a motion to intervene should not affect the plaintiff's right to dismiss as of right") just to name a few.

22.     Contrary to the respondents' assertions in their Opposition to Motion for Summary Reversal, the voluntary dismissal is indeed still absolute, even when it dismisses fewer than all defendants. See Pedrina v. Chun, 987 F. 2d 608 (9th Cir. 1993). In that case, the central issue on appeal was "whether Rule 41(a)(1) allows a plaintiff to dismiss without a court order fewer than all of the named defendants, or whether the Rule is limited to dismissals of the plaintiff's entire case." See id at 609. The 9th Circuit definitively resolved that question in favor of permitting partial dismissal. See id at 610: "Rule 41(a)(1) allows a plaintiff to dismiss without a court order any defendant… Rule 41(a)(1) is designed to permit a disengagement of the parties at the behest of the plaintiff… Permitting a plaintiff to dismiss fewer than all of the named defendants is consistent with this purpose." (citations and quotations omitted).

---

1   The unpublished opinion can be found at https://scholar.google.com/scholar_case?case=1581261639147081396.

2   The unpublished opinion can be found at https://scholar.google.com/scholar_case?case=7366738215539446155.

# SUPPLEMENTAL ARGUMENT

23.     The Pedrina court later went on to use the very language I offer to prove that the voluntary dismissal is absolute, and that _**literally any attempts**_ to circumvent it are necessarily frivolous, including "There is nothing the defendant can do to fan the ashes of that action into life" and that the dismissal "may not be extinguished or circumscribed by adversary or court." See id at 610. In their Opposition to Motion for Summary Reversal, the intervenors appear to concede that, if this language were applicable, it would indeed be an absolute bar to them being allowed intervenor status; they simply insist that it isn't applicable because the language only applies to voluntary dismissals which "terminate the entire action." However, the fact that this language actually originates from the Pedrina case – a case where the entire appeal centered around precisely this distinction – means that it necessarily is applicable in the case of partial dismissals as well.

24.     Therefore, because the District Court violated a bright line rule by circumventing the voluntary dismissal and refusing to give it the effect to which I was absolutely entitled, reversal is warranted.

**Dismissal a Factor in Intervene Motion**

25.     To the extent that the right to a voluntary dismissal is not absolute, it was still an abuse of discretion for the Court to consider the dismissal as a factor in granting the motion to intervene.

26.     One way in which an appellant can show an abuse of discretion is by showing that the District Court substantially considered a factor that it should not have considered. See Kern v. TXO Production Corp., 738 F. 2d 968, 970 (8th Cir. 1984) ("An abuse of discretion ... can occur ... when an irrelevant or improper factor is considered and given significant weight"). Here, the judge considered the fact that he did not approve of my voluntary dismissal as a factor when granting the motion to intervene, and he admitted on the record to considering this factor. In making this consideration, the Court made no secret that it sought to discourage future filings of voluntary dismissals it didn't personally approve of. By having this voluntary dismissal, and his disapproval of same, be a factor weighing in favor of granting leave to intervene, the Court was effectively punishing me (however

# SUPPLEMENTAL ARGUMENT

slightly or indirectly) for having issued the dismissal.

27.     This is an egregious violation of my constitutional rights. See Bordenkircher v. Hayes, 434 US 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional." (citations and quotations omitted).

28.     It is telling that, in their Opposition to Motion for Summary Reversal, the intervenors made no attempt to argue against this point. They paid lip service to my argument regarding the remaining claim for §512(f) misrepresentation while failing to argue against it, but that's probably because they don't really care about that remaining claim. But here, they have no reason to simply "not care" about this point on appeal, and yet they completely failed to argue against it. They didn't even so much as pay lip service. There is a good reason for that: They cannot justify this language, no matter how hard they try, and they know it.

29.     For this reason, this Court should reverse the District Court's decision for abuse of discretion, and remand to the District Court with instructions not to consider the voluntary dismissal in any future orders.

## Invalidation of Registration

30.     When discussing the merits of the case, the District Court committed yet another error so egregious that it justifies summary reversal. When it declared the copyright registration invalid, the District Court articulated the correct legal standard under 17 USC §411(b), but then utterly failed to make the findings that it knew were required by law.

31.     The District Court declared the registration invalid, and therefore declared that there was no presumption of copyright validity, simply because the registration contained "inaccurate information."Specifically, he is referring to the fact that my copyright registration erroneously listed the livestream as a "dramatic work" when

# <u>SUPPLEMENTAL ARGUMENT</u>

it should have been properly listed as an "audiovisual work." Just on this one error alone, the District Court declared the entire registration invalid.

32. The plain text of the statute clearly states that a registration cannot be declared invalid just on this alone. See 17 USC §411(b)(1) ("A certificate of registration satisfies the requirements … ___*regardless of whether the certificate contains any inaccurate information*___, unless (A) the inaccurate information was included on the application … with knowledge that it was inaccurate; and (B) the inaccuracy … if known, would have caused the Register of Copyrights to refuse registration") (emphasis added). Even errors of law, not just fact, are forgiven under this statute as long as the mistake was made in good faith. See Unicolors v. H&M, 142 S. Ct. 941 (2022).

33. The District Court knew about these two additional requirements. It even listed them at Dkt. 158, p.7, lines 1-2. But then, it utterly failed to make findings pursuant to these two legal requirements. It never made any finding that *I knew*, at the time that I applied for registration, that the livestream was properly categorized as an audiovisual rather than dramatic work, nor did it make the finding that, had I categorized it as an audiovisual, the Copyright Office would have denied registration. In fact, the court actively ignored evidence I provided which showed that the Office actually knew about this error and granted registration anyway!

34. This is more than just declaring the livestream to not be copyrightable in this one case. In the related case of Stebbins v. Rebolo, the District Court used this already-erroneous decision to declare ___*all*___ of my copyrights invalid, even those where I obtained valid registrations, and depriving me of the presumption of copyright validity to which I am entitled under 17 USC §410(c). See Case 4:22-cv-00546-JSW, Dkt. 20, p. 4, lines 2-4 ("The Court finds that Plaintiff's proven lack of candor in his prior application overcomes the presumption of validity afforded by registration of the other livestream videos"). This is not happening in a bubble; it is an abuse of discretion that is directly informing other erroneous judgments that is further prejudicing me later down the line. All because of that voluntary dismissal he didn't like.

# SUPPLEMENTAL ARGUMENT

35.     Therefore, this absolutely needs to be stamped out quickly, before the District Court has the chance to use it to inflict any more harm onto me. Reversal is justified here.

### The remaining §512(f) claim.

36.     Although the District Court found the copyright infringement claims to be without merit for reasons I will discuss in the Appellant Brief should this motion for summary reversal be denied, he also failed to adjudicate the remaining §512(f) claim. This alone renders the entire judgment a violation of my constitutional rights. See Stebbins v. Stebbins, 2017 Ark. App. 428 (2017) ("[I]t is not enough to dismiss some of the parties or to dispose of some of the claims; to be final and appealable, an order must cover *all of the parties and all of the claims*") (emphasis in original).

37.     When denying the motion for leave to file motion for reconsideration (which the Court erroneously construed as a motion for reconsideration), the District Court gave summary disposition of the remaining claim, but his findings of fact and conclusions of law were sloppy to say the least. It reeks of a desire to keep the case closed because he already has his mind made up that he personally does not like me, and then retroactively came up with reasons to justify that.

38.     First, he makes the conclusory allegation that the allegations are insufficient and not well-plead. He makes no effort to explain exactly why he feels this way, and more importantly, this directly contradicts his own ruling from earlier in the case, when he conducted a §1915 review of the First Amended Complaint and found the complete opposite, that I had indeed sufficiently stated a claim under §512(f). See **Dkt. 21**, pp. 3-4.

39.     For example, the Court found that I had failed to "allege facts which identify how or why Mateas knew or should have known that the material was non-infringing." See Dkt. 186, p.6. But in Dkt. 21, the Court conceded that I had plead that Mateas "does not own the copyright to the picture" and that "members of a certain Discord server, which ... includes [Mateas], intended to make 'false

# <u>SUPPLEMENTAL ARGUMENT</u>

copyright strikes in retaliation' for Plaintiff's takedown notice against Polano." See Dkt. 21, p.3. How do either one of those allegations fail to identify this?

40.     As such, it's not enough that the Court justify dismissing my case with prejudice based on insufficient pleading. The Court should also be required to justify why it _changed its story_ and issued a ruling contrary to what it previously found for no apparent reason.

41.     Of course, I know the reason. It's because, in between these two orders, I made a voluntary dismissal that the judge didn't approve of.

42.     Second, the Court made the outlandish claim that I was seeking $1,800,000 _just_ from the misrepresentation claim, instead of the copyright infringement claims. See Dkt. 186, p.6. This finding is patently absurd and this Court should admonish the District Court for making it.

43.     Third, the District Court committed an egregious abuse of discretion when it refused to give me the chance to file a new motion for default judgment, correcting any deficiencies that could potentially be corrected by re-filing. Instead, the Court dismissed the case _with prejudice_ without any indication that any errors (most of which it created from whole cloth) could not be corrected on a re-filing.

44.     This is an egregious violation of my due process rights and it deserves to be stamped out with extreme prejudice.

### The District Court dismissed my IIED claim.

45.     In Dkt. 21, the District Court dismissed with prejudice my claim for intentional infliction of emotional distress (IIED for short), finding that "mere insults" did not amount to the legally required level of behavior. The Court correctly found that, to state a claim for IIED, the conduct must be extreme or outrageous, but the harassment I documented (including infecting me with a computer virus) absolutely did clear that bar. This is a dismissal for failure to state a claim, and therefore is reviewable de novo. See Bafford v. Northrop Grumman

# SUPPLEMENTAL ARGUMENT

Corp., 994 F.3d 1020, 1025 (9th Cir. 2021).

46.     First, I alleged that the individual defendants had repeatedly created new accounts in order to evade the blocks and bans that I had issued against their previous accounts. See Dkt. 11 at ¶¶ 16-21, and ¶¶ 26-41. This counts as outrageous conduct because I have an absolute and non-reviewable right to block people from contacting me except for legal process. To try and force me to sit and listen to their insults constitutes a "captive audience," which is a clearly-established exception to the First Amendment.

47.     Barring that, the harassing messages I have received were indeed nothing short of outrageous. No reasonable person should be expected to have to endure the onslaught of abuse that I have endured. The District Court was in error when it found that the defendants' actions were not extreme or outrageous.

48.     But even barring all of that, the case should only have been dismissed without prejudice. The harassment has not stopped, and the level of harassment I have endured since then has certainly escelated to a point where it could become actionable, assuming it wasn't already. See Case 4:22-cv-00546-JSW (Stebbins v. Rebolo), Dkt. 32, ¶ 53-139 for details. But since the IIED claim was dismissed *with prejudice*, I can no longer re-file the claim. I can only attempt to incorporate the harassment into copyright infringement claims.

49.     As for the lack of damages, there are two problems with the District Court's finding. First, I did indeed allege a level of emotional distress that no reasonable person should be expected to endure. Second, the case should only have been dismissed without prejudice. Since the dismissal of the IIED claim, I have indeed suffered greater injuries. Specifically, I was diagnosed with a life-threatening case of pneumonia, requiring surgery and 8 days of hospitalization. See Case 4:23-cv-00321-DMR (Stebbins v. Doe), Dkt. 1, ¶¶ 132-141 for details. This absolutely would be sufficient actionable damages for an IIED claim, except the claim was dismissed with prejudice.

50.     For these reasons, this Court should reverse the District Court's dismissal of

# SUPPLEMENTAL ARGUMENT

the IIED claim, or at the very least, modify the dismissal to be without prejudice.

## The April 10, 2021 stream lacks minimal creativity

51.     Next (and most importantly of all), the District Court found that the April 10, 2021 livestream lacked minimal creativity and was not the result of human authorship, and therefore was not eligible for copyright protection. His grounds for finding that the livestream lacked minimal creativity was solely based on the fact that the stream happened by accident. From this, the District Court made two findings: (1) that the expression contained in the livestream was not a "creative choice" by me, and therefore did not count as a matter of law, and (2) I had no intention of making anything creative whenever the streaming software was turned on. Both findings are not only, factually speaking, huge leaps in logic that are not supported by anything on the record, but are also legally immaterial, even if they were proven to be true.

52.     It is important to note that the District Court did not make the finding that the stream lacked copyrightable expression in the first instance. He admits that there was indeed creative expression in the video, just that it didn't count as a matter of law because I didn't *intend* to make the stream. See Dkt. 158, p. 6, lines 3-4 ("Because Plaintiff did not know he was being recorded, his facial expressions were not creative choices"). This means that, as a matter of fact, the District Court acknowledges that the stream does indeed have the sort of creativity that, in any other circumstance, would be eligible for copyright protection. It is purely a question of law, not fact, that needs to be appealed.

Non-sequitur argument: What exactly was accidental? The creative expression, or the fixation?

53.     Before we discuss whether the law permits accidental works to be copyrighted, we must first ask ourselves … what exactly was accidental about this stream? Was the creative expression accidental, or was it merely an accident that these acts of expression were fixed into a tangible medium of expression?

# <u>SUPPLEMENTAL ARGUMENT</u>

54.    It was obviously the latter. I didn't "accidentally" make a bunch of funny faces when I reacted to watching various YouTube videos. I made those faces on purpose. I merely did not realize that other people would be able to see them.

55.    This is an important distinction to make because it means that the intervenor defendants and the district court argued a non-sequitur when they made the determination that the stream lacked minimal creativity.

56.    Creativity and fixation are two entirely different requirements for copyright protection, and both can be met independently of one another. For example, dancing and playing a musical instrument are both inherently creative, but unless I record myself doing either of them, it is not fixed into a tangible medium of expression, and so is not copyrightable. Meanwhile, the white pages of a phone book are inherently fixed into a tangible medium of expression, but because the white pages contain absolutely no creativity whatsoever, the white pages are not copyrightable. See Feist Publications, Inc. v. Rural Telephone Service Co., 499 US 340 (1991).

57.    This is an important distinction to make because, once we realize that it was the fixation, not the creativity, that was accidental, it quickly becomes apparent that the mere fact that it was accidental does not, and cannot, detract from its creativity in any way, shape, or form.

58.    Think about it this way: Imagine if there was a group outing between friends. One of the friends began telling a joke to everyone in the group. Such a joke would, obviously, have plenty of creativity and expression in it. However, unbeknownst to everyone in the group, one of the friends had accidentally began recording with his smartphone. Although the visuals were atrocious (since the friend was not holding the phone in the way one holds a phone when one wishes to record something), the audio (which is not dependent on which direction the camera is facing or any glare from the sun) comes in loud and clear, and so the friend's joke, and the group's laughter in response to it, is inadvertently fixed into a tangible medium of expression.

# SUPPLEMENTAL ARGUMENT

59.     Should a copyright infringement lawsuit arise in regards to that accidentally-recorded joke, should the defendant be allowed to prevail on the grounds that the recording lacked minimal creativity? Absolutely not. The joke was absolutely creative. The only thing that was accidental was the fixation, not the creativity.

60.     Returning to the instant case, both the District Court and the intervenor defendants erred when they declared that the stream lacked minimal creativity by reason of it being accidental. This was erroneous for a multitude of reasons, but the first and most fundamental reason is because it is a non-sequitur. Creativity simply is not a factor in regards to the part of the copyright that was accidental. The fixation was accidental, not the expressiveness, and fixation does not have a "creativity" or "originality" requirement to it. Therefore, the District Court committed reversible error, just on this reason alone.

### "Intent" Requirement; Creative Choices vs. Creativity

61.     Barring that, the District Court found that the livestream lacked the legally-required creativity because, since I did not intend to make the stream, the expressions and creativity contained in it "were not creative choices." Bear in mind that even the intervenor defendants admit that the facial expressions made during the video were indeed sufficiently expressive to constitute minimal creativity in any other circumstance. See See Dkt. 151, p. 12, lines 8-10 ("He posits that 'if I were taking a selfie, any one of those faces would be singularly sufficient individual creative expression to be entitled to copyright protection.' ***That may be true***") (citations omitted and emphasis added). Instead, the District Court found that the lack of creative *choices* was a bar to copyright as a matter of law. See Dkt. 158, p. 6, lines 3-4. Because this is a conclusion of law, it is reviewable de novo.

62.     The problem with the defendants' and district court's logic is that *choices are not legally required*. Nowhere in the copyright statute, or in any case law surrounding copyright law, does it state, or even hint, that creative *choices* are required for copyright protection. The only thing that is legally required is a minimum amount of *creativity*.

# SUPPLEMENTAL ARGUMENT

63.     At this point, the District Court's arguments amount to circular logic.

(a)     Why is this livestream not copyrightable? Because accidental works are not copyrightable.

(b)     Why aren't accidental works copyrightable? Because they aren't creative.

(c)     How is this stream not creative when it clearly has bits of creative expression? Because those facial expressions aren't creative *choices*.

(d)     Why do I need creative *choices* to get a copyright, instead of just *creativity*? Because accidental works aren't copyrightable.

64.     But at that point, we're right back where we started. We're just running in endless circles. At this point, the judge might as well be saying "It's not copyrightable because I say so."

65.     Put simply and bluntly, ***there is no intent requirement*** under copyright law! The judge has utterly failed to show any legal authority even remotely hinting at an intent requirement, and even as an issue of first impression, there is no good public policy reason to *introduce* an intent requirement.

66.     In fact, there is case law stating the complete opposite. In my opposition to the defendant's motion to intervene, I offered the case of Alfred Bell & Co. v. Cataldo Fine Arts, 191 F. 2d 99 (2nd Cir. 1951) as precedent that accidental works can indeed be copyrighted. See id at 105:

> "But even if their substantial departures from the paintings were inadvertent, the copyrights would be valid. A copyist's bad eyesight or defective musculature, or a shock caused by a clap of thunder, may yield sufficiently distinguishable variations. Having hit upon such a variation unintentionally, the "author" may adopt it as his and copyright it."

67.     In a footnote on that same page, the Alfred Bell court asked future courts to

# SUPPLEMENTAL ARGUMENT

"Compare cases holding that a patentable invention may stem from an accidental discovery." See id at 105, n. 25.

68.     The District Court does not deny the validity of this precedent. He made no efforts to argue that the precedent is invalid or wholly inapposite. Instead, he attempted to argue that the precedent was *distinguishable* from the instant case. His reason for finding a distinction was that "the court found that an unintentional variation in the artist's intended work caused by 'bad eyesight or defective musculature, or a shock caused by a clap of thunder' might still constitute creative expression." See Dkt. 158, p. 6, lines 5-7. In other words, the District Court made the finding that accidental works can be copyrighted if, and only if, the accidental variation came from one of those three ultra-specific sources. Anything other than one of those three sources doesn't count. For example, a shock caused by the sound of a gunshot, rather than a clap of thunder, would not be enough for an unintentional variation to be copyrightable.

69.     Obviously, that is nonsense, and it is clear that the District Court judge – who, by this point, has developed a grudge against me because of the voluntary dismissal he didn't like – had already decided that he wanted to throw my case out by any means necessary, only to then come up with a reason, no matter how strained, to retroactively justify his decision. This is an egregious and blatant violation of a bedrock constitutional due process right and should be stamped out. See In re Michael, 326 US 224, 228 (1945) ("It is difficult to conceive of a more effective obstruction to the judicial process than a [judge or] juror who has prejudged the case. For this prevents the very formation of a proper judicial tribunal").

 The finding of fact that I didn't intend to make something creative/copyrightable.

70.     Assuming, arguendo, that there is indeed an "intent" requirement as a matter of law in order for a work to be copyrightable, the District Court still erred when it made the factual finding that I "was not engaged in the process of creating an intended work." See Dkt. 158, p. 6, lines 8-9.

# **SUPPLEMENTAL ARGUMENT**

71.    This is a dismissal for failure to state a claim, which is reviewable de novo. See Bafford, supra. However, dismissal for failure to state a claim is subject to a very different standard than making that same finding after a bench trial or on a motion for summary judgment after discovery has ended. Specifically, when dismissing a complaint for failure to state a claim, the Court must …

(a)    "take the allegations in the complaint as true[3] and view them in the light most favorable to the plaintiff." See Does 1-6 v. Reddit, Inc., 51 F. 4th 1137, 1140 (9th Cir. 2022);

(b)    "not consider matters outside the scope of the complaint." See In re Stoll, 252 BR 492, 496 n. 5 (9th Cir. 2000);

(c)    construe pro se complaints liberally and hold them to less stringent standards than those drafted by attorneys. See Haines v. Kerner, 404 US 519 (1972);

(d)    dismiss a complaint for failure to state a claim only if the complaint is implausible. See Bell Atlantic Corp. v. Twombly, 550 US 544 (2007); and

(e)    grant leave to amend unless good cause can be shown for why leave to amend should not be granted. See Foman v. Davis, 371 US 178 (1962).

72.    Bear in mind that the District Court affirmatively declared that I was not creating an "intended work." Not just an intentional livestream, but *any* intended work *whatsoever*. This is an extremely bold finding, and it is one that is not supported by any evidence on the record, whatsoever.

73.    The District Court's holding was based solely on the fact that "the recording

---

3  A limited exception to this rule applies when the plaintiff is proceeding in forma pauperis, as I am doing here. However, in order to be allowed not to accept a factual allegation in the complaint as true, the allegations must rise to the level of "fanciful," "fantastic," "delusional," "irrational," or "wholly incredible." (see Denton v. Hernandez, 504 US 25, 33 (1992)), much more than your garden variety skepticism about the plaintiff's ability to prove his case. This high threshhold for dismissal has clearly not been met here.

# SUPPLEMENTAL ARGUMENT

occurred without [my] knowledge."

74.    There are two problems with the District Court's logic. The first is that the copyright holder in Alfred (which, again, the District Court held to be valid precedent, albeit distinguishable from the instant case) was, in fact, NOT trying to create something copyrightable! Had things gone according to plan, the plaintiff in that case would have merely created a 1-to-1 recreation of a public domain work! See Alfred, supra at 104 (where the defendants argue that "plaintiff's mezzotints could not validly be copyrighted because they are reproductions of works in the public domain"). So just how distinguishable is that case from this one, really? Clearly, that precedent does not hold that you can copyright an accidental work if, and only if, you are intending to create something copyrightable to begin with. Clearly, they held the exact opposite: That even if the accidental part of the creation is the only original element, that's still good enough to support a brand new copyright!

75.    I honestly don't know how the District Court could possibly have not realized this. That excerpt was literally in the same *paragraph* as the part about defects in musculature or bad eyesight, an excerpt that was quoted by the District Court! What, did the District Court not even *read that case law* before it decided it was distinguishable?! If so, why not? Is it because the judge was so overflowing with rage and hatred towards me, personally, that it was going to find a distinction no matter what, and so the minutia didn't matter? If so, that only further cements my entitlement to a recusal because the judge has prejudged the case.

76.    Second, knowing that I was being *recorded* is not the only way I can create an intentional work. There is absolutely no evidence appearing anywhere in the Complaint – or anywhere in the world, for that matter, aside from the intervenors uncorroborated accusations – that I didn't intend to create *any* intended work *whatsoever* when I created the accidental livestream by mistake. It is absolutely plausible that I was in the process of creating something intentional when the streaming software accidentally came on. Since plausibility is the standard for failure to state a claim (see Bell Atlantic v. Twombly), that means my Complaint should have passed the inspection for sufficiency.

# SUPPLEMENTAL ARGUMENT

77.     In fact, if we take the District Court's logic and run with it (that I can still copyright the accidental livestream as long as I was intending to create something copyrightable at the time my errant keystroke accidentally turned on the streaming software), then the odds are overwhelm-ingly likely that I do indeed satisfy that requirement. Think about it: At the start of the accidental stream, I can clearly be seen sitting at my computer, and typing at the keyboard. What exactly I was doing is lost to history, but it is clear that I was doing something that *required the use of a keyboard*. So this begs the question: Of all the things I could have been doing that would have required a keyboard, what among them would not have been copyrightable?

78.     Bear in mind that even documents meant for purely personal use can still be protected by copyright. For example, personal letters meant entirely for private communication are copyrightable. See "Toward a Fair Use Standard," 103 Harv. L. Rev. 1105 (1990), Page 1117 ("In the early history of copyright, British courts debated whether letters written for private communication should receive any protection at all from the Statute of Anne. The question was soon satisfactorily settled in favor of protection, and I do not seek to reopen it"). Meanwhile, "the great American novel, a report prepared as a duty of employment, a shopping list, or a loanshark's note on a debtor's door saying 'Pay me by Friday or I'll break your goddamn arms' are all protected by the copyright." See id at 1116-17.

79.     Perhaps I was typing and sending an email when I accidentally turned the stream on. If private letters can be copyrighted, surely private emails can.

80.     Perhaps I was entering a comment onto a Youtube video or issuing a tweet on Twitter. If a mere shopping list can be copyrighted, social media posts absolutely can be copyrighted. See https://copyrightalliance.org/faqs/tweets-protected-copyright/.

81.     Meanwhile, if I were operating my *video editing software*, trying to create a video to upload to Youtube, then I absolutely, definitely would have been creating something copyrightable! In fact, this is, by far, the thing I was most likely doing at the start of the stream (which is when the errant keystroke happened), which I

# SUPPLEMENTAL ARGUMENT

could easily prove if the District Court were forced to give me my day in court.

82.     Put simply, even though we do not know exactly what I was doing when I accidentally turned the streaming software on, the fact that what I was doing required the use of a keyboard means it is overwhelmingly likely that what I was doing was copyrightable, much like how, in a hypothetical situation where we don't know exactly what a person was doing, but we know that activity required the use of a *guitar*, that means it is overwhelmingly likely that what he was doing was copyrightable. Sure, an image of a keyboard does not readily conjure up ideas in a normal person's mind of creativity and art the same way an image of a guitar does, but if you think about how low the threshhold is for copyrightability in the first instance, it is irrefutable that a keyboard is just as much an instrument for copyrightable expression as a guitar is.

83.     Therefore, the District Court's finding of fact that I "was not engaged in the process of creating an intended [copyrightable] work" is clearly devoid of merit, and if the judge weren't furious at me for issuing that voluntary dismissal, he might have been calm and reasoned enough to see that on his own. All the more reason why the judge should be required to recuse himself.

84.     However, barring recusal, the District Court still erred when it held, at the pleading stage with no factual development, that I was not in the process of creating any intended work whatsoever. There is no evidence in the complaint to support this finding, other than the mere fact that the stream itself was accidental. If the District Court's reasoning is that I *didn't allege* in my Complaint that I was in the process of creating an intended work, then that is something that could easily be corrected by an amended complaint, which means the District Court abused its discretion when it denied me leave to amend.

<u>The intervenors insisted, without proof, that I didn't do various production-related things, even though I clearly did.</u>

85.     In their Reply to their Motion to Intervene, the intervenors attempted to further develop their argument by pointing to various, specific things that I

# SUPPLEMENTAL ARGUMENT

supposedly didn't do. My supposed failure to do these things, according to them, supports their argument that the stream was not creative. However, all these allegations do is prove that the stream does indeed have creative expression in it.

86.     They allege four specific things I supposedly did not do: (1) direct the scenery, (2) position the camera, (3) focus the lens, and (4) adjust the lighting. See Dkt 151, p.11, lines 13-14.

87.     However, even if the stream was accidental, to state that I did not do any of these things is preposterous. Bear in mind that, on a motion to dismiss for failure to state a claim, the Court must construe all facts in the light most favorable to the Plaintiff. There is no wiggle room when it comes to this precedent.

88.     They say I did not "position the camera." However, I live alone. If I did not position the camera, then who did?! The camera is in the same position every time I stream, but I still chose the exact spot to put it. I chose that spot when I streamed for the first time ever, and so that choice of position carried over into the accidental stream as well, but it was still my choice of position.

89.     Likewise, who else, besides me, could possibly have furnished and decorated the apartment the way you see in the accidental stream? That counts as "direct[ing] the scenery." The furniture and decorations were all placed according to my tastes in décor.

90.     It's like I said earlier: It was the fixation, not the creative expression itself, that was accidental. But that does not mean the stream itself was devoid of creative expression. By alleging that I did not do these specific things, when I am literally the only person on earth who even *could* have done them, just shows how flawed the intervenors' stance is. The stream absolutely had creative expression in it, even if 99.99% of the creative expression happened weeks or months before the accidental fixation occurred.

91.     You can't even say these are not "creative choices," like the facial expressions. I obviously positioned the camera in such a manner so that my face

# <u>SUPPLEMENTAL ARGUMENT</u>

would be clearly visible whenever I'm sitting at the computer. That is, clearly, a conscious and creative choice on my part, "no matter how crude, humble or obvious" that choice might be (see Feist, supra at 345). Since I clearly placed the camera there with the intent of doing livestreams on Twitch (even if I inadvertently pressed the start button that one time), that absolutely counts as a "creative choice," thereby negating the District Court's finding of fact, assuming it was legally relevant to begin with.

92.     Even if the intervenors could somehow prove that someone other than myself did all of these things, there was absolutely no evidence *in the Complaint* that none of these things were my doing. Therefore, it was egregiously inappropriate to make those arguments at the pleading stage.

93.     Since I was never given a chance to prove in court that I did in fact do these things, the judgment of the district court should be reversed.

<u>The District Court contradicted its own prior rulings for no good reason.</u>

94.     When the District Court reviewed the Complaint sua sponte for failure to state a claim under 28 USC § 1915, it made the affirmative determination that I had adequately alleged that I "owned a copyright as the original and sole author of the April 10, 2021 video." See Dkt. 10, p. 4, lines 22-23. When Judge White was assigned as the new judge, he wholesale agreed with the magistrate judge's findings with no alterations. See Dkt. 21, p. 3, lines 10-11.

95.     The Complaint that he reviewed (Dkt. 11), and the complaint the magistrate judge reviewed (Dkt. 1) both made it clear that the stream happened by accident. Both judges necessarily knew about this fact when they were reviewing their respective versions of the complaints, so clearly, they didn't think at the time that "accidental creation" was a bar to copyrightability.

96.     But then, when Judge White issued his dispositive order, he suddenly changed his mind and decided that the stream lacked creativity, simply by reason of it being accidental, despite the intervenors bringing no new relevant facts or

# SUPPLEMENTAL ARGUMENT

controlling legal citations to the table that were not already presented in the Complaints that were already reviewed for sufficiency.

97.     During my Opposition to Motion to Intervene, I brought this to the Court's attention. See Dkt. 144, ¶ 62. During his dispositive order, Judge White acknowledged this argument. See Dkt. 158, p. 7, lines 7-14. In acknowledging this argument, rather than dismissing it out of hand, he seems to, at least partially, agree with my logic that, were he to suddenly change his mind now with no new facts or legal citations presented than those he had previously considered, it would indeed be entirely arbitrary and show smoking gun evidence of judicial bias.

98.     To remedy this, the judge argued that there was indeed something new brought to the Court's attention that wasn't previously disclosed in the complaint: The inaccurate information in the registration. See Dkt. 158, p. 7, lines 8-10 ("at the time the Court screened the complaint, it was not aware that Plaintiff's registration was based on an inaccurate application").

99.     However, this is another non-sequitur. As I pointed out in the Motion for Summary Reversal, ¶¶ 42-49, the nominal error he complains of was nothing more than me mislabeling the stream as a "dramatic" work rather than an "audiovisual" work. That has nothing to do with the level of creativity in the video. Now, if the intervenors had pointed out some sort of *precedent-setting case law* that both I and the District Court had previously overlooked, which stated in no uncertain terms that accidentally-created works cannot be copyrighted, that would have been grounds for the district court to change its mind. But the intervenors offered nothing of the sort. Rather, they seemed to think it was common sense that accidental works are inherently devoid of creativity. But in addition to that simply not being the case (for reasons I have already explained), it is not based on any facts or law that the District Court judges weren't already aware of when they published Dkt. 10 & 21.

100.    Instead, the District Court seems to be of the mind that, because I made one single nominal error, even if I didn't do it on purpose, *everything* about my case is up for re-evaluation, even in areas of the case that have absolutely nothing to do

# SUPPLEMENTAL ARGUMENT

with the nominal error he found, even in areas of the case where there is otherwise absolutely no reason whatsoever to re-evaluate. This is consistent with his ruling in the Rebolo case, where he arbitrarily decided that *all* of my copyrights were necessarily invalid just because of this one nominal error in this *one* registration. See Motion for Summary Reversal, ¶¶ 47 & 48.

101.   Of course, I know what really happened since then that made the District Court change its mind, and it wasn't finding out about the nominal error on the application; it was the voluntary dismissal he personally didn't like, which is why he should be made to recuse.

102.   To be clear, I am not arguing that the order of sufficiency is legally binding and that the District Court may not break from those findings for any reason. Think about it this way: If a suspect in a police interrogation, or a witness during cross examination, were to change his story midway for no good reason, that would obviously be a huge red flag. Technically, there is no *law* saying he *can't* do that, but from the *jury's* (rather than judge's) point of view, they would absolutely be justified in treating his sudden change in story as a smoking gun that he is lying.

103.   Likewise, I am not claiming that the judge changing his mind in between Dkt. 21 and Dkt. 158 is a due process violation in itself. I am merely saying that the fact that the judge changed his mind *in this case*, in the total absence of any good reason for the change, is smoking gun evidence that the change of mind was in fact caused by the grudge he held against me for issuing the voluntary dismissal, with the nominal registration error merely being a pretext, and *that* is what requires overturning the judgment, as well as recusal.

   The District Court is setting a dangerous precedent with a very slippery slope.

104.   The District Court declared that the stream lacks minimal creativity because it was created by accident. However, if this Court were to affirm the decision of the District Court, it would be setting precedent throughout the entire 9th Circuit that all works created by accident are, automatically and categorically, inherently devoid of copyright protection, simply by reason of them being accidental.

# SUPPLEMENTAL ARGUMENT

105.   This is a dangerous precedent that it would be setting, and the Court should not set that precedent lightly. This Court has historically been very reluctant to adopt a precedent that seems relatively harmless in the instant case when it realizes the logistical nightmares that would result from said precedent later down the line; Garcia v. Google, Inc., 786 F. 3d 733, 742-43 (9th Cir. 2015) is a fine example of this much-needed hesitancy.

106.   Accidental works – and accidental livestreams in particular – are more than just a once-in-a-blue-moon anomaly. They are an entire subgenre of livestreams in and of themselves. See https://youtu.be/wNU4XkeinB0 for a compilation of only the most noteworthy examples. These are far from the only ones out there, just a handful of cherry-picked notable examples.

107.   If this Court were to affirm the decision of the District Court, and set the precedent that accidental works are necessarily devoid of copyright protection simply by reason of them being accidental, it would categorically deny copyright protection to ALL of these works, even those whose authors didn't issue voluntary dismissals that the District Court personally didn't like. The Court should not adopt that precedent lightly. Unless this Court can think of a *genuinely good reason* why, as a matter of federal public policy, there deserves to be an intent requirement for copyright protection that never previously existed, it should overturn the decision of the District Court.

### The April 10, 2021 livestream had human authorship

108.   Barring the alleged lack of creativity, the District Court made a separate finding that the stream was not a work of human authorship, and therefore was not copyrightable under Naruto v. Slater, 888 F. 3d 418 (9th Cir. 2018). The intervenors' and District Court's entire basis for making this claim was the fact that I stated, in the Complaint, that my streaming software turned on "of its own accord."

109.   The problem with this reasoning is that this line doesn't mean what the intervenors and biased district court think it means. During the Opposition to

# **SUPPLEMENTAL ARGUMENT**

Motion to Intervene, I made it clear that this line was merely a figure of speech. That is to say, it was intended to be taken figuratively rather than literally. I compared my pleading to stating that a machine "only works when it feels like it," in order to give an example of when reasonable people, exercising their common sense, would expect someone to be speaking figuratively rather than literally. See Dkt. 144, ¶¶ 79-86.

110.   In ¶ 84, I made it clear (assuming it wasn't clear before) that my allegations of how the streaming software came on were "not based on personal knowledge." Because it was not based on personal knowledge, that means it was not admissible evidence, under Fed.R.Evid. 602. This means that it was reversible error for the Court to consider that statement.

111.   When denying the motion for reconsideration (which, as I already explained, was actually a motion for leave which the Court improperly categorized as a motion for reconsideration), the Court refused to address my argument that the statement was inadmissible, on the grounds that I am now attempting to recast my arguments as ones of admissibility rather than merely wording the complaint poorly. See Dkt. 186, p. 3, lines 7-20 ("Plaintiff cannot now recast his allegations as "inadmissible hearsay").

112.   But this is blatantly false. I am not making a new legal argument; I am clarifying what was my original argument all along. While I did not cite Rule 602 specifically, I shouldn't have needed to. The fact that I used the phrase "personal knowledge" in the opposition would have immediately tipped off any reasonable person that I was making an argument against the admissibility of this evidence. What's next? If I object to someone else's testimony on the grounds that it's only what the witness heard someone else say, not what they observed directly, do I then have to specify that it is Rule 802, specifically, that renders this testimony inadmissible?!

113.   But even barring that, the District Court still committed reversible error when it failed to give the allegations in the Complaint the deference they were legally entitled to. Remember that, when dismissing a complaint for failure to state

# SUPPLEMENTAL ARGUMENT

a claim, the Court must not only accept the factual allegations as true, but also "in a light most favorable to the Plaintiff." See Does 1-6 v. Reddit, Inc., 51 F. 4th 1137, 1140 (9th Cir. 2022). In other words, whenever a factual allegation in the Complaint has multiple reasonable interpretations, the Court doesn't get to just pick which one it wants to go with; it must use the reasonable interpretation that *most favors* the Plaintiff. This means that the District Court can only reject my argument that the phrase "turned on of its own accord" is a figure of speech rather than a literal description if, and only if, a figurative interpretation is objectively unreasonable given the context. The District Court never made that finding, nor does it appear that he even *tried* to make that finding.

114.   Instead, the District Court proceeded to simply reject my figurative interpretation and interpret the Complaint the way the intervenors wanted, simply because that interpretation suited the verdict he already decided he wanted to give (a decision he had already come to because I angered him by issuing the voluntary dismissal he didn't like). It didn't matter that a figurative interpretation was reasonable under the circumstances, and it didn't matter that this was what I intended all along. The judge simply *chose* to interpret my pleadings in a way that facilitated his predetermined outcome, even though the law clearly states that a complaint's allegations must be viewed "in a light most favorable to the plaintiff."

115.   Put simply, this is not something the District Court had discretion to do. Dismissals for failure to state a claim are reviewed de novo (see Bafford v. Northrop Grumman Corp., 994 F.3d 1020, 1025 (9th Cir. 2021)), meaning it is not discretionary. Binding precedent as recent as this year[4] has consistently reversed and remanded when the District Court fails to construe the facts in the complaint "in a light most favorable to the Plaintiff."

---

4  I provided case law from 2022, but only because case law from this year hasn't received a citation yet, but I have verified that cases such as Case No. 22-15061 (Jessica Ploof v. State of Arizona), which was decided on April 13, 2023, and held in pertinent part that "the district court's failure to apply the proper standards was plain error. The district court did not construe the facts in the light most favorable to Plaintiff." See https://scholar.google.com/scholar_case?case=8694419416078239947. However, since that case does not have a citation yet, I have not used it.

# SUPPLEMENTAL ARGUMENT

116.   I regret wording the Complaint the way I did. It has certainly caused me a lot of trouble. However, I should not be forever deprived of my right to my day in court simply because of a couching error. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 US 178, 181-82 (1962). Sufficiently creative and sufficiently bad faith defense attorneys will always find ways to twist even the most skillfully-worded pleadings in a way that they can interpret as being a confession against the plaintiff's interests. The "light most favorable" standard was created in order to safeguard against precisely that kind of bad faith interpretation.

117.   Therefore, the judgment of the District Court should be reversed.

## Denial of Motion for Sanctions

118.   One of the last things the District Court did that was reversible error was when he issued an order (Dkt. 187) denying my Motion for Sanctions (Dkt. 179). This order is reviewed for abuse of discretion. One way in which an abuse of discretion is shown is "when a relevant factor that should have been given significant weight is not considered." See Kern v. TXO Production Corp., 738 F. 2d 968, 970 (8th Cir. 1984). Here, when denying the Motion for Sanctions, the District Court took this concept to its most extreme: He gave the motion no consideration whatsoever. He didn't simply consider some but not all of the factors; he considered precisely zero factors. His entire order was only a single paragraph consisting of just three sentences, and he provided absolutely no findings of fact or conclusions of law whatsoever.

119.   This is an abuse of discretion per se. It is a universal precedent in the federal courts that trial judges necessarily commit an abuse of discretion if they give no reason at all for their decisions.

(a)      See US v. Burrell, 622 F. 3d 961, 964 (2010) (citing Kern v. TXO[5]) ("We

---

5   The fact that this SCOTUS case cites the aforementioned 8th Circuit case of Kern v. TXO,

# SUPPLEMENTAL ARGUMENT

have held that a district court need not give 'lengthy explanations' ... but this does not permit a district court to give no explanation for its decision").

(b)     See also Foman, supra at 182 ("Of course, the grant or denial ... is within the discretion of the District Court, but outright refusal ... without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules").

(c)     See also Willemijn Houdstermaatschappij v. Standard Micro., 103 F. 3d 9, 12 (2nd Cir. 1997) (citing O.R. Securities v. Professional Planning Assoc., 857 F.2d 742 (11th Cir.1988)) ("When the [tribunals] do not give their reasons, it is nearly impossible for the court to determine whether they acted in disregard of the law").

(d)     See also Purcell v. Gonzalez, 549 US 1, 8 (2006) (reversing the preliminary injunction from the Court of Appeals primarily because "There has been no explanation given by the Court of Appeals showing the ruling and findings of the District Court to be incorrect").

120.   In the second sentence of his three-sentence order, the judge said "Plaintiff offers no legal or factual basis supporting his request." He isn't simply saying that my basis for sanctions is frivolous or that it has obvious flaws; he is saying that my basis for sanctions is *literally nonexistent*! Even a cursory review of the motion reveals that this is false. The motion was seventeen pages long; there very clearly is *something* there to be grounds for sanctions. Even if the District Court disagrees with my logic – even if he vehemently disagrees with my reasoning and thinks it is so ludicrous as to be worthy of commitment to an asylum – the reasoning is still *there*.

---

while normally a trivial detail, is important here. US v. Burrell was a criminal case, which is normally a completely inapposite precedent in civil cases, except in a handful of specific cases (such as false arrest) where they inevitably must overlap. However, because this criminal case cited a civil case to support its precedent, it helps demonstrate that this requirement for a trial court to explain its rulings isn't limited just to criminal sentencing, but is a general law that encompasses all cases, all aspects of the law, and all stages of litigation whatsoever.

# **SUPPLEMENTAL ARGUMENT**

121.   Rather, it was the intervenor defendants, not I, who provided "no factual or legal basis" for the relief they sought in their administrative motion. As I pointed out in the motion for sanctions, their *entire case* for having the two cases declared "related" was based exclusively on invincible ignorance, appeal to the stone, proof by assertion, and ad hominem fallacies, and absolutely nothing else.

122.   The third sentence claims that my motion fails to follow the local rules. But the District Court does not even so much as *attempt* to state which local rule I failed to follow. Again, a complete failure to give any explanation whatsoever is automatically an abuse of discretion.

## Conclusion

123.   In conclusion, the District Court has violated my constitutional rights at every turn. Ever since I issued that voluntary dismissal, the district court has made no secret that he hates my guts for having issued it. Since then, his rulings have only had one common thread among them: Rule against David Stebbins by any means necessary, even if it violates clearly-established precedent (such as the absoluteness of a voluntary dismissal), even if he has to make up entirely new law (such as creating an "intent" requirement to copyrightabe expression that was never there), and even if he outright contradicts his earlier findings for no apparent reason (such as finding that I had adequately alleged that I am the exclusive and sole author of a valid copyright, or that Mateas doesn't own the copyright the picture he claimed copyright over and that that the DMCA Takedown was designed solely to retaliate against me for issuing my own against Polano). His grudge against me is the only common denominator among all of these factors. Now, add that to the fact that he has *admitted on record* to holding a grudge against me, and this Court should absolutely vacate all orders from April 11, 2022 onward, order Judge White to recuse, and remand to the District Court for further proceedings not inconsistent with this judgment.

Wherefore, premises considered, I respectfully pray that the judgment of the District Court be vacated and reversed.

# **SUPPLEMENTAL ARGUMENT**

So submitted on this, the 2nd day of June, 2023.

/s/ David Stebbins

David Stebbins

123 W. Ridge Ave.,

APT D

Harrison, AR 72601

870-212-4947

acerthorn@yahoo.com