23-15531

IN THE

# United States Court of Appeals

## FOR THE NINTH CIRCUIT

◆◆

DAVID ANTHONY STEBBINS, DBA Acerthorn,

*Plaintiff-Appellant,*

—v.—

KARL POLANO, DBA Sofiannp; FREDERICK ALLISON,
DBA InitiativeKookie; RAUL MATEAS, DBA TGP482;
ALPHABET, INC.; DISCORD, INC.; AMAZON.COM, INC.; YOUTUBE, LLC,

*Defendants-Appellees,*

—and—

FACEBOOK, INC.,

*Defendant.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

**BRIEF FOR DEFENDANTS-APPELLEES
ALPHABET, INC. AND YOUTUBE, LLC**

JEREMY P. AUSTER
WILSON SONSINI GOODRICH
  & ROSATI
1301 Avenue of the Americas,
  40th Floor
New York, New York 10019
(212) 999-5800

*Attorneys for Defendants-Appellees
  Alphabet, Inc. and YouTube, LLC*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, the undersigned counsel for Intervenors-Appellees Alphabet Inc. ("Alphabet") and YouTube, LLC ("YouTube") states as follows:

- Alphabet is a publicly traded company. It has no parent corporation, and no publicly traded company holds more than 10% of Alphabet's stock;

- YouTube is a subsidiary of Google LLC, which is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet.

Dated:  September 27, 2023             By:   *s/ Jeremy P. Auster*
                                            Jeremy P. Auster

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................... 1

ISSUES PRESENTED FOR REVIEW ................................................... 5

STATEMENT OF THE CASE ................................................................ 6

    A.    Plaintiff Is Declared a Vexatious Litigant Following a History
         of Filing Frivolous Lawsuits and Wasting Judicial Resources ........... 6

    B.    Plaintiff Files Multiple Lawsuits Alleging Infringement of an
         "Accidental Livestream" That Was Recorded by a Fixed
         Camera Without His Knowledge or Creative Input ............................ 9

    C.    Plaintiff Attempts to Prevent the Platform Defendants From
         Exposing the Invalidity of His Alleged Copyright ........................... 12

    D.    Alphabet and YouTube Intervene and Successfully Challenge
         Plaintiff's Copyright ........................................................................ 15

SUMMARY OF ARGUMENT ............................................................. 23

STANDARDS OF REVIEW ................................................................. 27

ARGUMENT ........................................................................................ 28

I.    THE DISTRICT COURT APPROPRIATELY PERMITTED
    ALPHABET AND YOUTUBE TO INTERVENE BECAUSE THEY
    ARE DEFENDANTS IN A RELATED ACTION INVOLVING
    COMMON DISPOSITIVE ISSUES .......................................... 28

    A.    Alphabet and YouTube Satisfied All Conditions for Permissive
         Intervention Under Rule 24(b) ......................................................... 28

    B.    Intervention Did Not Circumvent Plaintiff's Voluntary
         Dismissal of Alphabet as a Defendant ............................................. 30

II.   THE DISTRICT COURT CORRECTLY DENIED PLAINTIFF'S
      MOTION FOR DEFAULT JUDGMENT BECAUSE THE
      ACCIDENTAL LIVESTREAM IS NOT COPYRIGHTABLE .................. 34

      A.   The Accidental Livestream Is Not a Creative Work of Human
           Authorship ........................................................................ 35

      B.   Plaintiff Is Not Entitled to a Presumption of Copyright Validity ...... 42

      C.   Plaintiff Cannot Save His Case by Contradicting Prior
           Admissions in an Amended Complaint ............................................ 46

III.  PLAINTIFF OFFERS NO OTHER GROUNDS FOR REVERSAL ......... 47

CONCLUSION ...................................................................... 49

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Aldabe v. Aldabe*,
    616 F.2d 1089 (9th Cir. 1980) .........................................................34

*Alfred Bell & Co. v. Catalda Fine Arts, Inc.*,
    191 F.2d 99 (2d Cir. 1951) ..............................................................39

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*,
    712 F.3d 1349 (9th Cir. 2013) .........................................................27

*California v. Health & Hum. Servs.*,
    330 F.R.D. 248 (N.D. Cal. 2019) ....................................................28

*Commercial Space Management Co., Inc. v. Boeing Co. Inc.*,
    193 F.3d 1074 (9th Cir. 1999) .........................................................31

*Degamo v. Bank of Am., N.A.*,
    849 F. App'x 620 (9th Cir. 2021) ....................................................29

*DirecTV, Inc. v. Hoa Huynh*,
    503 F.3d 847 (9th Cir. 2007) .....................................................34, 37

*Dixon v. Cost Plus*,
    2012 WL 2499931 (N.D. Cal. June 27, 2012)................................16

*Dukes v. Wal-Mart Stores, Inc.*,
    2016 WL 4269093 (N.D. Cal. Aug. 15, 2016)................................31

*Eitel v. McCool*,
    782 F.2d 1470 (9th Cir. 1986) .....................................................27, 34

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
    499 U.S. 340 (1991)........................................................................35

*Fort Sill Apache Tribe of Oklahoma v. United States*,
    2008 WL 2891654 (W.D. Okla. July 23, 2008) .............................31

*Fourth Estate Pub. Ben. Corp. v. Wall-Street.com*, *LLC*,
   139 S. Ct. 881 (2019) ....................................................................... 44

*Freedom from Religion Found., Inc. v. Geithner*,
   644 F.3d 836 (9th Cir. 2011) ......................................................... 29

*Hyowon Elecs., Inc. v. Erom, Inc.*,
   2014 WL 12560693 (C.D. Cal. May 15, 2014) ............................. 10

*Jonathan v. AdvancedMD Software, Inc.*,
   2012 WL 12953761 (C.D. Cal. June 27, 2012) ............................ 15

*Kifle v. YouTube LLC*,
   2022 WL 326613 (N.D. Cal. Feb. 3, 2022) .................................. 46

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
   345 F.3d 1140 (9th Cir. 2003) ........................................... 42, 43, 45

*Lewis v. Activision Blizzard, Inc.*,
   2012 WL 5199505 (N.D. Cal. Oct. 22, 2012) .............................. 10

*Naruto v. Slater*,
   2016 WL 362231 (N.D. Cal. Jan. 28, 2016),
   *aff'd*, 888 F.3d 418 (9th Cir. 2018) ............................................ 35

*Pedrina v. Han Kuk Chun*,
   987 F.2d 608 (9th Cir. 1993) ......................................................... 32

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990) ......................................................... 46

*Skidmore for Randy Craig Wolfe Trust v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) ....................................................... 35

*Stebbins v. Bradford*,
   2013 WL 3366289 (W.D. Ark. July 5, 2013),
   *aff'd*, 552 F. App'x 606 (8th Cir. 2014) ........................................ 7

*Stebbins v. Doe*,
   No. 23-cv-00321-DMR (N.D. Cal. filed Jan. 20, 2023) ............... 12

*Stebbins v. Google, Inc.*,
    2011 WL 5150879 (N.D. Cal. Oct. 27, 2011) ................................................6

*Stebbins v. Google LLC*,
    2023 WL 6139454 (N.D. Cal. Aug. 31, 2023) ......................................*passim*

*Stebbins v. Hixson*,
    2018 WL 2124106 (W.D. Ark. May 8, 2018) ................................................7

*Stebbins v. Microsoft, Inc.*,
    2012 WL 12896360 (W.D. Wash. Jan. 13, 2012),
    *aff'd*, 520 F. App'x 589 (9th Cir. 2013) ....................................................1, 7

*Stebbins v. Rebolo*,
    No. 22-cv-00546-JSW (N.D. Cal. filed Jan. 27, 2022) ........................*passim*

*Stebbins v. Stebbins*,
    2013 WL 6182991 (W.D. Ark. Nov. 26, 2013),
    *aff'd*, 575 F. App'x 705 (8th Cir. 2014) ...............................................1, 7, 33

*Stebbins v. Steen*,
    2013 WL 4496494 (E.D. Ark. Aug. 20, 2013)..............................................7

*Stebbins v. Texas*,
    2011 WL 6130403 (N.D. Tex. Oct. 24, 2011)
    *report and recommendation adopted*,
    2011 WL 6130411 (N.D. Tex. Dec. 9, 2011)................................................6

*Stebbins v. USDC-CAOAK*,
    No. 22-70132 (9th Cir. July 12, 2022) ....................................................8, 17

*Stebbins v. USDC-CAOAK*,
    No. 22-70269 (9th Cir. Jan. 26, 2023).....................................................8, 22

*Stebbins v. USDC-CASJ*,
    No. 11-72595 (9th Cir. Nov. 15, 2011) ........................................................8

*United States v. City of L.A.*,
    288 F.3d 391 (9th Cir. 2002) ......................................................................28

*Venegas v. Skaggs*,
  867 F.2d 527 (9th Cir. 1989),
  *aff'd*, 495 U.S. 82 (1990) .................................................................29

*Westchester Fire Ins. Co. v. Mendez*,
  585 F.3d 1183 (9th Cir. 2009) ......................................................16

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) ......................................................27

## STATUTES

17 U.S.C. § 101 ....................................................................................35

17 U.S.C. § 102(a) ..............................................................................35

17 U.S.C. § 107 ....................................................................................11

17 U.S.C. § 410(c) ..............................................................................42

17 U.S.C. § 411 ....................................................................................44

17 U.S.C. § 411(a) ..............................................................................44

17 U.S.C. § 411(b) ..............................................................................45

17 U.S.C. § 512(f) ..............................................................................49

28 U.S.C. § 1915 ................................................................................20

U.S. Const. Art. I, § 8, Cl. 8 ............................................................36

## RULES

N.D. Cal. Civil L.R. 7-9(a) .......................................................21, 48

N.D. Cal. Civil L.R. 7-9(c) ..............................................................48

Fed. R. Civ. P. 11(c)(2) ....................................................................48

Fed. R. Civ. P. 24 ..............................................................................24

Fed. R. Civ. P. 24(b) ......................................................................*passim*

Fed. R. Civ. P. 24(b)(1)(B) ...............................................................28

Fed. R. Civ. P. 24(b)(3)......................................................................29

Fed. R. Civ. P. 24(c)...........................................................................15

Fed. R. Civ. P. 41 ...............................................................................24

Fed. R. Civ. P. 41(a)......................................................24, 30, 31, 32

Fed. R. Civ. P. 41(a)(1).......................................................................32

Fed. R. Civ. P. 60(b)(6).......................................................................21

Fed. R. Civ. P. 201(c)(2).....................................................................10

## **INTRODUCTION**

The District Court appropriately exercised its broad discretion under Federal Rule of Civil Procedure 24(b) to permit Alphabet and YouTube to intervene on a dispositive issue that is common to both this copyright infringement case and a related copyright case where they are defendants. That issue is whether the allegedly infringed content—a video of Plaintiff that was recorded accidentally and unknowingly through a fixed camera—is a copyrightable work of authorship. The court correctly held that the video is not copyrightable because it lacks both a human author and any modicum of creativity on Plaintiff's part. This Court should affirm.

Plaintiff-Appellant David Stebbins is a *pro se* individual who posts videos on YouTube under the alias "Acerthorn." He has been designated a "vexatious" litigant in multiple jurisdictions due to a decade-long history of filing frivolous lawsuits, appeals, and mandamus petitions across the country. *Stebbins v. Google LLC*, 2023 WL 6139454, at *5 (N.D. Cal. Aug. 31, 2023) (declaring Plaintiff a vexatious litigant in the Northern District of California); *Stebbins v. Stebbins*, 2013 WL 6182991 (W.D. Ark. Nov. 26, 2013), *aff'd*, 575 F. App'x 705 (8th Cir. 2014) (declaring Plaintiff a vexatious litigant in his home district). As one court in this Circuit noted, "time spent dealing with Mr. Stebbins' filings prevents the Court from addressing the genuine, vexing problems that people trust the Court to resolve quickly and fairly." *Stebbins v. Microsoft, Inc.*, 2012 WL 12896360, at *1 (W.D. Wash. Jan. 13,

2012), *aff'd*, 520 F. App'x 589 (9th Cir. 2013). Indeed just a few weeks ago, Plaintiff was declared a vexatious litigant in the Northern District of California, subjected to a multifaceted filing bar, and barred from proceeding *in forma pauperis* in future actions without prior screening by a District Judge. *Stebbins v. Google*, 2023 WL 6139454, at *11.

In the case giving rise to this appeal, Plaintiff alleges that a handful of users on YouTube and other online platforms have ridiculed him by posting copies of a so-called "Accidental Livestream" in which his computer camera broadcast him online without his knowledge. He concedes that the Accidental Livestream was created entirely inadvertently and without his knowledge. According to his complaint, the "livestream software turned on of its own accord without me realizing it," not due to the deliberate and creative actions of a human author. 3-AlphabetSER-304 ¶ 22. The feed continued broadcasting "for nearly two hours before I realized it was on and closed it down." *Id.* During this time Plaintiff's viewers could see him doing (in his words) "mundane, daily activities," including pacing around his apartment, sitting at his desk, eating, and muttering to himself. By his own admission the livestream is "boring and contentless." *Id.* ¶ 23.[1]

---

[1] A copy of the Accidental Livestream is currently available on YouTube at https://www.youtube.com/watch?v=l8ZHSwDG09o.

Plaintiff found this video embarrassing and sought a way to remove it from the internet. But instead of bringing a tort claim against the users who posted it, Plaintiff roped in defendant Alphabet through the artifice of "copyright." First, he applied to register the Accidental Livestream with the United States Copyright Office as a "dramatic work," without disclosing that the video had actually been created due to a software glitch without any creativity on his part—meaning a fundamental requirement for obtaining copyright protection was lacking. Once he obtained the registration under false pretenses, he sued Alphabet and other online platforms (the "Platform Defendants") as well as their users (the "Individual Defendants") for copyright infringement based on online posts of the Accidental Livestream. He also demanded over a million dollars in damages from the Individual Defendants—all of whom defaulted—and sought an injunction compelling Alphabet to ban them permanently from YouTube. A few months later, Plaintiff filed a related copyright action, *Stebbins v. Rebolo*, No. 22-cv-00546-JSW (N.D. Cal. filed Jan. 27, 2022), alleging additional infringements of the same Accidental Livestream—again naming Alphabet (and its subsidiary YouTube) as defendants.

There are major defects in what Plaintiff styled as his copyright claims in this case. The Accidental Livestream, the sole work over which he sued, is not copyrightable to begin with. Copyright protection subsists in creative works of

authorship that are fixed in a tangible medium of expression by a human author. But here, the Accidental Livestream was created entirely by accident and not due to the deliberate and creative actions of a human author. Because such a video cannot be copyrighted, the District Court correctly denied Plaintiff's Motion for Default Judgment against the Individual Defendants and dismissed the case with prejudice.

Plaintiff did everything he could to prevent the District Court from even considering this fundamental problem with his claim. As soon as Plaintiff learned that the Platform Defendants would be contesting the validity of his copyright through a motion to dismiss, he hurriedly dismissed them voluntarily from the case, moved to strike their motion to dismiss, and implored the court to "cast the contents therein from its mind" when deciding whether to issue a default judgment against the Individual Defendants. In so doing, Plaintiff admitted that the sole reason he "played this trump card" and engaged in this "tactical retreat" was to prevent anyone from challenging his alleged copyright, to obtain an unopposed ruling that his copyright was valid, and then "re-file this claim" against the same Platform Defendants. 2-AlphabetSER-196. The court granted Plaintiff's motion to voluntarily dismiss Alphabet as a defendant but called out "Plaintiff's efforts to manipulate the litigation process and his blatant gamesmanship." 2-AlphabetSER-191.

Although Alphabet had been dismissed from this case, Alphabet and YouTube were still defendants in the related case, *Rebolo*, where the same video remained at issue. The District Court, therefore, had broad discretion to permit Alphabet and YouTube to intervene in this action under Federal Rule of Civil Procedure 24(b), which authorizes anyone to be heard in any action who "has a claim or defense that shares with the main action a common question of law or fact." That question was the validity of Plaintiff's alleged copyright in the Accidental Livestream, which is common to both actions and needed to be decided in ruling on Plaintiff's Motion for Default Judgment. Accordingly, the District Court was well within its discretion to consider Alphabet and YouTube's substantive evidence and arguments concerning the copyrightability of the Accidental Livestream. Its decision should be affirmed.

## ISSUES PRESENTED FOR REVIEW

Plaintiff purports to raise a slew of issues for review, but those issues fundamentally boil down to just two:

1) Whether the District Court appropriately exercised its discretion by permitting Alphabet and YouTube to intervene for purposes of arguing that Plaintiff's Accidental Livestream is not copyrightable; and

2)      Whether the Accidental Livestream—a video that was recorded by a software glitch without any knowledge or creativity on Plaintiff's part—is a creative work of human authorship protected by federal copyright law.[2]

## STATEMENT OF THE CASE

### A.      Plaintiff Is Declared a Vexatious Litigant Following a History of Filing Frivolous Lawsuits and Wasting Judicial Resources

Plaintiff, a self-proclaimed "Youtuber" and "Twitch Streamer," goes by the online alias "Acerthorn." 3-AlphabetSER-300 ¶ 1. His YouTube channel (available at https://www.youtube.com/@Acerthorn) includes numerous videos depicting gameplay footage of various video games, with Plaintiff providing voice-over review and analysis of the games.

Plaintiff is a prolific and vexatious litigant, suing for any perceived slight and then flooding courts with all manner of procedural machinations. Federal courts across the country have dismissed Plaintiff's lawsuits as "patently frivolous," "delusional," and "wildly untethered from any valid interpretation" of the law. *See, e.g.*, *Stebbins v. Google*, 2023 WL 6139454, at *9 (collecting an "extensive list" of his frivolous cases); *Stebbins v. Google, Inc.*, 2011 WL 5150879, at *4-5 (N.D. Cal. Oct. 27, 2011) (*sua sponte* dismissal of "clearly baseless" and "frivolous" case based on "an indisputably meritless legal theory"); *Stebbins v. Texas*, 2011 WL 6130403,

---

[2] A Statutory Addendum is included herewith pursuant to C.R. 28-2.7.

at *3 (N.D. Tex. Oct. 24, 2011) (dismissing "frivolous claims" based on "fantastic or delusional scenarios that are clearly irrational and incredible"), *report and recommendation adopted*, 2011 WL 6130411 (N.D. Tex. Dec. 9, 2011); *Stebbins v. Bradford*, 2013 WL 3366289, at *2 (W.D. Ark. July 5, 2013) (dismissing "patently frivolous" claims based "entirely on [Plaintiff's] suspicions and theories"), *aff'd*, 552 F. App'x 606 (8th Cir. 2014); *Stebbins v. Microsoft*, 2012 WL 12896360, at *1 (dismissing "frivolous lawsuit" that was "wildly untethered from any valid interpretation of contract and arbitration law"); *Stebbins v. Steen*, 2013 WL 4496494, at *2 (E.D. Ark. Aug. 20, 2013) (concluding Plaintiff's complaint was frivolous and failed to state a claim).

In 2014, Plaintiff's home district, the Western District of Arkansas, declared him a "vexatious" litigant who has "abused the system" with "a history of filing ultimately meritless cases upon which the Court has been forced to expend countless hours of time and judicial resources." *Stebbins v. Stebbins*, 2013 WL 6182991, at *1. "Not only has [Plaintiff] filed numerous cases, but he has also filed over one hundred motions within those cases, some of which have been repetitive, and few of which have had any merit." *Id.* When that court limited him to filing one case per every three months (*id.* at *3), he evaded the order by filing new cases in the Eastern District of Arkansas and then attempting to transfer them to the Western District. *Stebbins v. Hixson*, 2018 WL 2124106, at *1, *3 (W.D. Ark. May 8, 2018).

Plaintiff's conduct as a vexatious litigant has continued in the Northern District of California. Most of his lawsuits here have been copyright infringement cases against YouTube, Google (YouTube's parent company), and Alphabet (Google's parent company)—all of which have been dismissed. A few weeks ago, the Northern District of California declared him a vexatious litigant and barred him from filing, without prior screening, "(1) any future actions against Google LLC, YouTube LLC, Alphabet Inc., or any of their affiliates, or (2) any claim of copyright infringement or copyright-related claims against any defendant[.]" *Stebbins v. Google*, 2023 WL 6139454, at *11. The court also barred him from proceeding *in forma pauperis* in any future action unless the complaint is screened by a District Judge. *Id.*

Plaintiff has also filed at least three mandamus petitions in the Ninth Circuit, all of which were denied summarily by this Court in one-page orders. As explained below, two of those petitions arose from this case. *Stebbins v. USDC-CAOAK*, No. 22-70132, Dkt. 3 (9th Cir. July 12, 2022) (denying petition to order District Court not to consider Intervenors' arguments as to why the Accidental Livestream is not copyrightable); *Stebbins v. USDC-CAOAK*, No. 22-70269, Dkt. 3 (9th Cir. Jan. 26, 2023) (denying petition contending that the District Court was taking too long to rule on his motions for reconsideration of the *Polano* dismissal); *see also Stebbins v. USDC-CASJ*, No. 11-72595, Dkt. 3 (9th Cir. Nov. 15, 2011) (denying petition to

order District Court to grant his motion for default judgment in a prior case against Google to confirm a non-existent "arbitration award," even though Google was never served and no arbitration ever occurred).

### B. Plaintiff Files Multiple Lawsuits Alleging Infringement of an "Accidental Livestream" That Was Recorded by a Fixed Camera Without His Knowledge or Creative Input

In this case, Plaintiff alleges that, on April 10, 2021, his "livestream software turned on of its own accord without me realizing it. It stayed on for nearly two hours before I realized it was on and closed it down. During this accidental livestream, my viewers were able to see me engaging in mundane, daily activities." 3-AlphabetSER-304 ¶ 22. "[T]he only interesting and memorable part of this otherwise boring and contentless livestream" were "strange noises" that Plaintiff says he "did not cause." *Id.* ¶ 23. The video is currently available at https://youtu.be/l8ZHSwDG09o.[3]

Online critics of Plaintiff's litigation tactics found and posted copies of his "Accidental Livestream" video. Plaintiff found the video embarrassing, so he devised a scheme to enlist the courts to prevent its spread. To that end he registered the video with the United States Copyright Office. 3-AlphabetSER-304 ¶ 24.

---

[3] In his appeal brief, Plaintiff says that *he* "accidentally turned on" the streaming software (Br. at 7), which contradicts his allegation in the complaint that the software "turned on of its own accord" (3-AlphabetSER-304 ¶ 22). The District Court appropriately rejected Plaintiff's attempt to walk back from concrete factual admissions in his pleadings, for reasons explained below. *Infra* at 45-46.

However, in his application he did not disclose anything concerning the nature and circumstances of how the Accidental Livestream was actually created. Instead he claimed that the video embodies a so-called "Dramatic Work." 2-AlphabetSER-182.[4]

After he obtained a registration, Plaintiff asserted "copyright infringement" claims against three Individual Defendants who posted copies of the Accidental Livestream on YouTube, Twitch, and Discord. 3-AlphabetSER-316-318 ¶¶ 81-86. All three Individual Defendants defaulted. 3-AlphabetSER-296, 3-AlphabetSER-298-299. Plaintiff also sued Alphabet, Amazon (the parent company of Twitch), and Discord to assert a "claim" for an injunction that would require those Platform Defendants (and/or their subsidiaries, including YouTube) to permanently terminate

---

[4] Intervenors obtained a copy of Plaintiff's registration application from the Copyright Office and requested that the District Court take judicial notice of it under Federal Rule 201(c)(2), which it did. 2-AlphabetSER-175-78; *see also* 1-AlphabetSER-4 n.1 ("The Court takes judicial notice of the Plaintiff's application to register the Accidental Livestream with the United States Copyright Office because it is a matter of public record and is not subject to reasonable dispute."). Courts routinely take judicial notice of matters of public record before administrative agencies, including applications to register works with the Copyright Office. *See, e.g.*, *Lewis v. Activision Blizzard, Inc.*, 2012 WL 5199505, at *1 n.1 (N.D. Cal. Oct. 22, 2012) (taking "judicial notice of [plaintiff's] applications for copyright registration which are matters of public record and the subject of allegations in the complaint"); *Hyowon Elecs., Inc. v. Erom, Inc.*, 2014 WL 12560693, at *2 (C.D. Cal. May 15, 2014) ("[Plaintiff's] copyright registration application and the copyright registration are certified copies from the United States Copyright Office, and are matters of public record and the type of documents that the Court may judicially notice under Rule 201(b)(2).").

the Individual Defendants' accounts and prevent them from creating new accounts in the future.  3-AlphabetSER-325 ¶¶ 124-126.

Plaintiff filed a related action in the same District Court, *Stebbins v. Rebolo*, No. 4:22-cv-00546-JSW, which was assigned to the same judge presiding over this case, the Honorable Jeffrey S. White.  Plaintiff then amended his complaint in the *Rebolo* action to add Alphabet and YouTube as defendants.  *Rebolo*, Dkt. 15.  In that case, Plaintiff alleges copyright infringement by at least nine individuals, and again seeks an injunction requiring Alphabet and YouTube to permanently terminate their accounts.  *Id.* ¶¶ 182-183.  One of the alleged copyrighted videos at issue in *Rebolo* is the same Accidental Livestream at issue here.  *Id.* ¶¶ 20-25.  Plaintiff also asserts secondary infringement claims against Alphabet and YouTube because YouTube declined to remove certain videos that used portions of the Accidental Livestream for purposes of criticizing Plaintiff—videos that are clearly fair use under 17 U.S.C. § 107.  *Id.* ¶¶ 166-168.  For this reason, the court stayed *Rebolo* at Plaintiff's request pending final resolution of this case, because "a ruling in the [*Polano*] case will be relevant and potentially fully dispositive in the [*Rebolo*] case."  *Rebolo*, Dkt. 14.[5]

---

[5] One of the allegedly infringing videos in *Rebolo*, entitled "Acerthorn: Serial DMCA Abuse Controversy," was posted by a YouTuber with the alias "SidAlpha," and can be found at https://www.youtube.com/watch?v=WB-Xd1qDKIY.  This video featured prominently in Plaintiff's Motion for Default Judgment against the Individual Defendants in *Polano* as a measure of his damages.  *See* 3-AlphabetSER-266; 3-AlphabetSER-284-287 ¶¶ 38-49.  The video provides a detailed history of

(continued...)

### C. Plaintiff Attempts to Prevent the Platform Defendants From Exposing the Invalidity of His Alleged Copyright

In April 2022, Plaintiff filed a Motion for Default Judgment against the Individual Defendants in *Polano*. 3-AlphabetSER-240-245. In that motion he expressed concern that the Platform Defendants might challenge the copyrightability of his Accidental Livestream. 3-AlphabetSER-244-245 ¶ 21(f). Realizing that the Platform Defendants would indeed bring this issue to Judge White's attention, Plaintiff emailed Alphabet's counsel shortly before the Platform Defendants filed their Motion to Dismiss. In that email Plaintiff stated that he could hide the issue from the District Court and secure an unopposed default judgment against the Individual Defendants, simply by dismissing the Platform Defendants voluntarily on the same day they filed their motion. And in the process, he could require the Platform Defendants to expend even more legal fees by re-litigating the same issue in *Rebolo* or another case:

> I could simply ... dismiss your client from the Polano case! If I did that, the dismissal would be without prejudice, allowing me to re-file the request for prospective injunctive relief as part of the Rebolo case. So I wouldn't even be missing out on that injunction. The[n], you won't have a choice but to wait until the Rebolo case to challenge the validity of the copyright, at which point you will get nowhere with that

---

Plaintiff's abuse of the judicial system and the Digital Millennium Copyright Act to strike videos that fairly criticize him. Plaintiff sued YouTube in the *Rebolo* action for declining to remove it, even though the video (and others alleged in that complaint) is plainly fair use criticism. Plaintiff also filed a separate lawsuit against SidAlpha for defamation over the same video. *Stebbins v. Doe*, No. 23-cv-00321-DMR (N.D. Cal. filed Jan. 20, 2023).

challenge because my copyright is indeed valid. If I dismissed Alphabet as a party, you would likely not get your attorneys [sic] fees, for the reasons I set forth last weekend.

3-AlphabetSER-200.

Minutes later, at the same time as the Platform Defendants were filing their Motion to Dismiss (3-AlphabetSER-204-227), Plaintiff filed a Notice of Voluntary Dismissal to remove them from the case (3-AlphabetSER-238-239). In the Notice, Plaintiff admitted that his sole reason for abruptly dismissing the Platform Defendants on the day their motion was due was to prevent them from challenging the validity of his alleged copyright. 3-AlphabetSER-238-239. Plaintiff argued that any consideration of this issue "would only result in tedious delays in a case where I was about to get a default judgment otherwise." 3-AlphabetSER-238 ¶ 1. But he promised to re-litigate the same issue against the Platform Defendants "in the near future," after he obtained an unopposed default judgment where his alleged copyright was unchallenged:

> This is not a surrender. This is a tactical retreat. I wish to have this action dismissed *without prejudice*, so I can re-file the case again, seeking to obtain the prospective injunctive relief under 17 USC § 512(j) in the near future. This is just being done so that Alphabet (and possibly the other nominal defendants) cannot delay this case that is already in the eleventh hour, just out of sheer pettiness.

*Id.* ¶ 3 (emphasis in original).

The Platform Defendants filed their Motion to Dismiss at virtually the same time as Plaintiff filed his Notice of Voluntary Dismissal. 3-AlphabetSER-204-227.

-13-

The motion argued that the Accidental Livestream is not copyrightable because it lacks human authorship or sufficient creativity, based on facts admitted in the complaint. 3-AlphabetSER-215-218. The Platform Defendants also proffered a copy of Plaintiff's application to register the video as a "dramatic work," which revealed that he did not disclose the true nature and circumstances of the video's creation to the Copyright Office. 3-AlphabetSER-236. Plaintiff immediately filed a Motion to Strike the Motion to Dismiss (3-AlphabetSER-203), insisting that he "should not need to" "defend the validity of the copyright." 2-AlphabetSER-195-196 ¶ 13. He bragged that because he "thought of this tactic" and "played this trump card," he had "stripp[ed] [the Platform Defendants] of their opportunity to litigate the case with me." 2-AlphabetSER-196 ¶¶ 14-15.

The District Court granted Plaintiff's Motion to Strike, finding that it lacked authority to disregard or to place a condition on the voluntary dismissal. 2-AlphabetSER-191-192. However, Judge White noted that he did not "endorse Plaintiff's efforts to manipulate the litigation process and his blatant gamesmanship," and warned that "[s]hould Plaintiff continue to dismiss and refile cases in bad faith to obtain a different result, he risks being declared a vexatious litigant in this district." 2-AlphabetSER-191. Plaintiff responded the next day with a "Motion to Clarify" in which he implored the court to "do whatever it takes to cast the contents [of the copyrightability arguments] from its mind," and to grant a default

judgment "assuming the copyright's validity to be unchallenged." 2-AlphabetSER-187-188 ¶ 12.

Meanwhile, the Platform Defendants and/or their subsidiaries (including Alphabet and YouTube) remained defendants in the stayed *Rebolo* action, where copyrightability of the same Accidental Livestream was squarely at issue.

### D. Alphabet and YouTube Intervene and Successfully Challenge Plaintiff's Copyright

One week later, Alphabet and YouTube filed a motion (1) requesting permission to intervene in this case for the limited purpose of challenging Plaintiff's copyright in the Accidental Livestream, because the issue was common to *Rebolo* where both Alphabet and YouTube were still defendants[6]; and (2) urging the District Court to deny Plaintiff's Motion for Default Judgment because the video was not copyrightable. 2-AlphabetSER-157-174. Alphabet and YouTube again proffered a copy of Plaintiff's application to register the video with the Copyright Office, which had been stricken along with the Motion to Dismiss. 2-AlphabetSER-175-183.[7]

---

[6] Although not relevant to the issues presented for review in this appeal, Intervenors dispute that Alphabet, YouTube's ultimate parent company, was properly named as a defendant in *Rebolo*, because "[g]enerally, a parent company is not liable for the contracts or torts of its subsidiary." *Jonathan v. AdvancedMD Software, Inc.*, 2012 WL 12953761, at *2 (C.D. Cal. June 27, 2012).

[7] Although Rule 24(c) states that a motion to intervene should ordinarily "be accompanied by a pleading that sets out the claim or defense for which intervention is sought," that "is not required where … the movant describes the basis for intervention with sufficient specificity to allow the district court to rule." *Dixon v.*

(continued...)

Plaintiff sought to prevent Judge White from ruling upon Alphabet and YouTube's Motion to Intervene. First, he told counsel he had been hospitalized and needed an extension to oppose it, which counsel granted through stipulation. 2-AlphabetSER-154-156. But minutes after the stipulation was filed, Plaintiff filed a lengthy Motion to Strike the Motion to Intervene, setting a hearing date in advance of the intervention motion that counsel had been duped into extending. 2-AlphabetSER-148-151. Minutes after that, Plaintiff emailed the clerk and demanded an immediate ruling on the Motion to Strike. The District Court declined, warning that "[i]f Plaintiff continues to abuse the judicial process in this way, the Court will issue an order to show cause why he should not be declared a vexatious litigant subject to a pre-filing order." 2-AlphabetSER-147. Plaintiff responded with a 25-page opposition to the Motion to Intervene, less than 72 hours after claiming he needed an extension due to medical issues. 2-AlphabetSER-121-142.

Plaintiff subsequently filed a motion for leave to file a supplemental opposition brief (2-AlphabetSER-117-120), which the District Court denied (2-

---

*Cost Plus*, 2012 WL 2499931, at *6 (N.D. Cal. June 27, 2012) (citation omitted); *see also, e.g.*, *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009) ("Courts, including this one, have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion.") (citation omitted). Alphabet and YouTube did not attach a pleading because they were not asserting a legal claim against Plaintiff, their arguments were reflective of those that would be made on a motion to dismiss, and they relied on facts that were admitted in Plaintiff's own complaint. The grounds for intervention were also fully set forth in the motion.

AlphabetSER-116). He then filed a petition for writ of mandamus, asking this Court to order Judge White "not to consider any of the arguments raised in the frivolous motion to intervene when ruling on the motion for default judgment." *Stebbins v. USDC-CAOAK*, No. 22-70132, Dkt. 1-3 at 1 (9th Cir. July 12, 2022). This Court summarily denied the petition. *Id.,* Dkt. 3.

On July 11, 2022, the District Court granted the Motion to Intervene, denied Plaintiff's Motion for Default Judgment, and dismissed the case with prejudice. 1-AlphabetSER-3-10 (Order), 1-AlphabetSER-2 (Judgment). As to intervention, the court found that Alphabet and YouTube satisfied the threshold factors under Federal Rule of Civil Procedure 24(b): (1) there were no jurisdictional issues "because this is a federal-question case and Alphabet and YouTube do not raise any new claims"; (2) "the motion to intervene was timely filed just one week after Plaintiff voluntarily dismissed the Corporate Defendants from the action"; and (3) "the issue of the copyrightability of the livestream is common to this case and the Related Case [*Rebolo*], in which Alphabet and YouTube are defendants." 1-AlphabetSER-5. The court found that the discretionary factors favored intervention as well: "Alphabet and YouTube's interests are not represented in this litigation because the Individual Defendants—the only remaining defendants—have defaulted. Additionally, intervention would not cause undue delay as there are no pending deadlines. Nor will intervention prejudice Plaintiff." 1-AlphabetSER-6. Permitting intervention

would promote judicial economy because "[t]he copyrightability of the same livestream is at issue in the Related Case," and "[c]onsidering the same issue twice in different cases not only wastes judicial resources, but it could lead to inconsistent results." *Id.* Finally, the court found that "Plaintiff's behavior in this case favors permissive intervention":

> Plaintiff has made no secret that he dismissed the Corporate Defendants to prevent them from challenging the validity of the livestream's copyright and that he intends to re-litigate the same issue in the Related Case. Plaintiff's abuse of the litigation process and his attempt to evade a ruling on an essential question at the core of both cases, favor intervention.

*Id.* Accordingly, the court granted the Motion to Intervene and considered Alphabet and YouTube's arguments in opposition to Plaintiff's Motion for Default Judgment, specifically as to the copyrightability of the Accidental Livestream. *Id.*

As to the merits, the District Court concluded that the Accidental Livestream was not copyrightable for two reasons. "First, the livestream lacks even the minimal degree of creativity required to be copyrightable" because the complaint's own allegations "establish the creation of the livestream occurred unbeknownst to Plaintiff and without his creative input or direction." 1-AlphabetSER-7. The court rejected Plaintiff's argument that his "facial expressions" reflected a modicum of creativity because those expressions were not creative choices in fixating a work of authorship but were instead mundane facial expressions made by the unwitting subject of a running video. 1-AlphabetSER-7-8. The court correctly distinguished

-18-

cases finding that "uninten[ded] variation in the artist's ***intended*** work … might still constitute creative expression," because here "Plaintiff was not engaged in the process of creating an intended work because [ ] the recording occurred without his knowledge." 1-AlphabetSER-8 (emphasis added).

Second, the District Court held that "the livestream is not the product of human authorship" because "Plaintiff himself concedes that his copyright is invalid if the streaming software turned on of its own accord, and that is precisely what he alleges in the complaint." *Id.* Although Plaintiff argued in his opposition brief that his allegations should not be taken "literally" and that it is "likely that the streaming software turned on as a result of an errant keystroke, rather than purely autonomous means," the court concluded that Plaintiff's "efforts to recast his allegations are unpersuasive" because he "admits he does not know how the streaming software turned [on] which means he cannot plausibly allege that the livestream was the product of human authorship." *Id.* "Regardless, even if the Court accepts Plaintiff's strained 'figurative' reading of his allegations, the lack of creativity in the livestream, as discussed above, still dooms his copyright claim." *Id.*

The District Court also rejected Plaintiff's argument that his copyright must be assumed valid because it was registered with the Copyright Office. Citing blackletter Ninth Circuit law, the court explained that the "presumption of the validity of a registered copyright may be overcome by the offer [of] some evidence

or proof to dispute or deny the plaintiff's prima facie case of infringement." *Id.*  It is a rebuttable, not a conclusive, presumption. "Here, Plaintiff's registration application contained inaccurate and incomplete information: it claimed the livestream was a 'Dramatic Work' and did not disclose the circumstances by which the recording occurred." 1-AlphabetSER-9. "Thus, the allegations in the complaint and evidence in the record overcome the presumption of the validity of the registered copyright." *Id.*  Notably, and contrary to Plaintiff's arguments in his appeal brief (at 20-22), the court did ***not*** invalidate the registration itself, nor did the court order that it be canceled by the Copyright Office. The court simply concluded that new evidence presented in the litigation was sufficient to overcome the rebuttable presumption of validity that ordinarily attaches to a registration. The court then considered that evidence in holding that the Accidental Livestream does not contain copyrightable subject matter. *Id.*[8]

Lastly, the District Court denied Plaintiff's request to file a third amended complaint, finding that his "allegations and admissions regarding the circumstances surrounding the creation of the livestream are fatal to his copyright claim." 1-

---

[8] Plaintiff notes in his appeal brief that the District Court initially permitted his copyright claim to proceed. Br. at 7, 35. But those findings were made in screening orders under 28 U.S.C. § 1915, before any defendants appeared and before Judge White had the benefit of briefing or evidence on the issue—including Plaintiff's registration application. 3-AlphabetSER-327-332, 2-AlphabetSER-360-366. As the court noted, "at the time [it] screened the complaint, it was not aware that Plaintiff's registration was based on an inaccurate application." 1-AlphabetSER-9.

AlphabetSER-9-10. The court noted that Plaintiff did not seek to **_clarify_** his allegations, which might be permissible, but instead to **_undo_** fatal admissions as to how the Accidental Livestream was created, which is not permissible. *Id.*

Ultimately the District Court saw this case for what it is: a bad-faith effort by a vexatious litigant to use copyright law to stop people from criticizing him:

> Plaintiff clearly feels aggrieved by comments made about him online by the Individual Defendants and others, but that does not mean Plaintiff has a viable copyright claim. He does not, and his pursuit of his claim has caused the Court to expend significant resources addressing his meritless claims. Plaintiff is warned that if he persists in filing frivolous or meritless lawsuits, the Court may impose sanctions, bar from [sic] him from filing further actions without prior approval, and/or deem him a vexatious litigant.

1-AlphabetSER-10.[9]

Plaintiff responded by filing a series of motions: (1) for leave to file a motion for reconsideration pursuant to Northern District of California Civil Local Rule 7-9(a); (2) for relief from the judgment pursuant to Federal Rule of Civil Procedure 60(b)(6); and (3) for Judge White to recuse himself due to a "grudge" that Plaintiff alleged Judge White held against him. 2-AlphabetSER-74-78. Several months later,

---

[9] Plaintiff did not heed Judge White's warning and continued filing similar copyright lawsuits, resulting in his being declared a vexatious litigant in the Northern District of California a few weeks ago. *Stebbins v. Google*, 2023 WL 6139454, at *10 ("Plaintiff has brought copyright claims of little merit against his critics, whom he considers harassing him online. Although the Court is cognizant of the dangers of cyberbullying, the Court reiterates that copyright law is not appropriate vehicle to seek remedy.").

Plaintiff grew impatient and filed another petition for a writ of mandamus, asserting that the District Court was taking too long to rule on his motions. This Court summarily denied the petition. *Stebbins v. USDC-CAOAK*, No. 22-70269 (9th Cir. Jan. 26, 2023).

In March 2023, the District Court denied Plaintiff's motions. 2-AlphabetSER-13-20. The court denied reconsideration because Plaintiff simply repeated the same arguments he had already made in connection with the prior motions. 2-AlphabetSER-14-15. The court also rejected certain evidence that Plaintiff purported to offer because he had failed to actually cite the evidence or satisfy basic conditions for requesting judicial notice. 2-AlphabetSER-15-16. And the court denied his request to set aside the judgment, because Federal Rule 60(b)(6) "is not intended to redress error on the part of the District Court, or to provide a party a substitute for an appeal." 2-AlphabetSER-19-20.

Finally, the District Court rejected Plaintiff's demands for recusal because Plaintiff merely perceived a "grudge" based on the court's rulings against him. 2-AlphabetSER-20. Any disfavor that Plaintiff imagined came not from an "extrajudicial source" but instead from Plaintiff's own behavior during the course of the case. *Id.* Plaintiff appealed. 3-AlphabetSER-380-382.

# SUMMARY OF ARGUMENT

## *Permissive Intervention*

The District Court appropriately exercised its discretion in permitting Alphabet and YouTube to intervene in this case under Federal Rule of Civil Procedure 24(b) for the limited purpose of challenging the copyrightability of Plaintiff's Accidental Livestream. That rule authorizes a court to "permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Under Ninth Circuit law, a court may grant permissive intervention where (1) there are independent grounds for jurisdiction, (2) the request to intervene is timely, and (3) the intervenor's claim or defense presents a question of law or fact that is common to the underlying action. Once these conditions are met, permissive intervention is committed to the broad discretion of the court. In exercising that discretion, the court may take into account a variety of factors, including whether the intervenor's interests are adequately represented by other parties in the case, whether intervention would cause undue delay or prejudice, and judicial economy.

The District Court properly concluded that all of these preconditions were met. There are no jurisdictional issues since this is a federal-question case. Alphabet and YouTube's motion was timely filed just one week after Alphabet was voluntarily dismissed as a defendant in this case. And the issue for which Alphabet and

YouTube sought to intervene—the copyrightability of the Accidental Livestream—was common to the *Rebolo* action where they were still active defendants. That issue was ripe for decision in this case in light of Plaintiff's pending Motion for Default Judgment against the Individual Defendants, which he plainly intended to then use against Alphabet and YouTube in *Rebolo*. As to the discretionary factors: Alphabet and YouTube's interests were not being represented by the Individual Defendants remaining in the case, all of whom had defaulted; intervention caused no undue delay since there were no pending deadlines; Plaintiff was not prejudiced by being held to his burden of showing that he had a legitimate copyright claim; and judicial economy was served by preventing the same issue from being litigated twice with the potential for inconsistent results. Intervention was also appropriate to combat Plaintiff's procedural gamesmanship.

Plaintiff's only response is that he voluntarily dismissed the Platform Defendants under Federal Rule of Civil Procedure 41(a), so permitting them to intervene supposedly negated his "absolute right" to end the case against them. Not so. Plaintiff confuses dismissing a party as a ***defendant*** under Rule 41 with allowing a party to be heard as an ***intervenor*** under Rule 24 as to a limited issue (here, the copyrightability of the Accidental Livestream). That issue remained in dispute in both this case and *Rebolo* because Plaintiff dismissed some but not all of the defendants in this case and was still seeking a default judgment against the

remaining defendants. Thus, even after voluntary dismissal of some defendants in this case, there was still a live case or controversy over the copyrightability of the Accidental Livestream, which was also at issue in *Rebolo* where Alphabet and YouTube were still defendants. It was therefore well within the District Court's discretion to permit intervention here and to consider arguments from all interested parties as to why the video was not protected by copyright.

### *Copyrightability of the Accidental Livestream*

Copyright protection subsists in (1) creative works of authorship that are (2) fixed in a tangible medium of expression by a human author. But here, the Accidental Livestream was made entirely by accident, without Plaintiff's knowledge, and without the slightest degree of creativity on his part. This is not a case where an author intends to create a work but catches something by happenstance, such as a painter who slips while holding the brush. Rather, Plaintiff admits that the ***very making*** of the video was accidental and done entirely without his knowledge or creative input. On top of that, the fixation of the video itself was performed by computer software—not a human author—without Plaintiff even realizing the camera had turned on.

Plaintiff surmises that the video may have turned on by his own errant keystroke rather than by software acting on "its own accord," but he conceded below (and concedes again on appeal) that "any attempts at explaining how it happened are

just speculation." That concession, too, is fatal to his case because ultimately it is he who must establish a valid copyright in the video to state a claim of infringement. If Plaintiff cannot say how the video was created, then he cannot state, much less prove, his own claim. No amount of repleading could change that fact.

Even if the Accidental Livestream had been created by Plaintiff's errant keystroke, it would still lack the necessary "creative spark" to be copyrightable. Plaintiff made no creative choices in fixing the video or generating its content. The video shows nothing other than an individual doing mundane, daily activities in his apartment. It does not embody a dramatic work, a pantomime, a musical composition, or some other choreographed performance that was captured in the footage, even if by accident. Nor is the video a "selfie" or a self-portrait, where the likeness depicted in the content is simultaneously the author who deliberately created it.

While Plaintiff did manage to register the Accidental Livestream with the Copyright Office as a "dramatic work," the presumption of validity of a registered copyright is rebuttable and may therefore be overcome with evidence or proof to the contrary. The District Court correctly found that the presumption of validity was overcome by admissions found in the complaint itself, which established that the Accidental Livestream lacked creativity and did not have a human author, along with

evidence presented by Alphabet and YouTube showing that Plaintiff withheld those pertinent facts about the video's creation in his copyright application.

For these reasons the District Court was correct in denying Plaintiff's Motion for Default Judgment and dismissing the case. Dismissal with prejudice was also appropriate. Plaintiff sought leave to amend not to clarify his allegations or provide added detail, but to change the facts concerning how the Accidental Livestream was created—facts that he now, in hindsight, finds inconvenient to his case. That is not a permissible basis for seeking leave to amend.

## STANDARDS OF REVIEW

The District Court's decisions to grant permissive intervention under Federal Rule of Civil Procedure 24(b) and to deny entry of default judgment are reviewed for abuse of discretion. *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1352 (9th Cir. 2013) (permissive intervention); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (default judgment).

The District Court's denial of leave to amend is reviewed for abuse of discretion, but any question regarding futility of amendment is reviewed de novo. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1197 (9th Cir. 2021).

**ARGUMENT**

I.    **THE DISTRICT COURT APPROPRIATELY PERMITTED ALPHABET AND YOUTUBE TO INTERVENE BECAUSE THEY ARE DEFENDANTS IN A RELATED ACTION INVOLVING COMMON DISPOSITIVE ISSUES**

A.    **Alphabet and YouTube Satisfied All Conditions for Permissive Intervention Under Rule 24(b)**

Federal Rule of Civil Procedure 24(b)(1)(B) authorizes a District Court, on timely motion, to "permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact."  "Thus, a court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common."  *United States v. City of L.A.*, 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted); *accord, e.g.*, *California v. Health & Hum. Servs.*, 330 F.R.D. 248, 252 (N.D. Cal. 2019).  However, the first prong—an "independent ground for [subject matter] jurisdiction"—"does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims."  *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 834-44 (9th Cir. 2011); *accord, e.g.*, *Health & Hum. Servs.*, 330 F.R.D. at 254.  In such cases "the identity of the parties is irrelevant and the district court's jurisdiction is grounded in the federal question(s) raised by the plaintiff."  *Freedom from Religion Found.*, 644 F.3d at 844.

-28-

Once these conditions are met, permissive intervention is "committed to the broad discretion of the district court." *Degamo v. Bank of Am., N.A.*, 849 F. App'x 620, 623 (9th Cir. 2021) (citation omitted). Courts consider whether the intervenor's interests are adequately represented by other parties in the case, whether intervention would cause undue delay or prejudice, and judicial economy. *Venegas v. Skaggs*, 867 F.2d 527, 530-31 (9th Cir. 1989), *aff'd*, 495 U.S. 82 (1990); Fed. R. Civ. P. 24(b)(3); *see also, e.g.*, *Health & Hum. Servs.*, 330 F.R.D. at 255 (finding intervention would "not unduly delay or prejudice the adjudication of the original parties' rights. If anything, allowing intervention will promote judicial economy and spare the parties from needing to litigate a similar case in another district.").

All of the conditions for permissive intervention were met here. First, there was no need for independent grounds for jurisdiction since this is a federal-question case, and Alphabet and YouTube did not raise any new claims. Second, the Motion to Intervene was timely because Alphabet and YouTube brought it only one week after Plaintiff voluntarily dismissed the Platform Defendants, and there were no pending deadlines. Third, copyrightability is a common issue in both this case and the related *Rebolo* case where Alphabet and YouTube are still defendants. Indeed the District Court stayed the *Rebolo* case for this very reason, at Plaintiff's request, because "a ruling in [*Polano*] will be relevant and potentially fully dispositive in [*Rebolo*]." *Rebolo*, Dkt. 14. A grant of default judgment in this case would have

required a finding that Plaintiff has a valid copyright in the Accidental Livestream. That could have led to inconsistent results concerning the same issue in *Rebolo*, where the validity of the same alleged copyright was still at issue.

The discretionary factors favored permissive intervention as well. Alphabet and YouTube's interests were not being represented in any fashion, given that all remaining defendants were in default. Intervention did not cause undue delay since there were no deadlines pending. Intervention was not unfairly prejudicial to Plaintiff because Alphabet and YouTube asked only that he be held to his burden of establishing a valid claim of copyright infringement. Finally, intervention promoted judicial economy because the District Court would otherwise have had to consider the same issue twice. If the court did not hear opposing arguments concerning copyrightability, it might have issued a default judgment in this case only to realize later in *Rebolo* that the first ruling was incorrect.

### B. Intervention Did Not Circumvent Plaintiff's Voluntary Dismissal of Alphabet as a Defendant

Plaintiff does not dispute that the Rule 24(b) preconditions were met and that the discretionary factors favored intervention. His only argument on appeal is that allowing intervention was tantamount to circumventing his "absolute right" to dismiss Alphabet as a defendant under Rule 41(a). Br. at 16-17. But YouTube was never a defendant in this case, so there was not even a theoretical conflict between Rules 41(a) and 24(b) in permitting YouTube to intervene. That alone is reason to

reject Plaintiff's argument.  But more fundamentally, Plaintiff conflates dismissal of ***defendants*** under Rule 41(a) with granting permissive intervention to ***interested non-parties*** under Rule 24(b).  Nothing in Rule 41(a) preempts intervention under Rule 24(b) if there are independent grounds for intervention as to a particular issue that remains live in the underlying case.

Plaintiff cites *Commercial Space Management Co., Inc. v. Boeing Co. Inc.*, 193 F.3d 1074, 1077-80 (9th Cir. 1999), to argue that the "right to a voluntary dismissal is absolute and impenetrable," and that the District Court "effectively gave the defendants a back door to allow them to fan the ashes of the action back into life." Br. at 17.  But his excerpt of that case leaves out the pertinent language.  There, the Ninth Circuit explained that it "is well settled that under Rule 41(a)(1)(i), a plaintiff has an absolute right to voluntarily dismiss his action" where the notice of dismissal "itself closes the file," "automatically terminates the action," and leaves "the parties as though no action had been brought."  193 F.3d at 1077 (citations omitted).  The Ninth Circuit's explanation of the "absolute right" was expressly cabined to cases where a plaintiff voluntarily dismisses and thus terminates the ***entire*** action.  That is what happened in the other cases Plaintiff cites (Br. at 18): *Fort Sill Apache Tribe of Oklahoma v. United States*, 2008 WL 2891654 (W.D. Okla. July 23, 2008), and *Dukes v. Wal-Mart Stores, Inc.*, 2016 WL 4269093 (N.D. Cal. Aug. 15, 2016).  As the District Court explained, "[t]hose cases stand for the

proposition that a court loses jurisdiction to entertain a motion to intervene once a case is dismissed pursuant to Rule 41(a)(1) because there is no longer a pending case or controversy." 2-AlphabetSER-15 n.2.

That is not what happened here. The District Court did not "fan the ashes of the action back into life" because the action was not dead. Plaintiff dismissed only *some* of the defendants in this case. He still sought a default judgment against the Individual Defendants, which required the court to decide whether the Accidental Livestream was copyrightable. And he was still litigating the same issue against Alphabet and YouTube in *Rebolo*. Under those circumstances, the court "retained jurisdiction over the ongoing case into which a non-party could intervene" (*id.*), and it properly permitted Alphabet and YouTube to be heard on a dispositive issue that remained alive in both cases.

Plaintiff insists that Rule 41(a) allows him to dismiss fewer than all defendants. Br. at 18 (citing *Pedrina v. Han Kuk Chun*, 987 F.2d 608 (9th Cir. 1993)). That is true but irrelevant to the issue presented on appeal. Plaintiff can dismiss fewer than all defendants if he chooses, but that does not bar an interested party from intervening under Rule 24(b) as to a particular issue in an ongoing case— provided the requirements for permissive intervention are otherwise met, as they were here. The case he cites, *Pedrina*, says nothing to the contrary and indeed does not even address intervention under Rule 24(b). And, as noted above, even if this

-32-

Court were to credit Plaintiff's arguments about his right to dismiss **Alphabet** as a defendant, it would make no difference because **YouTube** was never a defendant in this case and thus was never subject to his notice of dismissal.

It was also appropriate for the District Court to exercise its discretion to allow intervention to combat "Plaintiff's efforts to manipulate the litigation process and his blatant gamesmanship." 2-AlphabetSER-191. Plaintiff has been declared a "vexatious" litigant who has "abused the system," forcing courts "to expend countless hours of time and judicial resources" addressing his procedural shenanigans. *Stebbins v. Stebbins*, 2013 WL 6182991, at *1; *accord Stebbins v. Google*, 2023 WL 6139454, at *11. His effort to silence opposing arguments in this case is part of the same pattern, and the court did not have to tolerate it. Plaintiff "made no secret that he dismissed the Corporate Defendants to prevent them from challenging the validity of the livestream's copyright and that he intends to re-litigate the same issue in the Related Case." 1-AlphabetSER-6.

In sum, because any ruling in this case would necessarily impact overlapping issues in *Rebolo*, the District Court did not abuse its discretion by considering the Intervenors' evidence and arguments concerning the invalidity of Plaintiff's copyright in the Accidental Livestream.

## II.    THE DISTRICT COURT CORRECTLY DENIED PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BECAUSE THE ACCIDENTAL LIVESTREAM IS NOT COPYRIGHTABLE

Plaintiff contended below that because he dismissed all of the defendants who challenged his copyright, the District Court had no choice but to issue judgment in his favor "assuming the copyright's validity to be unchallenged." 2-AlphabetSER-187-188 ¶ 12. But a defendant's default does not automatically entitle the plaintiff to a judgment in his favor. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (affirming denial of appellant's motion for default judgment, despite appellees' failure to timely answer, "[g]iven the lack of merit in appellant's substantive claims"). In exercising this discretion, a court considers several factors, including (as relevant here) "the merits of plaintiff's substantive claim," "the sufficiency of the complaint," and "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471-72. While "well-pleaded factual allegations" in the complaint are assumed to be true for purposes of a default judgment, "legal conclusions"—such as whether Plaintiff has a valid copyright—are not. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). For reasons set forth below, the court appropriately exercised its discretion to deny Plaintiff's Motion for Default Judgment and dismiss the case with prejudice because the Accidental Livestream is not copyrightable.

### A.     The Accidental Livestream Is Not a Creative Work of Human Authorship

To state a claim for copyright infringement, Plaintiff must first show "that he owns a valid copyright" in the Accidental Livestream. *Skidmore for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). "Copyright protection subsists … in original works of authorship fixed in any tangible medium of expression …." 17 U.S.C. § 102(a). "The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means … that it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991) (citation omitted). "To be sure, the requisite level of creativity is extremely low[,]" but the work must at least possess "some creative spark" to be copyrightable. *Id.*

In addition, the "fixing" of a creative work in a tangible medium of expression must be done "by or under the authority of the author." 17 U.S.C. § 101. That author must be a human, not a machine. Compendium of U.S. Copyright Office Practices § 313.2 ("works produced by a machine or mere mechanical process that operates randomly or automatically without any creative input or intervention from a human author" are not copyrightable)[10]; *cf. Naruto v. Slater*, 2016 WL 362231 (N.D. Cal.

---

[10] Available at https://www.copyright.gov/comp3/chap300/ch300-copyrightable-authorship.pdf.

-35-

Jan. 28, 2016), *aff'd*, 888 F.3d 418 (9th Cir. 2018) (holding that a monkey could not sue for infringement of a selfie it took with a camera). These two requirements— human authorship and a modicum of creativity—are consistent with the Constitution, which calls upon Congress to protect the rights of "Authors" to "promote the Progress of Science and useful Arts." U.S. Const. Art. I, § 8, Cl. 8.

Plaintiff states in his complaint that the Accidental Livestream was created when "my livestream software turned on of its own accord without me realizing it." 3-AlphabetSER-304 ¶ 22. The software remained on for nearly two hours until he "realized it was on," at which point he turned it off. *Id.* During this time Plaintiff could be seen doing "mundane, daily activities." *Id.* "[T]he only interesting and memorable part of this otherwise boring and contentless livestream" were "strange noises" that Plaintiff says he "did not cause." *Id.* ¶ 23. Plaintiff made no creative choices in generating this content, whether in the form of directing the scenery or even turning on the stationary camera.

Plaintiff's own complaint establishes that the Accidental Livestream is not copyrightable for two independent reasons. First, the fixation of the work was performed by a machine, not a human author. Plaintiff admits that a software glitch "turned on [the livestream] *of its own accord* without me realizing it." *Id.* ¶ 22 (emphasis added). This fits squarely within the Copyright Office's guidance that "works produced by a machine or mere mechanical process that operates randomly

-36-

or automatically without any creative input or intervention from a human author" are not copyrightable. Compendium of U.S. Copyright Office Practices § 313.2. Plaintiff himself conceded in his Motion for Default Judgment that the "accidental" nature of the video's creation would "invalidate its copyright [ ] if the streaming software turned on, entirely of its own accord, without any human input (knowing or otherwise) causing it to happen." 3-AlphabetSER-285 ¶ 42. Yet that is precisely what he alleges to have happened in the complaint, and those facts are presumed to be true for purposes of his motion. *DirecTV*, 503 F.3d at 854.

Plaintiff responds that the Accidental Livestream may have had a human author because it might have been created by his own errant keystroke, rather than a software glitch as he alleges in the complaint. He argued below that Alphabet and YouTube rely on a "hyper-literal interpretation" of the complaint, and that his own allegations should be taken "figuratively, not literally." 2-AlphabetSER-126 ¶ 13, 2-AlphabetSER-133 ¶ 51; *see also* 2-AlphabetSER-142 ¶ 93(a) ("my statements were speculative rather than based on personal knowledge"). On appeal, he again insists that the allegations in his complaint were "merely a figure of speech … intended to be taken figuratively rather than literally." Br. at 39; *see also id.* at 9. He now claims—after realizing he pleaded himself out of court—that "the stream software was most likely turned on by an errant keystroke, not purely autonomous means." *Id.* at 11. But anyone who owns a computer knows that machines are not

perfect.  There is nothing "hyper-literal" or "figurative" about software doing something unexpectedly.  Plaintiff alleged in his complaint that the livestream "turned on of its own accord."  It was only after he realized his own allegations meant the video was not copyrightable that he tried to change his story.

Even if the Court were willing to entertain Plaintiff's new version of events—an errant keystroke rather than a software glitch—Plaintiff admits he has no idea which scenario occurred, and that "any attempts at explaining how it happened are just speculation."  2-AlphabetSER-140 ¶ 84; 2-AlphabetSER-133 ¶ 52 ("I don't know how the streaming software turned on!"); 2-AlphabetSER-133-34 ¶ 53 ("I didn't know how it happened, and [ ] any efforts by me to guess as to how it happened are just that: A guess, not based on personal knowledge."); 2-AlphabetSER-140 ¶ 84 (same).  On appeal he makes the same concession: "I don't know for sure exactly how the software turned on, meaning that my attempts to guess as to the cause are just that: A guess, not based on personal knowledge!"  Br. at 3; *see also id.* at 39 ("I made it clear … that my allegations of how the streaming software came on were 'not based on personal knowledge.'").  That is fatal to his case, because Plaintiff must plausibly allege his own cause of action.  If he cannot allege that the video was a product of human authorship, contrary to the factual allegations in his own complaint, he cannot prevail on the first element of copyright infringement.

The Accidental Livestream is not copyrightable for a second reason as well: it lacks the requisite degree of creativity regardless of how it was made. Even under the scenario Plaintiff supposes—that the video was created by an errant keystroke— the entire video was still recorded without his knowledge or creative input. He did not direct the scenery, position the camera, focus the lens, adjust the lighting, or make any other creative choices that a videographer or director would ordinarily make. Plaintiff insists that he must have set up his camera or arranged his apartment furniture at some point before the video was recorded (*id.* at 34), but he did not do any of that in connection with making the specific video that he is suing over in this case.

Plaintiff argues that "accidental" creative expression is copyrightable (*id.* at 28-29), which is sometimes true, but here the very ***making*** of the video was unknown to him and not creative. Plaintiff's lone case, *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99 (2d Cir. 1951), illustrates the distinction. In that case the Second Circuit noted that an author still engages in creative expression even if he or she makes a mistake in the process of creating a work, i.e., due to "[a] copyist's bad eyesight or defective musculature, or a shock caused by a clap of thunder[.]" *Id.* at 104-05. Thus, for example, if an artist is painting a picture but slips in holding the brush, the resulting stroke is a protectable part of the copyrightable whole. Those mistakes are still creative elements because the author was engaged in the deliberate

process of creating something (in *Alfred Bell*, a mezzotint). "[H]e has employed skill and judgment in its production[,]" even if happy accidents occurred along the way. *Id.* at 104 n.22.[11]

The facts of this case stand in stark contrast to those in *Alfred Bell*. Unlike the author in that case, Plaintiff did not intend to create anything, nor did he catch something copyrightable by happenstance. Plaintiff admits that the very making of the video was accidental and done entirely without his knowledge, and that his livestream software recorded him doing nothing other than "mundane, daily activities," resulting in a "contentless" video. 3-AlphabetSER-304 ¶¶ 22-23. Plaintiff suggests it is "absolutely plausible that I was in the process of creating something intentional when the streaming software accidentally came on," but he concedes that "[w]hat exactly I was doing is lost to history"—so he cannot prove it. Br. at 31-32; *see also id.* at 33 (admitting "we do not know exactly what I was doing"). Even if he could prove what he was doing, the Accidental Livestream does not embody his hypothetical creation. All it shows is Plaintiff walking around his

---

[11] Plaintiff asserts that the District Court erred by supposedly holding that "accidental works can be copyrighted if, and only if, the accidental variation came from one of those three ultra-specific sources"—bad eyesight, defective musculature, or a clap of thunder. Br. at 29. That is not what the court said. Plaintiff also suggests that the court erred by holding that "all works created by accident are, automatically and categorically, inherently devoid of copyright protection, simply by reason of them being accidental." *Id.* at 37. Again, that is not what the court said.

apartment and sitting at his computer. Whatever else he might have been doing off-camera has no bearing on whether the content in the footage is copyrightable.

Plaintiff conflates being the **subject** of a work and being the **author** of that work, when being the subject of a work is neither a necessary nor a sufficient condition for being its author. He argued below that "[i]f I were taking a selfie, any one of [my facial expressions] would be singularly sufficient individual creative expression to be entitled to copyright protection." 2-AlphabetSER-137-138 ¶ 71. That may be true in some cases, but Plaintiff did not take a selfie here. When a person takes a selfie, he or she is both the subject of the image and the author, much like an artist who paints a self-portrait. His or her facial expressions form part of a series of creative choices in deliberately capturing the author's own likeness, including where to position the camera, how to pose, what scenery to include, and when to snap the photo. In that case the copyright is owned by the person depicted in the image, because the author and subject are one and the same. But that is not what happened here. Whether the video was created by a computer glitch or an errant keystroke, Plaintiff had no idea the camera was rolling and made no creative choices when fixing the content in a tangible medium. His likeness was simply (and inadvertently) captured on video. The Accidental Livestream thus lacks the creative spark by a human author necessary to make it copyrightable.

**B.      Plaintiff Is Not Entitled to a Presumption of Copyright Validity**

Plaintiff argued below that, because he managed to register the Accidental Livestream with the Copyright Office, "[t]he presumption of validity of my copyright is not within this Court's discretion." 2-AlphabetSER-126 ¶ 12; *see also* 2-AlphabetSER-133 ¶ 48. That is not true. Ordinarily a certificate of registration will "constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). However, "[t]he presumption of the validity of a registered copyright may be overcome by the offer [of] some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1145 (9th Cir. 2003) (citation omitted). The presumption of validity to which Plaintiff is entitled by virtue of his copyright registration is rebuttable, not conclusive.

Here, the evidence that rebuts the presumption is found in the admissions Plaintiff made in his own complaint regarding how the video was made. Plaintiff did not disclose any of these facts in his application to register the video with the Copyright Office, which he conceded in his Motion for Default Judgment. 2-AlphabetSER-179-183; *see also* 3-AlphabetSER-267 ¶ 3. Plaintiff did not inform the Copyright Office that the "livestream software turned on of its own accord without me realizing it," and he did not disclose that "the only interesting and memorable part" of this otherwise "contentless" video was not caused by him. 3-

-42-

AlphabetSER-304 ¶¶ 22-23.   That is more than enough to overcome the "presumption of the validity" of Plaintiff's copyright and to "deny the plaintiff's prima facie case of infringement."   *Lamps Plus*, 345 F.3d at 1144-47 (citation omitted) (holding copyright invalid notwithstanding its registration because information not disclosed in plaintiff's application showed the work lacked creativity).

Plaintiff argued below that the Copyright Office was "constructively notified" of these facts, because he submitted a copy of the video with his application and called the video an "Accidental" Livestream.   2-AlphabetSER-124 ¶ 2, 2-AlphabetSER-136-137 ¶ 65.   But that told the examiners nothing about the critical circumstances in which the video was created.   To the contrary, Plaintiff characterized the video in his application as a "Dramatic Work" (2-AlphabetSER-182), suggesting to the examiners that while some aspect of the video was "accidental," it still recorded content that was choreographed in some manner.   No matter how Plaintiff tries to speculate what the examiners understood, the fact remains that the District Court was in possession of facts and admissions which effectively rebut any presumption concerning the validity of his copyright.   *See Lamps Plus*, 345 F.3d at 1144-47) ("To rebut the presumption, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement.") (citation omitted).

Plaintiff also claims that the District Court committed an "egregious" error because it supposedly "declared the copyright registration invalid" without finding that he **intended** to mislead the U.S. Copyright Office, which he claims is required to invalidate the copyright under 17 U.S.C. § 411. Br. at 20-22. That is incorrect. Plaintiff is confusing the copyright preregistration requirement under Section 411 of the Copyright Act with the presumption of copyright validity in asserting a claim of infringement. *Cf. Stebbins v. Google*, 2023 WL 6139454, at *2 (rejecting the same argument and noting that Plaintiff "completely mischaracterized" Judge White's similar order in *Rebolo*).

Section 411(a) requires that each allegedly infringed work be registered with the Copyright Office before a lawsuit may be filed concerning its infringement. 17 U.S.C. § 411(a); *see also Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019). Subsection (b) states that a registration under false pretenses does not satisfy this pre-filing requirement if "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." Plaintiff argues that the District Court made no findings as to the knowledge requirement in subsection (b). Br. at 20-22. But Alphabet and YouTube did not raise a Section 411 defense. They did not argue that fraudulent inaccuracies in Plaintiff's copyright application amounted

to a failure to meet the pre-filing requirement. Instead they argued, and the court agreed, that the facts admitted in the complaint were sufficient to rebut any presumption in litigation that the work at issue was copyrightable. That has nothing to do with the pre-filing requirement or the knowledge standard that Plaintiff cites from Section 411(b).

In *Lamps Plus*, for example, the Ninth Circuit found that facts before the court were sufficient to rebut the presumption of validity in a registered work, even if the registrant did not intend to defraud the Copyright Office for purposes of Section 411. 345 F.3d at 1144-45 (concluding that "[t]he record, viewed in the light most favorable to Lamps Plus, does not demonstrate that it intended to defraud the Copyright Office"); *id.* at 1147 (holding nonetheless that plaintiff's work was not copyrightable because it lacked "the quantum of originality needed to merit copyright protection," based on facts not known to the examiners at the time of registration) (citation omitted). Here too, the District Court held the presumption of validity had been rebutted and then concluded that the Accidental Livestream was not copyrightable based on the evidence before it. The examiners did not have that information when they approved Plaintiff's application. Whether that was a result of fraud or innocent mistake is irrelevant and has no bearing on whether the content at issue is copyrightable. The court's finding did not require the court to "invalidate" the registration based on a showing of fraud under Section 411.

### C.  Plaintiff Cannot Save His Case by Contradicting Prior Admissions in an Amended Complaint

Plaintiff argues that even if the video is not copyrightable based upon the allegations made in his operative complaint, those deficiencies "could easily be corrected by an amended complaint."  Br. at 33.  He seeks not to provide further details or clarification, but to fundamentally undo his factual admission that the "livestream software turned on of its own accord without me realizing it," along with other admissions that are fatal to his claims.

This he cannot do.  "To determine whether amendment would be futile, courts examine whether the complaint can be amended to cure the defect requiring dismissal 'without contradicting any of the allegations of [the] original complaint.'" *Kifle v. YouTube LLC*, 2022 WL 326613, at *3 (N.D. Cal. Feb. 3, 2022) (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990)) ("Although leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading.") (citation omitted)).  Plaintiff admits that he "regret[s] wording the Complaint the way I did.  It has certainly caused me a lot of trouble."  Br. at 41.  That is not reason to grant leave to amend.  Plaintiff cannot use an amendment to change inconvenient facts that he has already alleged, simply to dodge a defense that he now finds troublesome.

Any such amendment would be futile in any event.  As explained above, the Accidental Livestream lacks the requisite human authorship and modicum of

creativity regardless of whether it was created by a software glitch or errant keystroke. The result is the same: Plaintiff cannot assert copyright protection over the video.

## III. PLAINTIFF OFFERS NO OTHER GROUNDS FOR REVERSAL

Plaintiff raises a number of additional objections to the ruling below, all of which are either frivolous or do not pertain to Alphabet and YouTube. We address each of them briefly.

*Recusal*. Plaintiff accuses Judge White of having a "grudge" against him. Br. at 13-14. These accusations are unfounded. Judge White held, correctly, that Plaintiff's "abuse of the litigation process and his attempt to evade a ruling" on the copyrightability of the Accidental Livestream—an "essential question at the core" of both *Polano* and *Rebolo*—favored intervention. 1-AlphabetSER-6. That is no admission of a grudge. It is a reasoned ruling based on Plaintiff's own procedural shenanigans in the litigation.

*Reconsideration*. Plaintiff contends the District Court erred because it purported to deny a "motion for reconsideration," when in fact Plaintiff had only filed a motion for "leave to file" a motion for reconsideration. Br. at 14-16. Plaintiff includes a screenshot of the order denying his motion which (in his view) suggests that the court disregarded the nature of his motion. *Id.* at 15. But the screenshot cuts off the rest of the page, which disproves the alleged error. Though styled as an

"Order Denying Motion for Reconsideration," the order expressly clarifies that it is addressing "a motion requesting ***leave to file*** a motion for reconsideration" as required by Civil Local Rule 7-9(a). 2-AlphabetSER-13 (emphasis added). The court denied that motion based on the standard for seeking ***leave to file***, explaining that "a party seeking leave to file a motion for reconsideration may not reargue written or oral argument previously asserted to the Court." 2-AlphabetSER-14 (citing N.D. Cal. Civil L.R. 7-9(c) ("No motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered."). The court "already considered and rejected" Plaintiff's arguments, and thus his motion for leave was "improper under the Local Rule's prohibition against repeating previous arguments." 2-AlphabetSER-15 (citing Civil L.R. 7-9(c)).

***Sanctions***. Plaintiff argues that the District Court abused its discretion by denying his motion to sanction Alphabet and YouTube's counsel, which Plaintiff filed because he disagreed with arguments counsel made in a motion to have *Polano* deemed related to his latest copyright case against Google before Judge Thompson. Br. at 11-12, 41-43. Plaintiff's effort to sanction counsel was patently frivolous and failed to comply with the procedures set forth in Federal Rule of Civil Procedure 11(c)(2). *See* 2-AlphabetSER-26-42 (Plaintiff's motion for sanctions); 2-

AlphabetSER-21-23 (Intervenors' opposition); 2-AlphabetSER-12 (order denying motion). In any event, the court's decision did not prejudice Plaintiff because the court ultimately denied Alphabet and YouTube's Motion to Relate the cases. 2-AlphabetSER-24-25. That motion also had nothing to do with the outcome of *Polano*.

***Other Claims Against Individual Defendants***. Finally, Plaintiff appeals the dismissal of his claims against certain Individual Defendants for (i) submitting an allegedly false copyright takedown notice under 17 U.S.C. § 512(f), and (2) intentional infliction of emotional distress. Br. at 22-25; *see also* 2-AlphabetSER-16-19 (rejecting Section 512(f) claim); 3-AlphabetSER-331-332 (rejecting IIED claim). Neither claim involves Alphabet or YouTube. Intervenors see no error in the District Court's analysis, but otherwise take no position on those issues.

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's decisions to permit Alphabet and YouTube to intervene, to deny Plaintiff's Motion for Default Judgment, and to dismiss this case with prejudice.

Dated:  September 27, 2023      Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: *s/ Jeremy P. Auster*

Jeremy P. Auster
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
jauster@wsgr.com

*Counsel for Intervenors-Appellees*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-15531

I am the attorney or self-represented party.

**This brief contains** | 11,903 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Jeremy Auster | **Date** | 9/27/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*