**23-15531**

IN THE

# United States Court of Appeals

## FOR THE NINTH CIRCUIT

◆◆

DAVID ANTHONY STEBBINS, DBA Acerthorn,

*Plaintiff-Appellant,*

—v.—

KARL POLANO, DBA Sofiannp; FREDERICK ALLISON,
DBA InitiativeKookie; RAUL MATEAS, DBA TGP482;
ALPHABET, INC.; DISCORD, INC.; AMAZON.COM, INC.; YOUTUBE, LLC,

*Defendants-Appellees,*

—and—

FACEBOOK, INC.,

*Defendant.*

————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

————

## SUPPLEMENTAL EXCERPTS OF RECORD
## VOLUME II OF III
## (Pages SER11 to SER201)

JEREMY P. AUSTER
WILSON SONSINI GOODRICH
& ROSATI
1301 Avenue of the Americas,
40th Floor
New York, New York 10019
(212) 999-5800

*Attorneys for Defendants-Appellees
Alphabet, Inc. and YouTube, LLC*

**SER12**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID A. STEBBINS,

          Plaintiff,

   v.

KARL POLANO, et al.,

          Defendants.

Case No.  21-cv-04184-JSW

**ORDER DENYING MOTION FOR PROTECTIVE ORDER**

Re: Dkt. No. 179

Plaintiff's motion for a protective order and sanctions is DENIED.  Plaintiff offers no legal or factual basis supporting his request.  Moreover, Plaintiff's motion fails to comply with local rules and this Court's order regarding his response to the administrative motion relate.

**IT IS SO ORDERED.**

Dated: March 28, 2023

_____

JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID A. STEBBINS, | Case No. 21-cv-04184-JSW |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION FOR RECONSIDERATION AND RECUSAL AND DENYING MOTION FOR RELIEF FROM JUDGMENT** |
| KARL POLANO, et al., | |
| Defendants. | Re: Dkt. Nos. 159, 162, 165 |

United States District Court
Northern District of California

Now before the Court for consideration are the motion for reconsideration and recusal and motion for relief from judgment filed by Plaintiff David Stebbins ("Plaintiff"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument.[1] *See* N.D. Civ. L.R. 7-1(b). For the following reasons, the Court DENIES Plaintiff's motions.

**BACKGROUND**

On July 11, 2022, this Court issued an order denying Plaintiff's motion for default judgment and dismissing the action. That same day, before the Court entered judgment, Plaintiff filed a motion requesting leave to file a motion for reconsideration. The Court entered judgment on July 11, 2022. Plaintiff subsequently filed a motion to set aside judgment pursuant to Federal Rule of Civil Procedure 60(b). In his motions, Plaintiff moves the Court to reconsider its order dismissing the case for five reasons: (1) the Court erred in permitting intervention by Alphabet and YouTube; (2) the Court erred in finding the work showed minimal creativity; (3) the Court improperly considered certain "inadmissible" allegations in the SAC in finding the work lacked

---

[1] The Court also considered Plaintiff's supplemental filing in support of both motions. (*See* Dkt. No. 165.)

1    human authorship; (4) the Court ignored evidence that showed the Copyright Office was aware of

2    errors in his registration application; and (5) the Court failed to adjudicate the claim for

3    misrepresentation under 512(f)(1).

4            The Court will address additional facts as necessary in the analysis.

5                                          **ANALYSIS**

6    **A.       The Court Denies Plaintiff's Motion for Reconsideration.**

7            Under Local Rule 7-9(b), reconsideration may be sought only if one of the following

8    circumstances exists: (1) a material difference in fact or law from that presented to the Court prior

9    to issuance of the order that is the subject of the motion for reconsideration; (2) new material facts

10   or a change of law occurring after issuance of such order; or (3) a manifest failure by the Court to

11   consider material facts or dispositive legal arguments that were presented to the Court before

12   issuance of such order.  N.D. Civ. L.R. 7-9(b)(1)-(3).  In addition, a party seeking leave to file a

13   motion for reconsideration may not reargue any written or oral argument previously asserted to the

14   Court. Civ. L.R. 7-9(c); *see also United States v. Hector*, 368 F. Supp. 2d 1060, 1063 (C.D. Cal.

15   2005), rev'd on other grounds, 474 F.3d 1150 (9th Cir. 2007) ("A motion for reconsideration is

16   not to be used as a means to reargue a case or to ask a court to rethink a decision it has made.").

17          Plaintiff brings his motion pursuant to Local Rule 7-9(b)(3), asserting manifest failure to

18   consider material facts or dispositive legal arguments presented to the Court.  Plaintiff seeks

19   reconsideration of five aspects of the Court's order dismissing this action.  First, Plaintiff asserts

20   that the Court erred in permitting Alphabet and YouTube to intervene, which circumvented

21   Plaintiff's earlier voluntary dismissal of the Corporate Defendants.  Second, Plaintiff asserts that

22   the Court erred in finding the work showed minimal creativity.  Third, Plaintiff contends that in

23   finding the work lacked human authorship, the Court improperly considered certain

24   "inadmissible" allegations in the SAC.  Fourth, Plaintiff contends that the Court ignored evidence

25   that showed the Copyright Office was aware of errors in his registration application and still

26   granted registration.  Fifth, Plaintiff asserts that the Court failed to adjudicate the claim for

27   misrepresentation under 512(f)(1) which he asserted against one of the individual defendants, Raul

28   Mateas ("Mateas").  The Court finds Plaintiff's arguments unavailing for the reasons below and

United States District Court
Northern District of California

2

**SER15**

Case 4:21-cv-04184-JSW   Document 186   Filed 03/28/23   Page 3 of 8

1    concludes that he has not shown that reconsideration is warranted under Civil Local Rule 7-9.

2           Plaintiff first argues that the Court erred in permitting Alphabet and YouTube to intervene

3    because it circumvented his earlier voluntary dismissal of Alphabet and Amazon.  The Court

4    already considered and rejected this argument in its order dismissing the action and thus it is

5    improper under the Local Rule's prohibition against repeating previous arguments.  *See* N.D. Civ.

6    L.R. 7-9(c).[2]

7           Plaintiff's second and third arguments for reconsideration challenge the Court's

8    conclusions regarding the creativity and human authorship of his livestream video.  The Court

9    considered and rejected Plaintiff's arguments regarding these elements in its order dismissing the

10   case.  Thus, Plaintiff's motion for reconsideration improperly attempts to reargue issues already

11   presented to and decided by the Court.  As the Court explained in the order dismissing the case,

12   the SAC establishes that the livestream does not contain the minimal creativity required to be

13   copyrightable and lacks human authorship.  These allegations are fatal to Plaintiff's copyright

14   claims related to the livestream.  Plaintiff cannot now recast his allegations as "inadmissible

15   hearsay" or use his motion for reconsideration as an attempt to amend his complaint.  As the Court

16   explained in its prior order, Plaintiff could not amend this complaint to cure these fatal defects

17   without impermissibly contradicting his original allegations that the software turned on of its own

18   accord and was "contentless and boring."  *See Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th

19   Cir. 2007) (dismissal of a pro se complaint with prejudice is proper where it is "absolute clear"

20   that the deficiencies in the complaint could not be cured by amendment).

21          Fourth, Plaintiff argues reconsideration is warranted because the Court failed to consider

22

23   _____

24   [2] Even if this were not the case, the additional cases Plaintiff now cites do not support
     reconsideration.  *See Fort Sill Apache Tribe of Oklahoma v. United States*, No. CIV-08-0541-F,
     2008 WL 2891654 (W.D. Okla. July 23, 2008); *Dukes v. Wal-Mart Stores, Inc.*, No. 01-CV-

25   02252-CRB, 2016 WL 4269093 (N.D. Cal. Aug. 15, 2016).  Those cases stand for the proposition
     that a court loses jurisdiction to entertain a motion to intervene once a case is dismissed pursuant

26   to Rule 41(a)(1) because there is no longer a pending case or controversy.  Here, in contrast,
     Plaintiff's voluntary dismissal of Alphabet and Amazon did not terminate the action because the

27   claims against the individual defendants remained.  Thus, the Court retained jurisdiction over the
     ongoing case into which a non-party could intervene.  Finally, even if the Court credited Plaintiff's

28   argument, it would not alter the outcome as to YouTube who was not named in this action prior to
     seeking to intervene.

United States District Court
Northern District of California

**SER16**

evidence regarding his classification of the accidental livestream as a "dramatic work." Plaintiff does not provide a citation to the evidence he claims the Court failed to consider. On review of Plaintiff's filing, it appears that Plaintiff may be referring to his request for judicial notice of the assertion that the Copyright Office required him to upload a copy of his work. (*See* Dkt. No. 144-1 at ¶ 1.) However, Plaintiff's assertion is not proper for judicial notice. To be entitled to judicial notice of a fact under Federal Rule of Evidence 201, Plaintiff must establish that the fact is not subject to reasonable dispute and is capable of immediate and accurate determination by resort to a source that cannot be reasonably questioned. Plaintiff's conclusory request for judicial notice did not satisfy either factor, and he did not supply the Court with any source material to determine if his request was justified. To the extent this is the evidence Plaintiff claims the Court failed to consider, reconsideration is not warranted on this basis.

Finally, Plaintiff asserts that reconsideration is warranted because the Court's order did not address his claim for misrepresentation against one of the individual defendants, Raul Mateas ("Mateas") pursuant to 17 U.S.C. section 512(f) ("Section 512(f)").

Plaintiff is correct that the Court did not expressly address Plaintiff's request for default judgment on this claim in its order dismissing the action. However, the Court has carefully reviewed Plaintiff's motion for default judgment and for the reasons discussed below, Plaintiff is not entitled to default judgment against Mateas on this claim.

A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment. *See Draper v. Coombs,* 792 F.2d 915, 924-25 (9th Cir.1986). Rather, granting or denying relief is entirely within the court's discretion. *See id.* The Ninth Circuit has enumerated the following factors (collectively, the *Eitel* factors) that a court may consider in determining whether to grant default judgment: (1) the merits of the plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the sum of money at stake in the action; (4) the possibility of prejudice to the plaintiff; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits. *See Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir.1986).

4

1   Upon entry of default, the well-pleaded allegations of the complaint relating to a

2   defendant's liability are taken as true, except for allegations as to the amount of damages.  *See*

3   *TeleVideo Systems, Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir.1987).  Further, "necessary

4   facts not contained in the pleadings, and claims which are legally insufficient, are not established

5   by default."  *Id.* (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

6   Here, after considering the *Eitel* factors, the Court finds in its discretion that granting

7   default judgment against Mateas as to the misrepresentation claim is not warranted.  In particular,

8   the first and second *Eitel* factors, which analyze the substantive merits of Plaintiff's claim and the

9   sufficiency of the complaint, do not favor default judgment.  Under Section 512(f)(1), "[a]ny

10  person who knowingly materially misrepresents…that material or activity is infringing…shall be

11  liable for any damages…incurred by the alleged infringer…who is injured by such

12  misrepresentation, as the result of the service provider relying upon such misrepresentation in

13  removing or disabling access to the material."  17 U.S.C. § 512(f).  Thus, a plaintiff must allege

14  that the defendant "knowingly and materially misrepresent[ed] that copyright infringement ...

15  occurred."  *Online Policy Group v. Diebold*, 337 F. Supp. 1195, 1204 (N.D. Cal. 2004).  However,

16  "[a] copyright owner cannot be liable simply because an unknowing mistake is made, even if the

17  copyright owner acted unreasonably in making the mistake."  *Rossi v. MPAA*, 391 F.3d 1000,

18  1004 (9th Cir. 2004); *see also Arista Records v. MP3Board*, 00 Civ. 4660 (SHS), 2002 WL

19  1997918, at *15 (S.D.N.Y. Aug. 29, 2002).

20  Plaintiff alleges that on May 25, 2021, he posted a video to YouTube in which he

21  displayed a screenshot that included Mateas' Discord icon.  (SAC ¶ 53.)  Plaintiff alleges that

22  Mateas issued a fraudulent takedown notice, and YouTube removed the video.  (*Id.* ¶ 54.)

23  Plaintiff alleges Mateas "does not own the copyright" to the allegedly infringing picture and

24  "probably just pulled it off the Internet."  (*Id.*)  Plaintiff further alleges "[n]o reasonable person

25  could…reasonably determined [sic] that [his] use of the screenshot was not fair use."  (*Id.* ¶ 55.)

26  Plaintiff issued a counter-notification, and YouTube reinstated the video by June 13, 2021.  (*Id.* ¶

27  56.)  The video was removed for nineteen days.  (*Id.*)  Plaintiff alleges during this time "it was not

28  getting views and thus not getting ad revenue."  (*Id.*)

United States District Court
Northern District of California

5

1       Plaintiff's allegations lack sufficient specificity to state a claim for misrepresentation.

2  Plaintiff offers only conclusory assertions; he does not allege facts which identify how or why

3  Mateas knew or should have known that the material was non-infringing.  Plaintiff claims that he

4  is entitled to default judgment on this claim because his allegations are deemed true.  (*See* Dkt.

5  No. 127-20, ¶ 26.)  However, on default judgment, a defendant "is not held to facts that are not

6  well-pleaded or to admit conclusions of law."  *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp.

7  2d 1072, 1078 (C.D. Cal. 2012).  Plaintiff's conclusory allegations not well-pleaded, and are thus

8  insufficient to establish a claim for misrepresentation.

9       Additionally, Plaintiff has not established he suffered damages because of the

10  misrepresentation.  Plaintiff alleges he lost views and ad revenue while the video was taken down.

11  However, at default judgment, a plaintiff must offer evidence of the amount of damages suffered.

12  *TeleVideo Systems, Inc.,* 826 F.2d at 917-18 ("The general rule of law is that upon default the

13  factual allegations of the complaint, except those relating to the amount of damages, will be taken

14  as true."); *see also PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1174-75 (C.D.

15  Cal. 2002) ("[T]he plaintiff is required to provide proof of all damages sought in the complaint.").

16  In his motion for default judgment, Plaintiff does not address the damages element of his

17  misrepresentation claim and his conclusory allegations are insufficient to establish that the alleged

18  misrepresentation caused him damage.  *See Lenz v. Universal Music Corp.*, No. C 07-3783 JF,

19  2010 WL 702466, at *10 (N.D. Cal. Feb. 25, 2010) (Section 512(f) damages "must be proximately

20  caused by the misrepresentation").  For these reasons, the first and second *Eitel* factors do not

21  weigh in favor of default judgment.

22       The third *Eitel* factor requires the Court to consider the amount of money at stake in

23  relation to the seriousness of Defendant's conduct.  *See Eitel*, 782 F.2d at 1471.  "Default

24  judgment is disfavored when a large amount of money is involved or is unreasonable in light of

25  the defendant's actions."  *Valentin v. Grant Mercantile Agency, Inc.*, No. 1:17-cv-01019-AWI-

26  SKO, 2017 WL 6604410, at *7 (E.D. Cal. Dec. 27, 2017) (internal citation omitted).  In his

27  motion for default judgment, Plaintiff seeks damages in the amount of $1,800,000 from the

28  Individual Defendants.  This is a substantial amount of money.  Moreover, it is unreasonable given

United States District Court
Northern District of California

1   that the video at issue in the misrepresentation claim was reinstated after being down for a

2   relatively short time. The Court finds this factor weighs against granting default judgment.

3   The fourth factor, which considers the possibility of prejudice to Plaintiff, also does not

4   weigh in favor of default judgment.  Despite Mateas' failure to appear and defend himself in this

5   action, Plaintiff has not shown that he will be prejudiced if default judgment on the

6   misrepresentation claim is not granted.  The video underlying this claim has been restored and as

7   discussed above, Plaintiff has shown that he suffered damages from the alleged misrepresentation.

8   Finally, the strong policy favoring decisions on the merits also weighs against default judgment.

9   On balance, the Court concludes that the *Eitel* factors do not favor default judgment against

10   Mateas on Plaintiff's Section 512(f) claim.

11   Accordingly, Plaintiff has failed to show that reconsideration is warranted, and the Court

12   DENIES his motion.

13   **B.      Plaintiff is Not Entitled to Relief Under Rule 60(b)(6).**

14   Plaintiff has also filed a motion for relief from judgment pursuant to Federal Rule of Civil

15   Procedure 60(b)(6), which provides that a court may provide relief from judgment for "any other

16   reason that justifies relief."  Rule 60(b)(6) is to be used "sparingly as an equitable remedy to

17   prevent manifest injustice."  *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010) (quoting *United*

18   *States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993).  "To receive relief

19   under Rule 60(b)(6), a party must demonstrate extraordinary circumstances which prevented or

20   rendered [her] unable to prosecute" her case.  *Id.* (citation and internal quotation marks omitted).

21   A party seeking relief under this Rule "must demonstrate both injury and circumstances beyond

22   [her] control that prevented [her] from proceeding with the prosecution or defense of the action in

23   a proper fashion."  *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002).

24   Plaintiff argues that judgment should be set aside under Rule 60(b)(6) for the same reasons

25   identified in his motion for reconsideration.  However, Rule 60(b)(6) is not intended to redress

26   error on the part of the district court, or to provide a party a substitute for an appeal.  *Evans v.*

27   *Woodford*, No. 1:06-cv-01250-ALA(P), 2008 WL 5114653, at *1 (E.D. Cal. Dec. 4, 2008)

28   (quoting *Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981)).

United States District Court
Northern District of California

**SER20**

1    Because Rule 60(b)(6) is not a basis for relief here, the Court DENIES Plaintiff's motion.

2    **C.     Plaintiff's Request for Recusal is Denied.**

3            Plaintiff asserts that the Court should recuse itself if it decides to re-open the case on the

4    basis that the Court holds a personal grudge against Plaintiff based on his behavior and dismissed

5    the case to punish him for his "abusive behavior."  Because Plaintiff has not shown that

6    reconsideration or relief from judgment is warranted, the request for recusal is moot.  In any event,

7    28 U.S.C. section 455(a) "require[s] recusal only if the bias or prejudice stem from an extrajudicial

8    source and not from conduct or rulings made during the course of the proceeding." *Toth v. Trans*

9    *World Airlines, Inc.*, 862 F.2d 1381, 1388 (9th Cir. 1988).  Judges are presumed to be impartial

10   and, accordingly, parties seeking recusal bear "the substantial burden of proving otherwise."

11   *United States v. Dehghani,* 550 F.3d 716, 721 (8th Cir.2008) (internal quotation marks and citation

12   omitted).  Here, Plaintiff seeks recusal based on this Court's rulings, but an adverse judicial ruling

13   is not an adequate basis for recusal.  *Litkey v. United States*, 510 U.S. 540, 549 (1994); *Leslie v.*

14   *Grupo ICA*, 198 F.3d 1152, 1160 (9th Cir. 1999).  Plaintiff's request for recusal is DENIED.

**CONCLUSION**

16           For the foregoing reasons, the Court DENIES Plaintiffs' motion for reconsideration,

17   motion for relief from judgment, and motion for recusal.

18           **IT IS SO ORDERED.**

19   Dated: March 28, 2023

20                                              _____
                                               JEFFREY S. WHITE
21                                             United States District Judge

22

23

24

25

26

27

28

United States District Court
Northern District of California

8

1  RYAN S. BENYAMIN, State Bar No. 322594
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
3  1900 Avenue of the Stars, 28th Floor
   Los Angeles, California 90067
4  Telephone: (424) 446-6913
   Facsimile: (866) 974-7329
5  rbenyamin@wsgr.com

6  JASON MOLLICK (*pro hac vice*)
7  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
8  1301 Avenue of the Americas, 40th Floor
   New York, New York 10019
9  Telephone: (212) 999-5800
   Facsimile: (212) 999-5899
10 jmollick@wsgr.com

11 *Counsel for Intervenors*
12 *Alphabet Inc. and YouTube, LLC*

13                  UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
14                          OAKLAND DIVISION

15 DAVID A. STEBBINS,                    )    CASE NO.: 4:21-cv-04184-JSW
16                                       )
            Plaintiff,                   )    **OPPOSITION TO MOTION FOR**
17                                       )    **PROTECTIVE ORDER AND FOR**
        v.                               )    **SANCTIONS [DKT. 179]**
18                                       )
19 KARL POLANO et al.,                   )    Judge: Hon. Jeffrey S. White
                                         )
20          Defendants.                  )    Action Filed:  June 2, 2021
                                         )
21 _____ )

22

23

24

25

26

27

28

**SER22**

1    When Plaintiff claimed to need an extension of time to respond to Intervenors'

2  Administrative Motion to Consider Whether Cases Should be Related, the Court granted his

3  request, but instructed him to "carefully review Civil Local Rule 3-12(e) to ensure his response

4  comports with the requirements of the rule and addresses only the issues required by the rule." Dkt.

5  177; *see also* Dkt. 175.  The Local Rules also state that any opposition to an Administrative Motion

6  "may not exceed 5 pages[.]"  Civ. L.R. 7-11(b).  Plaintiff disregarded the Court's instructions and

7  the Local Rule by filing (in addition to an opposition) a 17-page "Motion for Protective Order and

8  For Sanctions."  Dkt. 179.  Though styled as a separate "motion," the filing directly addresses the

9  Administrative Motion and is a transparent end-run around the Local Rule.  It also reveals the true

10  reason why Plaintiff needed more time to respond to the 5-page Administrative Motion.

11    This is another example of "Plaintiff's efforts to manipulate the litigation process and his

12  blatant gamesmanship," which this Court has noted in the past.  Dkt. 134.  Plaintiff has been

13  declared a vexatious litigant elsewhere.  *Stebbins v. Stebbins*, 2013 WL 3353865, at *1 (W.D. Ark.

14  July 3, 2013).  The dockets in his other cases are littered with meritless motions like this one.  *See,*

15  *e.g.*, *id.* ("Not only has [Plaintiff] filed numerous cases, but he has also filed over one hundred

16  motions within those cases, some of which have been repetitive, and few of which have had any

17  merit."); *Stebbins v. Microsoft, Inc.*, 2012 WL 12896360, at *1 (W.D. Wash. Jan. 13, 2012) (noting

18  that "time spent dealing with Mr. Stebbins' filings prevents the Court from addressing the genuine,

19  vexing problems that people trust the Court to resolve quickly and fairly"), *aff'd*, 520 F. App'x 589

20  (9th Cir. 2013).  Unfortunately, we have no doubt that more is to come.

21    As for the substance of Plaintiff's "motion," it is simply a screed against Intervenors'

22  counsel for making arguments with which Plaintiff disagrees.  He identifies no legal or factual basis

23  for any relief, and in any event, he failed to comply with the procedures set forth in Federal Rule

24  11(c)(2).  The motion is frivolous and should be denied.

25

26

27

28

1    Dated: February 21, 2023                    Respectfully submitted,

2                                                WILSON SONSINI GOODRICH & ROSATI
                                                 Professional Corporation
3

4                                                By:    *s/ Jason Mollick*

5                                                Jason Mollick (*pro hac vice*)
                                                 1301 Avenue of the Americas, 40th Floor
6                                                New York, New York 10019
                                                 Telephone: (212) 999-5800
7                                                Facsimile: (212) 999-5899
                                                 jmollick@wsgr.com
8

9                                                *Counsel for Intervenors*
                                                 *Alphabet Inc. and YouTube, LLC*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### RELATED CASE ORDER

A Motion for Administrative Relief to Consider Whether Cases Should be Related or a *Sua Sponte* Judicial Referral for Purpose of Determining Relationship (Civil L.R. 3-12) has been filed. The time for filing an opposition or statement of support has passed. As the judge assigned to case

21-cv-04184-JSW
Stebbins v. Polano

I find that the more recently filed case(s) that I have initialed below are related to the case assigned to me, and such case(s) shall be reassigned to me. Any cases listed below that are not related to the case assigned to me are referred to the judge assigned to the next-earliest filed case for a related case determination.

| Case | Title | Related | Not Related |
|------|-------|---------|-------------|
| 23-cv-00322-LJC | Stebbins v. Google LLC | | JSW |

### ORDER

The parties are instructed that all future filings in any reassigned case are to bear the initials of the newly assigned judge immediately after the case number. Any case management conference in any reassigned case will be rescheduled by the Court. The parties shall adjust the dates for the conference, disclosures and report required by FRCivP 16 and 26 accordingly. Unless otherwise ordered, any dates for hearing noticed motions are vacated and must be re-noticed by the moving party before the newly assigned judge; any deadlines set by the ADR Local Rules remain in effect; and any deadlines established in a case management order continue to govern, except dates for appearance in court, which will be rescheduled by the newly assigned judge.

Dated:                              By: _____
                                    Jeffrey S. White
                                    United States District Judge

1

**SER25**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**CLERK'S NOTICE**

The court has reviewed the motion and determined that no cases are related and no reassignments shall occur.

Dated: February 9, 2023                    By: _____

Ki'i Kealalio-Puli, Deputy Clerk

2

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                    PLAINTIFF

VS.                              Case 3:21-cv-04184-JSW

KARL POLANO, et al                                      DEFENDANTS

**MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS**

    Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Motion for Protective Order, ordering the intervenor defendants to cease and desist their baseless, uncorroborated accusations of bad faith against me, unless they can provide some objective evidence to support their claims.

**I: Preliminary Matters**

I-1: Table of Contents

| Section | Page |
|---|---|
| **I: Preliminary Matters** | 1 |
| I-1: Table of Contents | 1 |
| I-2: Table of Authorities | 2 |
| **II: Legal Basis for the Motion** | 3 |
| **III: Logical Fallacies** | 4 |
| III-1: Invincible Ignorance | 4 |
| III-2: Appeal to the Stone | 4 |
| III-3: Proof by Assertion | 5 |
| III-4: Ad Hominem | 5 |
| **IV: Baseless Accusations** | 6 |

IV-1: Accusations that I am simply                    6

attempting to silence criticism

IV-2: Accusations of me "abusing"                     7

the court system

IV-3: The Intervenors' inflammatory remarks           8

were not even necessary to the motion to relate.

**V: Alleged "Frivolousness" of New Case**            9

V-1: "Obviously" Fair Use                             9

V-2: The sufficiency of my claim has                  10

already been decided in my favor

by not one, but two tribunals.

V-3: Intervenors' Contempt of Court                   12

V-4: ATTA has spoiled the evidence, thereby           14

killing the intervenors' hopes of getting

the case thrown out on the pleadings.

V-5: ATTA's spoliation kills the                      15

intervenors' only means of relating

that case to this one.

**VI: Sanctions**                                     16

**VII: Conclusion**                                   16

I-2: Table of Authorities

**Statutes & Rules**                                  **Page(s)**

• § 1915                                              11,12,14

• Civil Local Rule 3-12                               15

• Code of Conduct of U.S. Judges, Canon 3(2)          3

• Code of Conduct of U.S. Judges, Canon 3(3)          3

- Fed.R.Civ.P. 11(b)                                      3
- Fed.R.Civ.P. 11(c)                                      3,9

**Case Law**                                             **Page(s)**

- Bell Atlantic Corp. v. Twombly,                        14
  550 US 544, 1975 (2007)
- Campbell v. Acuff-Rose Music,                          10,16
  Inc., 510 US 569, 590 (1994)
- Golden Eagle Distributing Corp. v.                     4,16
  Burroughs Corp., 801 F. 2d 1531,
  1540 (9th Cir. 1986)
- Haines v. Kerner, 404 US 519 (1972)                    4
- Leon v. IDX Systems Corp., 464 F. 3d                   15
  951 (9th Cir. 2006)
- Rogers v. Koons, 960 F. 2d                             10
  301, 312 (2nd Cir. 1992)

**II: Legal basis for motion**

1.      A judge has a duty, not only to himself be dignified, respectful, and courteous to all persons in his court, but also to require same of all counsel, parties, and witnesses subject to his authority. See Canon 3(3) of the Code of Conduct of United States Judges. They also have a duty to maintain decorum in all judicial proceedings. See Canon 3(2) of same.

2.      These two requirements convey a duty of a judge to require all parties involved in a judicial proceeding to exercise good faith in all matters. As we are about to see, the intervenor defendants' repeated accusations of vexatiousness, abuse, and a desire on my end to use copyright litigation simply to evade criticism rather than protect my genuine legal rights, is the epitome of bad faith in litigation.

3.      Then, there is Rule 11(b) of the Federal Rules of Civil Procedure. This rule requires all pleadings filed with the court to be made in good faith, with evidence to support their factual contentions and nonfrivolous legal citations in support of their arguments of law. Factual

assertions with no evidence (or even the *attempt* at evidence) to support them are not allowed, and Rule 11(c) gives the Court the power to sanction conduct which violates this rule. Furthermore, when a violation occurs, "[s]anctions under Rule 11 are mandatory." See Golden Eagle Distributing Corp. v. Burroughs Corp., 801 F. 2d 1531, 1540 (9th Cir. 1986).

4.      In addition to these requirements, I also ask the judge to take into consideration that I am pro se, and acknowledge any other relevant legal authorities that I may have overlooked. See Haines v. Kerner, 404 US 519 (1972).

### III: Logical fallacies: Invincible ignorance, appeal to the stone, proof by assertion, and ad hominem.

5.      The intervenor defendants have used these four logical fallacies multiple times in their smear campaign against me in this case. The use of these fallacies, especially to the extent that the intervenors rely on them, constitute bad faith per se.

#### III-1: Invincible Ignorance

6.      "Invincible ignorance" refers to when a party adamantly refuses to entertain even the possibility that he is in the wrong. This barely qualifies as a logical fallacy at all. Rather, it is a dogged and steadfast refusal to apply literally any logic whatsoever. See https://www.palomar.edu/users/bthompson/Invincible%20Ignorance.html.

7.      Example:

-   Teacher: I saw you looking at Jessica's paper during the test.
-   Student: No you didn't.

8.      A refusal to even entertain the opposing side's position, instead dismissing it out of hand, is bad faith per se.

#### III-2: Appeal to the Stone

9.      Appeal to the stone (also known as argument ad labitem) is similar to invincible ignorance, but it typically involves a passive laziness on the part of the one making the fallacy (aka a simple passive lack of interest in considering their position any deeper), whereas invincible ignorance is more of an active refusal to consider any counter arguments or logic. See https://cognitive-liberty.online/argumentum-ad-lapidem-appeal-to-the-stone/.

10.      Example:

- Speaker A: Infectious diseases are caused by microbes.

- Speaker B: What a ridiculous idea!

- Speaker A: How so?

- Speaker B: It's obviously ridiculous.

### III-3: Proof by Assertion

11.      Proof by assertion is when the fallacious arguer attempts to convince people of something, without any evidence to support their claim, simply by repeating it over and over again. See https://springhole.net/logical-fallacies/proof-by-assertion.htm ("The simple art of repeating one's argument over and over regardless of whether one has any real evidence to back it up, and indeed, whether the argument has been completely demolished by evidence from the opposing side").

12.      This often overlaps with invincible ignorance and appeal to the stone. Whereas the previous two fallacies concerned the arguer's response at each individual verbal exchange, this fallacy focuses on the arguer's strategy on a macro level.

### III-4: Ad Hominem

13.      Last but not least, the ad hominem is an attack on the opposing side's character, rather than on his argument or evidence.

14.      Example: After Sally presents an eloquent and compelling case for a more equitable taxation system, Sam asks the audience whether we should believe anything from a woman who isn't married, was once arrested, and smells a bit weird. See https://yourlogicalfallacyis.com/ad-hominem.

15.      Unlike the past three fallacies, this one is not necessarily bad faith per se. Sometimes, it is logically valid to use this. For example, if a witness in court has a perjury conviction to his record, or he is a medically-diagnosed pathological liar who has refused treatment for his condition[1], it is not bad faith to point these things out during cross examination in an attempt to

---

[1]   The refusal of treatment is essential, here, because his credibility may remain intact if he has three years worth of rigorous therapy and medications, and has shown vast improvement in his pathological lying. At that point, trying to use his years-old diagnosis, in spite of all his improvement, would still be bad faith.

discredit the witness's otherwise uncorroborated testimony. However, in order for this tactic to be made in good faith, (A) the attack on the opponent's character must be of astronomical magnitude, and (B) it must *directly* relate to the thing the arguer is attempting to discredit him on. For example, if a witness has a rape conviction on his record, that certainly is a truly reprehensible crime, but it does not mean he has no credibility to talk about the robbery he personally experienced at the convenience store where he now works. Attempting to introduce this prior conviction in order to discredit him would be grossly inadmissible, and would necessarily be bad faith.

### IV: Intervenor defendants' baseless accusations

16.     With that said, let us discuss the uncorroborated accusations of the intervenor defendants against me, and show how they are all made in bad faith.

#### IV-1: Accusations that I am simply attempting to silence criticism

17.     One recurring theme in the intervenors' motions is that I am issuing these DMCA Takedowns, and filing these copyright infringement lawsuits, just to silence online criticism about me. It is important to note that they are not simply accusing me of silencing criticism in the process of getting what I actually want. They are insisting that my sole, exclusive motive is not to stop people from harassing me, but instead JUST to silence criticism, and absolutely nothing else.

18.     Despite my repeated attempts to explain that all I want is an end to the harassment, that I would be much more receptive to criticism if there was no harassment, and even show ample proof that the harassment I have endured is absolutely massive, these pleas consistently fall on deaf ears (e.g. invincible ignorance and/or appeal to the stone). Instead, the intervenors just keep insisting, over and over again (proof by assertion) that I am simply looking to silence criticism, while offering precisely zero evidence to back up this outlandish claim.

19.     If they want to continue to make this assertion, they should be required to show some objective proof that it is being made in good faith. I have already provided mountains of evidence, documenting only a portion of the harassment that has been levied against me. Surely, they can't deny that the harassment *exists*, so do they have some objective evidence that this

harassment is merely pretextual, that I would actually be okay with the harassment if the criticism wasn't also part of it, rather than the other way around? If so, why haven't they shown it yet?

20.      Indeed, I have even shown evidence that proves that I am indeed willing to accept criticism with open arms, as long as it is not coupled with harassment. In the case of Stebbins v. SidAlpha, 4:23-cv-00321-DMR, Dkt. 1, ¶¶ 100(a) & 100(b), I provided links to two instances where people criticized my work, but I not only allowed the comments to stay up, but actively engaged with them in good faith. Only by blatantly ignoring the evidence presented (appeal to the stone as well as proof by assertion) can the intervenors still maintain their loudly-insisted-upon claim that I am simply looking to evade criticism under the thinly-veiled pretext of not wanting to be harassed.

21.      I ask that the Court order the intervenor defendants to stop making this baseless accusation against me, unless it stops being baseless. They should be required to show some actual proof of pretextual motive in order to continue making this claim.

IV-2: Accusations of me "abusing" the court system

22.      Once again, it only counts as "abuse," and my lawsuits only qualify as "frivolous," because they say they are.

23.      They attempt to justify these accusations by pointing out the fact that I have filed some cases *many many years ago* that were deemed vexatious. They completely ignore the fact that I actually spent several years not filing lawsuits like a compulsive idiot, and only recommenced filing with the start of *this very* lawsuit in the summer of 2021, after the harassment, doxxing, and dogpiling against me got too much to bear. This is on par with the aforementioned footnote example, where a medically-diagnosed compulsive liar spends several years without an outburst of pathological lying due to the intensive therapy and medication he received.

24.      Instead, the intervenors attempt to argue that, because I've done morally questionable things in the past, I am automatically and necessarily guilty of doing them now. This is a bad faith ad hominem and it should be admonished.

25.      They *claim* that my current lawsuits are a continuation of my past because the current

lawsuits are "clearly" frivolous. To that end, I defer you to the aforementioned arguments that they are merely using the "appeal to the stone" and "proof by assertion" fallacies.

26.     During their motion to relate, they point out the three petitions for writ of mandamus that I filed with the 9th Circuit Court of Appeals (one of which was over a decade ago), but they do not even *try* to explain how these petitions were frivolous. They literally just list the case numbers, and that's it. It's a blatant case of proof by assertion and appeal to the stone.

27.     The defamation lawsuit against SidAlpha is especially informative of the intervenors' bad faith. When this court issued its biased ruling against me, it conceded that I was aggrieved by the harassment, but that is not relevant to copyright. I disagree with that interpretation of the law and intend to appeal it, but for the time being, that is the judgment in this case.

28.     So, what did I do? I filed a new lawsuit, this time alleging defamation, a tort where the harassment, malice, and objectively false statements about me are indeed germane to the proceeding.

29.     In short, I corrected the stuff that the Court said was frivolous. So how is it still frivolous?! Jesus, I can't do anything right, can I?!

30.     No, it's frivolous because ***I*** (David Stebbins in particular) am considered frivolous. My name being listed as the Plaintiff is what makes it frivolous, to the exclusion of all other factors. No further consideration into the matter is necessary.

31.     It's like I said in the Opposition to the Motion for Administrative Relief: What they really want is not for me to stop filing *frivolous* lawsuits, but to stop filing lawsuits altogether. They want me to cease and desist my exercising of my constitutional right to court access, period.

32.     But that is, in itself, a patently frivolous request, and they should be sanctioned for it.

 <u>IV-3: The Intervenors' inflammatory remarks were not even necessary to the motion to relate.</u>

33.     Not only are the intervenors' accusations against me based on literally no facts whatsoever, but they weren't even necessary for their motion!

34.     All they had to do, for their motion, was point out the similarities between this case and that one. All they had to do was demonstrate how the same parties, property, transactions, and/or events were involved.

35.     Since they obviously couldn't draw similarities where none exist (see my Opposition to that Motion for more details), so they have to resort to inflammatory personal attacks to make their case seem less frivolous than it actually is. According to the intervenors, the cases are "related" because they involve the same *alleged* "pattern" of frivolous filings, but the lawsuits are only frivolous because they (the intervenors) say they are.

36.     I'm not sure what this logical fallacy is called, but it's definitely actionable under Fed.R.Civ.P. 11(c).

### V: Alleged Frivolousness of Stebbins v. Google LLC

<u>V-1: Accusations that I claim infringement over an "obviously" fair use</u>

37.     The intervenors continue their campaign of baseless accusations against me by insisting that the infringing channel icon is "obviously" and "clearly" fair use. But at no point do they even *attempt* to show any evidence for any of their points.

38.     They insist that the icon's "entire purpose … is to criticize Plaintiff," but they make no effort to explain exactly what that criticism is. As I explained in the complaint in the case of Stebbins v. Google LLC, the icon is nothing more than a mish-mash of nebulous "stuff" slapped onto my face. There is no actual criticism or commentary. I even contrasted the icon with the channel art to demonstrate how the icon falls short of the legal threshold to be considered "transformative."

39.     So what do they offer in rebuttal to this argument? NOTHING! Absolutely nothing. It's entire purpose is to criticize me … because they say so. It is blatant invincible ignorance.

40.     Next, they insist that the underlying work is "minimally creative." How exactly they come to this conclusion is anyone's guess, because they certainly don't tell us. The underlying work consists of nearly four hours of exchanging opinions with my debate partner. How can a nearly-four-hour long video be "minimally" anything? Because the intervenors say so; that's how!

41.     Third, let us not forget that the third factor can still weigh against fair use if the infringer uses the "heart" of the work. Even if we accept that the 4-hour video was "minimally creative," that just means that the face that made it into ATTA's icon was the most interesting part of the

video, thereby making it the heart. So even in the best case scenario, either the second or third factors can weigh in favor of fair use, but not both.

42.     Finally, they make a blanket, and baseless, assertion that "the channel's use of that screenshot has no impact whatsoever on the market for Plaintiff's video." They offer absolutely evidence of this alleged lack of impact. They don't even *try* to. The mere fact that they claim it does not make it obvious.

43.     Bear in mind that, under fair use law, it is not necessary that the infringing use take views away from my video, specifically. Even if the infringing use cuts into a *derivative* market, that still counts as a market substitute. See Campbell v. Acuff-Rose Music, Inc., 510 US 569, 590 (1994) ("The enquiry must take account not only of harm to the original but also of harm to the market for derivative works") (quotations omitted). So if the use of this icon cuts into my legal right to charge licensing fees for the use of my copyrighted works as channel icons (or, perhaps, if someone wanted to put that image on a tee shirt or coffee mug, so on and so forth), that still counts as a market substitute. I don't even have to be actively involved in the market at the present moment for it to count. See Rogers v. Koons, 960 F. 2d 301, 312 (2nd Cir. 1992) (counting not only present markets, but also "any other derivative use he might plan").

44.     And yet, the intervenors claim that there is "absolutely no adverse effect" on the market for my video, despite the low threshold for what counts as a "market substitute," simply because they say so.

45.     All three of these claims are blatant examples of "proof by assertion." They say it, but they don't *prove* it. Their claims *are* the proof.

46.     This is blatant bad faith, designed solely to delay the litigation, and it should be stamped out.

<u>V-2: The sufficiency of my claim has already been decided</u>

<u>in my favor by not one, but two tribunals.</u>

47.     As I pointed out in the Opposition to Administrative Motion, the intervenors also ask the Court to stay their duty to respond in the case of Stebbins v. Google until it has had a chance to review the complaint under § 1915 for failure to state a claim. They aren't simply filing a motion

to dismiss (in fact, they explicitly state that they reserve the right to do that if the complaint passes § 1915 review). What they conveniently ignore is that my case has already been reviewed accordingly, no once but twice, by impartial tribunals.

48.     In her order granting my Application for Leave to Proceed In Forma Pauperis, she stated outright that she did so after "[h]aving considered the ... complaint." See 3:23-cv-00322-LJC, Dkt. 6, lines 1-2. Bear in mind that she only did this *after* I had uploaded a Corrected Complaint, because I received an "electronic filing error" notice telling me that the original complaint was missing a few pages! So Judge Cisneros certainly must have actually *read the Complaint* first. Otherwise, how could she possibly have known about those missing pages?

49.     Prior to that, I had filed this infringement claim with the newly-established Copyright Claims Board (or CCB, for short). In case the Court was not already aware, the CCB *always* reviews *every* claim brought before it before it authorizes the plaintiff to serve process on the defendant. Service is not even allowed under the CCB until they manually sign off on the claim, and since there is no "in forma pauperis" in the CCB, this pre-service screening applies to every claim brought before it.

50.     The CCB has been known to throw out claims sua sponte if they determine that the claims cannot proceed on their face. For example, in Case 22-CCB-0252 (Jaramillo v. YouTube), the CCB found that YouTube still had safe harbor. See https://dockets.ccb.gov/document/download/1856. Meanwhile, in Case 22-CCB-0224 (Boehm v. SportsTrust Advisors, LLC), they ordered an amended claim because the first claim does not adequately allege "substantial similarity." see https://dockets.ccb.gov/document/download/1224.

51.     In my case, I filed a claim that is almost entirely identical to the lawsuit I just filed that the intervenors seek to have "related" to this case. See https://dockets.ccb.gov/claim/view/368. Despite having access to the exact same information and evidence that Judge Cisneros had, the CCB handily approved my claim. See https://dockets.ccb.gov/document/download/741. The only reason that claim didn't proceed is because Google LLC chose to opt out of the proceeding, not because the CCB found my claim to be without merit. See https://dockets.ccb.gov/document/download/1731.

52.     In other words, both Judge Cisneros and the CCB had determined that I had stated a claim upon which relief can be granted.

53.     The intervenors want the complaint to be reviewed under § 1915? Well, they already got that *twice*! They simply are unhappy with the results. If the intervenors believe that the two tribunals had overlooked one or more important details that should have caused them to throw the case out sua sponte, that is something that should be appropriately raised on a motion to dismiss, not simply by requesting a *third* (not just second) sua sponte § 1915 review.

<u>V-3: The defendants' belief that I didn't consult with counsel before filing this new case borders on contempt of court in its own right.</u>

54.     When I asked for their consent to the Motion for Extension of Time in connection with the administrative motion (Dkt. 175), the intervenors made a rather bold statement when responding to me: "I have also urged you, many times, to consult with a lawyer <u>before</u> filing frivolous copyright lawsuits" (emphasis in original). See **Exhibit A**. The implication, here, seems to be that I must not have actually consulted with counsel before filing this case.

55.     However, par to the course for the intervenors at this point, they offer precisely zero evidence that I failed to consult with an attorney before filing this case. Instead, the implication seems to be that they believe, not just that the icon is fair use, but that it is so obviously fair use that it is inconceivable that I could have received any competent legal advice to the contrary. You could literally take every single copyright lawyer in America, put them all in a hat, and draw one at random, and there is literally a 100% chance that this lawyer would not only disagree with me on the fairness of the icon's use, but actively tell me in no uncertain terms that my case is frivolous.

56.     Furthermore, they apparently believe that no copyright lawyer would dare touch this case with a ten foot pole, no matter how much they were paid, because for an attorney to put their name on such a blatantly frivolous lawsuit would instantly make them liable to Google for malicious prosecution and even risk disbarment.

57.     To be clear, intervenor counsel did not *literally* say any of the things mentioned in the previous two paragraphs. But that's the only way his accusation against me makes any sense. It's

the only way he can justify saying I didn't consult with counsel before filing suit without any proof.

58.    I did indeed consult with legal counsel before filing suit, and I could show proof of same if I needed to. But I don't need to at the moment. Because this accusation was never made pursuant to a court pleading, it isn't subject to Rule 11 sanctions.

59.    Rather, I say that to say this: The fact that both Judge Cisneros and the CCB have agreed that I have adequately stated a claim upon which relief can be granted, despite being able to see the icons themselves, clearly shows that it isn't a 100% frivolous case. Clearly, these two tribunals have the exact same legal credentials as the lawyers who advised me on the validity of my claim before I filed suit. At least with Judge Cisneros, you could *possibly* make the argument that she is more of a jack of all trades on federal law, and lacks the specialized knowledge of copyright law needed to see this case for the frivolous one it truly is. But you can't say that about the CCB.

60.    This leads me to my next point (the point this subsection is named after): By implying that the icon is so obviously fair use that anyone who even *attempts* to argue otherwise is necessarily guilty of an ethics violation, the intervenors are, in effect, accusing those two tribunals of committing effectively the same ethics violation when they conducted effectively the same review.

61.    This is a very serious accusation, one that the intervenors should not make lightly (even if they only make the accusation indirectly). While they cannot sue Cisneros or the CCB for this alleged oversight (and I emphasize the word "alleged" here), the accusation itself is still no less damning. So they need to tread lightly.

62.    At least when I made my motion to recuse, I had specific statements that Judge White made *on the record* that support my claim that he has a personal grudge against me for the legitimate exercise of a perfectly valid legal right. Here, the Internvenors insist that the case is patently frivolous *just* because they really really really don't like the fact that they've been sued.

63.    Of course, even if the intervenors were to file their motion to dismiss, a new development in this case has made that motion even less likely to succeed than it already was:

<u>V-4: ATTA has despoiled the evidence, thereby killing the intervenors'</u>

<u>hopes of getting the case thrown out on the pleadings.</u>

64.     On or around January 26, 2023, ATTA (the direct infringer in the case of Stebbins v. Google LLC) deleted his YouTube channel, and with it the infringing icon (as well as the channel art which I conceded was fair use). While this does render moot the injunctive relief I requested in ¶ 54 of that Complaint, it doesn't render moot any other relief I am requesting (injunctive or otherwise), and it is actually quite devastating to Google's hopes of having the case thrown out on the pleadings.

65.     Remember that, whenever a court is reviewing a complaint for failure to state a claim (whether it be under § 1915 or a motion to dismiss), the Court "must accept as true all of the factual allegations contained in the complaint," except for those facts which the Court can take judicial notice of. See Bell Atlantic Corp. v. Twombly, 550 US 544, 1975 (2007). At the time I filed the complaint, ATTA's infringing icon was publicly visible, and I even provided a link to it. So at that point in time, the Court could have taken judicial notice of how supposedly "transformative" it was. Both the CCB and Judge Cisneros could see the icon, so they could have disagreed with my factual allegation that the additions to the icon amounted to nothing more than "a mish-mash of nebulous [and above all, nontransformative] 'stuff' simply slapped onto my face," yet they chose not to.

66.     But now, if this Court were to order the cases related and decide to make its own § 1915 review, it would not have that same luxury. The icon is no longer judicially noticeable, which means it must accept as true my factual allegation that the additions are not transformative.

67.     Nor could *any* judge (whether it be Judge White or Judge Cisneros) make any determination in Google's favor on a motion to dismiss. Again, it has to accept the facts in the complaint as true unless it can see otherwise with its own two eyes. So the Court cannot accept as true the defendants' allegations in the motion to dismiss. It has to take my word for it (at least for the time being) that the icon was not fair use.

68.     The only thing it can still see for itself is the intervenors' allegation that the original work is "minimally creative." Since that link still works, the Court can still see that video. However,

not only is that allegation patently absurd (for reasons I have already discussed), but even if the Court were to agree with the intervenors, that alone isn't enough to constitute fair use.

69.    So at this point, we're going to have to conduct discovery in the case of Stebbins v. Google LLC, and there's no two ways about it.

70.    By contrast, the intervenors have *admitted* to prima facie copyright infringement during their administrative motion. So I no longer even have to prove that. Even if I had to prove prima facie infringement, the spoliation would simply entitle me to a presumption to that effect. See Leon v. IDX Systems Corp., 464 F. 3d 951 (9th Cir. 2006).

71.    However, there's a reason I'm bringing this up here, instead of in that case …

       V-5: ATTA's spoliation kills the intervenors' only means of relating that case to this one.

72.    Bear in mind that the intervenors' sole grounds for claiming that the case of Stebbins v. Google is related to this one is by insisting that the new case is "continuing" with my "pattern" of filing "frivolous" lawsuits. Even in the best case scenario, this is a dubious connection for purposes of Local Rule 3-12, a connection made even more dubious when you realize that their only grounds for calling it frivolous was because they said so.

73.    But now, they have lost what little hope they may have already had of having it be declared frivolous. Without the ability to see the alleged infringement, this Court cannot make the determination that it is "clearly fair use" at the pleading stage, which means it cannot determine (at least not yet) that the case is clearly frivolous. This means that the one way the intervenors are attempting to connect the cases together (dubious as it already is) cannot be determined at the pleading stage. By the time we go through discovery, it will be too late to switch judges for anything other than mandatory recusal, so declaring the cases "related" at that stage would be a waste of time. And again, that's assuming that the lawsuit being "frivolous" is alone enough to constitute a relation under Local Rule 3-12, which it is not.

74.    This effectively kills the administrative motion in its tracks. There is literally no basis whatsoever for claiming the cases are related, assuming there ever was one to begin with.

75.    Then again, the fact that they have no evidence other than "because we say so" has never stopped the intervenors before.

## VI: Sanctions

76.   Just to be clear: These accusations do not violate Rule 11 because their reasons for them are illogical or based on scant evidence. They violate Rule 11 because there is no logic or evidence whatsoever. I can't point to any evidence and say "this proves nothing," because there is literally nothing for me to point to. *That* is what makes their allegations frivolous.

77.   Even if we give them the benefit of the doubt that, but for the spoliation, the transformative nature of the icon would become immediately apparent to any reasonable person upon even a cursory inspection of the icon[2], the fourth factor typically requires the defendant to come forth with "favorable evidence of relevant markets" (see Campbell, supra at 590), which they have not even attempted to do here.

78.   I therefore ask the Court to issue the intervenors an appropriate sanction, one that will force the intervenors to stop making these extraordinary claims about me without extraordinary proof, and to stop ignoring the rebuttal evidence I provide. If they want to continue making these extreme claims about my case, they should be required to tackle my rebuttal evidence head-on, not simply claim "that's absurd" and leave it at that. No more logical fallacies. No more invincible ignorance, appealing to the stone, or proof by mere assertion. They either back up their claims with facts and proof, and make surreplies to my rebuttal evidence, or they should not be allowed to make the claims at all. If they persist in making these blatant arguments ad labidem, they should be subject to continuing sanctions.

79.   Remember that sanctions under Rule 11 are mandatory. See Golden Eagle, supra. Let us also not forget that invincible ignorance, appeals to the stone, and proof by assertion are precisely the sort of bad faith per se behaviors that Rule 11(b)(3)-(4) was designed to stamp out.

80.   I also ask for a protective order, ordering the intervenors to cease and desist their baseless accusations against me.

## VII: Conclusion

81.   Wherefore, premises considered, I respectfully pray that the intervenors be sanctioned for their bad faith arguments, that costs incurred for the delay in litigation be awarded, and for any

---

2   Even then, one must keep in mind the arguments contained in sections V-2 and V-3 of this motion when making that bold claim.

other relief to which I may be entitled.

So requested on this, the 7th day of February, 2023.

/s/ David Stebbins
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

RE: Appointment Confirmation

From:  Mollick, Jason (jmollick@wsgr.com)

To:     acerthorn@yahoo.com

Date:  Thursday, January 26, 2023 at 07:46 AM CST

Mr. Stebbins,

We do not consent.  You have more than enough experience with the judicial process to respond to an administrative motion.  I have also urged you, many times, to consult with a lawyer before filing frivolous copyright lawsuits.  We will litigate the case and seek an award of all fees incurred doing so.

On a related note, it appears that the user who operated the "Acerthorn the True Acerthorn" channel took down the channel sometime yesterday.  In light of this, please advise if you wish to continue litigating or if you will withdraw the case.

Jason Mollick

---

**From:** Acerthorn <acerthorn@yahoo.com>
**Sent:** Wednesday, January 25, 2023 7:25 PM
**To:** Mollick, Jason <jmollick@wsgr.com>
**Subject:** Fw: Appointment Confirmation

.

EXT - acerthorn@yahoo.com

Dear Mr. Mollick,

This is the earliest pro bono office was able to work me in so I could discuss the administrative motion with them. Would you consent to an extension of time for me to file my response, until **Tuesday, February 7th**, so I can have a chance to confer with legal counsel about this matter and discuss my options?

If so, can you please prepare a joint motion for extension of time and have this filed with the court by tomorrow?

Sincerely,

David Stebbins

**SER44**

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                          PLAINTIFF

VS.                                          Case 3:21-cv-04184-JSW

KARL POLANO, et al                                                      DEFENDANTS

<u>**ORDER GRANTING PROTECTIVE ORDER AND SANCTIONS**</u>

The Plaintiff's Motion for Protective Order and for Sanctions is hereby GRANTED.

The intervenor defendants are hereby imposed a fine of $25,000, to be paid into court

within one (1) week after the date of this Order.

The intervenor defendants and their counsel are also hereby ordered to cease and desist

their pattern of making accusations against the plaintiff without any evidence to support them.


IT IS SO ORDERED on this, the _____th day of February, 2023.


_____
Signature of Judge

1  RYAN S. BENYAMIN, State Bar No. 322594
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
3  633 West Fifth Street, Suite 1550
   Los Angeles, California 90071
4  Telephone: (323) 210-2900
   Facsimile: (866) 974-7329
5  rbenyamin@wsgr.com

6  JASON MOLLICK (*pro hac vice*)
7  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
8  1301 Avenue of the Americas, 40th Floor
   New York, New York 10019
9  Telephone: (212) 999-5800
   Facsimile: (212) 999-5899
10 jmollick@wsgr.com

11 *Counsel for Intervenors*
12 *Alphabet Inc. and YouTube, LLC*

13                  UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
14                       OAKLAND DIVISION

15

16 DAVID A. STEBBINS,                )   CASE NO.: 4:21-cv-04184-JSW
                                     )
17          Plaintiff,               )   **ADMINISTRATIVE MOTION TO**
                                     )   **CONSIDER WHETHER CASES**
18      v.                           )   **SHOULD BE RELATED**
                                     )
19 KARL POLANO et al.,               )   Judge:  Hon. Jeffrey S. White
                                     )
20          Defendants.              )   Action Filed:  June 2, 2021
                                     )
21                                   )
                                     )
22 _____    )

23

24

25

26

27

28

<u>**ADMINISTRATIVE MOTION**</u>

Pursuant to Civil L.R. 3-12, Intervenors Alphabet Inc. ("Alphabet") and YouTube, LLC ("YouTube") request that the Court relate the present action and the already-related case, *Stebbins v. Rebolo et al.*, No. 4:22-cv-00546-JSW, to a new copyright infringement action filed in this District by Plaintiff David A. Stebbins against Intervenors' affiliate, Google LLC ("Google"), *David A. Stebbins v. Google LLC*, No. 3:23-cv-00322-LJC (filed Jan. 20, 2023).   Alphabet, YouTube, and Google are represented by the undersigned counsel in all three cases.

<u>**IDENTIFICATION OF RELATED CASES (CIVIL L.R. 3-12(d)(1))**</u>

1)   Lowest-Numbered Case: *Stebbins v. Polano*, No. 4:21-cv-04184-JSW (filed June 2, 2021);

2)   Already-Related Case: *Stebbins v. Rebolo*, No. 4:22-cv-00546-JSW (filed Jan. 27, 2022); and

3)   New Case: *Stebbins v. Google LLC*, No. 3:23-cv-00322-LJC (filed Jan. 20, 2023).

<u>**RELATIONSHIP OF THE ACTIONS (CIVIL L.R. 3-12(d)(2))**</u>

Plaintiff is a self-proclaimed "YouTuber" who goes by the online alias, "Acerthorn."  This Court is all-too familiar with his years' long abuse of the court system.  That abuse is continuing with yet another baseless and wasteful copyright action in this District that is designed to stifle fair use criticism of his litigation tactics—his third such case against Intervenors and their affiliates in the last two years alone.  Intervenors respectfully request that the Court take appropriate action by relating the new case to the two existing cases, at which point the Court can consider screening the new case under the *in forma pauperis* statute, dismissing it, and (as it has warned multiple times) declaring Plaintiff a vexatious litigant in the Northern District of California.

**A.   The *Polano* and *Rebolo* Actions**

As Intervenors detailed in prior filings (*see, e.g.*, Motion to Intervene, Dkt. 138 at 3-4), Plaintiff's home district, the Western District of Arkansas, has already declared him a "vexatious" litigant who has "abused the system" with "a history of filing ultimately meritless cases upon which the Court has been forced to expend countless hours of time and judicial resources." *Stebbins v. Stebbins*, 2013 U.S. Dist. LEXIS 93528, at *3-4 (W.D. Ark. July 3, 2013).  Here in this District, for example, he once sued Google to confirm a purported "arbitration award" for half a trillion dollars, even though no arbitration actually occurred.  *Stebbins v. Google, Inc.*, 2011 U.S.

1   Dist. LEXIS 125701, at *11-12 (N.D. Cal. Oct. 27, 2011) (dismissing *sua sponte* as "frivolous"

2   and "clearly baseless").  Plaintiff has also filed at least **three** mandamus petitions in the Ninth

3   Circuit alone, two of which are aimed at this Court in connection with this case.  *See* 9th Cir. Case

4   Nos. 11-72595 (denied), 22-70132 (denied), 22-70269 (pending).

5       Plaintiff's litigious behavior has engendered a chorus of social media users who are critical

6   of him.  In response, Plaintiff has filed a barrage of bogus "copyright" actions, Digital Millennium

7   Copyright Act (DMCA) takedown notices, and related claims for virtually every instance where

8   anyone uses pieces of his content to criticize him—including *de minimis* snippets of his YouTube

9   videos, displays of his YouTube channel logo, the sounds of his voice, and screenshots of his face.

10  For example, in the already-related *Rebolo* case, Plaintiff sued an online user for creating a

11  YouTube channel designed to criticize him which used a picture of his face as its channel icon.

12  *Rebolo* Dkt. 15 ¶ 128.  He also sought leave to add infringement claims against another channel

13  critical of him, called "Acerthorn The True Acerthorn."  *Id.* Dkt. 16-1 ¶¶ 154-59.  For these

14  "infringements" Plaintiff sought approximately $3.5 million in damages, plus (as in the *Polano*

15  case) injunctive relief requiring YouTube to permanently ban all user-defendants.  *Id.* Dkt. 15 at

16  33.  Plaintiff not only sued the individuals who criticized him, but also the online services that

17  hosted those criticisms, including YouTube, Alphabet (Google's parent company), and now

18  Google (which provides the YouTube service).

19      This Court dismissed the present case, *Polano*, and warned Plaintiff that continuing to file

20  frivolous copyright claims aimed at stifling online criticism would result in him being declared a

21  vexatious litigant and subjected to a pre-screening order:

22          Plaintiff clearly feels aggrieved by comments made about him
            online by the Individual Defendants and others, but that does not
23          mean Plaintiff has a viable copyright claim.  He does not, and his
            pursuit of his claim has caused the Court to expend significant
24          resources addressing his meritless claims.  Plaintiff is warned that if
            he persists in filing frivolous or meritless lawsuits, the Court may
25          impose sanctions, bar from him from filing further actions without
            prior approval, and/or deem him a vexatious litigant.
26

27  *Polano* Dkt. 158 at 8.  The Court issued the same warning in the *Rebolo* case, noting specifically

28  that Plaintiff was improperly targeting fair use criticism:

1
2
3
4
5
6

> [M]uch of the alleged infringement is plainly fair use criticism as Plaintiff himself concedes in the complaint…. Plaintiff's attempt to manufacture and pursue ultimately meritless copyright infringement claims in an effort to silence online criticism smacks of bad faith and abuse of the Court system. Plaintiff's bad faith and his history of filing frivolous lawsuits further justifies dismissal without leave to amend…. Plaintiff is warned that if he persists in filing frivolous or meritless lawsuits, the Court may impose sanctions, bar him from filing further actions without prior approval, and/or deem him a vexatious litigant.

7

*Rebolo* Dkt. 20 at 4-5. Both actions, however, remain pending.

8

**B.    The New Action**

9

On January 20, 2023, Plaintiff filed a new copyright action against Google that follows the

10

same pattern, and features many of the same parties and facts, as the *Polano* and *Rebolo* cases.

11

*Stebbins v. Google LLC*, No. 3:23-cv-00322-LJC. The case is currently assigned to Magistrate

12

Judge Lisa J. Cisneros. The Complaint (Dkt. 5) alleges that the channel "Acerthorn The True

13

Acerthorn"—one of the same channels that Plaintiff complained about in the *Rebolo* case—is

14

using a channel icon that displays a screenshot of his face superimposed with the phrase

15

"ACERTHORN LAW." *Id.* ¶¶ 5-13.[1] Because the icon allegedly derives from a nearly four-hour

16

video that Plaintiff created and copyrighted, he asserts a claim of copyright infringement against

17

Google for hosting the icon on YouTube. *Id.* ¶¶ 15-20. As in the prior cases, he requests $150,000

18

in statutory damages and an injunction ordering Google to remove the content and ban the channel

19

operator from YouTube. *Id.* ¶¶ 52-56. Plaintiff has also been granted leave to proceed *in forma*

20

*pauperis*. *Google* Dkt. 6.

21

Tellingly, Plaintiff spends the vast majority of his new Complaint defensively arguing that

22

the channel icon is not fair use under the Copyright Act. *Google* Dkt. 5 ¶¶ 35-51. But clearly, it

23

is: (1) the entire purpose and character of the challenged use is to criticize Plaintiff; (2) the

24

underlying copyrighted video is of minimal creativity; (3) the channel uses an infinitesimal

25

screenshot from a four-hour video; and (4) the channel's use of that screenshot has no impact

26

27
28

---

[1] The "Acerthorn The True Acerthorn" channel and associated icon can be found at https://www.youtube.com/@acerthornthetrueacerthorn4532/featured. Plaintiff's allegedly-infringed video can be found at https://www.youtube.com/watch?v=iDKSx4oi-r0.

**SER49**

1   whatsoever on the market for Plaintiff's video, if there even is such a market at all.  *See* 17 U.S.C.

2   § 107 (listing the fair use factors).  If the case is not dismissed *sua sponte* (as it should be), Google

3   intends to file a motion to dismiss on fair use grounds, followed by a motion to recover all attorney

4   fees expended in defending yet another frivolous copyright case.  *See* 17 U.S.C. § 505.

5       The new case should be deemed related to *Polano* and *Rebolo*.  Under Civil L.R. 3-12(a),

6   an action is related to another when (1) "The actions concern substantially the same parties,

7   property, transaction, or event"; and (2) "It appears likely that there will be an unduly burdensome

8   duplication of labor and expense or conflicting results if the cases are conducted before different

9   Judges."  Both requirements are easily met here.  <u>First</u>, the new case involves the same Plaintiff

10   bringing the same type of claim against Google, which operates the YouTube service that was sued

11   (along with Google's parent, Alphabet) in the related *Polano* and *Rebolo* cases.  The alleged

12   infringing channel, "Acerthorn The True Acerthorn," is one of the same channels at issue in the

13   *Rebolo* case.  *Rebolo* Dkt. 16-1 ¶¶ 154-59.  *Rebolo* also alleged the same type of infringing conduct

14   that is at issue in the new case: that another channel designed to criticize him infringed his

15   copyright by using a screenshot of his face as an icon.  *Id.* Dkt. 15 ¶ 128.  More fundamentally,

16   the new case follows the same abusive pattern as *Polano* and *Rebolo*: Plaintiff's use of copyright

17   law to silence fair use criticism of him.

18       <u>Second</u>, because the facts and circumstances are essentially the same across all cases, there

19   would be an undue waste of judicial resources and a risk of conflicting results if the cases proceed

20   before different Judges.  Unfortunately, this Court is already well-versed in Plaintiff's litigation

21   history and abuse.  And, this Court has repeatedly warned Plaintiff that he will be subject to a

22   vexatious litigant order if he continues to file frivolous copyright claims—warnings that he is

23   clearly ignoring.  Accordingly, this Court is uniquely positioned to address the ongoing waste of

24   judicial resources that Plaintiff is causing.[2]

25   _____

26       [2] Intervenors have also learned that Plaintiff recently filed ***another*** lawsuit in this District,
*Stebbins v. Doe d.b.a. SidAlpha*, No. 4:23-cv-00321-DMR (filed Jan. 20, 2023), which the Court

27   should consider relating as well.  In this latest action Plaintiff is suing a YouTube user with the
alias "SidAlpha" for defamation based on a video that SidAlpha posted about Plaintiff's litigation

28   history, which can be found at https://www.youtube.com/watch?v=WB-Xd1qDKIY.  Although
(continued...)

1

<u>**CONCLUSION**</u>

2   For the foregoing reasons, Intervenors respectfully request that the Court consider whether

3 *Stebbins v. Google* should be related to the *Polano* and *Rebolo* actions.  Should the Court see fit

4 to relate the cases, Intervenors respectfully urge the Court to consider screening the new complaint

5 under 28 U.S.C. § 1915(e)(2)(B), dismissing it, declaring Plaintiff a vexatious litigant, and

6 subjecting him to a pre-filing screening order in this District.

7

8 Dated:  January 25, 2023      Respectfully submitted,

9            WILSON SONSINI GOODRICH & ROSATI

             Professional Corporation

10

11            By:  *s/ Jason Mollick*

12            Jason Mollick (*pro hac vice*)

             1301 Avenue of the Americas, 40th Floor

13            New York, New York 10019

             Telephone: (212) 999-5800

14            Facsimile: (212) 999-5899

15            jmollick@wsgr.com

16            *Counsel for Intervenors*

             *Alphabet Inc. and YouTube, LLC*

17

18

19

20

21

22

23

24

25 Intervenors are not a party to this case, and it does not feature a copyright claim, SidAlpha was

  one of the individual defendants in the *Rebolo* case, and the video about which Plaintiff complains

26 is the same video that he alleged was "copyright infringement" in the *Rebolo* action.  *Rebolo* Dkt.

27 15 ¶¶ 109-21.  Plaintiff also attempted to use this same video as a measuring stick for claiming

  copyright damages in the *Polano* case.  *Polano* Dkt. 127-20 ¶ 5.  Thus the facts, circumstances,

28 and parties overlap substantially between all cases.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

Pursuant to Civil L.R. 3-12(b), I certify that a copy of this motion will be served on all known parties who have appeared in each apparently-related case via CM/ECF.  I further certify that a courtesy copy of this motion will be lodged with the assigned Judge in each apparently-related case under Civil L.R. 5-1(d)(7).

Dated:  January 25, 2023

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:     *s/ Jason Mollick*

Jason Mollick (*pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
jmollick@wsgr.com

*Counsel for Intervenors*
*Alphabet Inc. and YouTube, LLC*

ADMINISTRATIVE MOTION TO CONSIDER
WHETHER CASES SHOULD BE RELATED

-6-

CASE NO.: 4:21-CV-04184-JSW

1   RYAN S. BENYAMIN, State Bar No. 322594
    WILSON SONSINI GOODRICH & ROSATI
2   Professional Corporation
3   633 West Fifth Street, Suite 1550
    Los Angeles, California 90071
4   Telephone: (323) 210-2900
    Facsimile: (866) 974-7329
5   rbenyamin@wsgr.com

6   JASON MOLLICK (*pro hac vice*)
7   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
8   1301 Avenue of the Americas, 40th Floor
    New York, New York 10019
9   Telephone: (212) 999-5800
    Facsimile: (212) 999-5899
10  jmollick@wsgr.com

11  *Counsel for Intervenors*
12  *Alphabet Inc. and YouTube, LLC*

13                  UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
14                         OAKLAND DIVISION

15

16  DAVID A. STEBBINS,                )   CASE NO.: 4:21-cv-04184-JSW
                                      )
17           Plaintiff,               )   **DECLARATION OF JASON
                                      )   MOLLICK, ESQ. IN SUPPORT OF
18       v.                           )   ADMINISTRATIVE MOTION TO
                                      )   CONSIDER WHETHER CASES
19  KARL POLANO et al.,               )   SHOULD BE RELATED**
                                      )
20           Defendants.              )   Judge:  Hon. Jeffrey S. White
                                      )
21                                    )   Action Filed:  June 2, 2021
                                      )
22  _____  )

23

24

25

26

27

28

1   I, Jason Mollick, declare as follows:

2   1.   I am an attorney at the law firm of Wilson Sonsini Goodrich & Rosati, P.C., counsel

3   for Intervenors Alphabet Inc. ("Alphabet") and YouTube, LLC ("YouTube") in the above-

4   captioned action, and for Defendant Google LLC ("Google") in a newly-filed action, *David A.*

5   *Stebbins v. Google LLC*, No. 3:23-cv-00322-LJC (filed Jan. 20, 2023).  I am admitted *pro hac vice*

6   in this case, and intend to file an application to appear in the *Google* action as well.

7   2.   I respectfully submit this Declaration pursuant to Local C.R. 7-11(a) in support of

8   the accompanying Administrative Motion to Consider Whether Cases Should be Related.

9   3.   On January 24, 2023, I emailed Plaintiff David Stebbins, *pro se* Plaintiff in the

10   above-captioned action and the newly-filed action against Google.  I asked Plaintiff whether he

11   would oppose a motion requesting that the cases be deemed related pursuant to Local C.R. 3-12,

12   along with another already-related action brought by Plaintiff that is pending before this Court,

13   *Stebbins v. Rebolo*, No. 4:22-cv-00546-JSW (filed Jan. 27, 2022).

14   4.   Plaintiff responded that he disagrees that the cases are related.

15   I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true

16   and correct.  Executed on January 25, 2023 in Eastchester, New York.

17

18   By:   *s/ Jason Mollick*
             Jason Mollick

19

20

21

22

23

24

25

26

27

28

**SER54**

1

2

3
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

4  DAVID A. STEBBINS,                          )   CASE NO.: 4:21-cv-04184-JSW
                                              )
5          Plaintiff,                         )   **[PROPOSED] ORDER GRANTING**
                                              )   **ADMINISTRATIVE MOTION TO**
6      v.                                     )   **CONSIDER WHETHER CASES**
                                              )   **SHOULD BE RELATED**
7  KARL POLANO et al.,                        )
                                              )
8          Defendants.                        )   Judge:  Hon. Jeffrey S. White
                                              )
9  _____        )   Action Filed:  June 2, 2021
                                              )
10

11         Upon consideration of Intervenors Alphabet Inc. and YouTube, LLC's ("Intervenors")

12  Administrative Motion to Consider Whether Cases Should be Related pursuant to Civil L.R. 3-12,

13  together with the record in the related actions and upon good cause showing, it is hereby

14  ORDERED that the newly-filed action, *Stebbins v. Google LLC*, No. 3:23-cv-00322-LJC (filed

15  Jan. 20, 2023), currently pending before Magistrate Judge Lisa J. Cisneros, shall be deemed related

16  to *Stebbins v. Polano*, No. 4:21-cv-04184-JSW (filed June 2, 2021) and *Stebbins v. Rebolo*, No.

17  4:22-cv-00546-JSW (filed Jan. 27, 2022), both of which are pending before this Court.   In

18  accordance with Civil L.R. 3-12(f)(3), the Clerk is respectfully instructed to reassign Case No.

19  3:23-cv-00322 to the undersigned and notify all parties and Judge Cisneros accordingly.

20         IT IS FURTHER ORDERED that Defendant's time to respond to the Complaint in Case

21  No. 3:23-cv-00322 shall be stayed pending the Court's initial screening of the Complaint under 28

22  U.S.C. § 1915.

23         **IT IS SO ORDERED.**

24

25  Dated: _____          _____

26                                          HON. JEFFREY S. WHITE
                                            United States District Judge

27

28

[PROPOSED] ORDER GRANTING ADMINISTRATIVE          CASE NO.: 4:21-CV-04184-JSW
MOTION TO CONSIDER WHETHER CASES SHOULD
BE RELATED

**SER55**

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                              PLAINTIFF

VS.                          Case 3:21-cv-04184-JSW

KARL POLANO, et al                                          DEFENDANTS

**NOTICE OF APPLICATIONF OR WRIT OF MANDAMUS AND FOR WRITS OF
PROHIBITION**

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Notice of
Application for Writ of Mandamus and for Writs of Prohibition.

1.      Attached, you will find a copy of the Petition for Writ of Mandamus and Writs of
Prohibition that I am filing with the United States Court of Appeals for the Ninth Circuit.

2.      The filing of this notice should satisfy the requirements of Fed.R.App.P. 21(a)(1), which
requires me to "serve it on all parties to the proceeding in the trial court … [and] the trial court
judge."

3.      So notified on this, the 7th day of December, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

Case 3:21-cv-04184-JSW                    -1-                NOTICE OF APPLICATION

**SER56**

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| | ) | |
| | ) | |
| in re DAVID STEBBINS, | ) | Case No. _____ |
| Petitioner | ) | |
| | ) | **PETITION FOR WRIT OF MANDAMUS** |
| | **)** | **AND WRITS OF PROHIBITION** |

Comes now, pro se Petitioner David Stebbins, who hereby submits the following Petition for Writ of Mandamus and for two Writs of Prohibition in the above-styled action.

## TABLE OF CONTENTS

| Section | Page |
|---|---|
| I.  TABLE OF CONTENTS | 1 |
| II.  TABLE OF AUTHORITES | 2 |
| III. RELIEF SOUGHT | 3 |
| IV. ISSUES PRESENTED | 3 |
| V.  FACTS OF THE CASE | 3 |
| VI. REASONS WHY THE WRITS SHOULD ISSUE | 9 |
|     1.  Unreasonable Delay | 9 |
|     2.  Lack of Availability of Other Remedies | 10 |
|     3.  Prejudice I have suffered as a result of the delay | 10 |
| VII.         SERVICE ON RESPONDENTS | 11 |
| VIII.   CONCLUSION | 11 |

-1-

**SER57**

## TABLE OF AUTHORITIES

**Rules and Statutes**                                                                   **Page(s)**

- 17 USC § 512(f)                                             3
- 17 USC § 411(b)                                             5,6
- 17 USC § 107                                                7
- Canon 3(A)(5) of the Code of                                9
  Conduct for United States Judges
- Fed. R. App. P. 4(a)(4)(A)                                  11
- Fed.R.App.P. 21(a)(1)                                       11
- FRE 404                                                     6,8
- N.D. CA Local Rule 7-13                                     9


**Case Law**                                                                            **Page(s)**

- Arizona v. Fulminante, 499 US 279, 308 (1991)              8
- Bordenkircher v. Hayes, 434 US 357, 363 (1978)             8
- Burlington Nort. & Santa Fe Ry. v. Dist. Court,            9
  MT, 408 F. 3d 1142, 1146 (9th Cir. 2005)
- Liljeberg v. Health Services Acquisition                   8,10
  Corp., 486 US 847 (1988)
- in re A Community Voice, 878 F. 3d 779 (9th Cir. 2017)     9,10
- Kenna v. US Dist. Court for CD Cal., 435                   9
  F. 3d 1011, 1017 (9th Cir. 2006)
- Mallard v. United States Dist. Court for Southern          10
  Dist. of Iowa, 490 US 296, 309 (1989)
- Tumey v. Ohio, 273 U.S. 510 (1927)                         8

-2-

## RELIEF SOUGHT

1.      I seek a writ of mandamus ordering the District Court to make current the motions for leave to file motion for reconsideration, as well as the motions for relief of judgment in Case Nos. 4:21-cv-04184-JSW (Stebbins v. Polano) and 4:22-cv-00546-JSW (Stebbins v. Rebolo) in the United States District Court for the Northern District of California.

## ISSUES PRESENTED

2.      The issues are whether …

   (a)      The District Court has a duty to rule on the motions for leave to file motion for reconsideration and/or the motions for relief of judgment, and

   (b)      Whether the District Court has unnecessarily delayed in doing so.

## FACTS OF THE CASE

3.      On or around February 2021, some people on the Internet began harassing and doxxing me, and infringing on my copyright out of pure malice and spite, creating new accounts after the old ones were blocked or deleted so that they could recommence their harassing and infringing behavior with no accountability. So on June 1, 2021, I filed a federal lawsuit against three of them for copyright infringement, intentional infliction of emotional distress, and DMCA Misrepresentation in violation of 17 USC § 512(f). It was assigned Case No. 4:21-cv-04184-JSW. In addition, I also listed three of the websites where their actions were hosted as nominal defendants(Youtube, Discord, and Twitch), seeking prospective injunctions ordering those sites to terminate the individual accounts permanently. While I also included another website as a non-nominal defendant, they were dismissed with prejudice by my own notice.

4.      The last of the individual defendants to be served with process was served on May 15, 2022 (see Dkt. 118). All three individual defendants were entered in default, with the last of the three individual defendants so entered on April 6, 2022 (see Dkt. 91, 123, and 125).

5.      Meanwhile, the individual defendants recruited new people in their campaign to harass and dox me out of pure hatred, malice, and spite, so I ended up filing another lawsuit in the Northern District of California. That case was given Case No. 4:22-cv-00546-JSW. The case was eventually related to the Polano case and was stayed, pending resolution of the Polano case.

6.      Youtube, however, indicated that they intended to litigate the matter against me despite

only being nominal defendants. I never signed up for that, I only ever wanted to enter into an adversarial, litigious relationship in that case against the individual defendants. The nominal defendants were just there to terminate the individual defendants' accounts after I won.

7.      To prevent this, and to avoid delaying the entry of default judgment in my favor, I issued a Notice of Voluntary Dismissal (or NVD, for short) against the nominal defendants on April 11, 2022. See Dkt. 128. Twenty minutes later, the nominal defendants filed a Motion to Dismiss anyway, despite having been terminated as parties in the case. See Dkt. 129. I filed a motion to strike the motion to dismiss (Dkt. 130), and the Court struck the motion (Dkt. 134).

8.      However, while the district court acknowledged that I was well within my legal right to issue the NVD, and was entitled to its effects, he nonetheless personally did not approve of my filing of the NVD. As such, he admonished my alleged "abuse" of the system and threatened to declare me a vexatious litigant if I did it again. See Dkt. 134 ("the Court does not endorse Plaintiff's efforts to manipulate the litigation process and his blatant gamesmanship. Should Plaintiff continue to dismiss and refile cases in bad faith to obtain a different result, he risks being declared a vexatious litigant in this district").

9.      There was no attempt to legally justify his anger towards me beyond that. His entire justification began and ended with "You had the right to do what you did, but I still don't like it, so I'm still going to hold a grudge against you for it, just because I can." He didn't even *pretend* like there was anything more to it than that.

10.     Nine days later, Youtube filed a Motion to Intervene (Dkt. 138), alleging the same grounds for dismissal of the complaint as were previously argued in the Motion to Dismiss. In this motion, they openly admitted that they were hoping to circumvent the NVD. See Dkt. 138, p. 6, lines 21-22 ("Fortunately, the Court does have discretion to deal with Plaintiff's abusive tactics in another way").

11.     On July 11, 2022, the District Court issued two simultaneous orders in the Polano and Rebolo cases, dismissing both cases with prejudice. His reasons for doing so can be summed up as follows:

    (a)     In the Polano case,

        i.      He granted the Motion to Intervene because …

            (1)      I did not provide legal citation stating that a motion to intervene cannot be used to overcome an NVD. Dkt. 158, p. 4, Lines 9-11 ("Plaintiff cites no authority for

the proposition that Rule 41(a) dismissal prevents permissive intervention Rule 24(b)").

(2)     He still held a grudge against me for issuing the NVD, so he was going to grant the motion out of spite. Dkt. 158, p. 4, lines 17-21 ("Plaintiff's behavior in this case favors permissive intervention. Plaintiff has made no secret that he dismissed the Corporate Defendants ... Plaintiff's abuse of the litigation process ... favor intervention").

ii.     He found my stream was not copyrightable because …

(1)     Because I did not create the stream *on purpose*, it lacked minimal creativity. He created some new legal requirement out of thin air that, in order to be valid as a matter of law, creativity must come from intentional "creative choices," and thus accidental works were not copyrightable. See Dkt. 158, pp. 5-6 ("First, the livestream lacks even the minimal degree of creativity required to be copyrightable... the livestream occurred unbeknownst to Plaintiff and without his creative input or direction and thus, is not copyrightable ... Because Plaintiff did not know he was being recorded, his facial expressions were not creative choices ... Plaintiff was not engaged in the process of creating an intended work because he the recording occurred without his knowledge. Accordingly, the livestream does not possess the creativity necessary for it to be copyrightable").

(2)     Using language in my own complaint that wasn't even based off personal knowledge, he concluded that I had admitted that the stream was not a product of human authorship, and therefore was not copyrightable under the precedent of Naruto v Slater, 888 F. 3d 418 (9th Cir. 2018).

(3)     My copyright registration improperly categorized the stream as a "dramatic work" when it should have been categorized as an "audiovisual work." Although the court never made the finding that this error was made intentionally by me, nor did it ever find that the Copyright Office would have rejected the registration had I properly categorized the work as an audiovisual, it still found the registration to be invalid under 17 USC § 411(b).

iii.     The DMCA Misrepresentation claim was left entirely unadjudicated. The District Court never even mentioned it.

(b)      In the Rebolo case (Dkt. 20 in Case No. 4:22-cv-00546-JSW), the District Court found …

i.      The inaccurate information in my first copyright registration not only invalidated that registration, but all other registrations as well. See Dkt 20, p. 4, lines 2-4 ("The Court finds that Plaintiff's proven lack of candor in his prior application overcomes the presumption of validity afforded by registration of the other livestream videos").

(1)      Again, this finding was made even without finding that the improper categorization was done on purpose or that properly categorizing the first stream as an audiovisual work would have resulted in the registration being rejected, as is required by 17 USC § 411(b). But here, the District Court took it even further, and used this prior, allegedly bad act as evidence that I acted in conformity therewith on unrelated occasions, in blatant violation of FRE 404.

ii.      All other copyrights in that case which I sought to enforce were lacking in minimal creativity. See Dkt. 20, p. 4, lines 6-9 ("Plaintiff's allegations of ownership regarding the additional livestreams are insufficient. Plaintiff does not allege facts that permit the Court to assess whether the content is eligible for copyright protection. He does not describe the material or address how it meets any of the criteria for copyright protection, such as creativity or originality").

(1)      Unlike in the Polano case, this time, no reason whatsoever was given for finding a lack of creativity. They all lacked minimal creativity, literally for no other reason than … because he said so.

iii.      He declared my allegations of copying to be "vague" and "cryptic," while simultaneously and unironically being extremely vague and cryptic in his own right, giving absolutely no details whatsoever to support this finding. See Dkt. 20, p. 4, lines 9 ("his allegations of copying are vague and conclusory").

iv.      The infringing videos were all "plainly fair use criticism." See Dkt. 20, p. 4, line 22.

(1)      Bear in mind that, in the Polano case, the district court had already found that I am not required to disprove fair use at the pleading stage[1]. Now, without warning or

---

1   See Dkt. 10 of the Polano case ("it is not necessary to plead facts that disprove fair use for the complaint to survive... although the complaint suggests Defendant will raise the issue of fair use, that is an affirmative defense that Plaintiff need not disprove at this stage"). See also Dkt. 21 (district judge adopting magistrate judge's

**SER62**

reason, he is switching his position and declaring the infringing videos to be "plainly fair use" at the pleading stage.

(2)     It is also worth noting that, when denying a motion for preliminary injunction, the District Court stated, in no uncertain terms, held that fair use always … always … must be determined on a case by case basis[2]. Yet here he is, making a blanket ruling on multiple fair use disputes at once.

(3)     He also did not even so much as *attempt* to analyze the infringements based on the Four Factors Test as outlined under 17 USC § 107(1)-(4). Instead, he insisted that the videos were all "plainly fair use" *exclusively* on the basis that they were "criticism," and nothing more.

v.      My two lawsuits were only designed to silence online criticism.

(1)     Again, the district court provides absolutely no evidence, nor does he even remotely hint at the existence of any, to support this finding. He certainly provides no evidence found in the complaint - the only place he is supposed to look to when dismissing a complaint for failure to state a claim - to support this extremely accusatory finding.

vi.     Once again, the copyright infringement claims were the only claims the District Court addressed, even partially. All other claims were left unadjudicated, yet the entire case was still dismissed with prejudice.

12.    Immediately after these two orders were issued, but before the judgment was entered, I filed dual motions for leave to file motions for reconsideration (Dkt 159). Under the local rules for the Northern District of California, I am required to file this motion before filing the motion for reconsideration itself ([insert citation here]). It also must be filed before final judgment is entered, but again, I just barely met that deadline.

13.    Because I was only supposed to file a motion *for leave to file a motion* for reconsideration, my arguments contained in the motion were admittedly underdeveloped. This was not meant to be the main motion for reconsideration, so I saved my best arguments for the motion proper.

14.    However, the motion also contained another motion in it: A Motion to Recuse. My

_____

findings).

2   See Dkt. 115, p. 5, line 11 ("The fair use doctrine calls for a case-by-case analysis of several factors").

grounds for recusal were as follows:

(a)      The District Court was clearly biased against me, as evidenced by …

i.      The District Court has admitted, twice, on the record, that he holds a grudge against me for filing the NVD, and that he issued these adverse rulings against me in part because of his personal dislike towards me. He *admitted* to holding this grudge, so I don't even have to prove what is normally a substantial burden.

ii.      In addition to that admission, the numerous arbitrary (and sometimes even self-contradictory) rulings of the District Court mentioned above (including, but not limited to, his inconsistent handling of fair use, his arbitrary finding that my other registrations were invalid in violation of FRE 404, his entirely arbitrary finding that the other copyrights lack minimal creativity absolutely for no reason whatsoever, and his entirely out-of-nowhere finding that I am simply trying to silence online criticism with absolutely no evidence supporting this finding) are all circumstantial evidence that the District Court simply powered through both cases in an attempt to get them (and by extension, me) out of his hair as quickly as possible without regard to whether his findings stood up to the slightest scrutiny. In other words, they are evidence that his rulings were fueled primarily (if not exclusively) by personal hatred towards me.

(b)      This is a blatant violation of my constitutional right to due process. See Bordenkircher v. Hayes, 434 US 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional") (citations and quotations omitted).

(c)      Recusal is required, even when there is no *actual* judicial partiality, so long as there is a *reasonable appearance* of judicial partiality. See Liljeberg v. Health Services Acquisition Corp., 486 US 847 (1988).

(d)      The right to an impartial judge is so fundamental that it can "never be treated as harmless error." Arizona v. Fulminante, 499 US 279, 308 (1991) (citing Tumey v. Ohio, 273 U.S. 510 (1927)).

(e)      Therefore, the only thing the District Court can do that would not be an additional violation of my constitutional rights is (A) re-open both cases, (B) vacate the orders dismissing each case, and (C) recuse himself from both cases and allow a new judge to step

-8-

in and handle the cases from there.

15.      On July 25, 2022, I filed joint motions to set aside the judgment. See Dkt. 162. These motions were largely redundant of the motions for leave to file motions for reconsideration. Rather, they were filed primarily to make 100% certain that the 30-day deadline to file a Notice of Appeal would be stayed pending resolution of the post-judgment motions.

16.      On November 8, 2022, I filed joint Notices of Submitted Matters in both cases. See Dkt. 170. These notices were filed pursuant to Local Rule 7-13, and were meant as courtesy reminders that these motions needed to be ruled on. So far, however, the motions still have not been ruled on. The case has had no significant developments since then.

### REASONS WHY THE WRIT SHOULD ISSUE

17.      "A judge should dispose promptly of the business of the court." See Canon 3(A)(5) of the Code of Conduct for United States Judges. It is well-established that one of the most common grounds for granting a writ of mandamus is to compel a court to issue a ruling on a motion that has sat on its docket without a ruling for an unreasonable amount of time. See in re A Community Voice, 878 F. 3d 779 (9th Cir. 2017). In addition to undue delay in ruling on a pending motion, other grounds for mandamus relief include "clear … legal error by the district court [and] no other means for the petitioner to obtain review" as well as "issue[s] of first impression." See Kenna v. US Dist. Court for CD Cal., 435 F. 3d 1011, 1017 (9th Cir. 2006). "In order to gain the benefit of the writ, ... the right to the writ must be clear and indisputable." See Burlington Nort. & Santa Fe Ry. v. Dist. Court, MT, 408 F. 3d 1142, 1146 (9th Cir. 2005).

### Unreasonable Delay

18.      The motions have laid dormant for five months. This is an objectively unreasonable length of time, made even more unreasonable when you realize that I have only filed motions *for leave to file* motions for reconsideration, not the motions for reconsideration themselves. Even if leave is granted, the motion for reconsideration itself must also be filed, with the intervenors being allowed to issue their own brief in opposition thereof. The relative lack of stakes make the already excessive delay in disposing of these motions even more unreasonable.

19.      There was a motion to recuse, and granting that motion would have consequences all on its own. However, if the District Court is so on the fence about whether or not recusal is required,

that is, in itself, evidence that recusal is indeed required. Think about it: If he's taking this long to decide, that just means he accepts that my request for recusal is not patently frivolous. There is an arguable basis for me to believe that I am entitled to recusal, which in turn means that it is objectively reasonable that his impartiality might reasonably be questioned.

20.     At that point, the discussion is already over. Recusal at that point is required, even in the absence of actual judicial bias (see Liljeberg, supra), and without regard to the harmless error rule (see Arizona, supra).

21.     Alternatively, perhaps he is reviewing the cases with a fine-toothed comb in order to make up for his previous, extremely hastily-put-together orders previously. But at that point, the district court is effectively admitting that his initial orders were indeed hastily-put-together without regard for compliance with the law. That, in turn, just begs the question: Why weren't they carefully considered in the first place? If it was because he was angry at me for filing the NVD and he wanted to punish me for it, then he is admitting to having *actual* judicial bias against me. If it wasn't for that reason, then what was it? It is often said that the simplest explanation is almost always the correct one, and here, judicial bias is the simplest explanation that best accounts for all of his seemingly arbitrary rulings.

22.     Put simply, there is no reason for the District Court to be taking this long to issue his rulings. Therefore, he should be ordered to enter rulings on the motions.

**Lack of availability of other remedies**

23.      It is well settled law that a writ of mandamus should not issue if alternative methods are available for obtaining the same relief. See Mallard v. United States Dist. Court for Southern Dist. of Iowa, 490 US 296, 309 (1989) ("To ensure that mandamus remains an extraordinary remedy, petitioners must show that they lack adequate alternative means to obtain the relief they seek"). In the instant case, no adequate alternative remedy is available. It is equally well established that a district court's refusal to rule on a pending motion can only be corrected by mandamus. See in re A Community Voice, 878 F. 3d 779 (9th Cir. 2017).

**Prejudice I have suffered from the delay**

24.     It is well established that the filing of a motion for postjudgment relief tolls the 30-day

deadline to file a notice of appeal. See Fed. R. App. P. 4(a)(4)(A). So not only am I not required to file a notice of appeal just yet, but in my experience, whenever a motion like this is timely filed, the appellant isn't even allowed to file a notice of appeal just yet, even if he wanted to. See Case No. 13-2687 in the 8th Circuit Court of Appeals (dismissing appeal without prejudice for lack of jurisdiction for this exact reason).

25.     Therefore, I have been prejudiced by being shut out of the Court of Appeals.

## SERVICE ON RESPONDENTS

26.     Once I submit this Petition to the email address of prose_pleadings@ca9.uscourts.gov, I will file a "Notice of Application for Writ" in the district court case, using the ECF system. I will include a copy of this Petition with that notice, thereby complying with the requirements of Fed.R.App.P. 21(a)(1) to serve the district court judge and opposing parties.

## CONCLUSION

27.     Wherefore, premises considered, I respectfully pray that these extraordinary remedies be issued, and any other relief to which I may be entitled.

28.     So requested on this, the 7th day of December, 2022.

David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

-11-

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                    PLAINTIFF

VS.                                    Case 3:21-cv-04184-JSW

KARL POLANO, et al                                          DEFENDANTS

### REPLY IN SUPPORT OF MOTION TO SET ASIDE JUDGMENTT

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Reply in Support of Motion to Set Aside Judgment in the above-styled action.

1.      The Intervenors' entire argument for opposing the motion to set aside judgment consists entirely of the fact that my motion is allegedly redundant of arguments already rejected by the Court. No other grounds for opposing the motion have been submitted.

2.      I would like to emphasize that the Motion for Leave to File a Motion for Reconsideration – which is intertwined with this motion – was not meant to be dispositive on its own. As per the local rules, I cannot simply file the motion for reconsideration without first seeking leave of Court. If leave is granted, then and only then will I file the motion for reconsideration which will contain the actual arguments, facts, and evidence. For this reason, the Court may see fit to put off on ruling on this motion (to set aside judgment) until after it has had an opportunity to consider the actual, proper motion for reconsideration which has yet to be filed.

3.      Even barring that, there are several issues raised, even in the motion for leave, that were not "rejected" by the Court, including but not limited to the fact that there is still a claim that has yet to be adjudicated, the fact that this Court, by its own admission, holds a grudge against me for issuing the voluntary dismissal, and the fact that, because my factual allegations were not based on personal knowledge, they are not admissible. The Court never explicitly rejected that

Case 3:21-cv-04184-JSW                    -1-                    Motion to Set Aside Judgment

last argument. It instead appeared to act as if it had discretion to consider the arguments. It appeared as if the Court didn't realize that it was a challenge to admissibility, but instead perceived it as a "That's not what I said" kind of argument.

4.      Also, the Court stated that I had not provided any legal authority stating that motions to intervene cannot be used to counter a voluntary dismissal. I am offering to provide the legal authorities which the Court said it wanted to see. But I need leave from the Court to file the motion to reconsider before I can do that.

5.      Then, there are the issues which I raised, but which the Court manifestly ignored, such as evidence that the minor error made when I categorized the accidental stream as a "dramatic work" was not good enough to invalidate the entire registration, or the fact that Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074 (9th Cir. 1999) already provided an absolute bar against any/all forms of circumventing a voluntary dismissal, so addressing the specific theory of a motion to intervene was not necessary. Per Local Rule 7-9(b)(3), manifestly ignoring evidence or arguments is grounds for filing a motion for reconsideration.

### Sample Argument

6.      To give the Court just a taste of what sort of arguments I can bring to the table if I am allowed my day in court (assuming the Court is willing to even give me my constitutional right to my day in court), consider this. Please keep in mind that this is just a sample argument. I will provide more if the motion for leave to file a motion for reconsideration is granted.

7.      The Court initially held my accidental livestream to lack minimal creativity primarily because I wasn't intending to do anything copyrightable when I made the accidental livestream. See Dkt. 158, p. 6, Lines 8-9 ("Here, Plaintiff was not engaged in the process of creating an intended work because he the recording occurred without his knowledge"). This, according to the Court, is what distinguishes this case from Alfred v. Catalda, because in that case, the copyright holder was still intending to create something copyrightable.

8.      However, there are two problems with this logic. The first is that the copyright holder in Alfred was, in fact, NOT trying to create something copyrightable! Had things gone according to plan, the plaintiff in that case would have merely created a 1-to-1 recreation of a public domain

work! See id at 104 (where the defendants argue that "plaintiff's mezzotints could not validly be copyrighted because they are reproductions of works in the public domain"). So just how distinguishable is that case from this one, really? Clearly, that precedent does not hold that you can copyright an accidental work if, and only if, you are intending to create something copyrightable to begin with. Clearly, they held the exact opposite: That even if the accidental part of the creation is the only original element, that's still good enough to support a brand new copyright!

9.      I honestly don't know how the Court could possibly have not realized this. That excerpt was literally in the same paragraph as the part about defects in musculature or bad eyesight, an excerpt that was quoted by the Court! What, did the Court not even *read* that case law before it decided it was distinguishable?! If so, why not? Is it because the Court was so overflowing with rage and hatred towards me personally that it was going to find a distinction no matter what, and so the minutia didn't matter? If so, that only further cements my entitlement to a recusal because the judge is no longer impartial.

10.     Second, there is absolutely no evidence appearing anywhere in the SAC – or anywhere in the world, for that matter, aside from the intervenors uncorroborated accusations – that I didn't intend to create any intended work when I created the accidental livestream by mistake. In fact, if we take that logic and run with it (that I can still copyright the accidental livestream as long as I was intending to create *something* copyrightable at the time my errant keystroke accidentally turned on the streaming software), then the odds are overwhelmingly likely that I do indeed satisfy that requirement.

11.     Think about it: At the start of the accidental stream, I can clearly be seen sitting at my computer, and typing at the keyboard. What exactly I was doing is lost to history, but it is clear that I was doing *something that required the use of a keyboard*. So this begs the question: Of all the things I could have been doing that would have required a keyboard, what among them would not have been copyrightable?

12.     Bear in mind that even documents meant for purely personal use can still be protected by copyright. For example, personal letters meant entirely for private communication are

Case 3:21-cv-04184-JSW                            -3-                    Motion to Set Aside Judgment

protectable by copyright. See "Toward a Fair Use Standard", 103 Harv. L. Rev. 1105 (1990), Page 1117 ("In the early history of copyright, British courts debated whether letters written for private communication should receive any protection at all from the Statute of Anne. The question was soon satisfactorily settled in favor of protection"). Meanwhile, "the great American novel, a report prepared as a duty of employment, a shopping list, or a loanshark's note on a debtor's door saying 'Pay me by Friday or I'll break your goddamn arms' are all protected by the copyright." See *id* at 1116-17.

13.     Perhaps I was typing and sending an email when I accidentally turned the stream on. If private letters can be copyrighted, surely private emails can.

14.     Perhaps I was entering a comment onto a Youtube video or issuing a tweet on Twitter. But again, if a mere shopping list can be copyrighted, those comments certainly can as well. In fact, those comments would probably receive even *more* copyright protection than a mere shopping list, since such comments would, by their very nature, be made "in contemplation of publication" (since all Youtube comments and tweets are public by default), which Pierre Leval says is a major factor in copyrightability. See *id* at 1117 ("there is a meaningful difference between writings ... made in contemplation of publication, and documents written for a private purpose").

15.     Meanwhile, if I were operating my *video editing software*, trying to create a video to upload to Youtube, then I absolutely, definitely would have been creating something copyrightable! In fact, this is, by far, the thing I was most likely doing at the start of the stream (which is when the errant keystroke happened), for reasons I will discuss if I am given leave to file the motion to reconsider.

16.     Put simply, even though we do not know exactly what I was doing when I accidentally turned the streaming software on, the fact that what I was doing required the use of a keyboard means it is overwhelmingly likely that what I was doing was copyrightable, much like how, in a hypothetical situation where we don't know exactly what a person was doing, but we know it required the use of a *guitar*, that means it is overwhelmingly likely that what he was doing was copyrightable. Sure, an image of a keyboard does not readily conjure up ideas in a normal

Case 3:21-cv-04184-JSW                    -4-                    Motion to Set Aside Judgment

person's mind of creativity and art the same way an image of a guitar does, but if you think about how low the threshhold is for copyrightability in the first instance, it is irrefutable that a keyboard is just as much an instrument for copyrightable expression as a guitar is.

17.      Therefore, the Court's finding of fact that I "was not engaged in the process of creating an intended ]copyrightable] work" is clearly devoid of merit, and if the judge weren't furious at me for issuing that voluntary dismissal, he might have been calm and reasoned enough to see that on his own. All the more reason why the judge should recuse himself.

18.      This is the third time the intervenors and court have attempted to manufacture some deficiency in my claim to copyright protection that was entirely cut from whole cloth. First, the intervenors argued that, because my stream was accidental, it was devoid of any and all creative expression. When I pointed out several points where I engaged in creative expression, they switched horses and argued that I did not position the camera, focus the lens, direct the scenery, and so on and so forth. But then, I provided an Objection to Reply Evidence where I explained that I absolutely did do these things. Then, the Court swoops in and makes its own ruling, independently of the intervenors, by finding that I have to at least intend to do something copyrightable in order for an accidental work created as a side effect of that otherwise intentional work to likewise be copyrightable. Then I debunked that argument by showing that I, in all likelihood, have indeed done this. This is honestly getting ridiculous at this point. What's going to be your next argument for invalidating the copyright?

19.      The bottom line is this: Aside from the accident itself, there is nothing – not one single solitary thing – wrong with my accidental livestream that renders it uncopyrightable. The only grounds you could possibly have for arguing that my accidental livestream is not copyrightable is if you were to argue that all accidental works are categorically and inherently devoid of copyrightability.

20.      But you can't argue that, because both the intervenors and this Court have already conceded that accidental works can sometimes be copyrighted, as long as the copyright holder was intending to create something when he accidentally created a side work by mistake.

21.      If the Court were to change its tune now, and hold Alfred to be entirely inapplicable

(rather than merely distinguishable), then it would be announcing with trumpets to the Court of Appeals that you are biased against me and therefore must recuse. Because if you concede that you were in error when you made the finding of fact that I wasn't in the process of creating an intended work, but then you turn around and conjure up a *fourth* argument out of thin air to justify finding my copyright to be invalid, then you are effectively admitting that all you really seek to do is make sure that I – David Stebbins in particular – cannot have a valid and enforceable copyright. At that point, it would be on record that you (A) decided that I should not get my day in court, and (B) then proceeded to pull some pretextual excuse out of thin air for why I shouldn't be entitled my day in court, rather than the other way around. At that point, everyone could see you, on the record, literally just making up the rules as you go along.

22.     At that point, you would effectively be admitting with trumpets that you are throwing my cases out solely because you don't like me, which means the Court of Appeals will likely reverse and order you to recuse.

23.     But if you were to instead double down on your finding of fact, and insist that you were right all along when you found that I "was not in the process of creating an intended work," and that the arguments contained in ¶¶ 13-15 of this Reply are manifestly untrue, then your judgment will likely be reversed for clear error. There is absolutely no evidence, appearing anywhere on the record – let alone the SAC, which is the only part of the record the Court is supposed to consider on a Rule 12(b)(6) motion to dismiss – which supports this finding of fact. You literally just made that up, simply because you personally don't like me because of that voluntary dismissal.

24.     Again, I would like to remind the Court that this is only meant as a sample argument, While I certainly intend to raise this argument (with even more details and evidence to boot) if granted leave to file the motion for reconsideration, it is not the only one I plan to argue. This is just to show the Court that I have a good chance of showing that I do indeed have a valid copyright to enforce, so unless the Court truly is throwing my cases out purely out of spite and personal dislike towards me, there is no good reason for the Court to deny me leave to file this motion for reconsideration. The only reason to deny leave is if the Court is actually afraid that I

**SER73**

might be able to show an entitlement to relief if leave were granted, but then the Court is admitting to holding a bias against me.

**Conclusion**

25.     This Court has made it clear that it doesn't like me. It doesn't like the fact that I issued that voluntary dismissal, and now it seeks to punish me for doing it. It has already admitted to this on the record, so I don't even have to prove it. The Court needs to set aside the judgment, vacate Dkt. 158 (Order Dismissing Action) and then recuse, allowing a new judge to come in and issue his own ruling on the motion to intervene. It's the only way to protect my constitutional right to an impartial judge.

        So requested on this, the 3rd day of August, 2022.

*/s/ David Stebbins*

David Stebbins

123 W. Ridge Ave.,

APT D

Harrison, AR 72601

(870) 212-4947

acerthorn@yahoo.com

**SER74**

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                   PLAINTIFF

VS.                                     Case 3:21-cv-04184-JSW

KARL POLANO, et al                                          DEFENDANTS

**MOTION FOR RELIEF OF JUDGMENT**

 Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Motion for Relief of Judgment pursuant to Federal Rule of Civil Procedure 60.

1. There is currently a pending motion for leave to file a motion for reconsideration. See Dkt. 159. This motion was filed before the entry of judgment (which is Dkt. 160), so it is still validly before the court. However, I spoke with California's pro bono office today, and they advised me that the filing of that motion may, but also may not, toll the 30-day time limit to file a notice of appeal. They said that the best thing I could do to ensure that this time limit is tolled is to file a Motion for Relief of Judgment pursuant to Rule 60[1]. That is what I am doing now. This motion is not being filed just to arbitrarily increase the Court's workload, but to ensure that the Court can rule on my pleas for reconsideration before I am forced to appeal.

2. Rule 60(b)(6) allows the Court to set aside a judgment for "any other reason that justifies relief," even if that reason is not explicitly stated in Rule 60(b).

3. As I stated in Dkt. 159, there are several reasons this Court should vacate the judgment against me, including but not limited to …

 (a) The judge has openly admitted to holding a personal grudge against me because I

---

1   See Federal Rule of Appellate Procedure 4(a)(4)(A)(vi) ("If a party files in the district court any of the following motions under the Federal Rules of Civil Procedure—and does so within the time allowed by those rules—the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion ... for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.")

issued the voluntary dismissal that he didn't like, thereby violating my absolute right to an impartial judge. Therefore, the judge should have recused himself.

(b)      The Court stated that I failed to show any legal authority that a motion to intervene cannot be used to circumvent a voluntary dismissal, even though I provided binding precedent that stated that *nothing* can circumscribe it. This means that everything under the sun is necessarily precluded from interfering with the voluntary dismissal in any way, shape, or form.

(c)      The Court made a completely new, arbitrary conclusion of law that, in order to be copyrightable, a work must be comprised of creative *choices*. The law does not have this requirement. To be copyrightable, a work need only contain minimal *creativity*, not creative *choices*.

(d)      The Court erred in finding admissible my allegation in the SAC that the stream came on "of its own accord." Since that statement was not based on personal knowledge, it was not admissible under Rule of Evidence 602.

(e)      The Court failed to make any finding (let alone one based on a lack of evidence) that the erroneous classification of the accidental stream as a "dramatic work" was actually grounds for invalidating the registration.

(f)      There is still a claim that has yet to be adjudicated.

4.      The contents of Dkt. 159 are hereby incorporated by reference.

Wherefore, premises considered, I respectfully request that the judgment be vacated. So requested on this 25th day of July, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com


UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                        PLAINTIFF

VS.                              Case 3:21-cv-04184-JSW

KARL POLANO, et al                                    DEFENDANTS

## MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION AND TO RECUSE

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following motion for leave to file a motion for reconsideration.

1.      This Court stated that I cited no legal authority showing that a motion to intervene cannot be used to circumscribe a voluntary dismissal. If the Court grants me leave to file this motion for reconsideration, I can indeed show case law stating as much. See Dukes v. Wal-Mart Stores, Inc., Case No. 01-cv-02252-CRB, 5 (N.D. Cal. Aug. 15, 2016)[1] ("[T]he Court lacks jurisdiction to adjudicate the Proposed Intervenors' Motion to Intervene"). See also Fort Sill Apache Tribe of Okla. v. United States, 2008 WL 2891654, at *1 (W.D. Okla. July 23, 2008)[2] ("The fact that a motion to intervene is pending at the time the notice is filed does not affect the automatic dismissal provided for by Rule 41(a)(1)(A)(i) and (B) … a motion to intervene should not affect the plaintiff's right to dismiss as of right").

2.      Therefore, leave to file a motion to reconsider should be granted so I can provide this legal authority which the Court says I lack.

3.      Second, this Court has admitted that it is dismissing this case in part to punish me for my "abusive behavior." See Dkt. 158 ("Plaintiff's behavior in this case favors permissive

---

1  The unpublished opinion can be found at https://scholar.google.com/scholar_case?case=1581261639147081396
2  The unpublished opinion can be found at https://scholar.google.com/scholar_case?case=7366738215539446155

Case 3:21-cv-04184-JSW                    -1-                    Motion for Reconsideration

intervention. Plaintiff has made no secret that he dismissed the Corporate Defendants to prevent them from challenging the validity of the livestream's copyright and that he intends to re-litigate the same issue in the Related Case. Plaintiff's abuse of the litigation process and his attempt to evade a ruling on an essential question at the core of both cases, favor intervention").

4.      I have tried to tell the Court time and time again that this is not the reason I issued the voluntary dismissal. It was just to avoid tedious delay in the litigation. Alphabet and Youtube were never meant to be anything other than nominal defendants in this case. Unless the Court has some actual *proof* to the contrary, and gives me an opportunity to show cause against it, it would be a violation of my due process rights for the Court to punish me in this case.

5.      Third, I should not have been required to show any of these things. The precedent of Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074, 1076 (9th Cir. 1999) already precludes *any* means of circumscribing the voluntary dismissal, literally the entire scope of any attorneys' imagination, from negative infinity to positive infinity, on the X, Y, and Z spectrums.

6.      Fourth, the Court finds that, because I did not intend to create this livestream, none of the creative expressions contained therein count as minimally creative, even if those same things would constitute minimal creativity if done under any other circumstances. The Court cites no legal authority for this. If given leave to file the motion to reconsider, I can show ample argument as to (A) how I was indeed intending to do something creative when I created the accidental livestream by mistake, and (B) why, even barring that, there is no good reason as a matter of public policy to bar copyright protection in such a case.

7.      Fifth, the Court finds that my copyright is lacking in human authorship. However, in doing so, it completely ignores my argument where I point out that this allegation in the complaint *is not based on personal knowledge*. That does not simply dampen the probative value of the allegation; it renders the allegation completely inadmissible. See Federal Rule of Evidence 602. This means that the Intervenors *can't use it against me*, even if they wanted to. It might as well be hearsay.

8.      Sixth, the Court finds that the "registration application contained inaccurate and incomplete information." But in making this finding, it completely ignores the evidence that I

provided which showed that the Copyright Office was indeed fully aware of this error and chose to grant registration anyway!

### There is still a claim remaining

9.      Last but not least, I feel this error needed to be kept to a separate section, just to make it stand out: Contrary to the intervenors' assertions, there are still claims to be litigated in this case, even if the April 10, 2021 livestream is not copyrightable. Remember, I also included a claim for § 512(f) misrepresentation, which the Court allowed to remain. See **Dkt. 21, Page 3 Line 12 thru Page 4 Line 5**. Just because I didn't move for summary judgment on that claim (because I was seeking leave to amend the complaint anyway) does not mean it was not still pending before the court.

10.     The Court has offered no basis whatsoever for dismissing that claim. Therefore, the case should be allowed to continue just on that alone.

### Motion to Recuse

11.     In addition allowing this case to be re-opened, I ask this Court to recuse itself from the proceeding. It has demonstrated that it personally doesn't like me because of my voluntary dismissal and plans to issue adverse rulings against me from here on out just to punish me for doing so.

12.     If the Court cannot set aside its personal grudges and issue rulings with impartiality, it must recuse. My right to an impartial judge is absolute. See Tumey v. Ohio, 273 US 510, 535 (1927) ("No matter what the evidence was against him, he had the right to have an impartial judge").

### Conclusion

13.     Wherefore, premises considered, I respectfully pray that this Motion for Leave to File a Motion for Reconsideration be granted. So requested on this, the 11th day of July 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave., APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

Case 3:21-cv-04184-JSW                          -3-                          Motion for Reconsideration

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                    PLAINTIFF

VS.                                    Case 3:21-cv-04184-JSW

KARL POLANO, et al                                            DEFENDANTS

**REPLY TO [154] RESPONSE TO OBJECTION TO REPLY EVIDENCE AND
OPPOSITION TO [152] MOTION FOR LEAVE TO
FILE SUPPLEMENTAL MEMORANDUM**

       Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Reply to the intervenors' Opposition to my Motion to Intervene.

1.      First, intervenors claim that this Objection to Reply Evidence is improper. It is worth noting that I sought the advice of counsel before filing this Objection. See **Exhibit A**. If this objection were wholly improper, it seems unlikely that the Pro Bono Office would have neglected to advise me accordingly. In fact, they made numerous recommendations for *revisions* to the objection so as to better frame my arguments! Only once in a while did they recommend the removal of *individual sentences* in their entirety without revising them.

2.      As such, I disagree that the objection was improper. Rather, it is clear that, because my Objection thoroughly debunks several of the factual allegations the intervenors made in their reply (such as me not positioning the camera, or the fact that me improperly listing the work as a "dramatic work" singlehandedly constitutes grounds for rejecting the application), they are running scared because they know their lies have been exposed.

3.      Intervenors have also stated that they oppose the granting of the second Motion for Leave to File Supplemental Brief. Therefore, their response also counts as their Opposition to that

Case 3:21-cv-04184-JSW                    -1-                    MOTION FOR LEAVE

Motion. This means that my Reply to that motion is now timely.

4.      Intervenors sole grounds for opposing the supplemental reply is that they claim that they raised no new arguments or facts that were not raised in their original motion. This is false. They clearly did raise new specific factual allegations that were not present in the original motion. For example, at **Dkt. 151, p. 8, lines 20-22,** intervenors argue that me improperly classifying the work as a "dramatic work" is singlehandedly grounds for invalidating the registration "[n]o matter how Plaintiff tries to speculate what the examiners understood." Also, at **Dkt. 151, p. 11, lines 13-14**, the intervenors claim that I "did not direct the scenery, position the camera, [or] focus the lens." Bear in mind that they are not arguing that, because me hitting the start button for the streaming software was accidental *this one time*, none of those things count as a matter of law; they are alleging that I literally did not do them in the first instance.

5.      These things were never alleged at any point in the original motion to intervene, or even the now-stricken motion to dismiss (from which a vast portion of the motion to intervene was copied and pasted). I went back and checked. At no point in either of those filings do the words "focus," "lens," or "position" ever appear through a Ctrl+F search. The word "camera" appears only in reference to the camera accidentally turning on, not that I didn't "position" it, and the word "dramatic work" is only to make the argument that such a classification implies that the content was choreographed[1], not that this improper classification is singlehandedly grounds for invalidating the registration entirely. They raised general allegations of a lack of creativity in the stream, and I was able to (and therefore did) make general rebuttals against those general allegations. But now, they raise far more specific indictments that require more specific rebuttals.

6.      As such, these three things are being alleged for the first time in the reply. I had previously offered proof that the stream had general creativity, but not proof of these specific things, since I previously had no reason to suspect that these three specific things were even in dispute. It would be an egregious violation of my due process rights if they were allowed to raise these never-before-seen factual allegations at the last minute, without me being given at least one

---

1   For the record … says who? On what *objective source* do they base their allegation that this classification necessarily implies choreography, and that using that category when the work wasn't choreographed is necessarily an act of fraud on my part? And more importantly, how is this implication apparent just from the face of the SAC?

Case 3:21-cv-04184-JSW                         -2-                         MOTION FOR LEAVE

opportunity to offer evidence to rebut them.

7.      Therefore, the Court should either accept my Objection to Reply Evidence (even if it was improper in the first instance, which I doubt, since pro bono counsel would likely have advised me of such if it were) or grant the motion for leave to file a supplemental brief.

8.      If, in spite of my clearly-established constitutional right to at least one opportunity to offer rebuttal evidence against the allegations made against me, the Court still refuses to grant me leave to file this supplemental brief and still insists on striking the Objection to Reply Evidence, then I would, at the very least, like to respectfully remind the Court of the following:

(a)     On a motion to dismiss (or something tantamount to a motion to dismiss), the Court must accept the allegations of the complaint, not only as true, but in a light most favorable to the Plaintiff, meaning that statements that could potentially be taken figuratively (such as "of its own accord") must be construed as such if it gives the Plaintiff's case the best chance of winning.

(b)     The Court cannot look beyond the complaint for undisputed facts. This means that every factual allegation offered by the intervenors (such as their allegations that I "did not direct the scenery, position the camera, [or] focus the lens," or their allegation that my statements made in the SAC were definitive admissions of fact rather than figures of speech) must be apparent on the face of the Complaint itself for their motion to be granted, and absolutely nowhere else in the record or in the evidence.

(c)     Pro se complaints are to be construed liberally.

(d)     The voluntary dismissal is absolute and cannot be circumscribed in any way, shape, or form, no matter how indirect or roundabout the method used.

9.      Wherefore, premises considered, I respectfully pray that the motion for leave to file this supplemental brief be granted. So requested on this, the 7th day of June, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave., APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

## Re: Activity in Case 3:22-cv-00546-SK Stebbins v. Rebolo et al

From:   Acerthorn (acerthorn@yahoo.com)

To:      fedpro@sfbar.org

Date:   Monday, June 6, 2022 at 11:18 AM CDT

Ms. Deborah,

Please find, attached, a draft Objection to Reply Evidence that I plan to file. I want to ask for your input on that Objection during today's appointment.

Sincerely,
David Stebbins

On Thursday, May 12, 2022 at 06:32:12 PM CDT, fedpro <fedpro@sfbar.org> wrote:

Hello Mr. Stebbins: You are confirmed for Monday, June 6th at 11:15am PST. I will call you at that time and you may consent to the retainer agreement on the call.

Take care,

Deborah

**The Legal Help Center  - Federal Pro Bono Project**

**Justice & Diversity Center of The Bar Association of San Francisco**

Appointment Line: 415-782-8982
Email: fedpro@sfbar.org
S.F. Office - 450 Golden Gate Ave., 15th Fl., Room 2796
Oakland Office - 1301 Clay St., 4th Fl., Room 470 S

Thank you for contacting the Federal Pro Bono Project.  This email address is used *only* for scheduling appointments.  We do not offer any legal advice over email.  Communicating with us through email does not create an attorney-client relationship. The Legal Help Centers in San Francisco and Oakland do not represent you.  You are responsible for all parts of your case including any deadlines.

**From:** Acer Thorn [mailto:acerthorn@yahoo.com]
**Sent:** Thursday, May 12, 2022 3:46 PM

David Stebbins (pro se Plaintiff)        123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947        acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                    PLAINTIFF

VS.                              Case 3:21-cv-04184-JSW

KARL POLANO, et al                                                DEFENDANTS

### OBJECTION TO REPLY EVIDENCE

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Objection to Reply Evidence, as permitted by Local Rule 7-3(d)(1) without prior court approval.

1.        This Objection may be improper. I may be confused as to what "new evidence submitted in the reply" means. If so, Dkt. 152 (Motion for Leave to File Supplement) still stands, only now, you have an idea as to what kind of things I plan to argue upon supplementary filing (only without the 5-page limit that applies here).

2.        Anyway, first, the intervenors raise, for the first time in their reply, that Youtube LLC is a new party in the case. This is not true. Youtube was a party to this case ever since the First Amended Complaint, and counsel for intervenors knew this all along. As you can see from **Exhibit A**, Mollick and I had a conversation about Youtube being the proper defendant almost immediately after Alphabet was served. He knew full well that, when I included Alphabet Inc. as a nominal defendant, I was actually including Yotuube LLC, and that this error could be corrected through the simple expedient of substituting the parties. So Mollick is lying. Youtube was a party to this case ever since the First Amended Complaint, and Mollick knows this. Therefore, Youtube LLC was included in the voluntary dismissal.

3.        Even if that were the case, why would Alphabet Inc still be included in the motion if, by their own admission, they do not qualify? Clearly, intervenors are just trying to circumscribe the voluntary dismissal and that's all there is to it. This leads us to the second problem: The intervenors raise, for the first time in their reply, that the motion to intervene supersedes the voluntary dismissal. This is patently frivolous. The binding precedent which I have cited – Com. Space Man. v. Boeing, 193 F. 3d 1074 (9th Cir. 1999) – makes it abundantly clear that a

voluntary dismissal is "absolute" and "cannot be circumscribed" in any way, shape, or form. The Intervenors have offered absolutely nada in legal authority to contradict this unambiguous and absolute case law.

4.      If the dismissal could be circumscribed at all, it should only be permitted under truly exceptional circumstances. Allowing a defendant who didn't want to be dismissed from the action to rejoin the case through the simple expedient of filing a motion to intervene would effectively render all future voluntary dismissals as completely toothless, because *literally anyone could do it*. "It is unlikely that [the applicable policymaking body] intended to allow the provisions … to be bypassed so easily." See MCI v. Exalon, 138 F. 3d 426. 430 (1st Cir. 1998)[1].

5.      Third, the intervenors raise, for the first time in their reply, that the statements made in ¶¶ 22-23 of the SAC were affirmative admissions that I am now bound by, not simply speculative or figurative statements. They have offered precisely zero evidence in support of this interpretation. They should be ordered to either provide objective proof that my statements were meant to be taken literally, or admit they have none and just made that assertion up despite knowing it to be false. If they do neither, they should be held in contempt of court and/or sanctioned for violating FRCP 11(b)(3).

6.      Fourth, the intervenors raise, for the first time in their reply, that the fact that I described the work as a "dramatic work" was an act of intentional fraud on my part. They say that "no matter how Plaintiff tries to speculate what the examiners understood," this classification is grounds for invalidating the registration.

7.      This is patently false. At least in this specific instance, I am not speculating as to what the examiners understood; I already know full well what the examiners were thinking. How do I know this? Because they literally told me so, themselves! See **Exhibit B**, an email sent to me by the Copyright Office where they inquired about this exact problem. I responded to this inquiry with **Exhibit C**, defending my interpretation of the word "dramatic." I then proceeded to call the US Copyright Office at (202) 707-3000 to further inquire about the status of my registration. I was told that I would still get registration, and that they would simply file it as a motion picture

---

1   Although this case law concerned arbitration law, rather than voluntary dismissals, the general logic of this section of the opinion is still applicable.

despite me improperly classifying it as a dramatic work. This reassurance prompted me to send **Exhibit D** to the Copyright Office later that same day.

8.     17 USC § 411(b) provides the statutory basis for challenging the validity of a timely-regstered copyright. Paragraph (2) of that subsection states that "the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." The Court should do that in this case, for every alleged deficiency the intervenors raise. After all, as shown above, not all errors necessarily "occasion the rejection" of a registration. We should ask the Register (currently Shira Perlmutter) if the error is serious enough to warrant such nuclear action.

9.     Fifth, the intervenors raise, for the first time in their reply, that to prevail on a claim of copyright infringement, I must affirmatively allege that the work was one of human authorship, not simply admit to a lack of knowledge. This is blatantly false. All I am required to provide (at least at the complaint stage) is proof of registration. This registration creates a presumption of copyright validity, and then the defendants/intervenors must affirmative prove facts which show that the copyright is invalid. I have not made a defective complaint simply because I did not allege this ultra-specific factor of copyrightability; the registration alone provides sufficient factual allegation for copyright ownership in all respects to overcome a motion to dismiss.

10.     Sixth, the intervenors raise, for the first time in their reply, that my stream is lacking in minimal creativity because I "did not direct the scenery, position the camera, focus the lens, adjust the lighting." They are not simply claiming that, because I accidentally pressed the button to turn the camera on *this one time*, these things somehow don't count as a matter of law (although, even if they did, they have provided no legal citation stating that this is the law); they are saying that I *didn't do these things* in the first instance. It should be clear at this point that the intervenors are just making stuff up as they go along.

11.     Bear in mind that the motion to intervene is tantamount to a motion to dismiss, which means that the Court cannot look beyond the Complaint for undisputed facts. The intervenors have offered precisely zero evidence – in the SAC or otherwise – to show that I did not do any of these things.

12.     In fact, I can easily demonstrate that I did indeed do all three of these things. Think about it: I live by myself. So if I did not "position the camera," then who in the name of Jesus do you *think* put it there?! The camera was clearly in a position where my face and upper torso were clearly visible whenever I sat in front of my computer, so it was clearly placed in that spot on purpose by me. Therefore, I necessarily "position[ed] the camera."

13.     I did all three of these things (and many others) when I first started doing livestreams. I set up the camera, focused the lense, and chose the room of my apartment where I would do the livestreams, while furnishing and decorating the room to my liking (thereby directing the scenery) before I did my first stream. I then re-used that same setup for all future streams, so that whenever I wanted to stream, I could just press the start button and poof, I was streaming. Just because, on April 10, 2021, I accidentally pressed the start button *this one time* does not negate all the creative choices I made, and it is preposterous for the intervenors to argue – especially in the complete lack of any evidence – that I somehow did not do these things.

14.     Last but not least, the intervenors raise, for the first time in their reply, that because the stream was accidentally affixed in any capacity, that means that it is not creative. Automatically. Categorically. Even if that same video could be considered minimally creative under otherwise identical circumstances. The intervenors offer precisely zero legal authority in support of this outlandish legal argument. But this is not an open-and-shut issue. It has never been litigated before and therefore should require more considered attention than throwing a case out at the pleading stage.

15.     For just one example of how reasonable minds may interpret an accidental creation as being protectable by copyright, see this webpage: https://www.avvo.com/legal-answers/authorized/5481841.html[2]. As the Court can see from that link, I described a hypothetical scenario that is virtually identical to the instant case. There are some minor differences, but it is similar to this case in all the ways that matter, especially on the main issue: The accidental creation of the work in the first instance. Despite the similarities between the

_____

2   In case the Court doesn't already know, Avvo is a website where anybody is allowed to post a legal question, but only those verified by the site as being licensed to practice law in at least one state is allowed to post answers. This ensures that the answers have a guaranteed minimum level of reliability, unlike most other Q&A sites like Quora.

instant case and that one, the attorneys who responded unanimously agreed that the copyright would still be valid, and that the accidental nature of the creation does not negate this. One of them even said "Creation can arise out of spontaneity and 'accident,' and Intention and pre-meditation aren't necessarily prerequisites of creativity."

16.     This shows that it's not quite as much of an open and shut case as the intervenors would have you believe. Even if the Court may eventually decide that the copyright is invalid, we would need further litigation (including discovery) to reach that decision with confidence, meaning it cannot be disposed of at the pleading stage. After all, this is not even remotely a unique occurrence. There have been plenty of streamers before and after me who have either accidentally turned their stream on or forgot to turn it off. See https://youtu.be/7Cq2gHNXWrg for only ten, out of literally *tens of thousands*, of examples. If the Court were to rule in favor of the intervenors on this issue, it would categorically deprive ALL of these works of copyright protection. So the Court should not do so on a whim.

17.     Before I sign off, I would respectfully like to refer the Court to **Dkt. 152, ¶¶ 4-12**. While the filing of this Objection negates the need for the Court to grant that motion (unless I am mistaken as to what "new evidence submitted in the reply" means, in which case, my Motion for Leave to File still stands), those paragraphs still need to be read by the Court, and I cannot repeat them here without overstepping the 5-page limit set forth in Local Rule 7-3(d)(1), but it still *needs to be seen* by the Court!

18.     Wherefore, premises considered, I respectfully pray that the Motion to Intervene be denied. So requested on this, the 6th day of June, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D,
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

**SER88**

Re: Stebbins v. Polano et al.

---

From:  acerthorn (acerthorn@yahoo.com)

To:      jmollick@wsgr.com

Date:  Tuesday, September 28, 2021 at 11:21 AM CDT

---

Mr. Mollick,

I've been thinking about the conversation we had yesterday, and a possibility just occurred to me.

You mention that I may have to amend my complaint in order to substitute Youtube, LLC for Alphabet, Inc. You've graciously allowed me to wait until the individual defendants have appeared in the case before I have to do that, and I appreciate that.

However, what if I seek leave to file that amended complaint, and the judge decides "Ok, you can file another amended complaint, but you'll have to serve the individual defendants all over again."

Serving the two international defendants the first time has pretty much sucked my savings dry. I can't afford to do it again.

Now, if Polano and Mateas each make appearances in the case, then this won't be that big of a deal, since they will automatically be served with copies of the amended complaint. However, yesterday, you advised me that it was a realistic possibility that the individual defendants may not even appear at all, and I may get a default judgment against them.

If I get a default judgment against either Mateas and/or Polano, and then I seek leave to amend the complaint then, I may have to serve them all over again ... and I can't afford to do that a second time.

Do you have an idea of what we should do if we ever reach that roadbump?

If I may make a suggestion, is it really so damn important that I list Youtube and not Alphabet as a defendant? Maybe if you were being sued for damages, having Youtube as the defendant would heavily limit which assets I could legally go after in order to collect on the judgment. But since you're only a nominal defendant, don't you think it's in the interests of justice to just let this one slide, just this once?

Of course, if both international defendants actually appear in the case, we're golden. All of this talk is pointless. But at the same time, I would really like to be prepared for the worst.

So what are your thoughts?

Sincerely,
David Stebbins

On Monday, September 27, 2021, 02:03:36 PM CDT, Mollick, Jason <jmollick@wsgr.com> wrote:

**SER89**

Yahoo Mail - Re: Stebbins v. Polano et al.          https://mail.yahoo.com/d/folders/folders=58&sortOrder=date_asc/messag...

David,

Just tried your Google Voice number and left you a VM.  Are you still able to talk this afternoon?

Jason

---

**From:** acerthorn <acerthorn@yahoo.com>
**Sent:** Saturday, September 25, 2021 6:40 PM
**To:** Mollick, Jason <jmollick@wsgr.com>
**Subject:** Re: Stebbins v. Polano et al.

**[External]**

Can you call me earlier than 1pm? If not, I can certainly talk at 3pm, but I'd prefer to get this over with quickly.

On Saturday, September 25, 2021, 04:30:58 PM CDT, Mollick, Jason <jmollick@wsgr.com> wrote:

Thank you. Can you resend as attachments rather than a link? Our security software appears to be blocking the link.

Also, I realize now that I have a conflict at 1pm. Are you available at 3 ET instead?

**Jason Mollick**

Wilson Sonsini Goodrich & Rosati

212.497.7772 | jmollick@wsgr.com

On Sep 25, 2021, at 4:44 PM, acerthorn <acerthorn@yahoo.com> wrote:

**[External]**

In the meantime, here's a copy of the Second Amended Complaint (which has been

updated since you were served with process to include an extra count of infringement), as well as the two motions that are currently pending in this case. If you want to be briefed on what's happened in the case thus far, these current motions would probably be a good place to start.

On Saturday, September 25, 2021, 02:09:46 PM CDT, Mollick, Jason <jmollick@wsgr.com> wrote:

Will do. Thank you.

**Jason Mollick**

Wilson Sonsini Goodrich & Rosati

212.497.7772 | jmollick@wsgr.com

On Sep 25, 2021, at 3:08 PM, acerthorn <acerthorn@yahoo.com> wrote:

**[External]**

1pm Eastern should be noon in my time zone (I live in Arkansas). So yes, I think I will be able to talk then.

Call me at (870) 298-1168. That's my Google Voice phone number and is the one most likely to reach me. The phone number which appears in the signature of my motions is my Textnow phone number, and calls on that number only reach me when they feel like it. I usually say this regarding my two phone numbers: "Textnow is for text messages; Google Voice is for voice chat."

Sincerely,

David Stebbins

On Saturday, September 25, 2021, 02:04:09 PM CDT, Mollick, Jason <jmollick@wsgr.com> wrote:

Thank you, David.  I appreciate your message.  I'd like to chat so I can get more information from you about what's happened in the case thus far, the alleged infringements at issue, your takedown notices, and the individual defendants.  I agree and hope that we don't need to be adversarial.  Once I have some additional information then we can talk about the best way to potentially resolve the matter.

Are you able to talk at 1pm Eastern on Monday?

Jason

---

**From:** acerthorn <acerthorn@yahoo.com>

**Sent:** Saturday, September 25, 2021 2:14 PM
**To:** Mollick, Jason <jmollick@wsgr.com>
**Subject:** Re: Stebbins v. Polano et al.

**[External]**

Dear Mr. Mollick,

Yes, I should be available on Monday.

Before we talk, though, I have to ask: Can you at least give me a brief overview of what this discussion will be about? I want you to understand that Alphabet, Inc. is not on the hook for damages in this case. They are a nominal defendant who is only included in this case so they can terminate the accounts of the individual defendants. I am not seeking to create an adversarial relationship with Alphabet over this case.

So what are you hoping to discuss?

Sincerely,

David Stebbins

On Saturday, September 25, 2021, 12:36:15 PM CDT, Mollick, Jason <jmollick@wsgr.com> wrote:

Good Afternoon Mr. Stebbins:

I have been retained by Alphabet in connection with the lawsuit that you filed in the Northern District of California.  I would appreciate the opportunity to speak with you about the case.  Are you available to talk on Monday?  If so, please let me know what times work for you.

Thank you and have a great rest of your weekend.

Jason Mollick

---

<image001.png>

**Jason Mollick | Associate | Wilson Sonsini Goodrich & Rosati**
1301 Avenue of the Americas, 40th Floor | New York, NY 10019 | 212.497.7772 | jmollick@wsgr.com

<image002.png>   <image003.png>   <image004.png>   <image005.png>   <image006.png>

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

<image002.png>

<image001.png>

<image004.png>

<image003.png>

<image006.png>

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

<We found suspicious links>

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

 Virus-free. www.avg.com

SER94

# EXHIBIT B

1-10499343793 Acci…

← Back   ◄ ▲   ☐ Archive   ↔ Move   🗑 Delete   ⊘ Spam   •••   ▲ ▼   ✕   ☆

Acethom/Copying…



◉ 1-10499343793 Accidental Livestream from April 10, 2021



**Copyright Office** <copr-ad@loc.gov>
To: acerthom@yahoo.com

Dear David Stebbins:

Please respond to the questions below within 45 days and include the [THREAD ID], using the brackets, as part of your response. The [THREAD ID] is located below the Examiner's signature block. The [THREAD ID] must be in the body of your response, NOT the subject line. If you put the [THREAD ID] in the subject line, we will not get your message.

I am reviewing your copyright application for "Accidental Livestream from April 10, 2021" and I have a question regarding your claim.

You asserted a claim in "Dramatic Work" but the video you submitted does not appear to contain a dramatic work.  Please let me know what you are trying to register and I will advise you further.

IMPORTANT NOTE: The THREAD ID appearing at the end of this message MUST be included within the body of your message in order for your message to be properly routed. When replying to this message, make sure to copy the whole THREAD ID, including brackets, and paste it into the body of your response, preferably after the greeting. DO NOT include the THREAD ID in the subject line of your reply. If you put the THREAD ID in the subject line, we will not get your message.

Failure to comply with our instructions will result in your email not being connected to your application, and your case will be closed without further correspondence from us.

Best wishes,

AJB
Copyright Registration Specialist
Office of Registration Policy and Practice
United States Copyright Office

When replying to this email, please include the following thread id (entire line) within the body of your response to expedite routing to the correct office.

[THREAD ID:1-4W6K9XW]



# EXHIBIT C



Re: 1-10499343793 A

← Back   ⤷ ⤶   ▣ Archive   🗀 Move   🗑 Delete   ⊘ Spam   •••

Acerthorn/Copyrig...   ▲ ▼ ★   ✕

**acerthorn** <acerthorn@yahoo.com>
To: Copyright Office

Re: 1-10499343793 Accidental Livestream from April 10, 2021

[THREAD ID:1-4W6K9XW]

This livestream shows me engaging in my daily activities, just like anyone else who films their daily lives for Internet publication. There is certainly a dramatic element to this work. You personally may not find the content very *interesting*, but that does not mean it is not subject to copyright protection. I listed this as a "dramatic" work because it is still a live performance, even if it is improvised.

Starting at 40:14, you can hear some strange noises at one point when I am off camera. These strange noises are, hands down, the most "dramatic" part of the video.

A "drama" is defined by Webster's Dictionary as "a composition ... intended to portray life or character ... usually involving ... emotions through action." See https://www.merriam-webster.com/dictionary/drama

This livestream is a composition that portrays my life. Therefore, it is a drama. A very dull drama, mind you, but a drama nonetheless.

Some people are infringing on my copyright, so I must register this copyright in order to maintain suing them. A copy of the Complaint in that lawsuit is being attached for your reference. As of the time of this writing, I am moving forward with the lawsuit pursuant to the exception listed in 17 USC § 411(c), but I still need to move forward with the registration in order to continue with the lawsuit.

So please update my copyright registration ASAP.

Sincerely,
David Stebbins

Case 4:21-cv-04184-JSW   Document 153-4   Filed 06/06/22   Page 1 of 1

# EXHIBIT D



Re: 1-1049934793 A

← Back

☐ Archive   ➤ Move   🗑 Delete   ✦ Spam   •••

Acerthorn/Coprig...

✦

✕

◀ ▶

◦ Re: 1-1049934793 Accidental Livestream from April 10, 2021

**acerthorn** <acerthorn@yahoo.com>
To: Copyright Office

Dear U.S. Copyright Office,

[THREAD ID:1-4W6K9XW]

As I said in my previous email to you, I believed this constitutes a dramatic work because it depicts me engaging in my daily life, just like many other Internet vloggers. However, since sending that email, I did a little research and I realized there is a possibility that the video might have been better classified as a "motion picture."

I just spoke with a lady on the phone. She told me that, if this misclassification is the only error I made in my application, that you will only change just that one thing in the application and the process the application from there. I will not have to do the application all over again from scratch. I breathed a sigh of relief when she told me this.

However, I would greatly appreciate it if you processed my application quickly. The lady told me that I have lost my opportunity to pay extra for expedited processing, but if you could potentially bump me up in the queue by a few spots without risking losing your job in the process, I would very much appreciate it. As I said last time, I have a currently pending lawsuit, and the judge has ordered me to submit my Amended Complaint by no later than July 30, 2021. So I would very much appreciate having my Certificate in hand by no later than that.

Thank you for your assistance, and please update my application ASAP.

Sincerely,
David Stebbins

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                          PLAINTIFF

VS.                          Case 3:21-cv-04184-JSW

KARL POLANO, et al                                       DEFENDANTS

**MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN RESPONSE TO [151]**
**REPLY TO MOTION TO INTERVENE**

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following motion for leave to file a supplemental brief in response to [151] intervenors' Reply to Motion to Intervene.

**Intervenors' Reply**

1.      In their reply, the intervenors raised, for the first time, several new arguments, including but not limited to …

(a)      Youtube LLC was never included in the case in the first instance, and thus was not subject to dismissal via **Dkt. 128**. Thus, Youtube LLC should be allowed to remain as an intervenor defendant. See **Dkt. 151, p. 6, line 19**.

(b)      Voluntary dismissal does not preempt the parties from rejoining the case under a Motion to Intervene. See **Dkt. 151, p. 6, lines 19-21**.

(c)      The statements made in ¶¶ 22-23 of the SAC were affirmative admissions that I am now bound by, not simply speculative or figurative statements. See **p. 9, line 27**.

(d)      The fact that I described the work as a "dramatic work" was an act of intentional fraud on my part. They say that "no matter how Plaintiff tries to speculate what the examiners understood," this classification is grounds for invalidating the registration. See **p.**

Case 3:21-cv-04184-JSW                    -1-                    MOTION FOR LEAVE

**8, lines 13-27**.

(e)      To prevail on a claim of copyright infringement, I must affirmatively allege that the work was one of human authorship, not simply admit to a lack of knowledge. See **p. 11, lines 6-10**.

(f)      Even if the work was fixed by errant keystroke, rather than autonomous computer software, it still is not a work of authorship as set forth by the statute. See **p. 11, line 17**.

(g)      That I only *appeared* in the accidental livestream, rather than participated in the fixation thereof, and that I "conflate being the subject of a work with being the author of a work."See **p. 12, line 6**.

(h)      Because the stream was accidentally affixed in any capacity, that means that it is not creative. Automatically. Categorically. Even if that same video could be considered minimally creative under otherwise identical circumstances. See **p. 11, lines 11-24**.

2.      Because these arguments were raised for the first time in the Reply, I never had a chance to argue against them in my Opposition. It would be tantamount to ex parte communi-cations if the Court were to consider these arguments without me having a fair opportunity to refute them and to offer contradictory legal authorities against them.

3.      To safeguard against this injustice, I ask for leave to file a supplemental brief in response to the intervenors' reply. Just like last time, this is not simply an attempt to have another go at the opposition just because I feel I could have done better in hindsight.

**The Court should exercise whatever discretion it has in my favor, because
I have been overwhelmingly victimized by the individual defendants and
their enablers (such as the intervenors).**

4.      Before I sign off, I would like to take this opportunity to discuss something a bit more somber, because I might not get another chance after this, especially if this motion is denied. I believe this should apply to the current motion (the motion for leave to file a supplemental opposition), but it should also apply to the entire case, as well as the related case of Stebbins v. Rebolo in its entirety. Please read until the end, because it may seem at first like I am simply venting frustrations that I have kept bottled up inside me for a while, but when you read the

whole thing, you will see that it is not like that after all.

5.      As I have made perfectly clear this entire case (which has been going on for over a year now), the individual defendants in this case have not simply infringed on my copyright. That copyright infringement was only one part of a massive, months-long campaign to harass me, dox me, and generally just inflict as much pain and misery on me as they possibly could, all simply because they don't like me. There was, at least among these individual defendants[1], no effort to justify their actions beyond that. Just pure hatred, pure malice, pure spite.

6.      I have ample evidence to prove this, and I have provided said evidence at numerous stages in the litigation. It started with a "Harassment & Doxxing Report," which I have attached as an exhibit to numerous motions, containing more than 100 sub-exhibits which document the harassment I have endured, and also contain confessions from the individual defendants that they are only doing this because they hate me. They have not simply failed to give any better motive for their conduct that malice for its own sake; they have actively admitted to having no better motive. Also, that report was written in November and thus is limited only to the events up to that point. Other exhibits – such as **Dkt. 106-4** through **106-10** – show that the harassment has continued, and that the individual defendants have recruited new parties to join in the harassment, since then. The harassment I speak of has easily been proven, many times over.

7.      Ever since the start of this case, I have been aware of the ~~possibility~~ inevitability that there would be some aspects of the law that I, as a pro se litigant, did not fully understand. However, in light of all the harassment I have endured at the hands of these individual defendants, I have always maintained that "If the judge has any empathy at all, he will give me whatever relief he can to help me make this harassment go away, unless he feels that he simply has no choice but to give me nothing." Yes, this Court has already declared that the harassment does not amount to an IIED tort as a matter of law, but even though something may be not be independently illegal, the Court can still consider it when dispensing of its discretionary judgments.

---

1   When we get to the Rebolo case, some of them will attempt to justify their behavior in equally frivolous terms (such as claiming that they are punishing me for perceived wrongdoing, even though that is little better than malice for its own sake, since it effectively means they are taking the law into their own hands), but at least in this case, the individual defendants have admitted to their motive being malice for its own sake.

8.     I find it sickeningly unfair that I am vilified, both by the intervenors and in the court of public opinion, for supposedly "abusing" copyright law for an end that, by the intervenors' own admission, is sympathetic, yet the individual defendants are not vilified for "abusing" fair use in order to continue to perpetrate their reprehensible behavior with impunity by hiding behind a thin veil of "providing criticism." What, is fair use such a holy grail of law that it cannot be abused for any improper purpose, but copyright lawsuits still can?!

9.     While we're on the topic, why am I the only one who gets vilified for exercising my "absolute[2]" right to a voluntary dismissal, simply because *this specific judge* does not think it should be a right, yet the intervenors do not get vilified for essentially re-filing their motion to dismiss[3] but re-styling it as a motion to intervene, just in an attempt to circumscribe the dismissal and deprive me of the benefits thereof, in spite of the binding precedent which states that they aren't allowed to circumscribe the dismissal in any way, shape, or form[4]?!

10.    Who is the one who is *really* abusing the system here? The one who is just trying to get the harassment to stop, or the people who are hiding behind fair use to perpetrate that harassment in the first place? The one who invoked an absolute right that was at his disposal in precisely the manner it was designed for, or the ones attempting to circumvent that absolute right in spite of clearly-established law saying that no circumvention is allowed? Why am I the *only one* who is vilified in all of this when, at worst, my behavior is no more unscrupulous than what anyone else has done in this entire debacle, and at best, I am clearly acting in self-defense?

11.    Like I said, this is not meant simply as a rant that I have kept bottled up inside me until now. There is a point to all of this, and that point is this: If the Court has any empathy, it should recognize that I am the victim, not the villain, in this entire debacle. I have provided ample proof of this. If anyone is deserving of the kind of discretionary judicial anger that was on display in **Dkt. 134, p. 1, lines 24-26**, it is the individual defendants, unless the Court is so cold and

---

2   See Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074, 1079-80 (9th Cir. 1999) ("the whole point of a Rule 41(a)(1) dismissal is to give the plaintiff an 'absolute' way out).

3   Although the motion to dismiss is no longer part of the record, it is still accessible from Pacer. If the Court were to go and read that motion, it would see that large portions of the motion to intervene were copied verbatim from the motion to dismiss. The intervenors are not even attempting to hide the fact that they are attempting to circumscribe the dismissal with nothing more than a title change.

4   See Commercial, supra at 1077 ("[the dismissal] may not be extinguished or circumscribed by adversary or court").

**SER101**

heartless that it honestly sees nothing wrong – not just legally, but morally or ethically as well – with the harassment I have endured.

12.     If the Court is indeed so heartless, then I suppose I can't do anything about it. The Court certainly has the right to be that way. But if the Court has any empathy, I feel that siding with me – the true victim in all of this – is the only reasonable path it could take.

<strong>Conclusion</strong>

13.     Wherefore, premises considered, I respectfully pray that leave to file this supplemental opposition be granted.

So requested on this, the 1st day of June, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

1   RYAN S. BENYAMIN, State Bar No. 322594
    WILSON SONSINI GOODRICH & ROSATI
2   Professional Corporation
3   633 West Fifth Street, Suite 1550
    Los Angeles, California 90071
4   Telephone: (323) 210-2900
    Facsimile: (866) 974-7329
5   rbenyamin@wsgr.com

6   JASON MOLLICK (*pro hac vice*)
7   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
8   1301 Avenue of the Americas, 40th Floor
    New York, New York 10019
9   Telephone: (212) 999-5800
    Facsimile: (212) 999-5899
10  jmollick@wsgr.com

11  *Counsel for Intervenors*
12  *Alphabet Inc. and YouTube, LLC*

13                  UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
14                       OAKLAND DIVISION

15

16  DAVID A. STEBBINS,                 )   CASE NO.: 4:21-cv-04184-JSW
                                       )
17           Plaintiff,                )   **REPLY IN FURTHER SUPPORT OF**
                                       )   **MOTION TO INTERVENE**
18       v.                            )
                                       )   Judge:  Hon. Jeffrey S. White
19  KARL POLANO et al.,                )
                                       )   Action Filed:  June 2, 2021
20           Defendants.               )
                                       )
21                                     )
                                       )
22  _____)

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**TABLE OF CONTENTS**</u>

INTRODUCTION ..................................................................................................... 1

ARGUMENT ........................................................................................................... 2

    I.     Alphabet And YouTube Should Be Permitted To Intervene Because They
           Are Defendants In A Related Action Involving Common Dispositive Issues ........ 2

    II.    The Court Should Deny Plaintiff's Motion For Default Judgment Because
           His Allegedly Infringed Livestream Is Not Copyrightable .................................... 4

          A.     Plaintiff is Not Entitled to a Presumption of Copyright Validity ............... 5

          B.     The Video in Suit is Not a Creative Work of Human Authorship ............. 6

          C.     Plaintiff Cannot Contradict Prior Admissions in an Amended
               Complaint ................................................................................................. 10

CONCLUSION ...................................................................................................... 10

## TABLE OF AUTHORITIES

### CASES

*Alfred Bell & Co. v. Catalda Fine Arts, Inc.*,
    191 F.2d 99 (2d Cir. 1951) ................................................................. 8

*Degamo v. Bank of Am., N.A.*,
    849 F. App'x 620 (9th Cir. 2021) ...................................................... 3

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) .......................................................................... 6

*Garcia v. Google*,
    786 F.3d 733 (9th Cir. 2015) ............................................................ 9

*Kifle v. YouTube LLC*,
    2022 U.S. Dist. LEXIS 20014 (N.D. Cal. Feb. 3, 2022) ................. 10

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
    345 F.3d 1140 (9th Cir. 2003) ....................................................... 5, 6

*Reddy v. Litton Indus., Inc.*,
    912 F.2d 291 (9th Cir. 1990) .......................................................... 10

*Skidmore for Randy Craig Wolfe Trust v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) .......................................................... 8

*United States v. City of L.A.*,
    288 F.3d 391 (9th Cir. 2002) ............................................................ 2

### RULES

Fed. R. Civ. P. 24 ................................................................................. 1, 2, 3

Fed. R. Civ. P. 41 .................................................................................... 1, 3

### OTHER AUTHORITIES

Compendium of U.S. Copyright Office Practices § 313.2 ............................. 7

**INTRODUCTION**

Alphabet and YouTube's Motion to Intervene (Dkt. 138, "MTI") raises two issues. <u>First</u>, should they be permitted to intervene for purposes of opposing Plaintiff's motion for default judgment? <u>Second</u>, should Plaintiff's motion for default judgment be denied, and his copyright case dismissed, because the sole work at issue is not copyrightable? Plaintiff's opposition brief (Dkt. 144, "Opp.") confirms that the answer to both questions is "yes."

Alphabet and YouTube should be permitted to intervene in this action under Federal Rule of Civil Procedure 24(b) so Plaintiff does not secure a judgment by default concerning the copyrightability of his Accidental Livestream, which he plainly intends to then use against Alphabet, YouTube, and other defendants in the related case involving the same video. Plaintiff does not dispute that all of the prerequisites for intervention are met, nor does he deny that intervention would promote judicial economy and reduce the risk of conflicting judgments. His sole basis for opposing intervention is that he voluntarily dismissed Alphabet under Rule 41(a), and that permitting intervention would supposedly amount to "fanning the ashes of the action back to life." Opp. ¶ 9. But the action *is* alive against other defendants, and it requires a decision by the Court as to whether the video at issue is copyrightable. That same issue will need to be addressed in a related action where Alphabet and YouTube are still named defendants. It is therefore sensible and appropriate for the Court to permit intervention here, and to consider arguments from all interested parties as to why Plaintiff's copyright is invalid. It is also the appropriate way to combat Plaintiff's blatant and ongoing procedural gamesmanship.

As to the Accidental Livestream, Plaintiff is incorrect in asserting that the validity of his copyright is "not reviewable." Under Ninth Circuit law, any presumption of validity of a registered copyright may be overcome with some evidence or proof to the contrary. That evidence is found in the complaint itself, where Plaintiff admits facts he did not provide to the Copyright Office: that the video was a product of a software glitch that he did not cause or notice. Plaintiff concedes in his opposition brief (as he did in his Motion for Default Judgment) that if the video was created in the manner that he alleged in the complaint, he has no valid copyright because the video lacks a human author.

1       Plaintiff's sole defense is that the complaint should not be read to say what it says, and

2   that the Court should consider the *possibility* that the video was created by Plaintiff's slippery

3   fingers on a keyboard.  Plaintiff concedes, however, that "any attempts at explaining how it

4   happened are just speculation."  That too is fatal to his case, because ultimately it is he who must

5   establish a valid copyright in the video to state a claim of copyright infringement.  If Plaintiff

6   cannot say how the video was created, then he cannot state, much less prove, his claim.

7       Even if the video was created by Plaintiff's errant keystroke (as he asks the Court to

8   speculate) it still lacks the necessary "creative spark" to be copyrightable.  Plaintiff made

9   absolutely no creative choices in fixing the video or generating its content.  The video does not

10  embody a dramatic work, a pantomime, or some other choreographed performance that was

11  captured in the footage.  Plaintiff claims that his simple "facial expressions" in the video are

12  expressive content, but a person's likeness is not copyrightable.  Nor is the video a "selfie" or a

13  self-portrait, where the likeness depicted in the content is simultaneously the author who

14  deliberately created it.  Here, by Plaintiff's own account, the very *making* of the video was

15  accidental and unknown to the person being filmed.  For those reasons this case should be

16  dismissed.

17      Dismissal should be with prejudice.  Plaintiff asks for leave to amend not to clarify his

18  allegations or provide added detail, but to *change the facts* concerning how the Accidental

19  Livestream was created—facts that he now, in hindsight, finds inconvenient to his case.  That is

20  not a valid reason to amend.  The Court should dispose of this frivolous case.

21                           **<u>ARGUMENT</u>**

22  **I.**     **ALPHABET AND YOUTUBE SHOULD BE PERMITTED TO INTERVENE**

23         **BECAUSE THEY ARE DEFENDANTS IN A RELATED ACTION INVOLVING**

24         **COMMON DISPOSITIVE ISSUES**

25      Under Federal Rule of Civil Procedure 24(b)(1)(B), a court may permit intervention when

26  (1) there are grounds for jurisdiction, (2) the motion is timely, and (3) the applicant "has a claim

27  or defense that shares with the main action a common question of law or fact."  MTI at 8 (citing,

28  *e.g.*, *United States v. City of L.A.*, 288 F.3d 391, 403 (9th Cir. 2002)).  Once these conditions are

1    met, permissive intervention is "committed to the broad discretion of the district court,"

2    accounting for factors such as whether the intervenor's interests are adequately represented by

3    other parties in the case, whether intervention would cause undue delay or prejudice, and judicial

4    economy.  *Id.* at 8-9 (citing, *e.g.*, *Degamo v. Bank of Am., N.A.*, 849 F. App'x 620, 623 (9th Cir.

5    2021)).

6            Plaintiff's opposition brief is virtually silent on all these factors.  He does not deny that the

7    preconditions are met, specifically (1) that the court has jurisdiction in this federal-question case;

8    (2) that the intervention request is timely; and (3) that copyrightability of the Accidental

9    Livestream is a common and potentially dispositive issue in both this and the related action where

10   Alphabet and YouTube are defendants.  *See* MTI at 9.  Plaintiff also does not dispute that the

11   discretionary factors favor permissive intervention.  He concedes that Alphabet and YouTube's

12   interests in this action are not being represented; he offers no reason why intervention would

13   cause undue delay; he points to no undue prejudice; and he admits that the same copyrightability

14   issue will need to be considered again in the related case—thereby wasting judicial resources and

15   risking inconsistent judgments.  *Id.* at 9-10.

16           Plaintiff's only argument is that intervention should be denied because Alphabet was

17   already voluntarily dismissed under Rule 41(a)(1)(A)(i), so allowing it to intervene would be

18   tantamount to circumventing the dismissal and "fanning the ashes of the action back to life."

19   Opp. ¶¶ 9, 26-28.  Plaintiff forgets that YouTube was never made a defendant in this case.  More

20   fundamentally, he conflates dismissal of *defendants* under Rule 41(a) with a motion to intervene

21   as interested non-parties under Rule 24(b).  Nothing under Rule 41(a) preempts intervention

22   under Rule 24(b) where, as here, there are strong and independent grounds for intervention.  Nor

23   are Alphabet and YouTube attempting to "fan the ashes of the action back into life" (Opp. ¶ 28),

24   because the action is not dead.  Plaintiff continues to seek a default judgment against the

25   Individual Defendants, which necessarily requires a finding by this Court that the infringed

26   content is copyrightable.  But that same content is at issue in the related case where Alphabet and

27   YouTube remain defendants.

28

1    As explained in the opening brief, the Court should also exercise its broad discretion here

2    to combat Plaintiff's ongoing abuse of the litigation process.  *See* MTI at 10.  While Plaintiff

3    expresses remorse for his vexatious behavior, he insists that it is "in the past" and "has not

4    continued in this case."  Opp. ¶¶ 35-40.  That is palpably false, as the Court itself has recognized.

5    *See* Dkt. 134 ("[T]he Court does not endorse Plaintiff's efforts to manipulate the litigation process

6    and his blatant gamesmanship."); Dkt. 143 (admonishing Plaintiff for filing improper motions

7    "[d]espite numerous admonishments," for repeatedly characterizing his motions as

8    "emergencies," and for "abus[ing] the judicial process"); Dkt. 147 (reiterating same

9    admonishment after Plaintiff filed another "emergency" motion two days after being warned to

10   stop doing so).[1]

11   **II.    THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR DEFAULT**

12          **JUDGMENT BECAUSE HIS ALLEGEDLY INFRINGED LIVESTREAM IS NOT**

13          **COPYRIGHTABLE**

14   As to the core issue in dispute – whether the Accidental Livestream is copyrightable –

15   Plaintiff's opposition brief confirms that it is not.  He makes two basic points: (1) that the Court

16   must presume his copyright is valid; and (2) that the video is a creative work of human authorship

17   _____

18       [1] Plaintiff's abusive tactics continued in connection with this motion.  On the evening of
     April 26, 2022, Plaintiff claimed in an email to counsel that he had just been released from the

19   hospital.  Plaintiff repeated the same story to the Court the next day, saying in a sworn filing that
     he had been hospitalized, and had not even been aware of this motion until he arrived home the

20   night before.  Dkt. 139 ¶ 1.  Having no reason to doubt his story, we stipulated in good faith to
     extend the briefing schedule on the motion.  ***Minutes after the stipulation was filed***, he filed a

21   lengthy, researched, and procedurally-misguided motion to strike, setting a hearing in advance of
     the earlier motion that we had just agreed to extend.  *See* Dkts. 141, 142.  Minutes after that, he

22   emailed the clerk and asked: "Any chance the Motion to Strike can get a ruling before the motion
     for extension can?  No need for me to respond to the motion to intervene at all (belated or

23   otherwise) if it's just going to get struck."  When that effort failed (Dkt. 143), he still managed to
     file a 25-page opposition brief less than 72 hours after he claims to have first learned of the

24   motion.

25       We do not know whether Plaintiff was in fact hospitalized without his phone or laptop,

26   whether he fabricated the whole thing, or whether there is some truth in between.  What we do
     know is that Plaintiff attempted to pull yet another procedural trick.  He duped Alphabet and

27   YouTube into adjourning their motion, and then minutes later, swooped in with his own
     "emergency" motion to try and get ahead of it.

28

1   because it *might* have been created by his accidental keystroke, rather than a software glitch as he

2   alleges in the complaint.  Both points are incorrect and misunderstand the law.

3       **A.    Plaintiff is Not Entitled to a Presumption of Copyright Validity**

4       Plaintiff begins by claiming that "[t]he presumption of validity of my copyright is not

5   within this Court's discretion."  Opp. ¶ 12; *see also id.* ¶ 48.  Alphabet and YouTube already

6   explained in their motion that "[t]he presumption of the validity of a registered copy-right may be

7   overcome by the offer [of] some evidence or proof to dispute or deny the plaintiff's prima facie

8   case of infringement."  MTI at 11-12 (citing *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345

9   F.3d 1140, 1145 (9th Cir. 2003)).  Again, that evidence is found in the admissions Plaintiff made

10  in his own complaint: that the video was created by a software glitch – not him – which made his

11  "livestream software turn[] on of its own accord without [him] realizing it"; and that the only

12  notable content in the video consists of sounds that he "did not cause."  SAC (Dkt. 155) ¶¶ 22-23.

13      Plaintiff's application to register the video with the United States Copyright Office, which

14  the Court can judicially notice, shows that he did not disclose these facts to the copyright

15  examiners.  *See* RJN iso MTI Ex. A (Dkt. 138-2).  Plaintiff insists that the Copyright Office was

16  "constructively notified" of these facts, because he submitted a copy of the video with his

17  application and called the video an "Accidental" Livestream.  Opp. ¶¶ 2, 65.  But that told the

18  examiners nothing about the critical circumstances in which the video was created—information

19  that Plaintiff subsequently admitted in the complaint.  To the contrary, Plaintiff characterized the

20  video in his application as a "Dramatic Work" (Dkt. 138-2 at 4), suggesting to the examiners that

21  while some aspect of the video was "accidental," it still recorded content that was choreographed

22  in some manner.  No matter how Plaintiff tries to speculate what the examiners understood, the

23  fact remains that the Court is now in possession of facts and admissions which override any

24  "presumption of the validity" and "deny the plaintiff's prima facie case of infringement."  MTI at

25  13-14 (citing *Lamps Plus*, 345 F.3d at 1144-47) ("To rebut the presumption, an infringement

26  defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie

27  case of infringement.") (citation omitted)).

28

1    Plaintiff also claims that "[b]arring a showing of actual fraud" on his part, the "USCO's

2   decision to grant registration … is not reviewable."  Opp. ¶ 45.  That misunderstands the law.

3   Alphabet and YouTube are not claiming that the registration is invalid *per se* on the grounds that

4   Plaintiff committed a deliberate fraud on the Copyright Office.  We are claiming instead that the

5   Court now has "evidence or proof" to overcome the presumption of validity arising from the

6   registration, which the examiners did not have when they reviewed the application.  Whether that

7   is a result of fraud or innocent mistake is irrelevant.  Indeed in the *Lamps Plus* decision that

8   Plaintiff cites, the Ninth Circuit reached the same conclusion that Alphabet and YouTube urge

9   here: that facts before the court were sufficient to overcome the presumption of validity in a

10  registered work, even if the registrant did not intend to defraud the Copyright Office.  345 F.3d at

11  1144-45 (finding that "[t]he record, viewed in the light most favorable to Lamps Plus, does not

12  demonstrate that it intended to defraud the Copyright Office"); *id.* at 1147 (finding nonetheless

13  that plaintiff's work was not copyrightable because it lacked "the quantum of originality needed

14  to merit copyright protection," based on facts not known to the examiners) (citation omitted).

15    Plaintiff responds further that even if there were no presumption of validity, the Court

16  already found earlier in this case that he holds a valid copyright.  Opp. ¶ 5.  But those findings

17  were made in screening orders before any defendants appeared and before the Court had the

18  benefit of briefing on the issue.  *See* Dkts. 10, 21.  The Court may also have been deferring to the

19  Copyright Office's decision to register the video, without knowing (as it does now) that Plaintiff's

20  application did not disclose the true nature and circumstances of the video.

21       **B.      The Video in Suit is Not a Creative Work of Human Authorship**

22    Plaintiff does not dispute that he needs a valid copyright to prevail on his motion for

23  default judgment.  *See* MTI at 10-11.  To be copyrightable, that work must (1) contain some

24  minimal degree of creativity, and (2) be fixed by a human author.  *Id.* at 12 (citing, *e.g.*, *Feist*

25  *Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)).  The opening brief establishes

26  that neither requirement is satisfied here.  *Id.* at 12-14.  The opposition brief confirms it.

27    As to human authorship, Plaintiff alleges in the complaint, in terms as clear as day, that

28  the Accidental Livestream resulted from a software glitch.  He explicitly states that his

**SER111**

1    "livestream software ***turned on of its own accord without me realizing it***"—not due to any act on

2    his part. SAC (Dkt. 55) ¶ 22 (emphasis added). Plaintiff also conceded in his Motion for Default

3    Judgment that the copyright would be invalid if "the streaming software turned on, entirely of its

4    own accord, without any human input (knowing or otherwise) causing it to happen"—which,

5    again, is exactly what he alleges to have happened in the complaint. Dkt. 127-20 ¶ 42. In his

6    opposition brief, Plaintiff again does not dispute that if what he alleged in the complaint is taken

7    as true – as it must be on a motion for default judgment – then the copyright is invalid and the

8    case must be dismissed. *See* MTI at 12-13 (citing, *e.g.*, Compendium of U.S. Copyright Office

9    Practices § 313.2 ("works produced by a machine or mere mechanical process that operates

10   randomly or automatically without any creative input or intervention from a human author" are

11   not copyrightable)).

12        Plaintiff argues that Alphabet and YouTube rely on a "hyper-literal interpretation" of the

13   complaint, and that his own allegations should be taken "figuratively, not literally." Opp. ¶¶ 13,

14   51; *see also id.* ¶ 93(a) ("my statements were speculative rather than based on personal

15   knowledge"). He now claims – after realizing he may have pleaded himself out of court – that

16   "[t]he odds are overwhelmingly likely that the streaming software turned on as a result of an

17   errant keystroke, rather than purely autonomous means." *Id.* ¶ 20. But anyone who owns a

18   computer, a car, or a dishwasher knows that machines are not perfect. Software bugs are as

19   commonplace as printer jams. There is nothing "hyper-literal" or "figurative" about software

20   doing something unexpectedly. Plaintiff alleged that the livestream "turned on of its own accord"

21   because he meant it and believed it. It was only after Plaintiff realized his own allegations meant

22   the video was not copyrightable that he began to change his story.

23        Even if the Court were willing to entertain a different version of events, Plaintiff admits

24   there are only "two possible explanations for how the stream came on": either (1) "I had

25   accidentally pressed the key on my keyboard to turn the stream on without realizing I had done

26   it"; or (2) as alleged in the complaint, "[t]he stream software came on entirely of its own accord,

27   without any input from me, accidental or otherwise." Opp. ¶ 81. Plaintiff contends that #1 leads

28   to the video being copyrightable, but that too is incorrect because the video still lacks creativity

1  (discussed below).  Moreover, ***Plaintiff admits he has no idea which scenario occurred.***  *Id.* ¶ 52

2  ("I don't know how the streaming software turned on!"); *id.* ¶ 53 ("I don't know how it happened,

3  and [] any efforts by me to guess as to how it happened are just that: A guess, not based on

4  personal knowledge."); *id.* ¶ 84 ("I don't know how the streaming software came on, which

5  means any attempts at explaining how it happened are just speculation, not based on personal

6  knowledge.").  That is fatal to his case, because Plaintiff must plausibly allege his own cause of

7  action.  Dkt. 10 at 4 (citing *Skidmore for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d

8  1051, 1064 (9th Cir. 2020)).  If he cannot allege that the video was a product of human

9  authorship, contrary to the allegations in his own complaint, he simply cannot prevail on the first

10  element of copyright infringement.

11      The Accidental Livestream also lacks the requisite creativity regardless of how it was

12  made.  Even under the first scenario Plaintiff supposes – that the video was created by an errant

13  keystroke – the entire video was recorded without his knowledge or creative input.  He did not

14  direct the scenery, position the camera, focus the lens, adjust the lighting, or make any other

15  creative choices that a videographer or director would ordinarily make.  Plaintiff argues that

16  "accidental" expression is copyrightable (Opp. ¶ 61), which is sometimes true, but here the very

17  ***making*** of the video was unknown to him.  Plaintiff's lone case, *Alfred Bell & Co. v. Catalda*

18  *Fine Arts, Inc.*, 191 F.2d 99 (2d Cir. 1951), illustrates the distinction.  In that case the Second

19  Circuit noted that an author still engages in creative expression even if he or she makes a mistake

20  in the process of creating a work, i.e., due to "[a] copyist's bad eyesight or defective musculature,

21  or a shock caused by a clap of thunder[.]"  *Id.* at 104-05.  Those mistakes are still creative

22  elements because the author was engaged in the deliberate process of creating something (in that

23  case, a mezzotint).  "[H]e has employed skill and judgment in its production[,]" even if happy

24  accidents occurred along the way.  *Id.* at 104 n.22.  None of that happened here.

25      Tellingly, the only "acts of personal expression" that Plaintiff claims to make in the video

26  are banal "facial expressions[.]"  Opp. ¶ 70.  But Plaintiff and his facial expressions are merely

27  unwitting subjects of a camera that was rolling without his knowledge or input.  Plaintiff's

28  appearance in the video does not make him its author for copyright purposes, because he was not

1  responsible in any copyright-relevant way for its fixation.  *See, e.g., Garcia v. Google*, 786 F.3d

2  733, 744 (9th Cir. 2015) (en banc) (holding that an actress who appeared in a film, "[h]owever

3  one might characterize [her] performance," did not hold any copyright in the film because "she

4  played no role in the fixation").  If it were otherwise, then anyone who walks in front of a security

5  camera could claim copyright in the feed.

6      Plaintiff conflates being the ***subject*** of a work and being the ***author*** of that work, when

7  being the subject of a work is neither a necessary nor a sufficient condition for being its author.

8  He posits that "[i]f I were taking a selfie, any one of those faces would be singularly sufficient

9  individual creative expression to be entitled to copyright protection."  Opp. ¶ 71.  That may be

10  true, but Plaintiff did not take a selfie here.  When a person takes a selfie he or she is both the

11  subject of the image *and* the author, much like an artist who paints a self-portrait.  His or her

12  facial expressions form part of a series of creative choices in deliberately capturing the author's

13  own likeness, including where to position the camera, how to pose, what scenery to include, and

14  when to snap the photo.  The author might then edit the image by cropping it, adjusting the

15  lighting, or applying other visual effects.  In that case the copyright is owned by the person

16  depicted in the image, because the author and subject are one and the same.  But again, that is not

17  what happened here.  Whether caused by computer glitch or errant keystroke, Plaintiff had no

18  idea the camera was rolling and made no creative choices when fixing the content in a tangible

19  medium.  His facial expressions were not part of, say, a pantomime or dramatic work that he had

20  choreographed and captured on camera.  His likeness was simply captured on video.  The

21  Accidental Livestream thus lacks the creative spark by a human author that is necessary to make it

22  copyrightable.

23      Lastly, Plaintiff claims that the content must be creative because "many people are getting

24  enjoyment out of watching the stream[.]"  Opp. ¶¶ 74-77.  That is not evidence that the content is

25  a copyrightable work of authorship.  If anything, it reflects only that the content is embarrassing,

26  and that Plaintiff is being widely ridiculed online for his litigious behavior.  That is unfortunate,

27  but it has nothing to do with whether the video is a copyrightable work of which Plaintiff is the

28  author.

1    **C.    Plaintiff Cannot Contradict Prior Admissions in an Amended Complaint**

2    Plaintiff argues that even if the video is not copyrightable based upon the allegations made

3    in his complaint, he "can easily correct those deficiencies in an amended complaint."  Opp. ¶ 21;

4    *see also id.* ¶¶ 87-91.  He seeks not to provide further details or clarification, but to undo an

5    admission that the "livestream software turned on of its own accord without me realizing it,"

6    along with others that are fatal to his claims.

7    This he cannot do.  "To determine whether amendment would be futile, courts examine

8    whether the complaint can be amended to cure the defect requiring dismissal 'without

9    contradicting any of the allegations of [the] original complaint.'"  *Kifle v. YouTube LLC*, 2022

10   U.S. Dist. LEXIS 20014, at *8 (N.D. Cal. Feb. 3, 2022) (citing *Reddy v. Litton Indus., Inc.*, 912

11   F.2d 291, 296-97 (9th Cir. 1990) ("Although leave to amend should be liberally granted, the

12   amended complaint may only allege other facts consistent with the challenged pleading.")

13   (citation omitted)).  Plaintiff cannot use an amendment to change inconvenient facts that he

14   already swore to, simply to dodge a defense that he now finds troublesome.

15                                    **<u>CONCLUSION</u>**

16   For the foregoing reasons, and those provided in the opening brief, the Court should

17   (1) permit Alphabet and YouTube to intervene for purposes of opposing Plaintiff's Motion for

18   Default Judgment; (2) deny Plaintiff's Motion for Default Judgment; and (3) dismiss this case

19   with prejudice.

20

21

22

23

24

25

26

27

28

1   Dated: June 1, 2022                        Respectfully submitted,

2                                              WILSON SONSINI GOODRICH & ROSATI
                                               Professional Corporation
3

4                                              By:  _s/ Jason Mollick_

5                                              Jason Mollick (*pro hac vice*)
                                               1301 Avenue of the Americas, 40th Floor
6                                              New York, New York 10019
                                               Telephone: (212) 999-5800
7                                              Facsimile: (212) 999-5899
                                               jmollick@wsgr.com
8
                                               *Counsel for Intervenors*
9                                              *Alphabet Inc. and YouTube, LLC*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SER116**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID A. STEBBINS, | Case No.  21-cv-04184-JSW |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO FILE REVISED OR SUPPLEMENTAL OPPOSITION** |
| KARL POLANO, et al., | |
| Defendants. | Re: Dkt. No. 148 |

Plaintiff has filed a motion requesting leave to file a revised or supplemental opposition to the motion to intervene.  The Court DENIES Plaintiff's request.  If, after the motion is fully briefed, the Court determines it requires supplemental briefing or a link to Plaintiff's Accidental Livestream, it will issue an order to that effect.

**IT IS SO ORDERED.**

Dated: May 25, 2022

_____
JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                        PLAINTIFF

VS.                              Case 3:21-cv-04184-JSW

KARL POLANO, et al                                     DEFENDANTS

## MOTION FOR LEAVE TO FILE SUPPLEMENTAL AND/OR REVISED OPPOSITION TO [138] MOTION TO INTERVENE, AND FOR LEAVE TO DO SO UNDER SEAL

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Motion for Leave to file a Supplemental/Revised Opposition to the Motion to Intervene, in the above-styled action.

### Facts & Procedural History

1.     On April 20, 2022, Youtube LLC and Alphabet Inc. submitted a Motion to Intervene, seeking to challenge the validity of the copyright of my April 10, 2021 accidental stream.

2.     Among other things, one of their grounds for claiming that the stream was not eligible for copyright was that the stream was so devoid of creative content as to become subject to the precedent of Feist Publications, Inc. v. Rural Telephone Service Co., 499 US 340 (1991). See **Dkt. 138**.

3.     To counter this, I offered numerous proofs that the stream did indeed have minimal creativity in it, even if the amount of content would not have, in my discretion, been enough to convince me to do an intentional stream just for this content alone.

4.     One of the proofs I attempted to offer was an infringing copy of the accidental stream uploaded by an imposter account known as "Acerthorn the true Acerthorn." I provided the URL to that infringing video. However, rather than the video itself, my intention was to draw the

Court's attention to the comment section of that video, where the Court could find numerous instances of people reacting to various parts of the video (not just the strange noises), thereby demonstrating that the entirety of the accidental stream – not just the strange noises – had entertainment value (and therefore, creative value) to it, notwithstanding the fact that I pressed the "start stream" button on my keyboard by accident. See **Dkt. 144, ¶¶ 74-77**.

5.      However, my attempts to show this proof were sabotaged by the intervenors when, merely six hours after the opposition brief was filed, they removed the video from their own platform, maliciously preventing the Court from seeing the proof that the accidental stream does indeed have entertainment value, and therefore creative value.

### Grounds for Filing a Supplemental or Revised Opposition

6.      I have recently learned that the infringer has created an alternative account called "Acerthorn The True Acerthorn 2: Electric Boogaloo," where he has re-uploaded the accidental livestream in its entirety, with no alterations or modifications whatsoever. As of the time of this writing, the upload has over 2,100 views and over 50 comments. Those comments can show the proof that I originally intended to show when I filed my original Opposition, before the intervenors unscrupulously removed the video in order to cover up the evidence.

7.      This time, I made sure to take video and screenshot records of the infringing video's description and comments section. This way, even if the intervenors unscrupulously attempt to remove the video *again* to cover up the evidence, I will provide the Court with a backup means of seeing the comments which prove the entertainment/creative value in the accidental stream.

8.      To show the Court this proof, I request leave of the Court to file a revised Opposition to the Motion to Intervene. This additional brief is necessary to rectify the destruction of evidence that the intervenors maliciously and unscrupulously committed because they were scared and realized that this evidence would defeat their challenge utterly.

### Leave to file under seal

9.      In addition to the comments section of that infringing video, I also attempted to submit to the Court a copy of the accidental livestream, while providing timestamps of non-exhaustive, representative examples of times when I engaged in acts of minimal creative expression. See

**Dkt. 144, ¶¶ 68-71**. However, to prevent the link to that livestream from becoming public record (thereby undermining the very copyright protection that I seek to enforce), I sent the URL to the judge's chambers' email address of <u>jswcrd@cand.uscourts.gov</u>. It is now my understanding that using the judge's chambers' contact for such a purpose was inappropriate.

10.    As an alternative, I ask for leave to file the revised Opposition under seal, so that third parties cannot see it. That way, I can provide the URL to the accidental stream, either in the Opposition itself or as an exhibit (I haven't yet decided which one).

11.    This is, to my understanding, the best way to provide this Court with a copy of the accidental stream for it to review for minimal creativity, without undermining the very copyright that this case is designed to enforce. However, I am also open to any alternative methods the Court may prefer. As long as I am not required to provide the accidental stream on public record, I will follow whatever other procedures the Court wants. See **LR 79-5(a)** ("A party must explore all reasonable alternatives to filing documents under seal").

**An expeditious granting of this motion means no further modifications of the briefing schedule will be required.**

12.    As of the Court's recent granting-in-part of the Motion for Extension of Time, the intervenors now have until June 1, 2022 to submit their reply to my Opposition to Motion to Intervene. See **Dkt. 147**. This motion is being filed on May 7, 2022, which is a Saturday. The earliest the Court will be able to rule on it is May 9, 2022.

13.    If the Court grants this motion quickly, I can have the revised Opposition filed by the middle of May. Then, the intervenors will have plenty of time to read the revised Opposition and draft their reply accordingly by June 1, 2022. As long as the Court grants this motion for leave within 1-2 business days of receiving notice of it, no further extensions of time or modifications to the briefing schedule will be required.

14.    But the Court has to grant this motion quickly in order to avoid any further delay.

**Conclusion**

15.    In conclusion, the intervenors' unscrupulous attempts to cover up the evidence have made this revised opposition necessary. I am not simply requesting another go at the opposition just

Case 3:21-cv-04184-JSW                    -3-                    MOTION FOR LEAVE TO FILE
                                                                SUPPLEMENTAL/REVISED

because I feel I could have done better; it is designed to rectify an unscrupulous, even criminal, act by the intervenors designed to gain an undue advantage in litigation. Therefore, leave to file this revised opposition should be given.

16.     Wherefore, premises considered, I respectfully pray that leave to file this Supplemental or Revised Opposition to the Motion to Intervene be granted, and any other relief to which I may be entitled.

So requested on this, the 7th day of May, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

**SER121**

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                 PLAINTIFF

VS.                                        Case 3:21-cv-04184-JSW

KARL POLANO, et al                                             DEFENDANTS

### OPPOSITION TO MOTION TO INTERVENE

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Opposition to Alphabet's and Youtube's motion to intervene.

### I – TABLE OF CONTENTS

| Section: | Page # |
|---|---|
| I.   TABLE OF CONTENTS | 1 |
| II.  TABLE OF AUTHORITIES | 3 |
| III. FACTS OF THE CASE | 4 |
| IV.  SUMMARY OF ARGUMENT | 6 |
| V.   ARGUMENT & LAW | 8 |
|    1.  Leave to intervene should be denied. | 8 |
|      A) Intervenors have been dismissed already. Leave to intervene should be denied as that would be incompatible with the voluntary dismissal. | 8 |
|      B) Intervenors are indeed raising new claims. | 10 |
|    2.  My vexatious past is regrettable, but it is also just that: In the past, | 10 |

where it should stay.

 A) Apologies for aggravating the Court.  11

3. My Copyright is valid.  12

 A) The presumption of copyright  13
   validity is not within
   the Court's discretion.

 B) Defendants' hyper-literal  13
   interpretation of SAC

 C) Accidental works can  16
   still be copyrighted.

 D) USCO had contents of copyrighted  16
   work disclosed to them.

 E) There is minimal creativity  17
   in the April 10 stream.

 F) There is no evidence (aside from  19
   my poorly-worded SAC) that the
   work was not a result of
   human authorship.

4. Leave to Amend should be granted.  20

VI. CONCLUSION  22

**SER123**

## II – TABLE OF AUTHORITIES

| **Statutes & Rules** | **Page #** |
|---|---|
| 17 USC § 101 | 19 |
| 17 U.S.C. § 102(a) | 12 |
| 17 USC § 410(c) | 10,12,13 |
| Fed.R.Civ.P. 41(a)(1)(i) | 5,6,8,9,22 |

| **Case Law** | **Page #** |
|---|---|
| • Alfred Bell & Co. v. Catalda Fine Arts, 191 F. 2d 99, 105 (2nd Cir. 1951) | 16 |
| • Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074, 1076 (9th Cir. 1999) | 8,9 |
| • Foman v. Davis, 371 US 178, 182 (1962) | 20 |
| • Haines v. Kerner, 404 US 519 (1972) | 15 |
| • Hosseinzadeh v. Klein, 276 F. Supp. 3d 34 (SD NY 2017) | 14 |
| • Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1145 (9th Cir. 2003) | 12,17 |

### III – FACTS OF THE CASE

1.      I am a Youtuber and a Twitch streamer who goes by the online psuedonym "Acerthorn." I make videos and do streams on my eponymous Youtube and Twitch channels. On April 10, 2021, I had accidentally streamed approximately 1 hour and 43 minutes worth of content to my Twitch audience. I registered a copyright for that stream and put it on my Youtube channel, only viewable to those who paid my channel a fee of $20 per month.

2.      When I registered the copyright, the Court can take judicial notice of the fact that I necessarily uploaded a copy of the video for the Copyright Office to review. The Court can also take judicial notice of the fact that I literally called the work an "accidental livestream" when giving the title of the work. As such, the Copyright Office was constructively notified of the amount of creative spark (or lack thereof) was in the work, as well as the fact that the work was an accident, and made the sound judgment that the work was eligible for registration.

3.      Because providing a copy of this work as a public exhibit in this case would undermine the very copyright protection I seek to enforce, I will instead submit a copy of the accidental livestream directly to the judge's chambers.

4.      The individual defendants (Karl Polano, Frederick Allison, and Raul Mateas) began spreading around clips of this livestream without my authorization, specifically with the intent of enabling people to see the clips without paying me the licensing fee to see the clip. This infringement was only one step in a longstanding campaign of harassment and doxxing against me. I issued DMCA takedowns, and eventually, Karl Polano issued a DMCA Counter-Notification. This lawsuit ensued.

5.      When reviewing the complaint for failure to state a claim upon which relief can be granted, this Court affirmatively made the finding that "Plaintiff's complaint adequately alleges that he owned a copyright as the original and sole author of the April 10, 2021 video." See **Dkt. 10, p. 4, lines 22-23**. This was made despite the fact that the Court was well aware of the fact that I admitted the stream was accidental, and that I used the words "boring and contentless" to describe the stream. The district judge would later go on to adopt, almost verbatim, the findings of fact and conclusions of law of Magistrate Judge Corley on the validity of the copyright. See

**Dkt. 21, p. 3, lines 10-11**.

6.       All three individual defendants were entered in default for failure to appear. Meanwhile, the corporate defendants of Youtube LLC, Alphabet Inc., Discord Inc., Amazon.com Inc., and Twitch Interactive Inc. were all voluntarily dismissed from the action, pursuant to Fed.R.Civ.P. 41(a)(1)(A)(i), on April 11, 2022.

7.       Despite being dismissed from the case, Youtube and Alphabet have frivolously attempted to circumvent the dismissal by seeking leave to re-enter the case as intervenor defendants.

8.       In their motion to intervene, they have also raised a challenge to the validity of the copyright of the April 10, 2021 livestream, on the grounds that (A) accidental works are not copyrightable, (B) my livestream lacks any minimal creative spark, and (D) it was not created by a human. If granted, the motion to intervene would have the same effect as a motion to dismiss: Disposing of the case with prejudice, without allowing for discovery, solely on the sufficiency of the Complaint alone.

## IV – SUMMARY OF ARGUMENT

9.      First, the intervenors have already been voluntarily dismissed from this case. Therefore, their motion to intervene should be denied, because granting them leave to intervene would be tantamount to circumscribing, by adversary or by court, the voluntarily dismissal, and giving the defendants a means of fanning the ashes of the action back to life, which is absolutely not allowed a party is dismissed pursuant to Rule 41(a)(1)(A)(i).

10.     The intervenors are indeed raising new claims. Challenging the copyrightability of the April 10, 2021 stream is itself a new claim. It may be a negative defense (as opposed to an affirmative defense), but it is a new claim nonetheless.

11.     I have made many regrettable filings in the past. I will not (and cannot) deny that. But they are not relevant here. For the intervenors to attempt to bring up my litigation history in this context is essentially asking me to be punished for my past actions with a lack of access to the courts in the instant case, which is highly prejudicial.

12.     The presumption of validity of my copyright is not within this Court's discretion. The statute very clearly states that the Court only has discretion to entertain a presumption of copyright validity when the registration is made "thereafter," aka more than five years after the original publication of the work. Since that is not a factor in this case, my entitlement to presumption of a valid copyright is statutorily mandated.

13.     The Defendants reliance on the exact wording of my Second Amended Complaint as the sole grounds to claim that my copyright is invalid is entirely without merit. It relies on a hyper-literal interpretation of those words that were never intended by me. In fact, this hyper-literal interpretation does not even make sense in its own context.

14.     This Court has already determined that the Complaint (which is the only thing Intervenors rely on when challenging the validity of my copyright) alleges sufficient facts to give me a valid copyright. While the Court can change its mind, it should not do so lightly, and it should consider why it made its initial determination in the first place. If the reason for the initial determination was that the Court was giving me the benefit of the doubt that my words were meant figuratively rather than literally, well then … I rest my case.

Case 3:21-cv-04184-JSW                    -6-                    OPPOSITION TO MOTION
                                                                 TO INTERVENE

15.     I did indeed disclose the amount of content (or lack thereof) to USCO, as evidenced by the fact that USCO necessarily had a copy of the accidental stream on hand that they could have reviewed for minimal creative content. I ask the Court to take judicial notice of that fact.

16.     Intervenors have not proven that I have acted with an intent to deceive USCO. Therefore, according to their own legal citations, I am still entitled to copyright validity.

17.     A work is still copyrightable even if it was created by accident. There is indeed precedent for this.

18.     There is indeed minimal creativity in the livestream. There is not much, but the law makes it clear that "not much" is all that is required.

19.     The law only requires the works of expression be man-made, not the affixation. Since the acts of expression, de minimus as they are, are clearly man-made, they "human authorship" requirement is met. Ruling that autonomous affixation forfeits copyright would create a dangerous slippery slope for live television and similar industries.

20.     The odds are overwhelmingly likely that the streaming software turned on as a result of an errant keystroke, rather than purely autonomous means. Therefore, the "human authorship" requirement is most likely met. At best, we would need discovery to determine if it was not a human authorship.

21.     If all else fails, leave to amend the complaint should be given. I have already requested leave to amend to include a new count of infringement. I should be given leave to file that amended complaint. Since the intervenors' entire case for invalidating my copyright begins and ends with the nuances of how I couched my Second Amended Complaint, I can easily correct those deficiencies in an amended complaint.

## V – ARGUMENT & LAW

22.     For the following reasons, Alphabet's and Youtube's motion to intervene should be

denied.

### 1 – Leave to intervene should be denied.

23.     For the following reasons, the movants should not be allowed leave to intervene in this

case.

<u>A – Intervenors have been dismissed already. Leave to intervene should be</u>

<u>denied as that would be incompatible with the dismissal.</u>

24.     I have already filed a motion to strike the motion to intervene. See **Dkt. 142**. The Court

denied that motion on the grounds that it only had the authority to strike pleadings, and motions

to intervene were not counted among those. See **Dkt. 143**. However, it explicitly stated that I

may raise those arguments in my opposition to the motion to intervene. I will do that now.

25.     Defendants Alphabet Inc., Youtube LLC, Discord Inc. Amazon.com Inc., and Twitch

Interactive Inc., have already been dismissed from this case, pursuant to **Fed.R.Civ.P. 41(a)(1)**

**(i)**.

26.     Pursuant to **FRCP 41(a)(1)(A)(i)**, the dismissal is automatic. The Court has no discretion

to refuse it. See Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074, 1076 (9th

Cir. 1999) ("a Rule 41(a)(1) dismissal, once filed, automatically terminates the action, and thus

federal jurisdiction, without judicial involvement"). See also at 1077:

> "a court has no discretion to exercise once a Rule 41(a)(1) dismissal is filed. It is
> well settled that under Rule 41(a)(1)(i), a plaintiff has an absolute right to
> voluntarily dismiss his action prior to service by the defendant of an answer or a
> motion for summary judgment.
>
> The filing of notice itself closes the file. There is nothing the defendant can do to
> fan the ashes of that action into life and the court has no role to play. This is a
> matter of right running to the plaintiff and may not be extinguished or
> circumscribed by adversary or court. There is not even a perfunctory order of
> court closing the file. Its alpha and omega was the doing of the plaintiff alone. He
> suffers no impairment beyond his fee for filing.
>
> Because the dismissal is effective on filing and no court order is required, the
> filing of a notice of voluntary dismissal with the court automatically terminates

the action as to the defendants who are the subjects of the notice. The effect is to leave the parties as though no action had been brought." See id at 1077 (citations and quotations omitted).

27.     The law makes itself perfectly clear on this. Now that these defendants have been dismissed from the case, they cannot reignite their interest in litigating the case, for any reason.

28.     As a result, this Court must strike the defendants' motion to intervene, as that would effectively give the defendants a back door to allow them to fan the ashes of the action back into life, or to circumscribe (however indirectly) the dismissal by adversary or by court. Such a result is explicitly not allowed under the binding precedent.

29.     You don't have to like what I did. In fact, the Court has already explicitly made it clear that it *doesn't* like what I did. But be that as it may, "the whole point of a Rule 41(a)(1) dismissal is to give the plaintiff an 'absolute' way out without further judicial involvement." See Commercial, supra at 1079-80. Therefore, the Court must act in accordance with this absolute right.

30.     Any further attempts by the corporate defendants to circumscribe this dismissal, in any way shape or form, for any reason, should not only be met with sua sponte striking of their filings, but with sanctions to deter further taxations on the Court in spite of the clearly-established, black latter law to the contrary.  They are dismissed. The dismissal is absolute. There is nothing they can do, directly or indirectly, to fan the ashes of the action back to life. It's over. They're gone. Period.

31.     The defendants will still get their day in court. They just need to hold their horses. As the Defendants point out, they are involved in a sister case (Stebbins v. Rebolo) which has several common elements with this one. This means that they will indeed get their day in court. They just have to wait for this case to wrap up first. Alphabet's insistence on butting in on this case just comes off as severe impatience on their part. All the other defendants in that case (Creetosis, Just Emi, SidAlpha, etc.) seem to be waiting patiently for their day in court, so why can't Alphabet?

32.     If, despite my absolute right to voluntarily dismiss the corporate defendants, they still insist on butting in and having their day in court ahead of their allotted time, then they should, at the very least, be required to forego the possibility of ever recovering costs or attorneys fees

from this action. Why? Because at this point, those costs are self-inflicted. If they insist on throwing away tens (if not hundreds) of thousands of dollars prematurely litigating a case just on principle alone, then that's their money. But that's just it: It's *their* money, and it should forever remain *their* money, since at this point, they're spending it voluntarily.

<u>B – Intervenors are indeed raising new claims.</u>

33.     The movants claim that their motion to intervene is not prejudicial because it does not raise new claims. But this is not true. The intervenors are raising a challenge to the copyrightability of the April 10 stream. This is a negative defense, and because the defendants hold the burden of proof thereof (see **17 USC § 410(c)**), it is just as much a "new claim" as the affirmative defense of fair use. Therefore, because the intervenors are raising this, they are raising a new claim.

34.     Therefore, the motion to intervene is not proper.

**2 – My vexatious past is regrettable, but it is also**
**just that: In the past, where it should stay.**

35.     The intervenors bring up my history of vexatious litigation. Honestly, there is very little I can say in my defense to those accusations. Those filings were fueled by the arrogance of youth and a belief that, because I had read a few things there and there about the law, my legal theories were bullet proof. I regret many of the lawsuits I filed during that point in my life, and I absolutely regret the amount of money I requested. It was outright scandalous and I now freely admit that.

36.     However, at the same time, those lawsuits were filed a decade ago (in some cases, over a decade ago). To hold them against me, even all these years later, is nothing short of prejudicial and demonstrates a pettiness by the intervenors and an unwillingness to move forward with progress.

37.     As long as *this lawsuit* is meritorious and nonfrivolous, then I have the right to recover whatever relief (monetary or equitable) I am entitled to in *this lawsuit*. And the only way to know if *this lawsuit* is meritorious and nonfrivolous is to take *this lawsuit* on its own merit. To do otherwise would effectively strip me of my right to access to the courts as punishment for what

happened years and years ago. I humbly ask the Court to set aside the mistakes I have made in the past and focus exclusively on the case at hand.

38.     The intervenors have alleged that I have continued my vexatious tactics in this case. However, the only vexatious behavior they have complained about is the voluntary dismissal. However, while I acknowledge that the Court believes the dismissal was filed in bad faith, I am compelled to disagree. I never meant to "game the system." I merely meant to attempt to avoid precisely the kind of delay that the intervenors seek to perpetrate with the filing of this very motion to intervene. As we are about to see, I have a ready response to the intervenors' challenge to my copyright and I merely sought to prevent the delay of entry of judgment in this case.

39.     The Court obviously called it like he saw it when he accused me of acting in bad faith. But with all due respect, I do not agree that it was bad faith.

40.     Therefore, my vexatious behavior has not continued in this case.

<u>A – Apology to the Court</u>

41.     I understand that the Court has recently become frustrated with my filings in this case, particularly with my labeling of my motions with the prefix "emergency." I just want to take this opportunity to put on the record that it was never my intention to aggravate the Court. My motions were labeled as "emergency" because, if rulings were not issued immediately, then I risk suffering the very delay that the voluntary dismissal was designed to avoid. The Court would not rule on my motion for default judgment at the allotted time, owing to the fact that a conflicting motion was still pending. Therefore, immediate rulings were required.

42.     At least, that was my opinion. The Court has made it clear that it disagrees with my assessment of the situation. In **Dkt. 134**, the Court referred me to Local Rule 6-1(a), but with all due respect, that local rule says nothing about when a motion may be properly styled as "emergency." So it is unclear to me what I was supposed to notice by reviewing that local rule.

43.     I apologize to the Court for aggravating it, but I implore the Court to understand that I am not acting in bad faith. I just suck. I am doing the best I can. I cannot guarantee that I will not file motions in the future that are offensive to the Court, largely because I really have no way of knowing, until it's too late, what types of filings the Court will find offensive. I humbly ask the

**SER132**

Court to do its level best to meet me in the middle on this issue. I am willing to work with the Court if you are willing to work with me. Again, I'm not in bad faith. I just suck at this and I'm doing the best I can.

### 3 – My Copyright is valid.

44.     "Copyright protection subsists … in original works of authorship fixed in any tangible medium of expression …." **17 U.S.C. § 102(a)**. "The sine qua non of copyright is originality. To qualify for copyright protection, a work must be original to the author. To be eligible for copyright protection, the underlying work must have a minimum creative spark, must be original, and must be created by a human.

45.     Applying for and being granted registration by the United States Copyright Office (or USCO, for short) within five years of the work's first publication creates a statutory presumption that the copyright is valid. See **17 USC § 410(c)**. The 9th Circuit has held held that "inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless … the claimant intended to defraud the Copyright Office by making the misstatement." See Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1145 (9th Cir. 2003). It does not invalidate my copyright if I remain truthful throughout the application, but USCO, through no fault of my own, makes a mistake and grants registration to a work they probably should not have. Barring a showing of actual fraud, USCO's decision to grant registration (and therefore support a valid copyright and subsequent infringement actions) is not reviewable.

46.     However, that same precedent also held that "the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute reason for holding the registration invalid and thus incapable of supporting an infringement action." See id at 1145.

47.     Also, the intervenors' motion to intervene, if granted, would have the effect of a motion to dismiss: Disposing of the case with prejudice, without discovery, solely on the language of the Complaint itself. See **Dkt. 138-3, Line 22**. As such, the Court should treat the motion like a motion to dismiss. This means that the allegations of my complaint must not only be taken as

**SER133**

true, but in a light most favorable to me. That latter requirement is very important here.

<u>A – The presumption of copyright validity is not within the Court's discretion.</u>

48.     The intervenors argue that the statute of **17 USC § 410(c)** gives the Court discretion as to how much it may entertain a presumption of copyright validity. This is false. The statute clearly states that the Court has discretion in this regard when, and ony when, the registration is made "thereafter," aka more than five years after the date of first publication. Since that is not the case here, my entitlement to a presumption of copyright validity is statutorily mandated.

<u>B – Defendants' hyper-literal interpretation of SAC</u>

49.     The defendants' primary means of attacking the copyrightability of the April 10 stream comes from my own statements made during the Second Amended Complaint. Namely, they rely on my statements that "my livestream software turned on of its own accord" and the fact that, without the strange noises, the livestream was otherwise "contentless." To invalidate my copyright just on these admissions alone, the Court must construe these statements in a hyperliteral manner that was clearly not intended.

50.     It is often the job of the courts to determine which statements are meant to be literal and which are meant to be figurative. If you cannot tell the difference between the two, you have no business practicing law, because that is, very often, a deciding factor in many aspects of the law.

51.     First, when I said the streaming software "turned on of its own accord," that is clearly meant to be taken figuratively, not literally. It is, essentially, the same as if I said that some machine "only works when it feels like it." Everyone knows that machines don't work "when they feel like it" in the literal sense, owing to the simple fact that they don't have feelings, because they are just inanimate objects.

52.     Likewise, my statement that the streaming software turned on "of its own accord" was not meant to be taken literally, but figuratively, in order to convey that I don't know how the streaming software turned on!

53.     In fact, this interpretation of my Second Amended Complaint is the only one that holds up to scrutiny, given the full context. Remember: The whole point of ¶¶ 22-23 of the Second Amended Complaint was the emphasize that the stream happened by accident. As such, any

Case 3:21-cv-04184-JSW                            -13-                    OPPOSITION TO MOTION
                                                                              TO INTERVENE

reasonable person would quickly ascertain that I didn't know how it happened, and that any efforts by me to guess as to how it happened are just that: A guess, not based on personal knowledge. If I actually knew what had caused the stream that would imply that I had enough wherewithal at the time the stream began to take a note of what caused it to happen. But if I had done that, then the stream would not have been an accident in the first place!

54.     Therefore, my statement that the stream came on "of its own accord" is clearly meant to be a figurative, not literal, statement. It therefore cannot be used to singlehandedly invalidate the copyright. If the defendants want to challenge the validity of my copyright, they must actually engage in discovery and litigation as outlined below.

55.     The defendants' reliance on the words "boring and contentless" is equally hyper-literal. It is just as hyper-literal as Matt Hosseinzadeh's interpretation of Ethan and Hila Klein's statement that "several months passed [and] nothing happen[ed]." See Hosseinzadeh v. Klein, 276 F. Supp. 3d 34 (SD NY 2017):

> "The only other allegedly defamatory statement explicitly identified by plaintiff is Ethan Klein's assertion that 'several months passed [and] nothing happen[ed]' prior to plaintiff's first settlement offer and threat of litigation … a statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced. Here, plaintiff argues that Ethan Klein's failure to mention that plaintiff sent a warning e-mail on August 2, 2016 makes Ethan Klein's statement that 'nothing happen[ed]' false and defamatory.
> …
> [V]iewing the Lawsuit video as a whole, the clear import of Ethan Klein's statement that 'nothing happen[ed]' is that defendants were surprised and disappointed by plaintiff's decision to file a lawsuit months after the Klein video was first posted on YouTube. Plaintiff's objection to the word 'nothing' is hyperliteral and based on a strained and unsupported interpretation of the Lawsuit video … Ethan Klein's statement that 'nothing happen[ed]' could easily refer to the fact that no action was filed in the intervening months, not that the parties had no communication." See id at 47-48 (citations and quotations omitted).

56.     When I said that the stream was "contentless," I merely meant that the content contained therein would not have been sufficient, in my personal judgment, to compel me to do a stream on purpose just for this content alone. The content in that stream was like rainfall in the desert.

Geographers define a "desert" as a region with less than 4 inches of rainfall per year, but that still allows for some rainfall. Likewise, under the current copyright law, there is still sufficient creativity in the April 10 stream for there to be copyright protection in the first instance, even if I, personally, would not have chosen to make that work of my own accord.

57.      As we will soon see when I get to section V(3)(E) of this oppositional brief, it is clear that at least some things happened in the stream, and those things, minimal as they are (akin to rainfall in the desert, but still greater than zero, which copyright law says is all that is required) still show that my earlier statement that the stream was "contentless" was not meant to be taken literally.

58.      Consider this: The Court has already held that I have stated a plausible claim for ownership of copyright on this work, despite being aware of the language the intervenors seek to draw to the Court's attention. See ¶ 5 of this Oppositional Brief. Although the Court can change its mind and decide that I have not stated a claim upon which relief can be granted after all, I ask the Court to consider why it made that finding in the first place. Obviously, the Court knew that the work was accidental, that I described the streaming software as turning on "of its own accord," and that I used the word "contentless" to describe the stream. So why didn't it put two and two together before? Is it because the Court, knowing that the pleadings must be taken as true *and in a light most favorable to the Plaintiff* (emphasis added), and that pro se pleadings should be construed with liberality[1], the Court chose to give me the benefit of the doubt and assume that I was speaking figuratively rather than literally? If so, that just proves my point!

59.      Since the motion to intervene is tantamount to a motion to dismiss (see ¶ 8 of this Oppositional Brief), the Court must likewise hold the complaint, not just to be truthful, but also in a light most favorable to the plaintiff. In this case, that means holding ¶ 20-21 of the Second Amended Complaint to be partially figurative.

60.      Put simply, the defendants' insistence that the contents of my second amended complaint be treated as confessions as to the invalidity of the copyright are hyper-literal, unsupported by the evidence, and even unsupported by the total context in which those statements even appear. The second amended complaint is simply not dispositive in this instance.

---

1   See Haines v. Kerner, 404 US 519 (1972)

Case 3:21-cv-04184-JSW                    -15-                    OPPOSITION TO MOTION
                                                                  TO INTERVENE

# SER136

### C – Accidental works can still be copyrighted.

61.    The intervenors argue that, because the work was an accident, that alone strips it of its eligibility for copyright protection. This is not true. Accidental works can indeed be protected by copyright. Alfred Bell & Co. v. Catalda Fine Arts, 191 F. 2d 99, 105 (2nd Cir. 1951) ("even if their substantial departures from the paintings were inadvertent, the copyrights would be valid. A copyist's bad eyesight or defective musculature, or a shock caused by a clap of thunder, may yield sufficiently distinguishable variations. Having hit upon such a variation unintentionally, the 'author' may adopt it as his and copyright it).

62.    Again, the Court knew that I classified the stream as accidental when it was screening my complaint for failure to state a claim upon which relief can be granted. Just like with the phrases "boring and contentless" and "of its own accord," this Court knew that the stream was an accident (and this time, that wasn't even a figure of speech), and yet it held that I have sufficiently alleged a valid copyright nonetheless. Although the Court can change its mind and issue a contrary holding on a motion to dismiss (which is what the motion to intervene is tantamount to), the intervenors have offered precisely zero explanation as to why the Court *should* change its mind and hold that the accidental nature of the work, in itself, strips it of copyright protection. Therefore, the Court should dismiss the intervenors' arguments out of hand.

### D – USCO had contents of copyrighted work disclosed to them.

63.    The intervenors insist that I "failed to disclose" to the US Copyright Office that the stream was utterly devoid of any creative content. This is false. First of all, as we will soon see when I discuss section V(3)(E) of this oppositional brief, there is indeed minimum creativity. But even barring that, USCO had indeed been constructively notified.

64.    Please find, attached to this oppositional brief, a Request for Judicial Notice. This request asks the Court to acknowledge that (A) I called the work an "accidental livestream" when I registered the copyright, and (B) I had uploaded a copy of the work for USCO to review.

65.    Upon taking these two judicial notices, it becomes clear that I had indeed disclosed to USCO the very facts that the intervenors claim I did not disclose. USCO could clearly see the stream in question. They could see, with their own two eyes, how much creative expression was

or wasn't in the stream. Despite this, USCO made the sound determination that there was sufficient creativity in the video for me to be entitled to copyright registration.

66.      For this reason, the precedent requires that my copyright be deemed valid and that I be allowed to proceed with an infringement claim. See *Lamps Plus*, supra at 1144-47.

<u>E – There is minimal creativity in the April 10 stream.</u>

67.      Even barring all of this, the intervenors' insistance that "the video lacks even the slightest creative spark necessary for it to be copyrightable" is simply and demonstrably false.

68.      I will submit a copy of the accidental livestream to the Court's chambers for private viewing. At timestamp 40:02, you can see me taking a bite of hot dog before getting up and walking off camera. Almost immediately after I go off frame, you can hear strange noises that sound like barking and snarling. It is disputed whether or not I personally made these noises.

69.      The intervenors insist that this alone is not sufficient creativity to be entitled to copyright protection. But it is. Because I captured the noises using my streaming software, I am the copyright holder of these noises.

70.      But even barring that, there are plenty of other moments in the stream when I did indeed engage in acts of individual expression, where I unquestionably am the human author thereof. The primary source of me engaging in acts of personal expression are the facial expressions I make when viewing Youtube videos. A non-exhaustive list of representative examples include, but are not limited to the following timestamps:

    (a)      1:25:33 - 1:25:39

    (b)      1:27:50 - 1:27:54

    (c)      1:32:16 - 1:32:21

    (d)      1:33:57 - 1:34:00

    (e)      1:35:46 - 1:35:53

    (f)      1:36:52 - 1:37:04

    (g)      1:38:10 - 1:38:15

71.      If I were taking a selfie, any one of those faces would be singularly sufficient individual creative expression to be entitled to copyright protection. Now, whether these expressions

# SER138

constitute sufficient commentary or criticism of the videos I was watching as to entitle me to a fair use defense for the infringement of those videos is another story, but since nobody with legal standing to sue me for that has yet to do so, that is not an issue we need adjudicate here.

72.    In addition to that, there is the events which occur at timestamp 32:39 – 32:41, where you can hear me saying the words "kill you." Who exactly am I threatening to kill? Am I even threatening to kill anyone at all, or was I just thinking out loud? Most likely the latter, but it is ultimately immaterial.

73.    These acts of personal expression, although scarce and de minimus, are nonetheless sufficient to create the minimum amount of creativity needed for copyright protection, even on their own, much less when combined together into one livestream.

74.    In addition to all of that, it is clear that many people are getting enjoyment out of watching the stream, which in turn means that there must be content therein. This is evidenced if you go the webpage of https://www.youtube.com/watch?v=Ldoz6eEAbMM. This is a blatant case of copyright infringement and I have attempted to have this content taken down via a DMCA Takedown Notice. When Youtube refused to take it down, I included it as "Infringement #33" in the Second Amended Complaint in the related case. See Case **4:22-cv-00546-JSW Stebbins v. Rebolo, Dkt. 16-1, ¶¶ 157-156**.

75.    However, rather than the video itself, take a look at the *comments section*. Clearly, people are having fun watching this video. That alone proves that there is *some content* in the video, even if the content was never intended to see the light of day.

76.    Representative examples of such comments include, but are not limited to, the following:

(a)    "25:00 & 40:00 Looks like someone forgot to take their normal pills."

(b)    "This is a mix of funny and a mix of sad because clearly he is unwell in the head. Acerthorn, if you're reading this: lmao"

(c)    "This is like a fever dream just watching a found footage movie of a man descending into utter madness"

(d)    "this is creepier than any pshycological horror movie i have ever watched, genuinely creeped out, this is real, it is actually real, it is scary af"

77.     Therefore, there is clearly some minimal creativity in this stream.

78.     Again, when I said the stream was "boring and contentless," I did not mean that it was utterly lacking in any minimum creative spark. That was a figure of speech. As I have clearly demonstrated, the accidental stream has, not much, but *enough* acts of individual expression to be entitled to copyright protection.

F – There is no evidence (aside from my poorly-worded<br>SAC) that the work was not a result of human authorship.

79.     To be eligible for copyright, the work must be "fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." See **17 USC § 102(a)**. "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." See **17 USC § 101**.

80.     So this begs the question: When I say that the stream was accidental, what exactly does that mean? Obviously, it does not mean that I turned on the stream software manually and deliberately. But if that is not what happened, then how did it come on?

81.     There are two possible explanations for how exactly the stream came on:

- **Method #1**: I had accidentally pressed the key on my keyboard to turn the stream on without realizing I had done it.

- **Method #2**: The stream software came on entirely of its own accord, without any input from me, accidental or otherwise.

82.     Method #1 is the more likely explanation, because if you look at the very start of the accidental stream, you can see that I am clearly sitting at my computer and typing at the keyboard. This makes it highly likely that the stream came on as a result of a single, errant keystroke.

83.     But if that is what happened, then the work was still done by a human being. Therefore, my copyright is still valid.

84.     The intervenors insist that Method #2 is what happened. However, their only evidence for this is their hyper-literal interpretation of the Second Amended Complaint. As I have demonstrated, that was never meant to be taken literally. In fact, the Second Amended Complaint makes it clear that *I don't know* how the streaming software came on, which means any attempts at explaining how it happened are just speculation, not based on personal knowledge.

85.     Because I have the registration, that means I have a statutory presumption of copyright validity, which means the defendants must come forth with affirmative evidence that Method #2 is the correct method. They have not done so yet. At best, we would have to conduct discovery in order to give the intervenors a chance to collect the required evidence, but the evidence is not present in the SAC itself unless you insist on a highly strained interpretation that was clearly not intended.

86.     For all of these reasons, the intervenors have not shown that my accidental stream was not copyrightable. There was indeed a minimum creative spark in the stream (even notwithstanding my allegation that I did not cause the strange noises), and it was almost certainly created by a human (me). Therefore, I am entitled to have my copyright be declared valid.

### 4 – Leave to Amend should be granted.

87.     If, despite all of this, the Court still insists that my Second Amended Complaint fails to sufficiently allege facts that would give rise to a valid copyright, then I should be granted leave to correct this deficiency in my complaint via a third amended complaint. There is no reason to suggest that an amended complaint would be futile.

88.     Is there any reason *not* to allow me to file an amended complaint to correct this deficiency? Is it just because the Court/intervenor defendants do not think I *deserve* to have a valid copyright?

89.     Amendment is not futile in this case, so leave to amend should be freely given. See Foman v. Davis, 371 US 178, 182 (1962):

> "Rule 15 (a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of

Case 3:21-cv-04184-JSW                    -20-                    OPPOSITION TO MOTION
                                                                  TO INTERVENE

the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

90.    In fact, I am already seeking leave to file a third amended complaint, in order to allege a new claim of infringement against Karl Polano. See **Dkt. 100**. I have filed a Motion to Clarify asking the Court to explain how it wants to move forward regarding this new claim. See **Dkt. 126**.

91.    Because I am just going to be amending the complaint anyway, why not use this opportunity to correct whatever deficiencies in the complaint I may have inadvertently given? The Court can see the operative complaint in the related case of Stebbins v. Rebolo, so it knows that I can modify the language of the complaint so as to make it more clear that it was most likely created by a human. So as the Court can clearly see, these errors can indeed be corrected by amended complaint.

**CONCLUSION**

92.      In conclusion, the intervenors should not be granted leave to intervene, because that would undermine the voluntary dismissal pursuant to Rule 41(a)(1)(A)(i).

93.      Even barring that, their only real defense on the merits – that my copyright is invalid – is patently untrue. The only way the Court could find the copyright to be invalid is if ALL of the following were to happen:

(a)      The Court must insist on a hyper-literal interpretation of the Second Amended Complaint, even when the full context makes it clear that my statements were speculative rather than based on personal knowledge.

(b)      When I stated in the SAC that the stream was "contentless," that statement in the SAC must supersede all other evidence, even that evidence which you can see just by viewing the stream in question, or by viewing other people's reactions to seeing the video by checking the comments sections.

(c)      Uploading the video for USCO to review when granting registration does not count as disclosing to them how much or how little content is in the video.

(d)      Leave to amend the complaint should not be given.

94.      If even one of those things does not happen, my copyright is still valid. Since that is not going to happen, my copyright is still valid. Period.

95.      I admit that I have been an overzealous and vexatious litigant in the past. But that is in the past, and I should not be punished in the instant case for things that happened years ago.

96.      In conclusion, the motion to intervene should be denied, and my copyright should be declared valid.

So requested on this, the 29th day of April, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                    PLAINTIFF

VS.                        Case 3:21-cv-04184-JSW

KARL POLANO, et al                                 DEFENDANTS

**REQUEST FOR JUDICIAL NOTICE**

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Request for Judicial Notice in support of my Opposition to Motion to Intervene (Dkt. 138) in the above-styled action.

1.      Pursuant to Rule 201 of the Federal Rules of Evidence, I request that the Court take judicial notice of the policies and practices of the following two facts:

- First, that the United States Copyright Office (USCO) requires that I upload a copy of the work that I seek to have registered a copyright with, enabling them to review the work for minimal creativity and originality.

- Second, that when I registered the copyright of the April 10, 2021 stream, I used the word "accidental" in the title of the registration (see **Dkt. 138-2, Page 4**: "Title of Work: Accidental Livestream from April 10, 2021"), thereby disclosing to USCO that the work was created by accident.

2.      A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). "The court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Courts routinely take judicial notice of matters of public record before administrative agencies, including applications to register works with the Copyright Office.

Case 3:21-cv-04184-JSW                  -1-              REQUEST FOR JUDICIAL NOTICE

**SER144**

3.      Upon taking these two judicial notices, the intervenors' claims that I failed to adequately disclose to the Copyright Office the relevant factors of the copyright work should be handily defeated.

So requested on this, the 29th day of April, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

**SER145**

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                PLAINTIFF

VS.                              Case 3:21-cv-04184-JSW

KARL POLANO, et al                                             DEFENDANTS

### ORDER DENYING [138] MOTION TO INTERVENE

IT IS HEREBY ORDERED BY THE COURT that

Movants Alphabet Inc. and Youtube LLC have already been voluntarily dismissed from this action. There is nothing the defendants can do to fan the ashes of the action to life, and the dismissal may not be extinguished or circumscribed by adversar or by court. To grant the intervenors leave to intervene would effectively do exactly that. Therefore, the Motion to Intervene is hereby DENIED.

Barring that, the Court finds that the Plaintiff's copyright is indeed valid. The intervenors' attempts to cherry-pick words and phrases from the Second Amended Complaint are hyper-literal and are not supported by the context. There is indeed a minimal amount of creativity in the stream, visible simply by watching the video.

Therefore, the Copyright Office did not err in granting registration of the copyright. The Court finds the copyright to be valid. For these reasons, the Plaintiff is entitled to proceed in any cases for infringement of that stream.

_____

Signature of Judge

_____

Date

Case 3:21-cv-04184-JSW

1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    DAVID A. STEBBINS,                    Case No.  21-cv-04184-JSW

8              Plaintiff,
                                           **ORDER DENYING EMERGENCY**
9         v.                               **MOTION TO STRIKE**

10   KARL POLANO, et al.,                   Re: Dkt. No. 142

11             Defendants.

12

13       Plaintiff has filed a motion styled as an emergency motion to strike the motion to intervene

14   filed by Alphabet Inc. and YouTube LLC.  (Dkt. No. 138.)  Plaintiff's motion is nothing more

15   than an attempted challenge to the legal sufficiency of motion to intervene.  The Court DENIES

16   Plaintiff's motion.

17       Motions to strike are governed by Rule 12(f), which states that "[t]he court may strike

18   from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous

19   matter."  Fed. R. Civ. P. 12(f) (emphasis added).  Rule 7(a) defines a pleading as "(1) a complaint;

20   (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an

21   answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and

22   (7) if the court orders one, a reply to an answer."  Fed. R. Civ. P. 7(a).  A motion to intervene is

23   not a pleading and therefore is not susceptible to a motion to strike.  Even if this were not the case,

24   Rule 12(f) does not apply because the motion to intervene is not redundant, immaterial,

25   impertinent, or scandalous.  Plaintiff may raise his arguments in opposition to intervention in his

26   response to the motion to intervene.

27       Further, the Court takes issue with Plaintiff's repeated characterization of his motions as

28   "emergency" motions.  The Court has already stricken a previous "emergency motion" for failure

United States District Court
Northern District of California

1  to comply with the Local Rules.  (Dkt. No. 134.)  Despite numerous admonishments, Plaintiff

2  continues to file requests with the Court that do not comply with the Federal Rules of Civil

3  Procedure and the Local Rules.  *Pro se* litigants are not immune from the rules of procedure that

4  govern other litigants.  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).  Plaintiff's improperly

5  filed motions preempt the use of judicial resources that might otherwise be devoted to adjudicating

6  the meritorious claims of other litigants.  If Plaintiff continues to abuse the judicial process in this

7  way, the Court will issue an order to show cause why he should not be declared a vexatious

8  litigant subject to a pre-filing order.

9  **IT IS SO ORDERED.**

10  Dated: April 27, 2022

11  _____

12  JEFFREY S. WHITE
   United States District Judge

United States District Court
Northern District of California

2

**SER148**

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                    PLAINTIFF

VS.                        Case 3:21-cv-04184-JSW

KARL POLANO, et al                                 DEFENDANTS

**EMERGENCY MOTION TO STRIKE**

 Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Motion to Strike **Dkt. 138**, Alphaet Inc.'s and Youtube LLC's motion to intervene.

**A substantive response will come soon.**

1. This is not a response to the substance of the motion to intervene. I have worked out an extension of time to respond to that motion with Jason Mollick (in light of my recent hospitalization which delayed my receipt of their filing; details and records can come at the court's request, assuming I am given sufficient safeguards to protect my right to medical privacy). This is NOT my substantive response to the defendants' motion. It is a motion to strike the defendants' motion which is being filed collaterally to the motion. A substantive response to the motion will come in due course, pursuant to the terms of the stipulated extension filed earlier today.

**Defendants' Motion should be stricken.**

2. Defendants Alphabet Inc., Youtube LLC, Discord Inc. Amazon.com Inc., and Twitch Interactive Inc., have already been dismissed from this case, pursuant to Fed.R.Civ.P. 41(a)(1)(i).

3. Pursuant to FRCP 41(a)(1)(A)(i), the dismissal is automatic. The Court has no discretion to refuse it. See Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074, 1076 (9th Cir. 1999) ("a Rule 41(a)(1) dismissal, once filed, automatically terminates the action, and thus federal jurisdiction, without judicial involvement"). See also at 1077:

Case 3:21-cv-04184-JSW                                    MOTION TO STRIKE

"a court has no discretion to exercise once a Rule 41(a)(1) dismissal is filed. It is well settled that under Rule 41(a)(1)(i), a plaintiff has an absolute right to voluntarily dismiss his action prior to service by the defendant of an answer or a motion for summary judgment.

The filing of notice itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court. There is not even a perfunctory order of court closing the file. Its alpha and omega was the doing of the plaintiff alone. He suffers no impairment beyond his fee for filing.

Because the dismissal is effective on filing and no court order is required, the filing of a notice of voluntary dismissal with the court automatically terminates the action as to the defendants who are the subjects of the notice. The effect is to leave the parties as though no action had been brought." See id at 1077 (citations and quotations omitted).

4.   The law makes itself perfectly clear on this. Now that these defendants have been dismissed from the case, they cannot reignite their interest in litigating the case, for any reason.

5.   As a result, this Court must strike the defendants' motion to intervene, as that would effectively give the defendants a back door to allow them to fan the ashes of the action back into life, or to circumscribe (however indirectly) the dismissal by adversary or by court. Such a result is explicitly not allowed under the binding precedent.

6.   You don't have to like what I did. In fact, the Court has already explicitly made it clear that it *doesn't* like what I did. But be that as it may, "the whole point of a Rule 41(a)(1) dismissal is to give the plaintiff an 'absolute' way out without further judicial involvement." See Commercial, supra at 1079-80. Therefore, the Court must act in accordance with this absolute right.

7.   Any further attempts by the corporate defendants to circumscribe this dismissal, in any way shape or form, for any reason, should not only be met with sua sponte striking of their filings, but with sanctions to deter further taxations on the Court in spite of the clearly-established, black latter law to the contrary.  They are dismissed. The dismissal is absolute. There is nothing they can do, directly or indirectly, to fan the ashes of the action back to life. It's over. They're gone. Period.

Case 3:21-cv-04184-JSW                                          MOTION TO STRIKE

**The defendants will still get their day in court. They just need to hold their horses.**

8.      As the Defendants point out, they are involved in a sister case (Stebbins v. Rebolo) which has several common elements with this one. This means that they will indeed get their day in court. They just have to wait for this case to wrap up first. Alphabet's insistence on butting in on this case just comes off as severe impatience on their part. All the other defendants in that case (Creetosis, Just Emi, SidAlpha, etc.) seem to be waiting patiently for their day in court, so why can't Alphabet?

**Proposed Order Attached**

9.      Please find, attached to this motion, a proposed order striking this motion and warning the defendants that any further attempts to circumscribe the voluntary dismissal will risk sanctions by the Court.

**If the Court will allow intervention, Alphabet should be required to waive any past or future costs or attorneys fees.**

10.     If, despite my absolute right to voluntarily dismiss the corporate defendants, they still insist on butting in and having their day in court ahead of their allotted time, then they should, at the very least, be required to forego the possibility of ever recovering costs or attorneys fees from this action. Why? Because at this point, those costs are self-inflicted. If they insist on throwing away tens (if not hundreds) of thousands of dollars prematurely litigating a case just on principle alone, then that's their money. But that's just it: It's *their* money, and it should forever remain *their* money, since at this point, they're spending it voluntarily.

**Conclusion**

11.     It's one thing to disagree with the way I use my legal rights. But it is another thing entirely to try to find new and creative ways to strip me of the benefits of invoking my legal rights, precisely in accordance with legal procedure, simply because you disagree with the outcome that me invoking that legal right would yield.

12.     Think about it this way: The Court has admonished me for attempting to "game" the system in order to "achieve a different result." But is that only a one-way street? Am I the only one who has to not only follow the law, but do so in a way the court determines to be honorable, whereas the defendants still get to use whatever underhanded tactics they may have at their

Case 3:21-cv-04184-JSW                                                    MOTION TO STRIKE

disposal in order to direct whatever outcome is most beneficial to them? Because that is, essentially, what the defendants are attempting to do in this case. They are attempting to butt into a case where they have already been lawfully and properly dismissed from the action, just to delay what would otherwise have been a smooth and expedient entry of default judgment, simply out of spite towards me. Why are they allowed to keep doing that, but I'm not?

13.    Wherefore, premises considered, I respectfully pray that Alphabet's and Youtube's Motion to Intervene be stricken on the grounds that it was filed in violation of FRCP 41(a)(1)(A)(i), along with an admonishment that further attempts to circumvent the voluntary dismissal in any way, for any reason, risks sanctions by the Court.

So requested on this, the 27th day of April, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

# SER152

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                            PLAINTIFF

VS.                          Case 3:21-cv-04184-JSW

KARL POLANO, et al                                         DEFENDANTS

## ORDER STRIKING [138] MOTION TO INTERVENE

On April 11, 2022, corporate defendants Youtube LLC, Alphabet Inc., Discord Inc., Amazon.com Inc., and Twitch Interactive Inc. were all voluntarily dismissed by the Plaintiff pursuant to Fed.R.Civ.P. 41(a)(1)(A)(i). See **Dkt. 128**. Minutes later, they attempted to file a Motion to Dismiss (**Dkt. 129**). However, because the dismissal is effective upon filing without even so much as a perfunctory order of court, and because the effect of the dismissal is at once immediate, absolute, and not reviewable by the Court, the Court struck the motion to dismiss as being improperly filed. See **Dkt. 134**.

On April 20, 2022, former defendants Alphabet Inc. and Youtube LLC filed a motion to intervene, seeking to rejoin the case as intervenor defendants. See **Dkt. 138**.

To grant them leave to intervene would be tantamount to allowing these previously-dismissed defendants a means of fanning the ashes of the action back into life, or to allowing the defendants to circumscribe, by adversary or by court, the voluntary dismissal. Neither are allowed under Rule 41(a). "There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court." See Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074, 1077 (9th Cir. 1999).

Neither the Court nor the defendants have to like what the plaintiff has done. But for better or worse, the plaintiff has the absolute right to voluntarily dismiss the corporate

Case 3:21-cv-04184-JSW

**SER153**

defendants, and the fact that the defendants were voluntarily dismissed from this action puts the full stopper on the defendants' ability to take any further action in this case.

For these reasons, the Court STRIKES the Motion to Intervene. The defendants are further WARNED that any further attempts to circumvent the voluntarily dismissal by any means, however indirect, will not only be struck sua sponte, but may risk sanctions by the Court.

_____

Signature of Judge

_____

Date

Case 3:21-cv-04184-JSW

# SER154

RYAN S. BENYAMIN, State Bar No. 322594
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
rbenyamin@wsgr.com

JASON MOLLICK (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
jmollick@wsgr.com

*Counsel for Intervenors*
*Alphabet Inc. and YouTube, LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| DAVID A. STEBBINS, | CASE NO.: 4:21-cv-04184-JSW |
| Plaintiff, | **STIPULATION AND [PROPOSED]** |
| | **ORDER TO MODIFY SCHEDULE** |
| v. | **ON MOTION TO INTERVENE** |
| KARL POLANO et al., | Action Filed: June 2, 2021 |
| Defendants. | |

## STIPULATION

WHEREAS, non-parties Alphabet Inc. ("Alphabet") and YouTube, LLC ("YouTube") (together, the "Intervenors") filed a Motion to Intervene on April 20, 2022, with a motion hearing currently set for June 3, 2022 (Dkt. 138);

WHEREAS, Plaintiff's response to the motion is currently due May 4, 2022, and Intervenors' reply is currently due May 11, 2022;

WHEREAS, Plaintiff informed counsel for Intervenors that he suffered from a medical emergency over the last several weeks requiring hospitalization, and rendering him unable to respond to the motion within the current schedule;

NOW THEREFORE, Pursuant to Local Rule 7-12 and Section 3 of the Court's Civil Standing Orders, the parties hereby stipulate and jointly request that the Court modify the briefing and hearing schedule on the Motion to Intervene as follows:

- Plaintiff's opposition brief shall be due on Wednesday, May 18, 2022;

- Intervenors' reply brief, if any, shall be due on Wednesday, June 1, 2022; and

- Should the Court wish to hear argument, the motion date shall be continued to June 24, 2022, or as soon thereafter as the matter may be heard.

The undersigned counsel for Intervenors attests pursuant to Local Rule 5-1(i)(3) that Plaintiff has concurred in the filing of this Stipulation and Proposed Order.

Dated: April 27, 2022

For Alphabet Inc. and YouTube, LLC

WILSON SONSINI
GOODRICH & ROSATI
Professional Corporation

*s/ Jason Mollick [draft]*
Jason Mollick (*pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

jmollick@wsgr.com
Plaintiff

*s/ David A. Stebbins [draft]*
123 W. Ridge Avenue, Apt. D
Harrison, Arkansas 72601
Telephone: (870) 212-4947
acerthorn@yahoo.com

Stipulation and [Proposed] Order to Modify Schedule on Motion to Intervene

CASE NO.: 4:21-cv-04184-JSW

**[PROPOSED] ORDER**

PURSUANT TO STIPULATION, IT IS SO ORDERED.


Dated: _____          _____

                                                      HON. JEFFREY S. WHITE
                                                      United States District Judge

1  RYAN S. BENYAMIN, State Bar No. 322594
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
3  633 West Fifth Street, Suite 1550
   Los Angeles, California 90071
4  Telephone: (323) 210-2900
   Facsimile: (866) 974-7329
5  rbenyamin@wsgr.com

6  JASON MOLLICK (*pro hac vice*)
7  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
8  1301 Avenue of the Americas, 40th Floor
   New York, New York 10019
9  Telephone: (212) 999-5800
   Facsimile: (212) 999-5899
10 jmollick@wsgr.com

11 *Counsel for Intervenors*
12 *Alphabet Inc. and YouTube, LLC*

13                  UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
14                         OAKLAND DIVISION

15

16  DAVID A. STEBBINS,                )   CASE NO.: 4:21-cv-04184-JSW
                                      )
17              Plaintiff,            )   **MOTION TO INTERVENE**
                                      )
18       v.                           )   Judge:  Hon. Jeffrey S. White
                                      )   Date:  June 3, 2022
19  KARL POLANO et al.,               )   Time:  9:00 AM
                                      )   By videoconference
20              Defendants.           )
                                      )   Action Filed:  June 2, 2021
21                                    )
                                      )
22  _____  )

23

24

25

26

27

28

**SER158**

1

## **TABLE OF CONTENTS**

2   NOTICE OF MOTION ........................................................................................1

3   INTRODUCTION..............................................................................................1

4   BACKGROUND................................................................................................3

5       A.    Plaintiff is a Vexatious Litigant and his Suits Have Been Deemed Frivolous........3

6       B.    Plaintiff's Abusive Litigation Tactics Have Continued in this Case ......................4

7   ARGUMENT ....................................................................................................8

8       I.    Alphabet and YouTube Should be Permitted to Intervene Because They Are
9           Defendants in a Related Action Involving Common Dispositive Issues ...............8

10       II.    The Court Should Deny Plaintiff's Motion for Default Judgment Because
11           His Allegedly Infringed Livestream Is Not Copyrightable ..................................10

12   CONCLUSION ..................................................................................................14

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SER159**

1

## **TABLE OF AUTHORITIES**

2

### **CASES**

3

*Aldabe v. Aldabe,*
4      616 F.2d 1089 (9th Cir. 1980)........................................................................ 10

5 *California v. Health & Hum. Servs.,*
     330 F.R.D. 248 (N.D. Cal. 2019) ............................................................... 8, 9
6

7 *Degamo v. Bank of Am., N.A.,*
     849 F. App'x 620 (9th Cir. 2021).................................................................. 8

8 *Dixon v. Cost Plus,*
9      2012 U.S. Dist. LEXIS 90854 (N.D. Cal. June 27, 2012) ............................ 8

10 *Draper v. Coombs,*
     792 F.2d 915 (9th Cir. 1986)....................................................................... 10
11

12 *Eitel v. McCool,*
     782 F.2d 1470 (9th Cir. 1986)..................................................................... 11

13 *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
14      499 U.S. 340 (1991).................................................................................... 12

15 *Freedom from Religion Found., Inc. v. Geithner,*
     644 F.3d 836 (9th Cir. 2011)......................................................................... 8
16

17 *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,*
     345 F.3d 1140 (9th Cir. 2003)............................................................... 11, 13

18 *Naruto v. Slater,*
19      2016 U.S. Dist. LEXIS 11041 (N.D. Cal. Jan. 28, 2016),
     *aff'd,* 888 F.3d 418 (9th Cir. 2018) ............................................................ 12

20 *Neitzke v. Williams,*
21      490 U.S. 319 (1989) ................................................................................... 11

22 *Skidmore for Randy Craig Wolfe Trust v. Led Zeppelin,*
     952 F.3d 1051 (9th Cir. 2020)..................................................................... 11
23

24 *Stebbins v. Bradford,*
     2013 U.S. Dist. LEXIS 94179 (W.D. Ark. July 5, 2013),
25      *aff'd,* 552 F. App'x 606 (8th Cir. 2014) ....................................................... 3

26 *Stebbins v. Google, Inc.,*
     2011 U.S. Dist. LEXIS 125701 (N.D. Cal. Oct. 27, 2011) ...................... 3, 11
27

*Stebbins v. Hixson,*
28      2018 U.S. Dist. LEXIS 79361 (W.D. Ark. May 8, 2018)............................... 4

*Stebbins v. Microsoft, Inc.*,
    2012 WL 12896360 (W.D. Wash. Jan. 13, 2012),
    *aff'd*, 520 F. App'x 589 (9th Cir. 2013) ........................................................ 3, 10

*Stebbins v. Stebbins*,
    2013 U.S. Dist. LEXIS 93528 (W.D. Ark. July 3, 2013)................................. 1, 4

*Stebbins v. Stebbins*,
    575 F. App'x 705 (8th Cir. 2014)....................................................................... 3

*Stebbins v. Steen*,
    2013 U.S. Dist. LEXIS 117914 (E.D. Ark. Aug. 20, 2013)............................... 3

*Stebbins v. Texas*,
    2011 U.S. Dist. LEXIS 146248 (N.D. Tex. Oct. 24, 2011) ............................... 3

*TeleVideo Sys., Inc. v. Heidenthal*,
    826 F.2d 915 (9th Cir. 1987) ........................................................................... 11

*United States v. City of L.A.*,
    288 F.3d 391 (9th Cir. 2002).............................................................................. 8

*Venegas v. Skaggs*,
    867 F.2d 527 (9th Cir. 1989),
    *aff'd*, 495 U.S. 82 (1990)................................................................................... 9

*Westchester Fire Ins. Co. v. Mendez*,
    585 F.3d 1183 (9th Cir. 2009)............................................................................ 8

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Art. I, § 8, Cl. 8 ................................................................................. 12

**STATUTES AND RULES**

17 U.S.C. § 101 .................................................................................................... 12

17 U.S.C. § 102(a).................................................................................................. 12

17 U.S.C. § 107 ....................................................................................................... 5

17 U.S.C. § 410(c)................................................................................................. 11

17 U.S.C. § 512(j) ................................................................................................... 6

28 U.S.C. § 1915(e)(2) ......................................................................................... 11

Fed. R. Civ. P. 24 ....................................................................................... 1, 2, 8, 9

Fed. R. Civ. P. 41(a)(1) .......................................................................................... 2

1

## NOTICE OF MOTION

2     **PLEASE TAKE NOTICE** that on June 3, 2022, at 9:00 a.m., or as soon thereafter as the

3   matter may be heard, in the United States District Court, Northern District of California, Oakland

4   Courthouse, Courtroom 5 – 2nd Floor, located at 1301 Clay Street, Oakland, California 94612,

5   before the Honorable Jeffrey S. White, non-parties Alphabet Inc. ("Alphabet") and YouTube,

6   LLC ("YouTube") will and hereby do move the Court to permit them to intervene in this action

7   pursuant to Federal Rule of Civil Procedure 24, for purposes of opposing Plaintiff David

8   Stebbins's Motion for Default Judgment against defendants Karl Polano, Frederick Allison, and

9   Raul Mateas (collectively, the "Individual Defendants").  This Motion is based on this Notice of

10   Motion, the below Memorandum of Points and Authorities, the concurrently filed Request For

11   Judicial Notice and accompanying Exhibit ("RJN"), all other matters of which this Court may

12   take judicial notice, the pleadings, files, and records in this action, and such other argument as

13   may be heard by the Court.

14

## INTRODUCTION

15     Non-parties Alphabet and YouTube ask that the Court exercise its broad discretion under

16   Federal Rule 24(b) to permit them to intervene on an issue that is common to this case and a

17   related action where they are named defendants.  Permitting intervention would serve judicial

18   economy and prevent Plaintiff's litigation gamesmanship.

19     Plaintiff David Stebbins, a recognized "vexatious" *pro se* litigant (*Stebbins v. Stebbins*,

20   2013 U.S. Dist. LEXIS 93528 (W.D. Ark. July 3, 2013)), has asserted copyright infringement

21   claims alleging that a handful of Individual Defendants (who have all defaulted) posted

22   infringing content on YouTube, Twitch, and Discord.  Rather than simply sue the persons who

23   posted that content, Plaintiff also sued Alphabet (YouTube's parent company), Amazon

24   (Twitch's parent company), and Discord to obtain an injunction requiring those "Corporate

25   Defendants" to permanently ban the Individual Defendants from their services.  Plaintiff also

26   filed a motion for leave to add YouTube as a defendant.  A few months later, Plaintiff filed a

27   related action in this Court alleging additional infringements of the same content—again naming

28

**SER162**

1   the Corporate Defendants and/or their subsidiaries as defendants, including Alphabet and

2   YouTube. *Stebbins v. Rebolo*, 4:22-cv-00546-JSW (the "Related Case").

3          There are major defects in Plaintiff's copyright claims. Among others, the sole work at

4   issue in this case – a video of Plaintiff that was recorded accidentally through a fixed camera – is

5   not copyrightable to begin with. Copyright protection subsists in creative works of authorship

6   that are fixed in a tangible medium of expression by a human author. But here, Plaintiff admits

7   that the video (the "Accidental Livestream") was created by accident, without his knowledge,

8   and without the slightest degree of creativity on his part. The fixation of the video itself was

9   done by computer software – not a human author – without Plaintiff even realizing the camera

10  had turned on. Because such a work cannot be copyrightable, all of Plaintiff's infringement

11  claims in this case should be dismissed without needing to go further. His infringement claims

12  in the related case involving the same video should be dismissed as well.

13         Plaintiff claims he is confident in the validity of his copyright, but his behavior shows

14  otherwise. As soon as Plaintiff learned that the Corporate Defendants would be contesting his

15  copyright through a motion to dismiss, he rushed to dismiss them voluntarily, moved to strike

16  their motion, and implored the Court to "cast the contents therein from its mind." In so doing,

17  Plaintiff admitted that the sole reason he "played this trump card" was to silence anyone from

18  challenging his copyright. The Court granted Plaintiff's motion to strike, finding that it lacked

19  discretion to proceed otherwise under Federal Rule 41(a)(1). But in so doing, the Court rightly

20  called out "Plaintiff's efforts to manipulate the litigation process and his blatant gamesmanship."

21         Fortunately, the Court *does* have discretion to deal with Plaintiff's abusive tactics in

22  another way. While the Corporate Defendants have been dismissed from *this* case, Alphabet and

23  YouTube remain defendants in the *related* case where the same alleged copyright is at issue.

24  The Court, therefore, has broad discretion to permit them to intervene under Federal Rule 24(b),

25  which authorizes anyone to be heard in any action who "has a claim or defense that shares with

26  the main action a common question of law or fact." Here, that common question is the validity

27  of Plaintiff's copyright in the Accidental Livestream, which is common to both actions.

28  Accordingly, Alphabet and YouTube respectfully request that the Court consider the substantive

1   evidence and arguments set forth herein, deny Plaintiff's Motion for Default Judgment against

2   the Individual Defendants, and dismiss this case.

3                                           **BACKGROUND**

4       **A.      Plaintiff is a Vexatious Litigant and his Suits Have Been Deemed Frivolous**

5           Plaintiff, a self-proclaimed "Youtuber" and "Twitch Streamer," goes by the online alias

6   "Acerthorn."  Dkt. 55 (SAC) ¶ 1.  He is widely ridiculed by users on those and other platforms,

7   in large part because of his years'-long abuse of the court system.  Plaintiff has bogged down

8   courts across the nation with frivolous lawsuits.  In this District, for example, he sued Alphabet's

9   subsidiary, Google, to confirm a purported "arbitration award" for half a trillion dollars, even

10  though no arbitration actually occurred.  *Stebbins v. Google, Inc.*, 2011 U.S. Dist. LEXIS 125701

11  (N.D. Cal. Oct. 27, 2011) (dismissing *sua sponte* as "frivolous" and "clearly baseless").  There

12  are many other suits just like that one.  *See Stebbins v. Texas*, 2011 U.S. Dist. LEXIS 146248, at

13  *8-9 (N.D. Tex. Oct. 24, 2011) (warning Plaintiff could face monetary sanctions and/or that the

14  court would ban him from filing further actions without prior approval); *Stebbins v. Steen*, 2013

15  U.S. Dist. LEXIS 117914, at *5-6 (E.D. Ark. Aug. 20, 2013) (concluding his complaint was

16  frivolous and failed to state a claim); *Stebbins v. Stebbins*, 575 F. App'x 705, 705 (8th Cir. 2014)

17  (affirming dismissal and noting it is "undisputed that Stebbins has proceeded *in forma pauperis*

18  on at least sixteen complaints [as of 2014] that proved meritless, and has filed numerous

19  frivolous motions"); *Stebbins v. Bradford*, 2013 U.S. Dist. LEXIS 94179, at *7 (W.D. Ark. July

20  5, 2013) (dismissing his complaint as frivolous), *aff'd*, 552 F. App'x 606 (8th Cir. 2014).

21          Plaintiff has been reprimanded multiple times.  One federal court noted that "time spent

22  dealing with Mr. Stebbins's filings prevents the Court from addressing the genuine, vexing

23  problems that people trust the Court to resolve quickly and fairly."  *Stebbins v. Microsoft, Inc*.,

24  2012 WL 12896360, at *1 (W.D. Wash. Jan. 13, 2012), *aff'd*, 520 F. App'x 589 (9th Cir. 2013).

25  Similarly, the Western District of Arkansas (Plaintiff's home district) declared him a "vexatious"

26  litigant who has "abused the system" with "a history of filing ultimately meritless cases upon

27  which the Court has been forced to expend countless hours of time and judicial resources.  Not

28  only has Plaintiff filed numerous cases, but he has also filed over one hundred motions within

1   those cases, some of which have been repetitive, and few of which have had any merit."

2   *Stebbins v. Stebbins*, 2013 U.S. Dist. LEXIS 93528, at *3-4.  When that court limited him to

3   filing one case per every three months (*id.* at *8-9), he evaded the order by suing in the *Eastern*

4   District, and then attempting to transfer to the Western District.  *Stebbins v. Hixson*, 2018 U.S.

5   Dist. LEXIS 79361, at *3-4, *7-8 (W.D. Ark. May 8, 2018).

6                    **B.       Plaintiff's Abusive Litigation Tactics Have Continued in this Case**

7           Plaintiff's conduct has continued here.  In this case alone there are already over 130

8   docket entries, including dozens of "motions" filed by him.  The Court has denied the vast

9   majority of them.  Plaintiff has also engaged in abusive litigation tactics that he admits were

10   designed to prevent the Court from considering a major weakness in his copyright infringement

11   claims: the fact that the sole work in suit is not copyrightable to begin with.

12           According to Plaintiff, on April 10, 2021, his "livestream software turned on of its own

13   accord without me realizing it.  It stayed on for nearly two hours before I realized it was on and

14   closed it down.  During this accidental livestream, my viewers were able to see me engaging in

15   mundane, daily activities."  Dkt. 55 (SAC) ¶ 22.  Plaintiffs adds that "the only interesting and

16   memorable part of this otherwise boring and contentless livestream" were "strange noises" that

17   he "did not cause."  *Id.* ¶ 23.  He allegedly registered this "Accidental Livestream" with the

18   United States Copyright Office; however, he did ***not*** disclose any of the aforementioned facts

19   concerning the nature and circumstances of the video in his application.  RJN, Ex. A.[1]

20           Plaintiff asserts copyright infringement claims in this case against three Individual

21   Defendants who allegedly posted copies of the Accidental Livestream on YouTube, Twitch, and

22   Discord.  All three Individual Defendants have defaulted.  Plaintiff also initially sued Alphabet

23   (the parent company of YouTube), Amazon (the parent company of Twitch), and Discord to

24   assert a "claim" for an injunction that would require those "Corporate Defendants" (and/or their

25

26   _____

    [1] Plaintiff claims that he offers the video for "at least" $20 per month ($240 per year), which is
27   more expensive than a Netflix subscription.  Dkt. 55 (SAC) ¶¶ 24-25.  No one has ever paid for
    it.  *Id.*  The complaint, and his litigation history, strongly suggests that Plaintiff did this simply to
28   manufacture a damages claim over a video that has no actual market value.  *Id.* ¶ 131.

1   subsidiaries, including YouTube) to permanently terminate the Individual Defendants' accounts

2   and prevent them from creating new accounts in the future—even though YouTube, Twitch, and

3   Discord had already removed all instances of the video from their services.  *See* Dkt. 55 (SAC) ¶

4   60 (Twitch removed after two hours); *id.* ¶¶ 26, 29, 46, 61 (YouTube removed all alleged

5   infringements, often within hours); *id.* ¶ 44 (Discord removed all alleged infringements).

6          Plaintiff also filed a related action in this Court, *Stebbins v. Rebolo*, No. 4:22-cv-00546-

7   JSW, and recently amended his complaint to include Alphabet, YouTube, and others.  *See*

8   Related Case Dkt. 15.  One of the alleged copyrighted videos at issue in the related case is the

9   same Accidental Livestream at issue here.  *Id.* ¶¶ 20-25.  For this reason, the Court stayed the

10  related case at Plaintiff's request pending final resolution of this case, because "a ruling in the

11  [first] case will be relevant and potentially fully dispositive in the [second] case."  Related Case

12  Dkt. 14.  In that case Plaintiff alleges additional infringements by at least nine individual

13  defendants, and again seeks an injunction requiring Alphabet and YouTube to permanently ban

14  the users' accounts.  Related Case Dkt. 15 ¶¶ 182-183.  Plaintiff also asserts secondary

15  infringement claims against Alphabet and YouTube because YouTube declined to remove

16  certain videos that used portions of the Accidental Livestream for purposes of criticizing him—

17  videos that are clearly fair use under 17 U.S.C. § 107.[2]  *Id.* ¶¶ 166-168.

18         On April 7, 2022, Plaintiff filed a Motion for Default Judgment against the Individual

19  Defendants in this case.  Dkt. 127.  In that motion he expresses concern that the Corporate

20  Defendants might challenge the copyrightability of his Accidental Livestream.  *Id.* at 5-6 ¶ f.

21  Realizing that the Corporate Defendants would indeed bring this issue to the Court's attention,

22

23  ───────────────

24  [2] One of the allegedly infringing videos in the related case, entitled "Acerthorn: Serial DMCA
    Abuse Controversy," was posted by a third-party "SidAlpha" and can be found at
25  https://www.youtube.com/watch?v=WB-Xd1qDKIY.  This video features prominently in
    Plaintiff's Motion for Default Judgment against the Individual Defendants as a measure of his
26  damages (which makes no sense, since the video was not created or posted by the Individual
    Defendants in default here).  *See* Dkt. 127-20 ¶¶ 38-49; Dkt. 247-18.  The video provides a
27  detailed history of Plaintiff's abuse of the Court system and the DMCA to strike videos that
    fairly criticize him.  Plaintiff sued YouTube in the *Rebolo* action for declining to remove it, even
28  though the video (and others alleged in that complaint) is plainly fair use criticism.

1    Plaintiff emailed the undersigned counsel for Alphabet shortly before the Corporate Defendants

2    filed their Motion to Dismiss.  In that email Plaintiff taunted that he could hide the issue from the

3    Court's attention and secure an unopposed default judgment against the Individual Defendants,

4    simply by dismissing the Corporate Defendants voluntarily on the same day they file their

5    motion.  And in the process, he can require the Corporate Defendants to expend even more legal

6    fees by re-litigating the same issue in the related case:

7            I could simply ... dismiss your client from the Polano case!  If I did
             that, the dismissal would be without prejudice, allowing me to re-
8            file the request for prospective injunctive relief as part of the
             Rebolo case.  So I wouldn't even be missing out on that injunction.
9            The[n], you won't have a choice but to wait until the Rebolo case
             to challenge the validity of the copyright, at which point you will
10           get nowhere with that challenge because my copyright is indeed
             valid.  If I dismissed Alphabet as a party, you would likely not get
11           your attorneys [sic] fees, for the reasons I set forth last weekend.[3]

12

13           Minutes later, at the same time as the Corporate Defendants were in the process of filing

14   their Motion to Dismiss (Dkt. 129), Plaintiff filed a Notice of Voluntarily Dismissal to remove

15   the Corporate Defendants from the case (Dkt. 128).  In the Notice Plaintiff admits that his sole

16   reason for abruptly dismissing the Corporate Defendants on the day their responses were due was

17   to prevent the Corporate Defendants from exposing the invalidity of his alleged copyright.

18   Plaintiff argues that any consideration of this issue "would only result in tedious delays in a case

19   where I was about to get a default judgment otherwise."  Dkt. 128 ¶ 1.  But Plaintiff promises to

20   re-litigate the issue against the same Corporate Defendants "in the near future," after he gets an

21   unopposed default judgment where his alleged copyright is not challenged:

22           This is not a surrender.  This is a tactical retreat.  I wish to have
             this action dismissed *without prejudice*, so I can re-file the case
23           again, seeking to obtain the prospective injunctive relief under 17
             USC § 512(j) in the near future.  This is just being done so that
24           Alphabet (and possibly the other nominal defendants) cannot delay
             this case that is already in the eleventh hour, just out of sheer
25           pettiness.

26

27   _____
     [3] We do not attach the remainder of this email correspondence because prior communications in
28   the thread contain confidential settlement communications.

1    *Id.* ¶ 3 (emphasis in original).

2          The Corporate Defendants filed their Motion to Dismiss at virtually the same time as

3    Plaintiff filed his Notice of Voluntary Dismissal.  Dkt. 129.  As Plaintiff feared, the motion

4    explained that the Accidental Livestream is not copyrightable because it lacks creativity and

5    human authorship, based on facts admitted in the complaint.  Dkt. 129 at 5-7.  The Corporate

6    Defendants also proffered a copy of Plaintiff's application to register the video with the United

7    States Copyright Office, which reveals that he did not disclose the true nature and circumstances

8    of the video to the Copyright Office.  Dkt. 129-1.  Plaintiff immediately moved to strike the

9    Motion to Dismiss (Dkt. 130), insisting that he "should not need to" "defend the validity of the

10   copyright."  Dkt. 132 ¶ 13.  Plaintiff brags that because he "thought of this tactic" and "played

11   this trump card," he has "stripp[ed] [the Corporate Defendants] of their opportunity to litigate the

12   case with me."  *Id.* ¶ 14.

13         The Court granted Plaintiff's motion to strike, finding that it lacked authority to disregard

14   or to place a condition on the voluntary dismissal.  Dkt. 134.  However, the Court noted that it

15   "does not endorse Plaintiff's efforts to manipulate the litigation process and his blatant

16   gamesmanship.  Should Plaintiff continue to dismiss and refile cases in bad faith to obtain a

17   different result, he risks being declared a vexatious litigant in this district."  *Id.*  Plaintiff

18   responded the next day with a "Motion to Clarify" in which he asks the Court to "do whatever it

19   takes to cast the contents [of the copyrightability arguments] from its mind," and to grant default

20   judgment "assuming the copyright's validity to be unchallenged."  Dkt. 135.

21         Meanwhile, the Corporate Defendants and/or their subsidiaries (including Alphabet and

22   YouTube) remain defendants in the related action, where copyrightability of the same Accidental

23   Livestream remains squarely at issue.  Related Case. Dkt. 15.

24

25

26

27

28

Case 4:21-cv-04184-JSW   Document 138   Filed 04/20/22   Page 12 of 18

1    **ARGUMENT**

2    **I.     ALPHABET AND YOUTUBE SHOULD BE PERMITTED TO INTERVENE**

3    **BECAUSE THEY ARE DEFENDANTS IN A RELATED ACTION INVOLVING**

4    **COMMON DISPOSITIVE ISSUES**

5            Although Alphabet and YouTube are no longer defendants or proposed defendants in this

6    case, Federal Rule 24(b)(1)(B) authorizes the Court on timely motion to "permit anyone to

7    intervene who … has a claim or defense that shares with the main action a common question of

8    law or fact." "Thus, a court may grant permissive intervention where the applicant for

9    intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the

10   applicant's claim or defense, and the main action, have a question of law or a question of fact in

11   common." *United States v. City of L.A.*, 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted);

12   *accord, e.g.*, *California v. Health & Hum. Servs.*, 330 F.R.D. 248, 252 (N.D. Cal. 2019).

13   However, the first prong – an "independent ground for subject matter jurisdiction" – "does not

14   apply to proposed intervenors in federal-question cases when the proposed intervenor is not

15   raising new claims." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th

16   Cir. 2011); *accord, e.g.*, *Health & Hum. Servs.*, 330 F.R.D. at 254.  In such cases "the identity of

17   the parties is irrelevant and the district court's jurisdiction is grounded in the federal question(s)

18   raised by the plaintiff." *Freedom from Religion Foundation*, 644 F.3d at 844.[4]

19           Once these conditions are met, permissive intervention is "committed to the broad

20   discretion of the district court." *Degamo v. Bank of Am., N.A.*, 849 F. App'x 620, 623 (9th Cir.

21

22   [4] Although Rule 24(c) states that a motion to intervene should "be accompanied by a pleading
     that sets out the claim or defense for which intervention is sought," that "is not required where …
23   the movant describes the basis for intervention with sufficient specificity to allow the district
     court to rule." *Dixon v. Cost Plus*, 2012 U.S. Dist. LEXIS 90854, at *16-17 (N.D. Cal. June 27,
24   2012) (citation omitted); *see also, e.g.*, *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183,
     1188 (9th Cir. 2009) ("Courts, including this one, have approved intervention motions without a
25   pleading where the court was otherwise apprised of the grounds for the motion.") (citation
     omitted).  Alphabet and YouTube do not attach a pleading here because they are not asserting a
26   legal claim against the Plaintiff, their arguments are reflective of those that would be made on a
     motion to dismiss, and they rely on facts that are admitted in Plaintiff's own complaint.  The
27   grounds for intervention and for dismissing this case are also fully set forth in this motion.
28

1   2021) (citation omitted).  Courts consider whether the intervenor's interests are adequately

2   represented by other parties in the case; whether intervention would cause undue delay or

3   prejudice; and judicial economy.  *Venegas v. Skaggs*, 867 F.2d 527, 530-31 (9th Cir. 1989),

4   *aff'd*, 495 U.S. 82 (1990); Fed. R. Civ. P. 24(b)(3); *see also, e.g.*, *Health & Hum. Servs.*, 330

5   F.R.D. at 255 (finding intervention would "not unduly delay or prejudice the adjudication of the

6   original parties' rights.  If anything, allowing intervention will promote judicial economy and

7   spare the parties from needing to litigate a similar case in another district.").

8         All of the conditions for permissive intervention are met here.  <u>First</u>, there is no need for

9   independent grounds for jurisdiction since this is a federal-question case, and Alphabet and

10  YouTube are not raising new claims.  <u>Second</u>, this motion is timely because Alphabet and

11  YouTube brought it only one week after Plaintiff voluntarily dismissed the Corporate

12  Defendants, and there are no pending deadlines.  <u>Third</u>, copyrightability is a common issue to

13  both this and the related action where Alphabet and YouTube are still defendants.  As noted

14  above, the Court stayed the related action at Plaintiff's request for this very reason: because "a

15  ruling in [this first] case will be relevant and potentially fully dispositive in the [second] case."

16  Related Case Dkt. 14.  A grant of default judgment here necessarily requires a finding that

17  Plaintiff has a valid copyright in the Accidental Livestream.  That could lead to inconsistent

18  results concerning the same issue in the related case, where the validity of the same copyrighted

19  video will be at issue.  Indeed, the Court previously recognized this risk as sufficient for denying

20  Plaintiff's first motion for default judgment against a subset of defendants.  *See* Dkt. 99 at 3

21  (finding that "denial of a default judgment motion is necessary to avoid an inconsistent result").

22        The discretionary factors favor permissive intervention as well.  Alphabet and YouTube's

23  interests are not being represented in any fashion, given that all remaining defendants are in

24  default.  Intervention would not cause undue delay, since there are no other deadlines pending in

25  this case.  Intervention will not be unfairly prejudicial, because Alphabet and YouTube only ask

26  that Plaintiff be held to his burden of establishing a valid copyright.  Finally, intervention would

27  promote judicial economy, because the Court will otherwise need to consider the same issue

28  twice.  If the Court does not hear the arguments herein concerning copyrightability, there is a

1   substantial risk that the Court may issue a default judgment in this case, only to realize later that

2   the ruling was incorrect.

3          The Court should also exercise its broad discretion to combat "Plaintiff's efforts to

4   manipulate the litigation process and his blatant gamesmanship." Dkt. 134 at 1.  Plaintiff is a

5   vexatious litigant with a long history of abusing the court system.  As one court described it,

6   "time spent dealing with Mr. Stebbins' filings prevents the Court from addressing the genuine,

7   vexing problems that people trust the Court to resolve quickly and fairly." *Stebbins v. Microsoft,*

8   *Inc.*, 2012 WL 12896360, at *1.  What happened in recent days is the same old story, and the

9   Court need not tolerate it.  Even if the Court had no discretion to consider the Corporate

10  Defendants' Motion to Dismiss (*see* Dkt. 134), it does have broad discretion to permit Alphabet

11  and YouTube to intervene as interested parties, given their continued status as defendants in the

12  related case where the same copyrighted work is at issue.

13         In sum, because any ruling in this case will necessarily impact overlapping issues in the

14  related case, the Court should consider the arguments set forth below concerning the invalidity of

15  Plaintiff's copyright in the Accidental Livestream.

16  **II.    THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR DEFAULT**

17  **JUDGMENT BECAUSE HIS ALLEGEDLY INFRINGED LIVESTREAM IS NOT**

18  **COPYRIGHTABLE**

19         Plaintiff's Motion for Default Judgment should be denied, and this case should be

20  dismissed, because the Accidental Livestream is not copyrightable.  The Court need go no

21  further to dispose of this entire litigation and much of the related case.

22         Plaintiff thinks that because he "thought of this tactic" to dismiss the Corporate

23  Defendants (Dkt. 132 ¶ 15), the Court has no choice but to issue judgment in his favor,

24  "including assuming the copyright's validity to be unchallenged." Dkt. 135 ¶ 12.  Not so.  As

25  the Court explained in denying Plaintiff's prior motion for default judgment, "[a] defendant's

26  default does not automatically entitle the plaintiff to a court-ordered judgment." Dkt. 99 (citing

27  *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).  "A district court has discretion in

28  deciding whether to enter a default judgment." *Id.* (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092

1   (9th Cir. 1980)).  In exercising this discretion a court considers several factors, including (as

2   relevant here) "the merits of the plaintiff's substantive claim," "the sufficiency of the complaint,"

3   and "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the

4   merits." *Id.* (citing *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)).  While factual

5   allegations in the complaint are assumed to be true, legal conclusions – such as whether Plaintiff

6   has a valid copyright – are not.  *Id.* (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917

7   (9th Cir. 1987)).

8         Moreover, the Court should be mindful that Plaintiff is proceeding *in forma pauperis* and

9   therefore, if his complaint lacks an arguable basis either in law ***or in fact***, the Court has "the

10   unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims

11   whose factual contentions are clearly baseless." *Stebbins v. Google, Inc.*, 2011 U.S. Dist. LEXIS

12   125701, at *10-11.  The Court may exercise this power "at any time."  28 U.S.C. § 1915(e)(2)

13   ("[T]he court shall dismiss the case at any time if the court determines that … the action or

14   appeal … is frivolous or malicious [or] fails to state a claim on which relief may be granted.").

15   This *in forma pauperis* process "is designed largely to discourage the filing of, and waste of

16   judicial and private resources upon, baseless lawsuits that paying litigants generally do not

17   initiate because of the costs of bringing suit[.]" *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

18   That concern is particularly acute here given Plaintiff's abuse of the court system, including in

19   this very case.

20         To state a claim for copyright infringement, Plaintiff must first show "that he owns a

21   valid copyright in the work" at issue.  Dkt. 10 at 4 (citing *Skidmore for Randy Craig Wolfe Trust

22   v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc)).  While Plaintiff did register the

23   Accidental Livestream, and such registration constitutes "prima facie evidence of the validity of

24   the copyright," "[t]he evidentiary weight to be accorded the certificate of a registration … shall

25   be within the discretion of the court."  17 U.S.C. § 410(c).  In the Ninth Circuit, "[t]he

26   presumption of the validity of a registered copy-right may be overcome by the offer [of] some

27   evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *Lamps

28   Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1145 (9th Cir. 2003) (citation omitted).

1   Here, that proof is found in the complaint itself, in which Plaintiff admits that the Accidental

2   Livestream lacks even the slightest modicum of creativity, and is not a product of human

3   authorship.

4        "Copyright protection subsists … in original works of authorship fixed in any tangible

5   medium of expression …." 17 U.S.C. § 102(a). "The *sine qua non* of copyright is originality.

6   To qualify for copyright protection, a work must be original to the author. Original, as the term

7   is used in copyright, means … that it possesses at least some minimal degree of creativity."

8   *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citation omitted). "To be

9   sure, the requisite level of creativity is extremely low[,]" but the work must at least possess

10  "some creative spark" to be copyrightable. *Id.* Moreover, the "fixing" of a creative work in a

11  tangible medium of expression must be done "by or under the authority of the author." 17

12  U.S.C. § 101. That author must be a human, not a machine. Compendium of U.S. Copyright

13  Office Practices § 313.2 ("works produced by a machine or mere mechanical process that

14  operates randomly or automatically without any creative input or intervention from a human

15  author" are not copyrightable)[5]; *cf. Naruto v. Slater*, 2016 U.S. Dist. LEXIS 11041 (N.D. Cal.

16  Jan. 28, 2016), *aff'd*, 888 F.3d 418 (9th Cir. 2018) (finding monkey cannot sue for infringement

17  of a selfie it took with a camera). These two requirements – creativity and human authorship –

18  are consistent with the Constitution, which calls upon Congress to protect the rights of "Authors"

19  to "promote the Progress of Science and useful Arts." U.S. Const. Art. I, § 8, Cl. 8.

20       Here, Plaintiff states in the SAC that the Accidental Livestream was created when "my

21  livestream software ***turned on of its own accord without me realizing it.***" Dkt. 55 (SAC) ¶ 22

22  (emphasis added). The software remained on for nearly two hours until he "realized it was on,"

23  at which point he turned it off. *Id.* During this time Plaintiff could be seen doing "***mundane,***

24  ***daily activities.***" *Id.* (emphasis added). "[T]he only interesting and memorable part of this

25  otherwise boring and ***contentless*** livestream" were "strange noises" that Plaintiff says he "***did***

26  ***not cause.***" *Id.* ¶ 23 (emphasis added). Thus by his own admission, the video lacks even the

27  _____

28  [5] Available at https://www.copyright.gov/comp3/chap300/ch300-copyrightable-authorship.pdf.

1   slightest creative spark necessary for it to be copyrightable.  It shows nothing other than

2   "mundane, daily activities"; it is "boring and contentless"; and the only notable content consists

3   of sounds that he "did not cause."  Plaintiff made no creative choices in generating this content,

4   whether in the form of directing the scenery or even turning on the stationary camera.  This is not

5   a case where an author intends to create a work but catches something by happenstance—such as

6   a photographer who snaps a photo at the same time as a strike of lightning, or a painter who slips

7   while holding the brush.  Rather, Plaintiff admits that the ***very making*** of the video was

8   accidental and done entirely without his knowledge.

9          Not only that, the fixation of the work was performed by a machine, not a human author.

10   Plaintiff admits that computer software – not him – "turned on [the livestream] ***of its own accord***

11   without me realizing it."  Dkt. 55 (SAC) ¶ 22 (emphasis added).  This fits neatly within the

12   Copyright Office's guidance that "works produced by a machine or mere mechanical process

13   that operates randomly or automatically without any creative input or intervention from a human

14   author" are not copyrightable.  Compendium of U.S. Copyright Office Practices § 313.2.  Indeed,

15   Plaintiff concedes in his Motion for Default Judgment that the "accidental" nature of his video

16   would "invalidate its copyright [] if the streaming software turned on, entirely of its own accord,

17   without any human input (knowing or otherwise) causing it to happen."  Dkt. 127-20 ¶ 42.  ***Yet***

18   ***that is precisely what he alleges to have happened in the complaint***, and those facts are

19   presumed to be true for purposes of a Motion for Default Judgment.

20          Plaintiff did not disclose these facts in his application to register the Accidental

21   Livestream with the Copyright Office—which he concedes in his Motion for Default Judgment.

22   RJN, Ex. A; *see also* Dkt. 127-19 ¶ 3.  In the application Plaintiff characterizes the video as a

23   "Dramatic Work."  He does not explain (among other things) that the "livestream software

24   turned on of its own accord without [him] realizing it," and he does not disclose that "the only

25   interesting and memorable part" of this otherwise "contentless" video was not caused by him.

26   Dkt. 55 (SAC) ¶¶ 22-23.  This is more than enough to overcome the "presumption of the

27   validity" of Plaintiff's copyright and to "deny the plaintiff's prima facie case of infringement."

28   *Lamps Plus*, 345 F.3d at 1144-47 (citation omitted) (finding copyright invalid notwithstanding its

1    registration with the Copyright Office, because information that was not disclosed in plaintiff's

2    application showed that the work lacked creativity).

3        What happened here is quite simple.  Plaintiff asserts a copyright in the Accidental

4    Livestream not because it reflects his creative expression, but because he finds it embarrassing

5    and wants to stop others from seeing it.  That is understandable, but it is not a proper invocation

6    of the copyright laws.  The Court should find that the Accidental Livestream is not

7    copyrightable, and on that basis dismiss this case.

8                             **CONCLUSION**

9        For the foregoing reasons, the Court should (1) permit Alphabet and YouTube to

10    intervene for purposes of opposing Plaintiff's Motion for Default Judgment against the

11    Individual Defendants; (2) deny Plaintiff's Motion for Default Judgment; and (3) dismiss this

12    case with prejudice.

13

14    Dated:  April 20, 2022                  Respectfully submitted,

15                             WILSON SONSINI GOODRICH & ROSATI

16                             Professional Corporation

17                             By:     *s/ Jason Mollick*

18                             Jason Mollick (*pro hac vice*)

19                             1301 Avenue of the Americas, 40th Floor

20                             New York, New York 10019
                                 Telephone: (212) 999-5800

21                             Facsimile: (212) 999-5899
                                 jmollick@wsgr.com

22                             *Counsel for Intervenors*

23                             *Alphabet Inc. and YouTube, LLC*

24

25

26

27

28

1  RYAN S. BENYAMIN, State Bar No. 322594
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
   633 West Fifth Street, Suite 1550
3  Los Angeles, California 90071
   Telephone: (323) 210-2900
4  Facsimile: (866) 974-7329
   rbenyamin@wsgr.com
5
6  JASON MOLLICK (*pro hac vice*)
   WILSON SONSINI GOODRICH & ROSATI
7  Professional Corporation
   1301 Avenue of the Americas, 40th Floor
8  New York, New York 10019
   Telephone: (212) 999-5800
9  Facsimile: (212) 999-5899
   jmollick@wsgr.com
10
11 *Counsel for Intervenors*
   *Alphabet Inc. and YouTube, LLC*
12
13                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF CALIFORNIA
14                            OAKLAND DIVISION
15
   DAVID A. STEBBINS,                )   CASE NO.: 4:21-cv-04184-JSW
16                                    )
            Plaintiff,               )   **REQUEST FOR JUDICIAL NOTICE**
17                                    )   **IN SUPPORT OF MOTION TO**
        v.                           )   **INTERVENE**
18                                    )
   KARL POLANO et al.,               )   Judge:  Hon. Jeffrey S. White
19                                    )   Date:  June 3, 2022
            Defendants.              )   Time:  9:00 AM
20                                    )   By videoconference
                                      )
21                                    )
                                      )   Action Filed:  June 2, 2021
22  _____ )
23
24         Pursuant to Rule 201 of the Federal Rules of Evidence, non-parties Alphabet Inc.

25 ("Alphabet") and YouTube, LLC ("YouTube") request that the Court take judicial notice of the

26 attached copy of Plaintiff David Stebbins's application to register his allegedly infringed

27 Accidental Livestream with the United States Copyright Office, which the undersigned counsel

28 obtained from the Copyright Office on April 8, 2022.  *See* <u>Exhibit A</u>.

1    A court "must take judicial notice if a party requests it and the court is supplied with the

2  necessary information." Fed. R. Evid. 201(c)(2).  "The court may judicially notice a fact that is

3  not subject to reasonable dispute because it … can be accurately and readily determined from

4  sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  Courts

5  routinely take judicial notice of matters of public record before administrative agencies,

6  including applications to register works with the Copyright Office.  *See, e.g.*, *Lewis v. Activision

7  Blizzard, Inc.*, 2012 U.S. Dist. LEXIS 151739, at *2 n.1 (N.D. Cal. Oct. 22, 2012) (taking

8  "judicial notice of [plaintiff's] applications for copyright registration which are matters of public

9  record and the subject of allegations in the complaint"); *Hyowon Elecs., Inc. v. Erom, Inc.*, 2014

10  U.S. Dist. LEXIS 190442, at *7 (C.D. Cal. May 15, 2014) ("[Plaintiff's] copyright registration

11  application and the copyright registration are certified copies from the United States Copyright

12  Office, and are matters of public record and the type of documents that the Court may judicially

13  notice under Rule 201(b)(2).").

14    Alphabet and YouTube request that the Court take judicial notice of the attached

15  application in connection with their accompanying Motion to Intervene.  The application is also

16  incorporated by reference and integral to the complaint.  *See* Dkt. 55 (SAC) ¶ 24 ("I have

17  registered this accidental livestream with the U.S. Copyright Office.").  Alphabet and YouTube

18  contend that the allegedly infringed work is not copyrightable because it lacks creativity and is

19  not a product of human authorship.  Although Plaintiff did register the video with the Copyright

20  Office, he admits in his complaint that the video was actually created when his "livestream

21  software turned on of its own accord without me realizing it.  It stayed on for nearly two hours

22  before I realized it was on and closed it down.  During this accidental livestream, my viewers

23  were able to see me engaging in mundane, daily activities[.]"  *Id.* ¶ 22.  Plaintiff adds that "the

24  only interesting and memorable part of this otherwise boring and contentless livestream" were

25  "strange noises" that he "did not cause."  *Id.* ¶ 23.

26    The attached application demonstrates that Plaintiff did not disclose any of this

27  information to the Copyright Office.  In the application Plaintiff characterizes the video as a

28  "Dramatic Work."  He does not explain (among other things) that the "livestream software

1   turned on of its own accord without [him] realizing it," and he does not disclose that "the only

2   interesting and memorable part" of this otherwise "contentless" video was not caused by him.

3   *Id.* ¶¶ 22-23.  This is more than enough to overcome the "presumption of the validity" of

4   Plaintiff's copyright and to "deny the plaintiff's prima facie case of infringement."  *Lamps Plus,*

5   *Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144-47 (9th Cir. 2003) (citation omitted)

6   (finding copyright invalid notwithstanding its registration with the Copyright Office, because

7   information that was not disclosed in plaintiff's application showed that the work lacked

8   creativity); *see also, e.g.*, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (finding that

9   courts may, even at the pleading stage, rely on facts "contained in materials of which the court

10  may take judicial notice"); *Chavez v. Wash. Mut. Bank*, 2013 U.S. Dist. LEXIS 79239, at *8-9

11  (N.D. Cal. June 5, 2013) ("[T]he Court need not accept as true allegations contradicted by

12  judicially noticeable facts, and the [c]ourt may look beyond the plaintiff's complaint to matters

13  of public record ….") (cleaned up).

14         Alphabet and YouTube are also prepared to provide a copy of the Accidental Livestream

15  if requested by the Court.  *Savage v. Council on Am.-Islamic Rels., Inc.*, 2008 U.S. Dist. LEXIS

16  60545, at *6 (N.D. Cal. July 25, 2008) (considering allegedly infringing content referenced in the

17  complaint on a motion for judgment on the pleadings as to fair use) (citing, e.g., *Daly v. Viacom,*

18  *Inc.*, 238 F. Supp. 2d 1118, 1121-22 (N.D. Cal. 2002) (considering television program referenced

19  in, but not attached to, the complaint)); *City of Inglewood v. Teixeira*, 2015 U.S. Dist. LEXIS

20  114539, at *2-6, *15-17 (C.D. Cal. Aug. 20, 2015) (considering, on a motion to dismiss, alleged

21  YouTube videos that criticized plaintiff even though the videos were not attached to the

22  complaint, and dismissing complaint on grounds that those videos constituted fair use); *Hughes*

23  *v. Benjamin*, 437 F. Supp. 3d 382, 386 n.1 (S.D.N.Y. 2020) (considering YouTube videos on

24  motion to dismiss on fair use grounds, because those videos had been "incorporated by reference

25  into the Complaint").  If requested, Alphabet and YouTube will follow the Court's direction as to

26  the manner in which the video should be submitted.

27

28

**SER178**

1  Dated:  April 20, 2022                    Respectfully submitted,

2                                            WILSON SONSINI GOODRICH & ROSATI
                                             Professional Corporation
3

4                                            By:    *s/ Jason Mollick*_____

5                                            Jason Mollick (*pro hac vice*)
                                             1301 Avenue of the Americas, 40th Floor
6                                            New York, New York 10019
                                             Telephone: (212) 999-5800
7                                            Facsimile: (212) 999-5899
                                             jmollick@wsgr.com
8

9                                            *Counsel for Intervenors*
                                             *Alphabet Inc. and YouTube, LLC*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SER179

# EXHIBIT A



# COPY OF E-FILE APPLICATION

NOTE: The attached Application Report is a true representation of the information submitted to the Copyright Office in association with the electronic application for registration of material identified as **ACCIDENTAL LIVESTREAM FROM APRIL 10, 2021** service number **SR 1-10499343793**. In the course of the Copyright Office's consideration of the application, the submitted information may have been amended in accordance with the wishes of the applicant. However any such amendments are not reflected in this Application Report.   Any such amendments will be reflected via a comparison between the Application Report and the Registration Certificate.   Amendments may also be reflected in the correspondence records associated with an application.

The attached Application Template is meant to reflect the fields that are available to be populated in the application process.   The purpose of the Application Template is not to attempt to indicate the exact language used on the date upon which the application in question was submitted.   Rather, the purpose is to portray, and in a general sense explain, the fields that may be populated in an online application.

**SER181**

**Registration #:**  \*-APPLICATION-\*
**Service Request #:**  1-10499343793

**Mail Certificate** _____

David Anthony Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601 United States

**Priority:**  Routine          **Application Date:**  May 25, 2021

## Correspondent _____

**Name:**  David Anthony Stebbins
**Email:**  acerthorn@yahoo.com
**Address:**  123 W. Ridge Ave.
APT D
Harrison, AR 72601 United States

**SER182**

Registration Number

# *-APPLICATION-*

**Copyright Registration for One Work by One Author**
Registration issued pursuant to 37 CFR §202.3

## Title _____

Title of Work: Accidental Livestream from April 10, 2021

## Completion/Publication _____

Year of Completion: 2021
Date of 1st Publication: April 10, 2021
Nation of 1st Publication: United States

## Author _____

- Author: Acerthorn
Author Created: Dramatic Work
Citizen of: United States
Domiciled in: United States
Pseudonymous: Yes

## Copyright Claimant _____

Copyright Claimant: Acerthorn
123 W. Ridge Ave., APT D, Harrison, AR, 72601, United States

## Certification _____

Name: David Stebbins, Author/Owner
Date: May 25, 2021

Copyright Office notes: Regarding basis for registration: A work may be registered with the Single
Application only if the following requirements have been met: 1) The
registration covers one work; 2) The work must be created by one individual; 3)

Page 1 of 2

**SER183**

All of the material contained within the work must be created by the same individual; 4) The author and the owner of the work must be the same person, and that person must own all of the rights in the work; 5) The work cannot be a work made for hire.

**SER184**

Case 4:21-cv-04184-JSW   Document 138-3   Filed 04/20/22   Page 1 of 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| DAVID A. STEBBINS, | CASE NO.: 4:21-cv-04184-JSW |
| Plaintiff, | **[PROPOSED] ORDER** |
| v. | Judge: Hon. Jeffrey S. White |
| KARL POLANO et al., | Action Filed: June 2, 2021 |
| Defendants. | |

Upon consideration of (1) Plaintiff's Motion for Default Judgment as to Defendants Karl Polano, Raul Mateas, and Frederick Allision; (2) the Motion to Intervene by non-parties Alphabet Inc. ("Alphabet") and YouTube, LLC ("YouTube"), their accompanying Request for Judicial Notice, and the Exhibit thereto; and (3) all other matters of which this Court may take judicial notice, the pleadings, files, and records in this action, and such other argument as has been heard by the Court; and upon good cause showing, it is hereby ORDERED as follows:

(1) The Court GRANTS Alphabet and YouTube permission to intervene in this action for purposes of opposing Plaintiff's Motion for Default Judgment;

(2) The Court DENIES Plaintiff's Motion for Default Judgment on the grounds that the allegedly infringed work in suit – Plaintiff's "Accidental Livestream" recorded on April 10, 2021 – is not copyrightable because it lacks creativity and human authorship, *see, e.g.*, 17 U.S.C. § 102(a); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991); and therefore

(3) The Court DISMISSES this action WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: _____

_____
HON. JEFFREY S. WHITE
United States District Judge

[PROPOSED] ORDER                                   CASE NO.: 4:21-CV-04184-JSW

**SER185**

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                                PLAINTIFF

VS.                                        Case 3:21-cv-04184-JSW

KARL POLANO, et al                                                       DEFENDANTS

**MOTION TO CLARIFY OR IN THE ALTERNATIVE FOR LEAVE TO FILE
SUPPLEMENTAL BRIEF**

      Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Motion to Clarify whether the Court will consider the arguments contained in the corporate defendants' motion to dismiss. Depending on what clarification is provided, I may seek leave to file a supplemental brief to my Motion for Default Judgment.

1.      On April 12, 2022, this Court acknowledged my absolute and un-reviewable right to voluntarily dismiss parties who have not yet filed either an answer or a motion for summary judgment. See **Dkt. 134**. However, at the same time, the Court admonished me for my alleged "efforts to manipulate the litigation process" and so-called "blatant gamesmanship."

2.      For the record, I just want to reiterate that I respectfully disagree with the Cour'ts assessment of my behavior. I did not issue that voluntary dismissal in an attempt to "game" the system. I did it to facilitate a more timely entry of default judgment. See **Exhibit A** ("If you had only threatened to issue that challenge in the Rebolo case, I'd probably tell you to bring it on").

3.      I only added the corporate defendants to the case in the first place as *nominal* defendants. If they had continued to act like nominal defendants, and not get actively involved in the case, I would have had no need to dismiss them from the case. It was only because they started to become litigious themselves that I had no choice but to dismiss them in order to focus on the

Case 3:21-cv-04184-JSW                                        MOTION FOR LEAVE
                                                             TO FILE SUPPLEMENT

individual defendants, who *should* have been the focus all along. After all, by the corporate defendants' own admission, "This is a Dispute Between Mr. Stebbins and the Individual Defendants." See **Dkt. 129, p. 11, Line 1**.

4.      I was never worried about the challenge to the validity of my copyright for its own sake. As I demonstrated when I attached **Exhibit S** to the motion for default judgment, I had an argument, with supporting evidence and legal authority, ready to be filed if a challenge to the validity of my copyright was ever validly made (the key word being "validly").

5.      When filing his response in opposition to my Motion to Strike, counsel for the corporate defendants urged the Court to nonetheless consider the challenge they made to the validity of my copyright, despite those arguments being improperly submitted to the Court. See **Dkt 131**.

6.      When issuing its order striking the Motion to Dismiss, the Court did not specify whether it would consider those arguments or not.

7.      I therefore have two questions that I wish for the Court to give unambiguous answers to.

- First, will the Court consider the challenges to the validity of my copyright that were improperly submitted by the corporate defendants?

- If the answer to the first question is "no," then does that mean that all of the factual allegations in the Second Amended Complaint except the extent of damages – *including* the validity of the copyright – are still presumed to be true, pursuant to the precedent of TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987)?

8.      I believe the answer to the first question should be "no." After all, as I've mentioned earlier, the corporate defendants had absolutely no right to file that motion after they've already been dismissed (and yes, they had sufficient notice that the dismissal had occurred that they could have put off filing their motion; they made the conscious choice to file it anyway). If the corporate defendants had done what they were already required to do, and abstain from filing anything at all, then these arguments would never have reached the Court's ear.

9.      However, for better or worse, now that they have reached the Court's ear, there is the possibility that the Court will consider the arguments, just like how, in a jury trial, an attorney or witness may try to throw some evidence or testimony out there, in the hopes that they can get it

Case 3:21-cv-04184-JSW

MOTION FOR LEAVE
TO FILE SUPPLEMENT

out before the judge even has the chance to strike it from the record, hoping that, even if the evidence is stricken from the record, it can never be stricken from the jurors' memories and therefore may still be considered by the jury. The corporate defendants' behavior seem like the equivalent of that, attempting to plant arguments in the Court's mind even if they aren't technically on the record.

10.     If the Court either plans to consider the corporate defendants' arguments, or for any other reason intends to hold the validity of my copyright in the slightest dispute while considering the motion for default judgment, then I would humbly request leave of the Court to file a supplemental brief, responding substantively to the corporate defendants' challenges to the validity of the copyright. When I filed the motion for default judgment, I attached an incomplete sample of my arguments as Exhibit S. If it is necessary, I can file the whole thing.

11.     One thing I absolutely feel the Court should not do, however, is simply declare the copyright invalid for reasons that are no longer even on the record, and give me no opportunity to argue in defense of the copyright. That would be an egregious violation of my constitutional right to due process. Even if the Court is upset at my supposed "gamesmanship" (which, again, I did not issue that voluntary dismissal in order to "game" anything, but rather to prevent an otherwise unnecessary delay), the Court nonetheless acknowledged that I am plainly allowed to do what I did. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." See Bordenkircher v. Hayes, 434 US 357, 363 (1978).

12.     However, I believe that what the Court *should* do is simply answer "no" and "yes" to the two questions above, respectively. The motion to dismiss was improperly filed. The corporate defendants had, not much, but enough notice of the dismissal that they could have abstained from filing the motion. It was filed in blatant violation of the dismissal. Therefore, the Court should do whatever it takes to cast the contents therein from its mind, and proceed to rule on the motion for default judgment like he would any other, otherwise-unobstructed motion for default judgment, including assuming the copyright's validity to be unchallenged. Otherwise, what even was the point of striking the motion in the first place? This is, in my opinion, the only thing the

Case 3:21-cv-04184-JSW                                                    MOTION FOR LEAVE
                                                                          TO FILE SUPPLEMENT

**SER188**

Court can do that is truly just, as it is the only thing the Court even *could* have done if the corporate defendants had never poisoned the well with their improper motion in the first place.

13.      Wherefore, premises considered, I respectfully pray that the Court clarify its position and intentions moving forward, and if those intentions are not wholly consistent with my right to voluntarily dismiss the corporate defendants and my rights as a plaintiff whose defendants have been entered in default, then to grant me leave to answer those challenges with a supplemental brief.

So requested on this, the 13th day of April, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

MOTION FOR LEAVE
TO FILE SUPPLEMENT

## Yesterday's offer

From: acerthorn (acerthorn@yahoo.com)

To:     jmollick@wsgr.com

Date:  Wednesday, April 6, 2022, 09:44 AM CDT

Dear Mr. Mollick,

I am willing to accept your offer from yesterday (where you will not seek attorneys fees or challenge the validity of the copyright of the April 10 stream, as well as not reinstating the video I complained about in Dkt. 100, ¶ 4 in the Polano case, even if the Third Amended Complaint doesn't contain that claim so I don't have to re-serve him), PROVIDED that I have a formal offer with actual terms on the table. But before you send me one, I want to make it explicitly clear where we stand on this issue.

Your threat to challenge the validity of the copyright of the April 10 stream in the Polano case is far more concerning to me than the offer to waive attorneys fees, but not for the reasons you'd think. Rather, I'm worried that you threatened to issue that challenge in the Polano case, rather than the Rebolo case.

I honestly consider it rather below the belt that, as soon as I get default against all three individual defendants, you throw out a threat to bring this case - which is now on its deathbed - back from the dead. You are, in essence, threatening to heavily extend this case when it was otherwise close to wrapping up.

THAT is the prejudice I seek to avoid, here. If you had only threatened to issue that challenge in the Rebolo case, I'd probably tell you to bring it on! Considering how much I was able to tear your fair use defense to shreds (criticism is literally the ONLY thing these people have; check out this clip I found last night for details: https://www.youtube.com/clip/UgkxfC62VTSsxL66AaibJ7-3P-zxGCuQqFJU), it honestly seems like you're issuing this below-the-belt threat because you know deep down that's really the only ammunition you've got.

If your primary grounds for challenging the validity of the April 10 copyright is identical to those given by SidAlpha, then I'm not afraid of that challenge at all. In fact, I have a motion for partial summary judgment on that issue *already* primed and ready to go. All I need to do is update the respective dates of filing (e.g. "So requested on this, the _____th day of _____, 2022" and so on and so forth), and it's ready to be filed. Hell, I've been preparing for this challenge since I talked with *Facebook* about settling with them!

And let me tell you: I've got some arguments of law that you definitely do NOT want to end up on the books!

I will not tell you exactly what my legal strategy is to dispose of that challenge. I've since learned to not let my opponents see my cards. But I will at least give you a clue.

First, bear in mind that I still have one more amended complaint that I need to file. When I

filed **Dkt. 100** (my most recent motion for leave to file amended complaint), I never actually attached a copy of the new Third Amended Complaint. This means that I can still file whatever I want when the time comes.

So that being said, here is my "clue" as to what my legal strategy is to dispose of this challenge:

First, take a look at Dkt. 55, ¶ 22 in the Polano case, vs. Dkt. 15, ¶ 20 in the Rebolo case, side by side.

Second, consider ALL of the following legal authorities in unison:

- Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997)
- Loux v. Rhay, 375 F. 2d 55, 57 (9th Cir. 1967)
- Haines v. Kerner, 404 US 519 (1972)
- 17 USC § 411(b)(1)(A)
- 17 USC § 410(c)
- Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 US 574 (1986)

Maybe with this two-part clue, you can get sort of a grasp as to what my strategy is to deal with this challenge to the validity, and you can maybe see that your prospects of invalidating the copyright of the April 10 stream, whether in the Polano case or the Rebolo case, aren't quite as slam-dunk as you'd like them to be.

So please, hurry up with that formal offer, so we can get this show on the road.

Sincerely,
David Stebbins

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID A. STEBBINS,<br><br>             Plaintiff,<br><br>    v.<br><br>KARL POLANO, et al.,<br><br>             Defendants. | Case No.  21-cv-04184-JSW<br><br>**ORDER REGARDING NOTICE OF VOLUNTARY DISMISSAL AND STRIKING MOTIONS**<br><br>Re: Dkt. No. 129, 130, 133 |

On April 11, 2022, Plaintiff filed a notice of voluntary dismissal without prejudice as to Defendants Alphabet Inc., Discord Inc., and Amazon.com Inc. pursuant to Federal Rule of Civil Procedure 41(a)(1).  Shortly thereafter, the Corporate Defendants filed a joint motion to dismiss. (Dkt. No. 129.)  Plaintiff then filed a motion to strike the motion to dismiss in light of his notice of voluntary dismissal.  (Dkt. No. 130.)  Corporate Defendants filed a response to Plaintiff's motion to strike.  (Dkt. No. 131.)  Plaintiff filed a reply followed by a motion styled as an "Emergency Motion to Expedite" the motion to strike.  (Dkt. Nos. 132, 133.)

A dismissal under Rule 41(a)(1) is effective on filing, and the Court lacks the authority to disregard it or place a condition on the dismissal.  *Com. Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1078 (9th Cir. 1999).  For these reasons, this action is terminated as to the Corporate Defendants, and the Court STRIKES Defendants' motion to dismiss.

However, the Court does not endorse Plaintiff's efforts to manipulate the litigation process and his blatant gamesmanship.  Should Plaintiff continue to dismiss and refile cases in bad faith to obtain a different result, he risks being declared a vexatious litigant in this district.

//

//

**SER192**

Finally, the Court STRIKES Plaintiff's "Emergency Motion to Expedite" for failure to comply with the Civil Local Rules. *See* N.D. Civ. L.R. 6-1.

**IT IS SO ORDERED.**

Dated: April 12, 2022

JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California

2

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                    PLAINTIFF

VS.                          Case 3:21-cv-04184-JSW

KARL POLANO, et al                                 DEFENDANTS

### REPLY TO [131] OPPOSITION TO [130] MOTION TO STRIKE

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Reply to the corporate defendants' Opposition to my Motion to Strike.

### FACTS

1.      On April 11, 2022, I issued a Notice of Voluntary Dismissal in the above-styled action, seeking to dismiss the corporate defendants without prejudice from this case.

2.      The Notice of Voluntary Dismissal was filed at 12:57PM in the pacific time zone. Twenty-three minutes later, at 1:20PM PST, the corporate defendants filed a joint motion to dismiss. This was 23 minutes after I had filed my Notice of Voluntary Dismissal. While it is a short time after the voluntary dismissal, it is not such a short time afterwards that the corporate defendants had no opportunity to notice the voluntary dismissal and abstain from filing their motion accordingly. While preparing a motion to dismiss may take several billable hours for attorneys, actually *filing* it on ECF only takes about 2-3 minutes. The odds are a million to one that the corporate defendants knew full well that they were already dismissed from the action.

3.      Despite knowing that they were voluntarily dismissed from the action, the corporate defendants nonetheless proceeded to file their motion, knowing full well they no longer had the standing to do so.

4.      I then moved to strike the corporate defendants' motion to dismiss, arguing that, since it was filed after the Notice of Voluntary Dismissal, it was filed without proper standing or

authority. It is therefore not properly before the Court and should not be considered.

5.      The corporate defendants proceeded to file a frivolous opposition to the Motion to Strike, claiming that the non-suit was filed for an improper purpose and asking the Court to still consider the contents of their untimely motion, neither of which the Court has any authority or discretion to do.

**ARGUMENT**

6.      A nonsuit under Rule 41(a)(1)(A)(ii) is absolute and non-reviewable. Its effect is immediate and neither the Court nor the dismissed defendants get any say in the matter. This was made clear in the 9th Circuit case of Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074 (9th Cir. 1999), which states …

> "a court has no discretion to exercise once a Rule 41(a)(1) dismissal is filed.
>
> It is well settled that under Rule 41(a)(1)(i), a plaintiff has an absolute right to voluntarily dismiss his action prior to service by the defendant of an answer or a motion for summary judgment.
>
> The filing of notice itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court. There is not even a perfunctory order of court closing the file. Its alpha and omega was the doing of the plaintiff alone. He suffers no impairment beyond his fee for filing.
>
> Because the dismissal is effective on filing and no court order is required, the filing of a notice of voluntary dismissal with the court automatically terminates the action as to the defendants who are the subjects of the notice. The effect is to leave the parties as though no action had been brought." See *id* at 1077 (citations and quotations omitted).

7.      The absoluteness of this right means that the Court *must* (not just should) deny the corporate defendants any and all relief which they seek in their opposition.

8.      The corporate defendants argue that I issued the voluntary dismissal for an improper purpose. But that is utterly irrelevant. My right to voluntary dismissal is *absolute*. It does not matter if I did it for an improper purpose, because the law does not entertain the Plaintiff's motives at this stage. The closest you can possibly get to a motive that Rule 41 frowns upon is

"forum-shopping," and even then, the only deterrent to such a motive is Rule 41(d), which only comes into play after the new case is already filed. Other than that, the plaintiff's motive for the voluntary dismissal is utterly irrelevant.

9.      They want the Court to still consider the motion to dismiss? Well, the Court cannot do that, because that would effectively give the court some discretion to exercise, and the Court is supposed to have none. The Motion to Dismiss was filed in violation of a notice of voluntary dismissal and therefore is improper. Therefore, it must be struck and its contents must not be considered. Otherwise, the defendants would theoretically have a means of "fanning the ashes of [this] action into life," and that is not allowed.

10.     It is likewise the case when the defendants ask for leave to re-join the party as intervenor defendants. Parties who have previously been voluntarily dismissed from the action must be irretrievably gone from the action. If they could simply re-join the case in *any* capacity, that would effectively give them a means of fanning the ashes of the case back into life, or "extinguishing or circumscribing" the dismissal by adversary or by court, which is absolutely not allowed. Ever. For any reason.

11.     Therefore, per the absoluteness of my right to a nonsuit, the Court *must* (not just should) do all of the following:

- Strike the Motion to Dismiss in its entirety, as it was filed after the notice of voluntary dismissal and therefore was improper.

- Not consider any portion of the motion to dismiss, since it is black letter law that the Court cannot consider any arguments not properly filed on the record (which, once the motion to dismiss inevitably gets stricken, the contents thereof, they will no longer be on the record).

- Deny the corporate defendants any leave to re-appear in the case in any capacity.

- Award costs incurred for their frivolous delay.

12.     To do any less would water down, and effectively extinguish or circumscribe by adversary or court, my right to a nonsuit.

13.     For the record, I still feel that my copyright is valid, and if the Court insists on considering the motion to dismiss, I will provide a memorandum providing rebuttal arguments.

Case 3:21-cv-04184-JSW                                    MOTION TO STRIKE

As I said in the voluntary dismissal, this is not a surrender, but a tactical retreat. I can indeed defend the validity of the copyright if I need to. But I should not need to, at least not at the moment. The motion to dismiss was filed in blatant violation of the voluntary dismissal and therefore should be stricken utterly. Without that motion, the Court is without any proper arguments with which it can entertain a challenge to the validity of the copyright. It is black letter law that a failure to properly raise either an affirmative defense or negative defense (such as a challenge to the validity of the copyright) generally results in forfeiture of that defense.

14.     In short, the corporate defendants are understandably disappointed by the fact that I played this trump card, stripping them of their opportunity to litigate the case with me. Their goal was to strip me of the right to pursue this copyright in future by creating res judicata against me, and they are disappointed that I swooped in at the last minute and denied them that opportunity.

15.     I even stated that I would re-file this claim in the near future. I just didn't want to delay the entry of default judgment, and the corporate defendants are understandably disappointed that I thought of this tactic.

16.     But at the end of the day, it ultimately does not matter. Rule 41 purports on its face to give the Plaintiff all the power. The voluntary dismissal purports on its face to give the Plaintiff a powerful cudgel that he has the absolute right to wield however he sees fit (albeit only once per party per claim). Even forum-shopping – the one motive that public policy actually frowns upon – is not a *disallowed* motive, per se. The plaintiff still has the absolute and non-reviewable right to nonsuit the case even for that motive.

17.     So at the end of the day, the corporate defendants have no case to plead and that's simply all there is to it. The motion to dismiss should be stricken in its entirety, and the Court should pledge that it will not consider any of the contents therein.

So requested on this, the 12th day of April, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

Case 3:21-cv-04184-JSW                                    MOTION TO STRIKE

1  RYAN S. BENYAMIN, State Bar No. 322594
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
   633 West Fifth Street, Suite 1550
3  Los Angeles, California 90071
   Telephone: (323) 210-2900
4  Facsimile: (866) 974-7329
   Email: rbenyamin@wsgr.com
5

6  JASON MOLLICK (*pro hac vice*)
   WILSON SONSINI GOODRICH & ROSATI
7  Professional Corporation
   1301 Avenue of the Americas, 40th Floor
8  New York, New York 10019
   Telephone: (212) 999-5800
9  Facsimile: (212) 999-5899
   Email: jmollick@wsgr.com
10

11 *Counsel for Defendant Alphabet Inc.*

12

13                  UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
14                        OAKLAND DIVISION

15

16 DAVID A. STEBBINS,                  )  CASE NO.: 4:21-cv-04184-JSW
                                       )
17          Plaintiff,                 )  **JOINT RESPONSE TO**
                                       )  **PLAINTIFF'S MOTION TO**
18     v.                              )  **STRIKE THE CORPORATE**
                                       )  **DEFENDANTS' MOTION TO**
19 KARL POLANO et al.,                 )  **DISMISS**
                                       )
20          Defendants.                )  Judge:  Hon. Jeffrey S. White
                                       )
21                                     )
                                       )
22 _____ )

23

24

25

26

27

28

1    Defendants Alphabet Inc. ("Alphabet"), Amazon.com, Inc. ("Amazon"), and Discord Inc.

2  ("Discord") (collectively, the "Corporate Defendants") respectfully respond to Plaintiff David

3  Stebbins's Motion to Strike the Corporate Defendants' Joint Motion to Dismiss, which they filed

4  at virtually the same time as Plaintiff's Notice of Voluntary Dismissal.  *See* Dkt. 128 (Plaintiff's

5  Notice of Voluntary Dismissal); Dkt. 129 (Corporate Defendants' Joint Motion to Dismiss); Dkt.

6  130 (Plaintiff's Motion to Strike).  Because Plaintiff's dismissal was for the strategic purpose of

7  obtaining a default judgment that he could leverage in a related action against the Corporate

8  Defendants, the Court should simply deny the pending Motion for Default Judgment.  A grant of

9  default judgment could lead to inconsistent results, which the Court previously recognized as

10  sufficient for denial.  *See* Dkt. 99 at 3 (finding that "denial of a default judgment motion is

11  necessary to avoid an inconsistent result").

12    Alternatively, and in the event the Court does not agree with the foregoing, the Court

13  should consider the arguments raised in the Motion to Dismiss (namely, that Plaintiff does not

14  have a valid copyright) when it rules on the pending Motion for Default Judgment, Dkt. 127.[1]

15  Specifically, Plaintiff admits that he voluntarily dismissed the Corporate Defendants, and is

16  moving to strike their motion, in an attempt to prevent the Court from hearing dispositive

17  arguments and evidence concerning the invalidity of his alleged copyrighted video.  That video

18  is not only at issue in this action which remains pending against the Individual Defendants, but

19  also in the related action (*Stebbins v. Rebolo et al.*, Case No. 4:22-cv-00546-JSW) where the

20  Corporate Defendants and/or their subsidiaries are named (but not yet served) in the Amended

21  Complaint that Plaintiff filed after the Court stayed the case at Plaintiff's request.  Related Case

22  Dkt. 14.  The Court stayed the *Rebolo* case because "a ruling in [this first] case will be relevant

23  and potentially fully dispositive in the [second] case."  *Id.*  Thus, because any ruling in this case

24  will necessarily impact overlapping issues in the related case, the Court should consider the

25  arguments set forth in the Corporate Defendants' Motion to Dismiss concerning the invalidity of

26  _____

27    [1] To be clear, the Corporate Defendants defer to the Court on whether additional briefing and
adjudication of the Joint Motion to Dismiss is necessary at this time.  Absent further instruction

28  from the Court, they presume no further briefing on the Joint Motion to Dismiss is required.

1   Plaintiff's alleged copyright, and on that basis deny Plaintiff's Motion for Default Judgment

2   against the Individual Defendants.  Indeed, even if the Court is inclined to strike the Corporate

3   Defendants' Motion to Dismiss, those Defendants will still be entitled to intervene as to the

4   copyrightability defense in this case, given that the issue overlaps in the related case where they

5   remain as defendants.  *See* Fed. R. Civ. P. 24(b)(1)(B) ("On timely motion, the court may permit

6   anyone to intervene who … has a claim or defense that shares with the main action a common

7   question of law or fact.").

8         As the Corporate Defendants explained in their Motion to Dismiss, Plaintiff is a

9   "vexatious" litigant with a long and well-documented history of filing frivolous lawsuits and

10   hundreds of repetitive, baseless motions in those respective cases.  *Stebbins v. Stebbins*, 2013

11   U.S. Dist. LEXIS 93528 (W.D. Ark. July 3, 2013); *see also* Dkt. 129 at 2-3 & n.1.  This lawsuit,

12   and the related case, are just the latest episodes.  As Plaintiff made clear in his Notice of

13   Voluntary Dismissal, his reason for abruptly dismissing the Corporate Defendants on the day

14   their responses were due is because Plaintiff was concerned that the Defendants would, in their

15   motion, expose the fact that the sole alleged copyrighted video at issue in this case is actually

16   invalid.  *See* Dkt. 128.  Defendants explain in their motion that the "Accidental Livestream" is

17   not copyrightable because it lacks creativity and human authorship, based on facts admitted in

18   the complaint.  Dkt. 129 at 5-7.  Defendants also provided a copy of Plaintiff's application to

19   register the video with the United States Copyright Office, which reveals that he did not disclose

20   the true nature and circumstances of the video to the Copyright Office.  Dkt. 129-1.  This

21   necessitates dismissal of Plaintiff's entire copyright lawsuit with prejudice – not only against the

22   Corporate Defendants, but also against the Individual Defendants.  It also necessitates dismissal

23   of many of Plaintiff's claims in the related case, which largely concerns infringements of the

24   same video and similar claims against the same Corporate Defendants.  *See* Related Case Dkt. 15

25   ¶¶ 20-25.

26         Realizing that the Corporate Defendants would bring these facts to the Court's attention,

27   Plaintiff emailed the undersigned counsel for Alphabet shortly before the Corporate Defendants

28   filed their Motion to Dismiss.  In that email Plaintiff taunted that he could hide the issue from the

1   Court's attention and secure an unopposed default judgment against the Individual Defendants,

2   simply by dismissing the Corporate Defendants voluntarily on the day they file their motion.

3   And in the process, he can require the Corporate Defendants to expend even more legal fees by

4   relitigating the same issue in the related case:

5           I could simply ... dismiss your client from the Polano case! If I did
            that, the dismissal would be without prejudice, allowing me to re-
6           file the request for prospective injunctive relief as part of the
            Rebolo case. So I wouldn't even be missing out on that injunction.
7           The[n], you won't have a choice but to wait until the Rebolo case
            to challenge the validity of the copyright, at which point you will
8           get nowhere with that challenge because my copyright is indeed
            valid. If I dismissed Alphabet as a party, you would likely not get
9           your attorneys [sic] fees, for the reasons I set forth last weekend.[2]

10

11          Minutes later, at the same time as the Corporate Defendants were in the process of filing

12   their Motion to Dismiss, Plaintiff filed his Notice of Voluntarily Dismissal. Dkt. 128. In this

13   Notice he admits that he is dismissing the Corporate Defendants because he does not want the

14   trouble of defending his copyright, which he claims "would only result in tedious delays in a

15   case where I was about to get a default judgment otherwise." Dkt. 128 ¶ 1. Plaintiff then says

16   that he intends to re-litigate the same issue against the same Corporate Defendants "in the near

17   future," after he gets an unopposed default judgment:

18          This is not a surrender. This is a tactical retreat. I wish to have this
            action dismissed *without prejudice*, so I can re-file the case again,
19          seeking to obtain the prospective injunctive relief under 17 USC §
            512(j) in the near future. This is just being done so that Alphabet
20          (and possibly the other nominal defendants) cannot delay this case
            that is already in the eleventh hour, just out of sheer pettiness.
21

22   *Id.* ¶ 3 (emphasis in original). All of this is emblematic of Plaintiff's years-long abuse of the

23   court system. The Court should not countenance Plaintiff's attempt to evade its consideration of

24   an important issue that remains dispositive in this case and much of the related case.

25

26

27          [2] We do not attach the remainder of this email correspondence because prior communications
28   in the thread contain confidential settlement communications.

1   Accordingly, even if it is no longer necessary to hear the Corporate Defendants' Motion

2   to Dismiss, the Court should still review and consider certain arguments and evidence in that

3   motion to the extent they remain relevant to Plaintiff's Motion for Default Judgment against the

4   Individual Defendants.  Specifically, the Court should consider (1) Plaintiff's history as a

5   vexatious litigant [Dkt. 129 at 2-3 & n.1] and (2) the non-copyrightability of the Accidental

6   Livestream that was allegedly infringed by the Individual Defendants [*id.* at 5-7; *id.* at 4:2-10;

7   Dkt. 129-1].  The remaining arguments concerning Plaintiff's claim of injunctive relief against

8   the Corporate Defendants are now moot and need not be considered at this time.

9

10   Dated: April 11, 2022

11

12   For Alphabet Inc., Defendant                          For Amazon.com, Inc., Defendant

13   *s/ Jason Mollick*                                     *s/ Sanjay Nangia*
     Jason Mollick (*pro hac vice*)                        Sanjay Nangia

14   WILSON SONSINI GOODRICH &                              DAVIS WRIGHT TREMAINE LLP
     ROSATI, P.C.                                          505 Montgomery Street, Suite 800

15   1301 Avenue of the Americas, 40th Floor               San Francisco, California 94111
     New York, New York 10019                              Telephone: (415) 276-6577

16   Telephone: (212) 999-5800                             Email: sanjaynangia@dwt.com
     Email: jmollick@wsgr.com

17

18   For Discord Inc., Defendant

19

20   *s/ James Orenstein*
     James Orenstein (*pro hac vice*)

21   ZWILLGEN PLLC
     183 Madison Avenue, Suite 1504

22   New York, New York 10016
     Telephone: (646) 362-5590

23   Email: orenstein@zwillgen.com

24

25

26

27

28