**23-15531**

IN THE

# United States Court of Appeals

**FOR THE NINTH CIRCUIT**

◆◆

DAVID ANTHONY STEBBINS, DBA Acerthorn,

*Plaintiff-Appellant,*

—v.—

KARL POLANO, DBA Sofiannp; FREDERICK ALLISON,
DBA InitiativeKookie; RAUL MATEAS, DBA TGP482;
ALPHABET, INC.; DISCORD, INC.; AMAZON.COM, INC.; YOUTUBE, LLC,

*Defendants-Appellees,*

—and—

FACEBOOK, INC.,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

**SUPPLEMENTAL EXCERPTS OF RECORD
VOLUME III OF III
(Pages SER202 to SER411)**

JEREMY P. AUSTER
WILSON SONSINI GOODRICH
 & ROSATI
1301 Avenue of the Americas,
 40th Floor
New York, New York 10019
(212) 999-5800

*Attorneys for Defendants-Appellees
 Alphabet, Inc. and YouTube, LLC*

# SER203

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                            PLAINTIFF

VS.                            Case 3:21-cv-04184-JSW

KARL POLANO, et al                                         DEFENDANTS

### MOTION TO STRIKE [129] MOTION TO DISMISS

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Motion to Strike **Dkt. 129**, the corporate defendants' Motion to Dismiss.

1. Moments before the individual defendants' filed their Motion to Dismiss, I filed a Notice of Voluntary Dismissal in the above-styled action. See **Dkt. 128**. This renders moot the corporate defendants' motion.

2. The motion was filed before the corporate defendants had filed their answer or motion for summary judgment. Therefore, pursuant to FRCP 41(a)(1)(A)(i), the dismissal is automatic. The Court has no discretion to refuse it. See Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074, 1076 (9th Cir. 1999) ("a Rule 41(a)(1) dismissal, once filed, automatically terminates the action, and thus federal jurisdiction, without judicial involvement").

3. Therefore, the Motion to Dismiss should be struck, and its contents should not be considered moving forward.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

1  SANJAY M. NANGIA (State Bar No. 264986)
   DAVIS WRIGHT TREMAINE LLP
2  505 Montgomery Street, Suite 800
   San Francisco, California 94111
3  Telephone:    (415) 276-6500
   Facsimile:    (415) 276-6599
4  Email:  sanjaynangia@dwt.com
5
6  Attorneys for Defendant
   AMAZON.COM, INC.
7
   [Additional Counsel on Signature Page]
8
9
10           **IN THE UNITED STATES DISTRICT COURT**
11          **THE NORTHERN DISTRICT OF CALIFORNIA**
12                   **OAKLAND DIVISION**
13

| | |
|---|---|
| 14  DAVID A. STEBBINS, | Case No. 4:21-cv-04184-JSW |
| 15         Plaintiff, | **CORPORATE DEFENDANTS' JOINT** |
| 16      v. | **NOTICE OF MOTION AND MOTION** |
| | **TO DISMISS** |
| 17  KARL POLANO, et al., | |
| | Date:     May 27, 2022 |
| 18         Defendants. | Time:     9:00 a.m. |
| 19 | Dept.:    Courtroom 5 |
| 20 | Action Filed:  June 2, 2021 |

21
22
23
24
25
26
27
28

1
**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS:**

2
    **PLEASE TAKE NOTICE** that on May 27, 2022, at 9:00 a.m., or as soon thereafter as the

3
matter may be heard, in the United States District Court, Northern District of California, Oakland

4
Courthouse, Courtroom 5 – 2nd Floor, located at 1301 Clay Street, Oakland, California 94612,

5
before the Honorable Jeffrey S. White, Amazon.com, Inc. ("Amazon"), Alphabet Inc.

6
("Alphabet"), and Discord Inc. ("Discord") (collectively, the "Corporate Defendants") will and

7
hereby do move the Court for an order dismissing Plaintiff David A. Stebbins' claims with

8
prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  This Motion is based on this

9
Notice of Motion, the concurrently filed Memorandum of Points and Authorities, the concurrently-

10
filed Request For Judicial Notice and accompanying Exhibits ("RJN"), all other matters of which

11
this Court may take judicial notice, the pleadings, files, and records in this action, and on such

12
other argument as may be heard by this Court.

13

14
Dated: April 11, 2022                Respectfully submitted,

15
For Discord, Inc., Defendant        For Amazon.com, Inc., Defendant

16
*s/ James Orenstein*               *s/ Sanjay Nangia*

17
James Orenstein (*pro hac vice*)       Sanjay Nangia
ZWILLGEN PLLC             DAVIS WRIGHT TREMAINE LLP

18
183 Madison Ave., Suite 1504      505 Montgomery Street, Suite 800
New York, NY 10016          San Francisco, CA 94111

19
Telephone: (646) 362-5590       Telephone: (415) 276-6577
Email: Jamie.Orenstein@zwillgen.com  Email: sanjaynangia@dwt.com

20

21
For Alphabet Inc., Defendant

22
*s/ Jason Mollick*

23
Jason Mollick (*pro hac vice*)
WILSON SONSINI GOODRICH

24
& ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor

25
New York, NY 10019
Telephone: (212) 999-5800

26
E-Mail: jmollick@wsgr.com

27

28

**SER206**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION .......................................................................................... 1

II.   RELEVANT FACTS ...................................................................................... 2

      A.    Mr. Stebbins is a Vexatious Litigant and his Suits Have Been Deemed Frivolous ........................................................................................... 2

      B.    This is a Dispute Between Mr. Stebbins and the Individual Defendants. ............... 4

III.  LEGAL STANDARD .................................................................................... 5

IV.   LEGAL ARGUMENT ................................................................................... 5

      A.    The Accidental Livestream is Not Copyrightable. ................................... 5

      B.    Mr. Stebbins Has Not Stated an Actual Claim Against Any Corporate Defendant. .......................................................................................... 7

            1.    Injunctive Relief is Not a Claim or Cause of Action. ................................. 7

            2.    Plaintiff Cannot Advance a Substantive Claim to Support Injunctive Relief. ................................................................... 8

            3.    The DMCA Does Not Authorize Injunctive Relief Against Non-Infringers. ................................................................... 9

      C.    The Requested Injunctive Relief is Improper. .................................... 11

      D.    Mr. Stebbins Has Failed to State a Claim Against Amazon and Alphabet. .......... 13

      E.    The Court Should Deny Any Request for Leave to Amend and Warn Mr. Stebbins Against Further Frivolous Filings. .......................................... 14

V.    CONCLUSION ............................................................................................ 15

CORPORATE DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 4:21-cv-04184-JSW

**TABLE OF AUTHORITIES**

<div align="right"><strong>Page(s)</strong></div>

**Cases**

*Actuate Corp. v. Fid. Nat'l Info. Servs., Inc.*,
    2014 U.S. Dist. LEXIS 117513 (N.D. Cal. Aug. 21, 2014) .................................. 8

*Arista Records LLC v. Usenet.com, Inc.*,
    2008 U.S. Dist. LEXIS 95514 (S.D.N.Y. Nov. 24, 2008) ..................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 5

*Bastidas v. Good Samaritan Hosp.*,
    2014 U.S. Dist. LEXIS 92772 (N.D. Cal. July 7, 2014) ...................................... 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................ 5

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
    2022 U.S. Dist. LEXIS 50166 (S.D.N.Y. Mar. 21, 2022) ................................ 9, 11

*Canary v. Youngevity Int'l, Inc.*,
    2019 U.S. Dist. LEXIS 46429 (N.D. Cal. Mar. 20, 2019) ................................... 14

*Corbis Corp. v. Amazon.com, Inc.*,
    351 F. Supp. 2d 1090 (W.D. Wash. 2004) ......................................................... 10

*CoStar Grp., Inc. v. LoopNet, Inc.*,
    373 F.3d 544 (4th Cir. 2004) .............................................................................. 11

*De Long v. Hennessey*,
    912 F.2d 1144 (9th Cir. 1990) ............................................................................ 15

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) ............................................................................ 11

*Escobar, Inc. v. Klarna, Inc.*,
    2021 U.S. Dist. LEXIS 1443 (C.D. Cal. Jan. 4, 2021) ....................................... 14

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ............................................................................................ 6

*Fortaleza v. PNC Fin. Servs. Grp., Inc.*,
    642 F. Supp. 2d 1012 (N.D. Cal. 2009) ........................................................... 1, 8

*Greenspan v. IAC/InterActiveCorp*,
    2016 U.S. Dist. LEXIS 137204 (N.D. Cal. Sept. 30, 2016) ................................ 15

*Io Grp., Inc. v. Veoh Networks, Inc.*,
   586 F. Supp. 2d 1132 (N.D. Cal. 2008) ........................................................... 11, 13

*Jensen v. Quality Loan Serv. Corp.*,
   702 F. Supp. 2d 1183 (E.D. Cal. 2010) .................................................................. 8

*Johnson v. Buckley*,
   356 F.3d 1067 (9th Cir. 2004)............................................................................... 15

*Kifle v. YouTube LLC*,
   2021 U.S. Dist. LEXIS 193604 (N.D. Cal. Oct. 5, 2021) ........................................ 9

*Kinsley v. Udemy, Inc.*,
   2021 U.S. Dist. LEXIS 62885 (N.D. Cal. Mar. 31, 2021) ..................................... 13

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
   345 F.3d 1140 (9th Cir. 2003) ................................................................................ 6

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008) ................................................................................ 14

*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013).................................................................................. 9

*Mangindin v. Wash. Mut. Bank*,
   637 F. Supp. 2d 700 (N.D. Cal. 2009) ................................................................... 8

*MGM Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) ............................................................................................... 9

*Naruto v. Slater*,
   2016 U.S. Dist. LEXIS 11041 (N.D. Cal. Jan. 28, 2016) ........................................ 6

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ............................................................................................... 5

*Ou-Young v. Roberts*,
   2013 U.S. Dist. LEXIS 179213 (N.D. Cal. Dec. 20, 2013) ................................... 15

*Overton v. Uber Techs., Inc.*,
   2019 U.S. Dist. LEXIS 161374 (N.D. Cal. Sept. 20, 2019).................................... 15

*Pantoja v. Countrywide Home Loans, Inc.*,
   640 F. Supp. 2d 1177 (N.D. Cal. 2009) ............................................................... 14

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007)............................................................................... 11

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) .............................................................................. 8, 9

CORPORATE DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 4:21-cv-04184-JSW

**SER209**

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007)....................................................................... 9

*Prudencio v. Midway Importing, Inc.*,
  831 F. App'x 808 (9th Cir. 2020)............................................................... 14

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
  907 F. Supp. 1361 (N.D. Cal. 1995) ............................................................ 9

*Reynolds v. Apple Inc. et al.*,
  No. 3:19-cv-05440-RS, slip. op. (N.D. Cal. Nov. 27, 2019)........................ 8

*Richards v. Harper*,
  864 F.2d 85 (9th Cir. 1988)......................................................................... 5

*Rosal v. First Fed. Bank of Cal.*,
  671 F. Supp. 2d 1111 (N.D. Cal. 2009) ............................................. 1, 8, 12

*Sid Avery & Assocs., Inc. v. Pixels.com, LLC*,
  2021 U.S. Dist. LEXIS 35620 (C.D. Cal. Feb. 24, 2021) ......................... 13

*Stebbins v. Bradford*,
  2013 U.S. Dist. LEXIS 94179 (W.D. Ark. July 5, 2013)............................. 3

*Stebbins v. Google, Inc.*,
  2011 U.S. Dist. LEXIS 125701 (N.D. Cal. Oct. 27, 2011) ................. 2, 5, 13

*Stebbins v. Hixson*,
  2018 U.S. Dist. LEXIS 79361 (W.D. Ark. May 8, 2018)............................ 3

*Stebbins v. Microsoft, Inc.*,
  2012 WL 12896360 (W.D. Wash. Jan. 13, 2012)........................................ 3

*Stebbins v. Rebolo*,
  No. 4:21-cv-04184-JSW ........................................................................ 3, 4

*Stebbins v. Stebbins*,
  2013 U.S. Dist. LEXIS 93528 (W.D. Ark. July 3, 2013)......................... 1, 3

*Stebbins v. Stebbins*,
  575 F. App'x 705 (8th Cir. 2014).............................................................. 3

*Stebbins v. Steen*,
  2013 U.S. Dist. LEXIS 117914 (E.D. Ark. Aug. 20, 2013)......................... 3

*Stebbins v. Texas*,
  2011 U.S. Dist. LEXIS 146248 (N.D. Tex. Oct. 24, 2011) ........................ 2

*Totally Her Media, LLC v. BWP Media United States, Inc.*,
  2015 U.S. Dist. LEXIS 193685 (C.D. Cal. Mar. 24, 2015) ...................... 10

iv

*Tur v. YouTube, Inc.*,
    2007 U.S. Dist. LEXIS 50254 (C.D. Cal. June 20, 2007).......................................................10

*United States v. Bestfoods*,
    524 U.S. 51 (1998)...............................................................................................................2, 14

*Ventura Content, Ltd. v. Motherless, Inc.*,
    2013 U.S. Dist. LEXIS 189948 (C.D. Cal. July 3, 2013).......................................................13

*Veoh Networks, Inc. v. UMG Recordings, Inc.*,
    522 F. Supp. 2d 1265 (S.D. Cal. 2007)..................................................................................11

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019)....................................................................................................9

*Williby v. Hearst Corp.*,
    2017 U.S. Dist. LEXIS 106212 (N.D. Cal. July 10, 2017).............................................14, 15

*Wolk v. Kodak Imaging Network, Inc.*,
    2011 U.S. Dist. LEXIS 27541 (S.D.N.Y. Mar. 17, 2011).....................................................13

**Statutes**

17 U.S.C.
    § 101.........................................................................................................................................6
    § 102(a)......................................................................................................................................6
    § 512.................................................................................................................................*passim*

**Rules**

Federal Rule of Civil Procedures
    Rule 65(d)(2).........................................................................................................................10

**Regulations**

U.S. Copyright Office Practices
    § 313.2......................................................................................................................................6

**Constitutional Provisions**

United States Constitution
    Artcle I..................................................................................................................................6, 7

CORPORATE DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 4:21-cv-04184-JSW

## I.   INTRODUCTION

Plaintiff David Stebbins, a recognized "vexatious" litigant (*Stebbins v. Stebbins*, 2013 U.S. Dist. LEXIS 93528 (W.D. Ark. July 3, 2013)), has asserted copyright infringement claims alleging that a handful of Individual Defendants posted infringing content on YouTube, Twitch, and Discord.  Rather than simply sue the persons who posted that content, he also asks this Court to enter a needless and improper injunction under the Digital Millennium Copyright Act ("DMCA") that would require the service providers – or their parent companies Amazon (of Twitch) and Alphabet (of YouTube) – to "permanently terminate" the "individuals' accounts" and "not permit" them "to create any new accounts for any reason."  Dkt. 55 (SAC) ¶ 126.  The Court should dismiss Mr. Stebbins's claims against all Corporate Defendants with prejudice, and warn Mr. Stebbins that continued frivolous filings could result in sanctions.

***First***, the sole work at issue in this case – a video of Mr. Stebbins that was recorded accidentally through a fixed camera – is not copyrightable to begin with.  Copyright protection subsists in creative works of authorship that are fixed in a tangible medium of expression by a human author.  But here, Mr. Stebbins admits that the video was created by accident, without his knowledge, and without the slightest spark of creativity on his part.  The fixation of the video itself was done by computer software – not a human author – without Mr. Stebbins even realizing the camera had turned on.  Because such a work cannot be copyrightable, all of Mr. Stebbins's infringement claims should be dismissed without needing to go further.

***Second***, even if the video at issue were copyrightable, Mr. Stebbins has not stated (and cannot state) an actual legal claim against any of the Corporate Defendants.  Mr. Stebbins asks for a remedy – an injunction – but fails to accompany it with a viable cause of action upon which a request for relief could be granted as to those Defendants.  As a result, his "claim" for injunctive relief fails as a matter of law.  *See, e.g.*, *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012, 1028 (N.D. Cal. 2009) (dismissing "claim" for injunctive relief and explaining that "[a] request for injunctive relief by itself [] does not state a cause of action").  Even with an amendment, Mr. Stebbins cannot state such a claim because the DMCA does not authorize injunctions against innocent defendants who have not infringed in the first place.  The statute is a

1

1   *limitation* on the remedies that can be sought against *infringing* online service providers, not an

2   independent expansion of power to issue no-fault injunctions.

3       ***Third***, where, as here, the Corporate Defendants are already removing all instances of the

4   allegedly infringed work in suit when given DMCA-compliant notice, courts agree that it is

5   improper and unnecessary for an injunction to issue under that statute.

6       ***Fourth***, absent exceptional circumstances, corporate parents are not liable for the conduct

7   of their subsidiaries, requiring dismissal of Amazon and Alphabet. *See, e.g.*, *United States v.*

8   *Bestfoods*, 524 U.S. 51, 61 (1998). Mr. Stebbins admits that neither Amazon nor Alphabet has

9   engaged in any wrongful conduct, and he has advanced no allegation that those parent companies

10  are alter egos of their subsidiaries. Instead, he claims he "wants to keep [his] options open" in

11  the event, at some point, he develops a claim against them. Dkt. 71 ¶ 6. That is not how

12  litigation works. For this reason alone, the Court should dismiss Amazon and Alphabet.

13      Any dismissal of the Corporate Defendants should be with prejudice and without leave to

14  amend as Mr. Stebbins cannot cure the defects in his complaint. And given his well-documented

15  history as a vexatious litigant, the Court should warn Mr. Stebbins that continued frivolous

16  litigation could result in sanctions, including awards of attorneys' fees in favor of defendants

17  who are forced to respond to his endless filings.

18                     **II.    RELEVANT FACTS**

19  **A.    Mr. Stebbins is a Vexatious Litigant and his Suits Have Been Deemed Frivolous.**

20      Mr. Stebbins, a self-proclaimed "Youtuber" and "Twitch Streamer," goes by the online

21  alias "Acerthorn." Dkt. 55 (SAC) ¶ 1. He is widely ridiculed by other users on those services, in

22  large part because of his years'-long abuse of the court system. Mr. Stebbins has bogged down

23  courts across the nation with frivolous lawsuits. In this District, for example, he sued Google to

24  confirm a purported "arbitration award" for half a trillion dollars, even though no arbitration

25  actually occurred. *Stebbins v. Google, Inc.*, 2011 U.S. Dist. LEXIS 125701 (N.D. Cal. Oct. 27,

26  2011) (dismissing *sua sponte* as "frivolous" and "clearly baseless"). There are many other suits

27  just like that one. *See Stebbins v. Texas*, 2011 U.S. Dist. LEXIS 146248, at *8-9 (N.D. Tex. Oct.

28  24, 2011) (warning Mr. Stebbins could face monetary sanctions and/or that court would ban him

CORPORATE DEFENDANTS' MOTION TO DISMISS
Case No. 4:21-cv-04184-JSW

1  from filing further actions without prior approval); *Stebbins v. Steen*, 2013 U.S. Dist. LEXIS

2  117914, at *5-6 (E.D. Ark. Aug. 20, 2013) (concluding his complaint was frivolous and failed to

3  state a claim); *Stebbins v. Stebbins*, 575 F. App'x 705 (8th Cir. 2014) (affirming dismissal and

4  noting it is "undisputed that Stebbins has proceeded *in forma pauperis* on at least sixteen

5  complaints [as of 2014] that proved meritless, and has filed numerous frivolous motions");

6  *Stebbins v. Bradford*, 2013 U.S. Dist. LEXIS 94179, at *7 (W.D. Ark. July 5, 2013) (dismissing

7  his complaint as frivolous), *aff'd*, 552 F. App'x 606 (8th Cir. 2014).

8      Mr. Stebbins has been reprimanded multiple times.  One federal court noted that "time

9  spent dealing with Mr. Stebbins's filings prevents the Court from addressing the genuine, vexing

10  problems that people trust the Court to resolve quickly and fairly."  *Stebbins v. Microsoft, Inc*.,

11  2012 WL 12896360, at *1 (W.D. Wash. Jan. 13, 2012), *aff'd sub nom*. *Stebbins v. Microsoft*

12  *Corp*., 520 F. App'x 589 (9th Cir. 2013).  Similarly, the Western District of Arkansas declared

13  him a "vexatious" litigant who has "abused the system" with "a history of filing ultimately

14  meritless cases upon which the Court has been forced to expend countless hours of time and

15  judicial resources.  Not only has Mr. Stebbins filed numerous cases, but he has also filed over

16  one hundred motions within those cases, some of which have been repetitive, and few of which

17  have had any merit."  *Stebbins v. Stebbins*, 2013 U.S. Dist. LEXIS 93528, at *3-4.  When that

18  court limited him to filing one case per every three months (*id*. at *8-9), he evaded the order by

19  suing in the *Eastern* District, and then attempting to transfer to the Western District.  *Stebbins v.*

20  *Hixson*, 2018 U.S. Dist. LEXIS 79361, at *3-4, *7-8 (W.D. Ark. May 8, 2018).

21      Mr. Stebbins's conduct has continued in this case and in other lawsuits pending before

22  this Court.  In this case alone there are already over 125 docket entries, including dozens of

23  "motions" filed by him.  The Court has denied the vast majority of them.  Mr. Stebbins has also

24  filed a related action in this Court, *Stebbins v. Rebolo*, No. 4:21-cv-04184-JSW, and recently

25  amended his complaint.  In that case Mr. Stebbins complains that YouTube declined to remove

26  fair use videos critiquing his litigious behavior.[1]

27

28  [1] One such video at issue in the related *Rebolo* suit, entitled "Acerthorn: Serial DMCA Abuse
    Controversy," can be found at https://www.youtube.com/watch?v=WB-Xd1qDKIY.  This is the
    same video that Plaintiff attempted to enjoin in his Second Motion for Preliminary Injunction in

**B.      This is a Dispute Between Mr. Stebbins and the Individual Defendants.**

According to Mr. Stebbins, on April 10, 2021, his "livestream software turned on of its own accord without me realizing it.  It stayed on for nearly two hours before I realized it was on and closed it down.  During this accidental livestream, my viewers were able to see me engaging in mundane, daily activities," and were able to hear "strange noises" that he "did not cause." Dkt. 55 (SAC) ¶¶ 22-23.  He allegedly registered this "Accidental Livestream" with the U.S. Copyright Office and uploaded the archive to his YouTube channel, where access is limited to those who pay $20 per month, which no one has ever paid. *Id.* ¶¶ 24-25.  Mr. Stebbins's claims against the Individual Defendants stem from their alleged posting of the Accidental Livestream and harassing comments on various social media platforms.

Mr. Stebbins does not allege that he or any of the Individual Defendants have accounts with Amazon or Alphabet, or that any party posted allegedly infringing content (including the Accidental Livestream) on Amazon's or Alphabet's websites (indeed, both are merely holding companies and do not operate any content-hosting website at all).  The only link between Mr. Stebbins and Amazon is Mr. Stebbins's assertion that Amazon is the "parent company of the website Twitch.tv." *Id.* ¶ 6.  Although Mr. Stebbins has not named Twitch as a defendant in this lawsuit, his claim against Amazon is based on his allegation that one of the Individual Defendants, Karl Polano, shared his Accidental Livestream on Twitch without authorization. *Id.* ¶ 60.  Similarly, Alphabet's only connection to this lawsuit is that it is the parent company of Google LLC, which in turn is the parent company of YouTube. *Id.* ¶ 3.

As to the websites that actually hosted the allegedly infringing content, Mr. Stebbins acknowledges there is a functioning system in place for dealing with all of that material.  He followed this process, submitting a DMCA takedown request to Twitch and, as he concedes, less

this case, which the Court denied. *See* Dkt. 106-2 ¶¶ 6-7.  The video also features prominently in Mr. Stebbins's Motion for Default Judgment against the Individual Defendants as a measure of his damages (which makes no sense, since the video was not created or posted by the Individual Defendants in default). *See* Dkt. 127-20 ¶¶ 38-49; Dkt. 247-18.  The video provides a detailed history of Mr. Stebbins's abuse of the Court system and the DMCA to strike videos that fairly criticize him.  Mr. Stebbins immediately sued YouTube in the *Rebolo* action even though the video (and others alleged in that complaint) is plainly fair use criticism.

CORPORATE DEFENDANTS' MOTION TO DISMISS
Case No. 4:21-cv-04184-JSW

1   than two hours later Twitch took down the video.  *Id.* ¶ 60.  Similarly, Mr. Stebbins concedes

2   that YouTube promptly removed all alleged instances of the Accidental Livestream from its

3   platform, often within hours of him submitting a takedown notice.  *Id.* ¶¶ 26, 29, 46, 61.  Nor

4   does he allege that Discord ignored any of his takedown notices.  *Id.* ¶ 44.  Indeed, Mr. Stebbins

5   admits that Alphabet, Discord, Amazon, and/or their subsidiaries "have complied with the

6   DMCA's safe harbor provisions."  *Id.* ¶ 124.  Despite all that, he seeks injunctive relief requiring

7   the sites to permanently ban the Individual Defendants.  *Id.* ¶¶ 124-126.

8                          **III.    LEGAL STANDARD**

9           The Court should grant a motion to dismiss when a plaintiff fails to allege "enough facts

10   to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

11   570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere

12   conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

13   *Twombly*, 550 U.S. at 555).  This standard applies equally to *pro se* plaintiffs.  *See, e.g.*, *Richards

14   v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988).

15          Moreover, the Court should be mindful that Mr. Stebbins is proceeding *in forma pauperis*

16   and therefore, if his complaint lacks an arguable basis either in law ***or in fact***, the Court has "the

17   unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims

18   whose factual contentions are clearly baseless."  *Stebbins v. Google, Inc.*, 2011 U.S. Dist. LEXIS

19   125701, at *10-11.  The *in forma pauperis* process "is designed largely to discourage the filing

20   of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants

21   generally do not initiate because of the costs of bringing suit."  *Neitzke v. Williams*, 490 U.S.

22   319, 327 (1989).  That concern is particularly acute here, given Mr. Stebbins's history.

23                          **IV.    LEGAL ARGUMENT**

24   **A.    The Accidental Livestream is Not Copyrightable.**

25          Mr. Stebbins's complaint fails from the get-go because the Accidental Livestream is not

26   copyrightable.  The Court need go no further to dispose of this entire litigation.

27          While Mr. Stebbins did register the video, "[t]he presumption of the validity of a

28   registered copy-right may be overcome by the offer [of] some evidence or proof to dispute or

                                                5

1   deny the plaintiff's prima facie case of infringement." *Lamps Plus, Inc. v. Seattle Lighting*

2   *Fixture Co.*, 345 F.3d 1140, 1145 (9th Cir. 2003) (citation omitted).  Here, that proof is found in

3   the complaint itself, in which Mr. Stebbins admits that the Accidental Livestream lacks even the

4   slightest modicum of creativity, and is not a product of human authorship.  Mr. Stebbins did ***not***

5   disclose these facts in his application to the Copyright Office – a fact he concedes in his recent

6   Motion for Default Judgment.  RJN, Ex. A; *see also* Dkt. 127-19 ¶ 3.

7        "Copyright protection subsists … in original works of authorship fixed in any tangible

8   medium of expression …."  17 U.S.C. § 102(a).  "The *sine qua non* of copyright is originality.

9   To qualify for copyright protection, a work must be original to the author.  Original, as the term

10  is used in copyright, means … that it possesses at least some minimal degree of creativity."

11  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citation omitted).  "To be

12  sure, the requisite level of creativity is extremely low," but the work must at least possess "some

13  creative spark" to be copyrightable.  *Id.*  Moreover, the "fixing" of a creative work in a tangible

14  medium of expression must be done "by or under the authority of the author."  17 U.S.C. § 101.

15  That author must be a human, not a machine.  Compendium of U.S. Copyright Office Practices

16  § 313.2 ("works produced by a machine or mere mechanical process that operates randomly or

17  automatically without any creative input or intervention from a human author" are not

18  copyrightable)[2]; *cf. Naruto v. Slater*, 2016 U.S. Dist. LEXIS 11041 (N.D. Cal. Jan. 28, 2016),

19  *aff'd*, 888 F.3d 418 (9th Cir. 2018) (finding monkey cannot sue for infringement of a selfie it

20  took with a camera).  These two requirements – creativity and human authorship – are consistent

21  with the Constitution, which calls upon Congress to protect the rights of "Authors" to "promote

22  the Progress of Science and useful Arts."  U.S. Const. Art. I, § 8, Cl. 8.

23        Here, Mr. Stebbins states in the SAC that the Accidental Livestream was created when

24  "my livestream software ***turned on of its own accord without me realizing it.***"  Dkt. 55 (SAC) ¶

25  22 (emphasis added).  The software remained on for nearly two hours until he "realized it was

26  on," at which point he turned it off.  *Id.*  During this time Mr. Stebbins could be seen doing

27

28  _____
    [2] Available at https://www.copyright.gov/comp3/chap300/ch300-copyrightable-authorship.pdf.

                                            6
_____
CORPORATE DEFENDANTS' MOTION TO DISMISS
Case No. 4:21-cv-04184-JSW

1   "*mundane, daily activities*." *Id.* (emphasis added).  "[T]he only interesting and memorable part

2   of this otherwise boring and *contentless* livestream" were "strange noises" that Mr. Stebbins says

3   he "*did not cause.*" *Id.* ¶ 23 (emphasis added).  Thus by his own admission, the video lacks even

4   the slightest creative spark necessary for it to be copyrightable.  It shows nothing other than

5   "mundane, daily activities"; it is "boring and contentless"; and the only notable content consists

6   of sounds that he "did not cause."  Mr. Stebbins made no creative choices in generating this

7   content, whether in the form of directing the scenery or even turning on the stationary camera.

8   This is not a case where an author intends to create a work but catches something by

9   happenstance—such as a photographer who snaps a photo at the same time as a strike of

10   lightning, or a painter who slips while holding the brush.  Rather, Mr. Stebbins admits that the

11   *very making* of the video was accidental and done entirely without his knowledge.

12         Not only that, the fixation of the work was performed by a machine, not a human author.

13   Mr. Stebbins admits that computer software – not him – "turned on [the livestream] of its own

14   accord without me realizing it."  He also concedes, in his Motion for Default Judgment, that the

15   "accidental" nature of his video would "invalidate its copyright [] if the streaming software

16   turned on, entirely of its own accord, without any human input (knowing or otherwise) causing it

17   to happen"—which is precisely what he alleges in the complaint.  Dkt. 127-20 ¶ 42.

18         It is clear that Mr. Stebbins is claiming copyright in this video not because it reflects his

19   creative expression, but because he finds it embarrassing and wants to stop others from accessing

20   it.  That is understandable, but it is not a proper invocation of the copyright laws.[3]

21   **B.     Mr. Stebbins Has Not Stated an Actual Claim Against Any Corporate Defendant.**

22         **1.     Injunctive Relief is Not a Claim or Cause of Action.**

23         Even if the Accidental Livestream were copyrightable, Mr. Stebbins has no legal basis

24   for roping the Corporate Defendants into this case.  His sole "claim" against the Corporate

25   Defendants is "V-2" for "Injunctive Relief."  Dkt. 55 (SAC) ¶¶ 124-126.  He asks the Court to

26   _____

27   [3] Mr. Stebbins claims that he offers the video for "at least" $20 per month ($240 per year), but no
    one has ever paid for it.  Dkt. 55 (SAC) ¶¶ 24-25.  The complaint, and his litigation history,
    strongly suggests that Plaintiff did this simply to manufacture a damages claim over a video that

28   has no actual value.  *Id.* ¶ 131.

7

1   require the Corporate Defendants to terminate the Individual Defendants' accounts and to enjoin

2   them from allowing any of the Individual Defendants to "create any new accounts" in the future.

3   *Id.* ¶ 126.  But "[a]n injunction is a ***remedy***, not a separate claim or cause of action.  A pleading

4   can … request injunctive relief ***in connection with a substantive claim***, but a separately pled

5   claim or cause of action for injunctive relief is inappropriate." *Jensen v. Quality Loan Serv.*

6   *Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) (emphasis added); *see also Fortaleza*, 642 F.

7   Supp. 2d at 1028 (dismissing "claim" for injunctive relief and explaining that "[a] request for

8   injunctive relief by itself [] does not state a cause of action"); *Rosal v. First Fed. Bank of Cal.*,

9   671 F. Supp. 2d 1111, 1136 (N.D. Cal. 2009) (same); *Mangindin v. Wash. Mut. Bank*, 637 F.

10   Supp. 2d 700, 709 (N.D. Cal. 2009) (injunctive relief not an independent cause of action);

11   *Actuate Corp. v. Fid. Nat'l Info. Servs., Inc.*, 2014 U.S. Dist. LEXIS 117513, at *11 (N.D. Cal.

12   Aug. 21, 2014) (dismissing "claim" for injunctive relief); *Reynolds v. Apple Inc. et al.*, No. 3:19-

13   cv-05440-RS, slip. op. at 6 (N.D. Cal. Nov. 27, 2019) (same).  The Corporate Defendants should

14   be dismissed on this basis alone.

15               **2.**       **Plaintiff Cannot Advance a Substantive Claim to Support Injunctive Relief.**

16               Mr. Stebbins cannot advance a substantive claim of prima facie copyright infringement

17   against the Corporate Defendants that could support an injunction against them.  This is because

18   Discord, Twitch, and YouTube immediately disabled all alleged infringements of the Accidental

19   Livestream as soon as the websites learned of those videos.

20               Copyright infringement falls into two categories: direct and secondary liability.  "[D]irect

21   infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by

22   the defendant." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017).  As

23   automated service providers that merely hosted content posted by the Individual Defendants,

24   Discord, Twitch, and YouTube cannot be liable under this theory because "passively storing

25   material at the direction of users in order to make that material available to other users upon

26   request, or automatically copying, storing, and transmitting materials upon instigation by others,"

27   is not "volitional" conduct; and thus, "does not render an [Internet service provider] strictly

28   liable for copyright infringement."  *Id.* at 668-70 (brackets in original; citations omitted); *accord,*

8

1   *e.g.*, *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1369

2   (N.D. Cal. 1995); *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731-38 (9th Cir. 2019).

3        Nor can the Corporate Defendants be liable for secondary infringement.  Contributory

4   liability only exists if a service provider "has actual knowledge that specific infringing material

5   is available using its system, and can take simple measures to prevent further damage to

6   copyrighted works, ***yet continues to provide access to infringing works***."  *Giganews*, 847 F.3d at

7   671 (citation omitted) (emphasis added); *accord, e.g.*, *Luvdarts, LLC v. AT&T Mobility, LLC*,

8   710 F.3d 1068, 1071-72 (9th Cir. 2013); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788,

9   801 (9th Cir. 2007); *Kifle v. YouTube LLC*, 2021 U.S. Dist. LEXIS 193604, at *14-16 (N.D. Cal.

10  Oct. 5, 2021).  Similarly, vicarious liability only exists when a platform "profit[s] from direct

11  infringement while ***declining to exercise a right to stop or limit it.***"  *MGM Studios Inc. v.*

12  *Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (emphasis added); *accord, e.g.*, *Luvdarts*, 710 F.3d at

13  1071.  Mr. Stebbins concedes that Discord, Twitch, and YouTube did the opposite of these

14  things: as soon as they learned of the alleged infringements, the websites promptly took them

15  down.  Dkt. 55 (SAC) ¶¶ 26, 29, 44, 46, 60, 61.  As another federal court recently held in a

16  similar case against YouTube, that precludes any theory of prima facie infringement against the

17  websites, irrespective of whether they might also qualify for the DMCA safe harbor.  *Bus.*

18  *Casual Holdings, LLC v. YouTube, LLC*, 2022 U.S. Dist. LEXIS 50166, at *14-16 (S.D.N.Y.

19  Mar. 21, 2022) (dismissing contributory and vicarious claims where plaintiff conceded that

20  YouTube promptly removed the infringing videos); *see also id.* at *7-11 (also dismissing direct

21  infringement claims for lack of volitional conduct).

22        **3.     The DMCA Does Not Authorize Injunctive Relief Against Non-Infringers.**

23        Mr. Stebbins relies on 17 U.S.C. § 512(j) as a basis for seeking a standalone injunction

24  without a supporting claim.  Section 512(j), however, is a ***limit*** on the Court's power to enjoin,

25  not an expansion.  The DMCA presupposes that the enjoined service providers are prima facie

26  infringers who sought refuge from monetary liability under the safe harbor.  By its plain terms,

27  17 U.S.C. § 512(j) places constraints on injunctions against infringing service providers who are

28  "not subject to monetary remedies ***under this section***" (emphasis added).

9

1    In other words, the DMCA is a limitation-of-liability provision that restricts the remedies

2    that can be sought against platforms "after it is determined whether they are infringers in the first

3    place under the preexisting Copyright Act." *Tur v. YouTube, Inc.*, 2007 U.S. Dist. LEXIS 50254,

4    at *6-7 (C.D. Cal. June 20, 2007) (citation omitted); *see also Corbis Corp. v. Amazon.com, Inc.*,

5    351 F. Supp. 2d 1090, 1099 (W.D. Wash. 2004) (Section 512(j) injunctions are available "if a

6    plaintiff can show that a safe harbor-eligible service provider has violated her copyright"),

7    *overruled on other grounds by Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612 (9th

8    Cir. 2010), *abrogated by Fourth Est. Pub. Benefit Corp. v. Wall-Street.com*, 139 S. Ct. 881

9    (2019).  Thus if a plaintiff "seeks injunctive relief under [Section 512(j)], the Court must still

10   consider the question of ultimate liability for direct and vicarious copyright infringement."

11   *Totally Her Media, LLC v. BWP Media United States, Inc.*, 2015 U.S. Dist. LEXIS 193685, at

12   *33-34 (C.D. Cal. Mar. 24, 2015).  The statute does not authorize relief against innocent

13   platforms who are not "infringers in the first place" *(Tur*, 2007 U.S. Dist. LEXIS 50254, at *6-7),

14   and therefore cannot be enjoined under existing principles of law.

15   This is confirmed by the DMCA's legislative history, which makes clear that Section

16   512(j) "defines the terms and conditions under which an injunction may be issued against a

17   service provider that qualifies for the limitations of liability [in the safe harbor provisions] ***but is***

18   ***otherwise subject to an injunction under existing principles of law***."  S. Rep. No. 105-190, at

19   52-53 (emphasis added); *see also* H.R. Rep. No. 105-551, at 62 (same); *accord* 144 Cong. Rec.

20   E160 (daily ed. Feb. 12, 1998) (remarks of Rep. Coble) ("Copyright owners may still seek an

21   injunction against such activities under theories of secondary liability, ***if they can establish the***

22   ***necessary elements of a claim***.") (emphasis added).  This is also consistent with Federal Rule

23   65(d)(2), which limits injunctive relief only to parties, their agents, and "other persons who are in

24   active concert or participation with" them.

25   In *Totally Her Media*, for example, the court denied a copyright owner's request for a

26   512(j) injunction against an online service provider because the provider was not liable for a

27   third-party's infringement.  2015 U.S. Dist. LEXIS 193685, at *37-38.  And in *Business Casual*,

28   the plaintiff requested a similar injunction requiring YouTube to ban a user pursuant to the

10

1   DMCA's "repeat infringer" provision, even though YouTube had promptly removed all of the

2   user's infringing content and thus did not infringe.  The court dismissed, in part because "[t]he

3   DMCA safe harbors provide potential defenses against copyright infringement claims where, but

4   for the safe harbors, the plaintiff has a meritorious cause of action against the defendant for

5   copyright infringement."  2022 U.S. Dist. LEXIS 50166, at *13; *accord, e.g.*, *Arista Records

6   LLC v. Usenet.com, Inc.*, 2008 U.S. Dist. LEXIS 95514, at *12 (S.D.N.Y. Nov. 24, 2008) ("The

7   DMCA does not provide an affirmative cause of action," but rather "'limitations of liability … if

8   the provider is found to be [already] liable *under existing principles of law*.'") (emphasis in

9   original; quoting *Ellison v. Robertson*, 357 F.3d 1072, 1076-77 (9th Cir. 2004)); *Perfect 10, Inc.

10  v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 n.4 (9th Cir. 2007) ("[T]he DMCA does not change

11  copyright law; rather, Congress provided that [the DMCA's] limitations of liability apply if the

12  provider is found to be liable under existing principles of law.") (citing *Ellison*; cleaned up);

13  *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1271-72 (S.D. Cal. 2007)

14  ("[T]he safe harbor presupposes that a specific allegation of infringement has already been

15  levied."); *Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1142 (N.D. Cal. 2008) (the

16  safe harbors limit liability of service providers to injunctive relief, but "do not affect the question

17  of ultimate liability under the various doctrines of direct, vicarious, and contributory liability");

18  *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004) ("[T]he DMCA is

19  irrelevant to determining what constitutes a prima facie case of copyright infringement."); *see

20  also* H.R. Conf. Rep. No. 105-796, at 73 (1998) ("[T]he limitations of liability [in 17 U.S.C.

21  § 512] apply if the provider is found to be liable under existing principles of law.").

22          Accordingly, Section 512(j) has no application here because the Corporate Defendants

23  did not infringe, and thus have no need to invoke the DMCA safe harbor.  Mr. Stebbins cannot

24  seek an injunction in the absence of a substantive claim of infringement against them.

25  **C.      The Requested Injunctive Relief is Improper.**

26          Mr. Stebbins's requested relief also fails on the merits.  He appears to invoke Section

27  512(j)(1)(A)(ii), which authorizes a court to enter "[a]n order restraining the service provider

28  from providing access to a subscriber or account holder of the service provider's system or

11

network who is engaging in infringing activity and is identified in the order, by terminating the accounts of the subscriber or account holder that are specified in the order."  For three independent reasons, the Court should dismiss Mr. Stebbins's request.

*First*, the relief Mr. Stebbins seeks does not conform with Section 512(j)'s plain language.  He asks the Court to order the Corporate Defendants to "permanently terminate the individual Defendants' accounts … and not permit … the three individual defendants to create any new accounts for any reason."  Dkt. 55 (SAC) ¶ 126.  Section 512(j)(1)(A)(ii) does not permit this type of relief.  While it allows the Court to require the website to terminate specific accounts "that are specified in the order," it does not allow for broad injunctive relief requiring the website to forever bar an individual from opening other, unspecified accounts with the site in the future.  Thus, the requested injunctive relief is improper.[4]

*Second*, Section 512(j)(2) identifies four factors the Court must consider before granting injunctive relief against the Corporate Defendants.  Under these factors, Mr. Stebbins's request fails on the face of the complaint.  Perhaps the most obvious example, the fourth factor, asks the court to consider "[w]hether other less burdensome and comparably effective means of preventing or restraining access to the infringing material are available."  17 U.S.C. § 512(j)(2)(D).  As the complaint makes clear, there is a functioning system in place for dealing with the allegedly infringing content: Discord, Twitch, and YouTube removed all instances of the alleged infringement at issue almost immediately after they were notified of that content.  Dkt. 55 (SAC) ¶ 60 (Twitch removed after two hours); *id.* ¶¶ 26, 29, 46, 61 (YouTube removed all infringements, often within hours); *id.* ¶ 44 (Discord removed all infringements).  Given the existence of this functioning system, injunctive relief is not necessary or appropriate: It is "undisputed [Twitch, YouTube, and Discord] [are] already removing allegedly infringing works when given DMCA-compliant notice so [] there is no need for an injunction requiring [them] to

---

[4] Moreover, it allows for this relief only ***after*** a showing that the user is engaging in "infringing activity" on the website.  Mr. Stebbins does not allege that the Individual Defendants "engaged in infringing activity" on Amazon's or Alphabet's websites.  Nor does Mr. Stebbins identify any account belonging to the Individual Defendants on Amazon or Alphabet.

CORPORATE DEFENDANTS' MOTION TO DISMISS
Case No. 4:21-cv-04184-JSW

1   do the same." *Wolk v. Kodak Imaging Network, Inc.*, 2011 U.S. Dist. LEXIS 27541, at *19-21

2   (S.D.N.Y. Mar. 17, 2011) (denying request for injunction under 17 U.S.C. § 512(j)(1)(A)).

3           ***Third***, setting aside the above factors, any request for relief is moot because, again, the

4   service providers removed the allegedly infringing content promptly after receiving Mr.

5   Stebbins's DMCA notices. *E.g.*, Dkt. 55 (SAC) ¶¶ 26, 29, 44, 46, 60, 61, 124.  In these

6   situations, a "request for injunctive relief" under Section 512(j) "is moot." *Ventura Content, Ltd.*

7   *v. Motherless, Inc.*, 2013 U.S. Dist. LEXIS 189948, at *49-50 (C.D. Cal. July 3, 2013), *aff'd*, 885

8   F.3d 597 (9th Cir. 2018); *see also Sid Avery & Assocs., Inc. v. Pixels.com, LLC*, 2021 U.S. Dist.

9   LEXIS 35620, at *13 (C.D. Cal. Feb. 24, 2021) ("Because Pixels qualifies for safe harbor under

10  § 512(c), the only relief available to MVPT is the limited injunctive relief pursuant to § 512(j).

11  Once Pixels received notice of the infringing images through MPTV's complaint, however,

12  Pixels treated the pleadings as takedown notices and immediately removed the images identified.

13  Accordingly, any injunctive relief to which MPTV would be entitled is now moot.") (internal

14  citations omitted); *Io Grp.*, 586 F. Supp. 2d at 1154-55 (reaching same conclusion where

15  defendant who qualified for safe harbor had already removed all of the infringing content).

16  Fundamentally, because the Corporate Defendants (or their subsidiaries) "removed the infringing

17  content," there "there is no injunctive relief to which Mr. [Stebbins] is entitled." *Kinsley v.*

18  *Udemy, Inc.*, 2021 U.S. Dist. LEXIS 62885, at *16-17 (N.D. Cal. Mar. 31, 2021).

19          In sum, the Court should dismiss Mr. Stebbins's injunctive relief claim as baseless.  *See,*

20  *e.g.*, *Stebbins v. Google, Inc.*, 2011 U.S. Dist. LEXIS 125701, at *10-11 (where plaintiff is *in*

21  *forma pauperis*, judges possess "the unusual power to pierce the veil of the complaint's factual

22  allegations" and to dismiss a complaint that lacks an arguable basis either in law or in fact).

23  **D.      Mr. Stebbins Has Failed to State a Claim Against Amazon and Alphabet.**

24          In addition to failing to state a substantive claim, nowhere in any of Mr. Stebbins's

25  complaints does he allege that Amazon or Alphabet have any connection to the Individual

26  Defendants or the allegedly infringing content.  Instead, he named Amazon and Alphabet as

27  Defendants solely based on their alleged status as parent companies of Twitch and YouTube

28  respectively.  Dkt. 55 (SAC) ¶¶ 3, 6.  This is not enough: "It is a general principle of corporate

13

1   law deeply ingrained in our economic and legal systems that a parent corporation … is not liable

2   for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also*

3   *Pantoja v. Countrywide Home Loans, Inc*., 640 F. Supp. 2d 1177, 1192 (N.D. Cal. 2009) ("It is

4   the general rule that a parent corporation and its subsidiary will be treated as separate legal

5   entities."); *Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 810 (9th Cir. 2020) ("[I]t is

6   well established that a parent-subsidiary relationship by itself is insufficient to impute liability.").

7        Mr. Stebbins acknowledges as much, explaining to the Court: "[A]ccording to my

8   research n (*sic*) the matter, there are some limited instances where a parent company can indeed

9   be held liable for the actions of its subsidiary … I want to keep my options open … just in the off

10  chance I may discover evidence during this case that makes them qualify for an exception."  Dkt.

11  71 ¶ 6.  This is not a valid basis to sue Amazon and Alphabet.  Courts routinely grant motions to

12  dismiss such claims against parent corporations with no involvement in the allegedly wrongful

13  conduct.  *See, e.g.*, *Canary v. Youngevity Int'l, Inc.*, 2019 U.S. Dist. LEXIS 46429, at *11 (N.D.

14  Cal. Mar. 20, 2019) (dismissing parent corporation from lawsuit when allegedly wrongful

15  conduct was done by subsidiary); *Bastidas v. Good Samaritan Hosp.,* 2014 U.S. Dist. LEXIS

16  92772, at *14-15 (N.D. Cal. July 7, 2014) (same); *Williby v. Hearst Corp.*, 2017 U.S. Dist.

17  LEXIS 106212, at *4-6 (N.D. Cal. July 10, 2017) (same); *Escobar, Inc. v. Klarna, Inc*., 2021

18  U.S. Dist. LEXIS 1443, at *9-10 (C.D. Cal. Jan. 4, 2021) (same).  Given Mr. Stebbins's

19  admissions that (1) Amazon and Alphabet did not engage in any wrongdoing, and (2) their only

20  relationship to this lawsuit is their status as parent corporations, the Court should dismiss

21  Amazon and Alphabet from this case.[5]

22  **E.      The Court Should Deny Any Request for Leave to Amend and Warn Mr. Stebbins**

23          **Against Further Frivolous Filings.**

24        Although courts have wide discretion in determining whether to grant leave to amend, a

25  court should deny leave when a proposed amendment would be futile.  *See, e.g.*, *Leadsinger, Inc.*

26  *v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (denying leave to amend based on

---

[5] Even if the Court permits the pending amendments seeking to add Twitch and YouTube as parties, Amazon and Alphabet still should be dismissed for the same reasons.

1   futility); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) ("Futility alone can justify the

2   denial of a motion to amend.") (internal quotations and citation omitted).  The sole work at issue

3   is not copyrightable.  Moreover, Mr. Stebbins's injunctive relief claim cannot be cured because it

4   is not, as a matter of law, an independent or cognizable claim.  Nor is any injunctive relief even

5   necessary given his admissions that all instances of the Accidental Livestream have been

6   removed.  Mr. Stebbins cannot walk back from those admissions in an amended pleading.

7   Additionally, Mr. Stebbins acknowledged that he does not have a claim against Amazon or

8   Alphabet but instead is continuing to name them in the lawsuit to "keep [his] options open."

9   Dkt. 71 ¶ 6.  Therefore, his "claims" against Amazon and Alphabet cannot be cured through

10  amendment, either.  *See Williby*, 2017 U.S. Dist. LEXIS 106212, at *4-6 (dismissing claims with

11  prejudice against a parent company based on actions of a subsidiary).

12          Further, this Court should warn Mr. Stebbins that it will issue sanctions if he continues to

13  file frivolous motions, amendments, and lawsuits.  In this case alone he has made excessive and

14  repetitive filings, even before all the Individual Defendants had been served.  This is just another

15  episode of his abuse of the court system.  Courts are free to restrict vexatious litigants from

16  meritless filings and to impose sanctions on that basis.  *See De Long v. Hennessey*, 912 F.2d

17  1144, 1147 (9th Cir. 1990).  And courts regularly impose restrictions based on prolific motions

18  practice over repetitive or baseless arguments.  *See, e.g.*, *Ou-Young v. Roberts*, 2013 U.S. Dist.

19  LEXIS 179213, at *27 (N.D. Cal. Dec. 20, 2013) ("[W]hile the number of filings here (five) does

20  not establish Plaintiff as vexatious per se, the patently meritless nature of his filings and motions

21  do.");  *Greenspan v. IAC/InterActiveCorp*, 2016 U.S. Dist. LEXIS 137204, at *10 (N.D. Cal.

22  Sept. 30, 2016) (ordering vexatious litigant "to obtain leave of court before filing any further

23  motions in this case").  This Court should issue an order warning Mr. Stebbins that his frivolous

24  filings will not be tolerated.  *Overton v. Uber Techs., Inc.*, 2019 U.S. Dist. LEXIS 161374, at *12

25  (N.D. Cal. Sept. 20, 2019) (warning pro se plaintiffs "against filing additional motions").

26                          **V.      CONCLUSION**

27          For the foregoing reasons, the Corporate Defendants respectfully request that the Court

28  dismiss Mr. Stebbins's claims against them with prejudice.

CORPORATE DEFENDANTS' MOTION TO DISMISS
Case No. 4:21-cv-04184-JSW

1    Dated:  April 11, 2022                    Respectfully submitted,

2    For Discord, Inc., Defendant              For Amazon.com, Inc., Defendant

3    _s/ James Orenstein_                       _s/ Sanjay Nangia_
4    James Orenstein (*pro hac vice*)           Sanjay Nangia
     ZWILLGEN PLLC                             DAVIS WRIGHT TREMAINE LLP
5    183 Madison Ave., Suite 1504              505 Montgomery Street, Suite 800
     New York, NY 10016                        San Francisco, CA 94111
6    Telephone: (646) 362-5590                 Telephone: (415) 276-6577
7    Email: Jamie.Orenstein@zwillgen.com       Email: sanjaynangia@dwt.com

8    For Alphabet Inc., Defendant

9    _s/ Jason Mollick_
10   Jason Mollick (*pro hac vice*)
     WILSON SONSINI GOODRICH
11   & ROSATI, P.C.
     1301 Avenue of the Americas, 40th Floor
12   New York, NY 10019
     Telephone: (212) 999-5800
13   E-Mail: jmollick@wsgr.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        16
     CORPORATE DEFENDANTS' MOTION TO DISMISS
     Case No. 4:21-cv-04184-JSW

1

**SIGNATURE ATTESTATION**

2

I hereby attest that all signatories listed above, on whose behalf this motion is submitted,

3

concur in the filing's content and have authorized the filing.

4

DATED: April 11, 2022                    DAVIS WRIGHT TREMAINE LLP

5

By /s/ *Sanjay M. Nangia*

6

Sanjay M. Nangia
Attorneys for Defendant

7

AMAZON.COM, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CORPORATE DEFENDANTS' MOTION TO DISMISS
Case No. 4:21-cv-04184-JSW

1  SANJAY M. NANGIA (State Bar No. 264986)
   DAVIS WRIGHT TREMAINE LLP
2  505 Montgomery Street, Suite 800
   San Francisco, California 94111
3  Telephone:    (415) 276-6500
   Facsimile:    (415) 276-6599
4  Email:  sanjaynangia@dwt.com
5
6  Attorneys for Defendant
   AMAZON.COM, INC.
7
   [Additional Counsel on Signature Page]
8

9
                **IN THE UNITED STATES DISTRICT COURT**
10
              **THE NORTHERN DISTRICT OF CALIFORNIA**
11
                        **OAKLAND DIVISION**
12

13

14  DAVID A. STEBBINS,                    Case No. 4:21-cv-04184-JSW

15               Plaintiff,               **REQUEST FOR JUDICIAL NOTICE IN
                                          SUPPORT OF CORPORATE
16        v.                              DEFENDANTS' JOINT MOTION TO
                                          DISMISS**
17  KARL POLANO et al.,

18               Defendants.              Date:      May 27, 2022
                                          Time:      9:00 a.m.
19                                        Dept.:     Courtroom 5

20                                        Action Filed:  June 2, 2021

21

22

23

24

25

26

27

28

   _____
   REQUEST FOR JUDICIAL NOTICE
   Case No. 4:21-cv-04184-JSW

**SER229**

1      Pursuant to Rule 201 of the Federal Rules of Evidence, Defendants Amazon.com, Inc.

2  ("Amazon"), Alphabet Inc. ("Alphabet"), and Discord Inc. ("Discord") (collectively, the

3  "Corporate Defendants") request that the Court take judicial notice of the attached copy of

4  Plaintiff David Stebbins's application to register his allegedly infringed Accidental Livestream

5  with the United States Copyright Office, which counsel for Alphabet obtained from the

6  Copyright Office on April 8, 2022.  *See* Exhibit A.

7      A court "must take judicial notice if a party requests it and the court is supplied with the

8  necessary information."  Fed. R. Evid. 201(c)(2).  "The court may judicially notice a fact that is

9  not subject to reasonable dispute because it … can be accurately and readily determined from

10  sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Courts

11  routinely take judicial notice of matters of public record before administrative agencies,

12  including applications to register works with the Copyright Office.  *See, e.g.*, *Lewis v. Activision*

13  *Blizzard, Inc.*, 2012 U.S. Dist. LEXIS 151739, at *2 n.1 (N.D. Cal. Oct. 22, 2012) (taking

14  "judicial notice of [plaintiff's] applications for copyright registration which are matters of public

15  record and the subject of allegations in the complaint"); *Hyowon Elecs., Inc. v. Erom, Inc.*, 2014

16  U.S. Dist. LEXIS 190442, at *7 (C.D. Cal. May 15, 2014) ("[Plaintiff's] copyright registration

17  application and the copyright registration are certified copies from the United States Copyright

18  Office, and are matters of public record and the type of documents that the Court may judicially

19  notice under Rule 201(b)(2).").

20      In addition, the Court may rely on documents whose contents are implicitly or directly

21  alleged in the complaint.  "When deciding a motion to dismiss, a court may consider the

22  complaint and 'documents whose contents are alleged in a complaint and whose authenticity no

23  party questions, but which are not physically attached to the pleading.'"  *In re Syntex Corp. Sec.*

24  *Litig.*, 95 F.3d 922, 926 (9th Cir. 1996) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

25  1994)); *see also Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1109 (N.D. Cal. 2003)

26  (documents not "explicitly referenced in the Complaint," but on which the Complaint

27  "[i]mplicitly [r]elied" may be considered on a motion to dismiss).

28

_____     1

REQUEST FOR JUDICIAL NOTICE
Case No. 4:21-cv-04184-JSW

1    The Corporate Defendants request that the Court take judicial notice of the attached

2    application in connection with their accompanying Motion to Dismiss.  The application is also

3    incorporated by reference and integral to the complaint.  *See* Dkt. 55 (SAC) ¶ 24 ("I have

4    registered this accidental livestream with the U.S. Copyright Office.").  Defendants contend that

5    the allegedly infringed work is not copyrightable because it lacks creativity and is not a product

6    of human authorship.  Although Mr. Stebbins did register the video with the Copyright Office, he

7    admits in his complaint that the video was actually created when his "livestream software turned

8    on of its own accord without me realizing it.  It stayed on for nearly two hours before I realized it

9    was on and closed it down.  During this accidental livestream, my viewers were able to see me

10   engaging in mundane, daily activities." *Id.* ¶ 22.  Mr. Stebbins adds that "the only interesting

11   and memorable part of this otherwise boring and contentless livestream" were "strange noises"

12   that he "did not cause." *Id.* ¶ 23.

13   The attached application demonstrates that Mr. Stebbins did not disclose any of this

14   information to the Copyright Office.  In the application Mr. Stebbins characterizes the video as a

15   "Dramatic Work."  He does not explain (among other things) that the "livestream software

16   turned on of its own accord without [him] realizing it," and he does not disclose that "the only

17   interesting and memorable part" of this otherwise "contentless" video was not caused by him.

18   Dkt. 55 (SAC) ¶¶ 22-23.  This is more than enough to overcome the "presumption of the

19   validity" of Mr. Stebbins's copyright and "deny the plaintiff's prima facie case of infringement."

20   *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144-47 (9th Cir. 2003)

21   (citation omitted) (finding alleged copyright invalid notwithstanding its registration with the

22   Copyright Office, because information that was not disclosed in plaintiff's application showed

23   that the work lacked creativity); *see also, e.g.*, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.

24   1994) (finding that courts may, even at the pleading stage, rely on facts "contained in materials

25   of which the court may take judicial notice"); *Chavez v. Wash. Mut. Bank*, 2013 U.S. Dist.

26   LEXIS 79239, at *8-9 (N.D. Cal. June 5, 2013) ("[T]he Court need not accept as true allegations

27   contradicted by judicially noticeable facts, and the [c]ourt may look beyond the plaintiff's

28   complaint to matters of public record ….") (cleaned up).

---

1    The Corporate Defendants are also prepared to provide a copy of the Accidental

2    Livestream if requested by the Court.  *Savage v. Council on Am.-Islamic Rels., Inc.*, 2008 U.S.

3    Dist. LEXIS 60545, at *6 (N.D. Cal. July 25, 2008) (considering allegedly infringing content

4    referenced in the complaint on a motion for judgment on the pleadings as to fair use) (citing, e.g.,

5    *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1121-22 (N.D. Cal. 2002) (considering television

6    program referenced in, but not attached to, complaint)); *City of Inglewood v. Teixeira*, 2015 U.S.

7    Dist. LEXIS 114539, at *2-6, *15-17 (C.D. Cal. Aug. 20, 2015) (considering, on a motion to

8    dismiss, alleged YouTube videos that criticized plaintiff even though the videos were not

9    attached to the complaint, and dismissing complaint on grounds that those videos constituted fair

10   use); *Hughes v. Benjamin*, 437 F. Supp. 3d 382, 386 n.1 (S.D.N.Y. 2020) (considering YouTube

11   videos on motion to dismiss on fair use grounds, because those videos had been "incorporated by

12   reference into the Complaint").  If requested, the Corporate Defendants will follow the Court's

13   direction as to the manner in which the video should be submitted.

14

15   Dated: April 11, 2022                          Respectfully submitted,

16   For Discord, Inc., Defendant                   For Amazon.com, Inc., Defendant

17   _s/ James Orenstein_                            _s/ Sanjay Nangia_
18   James Orenstein (*pro hac vice*)               Sanjay Nangia
     ZWILLGEN PLLC                                  DAVIS WRIGHT TREMAINE LLP
19   183 Madison Ave., Suite 1504                   505 Montgomery Street, Suite 800
     New York, NY 10016                             San Francisco, CA 94111
20   Telephone: (646) 362-5590                      Telephone: (415) 276-6577
21   Email: Jamie.Orenstein@zwillgen.com            Email: sanjaynangia@dwt.com

22   For Alphabet Inc., Defendant

23   _s/ Jason Mollick_
24   Jason Mollick (*pro hac vice*)
     WILSON SONSINI GOODRICH
25   & ROSATI, P.C.
     1301 Avenue of the Americas, 40th Floor
26   New York, NY 10019
     Telephone: (212) 999-5800
27   E-Mail: jmollick@wsgr.com

28

_____   3

REQUEST FOR JUDICIAL NOTICE
Case No. 4:21-cv-04184-JSW

1                                           **SIGNATURE ATTESTATION**

2          I hereby attest that all signatories listed above, on whose behalf this motion is submitted,

3 concur in the filing's content and have authorized the filing.

4

5 DATED: April 11, 2022                  DAVIS WRIGHT TREMAINE LLP

6                              By /s/ *Sanjay M. Nangia*
                                   Sanjay M. Nangia

7                                    Attorneys for Defendant
                                   AMAZON.COM, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                   4

SER233

# EXHIBIT A



# COPY OF E-FILE APPLICATION

NOTE: The attached Application Report is a true representation of the information submitted to the Copyright Office in association with the electronic application for registration of material identified as **ACCIDENTAL LIVESTREAM FROM APRIL 10, 2021** service number **SR 1-10499343793**. In the course of the Copyright Office's consideration of the application, the submitted information may have been amended in accordance with the wishes of the applicant. However any such amendments are not reflected in this Application Report.   Any such amendments will be reflected via a comparison between the Application Report and the Registration Certificate.   Amendments may also be reflected in the correspondence records associated with an application.

The attached Application Template is meant to reflect the fields that are available to be populated in the application process.   The purpose of the Application Template is not to attempt to indicate the exact language used on the date upon which the application in question was submitted.   Rather, the purpose is to portray, and in a general sense explain, the fields that may be populated in an online application.

**SER235**

**Registration #:**   *-APPLICATION-*
**Service Request #:**   1-10499343793

## Mail Certificate

David Anthony Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601 United States

**Priority:**   Routine          **Application Date:**   May 25, 2021

## Correspondent

      **Name:**   David Anthony Stebbins
      **Email:**   acerthorn@yahoo.com
  **Address:**   123 W. Ridge Ave.
            APT D
            Harrison, AR 72601 United States

**SER236**

**Registration Number**

# *-APPLICATION-*

**Copyright Registration for One Work by One Author**
Registration issued pursuant to 37 CFR §202.3

## Title _____

| | |
|---|---|
| **Title of Work:** | Accidental Livestream from April 10, 2021 |

## Completion/Publication _____

| | |
|---|---|
| **Year of Completion:** | 2021 |
| **Date of 1st Publication:** | April 10, 2021 |
| **Nation of 1ˢᵗ Publication:** | United States |

## Author _____

| | |
|---|---|
| • **Author:** | Acerthorn |
| **Author Created:** | Dramatic Work |
| **Citizen of:** | United States |
| **Domiciled in:** | United States |
| **Pseudonymous:** | Yes |

## Copyright Claimant _____

| | |
|---|---|
| **Copyright Claimant:** | Acerthorn |
| | 123 W. Ridge Ave., APT D, Harrison, AR, 72601, United States |

## Certification _____

| | |
|---|---|
| **Name:** | David Stebbins, Author/Owner |
| **Date:** | May 25, 2021 |

| | |
|---|---|
| **Copyright Office notes:** | Regarding basis for registration: A work may be registered with the Single Application only if the following requirements have been met: 1) The registration covers one work; 2) The work must be created by one individual; 3) |

Page 1 of 2

All of the material contained within the work must be created by the same individual; 4) The author and the owner of the work must be the same person, and that person must own all of the rights in the work; 5) The work cannot be a work made for hire.

**SER238**

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                              PLAINTIFF

VS.                              Case 3:21-cv-04184-JSW

KARL POLANO, et al                                          DEFENDANTS

**NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE AS TO ALPHABET**

**INC., DISCORD INC., AND AMAZON.COM INC.**

    Comes now, pro se Plaintiff David Stebbins, who hereby submits the following to dismiss Alphabet Inc., Discord Inc., and Amazon.com Inc. without prejudice as defendants in this action, pursuant to Fed.R.Civ.P. 41(a).

1. Alphabet Inc. has indicated that it plans to needlessly delay the entry of judgment in this case, right as I was about to get a default judgment, by raising frivolous challenges to the validity of the copyright to the April 10, 2021 livestream. If they are allowed to do this, this would only result in tedious delays in a case where I was about to get a default judgment otherwise.

2. I contacted counsel for the other two nominal defendants, asking them if they had any intention of litigating the issue. They didn't respond.

3. This is not a surrender. This is a tactical retreat. I wish to have this action dismissed *without prejudice*, so I can re-file the case again, seeking to obtain the prospective injunctive relief under 17 USC § 512(j) in the near future. This is just being done so that Alphabet (and possibly the other nominal defendants) cannot delay this case that is already in the eleventh hour, just out of sheer pettiness. With this dismissal, the case is now ready for default judgment and there's no two ways about it.

4. Since the nominal defendants have not entered their answers yet, the Court is without

Case 3:21-cv-04184-JSW

**SER239**

discretion to deny this motion.

So notified on this, the 11th day of April, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

Case 3:21-cv-04184-JSW

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                              PLAINTIFF

VS.                                    Case 3:21-cv-04184-JSW

KARL POLANO, et al                                         DEFENDANTS

### MOTION FOR DEFAULT JUDGMENT AS TO KARL POLANO, RAUL MATEAS, AND FREDERICK ALLISON

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Motion for Default Judgment as to the individual defendants in the above-styled action.

### LIMITATION OF SCOPE

1.      There are three nominal defendants in this case. In this case, I seek prospective injunctive relief against them, ordering them to terminate the individual defendants accounts. I have also sought leave to file a Third Amended Complaint to hold the individual defendants liable for the infringement of an additional copyrighted work, a collaborative stream done on April 18, 2021 in which I am a co-author, but where the individual defendants have distributed that stream without paying me the statutorily-required 50% cut of the revenue.

2.      This default judgment does not dispose of any of those claims. It only seeks to dispose of the claims for infringement of the April 10, 2021 stream and DMCA Misrepresentation that the individual defendants were notified of when I served them with the Second Amended Complaint. As long as I stick only to that relief, I see no reason why the Court should not go ahead and grant this motion, so I can start collecting on the monetary judgment and start enforcing the injunctions against them, while we proceed to litigate the other claims.

### BACKGROUND

3.      I have brought the Second Amended Complaint against defendants Karl Polano, Raul

Case 3:21-cv-04184-JSW                          MOTION FOR DEFAULT JUDGMENT

Mateas, and Frederick Allison for copyright infringement and DMCA Misrepresentation in violation of 17 USC § 512(f)(1). I also sought to include an intentional infliction of emotional distress tort, as well as a DMCA misrepresentation claim in violation of 17 USC § 512(f)(2), but the Court dismissed those claims.

4.      On October 8, 2021, Frederick Allison was served with process. See **Dkt. 90-2**. On November 2, 2021, I moved for entry of default (see **Dkt. 90**), and default was subsequently entered on November 4, 2021. See **Dkt. 91**.

5.      I moved for default judgment against Frederick Allison (see **Dkt. 92**), but the Court denied the motion without prejudice, primarily on the grounds that, because the individual defendants are alleged to have acted in cooperation and collusion with one another for the common goal of ruining my career out of pure hatred, malice, and spite, a default judgment against Frederick Allison could have prejudicial effect against the other two individual defendants, who had not yet been served with process. See **Dkt. 99**.

6.      On January 7, 2022, Raul Mateas was served with process pursuant to the terms of the Hague Convention. See **Dkt. 121**. The Court did not receive notice of this service until March 28, 2022, which means that, by the time it was filed, I was already eligible for an entry of default. For this reason, I moved for, and was subsequently granted, an entry of default by the clerk later that same day. See **Dkt. 122 & 123**. Because the Court had made itself clear when it denied the motion for default judgment against Allison, I did not move for default judgment against Mateas.

7.      On January 28, 2022, the court received and subsequently filed notice that summons was returned unexecuted as to Karl Polano. See **Dkt. 101**. To rectify this, I moved for, and was subsequently granted, leave to serve Karl Polano by email. See **Dkt. 102 & 117**. I then served Polano, pursuant to the Court's instructions, on March 15, 2022. See **Dkt. 118**. Despite being served pursuant to the Court's instructions in a manner the court deemed to comport substantively with due process, Polano failed to enter an appearance within 21 days, so I moved for and was subsequently given an entry of default as to him. See **Dkt. 124 & 125**.

8.      Now that all three individual defendants have been entered in default, there is no longer any reason to put off moving for default judgment.

Case 3:21-cv-04184-JSW                          MOTION FOR DEFAULT JUDGMENT

9.      I therefore ask the Court to order the individual defendants to cease and desist their infringement of my April 10, 2021 livestream. I also ask the Court to award damages and costs incurred.

### NEW RELIEF REQUESTED

10.      When I am receiving a default judgment, the amount of *damages* I am entitled to is limited by what I requested in the complaint. However, nothing in the Federal Rules of Civil Procedure state that the *injunctive relief* am eligible for is limited by what is requested in the complaint. Also, while all factual allegations in the complaint, except the extent of damages, are admitted by the defendants if they do not deny them (which means that all facts in the complaint are admitted when the defendant is entered in default), there is nothing in the law stating that I cannot have additional facts recognized as true by the Court, so long as I provide evidence for them.

11.      In light of these two nuances in the law, I have a few additional injunctions that I wish to ask the Court for in this case.

12.      Since the commencement of this litigation, the individual defendants have continued their hate campaign against me, spreading my copyrighted content (without any claims to fair use) amongst other creators, who have in turn spread the claims on their own social media platforms. This has caused the marketability of my copyrighted work to be completely and thoroughly devalued. I can no longer make any money off of the April 10, 2021 livestream because everybody now has free access to it.

13.      Hands down, the most damaging example of this happening is with the accomplice who goes by the online psuedonym "SidAlpha." He has posted a video that uses my clips from the April 10, 2021 stream. He only got those clips because Polnao, Allison, and Mateas gave him the clips for him to use to smear me. As of the time of this writing, the video has approximately 90,000 views. Because my livestream is *supposed* to be restricted only to those who pay my channel $20 per month, that means that every view that video gets amounts to actual damages of $20 each.

14.      To repair this damage, I ask that the judge issue an injunction to the individual defendants, ordering them to cease and desist all unauthorized distribution, even if it is being

Case 3:21-cv-04184-JSW                                    MOTION FOR DEFAULT JUDGMENT

distributed by other people acting on behalf of the individual defendants, all without there being even so much as a streisand effect.

15.      This is, in my opinion, a reasonable extension of the injunctive relief I request in ¶ 122 of the Second Amended Complaint. In that complaint, I asked the Court to enjoin the individual defendants from continuing their infringing behavior. Here, I ask the Court to order the individual defendants to clean up the mess they have already made, not simply to ensure that the mess never gets any bigger than it already has.

16.      This may sound like an extreme, even impossible to comply with, injunction, but it is one that I feel is warranted. Besides, even if the individual defendants can never comply with this injunction because it is impossible, maybe they should have thought about that when they were willfully and maliciously setting out to cause this injury with the express intent of making it impossible to fix. At that point, the impossibility should be *their* problem, not mine!

17.      I also ask that they likewise do the same with the sharing and distribution of all of my private information. As I said in the Second Amended Complaint, it was only thanks to me issuing DMCA takedowns against their infringing behavior that they learned of my personal information. See **Dkt. 55, 31 & 33**. The harassment that I have suffered as a result of the sharing of this personal information has been nothing short of egregious.

18.      In response to this, I ask that the individual defendants not only be ordered to cease and desist their spreading of my personal information (unless that information can, and was, acquired entirely from the content I willingly put out there that is not in any way, shape, or form a response to their illegal behavior, and is not acquired for any malicious purpose whatsoever), but they should also be ordered to remove any instances of my personal information that have made it onto the Internet as a direct or indirect result of their malicious actions, without even so much as a streisand effect. Again, this may be an extreme injunction, but if the individual defendants ever find themselves unable to comply with it no matter what they do, maybe they should have thought about that when they were hoping to pass said impossibility onto me.

19.      Last but not least, I have requested a grand total of $3,550,000 in total damages in the Second Amended Complaint. I admit that I am limited to those damages. Normally, in a case for statutory damages, I can only recover one set of statutory damages for each copyrighted work

Case 3:21-cv-04184-JSW                                    MOTION FOR DEFAULT JUDGMENT

that is infringed by the defendant, no matter how many times it was infringed. At the time I drafted the Second Amended Complaint, I did not know that. However, now that SidAlpha has distributed my April 10 livestream over 90,000 times, and each of those views amounts to actual (not statutory) damages of $20 per view, I ask for actual damages of $1,800,000 from the individual defendants. This is still less than the money I requested in the complaint, so I am still eligible for it, even though I am getting these damages under a different theory of liability than what I articulated in the complaint.

20.     Last but not least, in addition to all of this, I request the totality of the injunctive relief that I requested in my Second Amended Complaint.

### ATTACHMENTS & MEMORANDUM

21.     Please find, attached to this motion, the following documents:

(a)     **Exhibit A** – An email conversation with a Youtube employee, showing that my Youtube channel was hijacked on March 18, 2022.

(b)     **Exhibit B** – A message from Frederick Allison on Reddit where he took credit for having hacked my Youtube channel.

(c)     **Exhibits C-P** – A non-exclusive list of representative examples of harassing messages that I have received from people who are only engaging in this behavior because Polano, Mateas, and Allison have stirred up so much resentment and hatred against me.

(d)     **Exhibit Q** – A video of the "Acerthorn Pinata Bashing" thread, proving that the individual defendants have sought out other communities to spread their hatred and doxxing against me.

(e)     **Exhibit R** – SidAlpha's video about me, which has over 90,000 views, as well as an admission of his that he acquired the clip from the April 10, 2021 livestream because the individual defendants gave it to him to use in his video, not because he paid me for the license.

(f)     **Exhibit S** – An excerpt from a draft motion I have prepared. Since both SidAlpha and Alphabet Inc. have telegraphed that they plan to challenge the validity of the copyright of the April 10 livestream on the grounds that it was accidental, I have prepared a motion. This exhibit is an excerpt from that motion. This does not contain every argument that I plan to

make, only enough of the arguments to give the defendants and court a firm understanding of
just how difficult it will be for them to successfully invalidate the copyright.

22.     I am also attaching a Memorandum of Points and Authorities in Support of this Motion,
the contents of which are hereby incorporated by reference.

23.     I also seek to incorporate, by reference, the motions, arguments, and attachments
contained in my Motion for Default Judgment as to Frederick Allison (**Dkt. 92 & 97**), my
Second Motion for Preliminary Injunction (**Dkt. 106**) as well as my recently-filed Motion for
Sanctions as to Karl Polano (**Dkt. 119**). Very few of my arguments and positions from those
motions have changed, and the exhibits attached thereto are crucial in showing just how far the
individual defendants have gone to ruin me, and how malicious they have acted while doing so.

## CONCLUSION

24.     Wherefore, premises considered, I respectfully request that this Motion for Default
Judgment be granted. So requested on this, the 7th day of April, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

Case 3:21-cv-04184-JSW                              MOTION FOR DEFAULT JUDGMENT

**SER246**

## YouTube Support Request [8-9189000032002]

From: David Stebbins (stebbinsd@yahoo.com)

To:     acerthorn@yahoo.com

Date:   Saturday, March 19, 2022, 03:50 AM CDT

Hi David,

Thanks for reaching out.

We appreciate all the information that you gave us, and we're sorry to hear that your account may have been hijacked. This is very since your recovery information has been changed by someone. We'll do our best to help you out.

We've just received an update from our internal team and they have confirmed that your channel has been compromised on 2022-03-19. Here are the changes made by the hijackers:

- Your Google Account has been disabled.
- Hijacker changed the primary email  from acerthorn@gmail.com to midisig755@tourcc.com.
- Hijacker changed your phone number and secondary mail ID .
- Hijacker updated 2 step verifications.
- Hijacker added 2 step verifications (primary number).
- Hijacker changed your channel name and logo.

To remove the hacker's access to your Google account, acerthorn@gmail.com, they needed to disable it. For us to proceed further, we need your assistance to recover your Google account first by following the steps below:

Step 1: Automatic, instant recovery: If you follow the steps below and pass, then you should be able to get back into your account instantly via our automated system.

1. Clear your browser's cache & cookies.
2. Visit the Account recovery page.
3. Enter the Google Account or Gmail you have trouble accessing.
4. Answer as many questions to the best of your knowledge or click Try another way.
5. Please note: There is no negative marking, so feel free to answer all questions. This increases your probability of getting back into your account.

Step 2: Delayed, manual recovery: If the steps above don't work for you, then file a follow-up escalations claim:

1. Visit the Special Account recovery page (This page directs you to a separate path).
2. Enter the Google Account or Gmail address that you are having difficulty accessing.
3. Click "Try another way" until you reach the last page where it will ask you to put in your alternative working email.
4. After you enter a contact email address that you have access to (this will be used to reach out to you, if we need any additional information), you will receive a code that you also need to put in to file a follow-up escalation claim.

You will also need to provide the email address of the affected Google account, and a working contact email address. I will be able to follow up again on the case. Here are some tips to complete account recovery steps.

Once you successfully recovered your Google account, please answer these follow-up questions for us to proceed further:

1. What is your recovery sign-in IP address? Please visit http://www.whatismyip.com and reply with the number that appears in the green bar at the top of the page.
2. What was the recovery sign in location and device from where the channel was being operated?
3. What were the new changes/updates made to the account, AdSense, and channel post recovery?

**SER247**

Hope to hear from you soon. Feel free to reply if you have other questions.

Best,

Google YouTube Team

Google | *YouTube Team* | www.youtube.com

*We value your feedback! If you receive a survey, please take a minute to rate your support experience. And don't forget to visit the Creator Hub for more help growing your channel!* Check it out

*Protect your YouTube channel with 2-Step Verification.* Get Started

## Report a potential account hijacking to our support team

First Name:
David

Last Name:
Stebbins

Your contact email address:
acerthorn@yahoo.com

Channel ID:
UCPmwIVf4uT831Xdcc3E9kuQ

When did you create your channel?
02/29/2017

What is the primary email address associated with your channel/YouTube sign-in?
acerthorn@gmail.com

Can you currently sign in or do you have access using the above email address?
No

When was the last time you signed in?
03/18/2022

Which of the following categories best describes the the content on your channel?
Gaming

Do you remember the video ID of the last video uploaded?
No

Describe the content of the last video that you uploaded to the channel.
It was a series of shorts videos, all under the banner "Things WWE 2k22 Did Wrong."

Did you notice any new videos on your channel that you didn't upload yourself?
No

Did you notice any other changes to your channel?
Yes

Please describe the changes you noticed
He changed my channel's name, art, icon, and made all my videos private or unlisted.

Do you have a recovery email address and/or phone number set up?
Email

Please specify the account recovery email.
acerthorn@yahoo.com

Is the channel currently associated with any Brand Account?
Yes

Please describe any recent changes that have been made to the Brand Account.
Acerthorn

Is your channel linked to an AdSense account?
No

Is your AdSense linked to any Multi-Channel Network (MCN)?
No

What devices do you usually use to sign in to or run your channel?
My computer and my smartphone

Have you signed into your channel from any different devices in the last 6 months?
No

What is your IP address?
72.206.7.183

What is your sign-up country/region for your channel?
United States

What is the location you usually sign in/run the channel from?
United States, Arkansas, Harrison

Are you currently in the same location as the one you usually sign in/run the channel from?
Yes

Did you access or sign in to your channel from any different locations or devices in the last 6 months?
No

**SER249**

When do you think you were hacked?

03/18/2022


Did you give access or share your password to your channel/Google account to anyone?

No


Are you using any VPN/app/browser to sign in to the channel or account?

Yes


Please share the location used.

Harrison, AR


Did you get any emails or click any links for channel sponsors or advertising requests?

No


Did you recently download any software provided by brands or potential sponsors?

No


Share more details about how you may have gotten hijacked below:

A horrible person who goes by the psuedonym "InitiativeKookie" has hacked my account and sabotaged it.
He took away my 2-Factor Authentication and switching all recovery options to ones he controls, so I cannot
recover my account. He even contacted me on Reddit and bragged about doing this.


Attach screenshots or other files for supplemental info.

22-03-18 Hacking My Youtube Account.png


By checking this box, you authorize a Google support specialist to create a new Brand Account on your behalf, if necessary, to
recover your hacked channel.

I Authorize





Chat
All
DMs
Group
Invites
InitiativeKookie693
thanks for you youtube account dickhead
Chats
Mobile-Astronomer644
I can't take a picture right now. Outside m...
Duckbehan502
Hows everything going se lot haters and p...
Onion-Prince
It's no nostalgia
acerthorn
Gambinochan: must have been a troll insi...
AsteriskRX
You are a Reddit admin, right? I mentione...
Ok-Essay5122
shared a link
Few-Fee9176
Can you give me a direct message link to t...
kayleii77
Had over 200 people join
WhitneyJames
You know, I have a Youtube channel wher...
TheRiddler315
TheRiddler315: sent a snoomoji
Chat Request
InitiativeKookie693
Members
Today
thanks for your youtube account dickhead
[Tesla&SpaceX] is a much more appealing name
took a while to get but hey
Accept to chat with InitiativeKookie693. If you ignore, the chat request will be removed, and we won't let the sender know.
Mark as spam
Ignore
Accept

**SER252**

## Hello again

From:  Santa Claus (acerthornisnaughty@gmail.com)

To:      acerthorn@yahoo.com

Date:  Sunday, February 20, 2022, 06:25 PM CST

You have been very busy since Christmas, you have been even naughtier than last year. You are now on the naught naught list for everything you've done.

**SER253**

## Hey

From:  Mark Jansen (markwilemail@gmail.com)

To:      acerthorn@yahoo.com

Date:  Monday, February 21, 2022, 02:56 AM CST

Hey Acerthorn

I think you got the wrong medical diagnose. I think you are like me, having Asperger + ADHD. You can proof that by trying Ritalin. You will lose your anger, restlessness, and even enjoy life, immediately.

And afterwards (if successful), you could sue the state/healthcare for that life-ruining misdiagnosis they gave you.

I personally want a class-action lawsuit all over the world. It's time for a paradigm-shift in psychology. Many people like us, need help. So I need your help.


Let me know what you think.

Mark Jansen

# SER254

## how have you been buddy

From:  Eric Marciogn (vegetagoku6666@gmail.com)

To:     acerthorn@yahoo.com

Date:  Tuesday, February 22, 2022, 05:52 PM CST

hey Mr. Stebbins how have you been? I assume you have completely shit yourself when sid's video dropped. Any more false DMCAs planned in the future or are you scared of loosing your channel due to false strike's. I really enjoyed your video where you bark like a dog and threaten someone off camera. I have to ask tho did you have someone tied up off screen in a gimp suit cause we all know your into to some pretty freaky shit Stebbins. We love it when raccoons dig up trash about you you filthy little boy. what would you say your body type is cause it looks like your doing your best impression of a pile of dog shit. You need a god damned maid but im sure you cant get one due to the restraining orders and all. And in closing i really want to know whos next on your list for a knife to the face. Fuck you daddy stabbins do the world a favor and keep the gag ball in.

Hugs and kisses Eugene. T. Magnificent

**SER255**

## Copyright abuse

From:  Sally Acorn (acornsally192@gmail.com)

To:      acerthorn@yahoo.com

Date:  Tuesday, February 22, 2022, 06:06 PM CST

So it's pretty obvious your apology was fake due to Artemis's YouTube still be terminated and your now unable to unfuck up the shit you've done, especially since the Kiwifarms has been talking about you.

You wanted to be a big YouTuber, congratulations you're infamous now!

**SER256**

## Sid alpha

From:  Stephen Thortonberry (stephenthortonberry@gmail.com)

To:      acerthorn@yahoo.com

Date:  Tuesday, February 22, 2022, 09:10 PM CST

Dude, don't ever try to copyright claim his video. His video falls under fair use no matter if you like it or not. You simply don't like it when people call you out on your frivolous actions and it's clear that you have little to no understanding of how the law works.

Give it up, man. You're just trying to make a quick buck and you're sick and deranged.

New comment on your post: "Why I refuse to listen to people telling..."

From: YouTube (noreply@youtube.com)

To:   acerthorn@gmail.com

Date: Sunday, March 6, 2022, 09:58 PM CST



David Pouet commented on your post

 Why I refuse to listen to people telling...

 **David Pouet**

You're completely out of touch with reality.

**REPLY    MANAGE ALL COMMENTS**

If you no longer wish to receive emails about comments and replies, you can unsubscribe.

© 2022 YouTube, LLC 901 Cherry Ave, San Bruno, CA 94066

 

## Sad Stabbins

From: Bijan N. (bijan112@hotmail.de)

To:     acerthorn@yahoo.com

Date: Friday, March 18, 2022, 04:10 PM CDT

Oooooh, poor booboo, did your account get taken away from you?

Well, now you know what that feels like dickhead. Just ask Emily. Good luck trying to blame this on everyone again. I certainly had no hand in it, but it is still karmic and funny as fuck. Eventually, the abuser will get abused too. So get fucked Acer!

Gesendet von Mail für Windows

**SER259**

## Congratulations on getting Mister Metekour to cover you.

From:  Shon Brennan (shonbrennan@gmail.com)

To:      acerthorn@yahoo.com

Date:  Sunday, April 3, 2022, 04:26 PM CDT

You know you made it big as a lolcow when someone like our weatherman Jim to dedicate a whole livestream to you which he'll do in late april. You realize that you will be up to your eyeballs in trolls with memes and more videos and all the stuff which you failed at epically trying to censor. I can't wait to see the memes they'll make about you since I guess a bunch of unflattering pictures of you will be discussed as well as your arrest from you abusing your Father.

Enjoy your last month of peace not that you deserve it since you are a shitty human being,

Shon

**SER260**

## An important notice.

From:  Viroza The Witch (archivingwitch@gmail.com)

To:      acerthorn@yahoo.com

Date:  Tuesday, March 22, 2022, 04:43 PM CDT

To which I correspond with thee AcerThorn.

I would like to inform that thou are both fat, and gay.

**SER261**

## coward

From:  Skibbity Viddity (thedropoutscout@gmail.com)

To:      acerthorn@yahoo.com

Date:   Monday, December 20, 2021, 01:26 PM CST

Youre a coward and dont forget that. Id rather ruin your career online by burning what you already made so far through exposing you than steal your money through legal battles. Tho im still tempted to fight it Mr David "acerthorn" Stebbins. Tho you stabbing your own father makes me even more tempted to just watch you like an animal in a cage like you really are, because youre a fucking lunatic.

**SER262**

## lol youre sad

From:  Skibbity Viddity (skibbityviddity@gmail.com)

To:      acerthorn@yahoo.com

Date:  Monday, December 20, 2021, 03:35 PM CST

lol youre sad abusing the report system because people hurt your feelings. Good job Mr Stebbins, you stabbed your dad and are a laughing stock. Continue to rot in your disgusting apartment and to continue struggling with your mental disabilities. Youre a pathetic douche

**SER263**

take down

From:  Skibbity Viddity (thedropoutscout@gmail.com)

To:      acerthorn@gmail.com

Date:  Monday, December 20, 2021, 03:38 PM CST

youre a loser and hope youll never forget that you stabbed you own dad in the face. Congrats abusing DMCA because your feelings get hurt. manchild



# Bibbs

This is the beginning of your direct message history with **@Bibbs**.

No servers in common • Unblock Report Spam

December 20, 2021

**acerthorn** 12/20/2021
Who are you?

× 2 blocked messages — Collapse messages

**Bibbs** 12/20/2021

Hey its skibbity you coward. Just letting you know we can go down this road. But most of the stream is my argument, my voice and yeah you can argue its you stream. Im a creator that was invited on thus giving me the right to upload it as well seeing as you edited it down and ontop of that you never linked my profile anywhere. I suggest you stop trying to intimidate and take your own advice and speak to a legit attourney before you drain the little bit of money you have

**You cannot send messages to a user you have blocked.** Unblock

**SER265**

This is the Acerthorn Pinata Bashing thread. You may have to continuously pause and unpause in order to be able to read everything.

Part 1: https://youtu.be/1xl0XEonWB4

Part 2: https://youtu.be/RVmAAyFeKHA

SidAlpha's video can be found at the following URL:

https://www.youtube.com/watch?v=WB-Xd1qDKIY

**SER267**

## FACTS OF THE CASE

1.      I am a Youtuber and Twitch streamer who trades under the psuedonym "Acerthorn." On April 10, 2021, my streaming software (OBS Studio) came on without me realizing it. The exact reason it came on appears to be lost to history. Maybe I accidentally pressed the key on my keyboard to turn it on. Maybe it was a glitch. We may never know.

2.      I registered the copyright with the United States Copyright Office (or USCO, for short) on May 26, 2021, within three months of publication. Registration was granted and was given the registration number of PA0002305616.

3.      The Court can take judicial notice of the fact that, while filling out the application for copyright registration, there is no space provided whereby the applicant can concede that the work was created by accident. However, the title of the April 10 stream, as it appears in the Public Catalog of registered copyrights, literally contains the word "Accidental[1]," so USCO almost certainly realized that it was created by accident, and still chose to grant registration nonetheless.

4.      The stream is supposed to be gated behind a paywall. If I were to provide a link to the stream in this brief, it would become public record, which means that anybody could legally access it without paying me for it. To safeguard against this, I will send an email to the judge's chambers (and also to all parties, so it will not be an ex parte communication) providing the court with a copy of the work, so it will not be public record.

5.      In any event, because of this accidental turning on of my streaming software, my viewers could see me engaging in my daily activities without me realizing they could see it. At timestamp 40:02, you can see me taking a bite of hot dog before getting up and walking off camera. Almost immediately after I go off frame, you can hear strange noises that sound like barking and snarling. It is disputed whether or not I personally made these noises.

6.      There are plenty of other moments in the stream when I did indeed engage in acts of individual expression, where I unquestionably am the human author thereof. The primary source of me engaging in acts of personal expression are the facial expressions I make when viewing Youtube videos. A non-exhaustive list of representative examples include, but are not limited to the following timestamps:

   (a)      1:25:33 - 1:25:39

   (b)      1:27:50 - 1:27:54

   (c)      1:32:16 - 1:32:21

   (d)      1:33:57 - 1:34:00

---

1   See https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?v1=1&ti=1,1&Search%5FArg=Acerthorn&Search%5FCode=NALL&CNT=25&PID=qYyGIXMyPrY71aRvxAPg7xY9uie&SEQ=20220228160000&SID=1

(e)      1:35:46 - 1:35:53

(f)      1:36:52 - 1:37:04

(g)      1:38:10 - 1:38:15

7.      If I were taking a selfie, any one of those faces would be singularly sufficient individual creative expression to be entitled to copyright protection. Now, whether these expressions constitute sufficient commentary or criticism of the videos I was watching as to entitle me to a fair use defense for the infringement of those videos is another story, but since nobody with legal standing to sue me for that has yet to do so, that is not an issue we need adjudicate here.

8.      In addition to that, there is the events which occur at timestamp 32:39 – 32:41, where you can hear me saying the words "kill you." Who exactly am I threatening to kill? *Am I even* threatening to kill anyone at all, or was I just thinking out loud? Most likely the latter, but it is ultimately immaterial.

9.      These acts of personal expression, although scarce and de minimus, are nonetheless sufficient to create the minimum amount of creativity needed for copyright protection, even on their own, much less when combined together into one livestream.

10.     The defendants in this case argue that my stream is not protectable by copyright because it only happened by accident.

… … … … … … … … … … … … … … … … … … … … … … … … … … … … … … … … … …
… … … … … … … … … … … … … … … … … … … … … … … … … … … … … … … … … …
… … … … … … … … … … … … … … … … … … … … … … … … … … … … … … … … … …

### Work of Authorship

11.     In the event that the Court insists on reviewing the defendants' challenges to the validity of my copyright, the defendants still cannot prevail.

12.     To be eligible for copyright protection, a work must satisfy two requirements: It must be a "work of authorship" and it must be "fixed into a tangible medium of expression." See 17 USC § 102(a). To be considered a "work of authorship," two sub-criteria must be met: The expression must be created by a human being, and it must possess a minimum amount of creativity.

### Human Creation

13.     Copyright law in the United States does not give protection to works of art that are not created by human beings. Things such as a "photograph taken by a monkey," a "mural painted by an elephant," or a "claim based on driftwood that has been shaped and smoothed by the ocean," are not eligible for copyright protection. Similarly, "works produced by a machine or mere mechanical process that operates randomly or automatically without any creative input or intervention from a human author" is likewise not eligible for copyright protection. See https://www.copyright.gov/comp3/chap300/ch300-

copyrightable-authorship.pdf (pp. 21-22).

14.     It is upon this theory that the defendants seek to invalidate my copyright. But it is important to understand just what is being stated. The law does not state that the recording equipment coming on by mistake invalidates a copyright. It states that the *creation being recorded* must be made by a human. "For example, if an artist draws a faithful reproduction of a flower, she probably won't be able to prevent another artist from creating a very similar drawing of a flower since the flower belongs in the public domain." See https://www.findlaw.com/smallbusiness/intellectual-property/using-design-patents-and-copyrights-to-protect-nature-art.html. In this example, the drawing itself was done by a human, but the thing being drawn – a 1 to 1 recreation of a flower – is naturally occurring, and therefore not subject to copyright protection.

15.     In the instant case, the facial expressions mentioned in ¶¶ 6-8 of this memorandum were unquestionably created by a human, even if I never intended for these expressions to ever escape the privacy of my home. As a result, the "human authorship" requirement is satisfied.

<u>Minimum Creativity</u>

16.     To be eligible for copyright protection, at least a minimum amount of creativity must be part of the work. Works that are purely factual in nature, with no creativity behind them whatsoever (such as phone books or databases) are not subject to copyright protection. See Feist Publications, Inc. v. Rural Telephone Service Co., 499 US 340 (1991). However, "the requisite level of creativity is extremely low; even a slight amount will suffice." See *id* at 345.

17.     The acts of expression mentioned in ¶¶ 6-8 of this Memorandum suffice to create the minimum creativity requirement. They may be scarce and minimal, but the law makes it clear that "minimal" is all that is required.

18.     The individual defendants claim that I am not entitled to copyright protection on the grounds that, because the stream was an accident, it is a "factual" work, and factual works are not eligible for copyright. This is not the law. Biographies, documentaries, and textbooks are just three examples of predominately factual works that are still eligible for copyright protection. "Simply because a [work] documents an event does not turn a [visual] representation into a factual recitation." See Monge v. Maya Magazines, Inc., 688 F. 3d 1164, 1177 (9th Cir. 2012). Rather, works that are *purely* factual in nature, with no creativity whatsoever, are not eligible for copyright protection. See Feist, supra. But only a small amount of creativity can overcome that restriction, and I have demonstrated that.

19.     Now, if the individual defendants wanted to raise the affirmative defense of fair use, then you could make the argument that the second factor of fair use weighs in their favor. But even then, the second factor is typically considered the least important factor in a fair use determination, so it still

barely does the individual defendants any favors at all.

20.     Put simply, there is nothing in the law even remotely suggesting that an accidental stream cannot be copyrighted, as long as it otherwise contains sufficient elements for copyright protection, which is human authorship and a minimal creative spark, just because the streaming software turned on by mistake. In fact, there is some precedent stating the opposite! It isn't from the Ninth Circuit, and it even predates the modern Copyright Act of 1976, but it is still there. I am referring to the case of Alfred Bell & Co. v. Catalda Fine Arts, 191 F. 2d 99 (2nd Cir. 1951), which stated that, while the original intent of the author was to create a faithful, 1-to-1 recreation of a public domain work (which would not be entitled to renewed copyright protection), he nonetheless made slight variations in the performance of the paintings. Despite these variations being accidental, they were nonetheless held by the second circuit to be sufficient grounds for an independent copyright, holding that "even if their substantial departures from the paintings were inadvertent, the copyrights would be valid. A copyist's bad eyesight or defective musculature, or a shock caused by a clap of thunder, may yield sufficiently distinguishable variations. Having hit upon such a variation unintentionally, the 'author' may adopt it as his and copyright it." See *id* at 105.

21.     So there is indeed some precedent that accidental works are still subject to copyright protection. However, there is one additional element for copyright protection that needs to be addressed.

**Tangible Medium of Expression**

22.      This is where the "accident" actually happened. When I say the stream was an "accidental livestream," this is the part that I am referring to: Not any of the behavior that I exhibited during that livestream, but the fact that my stream was even turned on in the first place. Therefore, if the defendants wish to attack the validity of my copyright solely on the grounds that it was accidental, this is the part they need to attack.

23.     To be eligible for copyright, the work must be "fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." See 17 USC § 102(a). "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." See 17 USC § 101.

24.     The most important phrase in that definition, to the extent it matters in this case, is "by or under the authority of the author."

25.     So this begs the question: When I say that the stream was *accidental*, what exactly does that

mean? Obviously, it does not mean that I turned on the stream software manually and deliberately. But if that is not what happened, then how did it come on?

26.    There are two possible explanations for how exactly the stream came on:

- **Method #1**: I had accidentally pressed the key on my keyboard to turn the stream on without realizing I had done it.

- **Method #2**: The stream software came on entirely of its own accord, without any input from me, accidental or otherwise.

27.    Method #1 is the more likely explanation, because if you look at the very start of the accidental stream, you can see that I am clearly sitting at my computer and typing at the keyboard. This makes it highly likely that the stream came on as a result of a single, errant keystroke.

28.    But if that is what happened, then the fixation into a tangible medium of expression was still done *by the author*, just without the author realizing he had done it.

### "Under the Authority" of the author

29.    This leaves Method #2 as the individual defendant's last bastion of hope for claiming that the stream was not "fixed" within the definition of the statute, and therefore invalidating my copyright.

<u>Mere metaphysical doubt</u>

30.    Now before I continue, I want to make this perfectly clear: Even if the Court disagrees with my upcoming argument, that does not save the defendants, or even necessarily reprieve them. In this section, I am not going to argue that Method #2 is not what happened; I am going to argue that, even if Method #2 is what happened, it is legally immaterial because my copyright is still valid nonetheless. Remember that this copyright is registered with the US Copyright Office. This means my copyright is presumed valid. While this presumption can be overcome with evidence, it is the defendants' burden to produce said evidence. I don't have to prove that my copyright is valid (although I am accepting that burden for the purposes of this motion); they have to prove that it is invalid.

31.    So even if the Court disagrees with my upcoming argument that Method #2 is legally irrelevant, that alone does not save the defendants. Even then, they still have to *prove* that Method #2 is, in fact, what actually happened. They will almost certainly not be able to prove this, as the metadata needed to prove the origins of that specific stream (A) most likely no longer exist, (B) may never have existed in the first place, and (C) would be stored in my computer's logs anyway (which are not accessible to the public), and since I had no reason to believe that those logs would be relevant to this case until months later, I most likely would have purged them when I performed regular maintenance on this computer because I had no reason to think to keep them.

32.    Because the defendants have a one in a million chance of proving these facts even if they could

**SER272**

legally exonerate them, the Court should still grant me judgment as a matter of law, because their odds of prevailing are just that: One in a million. "The issue of fact must be genuine. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 US 574, 586 (1986) (citations and quotations omitted).

33.     So even if Method #2 could potentially exonerate the defendants, the Court should still grant me judgment in my favor unless the individual defendants can show that they have a reasonable likelihood of proving that if they had discovery.

34.     Anyway, let's now discuss …

<center>"Under the Authority" of the author</center>

35.     There is, not surprisingly, very little precedent on this matter. The closest case law I was able to dig up was the 1977 Supreme Court case of Zacchini v. Scripps-Howard Broadcasting Co., 433 US 562 (1977). However, even this case law is troublesome, seeing as it is not even a copyright case; it is a *right of publicity* case! However, several cases from the appellate courts have referenced this case while discussing the scope of the "by or under the authority of the author" clause of the Copyright Act, so there is at least a small amount of precedential value we can salvage from this case.

36.     In Zacchini, the plaintiff had not consented to having his daredevil act video-taped by the defendant (who was a news media outlet), and sued for a violation of his right of publicity. Copyright cases that have referenced this case use this as an example of how a work, although fixed into a tangible medium of expression, was not done "by or under the authority of" the plaintiff, and therefore is not eligible for copyright protection. See Fleet v. CBS, INC., 50 Cal. App. 4Th 1911, 1920 n. 5 (1996); see also Baltimore Orioles v. Major League Baseball Players, 805 F. 2d 663, 675 n. 22 (7th Cir. 1986).

37.     From this, we can piece together a rough guiding principle that "under the authority of the author" means that the author *consents* to having his work fixed into a tangible medium of expression. In other words, author consent creates author authority. So, with that being said, let's apply this legal standard to the case at hand. Did I *consent* to streaming that day?

38.     So, it all comes to this: Can an author's consent to being recorded (and therefore, authority to be fixed into a tangible medium of expression, and therefore giving the author a valid copyright) ever be *retroactively* given? If Zacchini had *retroactively* consented to the recording of his act in exchange for some consideration (e.g. royalties), would that have given Scripps-Howard a valid and legally enforceable copyright?

39.     Because if the answer is "yes," then it is axiomatic that I have retroactively consented to the

existence of that recording, provided that I am the copyright owner thereof. The very fact that I am currently litigating *this very case* demonstrates that I have retroactively given my consent.

40.     Because I have retroactively given my consent, then the fixation into a tangible medium of expression is likewise retroactively said to be done "under" my "authority," which in turn makes my copyright valid, assuming it was ever invalid to begin with[2].

41.     There is nothing in the copyright statute even remotely suggesting that retroactive consent from the author is any less valid for purposes of the fixation requirement than any other type of consent. Retroactive consent is upheld as legally valid by courts all the time, in all kinds of cases stretching across all aspects of law. The Copyright Act certainly gives no indication that it intends to have  stricter definition of "consent" than is found in any other aspect of law. Therefore, by all accounts, retroactive consent to the recording satisfies the "fixation" requirement, plain and simple.

42.     Even if the Court disagrees with that assessment, the Defendants still find themselves in a pickle. As I explain in ¶¶ 42-43, it is actually far more likely that I accidentally pressed the start button to stream without realizing I had done it, which means that the fixation was still done "by" the author, and as I explain in ¶¶ 45-48, even if my retroactive consent to the fixation does not satisfy the statutory definition, the defendants still have to *prove* that the stream happened in the first instance entirely independent of my input, which is something they almost certainly will be utterly incapable of proving. Therefore, I am still entitled to judgment as a matter of law under the Matsushita precedent.

---

2   See ¶¶ 25-30

**SER274**

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                    PLAINTIFF

VS.                          Case 3:21-cv-04184-JSW

KARL POLANO, et al                                 DEFENDANTS

**MEMORANDUM OF POINTS AND AUTHORITIES IN**

**SUPPORT OF MOTION FOR DEFAULT JUDGMENT AS TO KARL POLANO,**

**FREDERICK ALLISON, AND RAUL MATEAS**

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following
Memorandum of Points and Authorities in Support of Motion for Default Judgment as to the
individual defendants in the above-styled action.

**I – TABLE OF CONTENTS**

| Chapter | Page # |
|---|---|
| 1. TABLE OF CONTENTS | 1 |
| 2. TABLE OF AUTHORITIES | 3 |
| 3. FACTS OF THE CASE | 4 |
| (a) Continued harassment, doxxing, and copyright infringement by other accomplices | 4 |
| 4. SUMMARY OF ARGUMENT | 7 |
| 5. ARGUMENTS & LAW | 8 |
| (a) Just cause for delay | 8 |
| (b) Default judgment | 8 |
| (c) the possibility of prejudice to the plaintiff; | 9 |

Case 3:21-cv-04184-JSW                          MOTION FOR
                                        DEFAULT JUDGMENT

(d)  the merits of the plaintiff's substantive claim;                          10

    i.   Sidalpha Video                                               11

(e)  the sufficiency of the complaint;                                          14

(f)  the sum of money at stake in the action;                                   14

(g)  the possibility of a dispute concerning material facts;                    15

(h)  whether the default was due to excusable neglect                           15

(i)  the strong policy underlying the Federal                                   16
    Rules of Civil Procedure favoring
    decisions on the merits.

6.  RELIEF REQUESTED                                                            17

(a)  $1,800,000 in actual damages                                              17

(b)  Injunction to cease and desist                                            17
    the infringment, harassment, and doxxing

(c)  Injunction to undo all acts of infringement,                             17
    harassment, and doxxing

(d)  Impossibility should not be a defense in this case                        18

7.  CONCLUSION                                                                  21

## II – TABLE OF AUTHORITIES

**Statutes & Rules**                                                **Page(s)**

17 USC § 512(f)(1)                                                  9

28 USC § 1915(e)(2)(B)(ii)                                          14

Fed.R.Civ.P. 54(b)                                                  8


**Case Law**                                                        **Page(s)**

Aldabe v. Aldabe, 616 F.2d 1089 (9th Cir. 1980)                     9

Draper v. Coombs, 792 F.2d 915 (9th Cir. 1986)                      9

Dr. Seuss Enterprises, LP v. COMICMIX LLC,                          11

    983 F. 3d 443 (9th Cir. 2020)

Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986)                      9

Hughes v. Benjamin, 437 F. Supp. 3D 382 (2020)                      13

TeleVideo Sys., Inc. v. Heidenthal,                                 4, 8, 12

    826 F.2d 915 (9th Cir. 1987)

MOTION FOR
                                                          DEFAULT JUDGMENT

### III -- FACTS OF THE CASE

1.      The following facts are necessary to understand the case:

2.      First off, all of the factual allegations mentioned in ¶¶ 13-70 of the Second Amended Complaint (**Dkt. 55**) are hereby incorporated by reference. These facts are automatically admitted by the Defendants by way of them being entered in default. On a motion for default judgment, the factual allegations in the plaintiff's complaint are deemed to be true, except those relating to the amount of damages. See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). As a result, there is no need to redundantly go over them again or to provide extraneous evidence.

3.      However, to the extent that evidence may be required, I defer the Court to **Dkt. 90** (Motion for Default Judgment as to Frederick Allison), and the attachments made therein. That attached report, and all of its corresponding sub-exhibits, provide thorough evidence of all of the factual allegations contained in the Second Amended Complaint, as well as a few other facts, all of which throw the individual defendants' malice and hatred towards me into greater and greater relief.

### Continued harassment, doxxing, and copyright
### infringement by other accomplices

4.      Since the commencement of this litigation, the individual defendants have continued their hate campaign against me, spreading my copyrighted content (without any claims to fair use) among other independent Youtube creators, who have in turn spread the claims on their own social media platforms. This has caused the marketability of my copyrighted work to be completely and thoroughly devalued. I can no longer make *any* money off of the April 10, 2021 livestream because everybody now has free access to it.

5.      Hands down, the most damaging example of this happening is with the accomplice who goes by the online psuedonym "SidAlpha." He has posted a video that uses my clips from the April 10, 2021 stream. By his own admission, he got those clips because Polano, Allison, and Mateas gave him the clips for him to use to smear me. As of the time of this writing, the video has approximately 90,000 views. See **Exhibit R**.

Case 3:21-cv-04184-JSW

MOTION FOR
DEFAULT JUDGMENT

6.      Because my livestream is supposed to be restricted only to those who pay my channel $20 per month, that means that every view that video gets amounts to actual damages of $20 each.

7.      Remember that, by SidAlpha's own admission in that video, he got this clip in the first place because the individual defendants in this case gave it to him to use in the video. This means that the individual defendants' own acts of infringement are the proximate cause for this increased circulation. If SidAlpha had paid me the fee to acquire the footage in the first instance through lawful channels, we may still have to litigate whether or not his video is fair use (which I doubt, for reasons stated below), but at least the individual defendants in this case would not have been jointly liable for it.

8.      In addition to the copyright infringement, let us also not forget that the harassment and doxxing is also a direct result of me providing my real name for one of my DMCA Takedowns, for which the individual defendants are now presumed liable. See **Dkt 55, ¶¶ 29, 31, & 33**. This means that their copyright infringement is the proximate cause of the harassment and doxxing I have received.

9.      When I first filed this lawsuit, nearly a year ago, the harassment and doxxing was so small-scale that it could reasonably be contained. However, since then, the individual defendants have spread my personal information so far and wide around the Internet – all out of pure hatred, malice, and spite – that it may require a fortune to undo.

10.      First of all, as you can see from **Exhibit R**, a ton of my personal information and history was shared by SidAlpha for the sole purpose of sharing it. Some of this information is true. Some of it is false, and some of it is technically true but egregiously misleading because he left out critical context and nuance with the express, malicious purpose of portraying me as the biggest monster he possibly could. However, the truth of his accusations is mostly irrelevant in a copyright infringement action. Rather, what matters is … he has no legitimate motive for doing it. He's doing just to harass me. Just pure hatred, pure malice, pure spite.

11.      Polano, Allison, and Mateas had been spreading this information about me around for months before SidAlpha took up the post. As you can see from **Exhibit Q**, they have been

Case 3:21-cv-04184-JSW                                                        MOTION FOR
                                                                          DEFAULT JUDGMENT

**SER279**

actively searching for any information they could find from my past just so they could twist it into portraying me as the most vile person imaginable. As you can see from the first minutes of **Exhibit Q**, that community began simply sharing relatively banal criticism about me. But when Allison, Polano, and Mateas appeared in the thread, it quickly escelated to full-blown harassment and doxxing, all done with one motive: Inflict as much pain on me as possible. Once they entered the picture, it never de-escalated back to the regular levels of criticism that one should normally expect to receive when one posts videos on Youtube.

12.     Because of the willful and malicious actions of the individual defendants, I have received an astonishing amount of harassment, insults, and death threats from various people. See **Exhibits C-P**. None of these people would be harassing me if the individual defendants had not taken to the forums to spread their hate about me. They are the reason I am harassed to this degree.

13.     In short, if the individual defendants had never took up this obsession with me, 99.999999% of the copyright infringement, harassment, doxxing, dogpiling, and death threats would cease to exist like a grandfather paradox. Therefore, the individual defendants' behavior – which is the direct result of the DMCA Takedowns I have issued in order to stop their unlawful copyright infringement – is the proximate cause of the harassment, doxxing, dogpiling, and copyright infringement I have suffered, even at the hands of third parties.

14.     In addition to that, Frederick Allison has recently engaged in a new act of malice: Hijacking my Youtube channel and changing it into a joke channel. See **Exhibits A** & **B**. That alone should give the individual defendants even more unclean hands than they already had.

MOTION FOR
DEFAULT JUDGMENT

**SER280**

## SUMMARY OF ARGUMENT

15.     All factual allegations contained in my complaint are deemed true. There are a few other facts that I needed to bring up, but I have evidence for them.

16.     There is no just cause for delaying entry of judgment in this instance. There are additional claims against the individual defendants which will be added in a Third Amended Complaint, but those claims will not affect the validity of the claims currently before the court. Meanwhile, there are three nominal defendants in this case, but this motion does not seek to enjoin them to do anything. The claim/party combination which is the subject of this motion is entirely compartmentalized away from the rest of the case, so there is no just cause to delay entering judgment.

17.     The seven factors the Court considers on a motion for default judgment are almost unanimously in my favor in this case. Failing to enter judgment would egregiously prejudice me. My substantive claim has ample evidence to support it. I have alleged sufficient facts in the complaint. The amount of evidence I have eliminates nearly any possibility that there might be a dispute concerning material facts. The default was absolutely, beyond any reasonable doubt, NOT due to excusable neglect, but was in all likelihood a conscious choice by the individual defendants motivated by nothing more than a desire to waste everyone's time. Furthermore, although the public policy disfavors default judgment, it is preferable to no judgment at all.

18.     Therefore, default judgment is proper in this case.

Case 3:21-cv-04184-JSW                                                                    MOTION FOR
                                                                                         DEFAULT JUDGMENT

**ARGUMENTS & LAW**

19.     The following law is applicable to this case.

**Just cause for delay**

20.     I am seeking leave to file a Third Amended Complaint to include a new copyrighted work which is being infringed upon. Also, there are multiple nominal defendants in this case who I plan to seek prospective injunctive relief on to have the individual defendants' accounts terminated. In multi-claim and multi-party cases such as this one, **Fed.R.Civ.P. 54(b)** provides that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."

21.     In the instant case, I see only for the three individual defendants to have default judgment entered against them. The nominal defendants have no skin in this game. Therefore, that is not a good reason to delay entering judgment against the individual defendants.

22.     Likewise, when the individual defendants get served with the Third Amended Complaint, bringing the infringement claim for the April 18, 2021 infringement, the individual defendants may, if they so choose, proceed to litigate that infringement. A judgment on that count of infringement will not affect the disposition of their infringements of the April 10, 2021 livestream. The two copyrighted works, and their subsequent infringements are entirely separate from one another. They may as well be filed in two completely different cases.

23.     Therefore, there is no need to delay entering judgment on the infringements of the April 10 stream or the DMCA Misrepresentation claim. A judgment on those two claims will not affect any parties not in default, nor any claims that are still pending.

**Default Judgment**

24.     On a motion for default judgment, the factual allegations in the plaintiff's complaint are deemed to be true, except those relating to the amount of damages. See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).

25.     Because the facts in the complaint are presumed true, that means the Court must deem to be true that (A) I have a valid copyright on the April 10, 2021 livestream, and (B) the individual defendants copied clips from that stream and distributed them without my consent. This creates a

claim for copyright infringement. See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1151 (9th Cir. 1986) ("[T]here are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by the plaintiff and copying by the defendant").

26.     It is also deemed to be true that (A) Raul Mateas does not own the copyright to the picture of the rooster which formed the basis for his DMCA Takedown Notice on May 25, 2021, (B) he did not consider fair use when he issued the takedown, and (C) he only issued the takedown as retaliation for my issuing the DMCA Takedown against Karl Polano on May 20, 2021. Therefore, I am entitled to judgment as a matter of law as to the DMCA Misrepresentation claim under **17 USC § 512(f)(1)**.

27.     A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment. See Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986). Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter default judgment against a party following the clerk's entry of default. A district court has discretion in deciding whether to enter a default judgment. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising this discretion, the court considers several factors, including: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

28.     Nearly all seven of these factors weigh in my favor in this case.

<p align="center">**Possibility of prejudice to the plaintiff**</p>

29.     The individual defendants have proven themselves to be wholly unscrupulous people with absolutely no morals or respect for anyone's boundaries except for their own. Ever since this case got filed, they have only doubled down on their harassment, doxxing, and copyright infringement, as demonstrated by Exhibits Q & R.

30.     All throughout this debacle, the individual defendants have proven, time and again, that a court judgment is the only thing that will get them to stop. In fact, even a court judgment itself

probably won't do the trick. In order to truly get them to cease and desist, it is apparent that I will need to (A) get a judgment from the court, (B) wait out the mandatory two week grace period for compliance, only for the individual defendants to remain just as silent as they are now, (C) file a motion to enforce judgment, (D) have the Court enter an order holding the individual defendants in contempt of court, and (E) have the individual defendants flown in (at their own expense, no less) to Northern California so they can serve time in coercive confinement. At that point, they will most likely stop what they are doing, if for no other reason than the fact that they *literally can't* continue their harassment and infringement from inside a prison cell, even if they wanted to.

31.    In fact, Frederick Allison has even said as much. See **Dkt. 106, Exhibits A-C, Sub-Exhibit 51** ("even if you sue me I ain't going away"). By his own admission, an injunction on its own is not going to make him stop; only the *enforcement* of that injunction will do the trick.

32.    Public policy favors judgment on the merits, no question. But in this case, it is a choice between default judgment or no judgment at all. If even one of the individual defendants had appeared in the case, we might have gotten a judgment on the merits. But because the individual defendants had willfully and maliciously chose to ignore the case (more on that when we discuss the possibility of excusable neglect), we cannot have that.

33.    Therefore, it is default judgment or nothing, and if I get nothing, the individual defendants will just continue their rampage. If they continue their rampage, the prejudice I will suffer is axiomatic.

34.    For all of these reasons, there is an obvious possibility (bordering on a guarantee) of prejudice to the plaintiff if this default judgment is not entered.

**Merits of the plaintiff's substantive claim**

35.    In **Dkt. 92 & 106**, I attached a report that I had previously submitted to the counsel for the corporate defendants. This report contained over 100 sub-exhibits that thoroughly prove all of the following things:

- The individual defendants have committed prima facie copyright infringement, on multiple occasions.

- The individual defendants only acquired the footage from the April 10, 2021 stream by illegally downloading it.

- The individual defendants are obsessed with inflicting harassment, doxxing, and dogpiling onto me, and ruining my career, all entirely for its own sake. There is no legitimate motive behind their actions; just pure hatred, pure malice, pure spite.

- Because of all of this malice and harassment, any claims the individual defendants may have to fair use are effectively negated because they have acted with "unclean hands" in regards to the infringements, which serves as a counter-defense to fair use.

- Even if we we must litigate fair use on the merits, the individual defendants' claims to fair use are so pathetically weak that it is honestly embarrassing. The individual defendants seem to believe that, as long as you provide even a *de minimus* amount of criticism or parody, then the resulting video is automatically fair use, to the exclusion of all other factors, including whether you use the heart of the work or whether you usurp the market for the original, and that is, quite simply, not how fair use works.

36.    Put simply, had the individual defendants appeared in the case, they likely would have embarrassed themselves with how weak their case was for fair use.

37.    However, there is one additional issue we need to address. Because Polano had reached out to and solicited SidAlpha to make his videos, Polano should be held jointly liable for that. However, this does require we take a moment to discuss the potential that SidAlpha's video may qualify as fair use.

<u>SidAlpha Video</u>

38.    SidAlpha is indeed providing criticism and commentary about me in his video. See **Exhibit R**. However, that alone is not enough to constitute fair use on its own. See Dr. Seuss Enterprises, LP v. COMICMIX LLC, 983 F. 3d 443, 452 (9th Cir. 2020) ("While the analysis of the first fair use factor may be guided by the examples given in the preamble to § 107, i.e., criticism, comment, ... not even these works compel a per se finding of fair use" (citations and quotations ommitted).

39.    At approximately the timestamp of 52:16, SidAlpha played the "strange noises" clip from

Case 3:21-cv-04184-JSW                                                    MOTION FOR
                                                                          DEFAULT JUDGMENT

the April 10, 2021 livestream (aka the "heart" of that work). This clip was entirely unaltered and unedited.

40.     Immediately prior to playing it, all he said about the clip was that it showed quote "alarming behavior." That's it. That's where his "criticism" and "commentary" of that clip begins and ends. After that, all he does is talk about my use of the DMCA to have copies of that clip taken down, and how he believes my copyright is invalid because it was accidental. However, none of that commentary actually required he play the clip.

41.     Because the individual defendants are entered in default, they have forever forfeited their right to challenge the validity of the copyright. Because they were entered in default, the validity of my copyright is admitted by default. See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). Even if it weren't, the fact that I have a registration on the copyright means I am statutorily entitled to a presumption of the validity of the copyright. See **17 USC §410(c)**. In order to overcome that presumption, the individual defendants would have to come forth with affirmative evidence to the contrary, which they, obviously, cannot do when they are entered in default. As a result, my copyright is valid, period.

42.     Even if the defendants were present, their likelihood of successfully prevailing on that challenge are one in a million. The only way the "accidental" nature of the stream could actually invalidate its copyright is if the streaming software turned on, entirely of its own accord, without any human input (knowing or otherwise) causing it to happen. See **Exhibit S**. The odds that the defendants will be able to prove this are one in a million. See **Exhibit S, ¶¶ 29-32**. The court should not delay entering this default judgment just on the one in a million chance that the defendants could stumble backwards into evidence that saves their skin, especially when the individual defendants have made it perfectly clear that they have no intention of cooperating in this case in the first place.

43.     So that just leaves fair use. First, I would argue that the individual defendants should be equally barred from claiming fair use int his motion as they are in challenging the validity of copyright, and for the same reasons as the former. Because all use of copyrighted material is presumed unfair, the individual defendants must come forth with affirmative evidence in their

Case 3:21-cv-04184-JSW                                                                          MOTION FOR
                                                                                              DEFAULT JUDGMENT

**SER286**

defense.

44.    However, some courts have held that fair use can indeed be adjudicated on the pleadings when the defense is apparent on the face of the video in question. See Hughes v. Benjamin, 437 F. Supp. 3D 382 (2020). So I feel I should at least pay lip service to fair use. If, however, I am able to provide enough of an argument against fair use that the defendants would ordinarily be required to *actually litigate* the fair use defense, I believe that should be enough to qualify me for default judgment, since the individual defendants, being listed in default, obviously won't be able to litigate anything.

45.    First, because SidAlpha (A) only acquired the footage to use that clip in the first place by illegally downloading it from one of the individual defendants in a peer to peer transfer, (B) he is publicly condoning and siding with the individual defendants in their ongoing efforts to harass, dox, and dogpile me, (C) he is even engaging in the exact same acts of doxxing[1] and dogpiling against me at the individual defendants' request, and (D) he made this video primarily because the individual defendants reached out to him and asked him to smear me for them, that all collectively means that SidAlpha is, in essence, acting as a de factor agent, mouthpiece, and arm of the individual defendants' hate campaign against me. This means that the individual defendants should be considered jointly liable for SidAlpha's video.

46.    At that point, the individual defendants' unclean hands should likewise serve as a barrier to fair use in this instance, just as much as it serves as a barrier to fair use in all other instances of infringement.

47.    Second, even if we must consider the four factors test on its own, SidAlpha's video still fails to qualify for fair use. He provided criticism of my behavior, sure, but he also used the heart of the April 10 livestream, so the third factor weighs against fair use. His usage of that clip also serves as a market substitute. Nobody will pay me the $20 to see the stream now, because they can just go to SidAlpha's video and see the most interesting part. The fact that his usage of the

---

1    See timestamps 19:41 – 30:20 for instances of doxxing. He claims that his actions are allowed because all fo this information is "publicly available," but in doing so, he (and the individual defendants) are completely missing the point. The point is not that they are illegally tapping into my private records. The problem is that the only reason they are doing any of this is just to harass me and incite hatred against me. Their motives are pure hatred, pure malice, and pure spite. They are not even *pretending* like there is any motive beyond that. THAT is what makes it unclean hands, not simply the fact that the information is private vs. public.

Case 3:21-cv-04184-JSW                                          MOTION FOR
                                                       DEFAULT JUDGMENT

clip did not contain any visual or auditory obstructions only makes it even easier for those in the market for that clip to seek out SidAlpha's video instead of my own.

48.     Therefore, because both Factor #3 and Factor #4 weigh against fair use, that should be enough to negate fair use. At the very least, it should create enough of a doubt about fair use that the defendants would have to come forth with affirmative evidence to the contrary, which they obviously will not be able to do on a default judgment.

49.     Therefore, I believe I have thoroughly demonstrated that this factor of a default judgment – merits of a Plaintiff's substantive claim – are thoroughly in my favor.

### Sufficiency of the complaint

50.     This is most likely only a relevant factor if the plaintiff is paying the filing fee, as the language of this factor seems redundant of what the Court is already supposed to look for under **28 USC § 1915(e)(2)(B)(ii)** when reviewing a complaint *sua sponte* for failure to state a claim. In the instant case, the Court has already reviewed the complaint for sufficiency, and determined that I am entitled to proceed on the infringement claims as well as one of the DMCA Misrepresentation claim. Because the Court has already ruled in my favor on this issue, I will not engage in redundant arguments or factual citations. If the Court wishes for me to provide additional clarification, it may order me to provide a supplement to this motion, at which point I will reply.

### Sum of money at stake in the action

51.     This is the one factor that seems to be against default judgment. I am asking for actual damages of $1.8 million, a substantial sum.

52.     However, I imagine the seven factors for a motion for default judgment are a lot like the four factors for fair use: No one factor is singularly dispositive, and all factors must be considered in unison.

53.     That being said, this feels like the equivalent to default judgment as the 2nd factor is to fair use: The least important factor. At best, it can serve as a tie-breaker when the other six factors are neutral.

54.     If this one factor could singlehandedly negate a default judgment, it would be far too easy

Case 3:21-cv-04184-JSW                                                                    MOTION FOR
                                                                                    DEFAULT JUDGMENT

for bad actors (such as these individual defendants) to exploit. It would effectively give any defendant in any lawsuit a free pass to simply ignore the lawsuit, just because they are being sued for a lot of money. Plaintiffs would be heavily chilled from requesting amounts to which they legitimately feel they are entitled.

55.     To safeguard against this slippery slope, this factor *has* to be the least important factor in a default judgment. To hold otherwise would be a recipe for disaster.

### Possibility of a dispute concerning material facts

56.     As I have thoroughly demonstrated throughout this case, there is almost no case the individual defendants can make. Their cases for fair use are pathetically weak, and that's assuming their equitable defenses aren't barred by the counter-defense of unclean hands (which it most likely is). I have a valid copyright registration, and negating that validity would require substantial evidence from the defendants, which they most likely cannot produce.

57.     The individual defendants have left a large trail of incriminating evidence in their wake. Because they have done so, they have effectively eliminated any likelihood of of there being any dispute concerning material facts. Everything they have done is out in the open.

58.     Therefore, this factor weighs in favor of default judgment.

### Whether the default was due to excusable neglect

59.     This one is laughable. At least with Karl Polano, no excusable neglect is even possible. He has freely admitted to going out of his way to evade service of process solely out of a desire to waste everyone's time. See **Dkt. 119**. His default is not the result of excusable neglect, but a result of a conscious choice to evade process out of pure malice.

60.     With Allison, it is highly probable that he has also ignored the summons out of an equal amount of malice. After all, as mentioned above, he has already admitted that he intends to ignore any judgment I may obtain against him.

61.     With Mateas, I have no admissions from him, either express or implied, to this effect. However, bear in mind that he has also admitted in writing that he does not believe the May 20, 2021 infringement constitutes fair use. See **Dkt. 126-4**. Furthermore, he has had several months now to appear in the case. If his failure to appear wasn't intentional at first, it has become such.

Case 3:21-cv-04184-JSW                                                                    MOTION FOR
                                                                                    DEFAULT JUDGMENT

62.     As a result, it is highly improbable that the individual defendants' failures to appear were the result of excusable neglect. This factor *heavily* weighs in favor of default judgment.

<div align="center">

**Strong policy underlying the Federal Rules of**

**Civil Procedure favoring decisions on the merits.**

</div>

63.     Aside from the sum of money at stake, this is the factor that appears to be the most likely to weigh against fair use. However, that is not because my case is simply undeserving of judgment. Rather, it is because this public policy *always* weighs against default judgment. All plaintiffs who seek a default judgment must overcome this hurdle equally. It never weighs against fair use more in one case than another, because the public policy is the same in every case.

64.     That being said, public policy may disfavor default judgment, but it is still preferable to no judgment at all, and as I have demonstrated earlier, that is the alternative we are faced with. It's default judgment or nothing, because the defendants have utterly refused to participate in this case.

65.     For all of these reasons and more, six out of seven factors for default judgment weigh in my favor. The totality of the circumstances undeniably favors default judgment in this case.

Case 3:21-cv-04184-JSW                                          MOTION FOR
                                                               DEFAULT JUDGMENT

**SER290**

**RELIEF REQUESTED**

66.     In light of all of this, I request the following relief from the individual defendants

**$1,800,000 in actual damages**

67.     First, because the SidAlpha video has over 90,000 views, that is 90,000 copies of my April 10 stream that people did not have to pay me for. Each one of those should have given me $20 because I have that video gated beyond a $20 paywall. This means that I have lost a total of $1,800,000 in lost sales as a result of the SidAlpha video, which was done at the request of the individual defendants. For this reason, I ask that the individual defendants be ordered to compensate me for these lost sales. I ask for $1,800,000 in actual damages.

68.     Even if the Court disagrees with me on the calculation of actual damages, I still ask the Court to award me statutory damages of $150,000 per individual defendant, for a grand total of $450,000 in statutory damages overall.

**Injunction to cease and desist the infringement, harassment, and doxxing**

69.     Also, pursuant to ¶¶ 114-123 of the Second Amended Complaint, I ask that the individual defendants be ordered to cease and desist all acts of copyright infringement against me. The arguments contained in ¶¶ 114-123 of the Second Amended Complaint are hereby incorporated by reference.

**Injunction to undo all acts of infringement, harassment, and doxxing, even those handed off to third parties like SidAlpha**

70.     It would be the epitome of a pyrrhic victory if the individual defendants were enjoined to stop circulating my copyrighted content and personal information, but not ordered to clean up the mess they had already made. That would be the equivalent of ordering an arsonist to stop burning down the plaintiff's house, after the house had already been reduced to ashes, but not ordering the arsonist to repair the damage he had already inflicted.

71.     Therefore, in addition to ordering the defendants to cease and desist their own acts of infringement, harassment, and doxxing, I also ask the Court to order the defendants to go back and undo all acts of harassment, doxxing, and copyright infringement that they caused to happen, even if they personally were not the ones doing it.

MOTION FOR
DEFAULT JUDGMENT

72.     SidAlpha is easily the biggest example of this, but it is not the only one. I ask that the individual defendants be made to clean up the mess they have made in its totality, including, but not limited to …

(a)     Any instances of my April 10, 2021 livestream, except those that were obtained lawfully by paying me the money.

(b)     Any instances of my personal information that did not exist on the Internet prior to me issuing DMCA Takedowns against the individual defendants, except those which existed entirely independently of the individual defendants' actions.

(c)     Any instances of harassment against me that are directly or indirectly related to my interactions with the individual defendants, past present or future.

73.     The individual defendants should be ordered to remove all instances of the above material if ...

(a)     The individual defendants put it out there themselves;

(b)     Anyone got it from the individual defendants, such as SidAlpha;

(c)     Anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from the individual defendants; and

(d)     everything in between and beyond.

74.     They should be required to ensure this content is removed, even if the content is stored on someone else's computers.

75.     This sounds like an extreme remedy, one that the individual defendants may never be able to complete. However …

**Impossibility should not be a defense in this case**

76.      It may indeed be true that the individual defendants will never, in their entire lifetimes, be able to fully comply with this injunction. It is such a monumental task that even the corporate defendants in this case (Alphabet, Discord, and Amazon) would likely never be able to fully

MOTION FOR
DEFAULT JUDGMENT

complete it in any human lifetime, even if they worked together and put 100% of their resources behind doing so (not that I am attempting to hold them to this injunction; this is just an example).

77.     However, that should not absolve the individual defendants of liability in this case. If the individual defendants can never comply with this injunction because it is impossible, maybe they should have thought about that when they were willfully and maliciously setting out to cause this injury with the express intent of making it impossible to fix. At that point, the impossibility should be their problem, not mine!

78.     Furthermore, there is nothing in the law stating that an otherwise meritorious injunction or judgment should suddenly become unmeritorious simply because of the difficulty in complying with it. There is indeed precedent for this. Two examples I can think of off the top of my head are (A) The British Petroleum oil spill in the Gulf of Mexico from 2010, and (B) the more recent "gender reveal wildfire" from El Dorado.

79.     Regarding the BP oil spill, as recently as June of 2021, people are *still* working to clean up that mess. See https://www.them.us/story/couple-gender-reveal-wildfire-manslaughter-charges. However, if BP had not settled out of court in 2014, they would have been liable for every single solitary cent of clean-up costs, no matter how astronomical those costs may have been.

80.     At least BP was a major, multinational corporation, and thus had the capital needed to pay for these otherwise insurmountable debts. In the case of the gender reveal wildfire, however, their hopes of rebounding are much more bleak. That was only a family, not a corporation, and yet they were fined $8.1 million. See https://www.them.us/story/couple-gender-reveal-wildfire-manslaughter-charges ("Dickey ultimately pled guilty and was fined $8.1 million in restitution"). Because it is a fine, not compensatory damages, he cannot discharge this debt in bankruptcy.

81.     The Dickey family will never, in their entire lives, be able to pay that debt off, and yet, pay it off they must. That family will be making installment payments on that fine for the rest of their lives. Their only consolation is that the debt will not be passed onto their next of kin (the very next of kin they were revealing the gender of!), but then again, their next of kin will likely not inherit anything, since any assets the Dickeys may have accumulated in their lifetime will be

Case 3:21-cv-04184-JSW                                    MOTION FOR
                                                          DEFAULT JUDGMENT

sucked up, like water in a rain forest, by probate court in order to make one final payment on the fines before those fines are finally discharged.

82.     Despite those two debts being absolutely massive, and the latter being one that the perpetrators (at least the Dickeys) would never be able to fully pay off, the impossibility of complying with those judgments fully did not deter the court from entering those judgments.

83.     Even still, the individual defendants in this case have an extenuating circumstance that make them even more deserving of an impossible judgment than BP or the Dickeys: Their relative culpable mental states. With BP, the oil spill was the result of their negligence (cutting corners on pipe maintenance in order to reduce overhead costs). With the Dickeys, the wildfire was the result of their reckless behavior (setting off fireworks during wildfire season). But here, the individual defendants have acted with sheer malice. They knew that the injuries they were inflicting on me would likely never be taken off the Internet. They *wanted* these injuries to be irreversible, and they intentionally set out to make them irreversible. So even more so than BP or the Dickeys, if the individual defendants find themselves with an impossible task in front of them, cleaning up their own mess, then they have nobody but themselves to blame. Much more than either of the aforementioned cases, these individual defendants deserve it.

84.     If they cannot comply with this injunction, removing all un-authorized instances of my April 10 livestream and my personal information from the Internet in totality, then they can simply spend the rest of their lives in contempt of court, forever staying in American federal prison in coercive confinement, kind of like the old "debtors prisons" from mideival England that ultimately lead to the creation of the New World colony of Georgia.

85.     This would certainly create a deterring effect against all future bad actors. It would send a powerful message to future citizens of the world: Don't do things maliciously. Even if you feel the victim deserves it, doing *anything* out of malice is a bad idea. If you do something with malice and somehow manage to escape legal liability, that is the exception, not the rule, and you have dodged a bullet.

86.     Therefore, the individual defendants should be enjoined to remove any and all instances of my personal information (unless I am the one who put it out there of my own accord,

Case 3:21-cv-04184-JSW                                                      MOTION FOR
                                                                           DEFAULT JUDGMENT

unrelated to this case), and all unauthorized copies of the April 10, 2021 livestream, by any means necessary, even if it takes them the rest of their lives. It is drastic, but it is an appropriate response considering the scope of the individual defendants' malice.

**SER295**

**CONCLUSION**

87.     In conclusion, the individual defendants smugly believed they were screwing me over with their actions. They should not be allowed this victory. They should be ordered to pay me for the damage they have already inflicted, and to actively clean up their mess to ensure that no further damage is caused, either at their hands or at the hands of anyone else continuing where they left off.

88.     Default judgment is appropriate in this case. Six of the seven factors weigh heavily in favor of default judgment, and the one factor that weighs against it is obviously the least important factor. Although this motion does not dispose of the case in its entirety, there is still no need to delay default judgment on these issues, since the claims and parties being adjudicated in this motion are entirely compartmentalized away from the claims and parties that are not part of this motion.

89.     Wherefore, premises considered, I respectfully pray that the motion for default judgment be granted, actual damages of $1,800,000 be awarded, injunctions be issued ordering the defendants to undo their damage, costs incurred be awarded, and any other relief to which I may be entitled.

So requested on this, the 7th day of April, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

Case 3:21-cv-04184-JSW                                              MOTION FOR
                                                                DEFAULT JUDGMENT

**SER296**

| 04/06/2022 | 125 | Clerk's Notice ENTRY OF DEFAULT as to defendant Karl Polano. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (Related documents(s) 124 ) (jy, COURT STAFF) (Filed on 4/6/2022) |
|---|---|---|
| | | <div align="center">Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)</div> |
| | | (Entered: 04/06/2022) |

**SER297**

\

| 03/28/2022 | 123 | Clerk's Notice ENTRY OF DEFAULT as to defendant Raul Mateas. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (Related documents(s) 122 ) (jy, COURT STAFF) (Filed on 3/28/2022)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>(Entered: 03/28/2022) |
| --- | --- | --- |

**SER298**

David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                        PLAINTIFF

VS.                        Case 3:21-cv-04184-JSW

KARL POLANO, et al                                    DEFENDANTS

**MOTION FOR ENTRY OF DEFAULT AS TO RAUL MATEAS**

      Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Motion for Entry of Default as to defendant Raul Mateas.

1. Raul Mateas was served, pursuant to the terms of the Hague Convention, on January 7, 2022, and so his response was due on January 22, 2022. See **Dkt. 121**.

2. It is now well over that time limit, and Raul Mateas has not submitted an Answer, Motion to Dismiss, Motion for Extension of Time to Answer, or any other type of appearance.

3. Therefore, I ask the Clerk to enter Raul Mateas in default. This leaves Karl Polano as the individual defendants' last bastion of hope of avoiding large amounts of liability.

So requested on this, the 28th day of March, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

**SER299**

| 11/04/2021 | 91 | Clerk's Notice ENTRY OF DEFAULT as to defendant Frederick Allison. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (Related documents(s) <u>90</u> )(jy, COURT STAFF) (Filed on 11/4/2021) |
| --- | --- | --- |
| | | <small>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)</small> |
| | | (Entered: 11/04/2021) |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS, d.b.a. ACERTHORN                          PLAINTIFF

VS.                           Case 3:21-cv-04184-JSC

KARL POLANO, d.b.a. SOFIANNP,
ALPHABET INC.,
DISCORD INC.,
FACEBOOK INC.,                                           DEFENDANTS
AMAZON.COM, INC.,
FREDERICK ALLISON, d.b.a. INITIATIVEKOOKIE, and
RAUL MATEAS, d.b.a. TGP482,

**SECOND AMENDED COMPLAINT**

      Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Amended Complaint as ordered by the Court on June 30, 2021 (See Doc. 10). In this complaint, I allege at least fifteen (15) counts of copyright infringement (and possibly more, once discovery in this case gets underway), one count of ongoing intentional infliction of emotional distress[1], one count of misrepresentation in violation of 17 USC § 512(f)(1), and one count of misrepresentation in violation of 17 USC § 512(f)(2).

### I: NAMES & LOCATIONS OF PARTIES

**1.**     I am a Youtuber and a Twitch Streamer, who goes by the alias Acerthorn. This is also the Alias I use on Discord, as well as Reddit. My YouTube channel can be found by going to the URL of **www.youtube.com/acerthorn**. My Twitch channel can be found by going ot the Url of **www.twitch.tv/acerthorn**. My Reddit account can be found by going to the URL of **www.reddit.com/user/acerthorn**. My Discord server can be found by going to the URL of **www.discord.com/invite/8EkdSvWV9P**.

**2.**     Karl Polano is also a Youtuber and a Twitch Streamer. On YouTube, Twitch, and Discord, he goes by the alias SofiannP. However, on the websites of Reddit and Urban Dictionary, he goes by the alias SomeGuyFromLosSantos. His YouTube channel can be found by going to the URL of **www.youtube.com/sofiannp**. His Twitch channel can be found by going to the URL of **www.twitch.tv/sofiannp**. His Discord Server "Great Six" can be found by going to the URL of **https://discord.gg/yjA7bwE**. His reddit account can be found by going to the URL of **www.reddit.com/user/someguyfromlossantos**. His Urban Dictionary account can be found by going to the URL of **www.urbandictionary.com/author.php?author=SomeGuyFromLosSantos**. I currently believe that he can be served with process at the following name and address:

---

1  Although this court has dismissed this claim *sua sponte*, I will still preserve these claims in the complaint so that the dismissal may still be appealed.

Karl Sofiann Axel Polano
Regensbergstrasse 120
Zurich, Zurich 8050 CH
Switzerland

3.      Alphabet Inc. is the current parent company of Google, LLC, which is in turn the current parent company of YouTube, which is currently the largest video-sharing website in the world. It can be served with process at the following name and address:

Corporation Service Company
2710 Gateway Oaks Dr.,
Suite 150N
Sacramento, CA 95833

4.      Discord Inc. is a corporation which owns and operates the "Discord" app, a free-to-use chatting and socializing app available for android, IOS, and Windows operating systems. Individuals and businesses can set up groups of chat rooms known as "servers." Karl Polano has a Discord server which goes by the name "Great Six." I also have a Discord server simply called "Acerthorn." Discord Inc. can be served with process at the following name and address:

Ruth Chang
444 De Haro St,
Suite 200
San Francisco, CA 94107

5.      Facebook Inc. is a corporation which owns and operates the website of Instagram. Facebook can be served with process at the following name addresss:

Corporation Service Company
2710 Gateway Oaks Dr.,
Suite 150N
Sacramento, CA 95833

6.      Amazon.com, Inc. is the parent company of the website of Twitch.tv. It can be served at the following namea nd address:

Amazon.com, Inc.
Corporation Service Company
Attn: Legal Department – Legal Process
300 Deschutes Way SW,
Suite 208 MC-CSC1
Tumwater, WA 98501

7.      Frederick Allison goes predominately by the online alias "InitiativeKookie" or some variation thereof (e.g. 6. InitaitiveKookie7767, InitiativeKookie353, etc). However, he has also interacted with me under various other aliases, including Jonathan Allison, T.K Baha[HM], and

numerous variations of the phrases "Patient Pea," "Old Zuccini," "Cap Spirited," "Incognito Pelican," "Spinning Monkeys," "We Lei Xiao Yung," and "Sigmi Nultz." He can be served with process at the following name and address:

Fredarick Allison
2057 Knob Lane
Hiawassee, GA 30546

**8.**      Raul Mateas is a YouTuber who goes by the alias "TGP482." You can find his YouTube channel by going to the URL **www.youtube.com/tgp482**. While he does not have his own Discord server or Twitch channel, he does have accounts which both which he uses to watch streams (which includes Polano's "SofiannP" Twitch channel) and chat in various Discord servers (including Polano's "Great Six" server). His accounts with both sites can be found by going to the URL of **www.twitch.tv/tgp482** and by searching for the Discord account of TGP482#7412[2]. He can be served with process at the following name and address:

Raul Mateas
12th Shelton Avenue
Newark on Trent, Nottinghamshire
NG24 4NX
United Kingdom

## II: PERSONAL AND SUBJECT-MATTER JURISDICTION

9.      This Court has federal question jurisdiction over the counts of copyright infringement and the violations of 17 USC § 512(f). This Court has supplemental jurisdiction over the tort of intentional infliction of emotional distress.

10.      This Court has personal jurisdiction over Alphabet, Discord, and Facebook because the three corporations are headquartered in the cities of Mountain View, San Francisco, and Menlo Park, respectively, all of which are in the Northern District of California. This Court has long-arm jurisdiction over Amazon.com, Inc. because the sixteenth count of copyright infringement is being included as part of this case.

11.      This Court has personal jurisdiction over Karl Polano and Raul Mateas because, on May 25, 2021 and September 16, 2021, respectively, they filled out DMCA Counter Notifications with Youtube. While submitting these Counter Notifications, they consented in writing to the jurisdiction of whichever federal district court YouTube was located in (which is the Northern District of California). This Court has personal jurisdiction over Frederick Allison because he and Mateas are accomplices in Polano's efforts to harass me, dox me, ruin my career, and infringe on my copyright. These are not merely three Internet trolls acting concurrently but independently of one another. It is one singular, collaborative effort.

---

2  There is no URL you can enter into your browser that will take you to a person's Discord profile. Instead, in order to message a person on Discord, you must add them as a friend (and they must accept the friend request), or you must share at least one Discord server in common. To add John Doe #2 as a friend on Discord, you should enter, not just the name "TGP482," but also the user number of #7412.

### III: FACTS OF THE CASE

12.     The following facts are necessary to understand the case:

### III-1: Allison's harassment

13.     This all started on February 27, 2021, when Allison, acting under the pseudonym "InitiativeKookie," posted a comment on my YouTube channel where he admitted that he was deliberately and in bad faith attempting to sabotage my YouTube channel with what is known as "low-retention views."

14.     See, YouTube uses an algorithm and machine learning to decide which channels to promote to the exclusion of others. It is no secret that the two most important factors that the algorithm looks at when deciding which videos and channels to promote are views and audience retention. In order to have high audience retention, a viewer must not only click on a video and begin to watch it, but actually watch a large portion of the video. Then, ideally, the viewer should watch *another* video from the same channel. Doing so will indicate to the algorithm that the viewer was enthralled enough by the first video that they want to see what else the channel has to offer, which in turn means that the channel should be promoted to the user more often, as well as to other users who have similar tastes. However, if a viewer clicks on a video and then immediately clicks away after only a few seconds, the algorithm will assume that the video is undeserving of more exposure and bury the video accordingly.

15.     With this in mind, Allison admitted that he was intentionally exploiting the latter portion of the algorithm in a deliberate and bad faith attempt to sabotage my channel and keep it from growing.

16.     If Allison's actions had ended there, I would not have taken significant action. I have dealt with trolls before. I usually just block them and move on with life. However, on March 1, 2021, Allison also contacted me on Reddit. I had posted a question about about starting a livestreaming channel on Twitch, and I wanted to know how to use a certain feature of my streaming software. On March 1, 2021, Allison – acting under the alias InitiativeKookie7767 – posted in that thread, stating "idk but your videos are pretty shitty lol, hope you're enjoying the death of your channel."

17.     Again, this alone would not have been a big deal. Under normal circumstances, I would have simply blocked him, reported him to the Reddit moderators and administrators for a potential ban from the site, and then moved on. The problem here is that he is harassing me *across multiple websites*. It isn't enough that he makes it known that he does not enjoy my content and believes that I am a terrible YouTuber. He is monitoring my social media presence like a vulture, looking for any opportunity he can find to swoop in and harass me.

18.     On March 2, 2021, Allison posted not one, but two videos to his own YouTube account. One of them was called "RIP Acerthorn (2018-2021)." The other was called "Acerthorn EXPOSED as being … pretentious!" Both videos used content from my YouTube channel, and so I issued DMCA Takedowns on them.

19.     On March 14, 2021, Allison deleted his accounts on YouTube and Reddit and replaced them with accounts going by the aliases PatientPea9364 and PatientPea42. In these accounts, he stated that he was InitiativeKookie under a new name, and that any time I reported him to any mods or issued any DMCA Takedowns against him, he would simply create a new account to get around any bans or blocks. He also reposted the video "RIP Acerthorn (2018-2021)" and contacted me on Reddit to give me a link to that video. In other words, it was not enough that he simply was harassing me. He wanted me to *know* that he was harassing me. The administrators of Reddit eventually swooped in and issued a sanction against PatientPea, but he merely deleted that account and created a new one, also called PatientPea but with a new number at the end. He then contacted me using Reddit's "private chat" function and proceeded to level various cuss-filled insults at me. This continued for several weeks, with me reporting him to the Reddit administrators, him getting sanctioned, him deleting the account, creating a new account under a different name, and then proceeding to harass me again. And again. And again. This pattern continued for several weeks.

20.     On March 18, 2021, Allison, acting under the psuedonym "InitiativeKookie," joined my Discord server. His first message said "I brought you a present." This "present" was in fact a slew of unsolicited pornographic images. I believe this should constitute sexual harassment. Perhaps the most shocking and appalling of these images was an image of a man attempting to cut his own penis off with a steak knife.

21.     In late March of 2021, Allison created a new Discord account with a different name that I did not recognize. He spent several weeks in my Discord, being civil and courteous, and participating in chat in a non-disruptive manner. On or around April 13, 2021, he asked to be a moderator for my Discord server. I questioned him about the job and he gave exemplary responses to the interview, so I appointed him to the position. I woke up the next day (April 14, 2021) to find nearly everyone banned from my Discord server, and with the new moderator having changed his name to InitiativeKookie in order to show his true colors.

### III-2: Accidental Livestream on April 10, 2021.

22.     On April 10, 2021, my livestream software turned on of its own accord without me realizing it. It stayed on for nearly two hours before I realized it was on and closed it down. During this accidental livestream, my viewers were able to see me engaging in mundane, daily activities such as walking around my apartment, eating some hot dogs, and watching some YouTube videos for my own personal amusement.

23.     However, at one point in the video, some strange noises could be heard. I do not know what these strange noises were (the best description I can give is that it sounded like a dog barking, but I do not have a dog), and I did not cause them. However, whatever they were, these strange noises constituted the only interesting and memorable part of this otherwise boring and contentless livestream. As such, it constitutes the "heart" of this livestream.

24.     I have registered this accidental livestream with the U.S. Copyright Office. I have also uploaded the archive of this accidental livestream to my YouTube channel. However, access to that video is limited only to those who pay me at least $20 per month.

25.    So far, nobody has paid me the $20 per month to view this video. Meanwhile, there no way to download directly from Twitch. This means that any person who has acquired any copy of this livestream has necessarily done so by illegally downloading the stream using third party software.

### III-3: Allison's continued harassment and copyright infringements

26.    On April 10, 2021, a few hours after my accidental livestream, Allison uploaded a video to his YouTube channel. This video a clip from my accidental livestream. Specifically, it contained the only interesting part of that livestream, and contained the entirety of that only interesting part. Allison made no modifications or alterations to the clip in any way, let alone any modifications that could be considered transformative. This video almost completely usurps the market for Plaintiffs own accidental livestream. The existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'"). At 4:11PM (central time zone) on April 10, 2021, I issued a DMCA Takedown notice and it was removed by YouTube at 5:25PM (central time zone) that same day.

27.    On April 11, 2021, Allison created an account on the video-sharing site of Vimeo, where he posted the same video as mentioned above, again with no alterations whatsoever. Again, this video almost completely usurps the market for Plaintiffs own accidental livestream. T he existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another website for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

28.    I also had this video taken down via a DMCA Counter-Notification. However, unlike YouTube, when I issued this takedown on Vimeo, it displayed my real name (David Stebbins) as opposed to my alias Acerthorn.

29.    On April 12, 2021, Allison created a new YouTube channel (also called InitiativeKookie, but different from the first one), where he posted a short video consisting entirely of a clip from the aforementioned accidental livestream. This short video showed the only interesting part of that accidental livestream, and showed the entirety of that only interesting part. There was no alteration to the clip whatsoever. This video almost completely usurps the market for Plaintiffs own accidental livestream. T he existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying

all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'"). I promptly issued a DMCA Takedown against this video and YouTube took it down approximately one hour later.

30.     On April 13, 2021, Allison created a new YouTube channel called Incognito Pelican. He then proceeded to upload the same clip as before – again with no alterations – with the video title "Cod Zombies be like (acerthorn moment) #shorts." In addition to that, he also uploaded the same clip in a 5-second video. This time, however, he made a very small, de minimus, non-transformative change to the video: He book-ended the stream clip with some gum commercial clips. He still provided the entirety of the only interesting moment from the accidental livestream. As such, this video almost completely usurps the market for Plaintiffs own accidental livestream. T he existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

31.     Later on April 13, 2021, I received a message on Reddit from Allison, this time going by the alias InitiativeKookie34, informing me that, because the DMCA Takedown I issued against him on Vimeo (see ¶ 28 for details) gave him my real name instead of just my online alias, he was able to use that information in order to find all of my personal information. He made it clear that he was going to share this personal information with everyone he could in an attempt to ruin my career on YouTube and Twitch. This form of harassment – the involuntary sharing of personal information over the Internet – is known in Internet parlance as "doxxing."

32.     Later on April 13, 2021, Allison created a new YouTube channel – this time with the name "Spinning Monkeys" – where he uploaded the same clip from my accidental livestream with the gum commercial clips bookending it. Just like before, this video almost completely usurps the market for Plaintiffs own accidental livestream. The existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

33.     Over the next few weeks, Allison kept his promise to dox me. He sent my personal information to everyone he could find who was a member of my Discord server, a commenter on my YouTube channel, or one of my followers on Twitch.

34.     On June 2, 20221, I received a message on Discord by a person going by the alias VoreNeko777. He claimed that the video game review and news website IGN.com had posted a rather inflammatory and libelous article about me, and that while it had been taken down, he had

kept an archived copy of the article in case I wanted to show it to any attorneys for potential litigation. However, when I went to download the attached file that purported to be an archived copy of the IGN article, my browser did not download it because it contained a computer virus. On or around June 7, 2021 (the precise date is unknown), Allison had created a new account on Reddit – this time under the alias InitaitiveKookie 353 – and contacted me on that site, claiming to be the one who attempted to infect me with the computer virus. At this point, this goes beyond mere harassment. Now, he has crossed the line and attempted to commit an actual, real, concrete and tangible injury against me. Not only that, but he also committed a cyber crime and should go to jail for it.

### III-4: Polano's harassment

35.    On March 24, 2021, Polano replied to one of my posts on Reddit, under the username SomeGuyFromLosSantos. In this post, he demanded that I give up my aspirations to make a full-time career out of YouTube and/or Twitch, threatening to make my life "a descent into hell" if I did not give in to his demands. Just like with InitiativeKookie, if this were the end of my interactions with him, I would not be suing today. I have dealt with one-off trolls in the past. I usually just block them, report them to the site's administrators, and then move on. However, just like with InitiativeKookie, he did not just harass me once and then move on.

36.    In mid-April 2021, Karl Polano was posting on my Discord server (under the alias "SofiannP"), explaining that he really enjoyed my content on Youtube. At this point in time, I did not realize that he was the same guy from March 24, threatening to make my life a descent into hell if I did not abandon my aspirations for a full-time career on YouTube or Twitch. After all, he had a different name and a completely different personality from that person. Because he seemed, at the time, like a swell guy, I checked out his Twitch channel. I noticed that he had a Twitch channel with over 300 followers, and since I had just started streaming on Twitch myself, I asked him if we could do a collaborative stream (or "collab" for short) together. He agreed, and we had the collab on April 18, 2021.

37.    Much like with the events of ¶ 21 of this Complaint, at first, everything went well. At first, he seemed genuinely excited to be doing a collab with me. However, much like with the events of ¶ 21 of this Complaint, his affability turned out to be a mere ruse to lull me into a false sense of security before removing his fake sheep's wool and bearing his wolf's teeth. Approximately 90 minutes into the stream, he revealed that he had been working with Allison all along, and that now that he was on my channel, broadcasting live, he proceeded to air my personal information to all of my viewers before I cut off the stream. He then proceeded to spend about 15 additional minutes on his own Twitch channel continuing to dox me, once my viewers from my channel had converted over to his channel.

38.    I spent about a week trying to move on from that experience. However, on April 25, 2021, I received notice that my copyrighted livestreams and YouTube videos were being shared on the Great Six Discord, which is owned by Polano. To investigate, I went to that Discord server. I was only able to access the "applications" chat room, a chat room where newcomers to the server are to request access to the main chat room (where the copyright infringements were actually taking place). So I asked to be allowed there in order to inspect for copyright

infringements. The levels of sheer hostility, toxicity, and vulgarity that came from Polano in response to this simple request was absolutely mind-boggling. Not only did he not allow me into the main chat room to look for instances of infringement, but he responded with excessively vulgar and line-crossing personal attacks including, but not limited to, the following:

(a)    "Go teach yourself about law you <expletive> moronic fat pig."

(b)    "I'm losing my <expletive> patience with your single digit American pig brain."

(c)    "Why make yourself public, PIG <EXPLETIVE>? Answer, PIG <EXPLETIVE>!"

(d)    "Read that carefully and get that in your thick <expletive> skull, you numbnut."

(e)    "Wow a channel that shows clips of another channel without getting DMCA'd? HOW?! Well fair use you <expletive> <expletive>, it's not entirely of your <expletive> content stream we've uploaded did we?"

(f)    "I swear this 32 ball of fat manchild is incredible."

39.    Needless to say, I was not granted access to the main chat room. Because of this, Polano should be held liable, not just for the instances of copyright infringement I expressly mention in this Complaint, but for the potentially dozens of copyright infringements I can find in his Discord server once I get access to it during the discovery of this case. He should even be liable for the instances of copyright infringement he did not personally upload, since he has completely and utterly failed to comply with the DMCA's requirements for safe harbor.

40.    Mateas should also be liable for the copyright infringements. He is a moderator in the Great Six Discord. As such, he had the power to remove the infringing content and even ban the users who uploaded it. I contacted him on Discord and asked him to remove the infringing content, but he never did. Therefore, he has also lost his safe harbor.

41.    In addition to this, both Polano and Mateas have continued Allison's efforts to reach out to every single member of my YouTube, Twitch, and Discord communities and dox me by sharing my personal information. Two instances where I know for a fact this happened (and that Polano did it, as opposed to Allison) were on May 10, 2021 and May 26, 2021. Bear in mind that those are not the only two instances period. They are just the only two instances where I know for a fact that Polano is the one who personally did the doxxing.

**III-5: Polano's Copyright infringements**

42.    Because I was not given access to the main chat room of the Great Six discord, I have had to rely on third party informants to scour that Discord server for me, and report instances of copyright infringement to me. These informants obviously cannot catch every instances of infringement. However, with their help, I was able to find about a half a dozen unauthorized uses of clips from my accidental livestream. Each of them copied the only interesting part of the livestream verbatim. I issue DMCA Takedown Notices were April 25, April 27, April 28, May 5,

May 8, and May 22. The existence of these videos means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

43.     Bear in mind that these are only the infringements I was able to find thanks to informants providing me with the links. On May 19, 2021, I received a screenshot from one of these informants where Polano stated that there are numerous other infringements on the server that had not yet been "ratted out" by the informants. I wish to hold the individual defendants (Polano, Allison, and Mateas) liable for *all* of these infringements, and I hope to be able to prove all of them once I get a discovery in this case. I just don't know how many of them there are.

44.     Of the infringements my informants told me about, they were taken down by Discord. However, on May 8, 2021, a representative of the Great Six Discord server, going by the alias DeFranko, contacted me on Discord and informed me that issuing these DMCA Takedowns was a complete waste of time, because even if I had any infringing videos removed from the server, they would just repost the videos again. He stated that me taking down the entire Great Six discord server was the only way I could possibly cause the copyright infringement to stop.

45.     On May 20, 2021, Karl Polano posted a video to his YouTube channel. This was an identical copy of the video mentioned in ¶¶ 30 & 32, where he copied the entirety of the only interesting part of the accidental livestream, bookended by gum commercial clips. If the video were to ever be reinstated, it could be viewed by going to the following URL: http://www.youtube.com/watch?v=-xL0xoU2cJA The existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

46.     I issued a DMCA Takedown against this video, and YouTube removed it slightly over one hour later. On May 21, 2021, I received notice from one of my copyright informants that the members of the Great Six discord server were conspiring to create multiple fake accounts and attempt to take my channel down with false copyright strikes in retaliation for me issuing this DMCA Takedown against Polano. Members of the Great Six Discord server made comments including, but not limited to "SofiannP is gonna reclaim that and gift the strike back to acerthorn" and "We should just make loads of accounts and report him for the same reason."

### III-6: Fraudulent DMCA Counter-Notification

47.     On May 25, 2021, I received an email from YouTube stating that Karl Polano had issued a DMCA Counter-Notification in response to the Takedown I issued against him as described in

¶ 45 of this Complaint. While filing this Counter-Notification, Polano checked a box that stated "I consent to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from the claimant," thereby consenting to the jurisdiction of the United States Court of Appeals for the Northern District of California. When filing this DMCA Counter Notification, Polano stated, in pertinent part, the following:

> "I've created the video as a parody of it's original content which was a 2 hour livestream, this parody is meant to be a meme and nothing like Acerthorns' original content. This is Fair Use as his material has been altered to create new content and has also not been monetized."

48.     This statement has at least four different bald-faced lies that constitute knowing material misrepresentation by Polano in violation of 17 USC § 512(f)(2). First, it is not a parody. He merely copied my livestream while while adding no transformative value whatsoever (the gum commercial clips are not transformative). Second, he lied when he said it was "nothing like Acerthorn's original content." It is indeed "like" my accidental livestream, to the point where it completely usurps the market for my livestream and completely removes the incentive for anyone to pay me the $20 per month to view that stream on my own YouTube channel. No reasonable person could juxtapose his 50-second infringing video and corresponding sections of my livestream, and think that the two are nothing alike. It is nothing but a bald faced lie. Third, he is lying when he says that my material was altered to create new content. Aside from the gum commercial clips (which provide no transformative value whatsoever), he did not alter the clips from the accidental livestream in any way, shape, or form. For him to say that he altered it in any way (let alone altered it in such a way that it creates new content) is knowing material misrepresentation. Fourth, he is lying when he says that the video has not been monetized. This was indeed a commercial reuse of my accidental livestream.

49.     In addition to all the lies he told, there was another factor that also causes his DMCA Counter Notification to be fraudulent: He did not perform the Four Factor's Test as outlined by 17 USC § 107(1)-(4). This means he did not consider fair use when issuing his Counter-Notification, even if the four above lies were actually true.

50.     However, of all the lies he told in this DMCA Counter-Notification, there was one thing he said that was quite enlightening: He said that he created this clip. He didn't just borrow it from Allison. He created it himself. This will come in handy in a little bit, when I discuss the evidence of collaboration between the three individual defendants.

### III-7: Fraudulent DMCA Takedown

51.     On or around May 23, 2021, I qualified to become a Twitch Affiliate, meaning that I am now eligible to run ads on my streams and receive "subscriptions" (or paid followers). To qualify to be an affiliate, I must meet four criteria, one of which is that I must have at least 50 followers on my Twitch Channel. I finally met that qualification on May 23, 2021. However, immediately after I met it, Mateas, acting in his capacity as a moderator of the Great Six Discord server, told everyone that it was "not allowed" that I have 50 followers, and that everyone who was

following me on Twitch needed to immediately unfollow. Many people did, and my follower count proceeded to drop.

52.     Despite this attempt to sabotage my career, I was nonethleess able to get approved for Affiliate status, and I am now a Twitch Affiliate as of the time of this writing. To celebrate this achievement, I created a video called "Woot! I'm a Twitch Affiliate!" and uploaded it to my YouTube channel. You can view the video by going to the following URL:

www.youtube.com/watch?v=FZenOvX1XHg

53.     In this video, I explained that several people were attempting to undermine my growth by demanding that people unfollow me from Twitch, and I provided a screenshot to prove it.

54.     On May 25, 2021, Mateas issued a fraudulent DMCA Takedown against that video. He claimed that I used a "picture of [his] chicken." By that, I assume he means that I used his Discord icon, which is a picture of a rooster. However, this was a fraudulent DMCA Takedown. He does not own the copyright to that picture. He probably just pulled it off the Internet somewhere and used that picture instead. It is common sense that you cannot lawfully issue a DMCA Takedown over a copyright when you are not the copyright holder!

55.     But even if he could show some proof that he was the original author or otherwise the copyright holder of that image of that rooster, his takedown was still fraudulent because he did not consider fair use. My use of that screenshot (which included the image of the rooster) met all four factors in the Four Factors Test outlined in 17 USC § 107(1)-(4). I was reporting on a news event[3], so it was transformative. I was discussing an event that really happened in real life, not a work of fiction, so the second factor weighs in favor of fair use. I only showed the screenshot for a few seconds before removing it from the video, so the third factor weighs in favor of fair use. Lastly, my use of the screenshot in a YouTube video does not in any way, shape, or form usurp Mateas's market to license the image (assuming he even is the original copyright holder in the first place, which he isn't) for its original intended purpose of being a comment icon in Discord. So the fourth factors weighs in favor of fair use. This means that literally all four factors weigh in favor of fair use; it is a clean sweep. Therefore, Mateas almost certainly did not consider fair use before issuing his DMCA Takedown. No reasonable person could possibly have considered the Four Factors Test in this case and somehow reasonably determined that my use of the screenshot was not fair use. Rather, it seems that Mateas was merely attempting to retaliate against me for issuing the DMCA Takedown against Karl Polano, which the Great Six discord server conspired to do against me as described in ¶ 46 of this Complaint.

56.     I issued a DMCA Counter-Notification to YouTube, and the video was eventually reinstated on June 13, 2021. However, I still spent 19 days with the video taken down. Because it was taken down for that long, that means it was not getting views and thus not generating ad revenue.

---

3    While it might only be newsworthy to a very niche audience (namely, those who were already fans of my content), it was nonetheless news reporting. The fact that only a niche audience would be interested in a news story is not a bar to fair use.

### III-8: More Copyright Infringement

57.     On or around June 7, 2021, the three individual defendants (along with a few others) started a page on Facebook's website "Instagram," called AcerthornFanClub. Mateas and Karl Polano were two of the creators of this so-called fan club. Despite calling itself a fan club, its actual intended purpose was to publicly dox me and infringe on my copyright. Among other things, the Defendants uploaded a clip from my accidental livestream. This clip depicted the only interesting part of the accidental livestream, and showed the entirety of that only interesting part. Also, there were no modifications whatsoever, not even the aforementioned gum commercial clips. The existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

58.     I issued a DMCA Takedown against this page. However, on June 9, 2021, I received an email from Facebook stating that they would not remove the infringing material. Therefore, Facebook has forfeited its safe harbor for this count of copyright infringement.

59.     On June 9, 2021, I received a message on Instagram from AcerthornFanClub. It was a picture of Karl Polano, with the phrase "admin reveal" at the top (thus informing me that Karl Polano was the one in charge of this Instagram page), while also stating "You 's a bitch" and "You ain't stoppin' us!"

60.     On or around July 6, 2021, Polano uploaded a stream to his Twitch channel. In this stream, he, among other things, played a clip of my accidental livestream where the strange noises occurred. If this stream were still available, it could be viewed at the following url: https://www.twitch.tv/videos/1102055994. On August 28, 2021, I issued a DMCA Takedown Notice with Twitch, and it was removed less than 2 hours later. However, on August 31, 2021, I received a notification from Twitch stating that Karl Polano had issued a DMCA Counter-Notification.

61.     On August 18, 2021, Frederick Allison, now acting under the psuedonym "Sügmi Nuitz," posted a 4 minute 19 second clip from my accidental livestream to Youtube, which included the strange noises. On August 28, 2021, I issued a DMCA Takedown against that video, and Youtube promptly removed it. As of the time of this writing, no Counter Notification has been filed, but I still wish for Allison to be held liable nonetheless.

### III-9: Stress caused

62.     The stress that I have suffered as a result of the Defendants' harassment and doxxing is quite palpable. I have become reluctant to appoint any new moderators to my Discord. I have become hesitant to open any messages on Reddit for fear that it might be Allison under a new name harassing me some more. I have been extremely reluctant to schedule additional

collaborations with other streamers for fear that I might be doxxed again.

63.     In addition to those symptoms of paranoia and anxiety, I would like to ask the Court to consider the persuasive precedent of Peoples Bank & Trust Co. v. Globe Intern., 786 F. Supp. 791, 796 (1992), which states, in pertinent part, the following:

> "It may be, as defendant in essence argues, that Mrs. Mitchell does not show a great deal of obvious injury, but a reasonable juror might conclude, after hearing the evidence and viewing the Sun issue in question, that Nellie Mitchell's experience could be likened to that of a person who had been dragged slowly through a pile of untreated sewage. After that person had showered and a few weeks have passed, there would be little remaining visible evidence of the ordeal which the person had endured and the resulting damages incurred, but few would doubt that substantial damage had been inflicted by the one doing the dragging."

64.     In other words, I believe the conduct committed by the individual defendants (and certainly Karl Polano and Allison) are so outrageous that I should not have to prove damages. Their conduct should be considered tortuous per se.

### III-10: Evidence of Collaboration

65.     As I mentioned earlier in this Complaint, the three individual defendants (Polano, Allison, and Mateas) are all working together in an attempt to maliciously sabotage my career. These are not merely three individuals acting concurrently but independently of one another. It is one singular, collaborative effort on their part. For this reason, I believe that all three individual defendants should share equally in the liability in this case. Karl Polano and Mateas should be liable for all of Allison's harassment (including attempting to infect me with a computer virus) and copyright infringements. Allison and Mateas should be liable for all of Polano's harassment and copyright infringements. Polano and Allison should be liable for Mateas's fraudulent DMCA Takedown. So on and so forth.

66.     So what evidence do I have that they are all working together? Well, the connection between Polano and Mateas is the easiest to prove. As I mentioned earlier, Mateas is a moderator in Polano's "Great Six" discord server. As such, he has an incredible amount of authority in the Great Six community. He has the power to remove material which infringes on my copyright, remove any material that harasses or doxxes me on that server, and to ban any person (with the exception of Polano himself) who engages in any such conduct. Despite having the power to do so, he not only has refused to do so, but has repeatedly and consistently engaged in the harassment, doxxing, and copyright infringement himself. He is clearly working alongside Polano.

67.     Granted, if he had refused to be party to this harassment, doxxing, and copyright infringement, Polano most likely would have relieved him of his moderator position. However, at least hten, Mateas would not have been a co-defendant in the instant case. Apparently, his loyalty to Polano supercedes his fidelity to the law.

68.     With Allison, there is also evidence that he is working with Polano and Mateas. The most incriminating piece of evidence I have so far is the fact that (A) Polano created the video he uploaded to his YouTube channel on May 20, 2021 (see ¶ 50 of this Complaint), and (B) that video was originally uploaded by Allison on April 13, 2021 (see ¶ 30 of this Complaint). In other words, Polano created that video and then gave it to InitiativeKookie so he could upload it to his YouTube channel. However, because Allison did not wish to file a DMCA Counter Notification, Polano took his video back and uploaded it himself.

69.     Perhaps that is not entirely how it happened. Maybe Allison is the original creator of the video, and when Polano stated in his Counter-Notification that he was the creator, that was yet another lie he told YouTube. But even if that were the case, that still does not help the Defendants. Regardless of who played which part, the bottom line is that one of them created the infringing video and then gave it to the other so he could use it to harass me, dox me, and infringe on my copyright. Regardless of which one was the initiator and which one was the accomplice, the bottom line is that there is clear evidence of collusion, cooperation, and partnership between them.

70.     So because there is clear evidence that Allison and Polano are working together to sabotage my career on YouTube and Twitch, and because there is clear evidence that Polano and Mateas are working together to do the same, common sense dictates that ALlison and Mateas are also working together to accomplish this same goal.

### IV: LEGAL ANALYSIS

71.     For the following reasons, the law entitles me to relief on each tort that I am suing over.

### IV-1: Intentional Infliction of Emotional Distress

72.     To state a claim for intentional infliction of emotional distress, the plaintiff must allege facts that plausibly show: (1) extreme and outrageous conduct by the defendant(s) with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009).

### IV-1-A: Extreme and Outrageous Conduct

73.     The allegations of ¶¶ 13-21, ¶¶ 26-41, ¶¶ 51-56, and ¶ 59 of this Complaint should be sufficient to establish the first essential element of this tort. The Defendants have engaged in a months-long campaign to inflict as much emotional pain (and even property damage) on me as possible, engaging in such acts as repeatedly creating new accounts in order to circumvent bans or blocks, bombarding my Discord server with unsolicited pornographic imagery, sabotaging my Discord server by tricking me into appointing them as mods, attempting to infect me with a computer virus (hence the property damage), and illegally obtaining my private information so they can share it with the world without my consent.

74.     In the case of *Corales v. Bennett*, 567 F.3d 554 (9ᵗʰ Cir. 2009), the Ninth Circuit held that conduct is considered extreme or outrageous if it is done with the specific, actual intent to inflict emotional distress or suffering. See *id* at 572 ("Plaintiffs cite examples of ostensibly similar behavior that was found to be extreme and outrageous. But these cases are inapplicable, as each relied on the defendant's intent to harm the threatened party"). In the instant case, the fact that the Defendants' actions were done with the specific intent to inflict emotional distress is axiomatic.

75.     Remember that the Defendants' attempts to harass me include doxxing me. "Doxxing is short for 'dropping documents.' The practice involves 'using the Internet to source out and collect someone's personal and private information and then publicly releasing that information online.' The 'goal of doxxing is typically retribution, harassment or humiliation.'" See Vangheluwe v. Got News, LLC, 365 F. Supp. 3d 850, 858-59 (E.D. Mich. 2019). Because it is designed with the goal of harassment and humiliation, it fits the criteria set forth in *Corales* to automatically be considered extreme or outrageous to the exclusion of all other factors.

<u>IV-1-B: Damages Suffered by Plaintiff</u>

76.     The factual allegations of ¶¶ 62-64 should be sufficient to establish the second essential element. The stress that I have suffered as a result of the Defendants' harassment and doxxing is quite palpable. I have become reluctant to appoint any new moderators to my Discord. I have become hesitant to open any messages on Reddit for fear that it might be Allison under a new name harassing me some more. I have been extremely reluctant to schedule additional collaborations with other streamers for fear that I might be doxxed again.

77.     In addition to those symptoms of paranoia and anxiety, I would like to ask the Court to consider the persuasive precedent of Peoples Bank & Trust Co. v. Globe Intern., 786 F. Supp. 791, 796 (1992), which states, in pertinent part, the following:

> "It may be, as defendant in essence argues, that Mrs. Mitchell does not show a great deal of obvious injury, but a reasonable juror might conclude, after hearing the evidence and viewing the Sun issue in question, that Nellie Mitchell's experience could be likened to that of a person who had been dragged slowly through a pile of untreated sewage. After that person had showered and a few weeks have passed, there would be little remaining visible evidence of the ordeal which the person had endured and the resulting damages incurred, but few would doubt that substantial damage had been inflicted by the one doing the dragging."

78.     In other words, I believe the conduct committed by the individual defendants (and certainly Karl Polano and Allison) are so outrageous that I should not have to prove damages. Their conduct should be considered tortuous per se.

79.     In addition to the emotional distress, I also believe the individual defendants should be liable for all damages suffered, both as a direct and indirect result of their harassment and doxxing. This includes, but is not limited to, my loss in popularity on the YouTube and Twitch platforms because of the doxxing, as well as a result of my refusal to respond publicly to the

**SER316**

accusations leveled against me.[4] These damages are virtually impossible to place an exact dollar value on, but I am hopeful that the Court will adequately compensate me, as well as award punitive damages.

80.     Meanwhile, I believe (and I pray the Court will agree with me) that the third essential element should be obvious to any reasonable person who has read the Complaint from beginning up to this point, so I hopefully should not have to allege specific facts for that third essential element.

### IV-2: Copyright Infringement

81.     To show a prima facie case of copyright infringement, I need only show two essential elements: Ownership of a copyright by the Plaintiff and copying by the Defendant. See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1151 (9th Cir. 1986) ("[T]here are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by the plaintiff and copying by the defendant").

### IV-2-A: Ownership of Copyright by Plaintiff

82.     The allegations of ¶¶ 22-25 of this Complaint should satisfy the first essential element. A livestream on Twitch is copyrightable, even if it is done by accident. As the owner of the channel and the sole author of the livestream, I have default sole ownership of the copyright to this stream, unless I sign away the rights to it (which I have not done).

### IV-2-B: Copying of Copyrighted Content by Defendant

83.     The first count of copyright infringement is based on the fact that the at least one of the Defendants (either Karl Polano or Allison) illegally downloaded the livestream using third-party software. Think about it: How else could they possibly have gotten the raw footage to make their infringing videos in the first place? The stream was originally broadcast on Twitch, but there is no way to download directly form Twitch. While YouTube offers a limited means of downloading videos for offline viewing[5], none of the Defendants could possibly have gotten the stream from YouTube, since that video is restricted only to those who pay my channel $20 per month. I know for a fact that none of the Defendants have paid me that money, so how did they get the raw footage of the stream in order to make their infringing videos in the first place? The only explanation is that at least one of them must have illegally downloaded the stream using some unauthorized third-party software. This is blatant copyright infringement, just like how it is illegal to use a torrent app to download entire movies and/or video games without paying for them.

84.     Once one of the individual defendants (either Polano or Allison) had illegally downloaded the stream, he then necessarily shared it with the other so that they could work

---

4   After all, if the Defendants never doxxed me, there would never have been any accusations for me to publicly address.

5   See https://www.youtube.com/premium ("Downloads: Save videos for when you really need them – like when you're on a plane or commuting.")

together to infringe on my copyright. As I said earlier, one of the Defendants necessarily created the infringing video with the gum commercial clips in it, and then gave that infringing video to the other person to upload. Regardless of which one did the giving, the bottom line is that an unauthorized sharing occurred. Since they are all working together, they are all liable for both anyway (see ¶¶ 65-70 of this Complaint). This unauthorized sharing constitutes a second count of copyright infringement.

85.    Then we have the thirteen instances where the Defendants shared my copyrighted content publicly on either Discord, YouTube, Vimeo, or Instagram. The counts of copyright infringement I currently allege are as follows:

- COUNT NO. 3: The uploading that occurred on April 10, 2021, which I describe in ¶ 26 of this Complaint.

- COUNT NO. 4: The uploading that occurred on April 11, 2021, which I describe in ¶ 27 of this Complaint.

- COUNT NO. 5: The uploading that occurred on April 12, 2021, which I describe in ¶ 29 of this Complaint.

- COUNT NO. 6: The uploading that occurred on April 13, 2021, which I describe in ¶ 30 of this Complaint.

- COUNT NO. 7: The uploading that occurred on April 13, 2021, which I describe in ¶ 32 of this Complaint.

- COUNT NO. 8: The uploading that occurred on April 25, 2021, which I describe in ¶ 42 of this Complaint.

- COUNT NO. 9: The uploading that occurred on April 27, 2021, which I describe in ¶ 42 of this Complaint.

- COUNT NO. 10: The uploading that occurred on April 28, 2021, which I describe in ¶ 42 of this Complaint.

- COUNT NO. 11: The uploading that occurred on May 5, 2021, which I describe in ¶ 42 of this Complaint.

- COUNT NO. 12: The uploading that occurred on May 8, 2021, which I describe in ¶ 42 of this Complaint.

- COUNT NO. 13: The uploading that occurred on May 22, 2021, which I describe in ¶ 42 of this Complaint.

- COUNT NO. 14: The uploading that occurred on May 20, 2021, which I describe in ¶ 45 of this Complaint.

- COUNT NO. 15: The uploading that occurred on June 7, 2021, which I describe in ¶ 57

of this Complaint.

- <u>COUNT NO. 16</u>: The stream that occurred on or around July 6, 2021, which I describe in ¶ 60 of this Complaint.

- <u>COUNT NO. 17</u>: The uploading that occurred on August 18, 2021, which I describe in ¶ 61 of this Complaint.

86.     Last but not least, we also have the innumerable instances of copyright infringement that Karl Polano allowed, and even actively encouraged, on his Discord server that I was unable to have taken down because he would not let me see the main chat room in that server. While I do not know how many instances of copyright infringement there are, I wish to recover statutory damages and obtain injunctive relief on each and every one of them.

**IV-3: Misrepresentation Under 17 USC § 512(f)(2)**

87.     To recover for a violation of 17 USC § 512(f)(2), I must show (A) that the Defendant issued knowingly false (or at least knowingly misleading) material statements when issuing a DMCA Counter-Notification, (B) that the service provider (in this case, YouTube) relied on these misrepresentations, and (C) that I suffered damages as a result of the service's reliance thereof.

<u>IV-3-A: Knowingly False Material Statements</u>

88.     The allegations of ¶ 48 of this Complaint should sufficiently show that Karl Polano issued numerous, knowingly-false statements in his DMCA Counter-Notification. He lied about the video being a parody. He lied about the video being altered. He lied about the video being nothing like my original content. He lied about the video being noncommercial. These are all material statements that he knowingly lied about.

<u>IV-3-B: Reliance by ISP</u>

89.     The allegations of ¶ 47 of this Complaint should show any reasonable finder of fact that YouTube relief on these allegations. After all, if they did not rely on these allegations, why else would they process the Counter-Notification and notify me of same?

<u>IV-3-C: Damages</u>

90.     The damages I suffered are the fact that I had to file this lawsuit in order to keep the video from being reinstated. This lawsuit will undoubtedly cost a lot of money (even if I am proceeding *in forma pauperis*) and will cause me a great deal of stress.

<u>IV-4-D: Failure to Consider Fair Use</u>

91.     In addition to the knowingly false material statements he made in his Counter-Notification, there is also the fact that Karl Polano did not consider fair use. In the case of Lenz v. Universal Music Corp., 801 F. 3d 1126 (9th Cir. 2015), the Ninth Circuit held a copyright

holder must consider fair use before issuing a DMCA Takedown. Common sense dictates that alleged infringers should also be required to consider fair use before issuing a Counter-Notification.

92.     More importantly, the Defendant should be required to consider the *actual* law of fair use. If he attempts to simply make up his own standard for fair use and then consider that standard, that should not be allowed. If that were allowed, that would completely undermine one of the most fundamental principles of our jurisprudence: That ignorance of the law is no excuse. If we start making exceptions to that principle in all but the most exceptional of cases, then the rule of law in its entirety crumbles at its foundation.

93.     In order to consider fair use (provided you are considering the *actual* law of fair use and not just your own, custom version of fair use), you must consider the Four Factors Test. The Supreme Court and Ninth Circuit has made it exceptionally clear that there is no such thing as presumptive fair use. Every noteworthy published opinion regarding fair use in the past fifty years has used the Four Factors Test. Every. Single. One.

- Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148 (9th Cir. 1986) used the Four Factors Test. See id at 1152-1156.

- DR. Seuss Enterprises, LP v. Comicmix LLC, 983 F. 3d 443 (9th Cir. 2020) used the Four Factors Test. See id at 451-461.

- Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539 (1984) used the Four Factors Test. See id at 561-569.

- Campbell v. Acuff-Rose Music, Inc., 510 US 569 (1994) used the Four Factors Test. See id at 578-594.

- Sony Corp. of America v. Universal City Studios, Inc., 464 US 417 (1984) used the Four Factors Test. See id at 496-498.

- Fisher v. Dees, 794 F. 2d 432 (9th Cir. 1986) used the Four Factors Test. See id at 437-439.

- Dr. Seuss Enterprises, LP v. Penguin Books, 109 F. 3d 1394 (9th Cir. 1997) used the Four Factors Test. See id at 1399-1403.

- Monge v. Maya Magazines, Inc., 688 F. 3d 1164 (9th Cir. 2012) used the Four Factors Test. See id at 1173-1183.

- Hosseinzadeh v. Klein, 276 F.Supp.3d 34 (S.D. NY 2017) used the Four Factors Test. See id at  45-47.

94.     Therefore, if the Defendants do not consider the Four Factors Test, they do not consider fair use and thus commit misrepresentation under 17 USC § 512(f). Period. No exceptions.

95.     The infringing video that Polano uploaded on May 20, 2021 (the only one that is the subject of a DMCA Counter-Notice) is so overwhelmingly lacking in the Four Factors Test that the odds that Polano actually considered that test is astronomical. No reasonable person could apply the Four Factors Test and conclude that the Defendants' video is fair use. Rather, Polano seems to believe that his video is fair use simply because it is a parody of my original livestream. Furthermore, he believes it is a parody simply because he has decided it is a parody. This is evidenced by his statements in the DMCA Counter-Notification (see ¶ 47 of this Complaint) as well as the excessively toxic and vulgar personal attacks he leveled against me on April 25 (see ¶ 38 of this Complaint).

96.     Put simply, the mere fact that he calls it a parody does not make it a parody. To hold otherwise would completely undermine yet another one of our most core and most fundamental legal principles: That nobody should be allowed to be the judge of his own case.

97.     But even if his video could be considered parody by the Court (as opposed to the Defendant), he appears to believe that, as long as it is classified as a parody, it is automatically fair use to the exclusion of all other factors. Put simply, that is not how this works. In fact, the Supreme Court has explicitly and unequivocally rejected the idea that parody is automatically - or even presumptively - fair use:

> "The fact that parody can claim legitimacy for some appropriation does not . . . tell either parodist or judge much about where to draw the line. Like a book review quoting the copyrighted material criticized, parody may or may not be fair use, and petitioners' suggestion that any parodic use is presumptively fair has no more justification in law or fact than the equally hopeful claim that any use for news reporting should be presumed fair. The [Copyright] Act has no hint of an evidentiary preference for parodists over their victims, and no workable presumption for parody could take account of the fact that parody often shades into satire when society is lampooned through its creative artifacts, or that a work may contain both parodic and nonparodic elements. Accordingly, parody, like any other use, has to work its way through the relevant factors, and be judged case by case, in light of the ends of the copyright law." See Campbell v. Acuff-Rose Music, Inc., 5 10 US 569, 58 1 ( 1994) (citations omitted).

98.     Even ignoring that, the Defendant still contradicts himself. First, he says that his video was a parody. Then, literally one sentence later, he says that his video is not like my original content. However, if it is not like my content, then it is not a parody. The Supreme Court has held that "[p]arody needs to mimic an original to make its point." See Campbell v. Acuff-Rose Music, Inc., 5 10 US 569, 580-8 1 ( 1994). Therefore, if it is not like the my content, then it cannot be a parody. More to the point, if his resulting video is not like my original content, then that begs the question ... how can the Defendants possibly be commenting on or criticizing my content?!

99.     That transitions to the next point: The Defendant has not even attempted any sort of transformative effect in his work. He bookends the clip from my accidental livestream with some clips from a gum commercial, but other than that, he just copies from my livestream verbatim with absolutely no alterations. There is no commentary, no criticism, no analysis, no evaluation,

nothing that could even arguably be considered transformative whatsoever. The addition of the gum commercial clips is a completely superfluous addition that provides absolutely no commentary on my livestream clip. Even if the Court were to determine that the gum commercial clips provided some de minimus transformative value, the value added would be so minimal that it alone should not be able to overcome the other three factors of the Four Factors Test.

100.    The second factor of fair use also weighs against the Defendant. While it is true that facts are given less copyright protection than fiction, and the fact that the accidental livestream showed a day in my life (which could be considered nonfiction), it is important to note that, when lawmakers and copyright law scholars say "facts," they typically mean things such as history, science, or politics, aka things of public importance. Simply peaking into one person's personal life on some random day, when he is alone in his own home, minding his own business and hurting no one, is, quite simply, not consistent with the public policy interests fair use was designed to protect. By contrast, it absolutely serves the Defendant's personal agenda of harassing and doxxing me, but such malevolent motives, at best, do not help Defendants in their case for fair use, and at worst, actively hinder their case for fair use.

101.    The third factor of fair use is neutral at best and weighs against the Defendants at worst. While it is true that Defendant's video was only 50 seconds long whereas my accidental livestream was nearly 2 hours long, the Defendants used the most substantial portion of my accidental livestream. He used the "heart" of the accidental livestream, and therefore, this factor should be construed in the Defendants' disfavor.

102.    The fourth and final fair use factor - effect on the potential market - is egregiously and laughably in the Defendants' disfavor. The 3rd through 15th counts of copyright infringement contain the only interesting part about my accidental livestream, and contained the entirety of that only interesting part. As such, this video almost completely usurps the market for my own accidental livestream. The existence of these videos mean that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free?

103.    As you can see, once we start to actually consider the Four Factors Test, no reasonable trier of fact could possibly find fair use in this case. Therefore, the overwhelming odds are that Karl Polano never considered the Four Factors Test. Because he did not consider the Four Factors Test, that means he did not consider fair use. See *Lenz*, supra at 1135 ("A [party] who pays lip service to the consideration of fair use by claiming it formed a good faith belief when there is evidence to the contrary is still subject to § 512(f) liability").

104.    In addition to the aforementioned four factors test, it is also established law that, when an infringer acts in bad faith, their infringement is automatically not fair use, even if that same video could be considered fair use in otherwise identical circumstances. See Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539, 562 (1985) ("Also relevant to the character of the use is the propriety of the defendant's conduct. Fair use presupposes good faith and fair dealing"). See also Fisher v. Dees, 794 F. 2d 432, 437-38 (9th Cir. 1986) ("One theme running through the composers' briefs is that Dees's alleged bad conduct should bar his use of the equitable defense

of fair use. The principle invoked is sound. Because fair use presupposes good faith and fair dealing, courts may weigh the propriety of the defendant's conduct in the equitable balance of a fair use determination") (citations and quotations omitted). Because the Defendants have engaged in a months-long campaign to harass and dox me, it is clear that their copyright infringement is likewise done solely to harass and dox me, rather than provide criticism or commentary for its own sake. See Fed.R.Evid 404 (b)(2) (evidence of other bad acts may be admissible to prove, among other things, "motive" and "intent"). This weighs heavily against fair use (if it does not bar the claim of fair use altogether), and Polano's failure to consider this factor means he is in violation of 17 USC § 512(f)(2).

105.    Last but not least, because the Defendants necessarily obtained the raw footage by illegal means (see ¶¶ 83-84 of this Complaint), that means the videos are automatically not fair use, even if that same video could be considered fair use in otherwise identical circumstances. See Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539 (1985), where the Supreme Court disagreed with the *factual* finding of the lower court that the Defendants *in that particular case* had "knowingly exploited a purloined manuscript," but left intact the conclusion of law that, if the Defendants had done so, that would have been an automatic bar to fair use. Because Polano clearly did not consider this when he issued his DMCA Counter-Notification, he violated 17 USC § 512(f)(2).

### IV-5: Misrepresentation Under 17 USC § 512(f)(1)

106.    To recover for a violation of 17 USC § 512(f)(1), I must show (A) that Mateas issued a DMCA Counter-Notification, (B) that this counter-notification consisted of knowing material misrepresentations about the alleged infringement in the video, and (C) that I suffered damages as a result of this knowing material misrepresentation. A person commits a knowing material misrepresentation if he fails to consider fair use before issuing the takedown. See Lenz v. Universal Music Corp., 801 F. 3d 1126 (9th Cir. 2015).

#### IV-5-A: DMCA Takedown

107.    On or around May 25, 2021, Mateas issued a DMCA Takedown against me. See ¶ 54.

#### IV-5-B: Knowingly False Material Statements

108.    The allegations of ¶ 54 also show that he committed at least one knowing material misrepresentation when issuing this takedown, namely that he lied about owning the copyright to that image.

#### IV-5-C: Failure to Consider Fair Use

109.    The allegations of ¶ 55 should sufficiently allege that he failed to consider fair use before issuing the takedown. My use of that screenshot (which included the image of the rooster) met all four factors in the Four Factors Test outlined in 17 USC § 107(1)-(4). I was reporting on a news event (a very niche news event, but a news event nonetheless), so it was transformative. I was discussing an event that really happened in real life, not a work of fiction, so the second

factor weighs in favor of fair use. I only showed the screenshot for a few seconds before removing it from the video, so the third factor weighs in favor of fair use. Lastly, my use of the screenshot in a YouTube video does not in any way, shape, or form usurp Mateas's market to license the image (assuming he even is the original copyright holder in the first place, which he isn't) for its original intended purpose of being a comment icon in Discord. So the fourth factors weighs in favor of fair use. This means that literally all four factors weigh in favor of fair use; it is a clean sweep. Therefore, Mateas almost certainly did not consider fair use before issuing his DMCA Takedown. No reasonable person could possibly have considered the Four Factors Test in this case and somehow reasonably determined that my use of the screenshot was not fair use.

110.    Also, the allegations of ¶ 46 create a very high likelihood that Mateas not only failed to consider fair use, but that he had actual knowledge that his takedown was fraudulent, and that he acted, not in a good faith attempt to protect his intellectual property, but in furtherance of a conspiracy the Great Six Discord server entered into against me.

111.    In addition, the fact that Mateas never filed suit against me, and my video was eventually reinstated for want of prosecution, is circumstantial evidence that he did not actually believe that my video infringed on his copyright. See Online Policy Group v. Diebold, Inc., 337 F. Supp. 2d 1195, 1204-05 (N.D. Cal 2004) ("The fact that Diebold never actually brought suit against any alleged infringer suggests strongly that Diebold sought to use the DMCA's safe harbor provisions — which were designed to protect ISPs, not copyright holders — as a sword to suppress publication of embarrassing content rather than as a shield to protect its intellectual property").

<u>IV-5-E: Damages</u>

112.    Meanwhile, the allegations of ¶ 56 should sufficiently allege an injury that was caused because of this act of fraud. I spent over two weeks with the video taken down, and therefore not gaining views or generating ad revenue.

**V: RELIEF REQUESTED**

113.    For all of the reasons already stated, I should be entitled to prospective and retrospective injunctive relief, statutory damages for the copyright infringement, and compensatory and punitive damages for the intentional infliction of emotional distress. The only question is … exactly what relief should I get, and against whom?

**V-1: Injunctive Relief against Karl Polano, Frederick Allison, and Raul Mateas**

114.    First, I would like the Court to order Karl Polano, Frederick Allison, and Raul Mateas to cease and desist having any further contact with me. This includes over YouTube, Reddit, Discord, Twitch, or any other form of online or offline communication. An exception can be made if the communication is supervised by American police or an American court of competent jurisdiction.

115.    This Court has already expressed its opinion that I have not stated a claim upon which relief can be granted for the tort of intentional infliction of emotional distress. I am still repeating

these torts in this Second Amended Complaint so they may be preserved for appeal. However, even if this Court refuses to grant me any relief pursuant to that tort, there is an independent grounds upon which I believe I am entitled to this injunctive relief: Because as the owner of my YouTube channel, Twitch channel, and Discord server, I still have the absolute right to decide who does and doesn't get to come onto any of the aforementioned properties and post messages, and the Courts have a duty to enforce that right of mine.

116.    Think about how this would work in a situation that didn't involve the Internet. Imagine if I owned a brick and mortar business, such as a bar. Frederick Allison came into that bar and started harassing me and/or my customers, so I kick him out. Then, he dons a disguise so he can get back in through the front door (or perhaps enters via some alternative entrance that is not as heavily guarded), before proceeding to take off the disguise so he can resume harassing me and/or my customers. Then he does it again. And again.

117.    In that scenario, even if the behavior he engages in while on the premises is not independently actionable as a crime or tort, his repeated unauthorized entry – after he has been repeatedly and unambiguously told that he is not welcome there – still is. It's my property, so it's my right. As such, a court of competent jurisdiction in that case would absolutely issue a prospective injunction ordering the defendant to cease and desist his unauthorized entry into the plaintiff's personal or business property, and would absolutely hold the defendant in contempt of court (complete with coercive confinement) if the defendant persisted.

118.    In the instant case, the fact that it occurrs on the Internet may make it *physically* easier for the Defendants to get new disguises (in the form of alternate accounts), but that does not adversely affect my substantive property rights. In copyright law, it is long established that the mere fact that something happens on the Internet does not adversely affect the rights of the copyright holder; I see no reason why it should adversely affect my right to dictate who does and does not get to come onto my business properties and raise hell.

119.    So I believe I am absolutely entitled to a prospective injunctive relief ordering the individual defendants to stop attempting to break into my property, even if that property only exists in the digital realm. As such, I still request a prospective injunctive relief ordering the individual defendants to have no further contact with me on any website for any reason.

120.    This injunction should also include ordering all three Defendants to never again issue any DMCA Takedowns against me. If they believe any of my videos or streams infringe on their copyright, they should be required to go straight to suing me in court without issuing a DMCA Takedown and forcing me to issue a DMCA Counter-Notification first. This way, they can still enforce their rights if I am violating them, but I would be entitled to full due process before they can have any of my content removed.

121.    The Defendants should also be enjoined from having any communications with any person they know, or have reason to know, to be a member of my Discord server, or a regular audience member in my YouTube or Twitch channels. An exception can be made if the communication is entirely unrelated to me. This is to prevent them from ever doxxing me again.

122.     I also would like the Court to enjoin the Defendants from ever infringing on my copyright ever again. This injunction should hold, even if they reasonably believe their infringing content qualifies for fair use. It is clear, at this point, that the Defendants are incapable of acting in good faith when it comes to fair use. They will not consider fair use, but still insult, harass, and dox me because they feel that they do qualify for fair use. It is clear they will not act in good faith, so they should forever lose the right to make fair use of my copyrighted content. It is a harsh penalty, but it is one that is necessary.

123.     Last but not least, the Defendants should be ordered to require similar compliance with all aforementioned injunctions with any person who is a member of their Discord communities, their YouTube or Twitch channels, or any other online communities in which they have any moderator or administrator authority. They should be ordered to immediately remove any material that harasses me, doxxes me, or infringes on my copyright, and to issue immediate, permanent, and irrevocable bans to the users who post it, and to continue to do the same in all future cases in perpetuity. They should be ordered to provide me with the ability to view any communities they create or maintain, and any messages posted in those communities, so I may monitor those communities for violations of this injunction.

### V-2: Injunctive Relief against Alphabet, Discord, Facebook, and Amazon

124.     For the most part, Alphabet Inc., Discord Inc., and Amazon.com Inc. have complied with the DMCA's safe harbor provisions. However, 17 USC § 512(j) provides for a limited form of prospective injunctive relief against ISPs, even if they have safe harbor for everything else. It is upon this limited grounds for relief that I seek to enjoin Alphabet Inc, Discord Inc., and Amazon.com Inc. I also request prospective injunctive relief against Facebook Inc. under 17 USC § 512(j), although they are also being sued for damages.

125.     The trio of individual defendants are, without a doubt, repeat infringers. Their collective infringements on YouTube, Discord, and Instagram undoubtedly qualify as repeat infringements. While the DMCA does not provide a bright line definition for the term "repeat infringer," the fact that the individual defendants have infringed on my copyright a minimum of *seventeen times* (possibly more, once I get the chance to inspect their Discord server) would suffice any reasonable definition of the term. No reasonable trier of fact would argue that fifteen infringements does not make you a repeat infringer.

126.     For this reason, I ask the Court to enjoin Alphabet Inc., Discord Inc., Amazon.com Inc. and Facebook Inc., pursuant to 17 USC § 512(j)(1)(B)(i), to permanently terminate the individual Defendants' accounts and all associated channels, servers, and pages. The corporate defendants should also be ordered to not permit (either expressly or tacitly) the three individual defendants to create any new accounts for any reason.

### V-3: Statutory Damages Against Karl Polano, Frederick Allison,

**Raul Mateas, & Facebook**

127.    The trio of Karl Polano, Frederick Allison, and Raul Mateas collectively infringed on my copyright a minimum of seventeen (17) times. I request statutory damages of up to $150,000 for each count of copyright infringement. This means that, so far, the trio should be held liable for up to $2,550,000 in statutory damages. However, I also ask the Court to award me statutory damages up to $150,000 for every additional instance of copyright infringement I can find when I have the chance to peruse the Defendants' Discord server.

128.    Facebook has lost its safe harbor regarding the fifteenth count of copyright infringement (see ¶ 58 of this Complaint). As such, I ask that Facebook Inc. be held jointly liable for the fifteenth count of copyright infringement alongside the trio of individual defendants, and should also be held liable for statutory damages up to $150,000.

**V-4: Emotional Distress & Punitive Damages against Polano, Allison, & Mateas**

129.    To compensate me for the intentional infliction of emotional distress, and to punish the three individual defendants and discourage all other persons similarly situated from engaging in similar conduct in the future, I ask the Court to award me a combination of compensatory, emotional distress, and punitive damages up to and including one million ($1,000,000) dollars against the three individual defendants. Combined with the statutory damages, and that brings the total damages package up to $3,550,000.

**V-5: Other Appropriate Relief**

130.    Last but not least, I ask the Court to award whatever other relief, at law or in equity, that the Court, in its discretion, deems appropriate to make me whole and to ensure this does not happen again.

**VI: CONCLUSION**

131.    Wherefore, premises considered, I respectfully request that the Court enjoin the Defendants to cease and desist the harassment, doxxing, and copyright infringement, award me damages up to and including $3,550,000 in a combination of statutory, emotional distress, and punitive damages, award costs incurred, any other relief to which I may be entitled.

So requested on this, the 10th day of September, 2021.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 DAVID A. STEBBINS,

| | Case No.  21-cv-04184-JSW |
|---|---|

Plaintiff,

8 **ORDER RE SUFFICIENCY OF AMENDED COMPLAINT AND DEFERRING RULING ON EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**

9 v.

10 KARL POLANO, et al.,

11 Defendants.

12

13      Now before the Court is an ex parte application for a temporary restraining order ("TRO")

14 filed by Plaintiff David Stebbins ("Plaintiff") against a single named defendant, Discord, Inc.,

15 requiring Discord, Inc., to prohibit certain of its members from managing channels or messages.

16 In making a determination regarding Plaintiff's application, the Court has reviewed the procedural

17 posture of this case.

18      The original complaint was filed on June 2, 2021, and the matter was randomly assigned to

19 Magistrate Judge Corley.  On June 30, 2021, Judge Corley issued a screening order pursuant to 28

20 U.S.C. section 1915.  (Dkt. No. 10.)  In that Order, Judge Corley found that Plaintiff sufficiently

21 stated a claim for copyright infringement but found that Plaintiff's claims for misrepresentation

22 under 17 U.S.C. section 512(f) ("Section 512(f)") and intentional infliction of emotional distress

23 ("IIED") failed to comply with Federal Rule of Civil Procedure 8.  She permitted Plaintiff leave to

24 amend to cure the defects identified by no later than July 30, 2021.  On July 29, 2021, Plaintiff

25 filed an amended complaint.  (Dkt. No. 11.)  That same day, he filed an ex parte application for a

26 TRO, and the case was subsequently reassigned to the undersigned.  (Dkt. No. 20.)  Before the

27 Court may address the TRO, it must first address the sufficiency of the amended complaint's

28 allegations under 28 U.S.C. section 1915.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1

## BACKGROUND

2    Plaintiff posts content to his YouTube and Twitch channels using the alias Acerthorn.

3    (Am. Compl. ¶ 1.)  Plaintiff alleges that on April 10, 2021, his livestream software turned on

4    causing him to inadvertently broadcast two hours of his daily activities for his viewers to see.  (*Id.*

5    ¶ 22.)  Plaintiff alleges that at one point in the video, strange noises can be heard.  (*Id.* ¶ 23.)  The

6    noises constitute the most interesting and memorable part of the livestream.  (*Id.*)  Plaintiff alleges

7    that he registered his accidental livestream with the U.S. Copyright Office and uploaded a video of

8    the livestream to his YouTube channel, limiting access to those who pay him twenty dollars per

9    month.  (*Id.* ¶ 24.)

10    Plaintiff alleges that shortly after his inadvertent livestream, a user with the alias

11    InitiativeKookie uploaded a clip from the accidental livestream to YouTube and Vimeo on

12    multiple occasions despite receiving takedown notices from Plaintiff.  (*Id.* ¶¶ 26-32.)  Plaintiff

13    alleges that on April 25, 2021, he learned that Defendant Polano was also sharing Plaintiff's

14    copyrighted livestreams on Polano's Discord server.  (*Id.* ¶ 38.)  Plaintiff alleges that Polano's

15    Discord server is moderated by a user with the alias TGP482.  (*Id.* ¶ 40.)  Plaintiff alleges that

16    Polano and TGP482 refused to remove the infringing content.  As a result of these instances of

17    infringement, Plaintiff alleges that he has issued numerous takedown notices.

18    Plaintiff alleges that on May 20, 2021, Defendant Polano posted a video to his YouTube

19    channel that consisted of a clip of Plaintiff's accidental livestream combined with some additional

20    video clips.  (*Id.* ¶ 45.)  Plaintiff filed a takedown notice with YouTube, and the video was

21    removed.  (*Id.* ¶ 46.)  Plaintiff alleges that Polano filed a counter-notification stating that the video

22    was a parody and fair use.  (*Id.* ¶ 47.)  Plaintiff alleges that TGP482 and Polano uploaded a clip of

23    his accidental livestream to Instagram on June 9, 2021.  (*Id.* ¶ 57.)  Although Plaintiff filed a

24    takedown notice, Facebook did not remove the material.  (*Id.* ¶ 58.)  Plaintiff alleges that the video

25    could have only been obtained by illegally downloading it.  (*Id.* ¶ 81.)

26    Plaintiff brings claims for copyright infringement, violations of 17 U.S.C. section 512(f)(2)

27    against Polano; violation of 17 U.S.C. section 512(f)(1) against TGP482; and IIED.

28    The Court will address additional facts as necessary in the analysis.

2

**ANALYSIS**

**A.      Copyright Infringement Claims.**

  To state a claim for copyright infringement, a plaintiff must allege facts plausibly showing (1) that he owns a valid copyright in the work, and (2) "copying" and "unlawful appropriation." *Skidmore for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc).  For "copying," the alleged facts must plausibly show, directly, that the defendant copied or, circumstantially, that the defendant had access to the plaintiff's work and the works are strikingly similar.  *Id.*  For "unlawful appropriation," the alleged facts must plausibly show that specific elements of the works are objectively similar and that an ordinary observer would view the overall works as similar.  *Id.*  Here, as Judge Corley previously noted, Plaintiff's allegations plausibly allege a claim of copyright infringement.

**B.      Misrepresentation Under 17 U.S.C. Section 512(f).**

  **1.      Section 512(f)(1) Claim.**

  Plaintiff has added a claim for a violation of Section 512(f)(1) alleging that a user with the alias TGP482 issued a fraudulent takedown notice against a video Plaintiff posted on YouTube because Plaintiff used an image of TGP482's Discord user icon in the video.  (Am. Compl. ¶ 54.).  Under section 512(f), a copyright owner may be liable for damages if it does not make a good-faith assertion in its takedown notice that the subject material infringes on its copyright.  A copyright owner "who knowingly materially misrepresents ... that the material or activity is infringing ... shall be liable for damages incurred by the alleged infringer[.]"  17 U.S.C. § 512(f); *see also Online Policy Group v. Diebold, Inc.,* 337 F.Supp.2d 1195, 1204 (N.D. Cal. 2004) ("A party is liable if it 'knowingly' and 'materially' misrepresents that copyright infringement has occurred.").

  Here, Plaintiff alleges that the TGP482 knowingly misrepresented that infringement occurred because he does not own the copyright to the picture. Plaintiff also alleges that he received notice that members of a certain Discord server, which he alleges includes TGP482, intended to make "false copyright strikes in retaliation" for Plaintiff's takedown notice against Polano.  (*See* Am. Compl. ¶ 46.)  Plaintiff also alleges that TGP482 failed to consider fair use

United States District Court
Northern District of California

3

prior to issuing the takedown notice.  Finally, Plaintiff alleges that he suffered injury in the form of lost views and lost ad revenue.  While sparse, the Court finds these allegations sufficient at the pleading stage.  *Lenz*, 572 F. Supp. 2d at 1156-57.   Although the Court is skeptical that Plaintiff will be able to prove that TGP482 acted with subjective bad faith, at this stage, it finds the allegations sufficient to survive Section 1915 review.

　　　　2.　　Section 512(f)(2) Claim.

　　　　To state a claim for misrepresentation under Section 512(f)(2), a plaintiff must allege facts plausibly showing (1) that the defendant knowingly and materially misrepresented that its material was removed or disabled by mistake or misidentification; (2) the internet service provider relied on the misrepresentation in replacing the removed material or ceasing to disable access to it; and (3) the plaintiff was injured as a result.  *See Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1026 (N.D. Cal. 2015).  The first element is not met if the defendant had a subjective good faith belief that it was not making a misrepresentation—in this situation, if the defendant had a subjective good faith belief that its material was fair use and therefore removing it was a misidentification.  *Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1153-54 (N.D. Cal. 2008).  Judge Corley found that Plaintiff failed to adequately plead the first element because the facts as alleged do not plausibly suggest that any misrepresentation in Defendant Polano's counter-notice was knowing.

　　　　Plaintiff has failed to cure this defect in the amended complaint.  Plaintiff still does not plausibly allege that Polano knowingly misrepresented in the counter-notice that his video was fair use and intended for parody.  Indeed, Plaintiff alleges that Polano's video used only a portion of his original livestream and added certain new elements to the video.  Plaintiff also alleges that Polano sent him a message in which he implies that his use of Plaintiff's video was fair use.  (*See* Am. Compl. ¶ 38(e)).  Plaintiff asserts that Polano's video is not a parody and has not been sufficiently transformed; however, the relevant question for Plaintiff's claim of misrepresentation is whether Plaintiff has adequately alleged that Polano lacked a good faith subjective belief that his use of Plaintiff's video was fair use.  He has failed to do so, and in fact, his allegations give rise to the opposite inference.  Accordingly, the allegations of the amended complaint give rise to the inference that Polano had a subjective good faith belief that his use of the video was fair use.

United States District Court
Northern District of California

4

1   Based on Plaintiff's allegations, it is implausible to infer that Polano knowingly misrepresented

2   that his use of the video was fair use.  Plaintiff's allegations are insufficient to state a claim for

3   relief under Section 512(f)(2).  Moreover, the Court finds further leave to amend here would be

4   futile given the allegations in the complaint establishing Polano's subjective good faith belief.

5   Accordingly, this claim is dismissed WITH PREJUDICE.

6   **C.      Intentional Infliction of Emotional Distress.**

7           To state claim for IIED a plaintiff must show: (1) extreme and outrageous conduct by the

8   defendant with the intention to cause, or reckless disregard of the probability of causing, emotional

9   distress; (2) suffering of severe or extreme emotional distress; and (3) actual and proximate

10   causation of the emotional distress.  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).  Courts have

11   emphasized that extreme and outrageous conduct is conduct that "go[es] beyond all possible

12   [bounds] of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized

13   community."  *Mintz v. Blue Cross of Cal.*, 172 Cal. App. 4th 1594, 1608 (2009) (quotation

14   omitted).  "With respect to the requirement that the plaintiff show severe emotional distress [for an

15   IIED claim]," the California Supreme Court "has set a high bar."  *Hughes*, 46 Cal. 4th at 1051.

16   "Severe emotional distress means emotional distress of such substantial quality or enduring

17   quality that no reasonable [person] in civilized society should be expected to endure it."  *Id*.

18   (citation and internal quotation marks omitted).

19           Plaintiff's allegations are insufficient to state a claim for IIED.  As in the original

20   complaint, the amended complaint again fails to allege facts that show the conduct was extreme

21   and outrageous.  Although Plaintiff alleges that he has been on the receiving end of insults and

22   sabotage attempts on certain of his internet accounts, liability for intentional infliction of

23   emotional distress "does not extend to mere insults indignities, threats, annoyances, petty

24   oppressions, or other trivialities."  *Id.*  Plaintiff also fails to adequately allege that he suffered

25   severe or extreme emotional distress.  Plaintiff alleges that he has become reluctant to take certain

26   actions on his Discord server and Reddit account and has been reluctant to collaborate with other

27   streamers, which he alleges are symptoms of paranoia and anxiety.  (Am. Compl. ¶¶ 74-75.)

28   These allegations are insufficient to meet the "high bar" required to show severe emotional

United States District Court
Northern District of California

distress.  *Hughes*, 46 Cal. 4th at 1051.  Accordingly, Plaintiff's claim for IIED is DISMISSED.
The Court finds that further leave to amend would be futile here.  Plaintiff's amendments in the
amended complaint provide variations on the allegations in the original complaint but are still far
from establishing a plausible claim for IIED.  Accordingly, the Court dismisses this claim WITH
PREJUDICE.

<div align="center">

**CONCLUSION**

</div>

Having reviewed the allegations of the amended complaint pursuant to Section 1915, the
Court finds that Plaintiff's 17 U.S.C. section 512(f)(2) and IIED claims fail to comply with Rule 8,
and the Court dismisses those claims with prejudice.  *See* 28 U.S.C. § 1915(e)(2).  However,
Plaintiff has adequately alleged copyright infringement and a claim for misrepresentation under
Section 512(f)(1) and may proceed on those claims.

Accordingly, it is ORDERED that the Clerk issue summons, and it is FURTHER
ORDERED that the U.S. Marshal for the Northern District of California serve upon the named
defendants, without prepayment of fees, a copy of both the original and amended complaints,
attachments, this Order, and Plaintiff's motion for a TRO.

The Court DEFERS taking action on Plaintiff's application for a TRO until it receives
acknowledgement of service from the U.S. Marshal as to Defendant Discord, Inc., at which point
it will set an expedited briefing schedule on Plaintiff's application.

**IT IS SO ORDERED.**

Dated: August 3, 2021

_____
JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California

6

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS, d.b.a. ACERTHORN                    PLAINTIFF

VS.                          Case 3:21-cv-04184-JSC

KARL POLANO, d.b.a. SOFIANNP, ALPHABET INC.,
DISCORD INC., FACEBOOK INC.,                        DEFENDANTS
JOHN DOE #1, d.b.a. INITIATIVEKOOKIE, and
JOHN DOE #2, d.b.a. TGP482,

## AMENDED COMPLAINT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Amended Complaint as ordered by the Court on June 30, 2021 (See Doc. 10). In this complaint, I allege at least fifteen (15) counts of copyright infringement (and possibly more, once discovery in this case gets underway), one count of ongoing intentional infliction of emotional distress, one count of misrepresentation in violation of 17 USC § 512(f)(1), and one count of misrepresentation in violation of 17 USC § 512(f)(2).

### NAMES & LOCATIONS OF PARTIES

**1.** I am a Youtuber and a Twitch Streamer, who goes by the alias Acerthorn. This is also the Alias I use on Discord, as well as Reddit. My YouTube channel can be found by going to the URL of **www.youtube.com/acerthorn**. My Twitch channel can be found by going ot the Url of **www.twitch.tv/acerthorn**. My Reddit account can be found by going to the URL of **www.reddit.com/user/acerthorn**. My Discord server can be found by going to the URL of **www.discord.com/invite/8EkdSvWV9P**.

**2.** Karl Polano is also a Youtuber and a Twitch Streamer. On YouTube, Twitch, and Discord, he goes by the alias SofiannP. However, on the websites of Reddit and Urban Dictionary, he goes by the alias SomeGuyFromLosSantos. His YouTube channel can be found by going to the URL of **www.youtube.com/sofiannp**. His Twitch channel can be found by going to the URL of **www.twitch.tv/sofiannp**. His Discord Server "Great Six" can be found by going to the URL of **https://discord.gg/yjA7bwE**. His reddit account can be found by going to the URL of **www.reddit.com/user/someguyfromlossantos**. His Urban Dictionary account can be found by going to the URL of **www.urbandictionary.com/author.php? author=SomeGuyFromLosSantos**. I currently believe that he can be served with process at the following name and address:

Karl Sofiann Axel Polano
Regensbergstrasse 120
Zurich, Zurich 8050 CH
Switzerland

3.      Alphabet Inc. is the current parent company of Google, LLC, which is in turn the current parent company of YouTube, which is currently the largest video-sharing website in the world. It can be served with process at the following name and address:

Corporation Service Company
2710 Gateway Oaks Dr.,
Suite 150N
Sacramento, CA 95833

4.      Discord Inc. is a corporation which owns and operates the "Discord" app, a free-to-use chatting and socializing app available for android, IOS, and Windows operating systems. Individuals and businesses can set up groups of chat rooms known as "servers." Karl Polano has a Discord server which goes by the name "Great Six." I also have a Discord server simply called "Acerthorn." Discord Inc. can be served with process at the following name and address:

Ruth Chang
444 De Haro St,
Suite 200
San Francisco, CA 94107

5.      Facebook Inc. is a corporation which owns and operates the website of Instagram. Facebook can be served with process at the following name addresss:

Corporation Service Company
2710 Gateway Oaks Dr.,
Suite 150N
Sacramento, CA 95833

6.      The first John Doe defendant goes predominately by the online alias "InitiativeKookie," or some variation thereof (e.g. InitaitiveKookie7767, InitiativeKookie353, etc.,). Because this is clearly his preferred online alias, I will refer to him as such throughout this case until (and if I ever) learn his real name. However, he also has interacted with me under various other aliases, including variations of the phrase "Patient Pea," "Old Zuccini," "Cap Spirited," "Incognito Pelican," "Spinning Monkeys," and "Wei Lei Xiao Yung." His current I do not know his real name or address, but that information can subpoenaed. His current YouTube channel (as of the time of this writing) can be found by going to the URL of https://www.youtube.com/channel/UC0J2MbjZk7dhLW2H4txk33g.

**7.**      The second John Doe defendant (and the final Defendant overall) is a YouTuber who goes by the alias "TGP482." You can find his YouTube channel by going to the URL **www.youtube.com/tgp482**. While he does not have his own Discord server or Twitch channel, he does have accounts which both which he uses to watch streams (which includes Polano's "SofiannP" Twitch channel) and chat in various Discord servers (including Polano's "Great Six" server). His accounts with both sites can be found by going to the URL of **www.twitch.tv/tgp482** and by searching for the Discord account of TGP482#7412[1]. Again, I do

---

1   There is no URL you can enter into your browser that will take you to a person's Discord profile. Instead, in

not know this person's real name and address, but both should be subpoenaeable from either YouTube or Twitch.

## PERSONAL AND SUBJECT-MATTER JURISDICTION

8.      This Court has federal question jurisdiction over the counts of copyright infringement and the violations of 17 USC § 512(f). This Court has supplemental jurisdiction over the tort of intentional infliction of emotional distress.

9.      This Court has personal jurisdiction over Alphabet, Discord, and Facebook because the three corporations are headquartered in the cities of Mountain View, San Francisco, and Menlo Park, respectively, all of which are in the Northern District of California.

10.      This Court has personal jurisdiction over Karl Polano because, on May 25, 2021, he filled out a DMCA Counter Notification that forms the basis of this case's 17 USC § 512(f)(2) violation. While submitting that Counter Notification, he consented in writing to the jurisdiction of whichever federal district court YouTube was located in (which is the Northern District of California).

11.      This Court has personal jurisdiction over the two John Doe defendants because they are accomplices in Polano's efforts to harass me, dox me, ruin my career, and infringe on my copyright. These are not merely three Internet trolls acting concurrently but independently of one another. It is one singular, collaborative effort.

## FACTS OF THE CASE

12.      The following facts are necessary to understand the case:

### InitiativeKookie's harassment

13.      This all started on February 27, 2021, when InitiativeKookie posted a comment on my YouTube channel where he admitted that he was deliberately and in bad faith attempting to sabotage my YouTube channel with what is known as "low-retention views."

14.      See, YouTube uses an algorithm and machine learning to decide which channels to promote to the exclusion of others. It is no secret that the two most important factors that the algorithm looks at when deciding which videos and channels to promote are views and audience retention. In order to have high audience retention, a viewer must not only click on a video and begin to watch it, but actually watch a large portion of the video. Then, ideally, the viewer should watch *another* video from the same channel. Doing so will indicate to the algorithm that the viewer was enthralled enough by the first video that they want to see what else the channel has to offer, which in turn means that the channel should be promoted to the user more often, as well as to other users who have similar tastes. However, if a viewer clicks on a video and then

_____

order to message a person on Discord, you must add them as a friend (and they must accept the friend request), or you must share at least one Discord server in common. To add John Doe #2 as a friend on Discord, you should enter, not just the name "TGP482," but also the user number of #7412.

immediately clicks away after only a few seconds, the algorithm will assume that the video is undeserving of more exposure and bury the video accordingly.

15.     With this in mind, InitiativeKookie admitted that he was intentionally exploiting the latter portion of the algorithm in a deliberate and bad faith attempt to sabotage my channel and keep it from growing.

16.     If InitiativeKookie's actions had ended there, I would not have taken significant action. I have dealt with trolls before. I usually just block them and move on with life. However, on March 1, 2021, InitiativeKookie also contacted me on Reddit. I had posted a question about about starting a livestreaming channel on Twitch, and I wanted to know how to use a certain feature of my streaming software. On March 1, 2021, InitiativeKookie – acting under the alias InitiativeKookie 7767 – posted in that thread, stating "idk but your videos are pretty shitty lol, hope you're enjoying the death of your channel."

17.     Again, this alone would not have been a big deal. Under normal circumstances, I would have simply blocked him, reported him to the Reddit moderators and administrators for a potential ban from the site, and then moved on. The problem here is that he is harassing me *across multiple websites*. It isn't enough that he makes it known that he does not enjoy my content and believes that I am a terrible YouTuber. He is monitoring my social media presence like a vulture, looking for any opportunity he can find to swoop in and harass me.

18.     On March 2, 2021, InitiativeKookie posted not one, but two videos to his own YouTube account. One of them was called "RIP Acerthorn (2018-2021)." The other was called "Acerthorn EXPOSED as being … pretentious!" Both videos used content from my YouTube channel, and so I issued DMCA Takedowns on them.

19.     On March 14, 2021, InitiativeKookie deleted his accounts on YouTube and Reddit and replaced them with accounts going by the aliases PatientPea9364 and PatientPea42. In these accounts, he stated that he was InitiativeKookie under a new name, and that any time I reported him to any mods or issued any DMCA Takedowns against him, he would simply create a new account to get around any bans or blocks. He also reposted the video "RIP Acerthorn (2018-2021)" and contacted me on Reddit to give me a link to that video. In other words, it was not enough that he simply was harassing me. He wanted me to *know* that he was harassing me. The administrators of Reddit eventually swooped in and issued a sanction against PatientPea, but he merely deleted that account and created a new one, also called PatientPea but with a new number at the end. He then contacted me using Reddit's "private chat" function and proceeded to level various cuss-filled insults at me. This continued for several weeks, with me reporting him to the Reddit administrators, him getting sanctioned, him deleting the account, creating a new account under a different name, and then proceeding to harass me again. And again. And again. This pattern continued for several weeks.

20.     On March 18, 2021, InitiativeKookie joined by Discord server. His first message said "I brought you a present." This "present" was in fact a slew of unsolicited pornographic images. I believe this should constitute sexual harassment. Perhaps the most shocking and appalling of these images was an image of a man attempting to cut his own penis off with a steak knife.

21.     In late March of 2021, InitaitiveKookie created a new Discord account with a different name that I did not recognize. He spent several weeks in my Discord, being civil and courteous, and participating in chat in a non-disruptive manner. On or around April 13, 2021, he asked to be a moderator for my Discord server. I questioned him about the job and he gave exemplary responses to the interview, so I appointed him to the position. I woke up the next day (April 14, 2021) to find nearly everyone banned from my Discord server, and with the new moderator having changed his name to InitiativeKookie in order to show his true colors.

**Accidental Livestream on April 10, 2021.**

22.     On April 10, 2021, my livestream software turned on of its own accord without me realizing it. It stayed on for nearly two hours before I realized it was on and closed it down. During this accidental livestream, my viewers were able to see me engaging in mundane, daily activities such as walking around my apartment, eating some hot dogs, and watching some YouTube videos for my own personal amusement.

23.     However, at one point in the video, some strange noises could be heard. I do not know what these strange noises were (the best description I can give is that it sounded like a dog barking, but I do not have a dog), and I did not cause them. However, whatever they were, these strange noises constituted the only interesting and memorable part of this otherwise boring and contentless livestream. As such, it constitutes the "heart" of this livestream.

24.     I have registered this accidental livestream with the U.S. Copyright Office. I have also uploaded the archive of this accidental livestream to my YouTube channel. However, access to that video is limited only to those who pay me at least $20 per month.

25.     So far, nobody has paid me the $20 per month to view this video. Meanwhile, there no way to download directly from Twitch. This means that any person who has acquired any copy of this livestream has necessarily done so by illegally downloading the stream using third party software.

**InitiativeKookie's continued harassment and copyright infringements**

26.     On April 10, 2021, a few hours after my accidental livestream, InitiativeKookie uploaded a video to his YouTube channel. This video a clip from my accidental livestream. Specifically, it contained the only interesting part of that livestream, and contained the entirety of that only interesting part. InitiativeKookie made no modifications or alterations to the clip in any way, let alone any modifications that could be considered transformative. This video almost completely usurps the market for Plaintiffs own accidental livestream. The existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'"). At 4:11PM (central time zone) on April 10, 2021, I issued a DMCA Takedown notice and it was removed by

YouTube at 5:25PM (central time zone) that same day.

27.     On April 11, 2021, InitiativeKookie created an account on the video-sharing site of Vimeo, where he posted the same video as mentioned above, again with no alterations whatsoever. Again, this video almost completely usurps the market for Plaintiffs own accidental livestream. T he existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another website for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

28.     I also had this video taken down via a DMCA Counter-Notification. However, unlike YouTube, when I issued this takedown on Vimeo, it displayed my real name (David Stebbins) as opposed to my alias Acerthorn.

29.     On April 12, 2021, InitiativeKookie created a new YouTube channel (also called InitiativeKookie, but different from the first one), where he posted a short video consisting entirely of a clip from the aforementioned accidental livestream. This short video showed the only interesting part of that accidental livestream, and showed the entirety of that only interesting part. There was no alteration to the clip whatsoever. This video almost completely usurps the market for Plaintiffs own accidental livestream. T he existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'"). I promptly issued a DMCA Takedown against this video and YouTube took it down approximately one hour later.

30.     On April 13, 2021, InitiativeKookie created a new YouTube channel called Incognito Pelican. He then proceeded to upload the same clip as before – again with no alterations – with the video title "Cod Zombies be like (acerthorn moment) #shorts." In addition to that, he also uploaded the same clip in a 5-second video. This time, however, he made a very small, de minimus, non-transformative change to the video: He book-ended the stream clip with some gum commercial clips. He still provided the entirety of the only interesting moment from the accidental livestream. As such, this video almost completely usurps the market for Plaintiffs own accidental livestream. T he existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

31.     Later on April 13, 2021, I received a message on Reddit from InitiativeKookie, this time going by the alias InitiativeKookie34, informing me that, because the DMCA Takedown I issued against him on Vimeo (see ¶ 28 for details) gave him my real name instead of just my online alias, he was able to use that information in order to find all of my personal information. He made it clear that he was going to share this personal information with everyone he could in an attempt to ruin my career on YouTube and Twitch. This form of harassment – the involuntary sharing of personal information over the Internet – is known in Internet parlance as "doxxing."

32.     Later on April 13, 2021, InitiativeKookie created a new YouTube channel – this time with the name "Spinning Monkeys" – where he uploaded the same clip from my accidental livestream with the gum commercial clips bookending it. Just like before, this video almost completely usurps the market for Plaintiffs own accidental livestream. The existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

33.     Over the next few weeks, InitiativeKookie kept his promise to dox me. He sent my personal information to everyone he could find who was a member of my Discord server, a commenter on my YouTube channel, or one of my followers on Twitch.

34.     On June 2, 20221, I received a message on Discord by a person going by the alias VoreNeko777. He claimed that the video game review and news website IGN.com had posted a rather inflammatory and libelous article about me, and that while it had been taken down, he had kept an archived copy of the article in case I wanted to show it to any attorneys for potential litigation. However, when I went to download the attached file that purported to be an archived copy of the IGN article, my browser did not download it because it contained a computer virus. On or around June 7, 2021 (the precise date is unknown), InitiativeKookie had created a new account on Reddit – this time under the alias InitaitveKookie 353 – and contacted me on that site, claiming to be the one who attempted to infect me with the computer virus. At this point, this goes beyond mere harassment. Now, he has crossed the line and attempted to commit an actual, real, concrete and tangible injury against me. Not only that, but he also committed a cyber crime and should go to jail for it.

**Polano's harassment**

35.     On March 24, 2021, Polano replied to one of my posts on Reddit, under the username SomeGuyFromLosSantos. In this post, he demanded that I give up my aspirations to make a full-time career out of YouTube and/or Twitch, threatening to make my life "a descent into hell" if I did not give in to his demands. Just like with InitiativeKookie, if this were the end of my interactions with him, I would not be suing today. I have dealt with one-off trolls in the past. I usually just block them, report them to the site's administrators, and then move on. However, just like with InitiativeKookie, he did not just harass me once and then move on.

**SER340**

36.     In mid-April 2021, Karl Polano was posting on my Discord server (under the alias "SofiannP"), explaining that he really enjoyed my content on Youtube. At this point in time, I did not realize that he was the same guy from March 24, threatening to make my life a descent into hell if I did not abandon my aspirations for a full-time career on YouTube and/or Twitch. After all, he had a different name and a completely different personality from that person. Because he seemed, at the time, like a swell guy, I checked out his Twitch channel. I noticed that he had a Twitch channel with over 300 followers, and since I had just started streaming on Twitch myself, I asked him if we could do a collaborative stream (or "collab" for short) together. He agreed, and we had the collab on April 18, 2021.

37.     Much like with the events of ¶ 21 of this Complaint, at first, everything went well. At first, he seemed genuinely excited to be doing a collab with me. However, much like with the events of ¶ 21 of this Complaint, his affability turned out to be a mere ruse to lull me into a false sense of security before removing his fake sheep's wool and bearing his wolf's teeth. Approximately 90 minutes into the stream, he revealed that he had been working with InitiativeKookie all along, and that now that he was on my channel, broadcasting live, he proceeded to air my personal information to all of my viewers before I cut off the stream. He then proceeded to spend about 15 additional minutes on his own Twitch channel continuing to dox me, once my viewers from my channel had converted over to his channel.

38.     I spent about a week trying to move on from that experience. However, on April 25, 2021, I received notice that my copyrighted livestreams and YouTube videos were being shared on the Great Six Discord, which is owned by Polano. To investigate, I went to that Discord server. I was only able to access the "applications" chat room, a chat room where newcomers to the server are to request access to the main chat room (where the copyright infringements were actually taking place). So I asked to be allowed there in order to inspect for copyright infringements. The levels of sheer hostility, toxicity, and vulgarity that came from Polano in response to this simple request was absolutely mind-boggling. Not only did he not allow me into the main chat room to look for instances of infringement, but he responded with excessively vulgar and line-crossing personal attacks including, but not limited to, the following:

(a)     "Go teach yourself about law you <expletive> moronic fat pig."

(b)     "I'm losing my <expletive> patience with your single digit American pig brain."

(c)     "Why make yourself public, PIG <EXPLETIVE>? Answer, PIG <EXPLETIVE>!"

(d)     "Read that carefully and get that in your thick <expletive> skull, you numbnut."

(e)     "Wow a channel that shows clips of another channel without getting DMCA'd? HOW?! Well fair use you <expletive> <expletive>, it's not entirety of your <expletive> content stream we've uploaded did we?"

(f)     "I swear this 32 ball of fat manchild is incredible."

39.     Needless to say, I was not granted access to the main chat room. Because of this, Polano

should be held liable, not just for the instances of copyright infringement I expressly mention in this Complaint, but for the potentially dozens of copyright infringements I can find in his Discord server once I get access to it during the discovery of this case. He should even be liable for the instances of copyright infringement he did not personally upload, since he has completely and utterly failed to comply with the DMCA's requirements for safe harbor.

40.    TGP482 (who is also listed as a John Doe defendant in this case, although he has up to this point remained unmentioned) should also be liable for the copyright infringements. He is a moderator in the Great Six Discord. As such, he had the power to remove the infringing content and even ban the users who uploaded it. I contacted him on Discord and asked him to remove the infringing content, but he never did. Therefore, he has also lost his safe harbor.

41.    In addition to this, both Polano and TGP482 have continued InitiativeKookie's efforts to reach out to every single member of my YouTube, Twitch, and Discord communities and dox me by sharing my personal information. Two instances where I know for a fact this happened (and that Karl Polano did it, as opposed to InitiativeKookie) were on May 10, 2021 and May 26, 2021. Bear in mind that those are not the only two instances period. They are just the only two instances where I know for a fact that Karl Polano is the one who personally did the doxxing.

### Polano's Copyright infringements

42.    Because I was not given access to the main chat room of the Great Six discord, I have had to rely on third party informants to scour that Discord server for me, and report instances of copyright infringement to me. These informants obviously cannot catch every instances of infringement. However, with their help, I was able to find about a half a dozen unauthorized uses of clips from my accidental livestream. Each of them copied the only interesting part of the livestream verbatim. I issue DMCA Takedown Notices were April 25, April 27, April 28, May 5, May 8, and May 22. The existence of these videos means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

43.    Bear in mind that these are only the infringements I was able to find thanks to informants providing me with the links. On May 19, 2021, I received a screenshot from one of these informants where Polano stated that there are numerous other infringements on the server that had not yet been "ratted out" by the informants. I wish to hold Polano, InitiativeKookie, and TGP482 liable for *all* of these infringements, and I hope to be able to prove all of them once I get a discovery in this case. I just don't know how many of them there are.

44.    Of the infringements my informants told me about, they were taken down by Discord. However, on May 8, 2021, a representative of the Great Six Discord server, going by the alias DeFranko, contacted me on Discord and informed me that issuing these DMCA Takedowns was a complete waste of time, because even if I had any infringing videos removed from the server,

they would just repost the videos again. He stated that me taking down the entire Great Six discord server was the only way I could possibly cause the copyright infringement to stop.

45.     On May 20, 2021, Karl Polano posted a video to his YouTube channel. This was an identical copy of the video mentioned in ¶¶ 30 & 32, where he copied the entirety of the only interesting part of the accidental livestream, bookended by gum commercial clips. If the video were to ever be reinstated, it could be viewed by going to the following URL: http://www.youtube.com/watch?v=-xL0xoU2cJA The existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

46.     I issued a DMCA Takedown against this video, and YouTube removed it slightly over one hour later. On May 21, 2021, I received notice from one of my copyright informants that the members of the Great Six discord server were conspiring to create multiple fake accounts and attempt to take my channel down with false copyright strikes in retaliation for me issuing this DMCA Takedown against Polano. Members of the Great Six Discord server made comments including, but not limited to "SofiannP is gonna reclaim that and gift the strike back to acerthorn" and "We should just make loads of accounts and report him for the same reason."

**Fraudulent DMCA Counter-Notification**

47.     On May 25, 2021, I received an email from YouTube stating that Karl Polano had issued a DMCA Counter-Notification in response to the Takedown I issued against him as described in ¶ 45 of this Complaint. While filing this Counter-Notification, Polano checked a box that stated "I consent to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from the claimant," thereby consenting to the jurisdiction of the United States Court of Appeals for the Northern District of California. When filing this DMCA Counter Notification, Polano stated, in pertinent part, the following:

> "I've created the video as a parody of it's original content which was a 2 hour livestream, this parody is meant to be a meme and nothing like Acerthorns' original content. This is Fair Use as his material has been altered to create new content and has also not been monetized."

48.     This statement has at least four different bald-faced lies that constitute knowing material misrepresentation by Polano in violation of 17 USC § 512(f)(2). First, it is not a parody. He merely copied my livestream while while adding no transformative value whatsoever (the gum commercial clips are not transformative). Second, he lied when he said it was "nothing like Acerthorn's original content." It is indeed "like" my accidental livestream, to the point where it completely usurps the market for my livestream and completely removes the incentive for anyone to pay me the $20 per month to view that stream on my own YouTube channel. No

reasonable person could juxtapose his 50-second infringing video and corresponding sections of my livestream, and think that the two are nothing alike. It is nothing but a bald faced lie. Third, he is lying when he says that my material was altered to create new content. Aside from the gum commercial clips (which provide no transformative value whatsoever), he did not alter the clips from the accidental livestream in any way, shape, or form. For him to say that he altered it in any way (let alone altered it in such a way that it creates new content) is knowing material misrepresentation. Fourth, he is lying when he says that the video has not been monetized. This was indeed a commercial reuse of my accidental livestream.

49.      In addition to all the lies he told, there was another factor that also causes his DMCA Counter Notification to be fraudulent: He did not perform the Four Factor's Test as outlined by 17 USC § 107(1)-(4). This means he did not consider fair use when issuing his Counter-Notification, even if the four above lies were actually true.

50.      However, of all the lies he told in this DMCA Counter-Notification, there was one thing he said that was quite enlightening: He said that he created this clip. He didn't just borrow it from InitiativeKookie. He created it himself. This will come in handy in a little bit, when I discuss the evidence of collaboration between the three individual defendants.

### Fraudulent DMCA Takedown

51.      On or around May 23, 2021, I qualified to become a Twitch Affiliate, meaning that I am now eligible to run ads on my streams and receive "subscriptions" (or paid followers). To qualify to be an affiliate, I must meet four criteria, one of which is that I must have at least 50 followers on my Twitch Channel. I finally met that qualification on May 23, 2021. However, immediately after I met it, TGP482, acting in his capacity as a moderator of the Great Six Discord server, told everyone that it was "not allowed" that I have 50 followers, and that everyone who was following me on Twitch needed to immediately unfollow. Many people did, and my follower count proceeded to drop.

52.      Despite this attempt to sabotage my career, I was nonethleess able to get approved for Affiliate status, and I am now a Twitch Affiliate as of the time of this writing. To celebrate this achievement, I created a video called "Woot! I'm a Twitch Affiliate!" and uploaded it to my YouTube channel. You can view the video by going to the following URL:

www.youtube.com/watch?v=FZenOvX1XHg

53.      In this video, I explained that several people were attempting to undermine my growth by demanding that people unfollow me from Twitch, and I provided a screenshot to prove it.

54.      On May 25, 2021, TGP482 issued a fraudulent DMCA Takedown against that video. He claimed that I used a "picture of [his] chicken." By that, I assume he means that I used his Discord icon, which is a picture of a rooster. However, this was a fraudulent DMCA Takedown. He does not own the copyright to that picture. He probably just pulled it off the Internet somewhere and used that picture instead. It is common sense that you cannot lawfully issue a DMCA Takedown over a copyright when you are not the copyright holder!

55.    But even if he could show some proof that he was the original author or otherwise the copyright holder of that image of that rooster, his takedown was still fraudulent because he did not consider fair use. My use of that screenshot (which included the image of the rooster) met all four factors in the Four Factors Test outlined in 17 USC § 107(1)-(4). I was reporting on a news event[2], so it was transformative. I was discussing an event that really happened in real life, not a work of fiction, so the second factor weighs in favor of fair use. I only showed the screenshot for a few seconds before removing it from the video, so the third factor weighs in favor of fair use. Lastly, my use of the screenshot in a YouTube video does not in any way, shape, or form usurp TGP482's market to license the image (assuming he even is the original copyright holder in the first place, which he isn't) for its original intended purpose of being a comment icon in Discord. So the fourth factors weighs in favor of fair use. This means that literally all four factors weigh in favor of fair use; it is a clean sweep. Therefore, TGP482 almost certainly did not consider fair use before issuing his DMCA Takedown. No reasonable person could possibly have considered the Four Factors Test in this case and somehow reasonably determined that my use of the screenshot was not fair use. Rather, it seems that TGP482 was merely attempting to retaliate against me for issuing the DMCA Takedown against Karl Polano, which the Great Six discord server conspired to do against me as described in ¶ 46 of this Complaint.

56.    I issued a DMCA Counter-Notification to YouTube, and the video was eventually reinstated on June 13, 2021. However, I still spent 19 days with the video taken down. Because it was taken down for that long, that means it was not getting views and thus not generating ad revenue.

**More Copyright Infringement**

57.    On or around June 7, 2021, the three individual defendants (along with a few others) started a page on Facebook's website "Instagram," called AcerthornFanClub. TGP482 and Karl Polano were two of the creators of this so-called fan club. Despite calling itself a fan club, its actual intended purpose was to publicly dox me and infringe on my copyright. Among other things, the Defendants uploaded a clip from my accidental livestream. This clip depicted the only interesting part of the accidental livestream, and showed the entirety of that only interesting part. Also, there were no modifications whatsoever, not even the aforementioned gum commercial clips. The existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

58.    I issued a DMCA Takedown against this page. However, on June 9, 2021, I received an email from Facebook stating that they would not remove the infringing material. Therefore, Facebook has forfeited its safe harbor for this count of copyright infringement.

---

2    While it might only be newsworthy to a very niche audience (namely, those who were already fans of my content), it was nonetheless news reporting. The fact that only a niche audience would be interested in a news story is not a bar to fair use.

59.     On June 9, 2021, I received a message on Instagram from AcerthornFanClub. It was a picture of Karl Polano, with the phrase "admin reveal" at the top (thus informing me that Karl Polano was the one in charge of this Instagram page), while also stating "You 's a bitch" and "You ain't stoppin' us!"

### Stress caused

60.     The stress that I have suffered as a result of the Defendants' harassment and doxxing is quite palpable. I have become reluctant to appoint any new moderators to my Discord. I have become hesitant to open any messages on Reddit for fear that it might be InitiativeKookie under a new name harassing me some more. I have been extremely reluctant to schedule additional collaborations with other streamers for fear that I might be doxxed again.

61.     In addition to those symptoms of paranoia and anxiety, I would like to ask the Court to consider the persuasive precedent of Peoples Bank & Trust Co. v. Globe Intern., 786 F. Supp. 791, 796 (1992), which states, in pertinent part, the following:

> "It may be, as defendant in essence argues, that Mrs. Mitchell does not show a great deal of obvious injury, but a reasonable juror might conclude, after hearing the evidence and viewing the Sun issue in question, that Nellie Mitchell's experience could be likened to that of a person who had been dragged slowly through a pile of untreated sewage. After that person had showered and a few weeks have passed, there would be little remaining visible evidence of the ordeal which the person had endured and the resulting damages incurred, but few would doubt that substantial damage had been inflicted by the one doing the dragging."

62.     In other words, I believe the conduct committed by the individual defendants (and certainly Karl Polano and InitiativeKookie) are so outrageous that I should not have to prove damages. Their conduct should be considered tortuous per se.

### Evidence of Collaboration

63.     As I mentioned earlier in this Complaint, the three individual defendants (Karl Polano, and the two John Doe defendants InitiativeKookie and TGP482) are all working together in an attempt to maliciously sabotage my career. These are not merely three individuals acting concurrently but independently of one another. It is one singular, collaborative effort on their part. For this reason, I believe that all three individual defendants should share equally in the liability in this case. Karl Polano and TGP482 should be liable for all of InitiativeKookie's harassment (including attempting to infect me with a computer virus) and copyright infringements. InitiativeKookie and TGP482 should be liable for all of Karl Polano's harassment and copyright infringements. Karl Polano and InitiativeKookie should be liable for TGP482's fraudulent DMCA Takedown. So on and so forth.

64.     So what evidence do I have that they are all working together? Well, the connection between Karl Polano and TPG482 is the easiest to prove. As I mentioned earlier, TGP482 is a moderator in Polano's "Great Six" discord server. As such, he has an incredible amount of

authority in the Great Six community. He has the power to remove material which infringes on my copyright, remove any material that harasses or doxxes me on that server, and to ban any person (with the exception of Karl Polano himself) who engages in any such conduct. Despite having the power to do so, he not only has refused to do so, but has repeatedly and consistently engaged in the harassment, doxxing, and copyright infringement himself. He is clearly working alongside Karl Polano.

65.     Granted, if he had refused to be party to this harassment, doxxing, and copyright infringement, Polano most likely would have relieved him of his moderator position. However, at least hten, TGP482 would not have been a co-defendant in the instant case. Apparently, his loyalty to Polano supercedes his fidelity to the law.

66.     With InitaitiveKookie, there is also evidence that he is working with Polano and TGP482. The most incriminating piece of evidence I have so far is the fact that (A) Polano created the video he uploaded to his YouTube channel on May 20, 2021 (see ¶ 50 of this Complaint), and (B) that video was originally uploaded by InitiativeKookie on April 13, 2021 (see ¶ 30 of this Complaint). In other words, Karl Polano created that video and then gave it to InitiativeKookie so he could upload it to his YouTube channel. However, because InitaitiveKookie did not wish to file a DMCA Counter Notification, Polano took his video back and uploaded it himself.

67.     Perhaps that is not entirely how it happened. Maybe InitiativeKookie is the original creator of the video, and when Polano stated in his Counter-Notification that he was the creator, that was yet another lie he told YouTube. But even if that were the case, that still does not help the Defendants. Regardless of who played which part, the bottom line is that one of them created the infringing video and then gave it to the other so he could use it to harass me, dox me, and infringe on my copyright. Regardless of which one was the initiator and which one was the accomplice, the bottom line is that there is clear evidence of collusion, cooperation, and partnership between them.

68.     So because there is clear evidence that InitiativeKookie and Karl Polano are working together to sabotage my career on YouTube and Twitch, and because there is clear evidence that Karl Polano and TGP482 are working together to do the same, common sense dictates that InitiativeKookie and TGP482 are also working together to accomplish this same goal.

## LEGAL ANALYSIS

69.     For the following reasons, the law entitles me to relief on each tort that I am suing over.

### Intentional Infliction of Emotional Distress

70.     To state a claim for intentional infliction of emotional distress, the plaintiff must allege facts that plausibly show: (1) extreme and outrageous conduct by the defendant(s) with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009).

<u>Extreme and Outrageous Conduct</u>

71.     The allegations of ¶¶ 13-21, ¶¶ 26-41, ¶¶ 51-56, and ¶ 59 of this Complaint should be sufficient to establish the first essential element of this tort. The Defendants have engaged in a months-long campaign to inflict as much emotional pain (and even property damage) on me as possible, engaging in such acts as repeatedly creating new accounts in order to circumvent bans or blocks, bombarding my Discord server with unsolicited pornographic imagery, sabotaging my Discord server by tricking me into appointing them as mods, attempting to infect me with a computer virus (hence the property damage), and illegally obtaining my private information so they can share it with the world without my consent.

72.     In the case of *Corales v. Bennett*, 567 F.3d 554 (9th Cir. 2009), the Ninth Circuit held that conduct is considered extreme or outrageous if it is done with the specific, actual intent to inflict emotional distress or suffering. See *id* at 572 ("Plaintiffs cite examples of ostensibly similar behavior that was found to be extreme and outrageous. But these cases are inapplicable, as each relied on the defendant's intent to harm the threatened party"). In the instant case, the fact that the Defendants' actions were done with the specific intent to inflict emotional distress is axiomatic.

73.     Remember that the Defendants' attempts to harass me include doxxing me. "Doxxing is short for 'dropping documents.' The practice involves 'using the Internet to source out and collect someone's personal and private information and then publicly releasing that information online.' The 'goal of doxxing is typically retribution, harassment or humiliation.'" See Vangheluwe v. Got News, LLC, 365 F. Supp. 3d 850, 858-59 (E.D. Mich. 2019). Because it is designed with the goal of harassment and humiliation, it fits the criteria set forth in *Corales* to automatically be considered extreme or outrageous to the exclusion of all other factors.

<u>Damages Suffered by Plaintiff</u>

74.     The factual allegations of ¶¶ 60-62 should be sufficient to establish the second essential element. The stress that I have suffered as a result of the Defendants' harassment and doxxing is quite palpable. I have become reluctant to appoint any new moderators to my Discord. I have become hesitant to open any messages on Reddit for fear that it might be InitiativeKookie under a new name harassing me some more. I have become extremely reluctant to schedule additional collaborations with other streamers for fear that I might be doxxed again.

75.     In addition to those symptoms of paranoia and anxiety, I would like to ask the Court to consider the persuasive precedent of Peoples Bank & Trust Co. v. Globe Intern., 786 F. Supp. 791, 796 (1992), which states, in pertinent part, the following:

"It may be, as defendant in essence argues, that Mrs. Mitchell does not show a great deal of obvious injury, but a reasonable juror might conclude, after hearing the evidence and viewing the Sun issue in question, that Nellie Mitchell's experience could be likened to that of a person who had been dragged slowly through a pile of untreated sewage. After that person had showered and a few weeks have passed, there would be little remaining visible evidence of the ordeal which the person had endured and the resulting damages incurred, but few would doubt that substantial damage had been inflicted by the one doing the dragging."

76.     In other words, I believe the conduct committed by the individual defendants (and certainly Karl Polano and InitiativeKookie) are so outrageous that I should not have to prove damages. Their conduct should be considered tortuous per se.

77.     In addition to the emotional distress, I also believe the individual defendants should be liable for all damages suffered, both as a direct and indirect result of their harassment and doxxing. This includes, but is not limited to, my loss in popularity on the YouTube and Twitch platforms because of the doxxing, as well as a result of my refusal to respond publicly to the accusations leveled against me.[3] These damages are virtually impossible to place an exact dollar value on, but I am hopeful that the Court will adequately compensate me, as well as award punitive damages.

78.     Meanwhile, I believe (and I pray the Court will agree with me) that the third essential element should be obvious to any reasonable person who has read the Complaint from beginning up to this point, so I hopefully should not have to allege specific facts for that third essential element.

**Copyright Infringement**

79.     To show a prima facie case of copyright infringement, I need only show two essential elements: Ownership of a copyright by the Plaintiff and copying by the Defendant. See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1151 (9th Cir. 1986) ("[T]here are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by the plaintiff and copying by the defendant").

<u>Ownership of Copyright by Plaintiff</u>

80.     The allegations of ¶¶ 22-25 of this Complaint should satisfy the first essential element. A livestream on Twitch is copyrightable, even if it is done by accident. As the owner of the channel and the sole author of the livestream, I have default sole ownership of the copyright to this stream, unless I sign away the rights to it (which I have not done).

<u>Copying of Copyrighted Content by Defendant</u>

81.     The first count of copyright infringement is based on the fact that the at least one of the Defendants (either Karl Polano or InitiativeKookie) illegally downloaded the livestream using third-party software. Think about it: How else could they possibly have gotten the raw footage to make their infringing videos in the first place? The stream was originally broadcast on Twitch, but there is no way to download directly form Twitch. While YouTube offers a limited means of downloading videos for offline viewing[4], none of the Defendants could possibly have gotten the stream from YouTube, since that video is restricted only to those who pay my channel $20 per month. I know for a fact that none of the Defendants have paid me that money, so how did they

---

3   After all, if the Defendants never doxxed me, there would never have been any accusations for me to publicly address.

4   See https://www.youtube.com/premium ("Downloads: Save videos for when you really need them – like when you're on a plane or commuting.")

get the raw footage of the stream in order to make their infringing videos in the first place? The only explanation is that at least one of them must have illegally downloaded the stream using some unauthorized third-party software. This is blatant copyright infringement, just like how it is illegal to use a torrent app to download entire movies and/or video games without paying for them.

82.     Once one of the individual defendants (either Karl Polano or InitiativeKookie) had illegally downloaded the stream, he then necessarily shared it with the other so that they could work together to infringe on my copyright. As I said earlier, one of the Defendants necessarily created the infringing video with the gum commercial clips in it, and then gave that infringing video to the other person to upload. Regardless of which one did the giving, the bottom line is that an unauthorized sharing occurred. Since they are all working together, they are all liable for both anyway (see ¶¶ 63-68 of this Complaint). This unauthorized sharing constitutes a second count of copyright infringement.

83.     Then we have the thirteen instances where the Defendants shared my copyrighted content publicly on either Discord, YouTube, Vimeo, or Instagram. The counts of copyright infringement I currently allege are as follows:

- <u>COUNT NO. 3</u>: The uploading that occurred on April 10, 2021, which I describe in ¶ 26 of this Complaint.

- <u>COUNT NO. 4</u>: The uploading that occurred on April 11, 2021, which I describe in ¶ 27 of this Complaint.

- <u>COUNT NO. 5</u>: The uploading that occurred on April 12, 2021, which I describe in ¶ 29 of this Complaint.

- <u>COUNT NO. 6</u>: The uploading that occurred on April 13, 2021, which I describe in ¶ 30 of this Complaint.

- <u>COUNT NO. 7</u>: The uploading that occurred on April 13, 2021, which I describe in ¶ 32 of this Complaint.

- <u>COUNT NO. 8</u>: The uploading that occurred on April 25, 2021, which I describe in ¶ 42 of this Complaint.

- <u>COUNT NO. 9</u>: The uploading that occurred on April 27, 2021, which I describe in ¶ 42 of this Complaint.

- <u>COUNT NO. 10</u>: The uploading that occurred on April 28, 2021, which I describe in ¶ 42 of this Complaint.

- <u>COUNT NO. 11</u>: The uploading that occurred on May 5, 2021, which I describe in ¶ 42 of this Complaint.

- <u>COUNT NO. 12</u>: The uploading that occurred on May 8, 2021, which I describe in ¶ 42

# SER350

of this Complaint.

- <u>COUNT NO. 13</u>: The uploading that occurred on May 22, 2021, which I describe in ¶ 42 of this Complaint.

- <u>COUNT NO. 14</u>: The uploading that occurred on May 20, 2021, which I describe in ¶ 45 of this Complaint.

- <u>COUNT NO. 15</u>: The uploading that occurred on June 7, 2021, which I describe in ¶ 57 of this Complaint.

84.    Last but not least, we also have the innumerable instances of copyright infringement that Karl Polano allowed, and even actively encouraged, on his Discord server that I was unable to have taken down because he would not let me see the main chat room in that server. While I do not know how many instances of copyright infringement there are, I wish to recover statutory damages and obtain injunctive relief on each and every one of them.

**Misrepresentation Under 17 USC § 512(f)(2)**

85.    To recover for a violation of 17 USC § 512(f)(2), I must show (A) that the Defendant issued knowingly false (or at least knowingly misleading) material statements when issuing a DMCA Counter-Notification, (B) that the service provider (in this case, YouTube) relied on these misrepresentations, and (C) that I suffered damages as a result of the service's reliance thereof.

<u>Knowingly False Material Statements</u>

86.    The allegations of ¶ 48 of this Complaint should sufficiently show that Karl Polano issued numerous, knowingly-false statements in his DMCA Counter-Notification. He lied about the video being a parody. He lied about the video being altered. He lied about the video being nothing like my original content. He lied about the video being noncommercial. These are all material statements that he knowingly lied about.

<u>Reliance by ISP</u>

87.    The allegations of ¶ 47 of this Complaint should show any reasonable finder of fact that YouTube relief on these allegations. After all, if they did not rely on these allegations, why else would they process the Counter-Notification and notify me of same?

<u>Damages</u>

88.    The damages I suffered are the fact that I had to file this lawsuit in order to keep the video from being reinstated. This lawsuit will undoubtedly cost a lot of money (even if I am proceeding *in forma pauperis*) and will cause me a great deal of stress.

<u>Failure to Consider Fair Use</u>

89.     In addition to the knowingly false material statements he made in his Counter-Notification, there is also the fact that Karl Polano did not consider fair use. In the case of Lenz v. Universal Music Corp., 801 F. 3d 1126 (9th Cir. 2015), the Ninth Circuit held a copyright holder must consider fair use before issuing a DMCA Takedown. Common sense dictates that alleged infringers should also be required to consider fair use before issuing a Counter-Notification.

90.     More importantly, the Defendant should be required to consider the *actual* law of fair use. If he attempts to simply make up his own standard for fair use and then consider that standard, that should not be allowed. If that were allowed, that would completely undermine one of the most fundamental principles of our jurisprudence: That ignorance of the law is no excuse. If we start making exceptions to that principle in all but the most exceptional of cases, then the rule of law in its entirety crumbles at its foundation.

91.     In order to consider fair use (provided you are considering the *actual* law of fair use and not just your own, custom version of fair use), you must consider the Four Factors Test. The Supreme Court and Ninth Circuit has made it exceptionally clear that there is no such thing as presumptive fair use. Every noteworthy published opinion regarding fair use in the past fifty years has used the Four Factors Test. Every. Single. One.

- Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148 (9th Cir. 1986) used the Four Factors Test. See id at 1152-1156.

- DR. Seuss Enterprises, LP v. Comicmix LLC, 983 F. 3d 443 (9th Cir. 2020) used the Four Factors Test. See id at 451-461.

- Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539 (1984) used the Four Factors Test. See id at 561-569.

- Campbell v. Acuff-Rose Music, Inc., 510 US 569 (1994) used the Four Factors Test. See id at 578-594.

- Sony Corp. of America v. Universal City Studios, Inc., 464 US 417 (1984) used the Four Factors Test. See id at 496-498.

- Fisher v. Dees, 794 F. 2d 432 (9th Cir. 1986) used the Four Factors Test. See id at 437-439.

- Dr. Seuss Enterprises, LP v. Penguin Books, 109 F. 3d 1394 (9th Cir. 1997) used the Four Factors Test. See id at 1399-1403.

- Monge v. Maya Magazines, Inc., 688 F. 3d 1164 (9th Cir. 2012) used the Four Factors Test. See id at 1173-1183.

- Hosseinzadeh v. Klein, 276 F.Supp.3d 34 (S.D. NY 2017) used the Four Factors Test. See id at  45-47.

**SER352**

92.     Therefore, if the Defendants do not consider the Four Factors Test, they do not consider fair use and thus commit misrepresentation under 17 USC § 512(f). Period. No exceptions.

93.     The infringing video that Polano uploaded on May 20, 2021 (the only one that is the subject of a DMCA Counter-Notice) is so overwhelmingly lacking in the Four Factors Test that the odds that Polano actually considered that test is astronomical. No reasonable person could apply the Four Factors Test and conclude that the Defendants' video is fair use. Rather, Polano seems to believe that his video is fair use simply because it is a parody of my original livestream. Furthermore, he believes it is a parody simply because he has decided it is a parody. This is evidenced by his statements in the DMCA Counter-Notification (see ¶ 47 of this Complaint) as well as the excessively toxic and vulgar personal attacks he leveled against me on April 25 (see ¶ 38 of this Complaint).

94.     Put simply, the mere fact that he calls it a parody does not make it a parody. To hold otherwise would completely undermine yet another one of our most core and most fundamental legal principles: That nobody should be allowed to be the judge of his own case.

95.     But even if his video could be considered parody by the Court (as opposed to the Defendant), he appears to believe that, as long as it is classified as a parody, it is automatically fair use to the exclusion of all other factors. Put simply, that is not how this works. In fact, the Supreme Court has explicitly and unequivocally rejected the idea that parody is automatically - or even presumptively - fair use:

> "The fact that parody can claim legitimacy for some appropriation does not . . . tell either parodist or judge much about where to draw the line. Like a book review quoting the copyrighted material criticized, parody may or may not be fair use, and petitioners' suggestion that any parodic use is presumptively fair has no more justification in law or fact than the equally hopeful claim that any use for news reporting should be presumed fair. The [Copyright] Act has no hint of an evidentiary preference for parodists over their victims, and no workable presumption for parody could take account of the fact that parody often shades into satire when society is lampooned through its creative artifacts, or that a work may contain both parodic and nonparodic elements. Accordingly, parody, like any other use, has to work its way through the relevant factors, and be judged case by case, in light of the ends of the copyright law." See Campbell v. Acuff-Rose Music, Inc., 5 10 US 569, 58 1 ( 1994) (citations omitted).

96.     Even ignoring that, the Defendant still contradicts himself. First, he says that his video was a parody. Then, literally one sentence later, he says that his video is not like my original content. However, if it is not like my content, then it is not a parody. The Supreme Court has held that "[p]arody needs to mimic an original to make its point." See Campbell v. Acuff-Rose Music, Inc., 5 10 US 569, 580-8 1 ( 1994). Therefore, if it is not like the my content, then it cannot be a parody. More to the point, if his resulting video is not like my original content, then that begs the question ... how can the Defendants possibly be commenting on or criticizing my content?!

97.     That transitions to the next point: The Defendant has not even attempted any sort of transformative effect in his work. He bookends the clip from my accidental livestream with some clips from a gum commercial, but other than that, he just copies from my livestream verbatim with absolutely no alterations. There is no commentary, no criticism, no analysis, no evaluation, nothing that could even arguably be considered transformative whatsoever. The addition of the gum commercial clips is a completely superfluous addition that provides absolutely no commentary on my livestream clip. Even if the Court were to determine that the gum commercial clips provided some de minimus transformative value, the value added would be so minimal that it alone should not be able to overcome the other three factors of the Four Factors Test.

98.     The second factor of fair use also weighs against the Defendant. While it is true that facts are given less copyright protection than fiction, and the fact that the accidental livestream showed a day in my life (which could be considered nonfiction), it is important to note that, when lawmakers and copyright law scholars say "facts," they typically mean things such as history, science, or politics, aka things of public importance. Simply peaking into one person's personal life on some random day, when he is alone in his own home, minding his own business and hurting no one, is, quite simply, not consistent with the public policy interests fair use was designed to protect. By contrast, it absolutely serves the Defendant's personal agenda of harassing and doxxing me, but such malevolent motives, at best, do not help Defendants in their case for fair use, and at worst, actively hinder their case for fair use.

99.     The third factor of fair use is neutral at best and weighs against the Defendants at worst. While it is true that Defendant's video was only 50 seconds long whereas my accidental livestream was nearly 2 hours long, the Defendants used the most substantial portion of my accidental livestream. He used the "heart" of the accidental livestream, and therefore, this factor should be construed in the Defendants' disfavor.

100.     The fourth and final fair use factor - effect on the potential market - is egregiously and laughably in the Defendants' disfavor. The 3rd through 15th counts of copyright infringement contain the only interesting part about my accidental livestream, and contained the entirety of that only interesting part. As such, this video almost completely usurps the market for my own accidental livestream. The existence of these videos mean that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free?

101.     As you can see, once we start to actually consider the Four Factors Test, no reasonable trier of fact could possibly find fair use in this case. Therefore, the overwhelming odds are that Karl Polano never considered the Four Factors Test. Because he did not consider the Four Factors Test, that means he did not consider fair use. See *Lenz*, supra at 1135 ("A [party] who pays lip service to the consideration of fair use by claiming it formed a good faith belief when there is evidence to the contrary is still subject to § 512(f) liability").

102.     In addition to the aforementioned four factors test, it is also established law that, when an infringer acts in bad faith, their infringement is automatically not fair use, even if that same video could be considered fair use in otherwise identical circumstances. See Harper & Row, Publishers,

Inc. v. Nation Enterprises, 471 US 539, 562 (1985) ("Also relevant to the character of the use is the propriety of the defendant's conduct. Fair use presupposes good faith and fair dealing"). See also Fisher v. Dees, 794 F. 2d 432, 437-38 (9th Cir. 1986) ("One theme running through the composers' briefs is that Dees's alleged bad conduct should bar his use of the equitable defense of fair use. The principle invoked is sound. Because fair use presupposes good faith and fair dealing, courts may weigh the propriety of the defendant's conduct in the equitable balance of a fair use determination") (citations and quotations omitted). Because the Defendants have engaged in a months-long campaign to harass and dox me, it is clear that their copyright infringement is likewise done solely to harass and dox me, rather than provide criticism or commentary for its own sake. See Fed.R.Evid 404 (b)(2) (evidence of other bad acts may be admissible to prove, among other things, "motive" and "intent"). This weighs heavily against fair use (if it does not bar the claim of fair use altogether), and Polano's failure to consider this factor means he is in violation of 17 USC § 512(f)(2).

103.    Last but not least, because the Defendants necessarily obtained the raw footage by illegal means (see ¶¶ 81-82 of this Complaint), that means the videos are automatically not fair use, even if that same video could be considered fair use in otherwise identical circumstances. See Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539 (1985), where the Supreme Court disagreed with the *factual* finding of the lower court that the Defendants *in that particular case* had "knowingly exploited a purloined manuscript," but left intact the conclusion of law that, if the Defendants had done so, that would have been an automatic bar to fair use. Because Polano clearly did not consider this when he issued his DMCA Counter-Notification, he violated 17 USC § 512(f)(2).

**Misrepresentation Under 17 USC § 512(f)(1)**

104.    To recover for a violation of 17 USC § 512(f)(1), I must show (A) that the Defendant TGP482 issued a DMCA Counter-Notification, (B) that this counter-notification consisted of knowing material misrepresentations about the alleged infringement in the video, and (C) that I suffered damages as a result of this knowing material misrepresentation. A person commits a knowing material misrepresentation if he fails to consider fair use before issuing the takedown. See Lenz v. Universal Music Corp., 801 F. 3d 1126 (9th Cir. 2015).

DMCA Takedown

105.    On or around May 25, 2021, Defendant TGP482 issued a DMCA Takedown against me. See ¶ 54.

Knowingly False Material Statements

106.    The allegations of ¶ 54 also show that he committed at least one knowing material misrepresentation when issuing this takedown, namely that he lied about owning the copyright to that image.

Failure to Consider Fair Use

107.    The allegations of ¶ 55 should sufficiently allege that he failed to consider fair use before issuing the takedown. My use of that screenshot (which included the image of the rooster) met all four factors in the Four Factors Test outlined in 17 USC § 107(1)-(4). I was reporting on a news event (a very niche news event, but a news event nonetheless), so it was transformative. I was discussing an event that really happened in real life, not a work of fiction, so the second factor weighs in favor of fair use. I only showed the screenshot for a few seconds before removing it from the video, so the third factor weighs in favor of fair use. Lastly, my use of the screenshot in a YouTube video does not in any way, shape, or form usurp TGP482's market to license the image (assuming he even is the original copyright holder in the first place, which he isn't) for its original intended purpose of being a comment icon in Discord. So the fourth factors weighs in favor of fair use. This means that literally all four factors weigh in favor of fair use; it is a clean sweep. Therefore, TGP482 almost certainly did not consider fair use before issuing his DMCA Takedown. No reasonable person could possibly have considered the Four Factors Test in this case and somehow reasonably determined that my use of the screenshot was not fair use.

108.    Also, the allegations of ¶ 46 create a very high likelihood that TGP482 not only failed to consider fair use, but that he had actual knowledge that his takedown was fraudulent, and that he acted, not in a good faith attempt to protect his intellectual property, but in furtherance of a conspiracy the Great Six Discord server entered into against me.

109.    In addition, the fact that TGP482 never filed suit against me, and my video was eventually reinstated for want of prosecution, is circumstantial evidence that he did not actually believe that my video infringed on his copyright. See Online Policy Group v. Diebold, Inc., 337 F. Supp. 2d 1195, 1204-05 (N.D. Cal 2004) ("The fact that Diebold never actually brought suit against any alleged infringer suggests strongly that Diebold sought to use the DMCA's safe harbor provisions — which were designed to protect ISPs, not copyright holders — as a sword to suppress publication of embarrassing content rather than as a shield to protect its intellectual property").

<u>Damages</u>

110.    Meanwhile, the allegations of ¶ 56 should sufficiently allege an injury that was caused because of this act of fraud. I spent over two weeks with the video taken down, and therefore not gaining views or generating ad revenue.

**RELIEF REQUESTED**

111.    For all of the reasons already stated, I should be entitled to prospective and retrospective injunctive relief, statutory damages for the copyright infringement, and compensatory and punitive damages for the intentional infliction of emotional distress. The only question is … exactly what relief should I get, and against whom?

**Injunctive Relief against Karl Polano, InitiativeKookie, and TGP482**

112.    First, I would like the Court to order Karl Polano, InitiativeKookie, and TGP482 to cease and desist having any further contact with me. This includes over YouTube, Reddit, Discord,

Twitch, or any other form of online or offline communication. An exception can be made if the communication is supervised by American police or an American court of competent jurisdiction.

113.    This injunction should also include ordering all three Defendants to never again issue any DMCA Takedowns against me. If they believe any of my videos or streams infringe on their copyright, they should be required to go straight to suing me in court without issuing a DMCA Takedown and forcing me to issue a DMCA Counter-Notification first. This way, they can still enforce their rights if I am violating them, but I would be entitled to full due process before they can have any of my content removed.

114.    The Defendants should also be enjoined from having any communications with any person they know, or have reason to know, to be a member of my Discord server, or a regular audience member in my YouTube or Twitch channels. An exception can be made if the communication is entirely unrelated to me. This is to prevent them from ever doxxing me again.

115.    I also would like the Court to enjoin the Defendants from ever infringing on my copyright ever again. This injunction should hold, even if they reasonably believe their infringing content qualifies for fair use. It is clear, at this point, that the Defendants are incapable of acting in good faith when it comes to fair use. They will not consider fair use, but still insult, harass, and dox me because they feel that they do qualify for fair use. It is clear they will not act in good faith, so they should forever lose the right to make fair use of my copyrighted content. It is a harsh penalty, but it is one that is necessary.

116.    Last but not least, the Defendants should be ordered to require similar compliance with all aforementioned injunctions with any person who is a member of their Discord communities, their YouTube or Twitch channels, or any other online communities in which they have any moderator or administrator authority. They should be ordered to immediately remove any material that harasses me, doxxes me, or infringes on my copyright, and to issue immediate, permanent, and irrevocable bans to the users who post it, and to continue to do the same in all future cases in perpetuity. They should be ordered to provide me with the ability to view any communities they create or maintain, and any messages posted in those communities, so I may monitor those communities for violations of this injunction.

**Injunctive Relief against Alphabet**

117.    For the most part, Alphabet Inc. has complied with the DMCA's safe harbor provisions. However, 17 USC § 512(j) provides for a limited form of prospective injunctive relief against ISPs, even if they have safe harbor for everything else. It is upon this limited grounds for relief that I seek to enjoin Alphabet Inc.

118.    The trio of individual defendants are, without a doubt, repeat infringers. Their collective infringements on YouTube, Discord, and Instagram undoubtedly qualify as repeat infringements. While the DMCA does not provide a bright line definition for the term "repeat infringer," the fact that the individual defendants have infringed on my copyright a minimum of *fifteen times* (possibly more, once I get the chance to inspect their Discord server) would suffice any

reasonable definition of the term. No reasonable trier of fact would argue that fifteen infringements does not make you a repeat infringer.

119.     For this reason, I ask the Court to enjoin Alphabet, pursuant to 17 USC § 512(j)(1)(B)(i), to permanently terminate the individual Defendants' google accounts and all associated YouTube channels. Alphabet should also be ordered to not permit (either expressly or tacitly) the three individual defendants to create any new google accounts for any reason.

### Injunctive Relief against Discord

120.     For the most part, Discord Inc. has complied with the DMCA's safe harbor provisions. However, 17 USC § 512(j) provides for a limited form of prospective injunctive relief against ISPs, even if they have safe harbor for everything else. It is upon this limited grounds for relief that I seek to enjoin Discord Inc.

121.     The trio of individual defendants are, without a doubt, repeat infringers. Their collective infringements on YouTube, Discord, and Instagram undoubtedly qualify as repeat infringements. While the DMCA does not provide a bright line definition for the term "repeat infringer," the fact that the individual defendants have infringed on my copyright a minimum of *fifteen times* (possibly more, once I get the chance to inspect their Discord server) would suffice any reasonable definition of the term. No reasonable trier of fact would argue that fifteen infringements does not make you a repeat infringer.

122.     In light of this, I ask the Court to issue an injunction against Discord Inc., ordering them to terminate all accounts known to be created by any of the three individual defendants. This includes the accounts of SofiannP#1337, TGP482#7412, InitiativeKookie#7766, VoreKeo777#4172, and any other accounts known to be associated with any of the three individual defendants. Discord should also be ordered to not permit (either expressly or tacitly) any of the three individual defendants to create any new Discord accounts for any reason.

123.     In addition, as I explained ¶ 44 of this Complaint, a representative of the Great Six Discord server has made it abundantly clear that the only way I can truly stop the unauthorized circulation of my copyrighted content is if the entire Discord server were taken down. In light of this, I ask that the Court issue an injunction ordering Discord to permanently terminate the entire Great Six Discord server.

### Injunctive Relief against Facebook

124.     Facebook Inc is the only corporate defendant in this case that has lost its safe harbor. As such, I intend to seek statutory damages against Facebook. In addition to that, I also seek to enjoin Facebook under 17 USC § 512(j), just like with Alphabet and Discord.

125.     As stated before, the three individual defendants are unquestionably repeat infringers. Even if the AcerthornFanClub Instagram account might have been their first infringement on a website owned by Facebook Inc., it is clear that this is a long pattern of infringing behavior. In light of this, I ask that Facebook Inc. be ordered to permanently terminate the AcerthornFanClub

account and forbid any of the three named Defendants from ever creating any new accounts, for any reason, with any website owned by Facebook Inc.

### Statutory Damages Against Karl Polano, InitaitiveKookie, TGP482, & Facebook

126.    The trio of Karl Polano, InitiativeKookie, and TGP482 infringed on my copyright a minimum of fifteen (15) times. I request statutory damages of up to $150,000 for each count of copyright infringement. This means that, so far, the trio should be held liable for up to $2,250,000 in statutory damages. However, I also ask the Court to award me statutory damages up to $150,000 for every additional instance of copyright infringement I can find when I have the chance to peruse the Defendants' Discord server.

127.    Facebook has lost its safe harbor regarding the fifteenth count of copyright infringement (see ¶ 59 of this Complaint). As such, I ask that Facebook Inc. be held jointly liable for the fifteenth count of copyright infringement alongside the trio of individual defendants, and should also be held liable for statutory damages up to $150,000.

### Emotional Distress & Punitive Damages against Polano, InitiativeKookie, & TPG482

128.    To compensate me for the intentional infliction of emotional distress, and to punish the three individual defendants and discourage all other persons similarly situated from engaging in similar conduct in the future, I ask the Court to award me a combination of compensatory, emotional distress, and punitive damages up to and including one million ($1,000,000) dollars against the three individual defendants. Combined with the statutory damages, and that brings the total damages package up to $3,250,000.

### Other Appropriate Relief

129.    Last but not least, I ask the Court to award whatever other relief, at law or in equity, that the Court, in its discretion, deems appropriate to make me whole and to ensure this does not happen again.

### CONCLUSION

130.    Wherefore, premises considered, I respectfully request that the Court enjoin the Defendants to cease and desist the harassment, doxxing, and copyright infringement, award me damages up to and including $3,250,000 in a combination of statutory, emotional distress, and punitive damages, award costs incurred, any other relief to which I may be entitled.

So requested on this, the 29th day of July, 2021.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601

**SER359**

(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID A. STEBBINS,

          Plaintiff,

    v.

KARL POLANO,

          Defendant.

Case No.  21-cv-04184-JSC

**SCREENING ORDER PURSUANT TO
28 U.S.C. § 1915 AND ORDER RE:
MOTION TO APPOINT COUNSEL**

Re: Dkt. Nos. 1, 3

United States District Court
Northern District of California

The Court previously granted Plaintiff's Application to Proceed in Forma Pauperis.  (Dkt. No. 6.)  It must now review the complaint's allegations under 28 U.S.C. § 1915.  Because Plaintiff's claims for misrepresentation under 17 U.S.C. § 512(f)(2) and intentional infliction of emotional distress ("IIED") do not comply with Federal Rule of Civil Procedure 8, the Court gives Plaintiff the opportunity to amend the complaint.

Also pending before the Court is Plaintiff's motion to appoint counsel.  (Dkt. No. 3.)  For the reasons explained below, the Court DENIES the motion.

**COMPLAINT ALLEGATIONS**

Plaintiff has dedicated channels on YouTube and Twitch where he posts original videos under the alias Acerthorn.  He uses both channels as a part-time source of income and hopes to earn enough to become full-time.  Defendant is a resident of Switzerland who also has channels on YouTube and Twitch, using the alias SofiannP.

On April 10, 2021, Plaintiff accidentally broadcast a live video for about two hours on his own Twitch channel.  Unbeknownst to Plaintiff, people who followed his Twitch channel could watch him in his daily activities.  At one point, the live video included strange sounds that Plaintiff does not recognize.  The strange noises were the most memorable part of an otherwise banal

1    video.  After he realized the video was broadcast, Plaintiff registered a copyright and posted the

2    video on his YouTube channel, with viewing access limited to followers who pay him $20 per

3    month.

4            In mid-April 2021, Defendant began to harass Plaintiff online, including "doxxing" him by

5    posting personal information on YouTube and Twitch.  Defendant sent messages to new followers

6    who came onto Plaintiff's channels "in an attempt to get them to likewise despise Plaintiff,"

7    thereby "heavily slowing down [] the growth of Plaintiff's fanbase" and paying followers.  (Dkt.

8    No. 1 at 3.)  Defendant also sent harassing messages directly to Plaintiff.

9            On May 20, 2021, Defendant posted a video to his own YouTube channel.  Of the 50

10   seconds in the video, 43 seconds were a direct clip from Plaintiff's April 10, 2021 video.  Plaintiff

11   alleges that the only way Defendant could have acquired the clip is by illegally downloading it

12   from Plaintiff's Twitch channel with third-party software; there is no way to download directly

13   from Twitch, and Plaintiff "knows for a fact" that Defendant does not have access to the video on

14   YouTube because he does not pay Plaintiff $20 a month for access.  (*Id.* at 4.)  Below the video,

15   Defendant included the following description:

16           This is a parody. (obviously)
             Fair Use Disclaimer:
17           - Copyright Disclaimer under Section 107 of the Copyright Act of 1976,
             allowance is made for 'fair use' for purposes such as criticism, comment, news
18           reporting, teaching, scholarship, education and research.
             - Fair use is a use permitted by copyright statute that might otherwise be
19           infringing.
20

21   (*Id.*)  Plaintiff filed a "DMCA Takedown Notice" with YouTube, and Defendant's video was

22   removed about an hour later.  On May 25, 2021, Defendant filed a "DMCA Counter-Notice" with

23   YouTube, in which he stated, "I've created the video as a parody of it's [sic] original content

24   which was a 2 hour livestream, this parody is meant to be a meme and nothing like Acerthorns

25   original content.  This is Fair Use as his material has been altered to create new content and has

26   also not been monetized."  (*Id.* at 4-5.)  Plaintiff alleges that Defendant's video "almost

27   completely usurps the market" for his own video because "people are unlikely to pay [] the $20

28   per month fee to see the livestream and strange noises the legitimate way."  (*Id.* at 4.)  Defendant's

United States District Court
Northern District of California

2

1    video will be automatically reinstated on June 8, 2021, unless Plaintiff files a lawsuit.

2         Plaintiff claims one count of copyright infringement for illegally downloading his video;

3    another count for using the video; violations of 17 U.S.C. § 512(f)(2); and IIED.

**LEGAL STANDARD**

5         A court must dismiss an *in forma pauperis* complaint before service of process if it is

6    frivolous, fails to state a claim, or contains a complete defense to the action on its face.  28 U.S.C.

7    § 1915(e)(2).  Section 1915(e)(2) parallels the language of Federal Rules of Civil Procedure

8    12(b)(6) regarding dismissals for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2); *see also*

9    *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000).  The complaint therefore must allege

10   facts that plausibly establish each defendant's liability.  *See Bell Atl. Corp. v. Twombly*, 550 U.S.

11   544, 555-57 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

12   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

13   alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

14        A complaint must also comply with Federal Rule of Civil Procedure 8, which requires the

15   complaint to contain "a short and plain statement of the claim showing that the pleader is entitled

16   to relief."  Fed. R. Civ. P. 8(a)(2); *see also Moss v. Infinity Ins. Co.*, No. 15-CV-03456-JSC, 2015

17   WL 5360294, at *2 (N.D. Cal. Sept. 14, 2015).  "While the federal rules require brevity in

18   pleading, a complaint nevertheless must be sufficient to give the defendants 'fair notice' of the

19   claim and the 'grounds upon which it rests.'"  *Coleman v. Beard*, No. 14-CV-05508-YGR (PR),

20   2015 WL 395662, at *4 (N.D. Cal. Jan. 29, 2015) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93

21   (2007).  A complaint that fails to state a defendant's specific acts "that violated the plaintiff's

22   rights fails to meet the notice requirements of Rule 8(a)."  *Medina Chiprez v. Becerra*, No. 20-CV-

23   00307-YGR (PR), 2020 WL 4284825, at *3 (N.D. Cal. July 27, 2020) (citing *Hutchinson v.*

24   *United States*, 677 F.2d 1322, 1328 n.5 (9th Cir. 1982)).

25        Plaintiff is proceeding without representation by a lawyer.  While the Court must construe

26   the complaint liberally, *see Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir. 1984), it may not add to

27   the factual allegations in the complaint, *see Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

28   Litigants unrepresented by a lawyer remain bound by the Federal Rules and Local Rules of this

United States District Court
Northern District of California

3

1    District.  *See* N.D. Cal. Civ. L.R. 3-9(a).

2                                        **DISCUSSION**

3    **I.    Copyright Infringement**

4           To state a claim for copyright infringement, a plaintiff must allege facts plausibly showing

5    (1) that he owns a valid copyright in the work, and (2) "copying" and "unlawful appropriation."

6    *Skidmore for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en

7    banc).  For "copying," the alleged facts must plausibly show, directly, that the defendant copied

8    or, circumstantially, that the defendant had access to the plaintiff's work and the works are

9    strikingly similar.  *Id.*  For "unlawful appropriation," the alleged facts must plausibly show that

10   specific elements of the works are objectively similar and that an ordinary observer would view

11   the overall works as similar.  *Id.*

12          Fair use is an affirmative defense establishing that the defendant's use did not infringe the

13   copyright.  *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012); *see Lenz v.*

14   *Universal Music Corp.*, 815 F.3d 1145, 1151-53 (9th Cir. 2016).  It is "a mixed question of law

15   and fact" that "requires a case-by-case determination whether a particular use is fair."  *Harper &*

16   *Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560, 549 (1985).  Typically considered at

17   the summary judgment stage, fair use "may be considered on a motion to dismiss . . . where no

18   material facts are in dispute."  *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th

19   Cir. 2008).  But, on the face of the complaint, "it is not necessary to plead facts that disprove fair

20   use [for the complaint] to survive."  *Peterman v. Republican Nat'l Comm.*, 320 F. Supp. 3d 1151,

21   1157 (D. Mont. 2018).

22          Plaintiff's complaint adequately alleges that he owned a copyright as the original and sole

23   author of the April 10, 2021 video.  The complaint also plausibly shows direct copying; Defendant

24   stated his video, the majority of which was a direct clip from Plaintiff's, was a parody of

25   Plaintiff's original video.  The complaint alleges unlawful appropriation, in that both videos

26   contained unique strange noises and the 43-second clip from Plaintiff's video would be

27   recognizable to an ordinary observer.  Moreover, although the complaint suggests Defendant will

28   raise the issue of fair use, that is an affirmative defense that Plaintiff need not disprove at this

United States District Court
Northern District of California

4

1    stage.

2    **II.    Misrepresentation Under 17 U.S.C. § 512(f)(2)**

3         To state a claim for misrepresentation under 17 U.S.C. § 512(f)(2), a plaintiff must allege

4    facts plausibly showing (1) that the defendant knowingly and materially misrepresented that its

5    material was removed or disabled by mistake or misidentification; (2) the internet service provider

6    relied on the misrepresentation in replacing the removed material or ceasing to disable access to it;

7    and (3) the plaintiff was injured as a result.  *See Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011,

8    1026 (N.D. Cal. 2015).  The first element is not met if the defendant had a subjective good faith

9    belief that it was not making a misrepresentation—in this situation, if the defendant had a

10   subjective good faith belief that its material was fair use and therefore removing it was a

11   misidentification.  *See Lenz*, 815 F.3d at 1153-54.

12        Plaintiff's complaint does not adequately allege the first element.  Plaintiff alleges that

13   Defendant's Counter-Notice claiming fair use was false and frivolous, and that Defendant's

14   pattern of harassment suggests that Defendant's video was meant to harass, not parody.  However,

15   the facts as alleged do not plausibly suggest that any misrepresentation in Defendant's Counter-

16   Notice was knowing.  The allegations more plausibly suggest that Defendant believed his use of

17   Plaintiff's video was fair use, and that such a belief might have been reasonable.

18   **III.   Intentional Infliction of Emotional Distress**

19        To state a claim for IIED, the plaintiff must allege facts that plausibly show: (1) extreme

20   and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

21   probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional

22   distress; and (3) actual and proximate causation of the emotional distress by the defendant's

23   outrageous conduct.  *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009).

24        Plaintiff's complaint does not make clear which conduct is the basis for his IIED claim.

25   (Dkt. No. 1 at 5 ("Plaintiff also believes his entitlement to judgment on the merits in regards to the

26   [IIED] is also self-explanatory at this point.").)  Regarding both Defendant's use of Plaintiff's

27   video and earlier online harassment, the complaint does not allege facts to show the conduct was

28   extreme and outrageous.  Likewise, Plaintiff does not explain how or to what extent the conduct

United States District Court
Northern District of California

5

1  caused him to suffer severe or extreme emotional distress, apart from his possible financial losses

2  due to Defendant's competing video.

3  **IV.    Motion to Appoint Counsel**

4      Plaintiff asks the Court to appoint counsel.  (Dkt. No. 3.)  At this time, the Court

5  determines that the case does not merit *pro bono* representation pursuant to Northern District of

6  California General Order 25.  Accordingly, the motion is DENIED.

7  **CONCLUSION**

8      For the reasons described above, Plaintiff's 17 U.S.C. § 512(f)(2) and IIED claims do not

9  comply with Rule 8.  Leave to amend is appropriate.  *Doe v. United States*, 58 F.3d 494, 497 (9th

10  Cir. 1995); *see also Lopez*, 203 F.3d at 1127.  The Court encourages Mr. Stebbins to continue to

11  seek free assistance from the Northern District's Legal Help Center, 450 Golden Gate Avenue,

12  15th Floor, Room 2796, San Francisco, CA 94102.  In light of the ongoing COVID-19 pandemic,

13  Mr. Stebbins should make a telephone appointment by calling (415) 782-8982.

14      If he chooses to amend, Plaintiff should: set forth the complaint's allegations in separate

15  numbered paragraphs; set forth each claim in a separate numbered paragraph; and identify each

16  factual allegation that supports each claim for relief.  Additionally, Plaintiff is informed that the

17  Court cannot refer to prior pleadings in order to make an amended complaint complete.  The

18  amended complaint must be complete in itself because it replaces the previously filed complaints.

19  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  Accordingly, the amended complaint

20  should contain all the defendants, claims, and specific factual allegations that Plaintiff wishes to

21  put before the Court.  Finally, Plaintiff is warned that failure to comply with the Federal Rules of

22  Civil Procedure, the Local Rules, or any court order could result in a report and recommendation

23  that his complaint be dismissed.

24      Plaintiff's amended complaint, if any, must be filed by July 30, 2021.

25      This Order disposes of Docket No. 3.

26  //

27  //

28  //

United States District Court
Northern District of California

6

1        **IT IS SO ORDERED.**

2     Dated: June 30, 2021

3                                                    _____
                                                     
4                                                    JACQUELINE SCOTT CORLEY
                                                     United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

7

Page 1 of 9

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS, d.b.a. ACERTHORN                     PLAINTIFF

VS.                          CASE NO. ___3:21-cv-04184-JSC___

KARL POLANO, d.b.a. SOFIANNP                         DEFENDANT

## **COMPLAINT**

COMES NOW, pro se Plaintiff David Stebbins, who hereby submits the following complaint to the Court for two counts of copyright infringement, one count of knowing material misrepresentation in violation of 17 USC §512(f)(2), and for the common law tort of intentional infliction of emotional distress.

### **JURISDICTION AND VENUE**

1.      This court has proper subject-matter jurisdiction over this case. It has "federal question" jurisdiction over the copyright infringements as well as the violation of 17 USC §512(f)(2), and it has supplemental jurisdiction over the tort of intentional infliction of emotional distress.

2.      This Court has personal jurisdiction over the Defendant because, as will be explained later in this Complaint, when the Defendant issued his DMCA Counter-Notification with the website of Youtube.com, he stated, in pertinent part, "I consent to the jurisdiction of the Federal District Court ... if my address is outside of the United States, the judicial district in which YouTube is located." Youtube is headquartered in San Bruno, CA, which is located in the Northern District of California. Therefore, that is where the Defendant has consented to be sued.

### **FACTS OF THE CASE**

3.      The following facts are necessary to understand Plaintiff's entitlement to relief:

#### BACKGROUND

4.      Plaintiff is a Youtuber and a Twitch Streamer. He has channels on both websites, where he goes by the online alias "Acerthorn." His channels can be found by going to the URL's of www.youtube.com/acerthorn and www.twitch.tv/acerthorn, respectively. He uses both channels as a part-time source of income and hopes to one day use them as a full-time source of income. The Defendant is also a youtuber and twitch streamer, who goes by the online alias "SofiannP." His channels can be found at the URL's of https://www.youtube.com/sofiannp and www.twtich.tv/sofiannp, respectively.

5.      The Defendant can be served with process at the following name and address:

Page 2 of 9

Karl Sofiann Axel Polano
Regensbergstrasse 120
Zurich, Zurich 8050 CH
Switzerland

6.      On April 10, 2021, Plaintiff accidentally broadcast a livestream on Twitch. His livestreaming software came on by accident, without Plaintiff realizing it. Therefore, people who were following Plaintiff's Twitch channel were able to see Plaintiff in his daily, personal life. For the most part, this livestream contained nothing of note (after all, it was unplanned, so Plaintiff obviously did not plan any content or performance for it). It mostly depicted Plaintiff eating some hot dogs and watching some viral videos on the Internet for his own personal amusement, while walking around his own apartment.

7.      However, there was one moment in the accidental livestream where some bizzare sounds were played on the livestream. Upon review, Plaintiff can best describe these sounds as that of a dog barking, snarling, growling, and then whimpering in pain. Plaintiff does not have a dog, and he does not know what exactly these sounds were, but what exactly they are is ultimately immaterial to the current case anyway.

8.      Regardless of what they were, because the livestream was unplanned and accidental, these strange noises were the only even remotely interesting thing that happened in the accidental livestream. As such, the moments when these strange noises occurred constitute the "heart" (or most memorable part) of the livestream, for purposes of a fair use determination.

9.      Despite this livestream being an accident, Plaintiff has nonetheless registered this video with the U.S. Copyright Office and therefore has standing to sue for copyright infringement.

10.     Plaintiff put the accidental livestream on his Youtube channel, but he set it up so that only those who paid his Youtube channel a minimum recurring fee of $20 per month (known as "channel memberships" in Youtube jargon) could see it.

## DEFENDANT'S HARASSMENT AGAINST PLAINTIFF

11.     Beginning in mid-April 2021, Defendant developed a passionate hatred towards Plaintiff for reasons Plaintiff can only speculate on. He became completely obsessed with Plaintiff, digging up his personal history and personal information. He has proceeded to dig up nearly every single itty bitty sin that Plaintiff has ever committed, and has begun publishing this personal information on his Twitch and Youtube channels (a form of harassment known in Internet parlance as "doxxing").

12.     He has also watched Plaintiff's communities (including his Youtube and Twitch channels, as well as his Discord server which is associated with those channels). Defendant has been monitoring those communities like a vulture, noticing whenever any new viewers or fans come into the communities. He will then privately message those new viewers and expose every sin he

can possibly accuse Plaintiff of, in an attempt to get them to likewise despise Plaintiff. This has the (very much intended) effect of stopping – or at the very least heavily slowing down – the growth of Plaintiff's fanbase and community, thereby sabotaging Plaintiff's aforementioned aspirations of turning these channels into a full-time career.

13.     The Defendant has allowed members of his own Discord server (known as "Great Six") to post infringing clips of Plaintiff's livestreams and Yotuube videos. Defendant has permitted and even actively encouraged this infringement. Plaintiff has had at least a dozen of these clips taken down by Discord, Inc. using DMCA Takedown Notices.

14.     In addition to all of this public harassment, he has also harassed Plaintiff directly, issuing excessively vulgar statements including (but not limited to) the following towards the Plaintiff:

(a)     "Go teach yourself about law you <expletive> moronic fat pig."

(b)     "I'm losing my <expletive> patience with your single digit American pig brain."

(c)     "Why make yourself public, PIG <expletive>? Answer, PIG <expletive>!"

(d)     "Read that carefully and get that in your thick <expletive> skull, you numbnut."

(e)     "Well fair use you <expletive> <expletive>, it's not entirely of your <expletive> content stream we've uploaded did we?"

(f)     "I swear this 32 ball of fat manchild is incredible."

15.     Plaintiff has taken screenshots of most of these harassments. Suffice to say, the Defendant has clearly been engaging in a pattern of willful and malicious harassment over the past few weeks.

<u>DEFENDANT'S MAY 20, 2021 COPYRIGHT INFRINGEMENT</u>

16.     On May 20, 2021, Defendant uploaded a video to his Youtube channel. This video was 50 seconds long. Forty-three of those 50 seconds were comprised of a clip from Plaintiff's accidental livestream, where the aforementioned strange noises occurred. These clips were entirely unmodified by Defendant. The only thing the Defendant did that was even remotely a new thing was bookend this livestream clip with clips from a gum commercial. This video – if it were ever reinstated to Youtube – could be found at the following URL:

http://www.youtube.com/watch?v=-xL0xoU2cJA

17.     First of all, there is no legal way the Defendant could possibly have obtained the footage from Plaintiff's accidental livestream in order to make this video in the first place. It was originally broadcast on Twitch, but Twitch has no mechanism in place to allow people to

Page 4 of 9

download someone else's streams to their computer. It is now on Youtube, but it is only accessible if you pay Plaintiff $20 per month, and Plaintiff knows for a fact that the Defendant has not done that.

18.     Therefore, the only way he could possibly have acquired the footage he needed to create this infringing video in the first place is is if he used third party software to download it. However, that is a violation of Plaintiff's copyright in and of itself, just like how it is a violation of copyright to use a torrent client to download a movie or video game without paying for it. That is why Plaintiff is suing for two counts of copyright infringement; one for illegally downloading the footage he needed to make the 50-second video in the first place, and another for using that illegally-acquired footage to make the 50-second video.

19.     Anyway, when a person uploads a video to Youtube, they have the option of giving the video a "description," which is displayed below the video. In the aforementioned video uploaded by the Defendant, his description stated, in pertinent part, the following:

> "This is a parody. (obviously)
>
> Fair Use Disclaimer:
>
> – Copyright Disclaimer under Section 107 of the Copyright Act of 1976, allowance is made for 'fair use' for purposes such as criticism, comment, news reporting, teaching, scholarship, education and research.
>
> – Fair use is a use permitted by copyright statute that might otherwise be infringing."

20.     This video contained the only interesting part about Plaintiff's accidental livestream, and contained the entirety of that only interesting part. As such, this video almost completely usurps the market for Plaintiff's own accidental livestream. The existence of this video means that people are unlikely to pay Plaintiff the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free?

21.     Plaintiff promptly proceeded to file a DMCA Takedown Notice with Youtube, claiming that this video infringed on his copyright. Youtube took the video down approximately one hour after the Takedown was filed.

22.     On May 25, 2021, Plaintiff received an email from Youtube claiming that Defendant had issued a DMCA Counter-Notice. In this Counter-Notice, Defendant stated, in pertinent part, the following:

> "I've created the video as a parody of it's original content which was a 2 hour

Page 5 of 9

livestream, this parody is meant to be a meme and nothing like Acerthorns[1] original content. This is Fair Use as his material has been altered to create new content and has also not been monetized."

23.    He also consented in writing to the personal jurisdiction of this court, as Plaintiff has already mentioned.

24.    That occurred on May 25, 2021, so Plaintiff has until June 8, 2021 to file a lawsuit against Mr. Polano, otherwise the video automatically will get reinstated to Youtube. To prevent this from happening and to comply with this very narrow time frame, Plaintiff is filing this Complaint pro se and will continue to search for an attorney to represent Plaintiff while the case is pending (and hopefully before the Defendant even gets served with process, since Plaintiff will have longer than normal to serve the Defendant with process since the Defendant is in another country; see Fed.R.Civ.P. 4(m)).

**DISCUSSION AND APPLICABLE LAW**

25.    The Defendant has infringed on Plaintiff's copyright. Of that, there can be no question. No reasonable finder of fact could possibly allege that the essential elements of prima facie copyright infringement are not present. Therefore, the ultimate outcome of this case turns on whether or not the Defendant can successfully claim fair use.

26.    First, however, it is important to point out that his claim of fair use is only even arguably applicable to the Plaintiff's *second* count of copyright infringement, which is his publication of 50-second-long video on his own Youtube channel. The first count of copyright infringement – illegally downloading the accidental livestream in the first place – is not the kind of infringement that could even arguably be considered fair use. Plaintiff also believes his entitlement to judgment on the merits in regards to the intentional infliction of emotional distress is also self-explanatory at this point. While the scope of damages may be disputed, if the allegations made in ¶¶ 11-15 are proven to be true, then Plaintiff would absolutely be entitled to, at the very least, prospective injunctive relief for harassment, and he should not even have to provide copious amounts of case law citation to establish that.

27.    But even on the second count of copyright infringement, the Defendant's claim of fair use is not only false, but patently frivolous. It is so frivolous, in fact, that it constitutes a violation of 17 USC §512(f)(2), which holds that "[a]ny person who knowingly materially misrepresents under this section that material or activity was removed or disabled by mistake or misidentification shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner."

28.    First of all, because the Defendant has engaged in a consistent pattern of harassment and doxxing against Plaintiff, any reasonable person could assume that the second count of copyright infringement was similarly designed, not to criticize the Plaintiff's work, but just to harass him.

---

1   Just to remind the Court: "Acerthorn" is Plaintiff's online username.

Page 6 of 9

See Fed.R.Evid 404(b)(2) (evidence of other actions by a party is admissible to prove intent and motive behind current acts). Plaintiff urges that any infringement designed primarily to harass and/or dox the copyright holder should automatically not be considered fair use, even if that same video might be considered fair use in otherwise identical circumstances, as a contrary holding would be wholly at odds with the ends of copyright law.

29.     Second, because the Defendant necessarily obtained the raw footage illegally, the video he created using that footage should automatically be precluded from being considered fair use, even if that same video could be considered fair use in otherwise identical circumstances. Fair use should be applied to the extent it advances the interests of copyright law. Allowing a copyright thief to claim fair use when he literally violated copyright law to get there is the complete opposite of that. Surely, the court has heard of the criminal law doctrine "fruit of the poisonous tree," whereby evidence that is only discovered thanks to other evidence that was itself acquired in violation of the citizen's Fourth Amendment rights will likewise become just as inadmissible as if it were a Fourth Amendment violation in its own right? Well, Plaintiff urges for a similar doctrine to be applied to fair use law. To hold otherwise would be like if a debtor could legitimately pay off a loan to a bank using money he acquired by robbing that very same bank.

30.     But even barring all of that, even if we are forced to address the Defendant's claim of fair use on its own merit, his claim of fair use still fails, and it fails miserably. He may provide a more nuanced case for fair use once he finally obtains counsel in this case, but so far, the Defendant's entire case for fair use begins and ends with "It is fair use because it is a parody." Apparently, the Defendant believes that, as long as he says the words "parody" and "fair use," he is immune from copyright infringement liability. Apparently, the Defendant believes that the mere fact that he *says* it is fair use automatically causes it to become true.

31.     Even if his video could be considered parody by the Court (as opposed to the Defendant), he appears to believe that, as long as it is classified as a parody, it is automatically fair use to the exclusion of all other factors. Put simply, that is not how this works. In fact, the Supreme Court has explicitly and unequivocally rejected the idea that parody is automatically – or even presumptively – fair use:

> "The fact that parody can claim legitimacy for some appropriation does not ... tell either parodist or judge much about where to draw the line. Like a book review quoting the copyrighted material criticized, parody may or may not be fair use, and petitioners' suggestion that any parodic use is presumptively fair has no more justification in law or fact than the equally hopeful claim that any use for news reporting should be presumed fair. The [Copyright] Act has no hint of an evidentiary preference for parodists over their victims, and no workable presumption for parody could take account of the fact that parody often shades into satire when society is lampooned through its creative artifacts, or that a work may contain both parodic and nonparodic elements. Accordingly, parody, like any other use, has to work its way through the relevant factors, and be judged case by case, in light of the ends of the copyright law." See Campbell v. Acuff-Rose

Music, Inc., 510 US 569, 581 (1994) (citations omitted).

32.     In addition, the Defendant's DMCA Counter-Notice only further highlights his (potentially willful) ignorance of how fair use actually works. In his very short response mentioned in ¶ 22 of this Complaint, he stated that his video was three things at once: A parody, a meme, and an original work. Those three things are not compatible with one another.

33.     Even ignoring that, the Defendant still contradicts himself. First, he says that his video was a parody. Then, literally one sentence later, he says that his video is not like Plaintiff's original content. However, if it is not like Plaintiff's content, then it is not a parody. The Supreme Court has held that "[p]arody needs to mimic an original to make its point." See Campbell v. Acuff-Rose Music, Inc., 510 US 569, 580-81 (1994). Therefore, if it is not like the Plaintiff's content, then it cannot be a parody. More to the point, if his resulting video is not like Plaintiff's original content, then that begs the question … how can the Defendant possibly be commenting on or criticizing Plaintiff's content?

34.     That transitions to the next point: The Defendant has not even *attempted* any sort of transformative effect in his work. He bookends the clip from Plaintiff's accidental livestream with some clips from a gum commercial, but other than that, he just copies from Plaintiff's livestream verbatim with absolutely no alterations. There is no commentary, no criticism, no analysis, no evaluation, nothing that could even arguably be considered transformative whatsoever. The addition of the gum commercial clips is a completely superfluous addition that provides absolutely no commentary on Plaintiff's livestream clip. Even if the Court were to determine that the gum commercial clips provided some *de minimus* transformative value, the value added would be so minimal that it alone should not be able to overcome the other factors of fair use.

35.     The second factor of fair use also weighs against the Defendant. While it is true that facts are given less copyright protection than fiction, and the fact that the accidental livestream showed a day in Plaintiff's life (which could be considered nonfiction), it is important to note that, when lawmakers and copyright law scholars say "facts," they typically mean things such as history, science, or politics, aka things of public importance. Simply peaking into one person's personal life on some random day, when he is alone in his own home, minding his own business and hurting no one, is, quite simply, not consistent with the public policy interests fair use was designed to protect. By contrast, it absolutely serves the Defendant's personal agenda of harassing and doxxing Plaintiff, but such malevolent motives, at best, do not help Defendant in his case for fair use, and at worst, actively hinder his case for fair use (see ¶ 28).

36.     The third factor of fair use is neutral at best and weighs against the Defendant at worst. While it is true that Defendant's video was only 50 seconds long whereas Plaintiff's accidental livestream was nearly 2 hours long, Defendant used the most substantial portion of Plaintiff's accidental livestream. He used the "heart" of the accidental livestream (see ¶ 8), and therefore, this factor should be construed in Defendant's disfavor.

37.     The fourth and final fair use factor – effect on the potential market – is egregiously and laughably in the Defendant's disfavor. The second count of copyright infringement contained the only interesting part about Plaintiff's accidental livestream, and contained the entirety of that only interesting part. As such, this video almost completely usurps the market for Plaintiff's own accidental livestream. The existence of this video means that people are unlikely to pay Plaintiff the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free?

38.     In fact, not only does the Defendant's video usurp the market for Plaintiff's livestream, but that was almost certainly one of the Defendant's explicit goals. After all, as established ¶ 12, one of the Defendant's goals is to completely destroy Plaintiff's hopes and dreams of a full time career on Youtube and/or Twitch.

39.     So in conclusion, the Defendant's case for fair use is patently frivolous, and Plaintiff's entitlement to judgment against the Defendant for copyright infringement is beyond clear. Fair use is supposed to be one of the most complex parts in all of American jurisprudence, but in the instant case, literally zero relevant factors of a fair use determination are in the Defendant's favor. Literally, the Defendant's entire case for fair use begins and ends with "It is fair use because I say it is." Even if the Defendant's attorney could come up with a stronger case for fair use on his client's behalf, the Defendant's attitude up to this point makes it clear that he did not create the 50-second video with the *real* law of fair use in mind.

40.     For all of these reasons and more, not only should the Defendant be held fully liable for the second count of copyright infringement, but he should also be held liable for violating 17 USC §512(f)(2) for his complete and utter failure to consider fair use[2] when filing his counter-notice, instead substituting his delusional definition of fair use in place of the true law of the land. Not only that, but when the Defendant inevitably appears in this case, if he continues to advance his ludicrous claim that it is fair use simply because he says it is, he and his lawyer (if he has one) should be sanctioned by the Court for violating Fed.R.Civ.P. 11.

### RELIEF REQUESTED

41.     Plaintiff requests the following relief from the Court:

42.     First, Plaintiff seeks an injunction ordering the Defendant to

(a)     … cease and desist his infringing on Plaintiff's copyright.

(b)     … destroy or delete any content he has (on his computer or otherwise) that is copyrighted by Plaintiff, unless he can prove he acquired this content legitimately.

---

2     A party must consider fair use when issuing DMCA Takedowns and Counter-Notices. See Lenz v. Universal Music Corp., 801 F.3d 1126 (9th Cir. 2015), and their frivolous attempts to replace actual fair use law with their own delusional idea of what fair use is does not satisfy this requirement.

Page 9 of 9

(c)    ... to cease and desist harassing the Plaintiff and sharing via any of the Plaintiff's personal information that the Plaintiff does not willingly publish of his own accord.

(d)    ... to no longer have any contact with Plaintiff unless it is supervised by American police or an American Court of competent jurisdiction.

(e)    ... to no longer have any contact with any person who joins, follows, or subscribes to Plaintiff's Youtube channel, Discord server, or Twitch channel, unless that contact is entirely unrelated to Plaintiff or the contact is supervised by American police or an American court of competent jurisdiction.

43.    Plaintiff also requests damages in the following amounts:

(a)    $300,000 in statutory damages for the two counts of copyright infringement (because the infringements were committed willfully and maliciously, Plaintiff should receive the maximum statutory damages for each count).

(b)    Appropriate punitive damages up to $1,000,000 for intentional infliction of emotional distress and for violating 17 USC §512(f)(2).

44.    Plaintiff also requests any additional relief the Court believes the Plaintiff is entitled to.

## CONCLUSION

45.    In Conclusion, the Defendant has violated Plaintiff's rights (both his copyrights and his right to not be harassed), and the Defendant needs to be taught a lesson.

46.    Wherefore, premises considered, Plaintiff respectfully requests that the Court enter judgment in his favor, issue all injunctive and monetary relief requested in ¶¶ 41-44, award costs incurred (including any attorneys fees Plaintiff may incur in future), and any other relief to which Plaintiff may be entitled.

So requested on this, the 29 th day of May, 2021.

David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

**SER376**

JS-CAND 44 (Rev. 10/2020)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Davod Stebboms. d.b.a. Acerthorn

**(b)** County of Residence of First Listed Plaintiff    Boone County, Arkansas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

Karl Polano, d.b.a. SofiannP

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
         THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 710 Fair Labor Standards Act | ☒ 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 740 Railway Labor Act | 835 Patent–Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 370 Other Fraud | 751 Family and Medical Leave Act | 840 Trademark | 460 Deportation |
| | 350 Motor Vehicle | 371 Truth in Lending | 790 Other Labor Litigation | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | **SOCIAL SECURITY** | 480 Consumer Credit |
| 160 Stockholders' Suits | 360 Other Personal Injury | 385 Property Damage Product Liability | **IMMIGRATION** | 861 HIA (1395ff) | 485 Telephone Consumer Protection Act |
| 190 Other Contract | 362 Personal Injury -Medical Malpractice | | 462 Naturalization Application | 862 Black Lung (923) | 490 Cable/Sat TV |
| 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 465 Other Immigration Actions | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | 440 Other Civil Rights | **HABEAS CORPUS** | | 864 SSID Title XVI | 890 Other Statutory Actions |
| **REAL PROPERTY** | 441 Voting | 463 Alien Detainee | | 865 RSI (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | 442 Employment | 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 220 Foreclosure | 443 Housing/ Accommodations | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | 871 IRS–Third Party 26 USC § 7609 | 896 Arbitration |
| 240 Torts to Land | 446 Amer. w/Disabilities–Other | **OTHER** | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 448 Education | 540 Mandamus & Other | | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation–Transfer   ☐ 8 Multidistrict Litigation–Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
17 USC § 501

Brief description of cause:
Copyright infringement & intentional infliction of emotional distress

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, Fed. R. Civ. P.

DEMAND $ 1,300,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:

JUDGE        DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

*(Place an "X" in One Box Only)*    ☒ SAN FRANCISCO/OAKLAND      ☐ SAN JOSE      ☐ EUREKA-MCKINLEYVILLE

DATE   06/02/2021      SIGNATURE OF ATTORNEY OF RECORD      David Stebbins

# SER377

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-CAND 44

**Authority For Civil Cover Sheet.** The JS-CAND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

    **I. a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    **b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

    **c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

    **II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Federal Rule of Civil Procedure 8(a), which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

    (1)   <u>United States plaintiff.</u> Jurisdiction based on 28 USC §§ 1345 and 1348. Suits by agencies and officers of the United States are included here.

    (2)   <u>United States defendant.</u> When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

    (3)   <u>Federal question.</u> This refers to suits under 28 USC § 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

    (4)   <u>Diversity of citizenship.</u> This refers to suits under 28 USC § 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

    **III.**   **Residence (citizenship) of Principal Parties.** This section of the JS-CAND 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

    **IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

    **V.**   **Origin.** Place an "X" in one of the six boxes.

    (1)   <u>Original Proceedings.</u> Cases originating in the United States district courts.

    (2)   <u>Removed from State Court.</u> Proceedings initiated in state courts may be removed to the district courts under Title 28 USC § 1441. When the petition for removal is granted, check this box.

    (3)   <u>Remanded from Appellate Court.</u> Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

    (4)   <u>Reinstated or Reopened.</u> Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

    (5)   <u>Transferred from Another District.</u> For cases transferred under Title 28 USC § 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

    (6)   <u>Multidistrict Litigation Transfer.</u> Check this box when a multidistrict case is transferred into the district under authority of Title 28 USC § 1407. When this box is checked, do not check (5) above.

    (8)   <u>Multidistrict Litigation Direct File.</u> Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

    <u>Please note that there is no Origin Code 7.</u> Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

    **VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** <u>Example</u>: U.S. Civil Statute: 47 USC § 553. Brief Description: Unauthorized reception of cable service.

    **VII.**   **Requested in Complaint.** <u>Class Action.</u> Place an "X" in this box if you are filing a class action under Federal Rule of Civil Procedure 23.

    <u>Demand.</u> In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

    <u>Jury Demand.</u> Check the appropriate box to indicate whether or not a jury is being demanded.

    **VIII.**   **Related Cases.** This section of the JS-CAND 44 is used to identify related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

    **IX.**   **Divisional Assignment.** If the Nature of Suit is under Property Rights or Prisoner Petitions or the matter is a Securities Class Action, leave this section blank. For all other cases, identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated."

**Date and Attorney Signature.** Date and sign the civil cover sheet.



UNITED STATES POSTAL SERVICE® Click-N-Ship®

P

usps.com
$7.95
US POSTAGE
Flat Rate Env

9405 5036 9930 0400 4630 91 0079 5000 0079 4102

U.S. POSTAGE PAID
Click-N-Ship®

05/29/2021 Mailed from 72601

**PRIORITY MAIL 2-DAY™**

DAVID A STEBBINS
123 W RIDGE AVE
APT D
HARRISON AR 72601-4236

Expected Delivery Date: 06/02/21

0006

RECEIVED
JUN 01 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

C004

SHIP TO:

U.S. DISTRICT COURT, NORTH DIST. OF CA
450 GOLDEN GATE AVE
SAN FRANCISCO CA 94102-3661

**USPS TRACKING #**

9405 5036 9930 0400 4630 91

Electronic Rate Approved #038555749

U.S. MARSHALS SERVICE

Case 4:21-cv-04184-JSW  Document 1-2  Filed 06/02/21  Page 2 of 2



**SER380**

youDavid Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                        PLAINTIFF

VS.                              Case 3:21-cv-04184-JSW

KARL POLANO, et al                                     DEFENDANTS

**NOTICE OF APPEAL**

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Notice of Appeal in the above-styled action. The District Court erred in the following ways:

1.      First, the District Court erred in dismissing with prejudice my claim for intentional infliction of emotional distress. This was erroneous for two reasons:

    (a)      First, it was error for the District Court to find that my factual allegations (which included computer viruses and doxxing) were not sufficiently outrageous to constitute the tort of IIED.

    (b)      Second, the District Court should only have dismissed the claim without prejudice, so I could refile it if I corrected the deficiencies and ended up suffering a more severe injury.

2.      Second, the intervenors should not have been allowed to intervene. This was not even an abuse of discretion by the District Court, because the District Court had no discretion to circumscribe the voluntary dismissal in any way, shape, or form.

3.      Third, the District Court abused its discretion when it considered my voluntary dismissal as a factor when granting the Motion to Intervene. Since his goal was to discourage this behavior in the future, that amounted to punishment in everything but name. However, "to punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to

Case 3:21-cv-04184-JSW                    -1-                    Notice of Appeal

penalize a person's reliance on his legal rights is patently unconstitutional." See Bordenkircher v. Hayes, 434 US 357, 363 (1978) (citations and quotations omitted).

4.      Fourth, the District Court erred in finding that the April 10, 2021 livestream lacked minimal creativity. The District Court even admitted, in its per curiam opinion, that there was indeed small bursts of creative expression in the livestream, but found that these were not "creative choices." However, copyright law does not require "creative choices" as a requirement for copyright protection; it only requires *creativity*. The District Court's claim that the mere fact that the work was created by accident automatically and necessarily strips it of minimal creativity has absolutely no basis in reality.

5.      Fifth, the District Court properly found that I improperly categorized the livestream as a "dramatic work" when registering the copyright. However, it improperly found that this miscategorization, alone, was grounds to invalidate the registration. The District Court also acknowledged that the law required a "knowingly" inaccurate statement on the registration, yet made no finding that the improper categorization was done with knowledge that it was improper.

6.      Sixth, the District Court erred when it found that the livestream was not one of human authorship. The alleged admission offered in support of this finding of fact was not admissible, and the finding was made in direct violation of the binding precedent which states that the Court, on a Rule 12(b)(6) motion to dismiss, must not only assume all facts in the complaint to be true, but also make all reasonable inferences in the plaintiff's favor. The latter means that, as long as a "figurative" interpretation of that section of the complaint is a reasonable one, the court is required to give me that benefit of the doubt and allow me to test the claim of the merits. See Navarro v. Block, 250 F. 3d 729, 732 (9th Cir. 2001). The court denied me that legal right.

7.      Seventh, the District Court left the Section 512(f) misrepresentation claim unresolved when it closed the case.

8.      Eighth, leave to amend was improperly denied. He claims that leave to amend would be futile, but this is not the case. He says that an amended complaint cannot contradict earlier statements, but I never said in any of the complaints that the stream lacked minimal creativity. Furthermore, the supposed "admission" that the streaming software turned on "of its own

**SER382**

accord" was not admissible because it was not based on personal knowledge, meaning it cannot be used against me. Therefore, there is no reason why an amended complaint could not correct these deficiencies.

9.      Ninth, the District Court abused its discretion when it denied my Motion for Sanctions.

10.     Lastly, Judge Jeffrey White should have recused himself, since he, by his own admission, sought to punish me with adverse rulings primarily because he personally does not like me, because I invoked my absolute right to voluntarily dismiss parties in a way that he, personally, did not like. He has demonstrated "a deep-seated favoritism or antagonism that would make fair judgment impossible,"[1] because he has proven that every ruling going forward will be made with a healthy regard for his disdain towards me for issuing that voluntary dismissal. This deprived me of my absolute right to an impartial judge.

So notified on this, the 3rd day of April, 2023.

_/s/ David Stebbins_
David Stebbins
123 W. Ridge Ave., APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

---

1   See Liteky v. United States, 510 US 540, 555 (1994).

# SER383

ADRMOP,APPEAL,CLOSED,E-ProSe,ProSe,RELATE

## U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:21-cv-04184-JSW

Stebbins v. Polano                                      Date Filed: 06/02/2021
Assigned to: Judge Jeffrey S. White                    Date Terminated: 07/11/2022
Relate Case Case: 4:22-cv-00546-JSW                    Jury Demand: None
Cause: 17:501 Copyright Infringement                   Nature of Suit: 820 Copyright
                                                       Jurisdiction: Federal Question

**Plaintiff**

**David A. Stebbins**                    represented by   **David A. Stebbins**
*doing business as*                                      123 W. Ridge Ave.,
Acerthorn                                                APT D
                                                         Harrison, AR 72601
                                                         (870) 212-4947
                                                         Email: acerthorn@yahoo.com
                                                         PRO SE

V.

**Defendant**

**Karl Polano**
*doing business as*
Sofiannp

**Defendant**

**Alphabet Inc.**                        represented by   **Ryan S. Benyamin**
                                                         Wilson Sonsini Goodrich & Rosati, P.C.
                                                         633 West Fifth Street, Suite 1550
                                                         Los Angeles, CA 90071
                                                         (323) 210-2924
                                                         Email: rbenyamin@wsgr.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Jason B Mollick**
                                                         WSGR
                                                         1301 Avenue of the Americas
                                                         40th Floor
                                                         New York, NY 10019
                                                         212-497-7754
                                                         Email: jmollick@wsgr.com
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

# SER384

**Discord, Inc.**                                     represented by **Jeffrey G Landis**
ZwillGen PLLC
1900 M Street NW
Suite 250
Washington, DC 20036
202-296-3585
Fax: 202-706-5298
Email: jeff@zwillgen.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jui-Ting Anna Hsia**
ZwillGen Law LLP
369 Pine Street, Suite 506
San Francisco, CA 94104
415-590-2341
Fax: 415-636-5965
Email: anna@zwillgen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Orenstein**
ZwillGen PLLC
183 Madison Ave.
Suite 1504
New York, NY 10016
646-362-5590
Email: orenstein@zwillgen.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Facebook Inc.**                                     represented by **Joseph Edward Petersen**
*TERMINATED: 11/17/2021*                              Kilpatrick Townsend and Stockton LLP
1080 Marsh Road
Menlo Park, CA 94025
650-326-2400
Fax: 650-326-2422
Email: jpetersen@kilpatricktownsend.com
*TERMINATED: 11/17/2021*

<u>**Defendant**</u>

**John Doe #1**
*Online Alias "InitiativeKookie"*
*TERMINATED: 09/17/2021*

<u>**Defendant**</u>

**John Doe #2**
*YouTube Alias "TGP482"*
*TERMINATED: 09/17/2021*

<u>**Defendant**</u>

# SER385

**Amazon.com, Inc.**                    represented by  **Sanjay Mohan Nangia**
                                                        Davis Wright Tremaine LLP
                                                        50 California Street
                                                        Ste 23rd Floor
                                                        San Francisco, CA 94111
                                                        415-276-6577
                                                        Fax: 415-276-6599
                                                        Email: sanjaynangia@dwt.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Frederick Allison**
*doing business as*
InitiativeKookie

**Defendant**

**Raul Mateas**
*doing business as*
TGP482

**Intervenor**

**Alphabet Inc.**                       represented by  **Jason B Mollick**
                                                        (See above for address)
                                                        *TERMINATED: 08/30/2023*
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jeremy Paul Auster**
                                                        Wilson Sonsini Goodrich Rosati
                                                        Internet Litigation
                                                        1301 6th Ave
                                                        New York, NY 10019
                                                        516-297-2787
                                                        Email: jauster@wsgr.com
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

**Intervenor**

**YouTube, LLC**                        represented by  **Jason B Mollick**
                                                        (See above for address)
                                                        *TERMINATED: 08/30/2023*
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jeremy Paul Auster**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

# SER386

| Date Filed | # | Docket Text |
|---|---|---|
| 06/02/2021 | 1 | COMPLAINT against Karl Polano. Filed by David Stebbins. Consent/Declination due by 6/16/2021. (Attachments: # 1 Civil Cover Sheet, # 2 Envelope)(wsnS, COURT STAFF) (Filed on 6/2/2021) (Entered: 06/02/2021) |
| 06/02/2021 | 2 | MOTION for Leave to Proceed in forma pauperis filed by David Stebbins. (wsnS, COURT STAFF) (Filed on 6/2/2021) (Entered: 06/02/2021) |
| 06/02/2021 | 3 | MOTION to Appoint Counsel filed by David Stebbins. (wsnS, COURT STAFF) (Filed on 6/2/2021) (Entered: 06/02/2021) |
| 06/02/2021 | 4 | MOTION for ECF Access filed by David Stebbins. (wsnS, COURT STAFF) (Filed on 6/2/2021) (Entered: 06/02/2021) |
| 06/02/2021 | 5 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 8/26/2021. Initial Case Management Conference set for 9/2/2021 at 1:30 PM in San Francisco, Courtroom E, 15th Floor. (Attachments: # 1 Standing Order)(wsnS, COURT STAFF) (Filed on 6/2/2021)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> **(Entered: 06/02/2021)** |
| 06/02/2021 | | Copy of 5 and Consent/ Declination form mailed to plaintiff (elyS, COURT STAFF) (Filed on 6/2/2021) (Entered: 06/02/2021) |
| 06/08/2021 | 6 | **ORDER by Magistrate Judge Jacqueline Scott Corley denying 4 Motion for Permission for Electronic Case Filing; granting 2 Motion for Leave to Proceed in forma pauperis. No Service/Under 1915 Review. (ahm, COURT STAFF) (Filed on 6/8/2021)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> **(Entered: 06/08/2021)** |
| 06/12/2021 | 7 | First MOTION for Extension of Time to File *Consent or Declination to Magistrate Judge* filed by David A. Stebbins. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B) (Stebbins, David) (Filed on 6/12/2021) (Entered: 06/12/2021) |
| 06/14/2021 | 8 | **ORDER by Magistrate Judge Jacqueline Scott Corley granting 7 Motion for Extension of Time to File Consent or Declination to Magistrate Judge. (ahm, COURT STAFF) (Filed on 6/14/2021)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br> **Order emailed to plaintiff on June 14, 2021 at acerthorn@yahoo.com.** <br><br> **(Entered: 06/14/2021)** |
| 06/18/2021 | 9 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by David A. Stebbins.. (Stebbins, David) (Filed on 6/18/2021) (Entered: 06/18/2021) |
| 06/30/2021 | 10 | **SCREENING ORDER PURSUANT TO 28 U.S.C. § 1915 AND ORDER RE: MOTION TO APPOINT COUNSEL. Signed by Magistrate Judge Jacqueline Scott Corley on June 30, 2021. Amended Complaint due by July 30, 2021. (ahm, COURT STAFF) (Filed on 6/30/2021)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> **(Entered: 06/30/2021)** |

# SER387

| 07/29/2021 | 11 | AMENDED COMPLAINT against All Defendants. Filed byDavid A. Stebbins. (Stebbins, David) (Filed on 7/29/2021) (Entered: 07/29/2021) |
|---|---|---|
| 07/29/2021 | 12 | Ex Parte MOTION for Temporary Restraining Order filed by David A. Stebbins. (Attachments: # 1 Supplement Amended Complaint, # 2 Supplement Memorandum of Points and Authorities, # 3 Proposed Order Proposed Order, # 4 Exhibit Exhibit A, # 5 Exhibit Exhibit B)(Stebbins, David) (Filed on 7/29/2021) (Entered: 07/29/2021) |
| 07/29/2021 | 13 | Ex Parte MOTION Issuance of Subpoena Duces Tecum re 11 Amended Complaint filed by David A. Stebbins. Motion Hearing set for 9/9/2021 09:00 AM in San Francisco, - Videoconference Only before Magistrate Judge Jacqueline Scott Corley. Responses due by 8/12/2021. Replies due by 8/19/2021. (Attachments: # 1 Exhibit Exhibit A, # 2 Proposed Order Proposed Order)(Stebbins, David) (Filed on 7/29/2021) (Entered: 07/29/2021) |
| 07/29/2021 | 14 | **CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE:** The Clerk of this Court will now randomly reassign this case to a District Judge because either (1) a party has not consented to the jurisdiction of a Magistrate Judge, or (2) time is of the essence in deciding a pending judicial action for which the necessary consents to Magistrate Judge jurisdiction have not been secured. You will be informed by separate notice of the district judge to whom this case is reassigned.<br><br>ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED.<br><br>*This is a text only docket entry; there is no document associated with this notice.* (ahm, COURT STAFF) (Filed on 7/29/2021)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 07/29/2021) |
| 07/29/2021 | 15 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Susan Illston for all further proceedings. Magistrate Judge Jacqueline Scott Corley no longer assigned to case, Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras.. Signed by The Clerk on 7/29/21. (Attachments: # 1 Notice of Eligibility for Video Recording) (haS, COURT STAFF) (Filed on 7/29/2021)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 07/29/2021)** |
| 07/29/2021 | 16 | INITIAL CASE MANAGEMENT GUIDELINE AND CLERK'S NOTICE ON REASSIGNMENT: Initial Case Management Conference set for 9/3/2021 at 02:30 PM - Videoconference Only. Joint Case Management Statement due by 8/27/2021. This proceeding will be held via a Zoom webinar.<br><br>**Court Appearances:** Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names and emails must be sent to the CRD at sicrd@cand.uscourts.gov no later than August 26, 2021 at 2 p.m. Pacific.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/si |

# SER388

| | | |
|---|---|---|
| | | **General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. |
| | | **Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/. |
| | | Case Management Statement due by 8/27/2021. Initial Case Management Conference set for 9/3/2021 02:30 PM in San Francisco, - Videoconference Only. (ecS, COURT STAFF) (Filed on 7/29/2021) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (ecS, COURT STAFF). (Entered: 07/29/2021) |
| 07/30/2021 | 17 | **ORDER OF RECUSAL (Illston, Susan) (Filed on 7/30/2021)** |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) **(Entered: 07/30/2021)** |
| 07/30/2021 | 18 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Maxine M. Chesney for all further proceedings. Judge Susan Illston no longer assigned to case, Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras.. Signed by Clerk on 07/30/2021. (Attachments: # 1 Notice of Eligibility for Video Recording)(mbcS, COURT STAFF) (Filed on 7/30/2021)** |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) **(Entered: 07/30/2021)** |
| 08/02/2021 | 19 | **ORDER OF RECUSAL.** Signed by Judge Maxine M. Chesney on August 2, 2021. (mmclc1, COURT STAFF) (Filed on 8/2/2021) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 08/02/2021) |
| 08/02/2021 | 20 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Jeffrey S. White for all further proceedings. Judge Maxine M. Chesney no longer assigned to case, Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras.. Signed by Clerk on 08/02/2021. (Attachments: # 1 Notice of Eligibility for Video Recording)(mbcS, COURT STAFF) (Filed on 8/2/2021)** |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) **(Entered: 08/02/2021)** |
| 08/03/2021 | 21 | **ORDER RE SUFFICIENCY OF AMENDED COMPLAINT AND DEFERRING RULING ON EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER. Signed by Judge Jeffrey S. White on 8/3/21. (jjoS, COURT STAFF) (Filed on 8/3/2021)** |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) **(Entered: 08/03/2021)** |
| 08/04/2021 | 22 | **ORDER SETTING CASE MANAGEMENT CONFERENCE AND REQUIRING CASE MANAGEMENT CONFERENCE STATEMENT. Signed by Judge Jeffrey S. White on 8/4/21. Case Management Statement due by 10/8/2021. Initial Case** |

| | | |
|---|---|---|
| | | **Management Conference set for 10/15/2021 11:00 AM in Oakland, - Telephonic Only. (jjoS, COURT STAFF) (Filed on 8/4/2021)** |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 08/04/2021)** |
| 08/04/2021 | 23 | Summons Issued as to Karl Polano. (Attachments: # 1 USM285)(anjS, COURT STAFF) (Filed on 8/4/2021) (Entered: 08/04/2021) |
| 08/04/2021 | 24 | Summons Issued as to Discord, Inc.. (Attachments: # 1 USM285)(anjS, COURT STAFF) (Filed on 8/4/2021) (Entered: 08/04/2021) |
| 08/04/2021 | 25 | Summons Issued as to Facebook Inc.. (Attachments: # 1 USM285)(anjS, COURT STAFF) (Filed on 8/4/2021) (Entered: 08/04/2021) |
| 08/04/2021 | 26 | Summons Issued as to Alphabet Inc.. (Attachments: # 1 USM285)(anjS, COURT STAFF) (Filed on 8/4/2021) (Entered: 08/04/2021) |
| 08/09/2021 | 27 | First MOTION Leave to File Motion for Reconsideration re 21 Order, filed by David A. Stebbins. Motion Hearing set for 10/1/2021 09:00 AM in Oakland, - Videoconference Only before Judge Jeffrey S. White. Responses due by 8/23/2021. Replies due by 8/30/2021. (Stebbins, David) (Filed on 8/9/2021) (Entered: 08/09/2021) |
| 08/17/2021 | 28 | **ORDER by Judge Jeffrey S. White denying 13 Motion For Issuance of Subpoenas. (jjoS, COURT STAFF) (Filed on 8/17/2021)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 08/17/2021)** |
| 08/17/2021 | 29 | ACKNOWLEDGEMENT OF Receipt as to 25 Summons Issued. (anjS, COURT STAFF) (Filed on 8/17/2021) (Entered: 08/17/2021) |
| 08/17/2021 | 30 | ACKNOWLEDGEMENT OF receipt as to 26 Summons Issued. (anjS, COURT STAFF) (Filed on 8/17/2021) (Entered: 08/17/2021) |
| 08/17/2021 | 31 | ACKNOWLEDGEMENT OF receipt as to 24 Summons Issued. (anjS, COURT STAFF) (Filed on 8/17/2021) (Entered: 08/17/2021) |
| 08/17/2021 | 32 | Summons Returned Unexecuted as to Karl Polano. (anjS, COURT STAFF) (Filed on 8/17/2021) (Entered: 08/17/2021) |
| 08/19/2021 | 33 | **ORDER by Judge Jeffrey S. White Denying 27 MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION.(amgS, COURT STAFF) (Filed on 8/19/2021)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 08/19/2021)** |
| 08/26/2021 | 34 | First MOTION Update John Doe #1's Identity and Address filed by David A. Stebbins. Motion Hearing set for 10/8/2021 10:00 AM in Oakland, - To be determined before Judge Jeffrey S. White. Responses due by 9/9/2021. Replies due by 9/16/2021. (Stebbins, David) (Filed on 8/26/2021) (Entered: 08/26/2021) |
| 08/26/2021 | 35 | First MOTION for Hague Service or in the Alternative for Leave to Conduct Hague Service re 32 Summons Returned Unexecuted, 23 Summons Issued filed by David A. Stebbins. Motion Hearing set for 10/8/2021 10:00 AM in Oakland, - To be determined before Judge Jeffrey S. White. Responses due by 9/9/2021. Replies due by 9/16/2021. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 |

| | | Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F)(Stebbins, David) (Filed on 8/26/2021) (Entered: 08/26/2021) |
|---|---|---|
| 08/27/2021 | | Set/Reset Deadlines Correcting Time of Hearing as to 34 First MOTION Update John Doe #1's Identity and Address , 35 First MOTION for Hague Service or in the Alternative for Leave to Conduct Hague Service re 32 Summons Returned Unexecuted, 23 Summons Issued . Motion Hearing set for 10/8/2021 09:00 AM in Oakland, - To be determined before Judge Jeffrey S. White. (jjoS, COURT STAFF) (Filed on 8/27/2021) (Entered: 08/27/2021) |
| 08/27/2021 | 36 | SUMMONS Returned Executed by David A. Stebbins. Discord, Inc. served on 8/25/2021, answer due 9/15/2021. (anjS, COURT STAFF) (Filed on 8/27/2021) (Entered: 08/27/2021) |
| 08/27/2021 | | Electronic filing error. Venue and Judge initials are incorrect. REMINDER: All future filings shall bear the following Venue (4) at the beginning of the case number and the proper venue initials JSW immediately after the case number. Re: 35 First MOTION for Hague Service or in the Alternative for Leave to Conduct Hague Service re 32 Summons Returned Unexecuted, 23 Summons Issued filed by David A. Stebbins, 34 First MOTION Update John Doe #1's Identity and Address filed by David A. Stebbins (anjS, COURT STAFF) (Filed on 8/27/2021) (Entered: 08/27/2021) |
| 08/31/2021 | 37 | **ORDER SETTING BRIEFING SCHEDULE AND HEARING as to 12 Ex Parte MOTION for Temporary Restraining Order. Signed by Judge Jeffrey S. White on 8/31/21. Responses due by 4:00 PM 9/7/2021. Replies due by10:00 AM 9/9/2021. Motion Hearing set for 9/10/2021 09:00 AM in Oakland, - To be determined before Judge Jeffrey S. White. (jjoS, COURT STAFF) (Filed on 8/31/2021)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> **(Entered: 08/31/2021)** |
| 09/01/2021 | 38 | First MOTION for Leave to File *Second Amended Complaint* filed by David A. Stebbins. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Stebbins, David) (Filed on 9/1/2021) (Entered: 09/01/2021) |
| 09/07/2021 | 39 | NOTICE of Appearance by Jui-Ting Anna Hsia (Hsia, Jui-Ting) (Filed on 9/7/2021) (Entered: 09/07/2021) |
| 09/07/2021 | 40 | OPPOSITION/RESPONSE (re 12 Ex Parte MOTION for Temporary Restraining Order ) filed byDiscord, Inc.. (Attachments: # 1 Declaration of J. Landis, # 2 Exhibit Landis Decl. Ex. A, # 3 Declaration of E. DiMuzio, # 4 Proposed Order)(Hsia, Jui-Ting) (Filed on 9/7/2021) (Entered: 09/07/2021) |
| 09/07/2021 | 41 | Certificate of Interested Entities by Discord, Inc. (Hsia, Jui-Ting) (Filed on 9/7/2021) (Entered: 09/07/2021) |
| 09/08/2021 | 42 | REPLY (re 12 Ex Parte MOTION for Temporary Restraining Order ) filed byDavid A. Stebbins. (Attachments: # 1 A, # 2 B, # 3 C, # 4 D, # 5 E, # 6 F, # 7 G)(Stebbins, David) (Filed on 9/8/2021) (Entered: 09/08/2021) |
| 09/08/2021 | 43 | **CLERK'S NOTICE VACATING HEARING ON 12 MOTION FOR TEMPORARY RESTRAINING ORDER (jjoS, COURT STAFF) (Filed on 9/8/2021)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> **(Entered: 09/08/2021)** |
| 09/08/2021 | 44 | **ORDER by Judge Jeffrey S. White denying 12 Ex Parte Motion for TRO. (jjoS, COURT STAFF) (Filed on 9/8/2021)** |

# SER391

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 09/08/2021)** |
| 09/09/2021 | 45 | **ORDER REGARDING 35 First MOTION for Hague Service; and ORDER TO SHOW CAUSE REGARDING IN FORMA PAUPERIS STATUS. Signed by Judge Jeffrey S. White on 9/9/21. Show Cause Response due by 9/23/2021. (jjoS, COURT STAFF) (Filed on 9/9/2021)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 09/09/2021)** |
| 09/09/2021 | 46 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number 0971-16370599.) filed by Discord, Inc.. (Attachments: # 1 Exhibit Certificate of Good Standing)(Orenstein, James) (Filed on 9/9/2021) (Entered: 09/09/2021) |
| 09/09/2021 | 47 | **ORDER by Judge Jeffrey S. White granting 46 Motion for Pro Hac Vice re James Orenstein. (jjoS, COURT STAFF) (Filed on 9/9/2021)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 09/09/2021)** |
| 09/09/2021 | 48 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number 0971-16371832.) filed by Discord, Inc.. (Attachments: # 1 Exhibit Certificate of Good Standing)(Landis, Jeffrey) (Filed on 9/9/2021) (Entered: 09/09/2021) |
| 09/09/2021 | 49 | **ORDER by Judge Jeffrey S. White granting 48 Motion for Pro Hac Vice re Jeffrey G. Landis. (jjoS, COURT STAFF) (Filed on 9/9/2021)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 09/09/2021)** |
| 09/10/2021 | 50 | Consent MOTION for Extension of Time to File Answer re 11 Amended Complaint *(or move, or otherwise respond)* filed by Discord, Inc.. (Attachments: # 1 Declaration of J. Orenstein, # 2 Proposed Order)(Orenstein, James) (Filed on 9/10/2021) (Entered: 09/10/2021) |
| 09/13/2021 | 51 | **CLERK'S NOTICE CONTINUING INITIAL CASE MANAGEMENT CONFERENCE: Case Management Statement due by 11/12/2021. Initial Case Management Conference set for 11/19/2021 11:00 AM in Oakland, - Telephonic Only. (jjoS, COURT STAFF) (Filed on 9/13/2021)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 09/13/2021)** |
| 09/13/2021 | 52 | **ORDER by Judge Jeffrey S. White granting 50 MOTION for Extension of Time to File Answer. (jjoS, COURT STAFF) (Filed on 9/13/2021)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 09/13/2021)** |
| 09/15/2021 | 53 | RESPONSE TO ORDER TO SHOW CAUSE by David A. Stebbins *in response to Doc 45.*. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Stebbins, David) (Filed on 9/15/2021) (Entered: 09/15/2021) |
| 09/16/2021 | 54 | **ORDER GRANTING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT; DISCHARGING ORDER TO SHOW CAUSE by Judge Jeffrey S. White Amended Pleadings due by 9/30/2021. (jjoS, COURT STAFF) (Filed on 9/16/2021)** |

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 09/16/2021)** |
| 09/17/2021 | 55 | AMENDED COMPLAINT *Second Amended Complaint* against All Defendants. Filed by David A. Stebbins. (Stebbins, David) (Filed on 9/17/2021) (Entered: 09/17/2021) |
| 09/17/2021 | 56 | First MOTION for Sanctions , First MOTION Recuse and Sanctions filed by David A. Stebbins. Motion Hearing set for 11/5/2021 10:00 AM in Oakland, - Videoconference Only before Judge Jeffrey S. White. Responses due by 10/1/2021. Replies due by 10/8/2021. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Stebbins, David) (Filed on 9/17/2021) (Entered: 09/17/2021) |
| 09/17/2021 | 57 | Second MOTION for Preliminary Injunction filed by David A. Stebbins. Motion Hearing set for 11/5/2021 10:00 AM in Oakland, - Videoconference Only before Judge Jeffrey S. White. Responses due by 10/1/2021. Replies due by 10/8/2021. (Attachments: # 1 Appendix Second Amended Complaint, # 2 Appendix Memorandum of Points and Authorities, # 3 Proposed Order Granting Motion, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit J, # 14 Proposed Order for Electronic Service)(Stebbins, David) (Filed on 9/17/2021) (Entered: 09/17/2021) |
| 09/20/2021 | 58 | SUMMONS Returned Executed Alphabet Inc. served on 9/10/2021, answer due 10/1/2021. (sfbS, COURT STAFF) (Filed on 9/20/2021) (Entered: 09/20/2021) |
| 09/20/2021 | 59 | SUMMONS Returned Executed Facebook Inc. served on 9/10/2021, answer due 10/1/2021. (sfbS, COURT STAFF) (Filed on 9/20/2021) (Entered: 09/20/2021) |
| 09/22/2021 | 60 | **ORDER DIRECTING SERVICE REGARDING SECOND AMENDED COMPLAINT. Signed by Judge Jeffrey S. White on 9/22/2021. (amgS, COURT STAFF) (Filed on 9/22/2021)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 09/22/2021)** |
| 09/22/2021 | 61 | Summons Issued as to Frederick Allison, and Amazon.com, Inc. (Attachments: # 1 Summons, # 2 usm285, # 3 usms285)(sfbS, COURT STAFF) (Filed on 9/22/2021) (Entered: 09/22/2021) |
| 09/23/2021 | 62 | Summons Issued as to Raul Mateas. (sfbS, COURT STAFF) (Filed on 9/23/2021) (Entered: 09/23/2021) |
| 09/27/2021 | | Set/Reset Deadlines as to 57 Second MOTION for Preliminary Injunction , 56 First MOTION for Sanctions First MOTION Recuse and Sanctions . Motion Hearing set for 11/5/2021 09:00 AM in Oakland, - To be determined before Judge Jeffrey S. White. (jjoS, COURT STAFF) (Filed on 9/27/2021) (Entered: 09/27/2021) |
| 09/30/2021 | 63 | OPPOSITION/RESPONSE (re 57 Second MOTION for Preliminary Injunction , 56 First MOTION for Sanctions First MOTION Recuse and Sanctions ) filed byDiscord, Inc.. (Hsia, Jui-Ting) (Filed on 9/30/2021) (Entered: 09/30/2021) |
| 09/30/2021 | 64 | REPLY (re 56 First MOTION for Sanctions First MOTION Recuse and Sanctions ) filed byDavid A. Stebbins. (Stebbins, David) (Filed on 9/30/2021) (Entered: 09/30/2021) |
| 10/01/2021 | 65 | Receipt of acknowledgment from U. S. Marshal Office. (cv, COURT STAFF) (Filed on 10/1/2021) (Entered: 10/01/2021) |
| 10/01/2021 | 66 | NOTICE of Appearance by Ryan S. Benyamin *for Defendant Alphabet Inc.* (Benyamin, Ryan) (Filed on 10/1/2021) (Entered: 10/01/2021) |

# SER393

| 10/01/2021 | 67 | Corporate Disclosure Statement by Alphabet Inc. (Benyamin, Ryan) (Filed on 10/1/2021) (Entered: 10/01/2021) |
|---|---|---|
| 10/01/2021 | 68 | Certificate of Interested Entities by Alphabet Inc. (Benyamin, Ryan) (Filed on 10/1/2021) (Entered: 10/01/2021) |
| 10/01/2021 | 69 | STIPULATION *TO EXTEND ALPHABET INC.'S TIME TO RESPOND TO SECOND AMENDED COMPLAINT* filed by Alphabet Inc.. (Benyamin, Ryan) (Filed on 10/1/2021) (Entered: 10/01/2021) |
| 10/02/2021 | 70 | First MOTION for Entry of Default *as to Facebook, Inc.* filed by David A. Stebbins. (Attachments: # 1 Certificate/Proof of Service Summons Returned Executed as to Facebook, Inc. by U.S. Marshall)(Stebbins, David) (Filed on 10/2/2021) (Entered: 10/02/2021) |
| 10/02/2021 | 71 | MOTION for Leave to File *Third Amended Complaint* filed by David A. Stebbins. (Attachments: # 1 Supplement Proposed Amended Complaint, # 2 Proposed Order Proposed Order Granting Motion)(Stebbins, David) (Filed on 10/2/2021) (Entered: 10/02/2021) |
| 10/04/2021 | 72 | Clerk's Notice ENTRY OF DEFAULT as to Facebook Inc. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (Related documents(s) 70 )(pmcS, COURT STAFF) (Filed on 10/4/2021)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 10/04/2021) |
| 10/04/2021 | 73 | Supplemental Brief re 71 MOTION for Leave to File *Third Amended Complaint* filed byDavid A. Stebbins. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Revised Proposed Third Amended Complaint, # 3 Proposed Order Revised Proposed Order Granting) (Related document(s) 71 ) (Stebbins, David) (Filed on 10/4/2021) (Entered: 10/04/2021) |
| 10/04/2021 | 74 | First MOTION for Default Judgment by the Court as to *Facebook, Inc.* filed by David A. Stebbins. Motion Hearing set for 11/12/2021 09:00 AM in Oakland, - To be determined before Judge Jeffrey S. White. Responses due by 10/18/2021. Replies due by 10/25/2021. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F, # 7 Exhibit Exhibit G, # 8 Exhibit Exhibit H, # 9 Supplement Memorandum of Points and Authorities in Support, # 10 Proposed Order Proposed Order Granting)(Stebbins, David) (Filed on 10/4/2021) (Entered: 10/04/2021) |
| 10/05/2021 | 75 | **ORDER REFERRING 74 MOTION FOR DEFAULT JUDGMENT to a randomly assigned Magistrate Judge for Report and Recommendation. Signed by Judge Jeffrey S. White on 10/5/21. (jjoS, COURT STAFF) (Filed on 10/5/2021)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 10/05/2021)** |
| 10/05/2021 | | CASE REFERRED to Magistrate Judge Alex G. Tse for Report and Recommendation (ahm, COURT STAFF) (Filed on 10/5/2021) (Entered: 10/05/2021) |
| 10/06/2021 | 76 | MOTION to Vacate *ENTRY OF DEFAULT AND OPPOSITION TO MOTION FOR ENTRY OF DEFAULT JUDGMENT* filed by Facebook Inc.. Responses due by 10/20/2021. Replies due by 10/27/2021. (Petersen, Joseph) (Filed on 10/6/2021) (Entered: 10/06/2021) |
| 10/06/2021 | 77 | Corporate Disclosure Statement by Facebook Inc. (Petersen, Joseph) (Filed on 10/6/2021) (Entered: 10/06/2021) |

**SER394**

| | | |
|---|---|---|
| 10/06/2021 | 78 | Certificate of Interested Entities by Facebook Inc. (Petersen, Joseph) (Filed on 10/6/2021) (Entered: 10/06/2021) |
| 10/07/2021 | 79 | OPPOSITION/RESPONSE (re 74 First MOTION for Default Judgment by the Court as to *Facebook, Inc.*, 76 MOTION to Vacate *ENTRY OF DEFAULT AND OPPOSITION TO MOTION FOR ENTRY OF DEFAULT JUDGMENT ) as to Facebook, Inc.* filed byDavid A. Stebbins. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Stebbins, David) (Filed on 10/7/2021) (Entered: 10/07/2021) |
| 10/08/2021 | 80 | REPLY (re 76 MOTION to Vacate *ENTRY OF DEFAULT AND OPPOSITION TO MOTION FOR ENTRY OF DEFAULT JUDGMENT )* filed byFacebook Inc.. (Petersen, Joseph) (Filed on 10/8/2021) (Entered: 10/08/2021) |
| 10/22/2021 | 81 | **ORDER DENYING 56 Motion for Sanctions and Recusal. Signed by Judge Jeffrey S. White. (jswlc4S, COURT STAFF) (Filed on 10/22/2021)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> **(Entered: 10/22/2021)** |
| 10/25/2021 | 82 | STIPULATION WITH PROPOSED ORDER *TO CONTINUE INITIAL CASE MANAGEMENT CONFERENCE PURSUANT TO LOCAL RULE 6-2* filed by Alphabet Inc.. (Attachments: # 1 Declaration)(Benyamin, Ryan) (Filed on 10/25/2021) (Entered: 10/25/2021) |
| 10/25/2021 | 83 | **ORDER GRANTING 82 STIPULATION TO CONTINUE INITIAL CASE MANAGEMENT CONFERENCE. Signed by Judge Jeffrey S. White on 10/25/2021. (jswlc3, COURT STAFF) (Filed on 10/25/2021)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> **(Entered: 10/25/2021)** |
| 10/25/2021 | 84 | NOTICE of Appearance by Sanjay Mohan Nangia (Nangia, Sanjay) (Filed on 10/25/2021) (Entered: 10/25/2021) |
| 10/26/2021 | 85 | REQUEST for Service Abroad of Judicial or Extrajudicial Documents (USM-94). (sp, COURT STAFF) (Filed on 10/26/2021) (Entered: 10/26/2021) |
| 10/26/2021 | 86 | STIPULATION *TO EXTEND AMAZON.COM, INC.S TIME TO RESPOND TO COMPLAINT* filed by Amazon.com, Inc.. (Nangia, Sanjay) (Filed on 10/26/2021) (Entered: 10/26/2021) |
| 10/28/2021 | 87 | **ORDER by Judge Jeffrey S. White denying 74 Motion for Default Judgment; granting 76 Motion to Vacate 74 First MOTION for Default Judgment by the Court as to *Facebook, Inc. (jjo, COURT STAFF) (Filed on 10/28/2021)*** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> ***(Entered: 10/28/2021)*** |
| 10/29/2021 | 88 | **ORDER by Judge Jeffrey S. White denying 57 Motion for Preliminary Injunction. (jjo, COURT STAFF) (Filed on 10/29/2021)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> **(Entered: 10/29/2021)** |
| 10/29/2021 | 89 | **ORDER by Judge Jeffrey S. White deferring ruling on 71 Motion for Leave to File Third Amended Complaint. (jjo, COURT STAFF) (Filed on 10/29/2021)** |

**SER395**

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 10/29/2021)** |
| 11/02/2021 | 90 | First MOTION for Entry of Default *as to Frederick Allison* filed by David A. Stebbins. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Stebbins, David) (Filed on 11/2/2021) (Entered: 11/02/2021) |
| 11/04/2021 | 91 | Clerk's Notice ENTRY OF DEFAULT as to defendant Frederick Allison. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (Related documents(s) 90 )(jy, COURT STAFF) (Filed on 11/4/2021)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 11/04/2021) |
| 11/05/2021 | 92 | First MOTION for Default Judgment by the Court as to *Frederick Allison* filed by David A. Stebbins. Motion Hearing set for 12/17/2021 09:00 AM in Oakland, - To be determined before Judge Jeffrey S. White. Responses due by 11/19/2021. Replies due by 11/26/2021. (Attachments: # 1 Supplement Memorandum of Points and Authorities in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C)(Stebbins, David) (Filed on 11/5/2021) (Entered: 11/05/2021) |
| 11/08/2021 | 93 | **CLERK'S NOTICE Continuing Motion Hearing as to 92 First MOTION for Default Judgment by the Court as to *Frederick Allison*:**<br><br>Motion Hearing set for 1/7/2022 09:00 AM in Oakland, - To be determined before Judge Jeffrey S. White. (Related documents(s) 92 )(jjo, COURT STAFF) (Filed on 11/8/2021)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 11/08/2021) |
| 11/09/2021 | 94 | REQUEST for Service Abroad of Judicial or Extra Judicial Documents (USMS-94). (sfb, COURT STAFF) (Filed on 11/9/2021) (Entered: 11/09/2021) |
| 11/17/2021 | 95 | NOTICE of Voluntary Dismissal *as to Facebook, Inc.* by David A. Stebbins (Stebbins, David) (Filed on 11/17/2021) (Entered: 11/17/2021) |
| 11/19/2021 | 96 | OPPOSITION/RESPONSE (re 92 First MOTION for Default Judgment by the Court as to *Frederick Allison* ) *Joint Submission* filed byAmazon.com, Inc.. (Nangia, Sanjay) (Filed on 11/19/2021) (Entered: 11/19/2021) |
| 11/23/2021 | 97 | REPLY (re 92 First MOTION for Default Judgment by the Court as to *Frederick Allison* ) *in response to Doc. 96* filed byDavid A. Stebbins. (Attachments: # 1 Exhibit A)(Stebbins, David) (Filed on 11/23/2021) (Entered: 11/23/2021) |
| 12/07/2021 | 98 | Certificate of Interested Entities by Amazon.com, Inc. (Nangia, Sanjay) (Filed on 12/7/2021) (Entered: 12/07/2021) |
| 01/03/2022 | 99 | **ORDER by Judge Jeffrey S. White denying 92 Motion for Default Judgment as to Frederick Allison. (jjo, COURT STAFF) (Filed on 1/3/2022)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 01/03/2022)** |
| 01/21/2022 | 101 | Summons Returned Unexecuted as to Karl Polano. (Attachments: # 1 Attachment 1, # 2 Attachment 2, # 3 Attachment 3, # 4 Attachment 4, # 5 Attachment 5, # 6 Attachment 6, # 7 Attachment 7, # 8 Envelope)(sfb, COURT STAFF) (Filed on 1/21/2022) (Entered: 01/25/2022) |

# SER396

| | | |
|---|---|---|
| 01/25/2022 | 100 | MOTION for Leave to File *Additional Amended Complaint* filed by David A. Stebbins. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E) (Stebbins, David) (Filed on 1/25/2022) (Entered: 01/25/2022) |
| 01/25/2022 | 102 | First MOTION for Service by Publication *by Email as to Karl Polano* filed by David A. Stebbins. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order)(Stebbins, David) (Filed on 1/25/2022) (Entered: 01/25/2022) |
| 01/25/2022 | 103 | Supplemental Brief re 89 Order on Motion for Leave to File, 71 MOTION for Leave to File *Third Amended Complaint*, 100 MOTION for Leave to File *Additional Amended Complaint*, 73 Supplemental Brief, filed byDavid A. Stebbins. (Related document(s) 89 , 71 , 100 , 73 ) (Stebbins, David) (Filed on 1/25/2022) (Entered: 01/25/2022) |
| 01/25/2022 | 104 | MOTION for Service by Publication *by email as to Raul Mateas* filed by David A. Stebbins. (Attachments: # 1 Proposed Order)(Stebbins, David) (Filed on 1/25/2022) (Entered: 01/25/2022) |
| 01/29/2022 | 105 | First MOTION to merge Case 3:22-cv-00546-SK Stebbins v. Rebolo with this one filed by David A. Stebbins. Motion Hearing set for 3/11/2022 10:00 AM in Oakland, - Videoconference Only before Judge Jeffrey S. White. Responses due by 2/14/2022. Replies due by 2/22/2022. (Stebbins, David) (Filed on 1/29/2022) (Entered: 01/29/2022) |
| 01/29/2022 | 106 | Second MOTION for Preliminary Injunction filed by David A. Stebbins. Motion Hearing set for 3/11/2022 10:00 AM in Oakland, - Videoconference Only before Judge Jeffrey S. White. Responses due by 2/14/2022. Replies due by 2/22/2022. (Attachments: # 1 Supplement Second Amended Complaint, # 2 Supplement Memorandum of Points and Authorities, # 3 Proposed Order Proposed Order, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G)(Stebbins, David) (Filed on 1/29/2022) (Entered: 01/29/2022) |
| 01/31/2022 | | Set/Reset Deadlines as to 106 Second MOTION for Preliminary Injunction , 105 First MOTION to merge Case 3:22-cv-00546-SK Stebbins v. Rebolo with this one . Motion Hearing set for 3/11/2022 09:00 AM in Oakland, - To be determined before Judge Jeffrey S. White. (jjo, COURT STAFF) (Filed on 1/31/2022) (Entered: 01/31/2022) |
| 01/31/2022 | 107 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number ACANDC-16855414.) filed by Alphabet Inc.. (Mollick, Jason) (Filed on 1/31/2022) (Entered: 01/31/2022) |
| 01/31/2022 | 108 | **ORDER by Judge Jeffrey S. White granting 107 Motion for Pro Hac Vice re Jason B. Mollick. (jjo, COURT STAFF) (Filed on 1/31/2022)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 01/31/2022)** |
| 02/10/2022 | 109 | **ORDER by Judge Jeffrey S. White granting 105 Motion to Relate 22-cv-00546.**<br><br>**Parties are instructed that all future filings in any reassigned case are to bear the initials of the newly assigned judge (JSW) immediately after the case number. Any case management conference in any reassigned case will be rescheduled by the Court. Unless otherwise ordered, any dates for hearing noticed motions are vacated and must be re-noticed by the moving party before the newly assigned judge.**<br><br>**(jjo, COURT STAFF) (Filed on 2/10/2022)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 02/10/2022)** |

# SER397

| | | |
|---|---|---|
| 02/13/2022 | 110 | Supplemental Brief re 102 First MOTION for Service by Publication *by Email as to Karl Polano* filed byDavid A. Stebbins. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Related document(s) 102 ) (Stebbins, David) (Filed on 2/13/2022) (Entered: 02/13/2022) |
| 02/14/2022 | 111 | OPPOSITION/RESPONSE (re 106 Second MOTION for Preliminary Injunction ) *DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION* filed byAlphabet Inc.. (Benyamin, Ryan) (Filed on 2/14/2022) (Entered: 02/14/2022) |
| 02/20/2022 | 112 | REPLY (re 106 Second MOTION for Preliminary Injunction ) filed byDavid A. Stebbins. (Stebbins, David) (Filed on 2/20/2022) (Entered: 02/20/2022) |
| 02/28/2022 | 113 | Supplemental Brief re 112 Reply to Opposition/Response, 106 Second MOTION for Preliminary Injunction filed byDavid A. Stebbins. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Related document(s) 112 , 106 ) (Stebbins, David) (Filed on 2/28/2022) (Entered: 02/28/2022) |
| 03/02/2022 | 114 | OBJECTIONS to re 113 Supplemental Brief, *JOINT OBJECTION TO PLAINTIFF'S UNAUTHORIZED SUPPLEMENTAL BRIEF* by Alphabet Inc.. (Benyamin, Ryan) (Filed on 3/2/2022) (Entered: 03/02/2022) |
| 03/08/2022 | 115 | **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION by Judge Jeffrey S. White denying 106 Motion for Preliminary Injunction. The hearing scheduled for March 11, 2022, at 9:00 a.m. is VACATED. (dts, COURT STAFF) (Filed on 3/8/2022) (Entered: 03/08/2022)** |
| 03/15/2022 | 116 | First MOTION for Extension of Time to File *Service of Process as to Raul Mateas and Karl Polano* filed by David A. Stebbins. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Stebbins, David) (Filed on 3/15/2022) (Entered: 03/15/2022) |
| 03/15/2022 | 117 | **ORDER REGARDING MOTIONS FOR SERVICE BY PUBLICATION by Judge Jeffrey S. White Deferring ruling on 100 Motion for Leave to File Amend Complaint; Granting 102 Motion for Service by email as to Karl Polano; Denying 104 Motion for Service by email as to Raul Mateas; Denying as Moot 116 Motion to Extend Time (Filed on 3/15/2022)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 03/15/2022)** |
| 03/15/2022 | 118 | SERVICE by Publication filed by David A. Stebbins. Last publication date March 15, 2022. *by Email as to Karl Polano* (Attachments: # 1 Exhibit A)(Stebbins, David) (Filed on 3/15/2022) (Entered: 03/15/2022) |
| 03/15/2022 | 119 | First MOTION for Sanctions *as to Karl Polano* filed by David A. Stebbins. Motion Hearing set for 4/22/2022 09:00 AM in Oakland, - Videoconference Only before Judge Jeffrey S. White. Responses due by 4/6/2022. Replies due by 4/13/2022. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Proposed Order Granting)(Stebbins, David) (Filed on 3/15/2022) (Entered: 03/15/2022) |
| 03/16/2022 | 120 | CLERK'S NOTICE MODIFYING BRIEFING SCHEDULE as to 119 First MOTION for Sanctions *as to Karl Polano*. Opposition due by 3/29/2022. Reply due by 4/5/2022. Hearing set for 4/22/2022 09:00 AM remains unchanged. (dts, COURT STAFF) (Filed on 3/16/2022) *(This is a text-only entry generated by the court. There is no document associated with this entry.)*, (Entered: 03/16/2022) |

| 03/25/2022 | 121 | SUMMONS Returned Executed Raul Mateas served on 1/7/2022, answer due 1/28/2022. (sfb, COURT STAFF) (Filed on 3/25/2022) (Entered: 03/28/2022) |
| --- | --- | --- |
| 03/28/2022 | 122 | MOTION for Entry of Default *as to Raul Mateas* filed by David A. Stebbins. (Stebbins, David) (Filed on 3/28/2022) (Entered: 03/28/2022) |
| 03/28/2022 | 123 | Clerk's Notice ENTRY OF DEFAULT as to defendant Raul Mateas. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (Related documents(s) 122 ) (jy, COURT STAFF) (Filed on 3/28/2022)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 03/28/2022) |
| 04/06/2022 | 124 | MOTION for Entry of Default *as to Karl Polano* filed by David A. Stebbins. (Attachments: # 1 Exhibit A)(Stebbins, David) (Filed on 4/6/2022) (Entered: 04/06/2022) |
| 04/06/2022 | 125 | Clerk's Notice ENTRY OF DEFAULT as to defendant Karl Polano. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (Related documents(s) 124 ) (jy, COURT STAFF) (Filed on 4/6/2022)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 04/06/2022) |
| 04/06/2022 | 126 | MOTION Clarify How to Serve Third Amended Complaint re 121 Summons Returned Executed, 101 Summons Returned Unexecuted, 119 First MOTION for Sanctions *as to Karl Polano*, 103 Supplemental Brief, 124 MOTION for Entry of Default *as to Karl Polano*, 117 Order on Motion for Leave to File,,, Order on Motion for Service by Publication,,,,,, Order on Motion for Extension of Time to File,, 100 MOTION for Leave to File *Additional Amended Complaint*, 123 Clerk's Notice of Entry of Default, 125 Clerk's Notice of Entry of Default, 110 Supplemental Brief, 118 Service by Publication, 122 MOTION for Entry of Default *as to Raul Mateas*, 102 First MOTION for Service by Publication *by Email as to Karl Polano*, 104 MOTION for Service by Publication *by email as to Raul Mateas*, 106 Second MOTION for Preliminary Injunction filed by David A. Stebbins. Motion Hearing set for 5/13/2022 10:00 AM in Oakland, - Videoconference Only before Judge Jeffrey S. White. Responses due by 4/20/2022. Replies due by 4/27/2022. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Stebbins, David) (Filed on 4/6/2022) (Entered: 04/06/2022) |
| 04/07/2022 | 127 | MOTION for Default Judgment by the Court as to *Individual Defendants* filed by David A. Stebbins. Motion Hearing set for 5/13/2022 10:00 AM in Oakland, - Videoconference Only before Judge Jeffrey S. White. Responses due by 4/21/2022. Replies due by 4/28/2022. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Supplement Memorandum of Points and Authorities)(Stebbins, David) (Filed on 4/7/2022) (Entered: 04/07/2022) |
| 04/11/2022 | 128 | NOTICE of Voluntary Dismissal *without prejudice as to Alphabet Inc., Discord Inc., and Amazon.com Inc.* by David A. Stebbins (Stebbins, David) (Filed on 4/11/2022) (Entered: 04/11/2022) |
| 04/11/2022 | 129 | Joint MOTION to Dismiss filed by Amazon.com, Inc.. Motion Hearing set for 5/27/2022 09:00 AM in Oakland, Courtroom 5, 2nd Floor before Judge Jeffrey S. White. Responses due by 5/6/2022. Replies due by 5/13/2022. (Attachments: # 1 Supplement Request for Judicial Notice)(Nangia, Sanjay) (Filed on 4/11/2022) (Entered: 04/11/2022) |
| 04/11/2022 | 130 | MOTION to Strike 128 Notice of Voluntary Dismissal, 129 Joint MOTION to Dismiss filed by David A. Stebbins. Motion Hearing set for 5/20/2022 10:00 AM in |

| | | |
|---|---|---|
| | | McKinleyville, Videoconference Only before Judge Jeffrey S. White. Responses due by 4/25/2022. Replies due by 5/2/2022. (Stebbins, David) (Filed on 4/11/2022) (Entered: 04/11/2022) |
| 04/11/2022 | 131 | OPPOSITION/RESPONSE (re 130 MOTION to Strike 128 Notice of Voluntary Dismissal, 129 Joint MOTION to Dismiss ) *JOINT RESPONSE TO PLAINTIFF'S MOTION TO STRIKE THE CORPORATE DEFENDANTS' MOTION TO DISMISS* filed byAlphabet Inc.. (Mollick, Jason) (Filed on 4/11/2022) (Entered: 04/11/2022) |
| 04/11/2022 | 132 | REPLY (re 130 MOTION to Strike 128 Notice of Voluntary Dismissal, 129 Joint MOTION to Dismiss ) filed byDavid A. Stebbins. (Stebbins, David) (Filed on 4/11/2022) (Entered: 04/11/2022) |
| 04/12/2022 | 133 | Emergency MOTION to Expedite *130 Motion to Strike* filed by David A. Stebbins. (Stebbins, David) (Filed on 4/12/2022) (Entered: 04/12/2022) |
| 04/12/2022 | 134 | **ORDER REGARDING NOTICE OF VOLUNTARY DISMISSAL AND STRIKING MOTIONS Signed by Judge Jeffrey S. White. striking 129 Motion to Dismiss; granting 130 Motion to Strike 129 Joint MOTION to Dismiss; striking 133 Motion to Expedite. (dts, COURT STAFF) (Filed on 4/12/2022)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> **(Entered: 04/12/2022)** |
| 04/13/2022 | 135 | MOTION to clarify or in the alternative for leave to file supplemental brief re 127 MOTION for Default Judgment by the Court as to *Individual Defendants*, 132 Reply to Opposition/Response, 134 Order on Motion to Dismiss,, Order on Motion to Strike,, Order on Motion to Expedite, 128 Notice of Voluntary Dismissal, 129 Joint MOTION to Dismiss , 131 Opposition/Response to Motion, 130 MOTION to Strike 128 Notice of Voluntary Dismissal, 129 Joint MOTION to Dismiss filed by David A. Stebbins. Motion Hearing set for 4/15/2022 10:00 AM in Oakland, - Videoconference Only before Judge Jeffrey S. White. Responses due by 4/15/2022. Replies due by 4/15/2022. (Attachments: # 1 Exhibit A)(Stebbins, David) (Filed on 4/13/2022) (Entered: 04/13/2022) |
| 04/14/2022 | 136 | **ORDER REGARDING 135 MOTION FOR CLARIFICATION AND ADMONISHMENT TO PLAINTIFF Signed by Judge Jeffrey S. White. (dts, COURT STAFF) (Filed on 4/14/2022)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> **(Entered: 04/14/2022)** |
| 04/14/2022 | 137 | CLERK'S NOTICE VACATING MOTION HEARING (dts, COURT STAFF) (Filed on 4/14/2022) <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br> (Entered: 04/14/2022) |
| 04/20/2022 | 138 | MOTION to Intervene filed by Alphabet Inc., YouTube, LLC. Motion Hearing set for 6/3/2022 09:00 AM before Judge Jeffrey S. White. Responses due by 5/4/2022. Replies due by 5/11/2022. (Attachments: # 1 REQUEST FOR JUDICIAL NOTICE, # 2 Ex A to REQUEST FOR JUDICIAL NOTICE, # 3 Proposed Order)(Mollick, Jason) (Filed on 4/20/2022) (Entered: 04/20/2022) |
| 04/27/2022 | 139 | Consent MOTION for Extension of Time to File Response/Reply as to 138 MOTION to Intervene *Response due 05/11/2022, Reply due by 05/25/2022* filed by David A. Stebbins. (Stebbins, David) (Filed on 4/27/2022) (Entered: 04/27/2022) |
| 04/27/2022 | 140 | Notice of Withdrawal of Motion *for Extension of Time* (Stebbins, David) (Filed on |

**SER400**

| | | |
|---|---|---|
| | | 4/27/2022) (Entered: 04/27/2022) |
| 04/27/2022 | 141 | Second MOTION for Extension of Time to File Response/Reply as to 138 MOTION to Intervene filed by David A. Stebbins. (Stebbins, David) (Filed on 4/27/2022) (Entered: 04/27/2022) |
| 04/27/2022 | 142 | Emergency MOTION to Strike 138 MOTION to Intervene filed by David A. Stebbins. Motion Hearing set for 6/1/2022 10:00 AM in Oakland, - Videoconference Only before Judge Jeffrey S. White. Responses due by 5/11/2022. Replies due by 5/18/2022. (Attachments: # 1 Proposed Order)(Stebbins, David) (Filed on 4/27/2022) (Entered: 04/27/2022) |
| 04/27/2022 | 143 | **ORDER by Judge Jeffrey S. White Denying 142 Emergency MOTION to Strike 138 MOTION to Intervene. (dts, COURT STAFF) (Filed on 4/27/2022)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 04/27/2022)** |
| 04/29/2022 | 144 | OPPOSITION/RESPONSE (re 141 Second MOTION for Extension of Time to File Response/Reply as to 138 MOTION to Intervene ) filed byDavid A. Stebbins. (Attachments: # 1 Supplement Request for Judicial Notice, # 2 Proposed Order)(Stebbins, David) (Filed on 4/29/2022) (Entered: 04/29/2022) |
| 04/29/2022 | 145 | Emergency MOTION to Order the Preservation of Evidence re 144 Opposition/Response to Motion, filed by David A. Stebbins. Motion Hearing set for 6/3/2022 10:00 AM in Oakland, - Videoconference Only before Judge Jeffrey S. White. Responses due by 5/13/2022. Replies due by 5/20/2022. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Stebbins, David) (Filed on 4/29/2022) (Entered: 04/29/2022) |
| 05/02/2022 | 146 | CLERK'S NOTICE VACATING MOTION HEARINGS. (dts, COURT STAFF) (Filed on 5/2/2022)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 05/02/2022) |
| 05/03/2022 | 147 | **ORDER REGARDING BRIEFING SCHEDULE FOR MOTION TO INTERVENE AND DENYING EMERGENCY MOTION TO PRESERVE EVIDENCE Signed by Judge Jeffrey S. White. Granting in Part and Denying in Part 141 Motion for Extension of Time; Denying 145 Motion. Reply due by 6/1/2022. (dts, COURT STAFF) (Filed on 5/3/2022)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 05/03/2022)** |
| 05/03/2022 | | Set/Reset Hearing - Motion Hearing set for 6/3/2022 vacated per order at docket 147 . (dts, COURT STAFF) (Filed on 5/3/2022) (Entered: 05/03/2022) |
| 05/07/2022 | 148 | MOTION for Leave to File *Supplemental and/or Revised Opposition to Motion to Intervene* filed by David A. Stebbins. (Stebbins, David) (Filed on 5/7/2022) (Entered: 05/07/2022) |
| 05/23/2022 | 149 | OPPOSITION/RESPONSE (re 148 MOTION for Leave to File *Supplemental and/or Revised Opposition to Motion to Intervene* ) filed byAlphabet Inc., YouTube, LLC. (Mollick, Jason) (Filed on 5/23/2022) (Entered: 05/23/2022) |
| 05/25/2022 | 150 | **ORDER by Judge Jeffrey S. White Denying 148 Motion for Leave to File Supplemental and/or Revised Opposition to Motion to Intervene. (dts, COURT STAFF) (Filed on 5/25/2022)** |

# SER401

| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 05/25/2022)** |
|---|---|---|
| 06/01/2022 | 151 | REPLY (re 138 MOTION to Intervene ) filed byAlphabet Inc., YouTube, LLC. (Mollick, Jason) (Filed on 6/1/2022) (Entered: 06/01/2022) |
| 06/01/2022 | 152 | Second MOTION for Leave to File *Supplemental and/or Revised Opposition to Motion to Intervene* filed by David A. Stebbins. (Stebbins, David) (Filed on 6/1/2022) (Entered: 06/01/2022) |
| 06/06/2022 | 153 | Supplemental Brief re 138 MOTION to Intervene , 144 Opposition/Response to Motion, 152 Second MOTION for Leave to File *Supplemental and/or Revised Opposition to Motion to Intervene*, 151 Reply to Opposition/Response *Objection to Reply Evidence* filed byDavid A. Stebbins. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Related document(s) 138 , 144 , 152 , 151 ) (Stebbins, David) (Filed on 6/6/2022) (Entered: 06/06/2022) |
| 06/07/2022 | 154 | Response re 152 Second MOTION for Leave to File *Supplemental and/or Revised Opposition to Motion to Intervene*, 153 Supplemental Brief, *OBJECTION TO PLAINTIFF'S UNAUTHORIZED SURREPLY [DKT. 153] AND OPPOSITION TO MOTION FOR LEAVE TO FILE SURREPLY [DKT. 152]* byAlphabet Inc., YouTube, LLC. (Mollick, Jason) (Filed on 6/7/2022) (Entered: 06/07/2022) |
| 06/08/2022 | 155 | REPLY (re 138 MOTION to Intervene , 152 Second MOTION for Leave to File *Supplemental and/or Revised Opposition to Motion to Intervene* ) *and Reply to 153 Objection to Reply Evidence* filed byDavid A. Stebbins. (Attachments: # 1 Exhibit A) (Stebbins, David) (Filed on 6/8/2022) (Entered: 06/08/2022) |
| 06/10/2022 | 156 | Mail sent to David Stebbins returned as undeliverable re 150 Order on Motion for Leave to File. (sfb, COURT STAFF) (Filed on 6/10/2022) (Entered: 06/13/2022) |
| 06/27/2022 | 157 | NOTICE of Application for Writ by David A. Stebbins (Attachments: # 1 Supplement Petition for Writ of Mandamus and for Writs of Prohibition)(Stebbins, David) (Filed on 6/27/2022) (Entered: 06/27/2022) |
| 07/11/2022 | 158 | **ORDER GRANTING 138 MOTION TO INTERVENE, DENYING 127 MOTION FOR DEFAULT JUDGMENT, AND DISMISSING ACTION. Signed by Judge Jeffrey S. White on July 11, 2022. \*\*\*Civil Case Terminated. (dts, COURT STAFF) (Filed on 7/11/2022)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 07/11/2022)** |
| 07/11/2022 | 159 | MOTION for Leave to File *motion for reconsideration*, MOTION for Reconsideration , MOTION Leave to File Motion for Reconsideration and to Recuse *Jeffrey White* filed by David A. Stebbins. Motion Hearing set for 8/19/2022 10:00 AM in Oakland, - Telephonic Only before Judge Jeffrey S. White. Responses due by 7/25/2022. Replies due by 8/1/2022. (Stebbins, David) (Filed on 7/11/2022) (Entered: 07/11/2022) |
| 07/11/2022 | 160 | **JUDGMENT. Signed by Judge Jeffrey S. White on July 11, 2022. (dts, COURT STAFF) (Filed on 7/11/2022)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 07/11/2022)** |
| 07/12/2022 | 161 | ORDER of USCA. Petitioner has not demonstrated that this case warrants the intervention of this court by means of the extraordinary remedy of mandamus or |

# SER402

| | | |
|---|---|---|
| | | prohibition. See Bauman v. U.S. Dist. Court, 557 F.2d 650 (9th Cir. 1977). Accordingly, the petition is denied. (sfb, COURT STAFF) (Filed on 7/12/2022) (Entered: 07/13/2022) |
| 07/25/2022 | 162 | MOTION to Set Aside Judgment *Pursuant to Rule 60* filed by David A. Stebbins. Motion Hearing set for 9/2/2022 10:00 AM in Oakland, - Videoconference Only before Judge Jeffrey S. White. Responses due by 8/8/2022. Replies due by 8/15/2022. (Stebbins, David) (Filed on 7/25/2022) (Entered: 07/25/2022) |
| 07/25/2022 | 163 | CLERK'S NOTICE RESETTING MOTION HEARING. Motion for Leave to File Motion for Reconsideration and to Recuse set for 8/19/2022 09:00 AM in Oakland, Courtroom 5, 2nd Floor before Judge Jeffrey S. White. Motion for Relief of Judgment set for 9/2/2022 09:00 AM in Oakland, Courtroom 5, 2nd Floor before Judge Jeffrey S. White. (dts, COURT STAFF) (Filed on 7/25/2022) <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 07/25/2022) |
| 07/27/2022 | 164 | REPLY (re 159 MOTION for Leave to File *motion for reconsideration* MOTION for Reconsideration MOTION Leave to File Motion for Reconsideration and to Recuse *Jeffrey White* ) filed byDavid A. Stebbins. (Stebbins, David) (Filed on 7/27/2022) (Entered: 07/27/2022) |
| 07/27/2022 | 165 | MOTION for Leave to File *Supplemental Brief, and Incorporated Supplemental Brief, in Support of Dkt. 159 (Motion for Leave to File Motion for Reconsideration) and Dkt. 160 (Motion to Set Aside Judgment)* filed by David A. Stebbins. (Stebbins, David) (Filed on 7/27/2022) (Entered: 07/27/2022) |
| 08/03/2022 | 166 | OPPOSITION/RESPONSE (re 162 MOTION to Set Aside Judgment *Pursuant to Rule 60* ) filed byAlphabet Inc., YouTube, LLC. (Mollick, Jason) (Filed on 8/3/2022) (Entered: 08/03/2022) |
| 08/04/2022 | 167 | REPLY (re 159 MOTION for Leave to File *motion for reconsideration* MOTION for Reconsideration MOTION Leave to File Motion for Reconsideration and to Recuse *Jeffrey White*, 162 MOTION to Set Aside Judgment *Pursuant to Rule 60* ) filed byDavid A. Stebbins. (Stebbins, David) (Filed on 8/4/2022) (Entered: 08/04/2022) |
| 08/15/2022 | 168 | CLERK'S NOTICE VACATING 159 MOTION HEARING. (dts, COURT STAFF) (Filed on 8/15/2022) <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 08/15/2022) |
| 08/29/2022 | 169 | CLERK'S NOTICE VACATING 162 MOTION HEARING. (dts, COURT STAFF) (Filed on 8/29/2022) <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 08/29/2022) |
| 11/08/2022 | 170 | NOTICE by David A. Stebbins re 159 MOTION for Leave to File *motion for reconsideration* MOTION for Reconsideration MOTION Leave to File Motion for Reconsideration and to Recuse *Jeffrey White* (Stebbins, David) (Filed on 11/8/2022) (Entered: 11/08/2022) |
| 11/17/2022 | 171 | NOTICE of Change of Address by Sanjay Mohan Nangia (Nangia, Sanjay) (Filed on 11/17/2022) (Entered: 11/17/2022) |
| 12/07/2022 | 172 | NOTICE of Application for Writ by David A. Stebbins (Attachments: # 1 Appendix) (Stebbins, David) (Filed on 12/7/2022) (Entered: 12/07/2022) |
| 12/07/2022 | 173 | NOTICE by David A. Stebbins re 172 Notice of Application for Writ *Supplementary* |

| | | *Notice* (Stebbins, David) (Filed on 12/7/2022) (Entered: 12/07/2022) |
|---|---|---|
| 01/25/2023 | 174 | ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED filed by Alphabet Inc., YouTube, LLC. Responses due by 1/30/2023. (Attachments: # 1 Declaration Jason Mollick, # 2 Proposed Order)(Mollick, Jason) (Filed on 1/25/2023) (Entered: 01/25/2023) |
| 01/26/2023 | 175 | First MOTION for Extension of Time to File Response/Reply as to 174 ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED *Until 02/07/2023* filed by David A. Stebbins. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Stebbins, David) (Filed on 1/26/2023) (Entered: 01/26/2023) |
| 01/26/2023 | 176 | ORDER of USCA as to 161 USCA Order,Petitioner has not demonstrated that this case warrants the intervention of this court by means of the extraordinary remedy of mandamus or prohibition. See Bauman v. U.S. Dist. Court, 557 F.2d 650 (9th Cir. 1977). Accordingly, the petition is denied. No further filings will be accepted in this closed case. (sfb, COURT STAFF) (Filed on 1/26/2023) (Entered: 01/26/2023) |
| 01/27/2023 | 177 | **ORDER by Judge Jeffrey S. White granting 175 Motion for Extension of Time to File Response to Motion to Relate Case. Response due by 2/7/2023 at 12:00 PM PST. (kkp, COURT STAFF) (Filed on 1/27/2023) (Entered: 01/27/2023)** |
| 02/06/2023 | 178 | OPPOSITION/RESPONSE (re 174 ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED ) filed byDavid A. Stebbins. (Stebbins, David) (Filed on 2/6/2023) (Entered: 02/06/2023) |
| 02/06/2023 | 179 | MOTION for Protective Order , MOTION for Sanctions filed by David A. Stebbins. Motion Hearing set for 3/10/2023 10:00 AM in Oakland, - Videoconference Only before Judge Jeffrey S. White. Responses due by 2/21/2023. Replies due by 2/28/2023. (Attachments: # 1 Exhibit A, # 2 Proposed Order Order Granting)(Stebbins, David) (Filed on 2/6/2023) (Entered: 02/06/2023) |
| 02/09/2023 | 180 | CLERK'S NOTICE Re: 174 Administrative Motion to Consider Whether Cases Should be Related. The Court has reviewed the motion and determined that no cases are related and no reassignments shall occur. (kkp, COURT STAFF) (Filed on 2/9/2023) (Entered: 02/09/2023) |
| 02/21/2023 | 181 | OPPOSITION/RESPONSE (re 179 MOTION for Protective Order MOTION for Sanctions ) filed byAlphabet Inc., YouTube, LLC. (Mollick, Jason) (Filed on 2/21/2023) (Entered: 02/21/2023) |
| 02/27/2023 | 182 | REPLY (re 179 MOTION for Protective Order MOTION for Sanctions ) filed byDavid A. Stebbins. (Stebbins, David) (Filed on 2/27/2023) (Entered: 02/27/2023) |
| 03/02/2023 | 183 | CLERK'S NOTICE CORRECTING TIME OF HEARING. YOU ARE HEREBY NOTIFIED that JSW hears motion calendar at 9:00 AM. Hearing on 179 Motion Hearing for Protective Order is reset to 3/10/2023 at **9:00 AM** - Videoconference Only before Judge Jeffrey S. White. (kkp, COURT STAFF) (Filed on 3/2/2023) (Entered: 03/02/2023) |
| 03/02/2023 | 184 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number ACANDC-18038047.) filed by Alphabet Inc., YouTube, LLC. (Auster, Jeremy) (Filed on 3/2/2023) (Entered: 03/02/2023) |
| 03/03/2023 | 185 | CLERK'S NOTICE VACATING MOTION HEARING. YOU ARE HEREBY NOTIFIED that the hearing on the Motion for Protective Order and the Motion for Sanctions, set for March 10, 2023 at 9:00 a.m., is VACATED. The Court will issue a written decision on the papers. *(This is a text-only entry generated by the court. There is* |

| | | |
|---|---|---|
| | | *no document associated with this entry.)* (kkp, COURT STAFF) (Filed on 3/3/2023) (Entered: 03/03/2023) |
| 03/28/2023 | [186](#) | **ORDER DENYING MOTION FOR RECONSIDERATION AND RECUSAL AND DENYING MOTION FOR RELIEF FROM JUDGMENT by Judge Jeffrey S. White denying [159](#) Motion for Reconsideration and Recusal; [162](#) MOTION to Set Aside Judgment; [165](#) MOTION for Leave to File. (kkp, COURT STAFF) (Filed on 3/28/2023) (Entered: 03/28/2023)** |
| 03/28/2023 | [187](#) | **ORDER DENYING MOTION FOR PROTECTIVE ORDER by Judge Jeffrey S. White denying [179](#) Motion for Protective Order and Sanctions. (kkp, COURT STAFF) (Filed on 3/28/2023) (Entered: 03/28/2023)** |
| 04/03/2023 | [188](#) | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by David A. Stebbins. Appeal of Judgment, [160](#) (IFP Request was previously e-filed with the Court). (Attachments: # [1](#) Affidavit Application for Leave to Proceed In Forma Pauperis) (Stebbins, David) (Filed on 4/3/2023) (Entered: 04/03/2023) |
| 04/03/2023 | [189](#) | Supplemental Brief re [188](#) Notice of Appeal to the Ninth Circuit, *re-filed IFP application with signature* filed byDavid A. Stebbins. (Related document(s) [188](#) ) (Stebbins, David) (Filed on 4/3/2023) (Entered: 04/03/2023) |
| 04/10/2023 | [190](#) | USCA No. 23-15531. USCA Scheduling Order as to [188](#) Notice of Appeal to the Ninth Circuit, filed by David A. Stebbins. (sfb, COURT STAFF) (Filed on 4/10/2023) (Entered: 04/11/2023) |
| 04/21/2023 | [191](#) | **ORDER by Judge Jeffrey S. White granting [184](#) Motion for Pro Hac Vice as to Jeremy P. Auster. (kkp, COURT STAFF) (Filed on 4/21/2023) (Entered: 04/21/2023)** |
| 06/06/2023 | [192](#) | USCA REFERRAL NOTICE as to [188](#) Notice of Appeal to the Ninth Circuit, filed by David A. Stebbins (sfb, COURT STAFF) (Filed on 6/6/2023) (Entered: 06/06/2023) |
| 06/06/2023 | [193](#) | NOTICE by David A. Stebbins re [192](#) USCA Memorandum (Stebbins, David) (Filed on 6/6/2023) (Entered: 06/06/2023) |
| 06/23/2023 | [194](#) | **ORDER REGARDING IN FORMA PAUPERIS STATUS ON APPEAL AND INSTRUCTIONS TO CLERK. Signed by Judge Jeffrey S. White on 6/23/2023. (kkp, COURT STAFF) (Filed on 6/23/2023) Modified on 6/23/2023 Emailed to Court of Appeals (kkp, COURT STAFF). (Entered: 06/23/2023)** |
| 07/28/2023 | [195](#) | ORDER of USCA as to [188](#) Notice of Appeal to the Ninth Circuit, filed by David A. Stebbins (cv, COURT STAFF) (Filed on 7/28/2023) (Entered: 07/28/2023) |
| 08/30/2023 | [196](#) | NOTICE by Alphabet Inc., YouTube, LLC *WITHDRAWAL OF COUNSEL* (Mollick, Jason) (Filed on 8/30/2023) (Entered: 08/30/2023) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/12/2023 18:45:11 | | |
| **PACER Login:** | teamrpacc | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:21-cv-04184-JSW |
| **Billable Pages:** | 19 | **Cost:** | 1.90 |

**SER405**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 4. Motion and Affidavit for Permission to Proceed in Forma Pauperis

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form04instructions.pdf

**9th Cir. Case Number(s)**

**Case Name**  Stebbins v. Polano, et al

**Affidavit in support of motion:** I swear under penalty of perjury that I am financially unable to pay the docket and filing fees for my appeal. I believe my appeal has merit. I swear under penalty of perjury under United States laws that my answers on this form are true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

**Signature**                          **Date** 04/03/2023

The court may grant a motion to proceed in forma pauperis if you show that you cannot pay the filing fees **and** you have a non-frivolous legal issue on appeal. Please state your issues on appeal. (*attach additional pages if necessary*)

First, the District Court erred in dismissing with prejudice my claim for intentional infliction of emotional distress.

Second, the intervenors should not have been allowed to intervene.

Third, the District Court abused its discretion when it considered my voluntary dismissal as a factor when granting the Motion to Intervene.

Fourth, the District Court erred in finding that the April 10, 2021 livestream lacked minimal creativity.

Fifth, the District Court erred when it found that the copyright registration failed under 17 USC § 411(b).

Sixth, the District Court erred when it found that the livestream was not one of human authorship.

Seventh, the District Court committed reversible error when it found that the § 512(f) claim failed to plead sufficient facts when it previously held that it had plead sufficient facts.

Eighth, leave to amend was improperly denied.

Lastly, the District Court abused its discretion when it denied my Motion for Sanctions.

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**SER406**

1. *For both you and your spouse, estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.*

| Income Source | Average monthly amount during the past 12 months | | Amount expected next month | |
| --- | --- | --- | --- | --- |
| | You | Spouse | You | Spouse |
| Employment | $ 0.00 | $ | $ | $ |
| Self-Employment | $ 32.35 | $ | $ 30 | $ |
| Income from real property (such as rental income) | $ 0.00 | $ | $ | $ |
| Interest and Dividends | $ 0.00 | $ | $ | $ |
| Gifts | $ 0.00 | $ | $ | $ |
| Alimony | $ 0.00 | $ | $ | $ |
| Child Support | $ 0.00 | $ | $ | $ |
| Retirement (such as social security, pensions, annuities, insurance) | $ 0.00 | $ | $ | $ |
| Disability (such as social security, insurance payments) | $ 941 | $ | $ 941 | $ |
| Unemployment Payments | $ 0.00 | $ | $ | $ |
| Public-Assistance (such as welfare) | $ 73 | $ | $ 73 | $ |
| Other (specify) | $ | $ | $ | $ |
| **TOTAL MONTHLY INCOME:** | $ 1046 | $ | $ 1046 | $ |

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 4**                                   2                                   *Rev. 12/01/2018*

# SER407

2. *List your employment history for the past two years, most recent employer first.*
   *(Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of Employment | | Gross Monthly Pay |
|---|---|---|---|---|
| No employers in the past 2 years | | From | | $ |
| | | To | | |
| | | From | | $ |
| | | To | | |
| | | From | | $ |
| | | To | | |
| | | From | | $ |
| | | To | | |

3. *List your spouse's employment history for the past two years, most recent employer first.*
   *(Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of Employment | | Gross Monthly Pay |
|---|---|---|---|---|
| No spouse | | From | | $ |
| | | To | | |
| | | From | | $ |
| | | To | | |
| | | From | | $ |
| | | To | | |
| | | From | | $ |
| | | To | | |

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 4**                                    *3*                                    *Rev. 12/01/2018*

# SER408

4. *How much cash do you and your spouse have?*    $ **25**

*Below, state any money you or your spouse have in bank accounts or in any other financial institution.*

| Financial Institution | Type of Account | Amount You Have | Amount Your Spouse Has |
|---|---|---|---|
| Arvest | Checking | $ 466.90 | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

**If you are a prisoner seeking to appeal a judgment in a civil action or proceeding, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.**

5. *List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishing.*

| Home | Value | Other Real Estate | Value |
|---|---|---|---|
| No note-worthy assets | $ | | $ |

| Motor Vehicle 1: Make & Year | Model | Registration # | Value |
|---|---|---|---|
| | | | $ |
| **Motor Vehicle 2: Make & Year** | **Model** | **Registration #** | **Value** |
| | | | $ |

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 4**                    *4*                    *Rev. 12/01/2018*

**SER409**

| Other Assets | Value |
|---|---|
| | $ |
| | $ |
| | $ |

6. *State every person, business, or organization owing you or your spouse money, and the amount owed.*

| Person owing you or your spouse | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| Gary Johnson (judgment proof; no income or assets; judgment is dormant) | $ 725.00 | $ |
| | $ | $ |
| | $ | $ |

7. *State the persons who rely on you or your spouse for support. If a dependent is a minor, list only the initials and not the full name.*

| Name | Relationship | Age |
|---|---|---|
| No dependents | | |
| | | |
| | | |

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

# SER410

8. *Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.*

| | You | Spouse |
|---|---|---|
| Rent or home-mortgage payment (include lot rented for mobile home)<br>- Are real estate taxes included? ☒ Yes ○ No<br>- Is property insurance included? ☒ Yes ○ No | $ 400.00 | $ |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ 60.00 | $ |
| Home maintenance (repairs and upkeep) | $ 0.00 | $ |
| Food | $ 400 | $ |
| Clothing | $ 20 | $ |
| Laundry and dry-cleaning | $ 25 | $ |
| Medical and dental expenses | $ 0.00 | $ |
| Transportation (not including motor vehicle payments) | $ 0.00 | $ |
| Recreation, entertainment, newspapers, magazines, etc. | $ 25 | $ |
| Insurance (not deducted from wages or included in mortgage payments) | | |
| - Homeowner's or renter's | $ 0.00 | $ |
| - Life | $ 0.00 | $ |
| - Health | $ 0.00 | $ |
| - Motor Vehicle | $ 0.00 | $ |
| - Other | $ 0.00 | $ |
| Taxes (not deducted from wages or included in mortgage payments) | | |
| Specify | $ 0.00 | $ |

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 4**                    6                    *Rev. 12/01/2018*

# SER411

|  | You | Spouse |
|---|---|---|
| Installment payments |  |  |
| - Motor Vehicle | $ 0.00 | $ |
| - Credit Card (name) | $ 0.00 | $ |
| - Department Store (name) | $ 0.00 | $ |
| Alimony, maintenance, and support paid to others | $ 0.00 | $ |
| Regular expenses for the operation of business, profession, or farm (attach detailed statement) | $ 0.00 | $ |
| Other (specify) | $ 0.00 | $ |
| **TOTAL MONTHLY EXPENSES** | $ 930 | $ |

9. *Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?*   ○ Yes   ✘ No

   If Yes, describe on an attached sheet.

10. *Have you spent—or will you be spending—any money for expenses or attorney fees in connection with this lawsuit?*   ○ Yes   ✘ No

   If Yes, how much? $ _____

11. *Provide any other information that will help explain why you cannot pay the docket fees for your appeal.*

12. *State the city and state of your legal residence.*

City  Harrison        State  AR

Your daytime phone number (ex., 415-355-8000)  870-204-6516

Your age  34        Your years of schooling  ~14

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*