## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**David Stebbins**

Appellant(s),

vs.

**Karl Polano, et al**

Appellee(s).

9th Cir. Case No. **23-15531**

District Court or **4:21-cv-04184-**
BAP Case No. **JSW**

### APPELLANT'S INFORMAL REPLY BRIEF

*(attach additional sheets as necessary, up to a total of 25 pages including this form)*

**For the optional reply brief in response to appellee's answering brief(s) only.**

List each issue or argument raised in the answering brief to which you are replying. Do not repeat arguments from your opening brief or raise new arguments except in response to arguments made in the answering brief(s).

### Issue/Argument Number 1

What is the first argument in the answering brief to which you are replying?

**Whether the voluntary dismissal was absolute and should not have been allowed to have been circumvented.**

What is your reply to that argument?

**See Supplementary Reply Arguments, ¶¶ 2-11.**

## Issue/Argument Number 2

What is the second argument in the answering brief to which you are replying?

**Whether there is evidence that the District Court judge held a grudge agianst me for having issued the voluntary dismissal.**

What is your reply to that argument?

**See Supplementary Reply Arguments, ¶¶ 12-17.**

## Issue/Argument Number 3

What is the third argument in the answering brief to which you are replying?

**Whether or not the district court judge did not restyle my leave motion as a reconsider motion, but instead merely denied the leave motion.**

What is your reply to that argument?

**See Supplementary Reply Arguments, ¶¶ 18-21.**

## Issue/Argument Number 4

What is the fourth argument in the answering brief to which you are replying?

**Whether the stream was devoid of minimal creativity solely by reason of the fixation being accidental.**

What is your reply to that argument?

**See Supplementary Reply Arguments, ¶¶ 22-39.**

**Issue/Argument Number 5**

What is the   fifth    argument in the answering brief to which you are replying?

**Whether the stream was a work of human authorship, and/or whether I can plausibly allege as much.**

What is your reply to that argument?

**See Supplementary Reply Arguments, ¶¶ 40-87.**

**Issue/Argument Number 6**

What is the sixth argument in the answering brief to which you are replying?

**Whether the District Court abused its discretion in denying the motion for sanctions with no reason given.**

What is your reply to that argument?

**See Supplementary Reply Arguments, ¶¶ 88-94.**

# David Stebbins

Name

**123 W. Ridge Ave.,**

 **APT   D**

 **Harrison, AR 72601**

Address

Signature

**11/4/2023**

Date

## SUPPLEMENTAL REPLY ARGUMENTS

1.      Comes now, pro se Appellant David Stebbins, who hereby submits the following Supplemental Reply Brief in the above-styled action.

### Issue #1: The Absoluteness of the Voluntary Dismissal

2.      In response to my argument that Pedrina v. Han Kuk Chun affirms that a voluntary dismissal under Rule 41(a) is still absolute, even when it dismisses fewer than all defendants, the intervenors once again reinstate their previous (and already rebutted) argument that there is no law saying that a motion to intervene cannot be used to circumvent a partial voluntary dismissal. Therefore, in the absence of an explicit law stating it *can't* do that, it is presumed that it *can* do that.

3.      I have already rebutted this argument using logic that the Appellees have not attempted to refute: See DktEntry 10, pp. 5-6, ¶ 20. I then provided case law which unequivocally held that the dismissal is still "absolute," even when I dismissed fewer than all defendants. But the Intervenors argue that it doesn't apply because, even though it still says "absolute," apparently "absolute" doesn't apply to motions to intervene.

4.      Once again, the intervenors are arguing circular logic, as outlined in the following diagram:

### Circular Logic Diagram: Absoluteness of Voluntary Dismissal



## SUPPLEMENTAL REPLY ARGUMENTS

5.      What part of "absolute" do you not understand?! This isn't rocket science!

6.      In a desperate attempt to argue for an alternative grounds for allowing the motion to intervene to be granted, the intervenors argue that YouTube was never a party to the case in the first place, and therefore never dismissed. As such, their intervention does not conflict with the voluntary dismissal. However, there are two problems with this argument. First, it was never used by the District Court, and therefore is being raised for the first time on appeal. The only way this Court would have jurisdiction to adjudicate this issue is if it were to reverse and remand back to the District Court, have the District Court issue a revised order "granting in part" the motion to intervene on this ground, and then have that order be brought up on a second appeal.

7.      But even barring that, the other, far more glaring, issue with this argument is that it is patently and demonstrably false. YouTube, LLC is a wholly-owned subsidiary of Alphabet, Inc. They have the exact same pecuniary interest in this action (an interest which was definitively and absolutely terminated by the voluntary dismissal). YouTube LLC is represented by the exact same team of lawyers (not just the same law firm, but literally the exact same individual lawyers) who represented Alphabet Inc., and their arguments for dismissal of the action are identical in every meaningful way to the arguments raised by Alphabet Inc. in their now-stricken motion to dismiss.

8.      Therefore, allowing YouTube LLC to intervene would effectively be tantamount to allowing Alphabet Inc to rejoin the case as an intervenor in everything but name. But since the dismissal is entitled "absolute" deference, that means that literally anything that would interfere with the effects of that dismissal must be disallowed.

9.      That does not mean that nobody should ever be permitted to move for intervenor standing in any capacity in this case. But it does mean that anyone who does seek to intervene must (A) be entirely unaffiliated with Alphabet, Inc. in any way, shape, or form[1], (B) be represented by entirely different counsel than those who represented Alphabet (C), have those lawyers' fees be paid by someone other than Alphabet or their extended corporate circle, and (D) raise arguments that are entirely different from those raised in Alphabet's now-stricken motion to dismiss.

---

[1]  Not just wholly-owned subsidiaries, but also sister corporations, executives, employees, and even individual shareholders. Even those who have YouTube channels and who benefit financially from them should not be allowed to intervene because they have even the slightest interest in YouTube itself not going bankrupt.

## SUPPLEMENTAL REPLY ARGUMENTS

Anything short of that is an affront to my "absolute" right to voluntarily dismiss. Period.

10.    Again, what part of "absolute" do you not understand?

11.    Therefore, the District Court's order should be reversed.

### Issue #2: There is indeed evidence of a grudge

12.    Next, the Intervenors insist that Judge White did not admit to holding a grudge against me. They insist that Judge White simply acknowledged, in the order granting the motion to intervene, that my alleged "bad faith" favors granting leave to intervene.

13.    That's not where the admission happened. The admission occurred in Dkt. 186, not Dkt. 158. In his order denying my motion for recusal, he acknowledged that the grounds for which I was seeking recusal – holding a grudge against me for having issued the voluntary dismissal – was factually true, just that it was legally irrelevant because it came from an on record source. He insisted that recusal is only required if the bias comes from an extrajudicial source. He apparently believes that this exemption for on-record sources is just as absolute as me issuing the voluntary dismissal.

14.    Whether there was sufficient evidence, at the time the motion to recuse was filed, to justify recusal is now irrelevant. Think about it this way: Imagine if there was a criminal case where the prosecution had scant evidence of the Defendant's guilt. If the defendant were convicted just on the evidence the prosecution brought to trial, the verdict would have been overturned on appeal. But during the trial, the defendant blurted out something that constituted a confession, which got him convicted. On appeal, should the Defendant still be entitled to have his conviction overturned, simply because it wasn't based on evidence the prosecution had at the time the case was opened? Of course not.

15.    Likewise,even if I had insufficient evidence of bias at the time I filed the motion to recuse (which I disagree with), it ultimately doesn't matter because the judge gave me even more evidence to use on appeal when he tacitly admitted in his order that he did in fact hold this grudge against me, a grudge that would be worthy of recusal if not for the fact that it stemmed from an on-record source. Since on-record sources are indeed grounds for recusal if they evidence such a manifest bias

## SUPPLEMENTAL REPLY ARGUMENTS

against me as to make fair judgment impossible, that means recusal is mandatory.

16.     But even discounting the admission, there is still evidence that the judge held a grudge against me. Namely, as I pointed out in the Opening Brief (and which the appellees do not dispute), the judge made numerous rulings where he outright contradicts himself, rulings that make no sense *unless* we accept that the grudge was a factor. Examples of these rulings include, but not limited to ...

(a)     Initially finding that I had a valid copyright "as the original and sole author," despite knowing that the stream happened by complete accident, only to then change course and insist that the accidental fixation (which he already knew about) rendered the stream uncopyrightable. His justification for his sudden change in opinion was that the registration contained "inaccurate information," a fact which had nothing at all to do with the grounds upon which he found the stream to be uncopyrightable. Because his reason for changing his mind makes no sense, it is most likely pretextual.[2]

(b)     Initially finding that I had stated sufficient facts to support a claim of § 512(f) misrepresentation, only to later, after denying my leave motion (which he improperly restyled as a reconsider motion), change course and say that my alleged facts were insufficient. This time, no justification at all, not even a pretextual one, is given for his sudden and inexplicable change in position.

(c)     The disparate treatment he gives to the parties when it comes to our alleged failures to "cite to" any "authority" in support of our respective legal positions, as I explain in ¶¶ 29-32 below.

17.     This is all evidence that Judge White actually held a grudge against me because of the voluntary dismissal. Therefore, the judgment should be reversed and he should be made to recuse.

### Issue #3: Leave motion restyled as a reconsideration motion

18.     Next, the intervenors argue that the judge did not restyle my leave motion as a reconsider motion. Their entire argument stems from a line a little further down

---

2   Again, as I said in the Opening Brief, it is not a due process violation in itself for the judge to change his mind, but it is still evidence that he had an illegal/biased reason for changing his mind, just like how, if a witness at trial changes his story during cross-examination, that's not illegal per se, but the jury can still take that as a red flag that the witness is lying.

## SUPPLEMENTAL REPLY ARGUMENTS

than from the excerpt I provided. This is insufficient grounds for claiming that the judge didn't restyle the motion. After all, using a CTRL+F search, I was only able to find two instances in the judge's entire order where the phrase "leave to file" even appeared. Yet I was able to show two instances in the screenshot I provide in the opening brief where he clearly called it a reconsider motion, rather than a leave motion. There are also about a half a dozen other instances throughout the order where he clearly refers to the motion as a reconsider motion, rather than a leave motion. Why do their two instances where he says "leave to file" somehow outweigh the multitude of other instances where he clearly considers the motion to be a reconsider motion?

19.     But even barring that, I had other grounds for claiming that the judge restyled the leave motion as a reconsider motion, grounds which the intervenors make no effort to address. My primary grounds for claiming that the district judge restyled the motion was, as I explained in the opening brief, that the judge "proceeded to deny the motion based on the fact that the motion does not contain fleshed out arguments or legal citations that *weren't supposed to be there*!" See DktEntry 10 (Opening Brief), p. 16, ¶ 11.

20.     One of the most egregious instances where the judge did this came when he adjudicated my § 512(f) claim. There, he admitted that he had not adjudicated that claim, so even by the Defendants' proffered ultra-narrow grounds upon which reconsideration may be sought, reconsideration was still proper in that circumstance. Despite this, the judge simply proceeded to decide that the § 512(f) claim should be thrown out. He didn't grant me leave to file a motion for reconsideration so I could properly develop my argument; he simply adjudicated the claim right then and there.

21.     The only way his actions make any sense is if he were deciding a reconsider motion rather than a leave motion. Therefore, he necessarily restyled my leave motion as a reconsider motion. Period. Therefore, the judgment should be reversed.

### Issue #4: Minimal creativity

22.     Next, we tackle the first of two primary issues: Whether the stream had minimal creativity.

## SUPPLEMENTAL REPLY ARGUMENTS

### Confusing creativity with fixation

23.     It is telling that the intervenors make no effort to argue against my point that they were arguing a non-sequitur. As I pointed out in the opening brief, it was the fixation that was accidental, not the creative expression contained in the stream. Therefore, if the intervenors wanted to attack the copyrightability of the stream by dint if it being accidental, they should have attacked the fixation, not the creativity.

24.     There is no reason why they couldn't have attacked the fixation. Much like creativity and human authorship, fixation is just as essential for copyright protection as those two elements. If any one of those three elements are lacking, there is no copyright. So there is no good reason why they couldn't have attacked the fixation. It certainly would have made more sense if they did that, since that was the element that was *actually accidental*!

25.     Think about it this way: Imagine if a criminal defendant for murder were to plead self-defense. Going into trial, the defense attorney claims that his client acted in self-defense. But when it came time to present evidence, the defense only points out various procedural and due process errors that the police made in acquiring the incriminatory evidence. Therefore, they argue, the defendant obviously acted in self-defense.

26.     Of course, challenging the propriety of how the police acquired the evidence is an absolutely valid and nonfrivolous tactic that criminal defense lawyers routinely use to fight the charges. But it is nonetheless imperative that the defense must properly categorize their defense as a 4th Amendment challenge. Labeling this 4th Amendment challenge as a claim of self-defense, when the underlying arguments have nothing at all to do with self-defense, is only going to make the defense counsel look like an idiot.

27.     Here, that is essentially what the intervenors have done. They allege a lack of creativity (which, at least on paper, seems like a valid means of claiming that a work is uncopyrightable, just like how self-defense, on paper,  is a valid defense to murder), but the underlying facts which they assert all suggest they are challenging the fixation, not the creativity. But they haven't actually attacked the sufficiency of the fixation. They could have, but they didn't.

28.     Of course, even if they reformat their argument once this case is remanded, they would still face another hurdle, and it's the same one they face when trying to

## SUPPLEMENTAL REPLY ARGUMENTS

establish that the stream lacks creativity simply because it's accidental: They do not, and cannot, cite to any authority stating that fixation doesn't count, as a matter of law, if it happens by accident! That alone stops their case dead in its tracks. It doesn't matter how factually true something is; it doesn't matter unless there's a law that *says it matters*! Since they have not, and cannot, point to any legal authority stating, or even implying, that accidental fixation is insufficient as a matter of law, their defense must fail on the merits.

### Appellees once again fail to cite any authority stating that there is an intent requirement for copyright protection.

29.     Moving onto the arguments for the lack of creativity, the appellees are doubling down on their assertion that creating something creative by accident means that it isn't actually creative. But just like I mentioned earlier, they don't actually cite to any authority creating, or even hinting at, an intent requirement for creativity. They keep saying that such and such case is distinguishable because the creator still intended to create "something," but they ***cite to no authority*** stating that this difference actually matters as a matter of law.

(a)     They say "Plaintiff insists that he must have set up his camera or arranged his apartment furniture at some point before the video was recorded ... but he did not do any of that in connection with making the specific video that he is suing over in this case." But they ***cite to no authority*** stating that my background preparations are required to be made in connection with the specific stream I'm claiming a copyright over. Are they saying that television shows are not allowed to reuse the same sets from one episode to the next? If so, they ***cite to no authority*** stating as much.

(b)     They argue that, in a hypothetical scenario, "[t]hose mistakes are still creative elements because the author was engaged in the deliberate process of creating something." But they ***cite to no authority*** stating that "being in the deliberate process of creating something" is an essential element to being creative.

(c)     In response to my argument that my facial expressions would be creative if I were taking a selfie, they argue "When a person takes a selfie, he or she is both the subject of the image and the author, much like an artist who paints a self-portrait." But they ***cite to no authority*** stating that this is an essential

## SUPPLEMENTAL REPLY ARGUMENTS

requirement of creativity in copyright law.

(d)     They then argue that, when a person takes a selfie, "[h]is or her facial expressions form part of a series of creative choices in deliberately capturing the author's own likeness," but they ***cite to no authority*** stating that "deliberateness" or creative "choices" are legally required.

(e)     They argue that "[e]ven if [I] could prove what [I] was doing, the Accidental Livestream does not embody his hypothetical creation," but they ***cite to no authority*** stating that the finished product must resemble the author's original vision to any degree in order to be copyrightable.

(f)     They cite a footnote in Alfred Bell, where the 2ⁿᵈ Circuit Court of Appeals noted that "he has employed skill and judgment in its production." At least this time, they actually cite to some case law. But you know what that footnote doesn't say? That "employing" one's "skill and judgment" is legally indispensable to having a valid and enforceable copyright![3]

30.     Considering how often the district judge rejects my legal arguments on the grounds that I "cite to no authority" supporting my position (even when I should not be required to because the law I cite already says it is absolute), it's only fair that the intervenors' arguments should be thrown out because they "cite to no authority," themselves. This is especially true in this case, where, by the intervenors' own admission, they hold the burden of proving that the stream lacks minimal creativity under 17 USC § 410(c), and especially considering that their entire case hinges on this one, specific legal theory.

---

3   In fact, this argument in particular creates an extremely dangerous slippery slope. After all, skill, when it comes to art, is entirely subjective. If we accept that an artist must employ his "skill" in creating art, that opens the floodgates for especially malicious infringers to make the argument in court that a work is of such low artistic quality or merit (an assertion which is entirely grounded in pure opinion and personal tastes) that the so-called "artist" who created it *has no skill*, thereby creating an element to copyright protection that is entirely based on purely subjective and wholly arbitrary personal tastes. Even if that argument fails in any one case, the pure subjectivity of the argument would make it virtually impossible for an infringer not to be eligible for the "innocent infringement" defense under 17 USC § 504(c)(2); such a defense would be applicable in nearly every case, which is clearly contrary to Congressional intent. Think about how, under 17 USC § 512(f)(1), how difficult it is to prove that a copyright holder "failed to consider fair use," and you'll get the idea.

Therefore, the intervenors' proffered interpretation is not only contrary to express Congressional intent, but is downright unconstitutional under Connally v. General Constr. Co., 269 US 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law").

So clearly, this is a slippery slope that the Court should avoid at all costs.

## SUPPLEMENTAL REPLY ARGUMENTS

31.     Then again, they aren't the ones who issued a voluntary dismissal that the district judge personally did not like. As such, the District Judge personally likes the intervenors and personally dislikes me. So that alone explains the different treatment.

32.     But while that *explains* the unequal treatment, it doesn't *justify* it. As such, vacating the judgment and ordering recusal is still necessary in this case.

33.     Put simply, the intervenors are arguing something that *simply doesn't matter* as a matter of law! There is no law stating that a work is only creative if the creativity was done on purpose. Period. They just made it up. Even as a potentially novel theory of law, the appellees offer no compelling reason why the Court *should* introduce an intent requirement into copyright law that did not previously exist (or even that the Court would have the authority to do so, given that a court cannot legislate from the bench[4]). Literally their entire case for saying that the stream lacks the creativity it very clearly possesses is ... because they say so.

### Appellees now contradict themselves when they say I "didn't capture something copyrightable by happenstance," when they previously admitted that I did.

34.     At this point, the intervenors are literally just making up the rules as they go along. In previous briefings in the District Court, the appellees acknowledged that I had captured various facial expressions that, even by their own admission, would have constituted sufficient creativity to get a copyright, if the fixation hadn't been accidental. That absolutely was captured "by happenstance" by their own admission.

35.     But now, the appellees have changed their story and insisted that I *didn't* capture anything copyrightable, not even by happenstance. These two positions are not compatible with one another. They cannot both be true at the same time. One

---

4    Naruto v. Slater, 888 F. 3d 418 (9th Cir. 2018) is NOT an exception to the Court's general prohibition on legislating from the bench. At first glance, it looks like it. After all, the statute only requires a "work of authorship," but it doesn't say anything about humans. But if you actually read the case law, you find that the Court isn't actually creating a human requirement, per se. Rather, it was an issue of standing. Because the copyright holder in that case was a monkey, he lacked standing to sue. As such, it is probably more appropriate to call it a "phantom copyright." The copyright is technically *there*, but the rightsholder has no means of enforcing it, so it might as well be uncopyrightable. In 99% of cases, when a lawyer is explaining the law to his client, it is typically sufficient to simply say that only humans can have copyrights, since that is what the precedent would practically mean in most contexts. But the distinction is important in this case, because it demonstrates that Naruto v. Slater is NOT a counter-example that disproves my assertion that judges cannot legislate from the bench.

## SUPPLEMENTAL REPLY ARGUMENTS

way or another, the appellees are lying.

36.     Even discounting those faces, we also have the "strange noises" that constitute the "heart" of that accidental stream. That is absolutely "something copyrightable" that I "captured by happenstance." Therefore, that one audio clip, alone, constitutes minimal creativity.

37.     The appellees appear to argue that, because I insist I didn't personally make the noises myself, I cannot claim a copyright on those noises. But that is simply not the case. It is well-established, black-letter law that the copyright to a particular work goes to the party who captures the expression and fixes it into a tangible medium, not the party who initially makes the otherwise copyrightable expression in the first instance. For example, a news station whose anchor interviews a citizen on the street owns the copyright to that citizen's interview answers, because even though the citizen spoke the answers, the news stations' camera and microphone were what captured the answers. Alternatively, when a celebrity's photo is taken by paparazzi, the photographer owns the copyright, not the celebrity who posed for it. See Garcia v. Google, Inc., 786 F. 3d 733, 743-44 (9th Cir. 2015) (holding that the plaintiff does not own the copyright to her own words given in an interview for a documentary because "[s]he never fixed her acting performance in a tangible medium ... However one might characterize Garcia's performance, she played no role in fixation").

38.     Therefore, I still own the copyright to these "strange noises" as long as I am the one who fixed them into a tangible medium. That is, of course, an entirely different challenge (one I will begin addressing momentarily) than simply alleging that the noises are not creative or copyrightable expression in the first place, or that recording it by accident somehow strips these noises of their otherwise valid copyrightability. But for the purposes of this section of the Reply Brief, the appellees' allegation that I "didn't capture anything copyrightable by happenstance" is demonstrably false, and is disproven by their own statements.

39.     For all of these reasons and more, the District Court's judgment that the stream lacks minimal creativity should be overturned, and the case remanded for further proceedings.

### Issue #5: Human Authorship

40.     Next, the appellees double down on their insistence that the stream was not a

## SUPPLEMENTAL REPLY ARGUMENTS

result of human authorship. At least this time, it isn't a non-sequitur. At least this time, the facts the appellees allege directly correspond to the element of copyright which they are attacking. That, however, is where the appellees' triumphs in this section of the case end.

41.     First, the appellees double down and insist that the phrase "of its own accord" was meant to be taken in a literal, rather than figurative, context. But again, they offer no proof that their interpretation is correct, let alone enough proof that it justifies dismissal on the pleadings like what really happened. They keep insisting that it is true beyond doubt that my statements (which were not even based on personal knowledge to begin with, and therefore are not admissible) clearly meant that the work was not one of human authorship, but they offer no proof beyond their uncorroborated assertions. I have repeatedly said, time and time again, that statement was meant to be a figure of speech, and above all, that it was not based on personal knowledge and therefore is not admissible in any event. Despite offering precisely zero evidence to rebut this assertion, they still insist that it was literal rather than figurative.

42.     That simply is not their decision to make. The District Court *must* construe *all* factual allegations in the complaint *in a light most favorable to the Plaintiff*. This is clearly-established precedent that the appellees do not attempt to argue against. This means that the District Court has no discretion in this regard. The District Court must accept that the phrase "of its own accord" was figurative unless it is *objectively unreasonable* to interpret the phrase as anything other than literal. Since neither the appellees, nor the district court, have offered any reason why that is an objectively unreasonable interpretation of the phrase, the District Court *must* accept it as figurative at the pleading stage and offer me the chance to litigate my proffered interpretation. Since they have not done so here, I am entitled to reversal of the judgment.

      <u>Timely registration means presumption of copyright validity, which means presumption of human authorship & presumption of intent to create something.</u>

43.     In response to my argument that the statement "of its own accord" was not based on personal knowledge, and therefore is not admissible evidence under FRE 602, the intervenors argue that this just means that I "cannot allege that the video was a product of human authorship." On a similar vein, when I argue that I never admitted, on the record, that I didn't intend to make anything copyrightable, they

## SUPPLEMENTAL REPLY ARGUMENTS

also argue "he concedes that '[w]hat exactly I was doing is lost to history'—so he cannot prove it."

44.    But in both cases, the intervenors have it backwards. Because I registered the copyright for the stream within five years of the first date of publication, 17 USC § 410(c) says I have a presumption that I own a valid copyright. This means that I do not have to prove that the stream *is* the result of human authorship; they have to prove that it *isn't*.

45.    The intervenors correctly point out that "[t]he presumption of validity ... is rebuttable, not conclusive," but it nonetheless requires they *come forth with evidence*! They insist that they have done that, but the evidence they rely on is not admissible because it is not based on personal knowledge. Moving the goalposts, they now argue that this means I cannot "prove it is" a work of human authorship ***when it was never my burden to prove that in the first place!*** To the contrary, it means that my statutory presumption of copyright validity is now *reinstated*!

46.    Again, the intervenors are arguing circular logic, as outlined here:

### Circular Logic Diagram: Lack of Human Authorship



## SUPPLEMENTAL REPLY ARGUMENTS

47.    The same is true for the intervenors' allegations that I "can't prove" I was in the process of creating something copyrightable. Even if that were true (an assertion I will discuss momentarily), and even if that were a bar to copyrightability (which it is not, for reasons I have already discussed in-depth), that isn't fatal to my case; it is fatal to *their defense* because, since I never admitted that I was never in the process of creating something copyrightable, there is no "admission" (let alone an admissible one) that they can use to prove as much. Combine that with the timely registration, and that means it is presumed that I was in the process of creating something copyrightable unless they can prove I wasn't.

48.    Once again, the intervenors are arguing circular logic, as outlined in this diagram:



49.    At this point, it is clear that the intervenors are ***literally*** making up the rules as they go along. First, they insist that they have overcome my presumption of copyright validity through my own statements. When those arguments fall apart under scrutiny, they change the rules of the game and insist that I must prove that I was intending to create something copyrightable and that the stream was a work of human authorship, when they had previously conceded that it was their burden of proof, not mine. These two positions cannot both be true at the same time.

## SUPPLEMENTAL REPLY ARGUMENTS

50.     Think about it this way: Imagine if their primary defense was not a lack of valid copyright, but fair use. Imagine if they interpreted one of my statements to mean that I definitively admit that the allegedly infringing use presented no risk of market harm to my original work. After it was explained to them that I was merely attesting to a lack of personal knowledge regarding market harm, they move the goalposts and insist that this merely means that I cannot prove that the market for my original work was harmed, which means I cannot fulfill my burden of proving that the infringement isn't a fair use.

51.     Of course, that is not how it works. This Court has unequivocally held, not only that the alleged infringer always bears the burden of proof on a fair use defense, but that this is one of the few "absolute statements" when it comes to fair use. See Dr. Seuss Enterprises, LP v. COMICMIX LLC, 983 F. 3d 443, 459 (9th Cir. 2020). Therefore, the lack of probative value in my alleged statements in this hypothetical scenario is in fact fatal to *their* case, not mine.

52.     That is what we are faced with here. The fact that the intervenors' evidence is inadmissible due to lack of personal knowledge only means that my presumption of copyright validity must be reinstated, not that I cannot prove my case.

53.     It is, admittedly, ever so slightly more confusing than with the fair use example above, because fair use is unequivocally styled as an affirmative defense from the outset, no if's and's or but's, whereas copyright validity is presented, at least on paper, as an essential element that the plaintiff must affirmatively plead and then prove, but is treated as an affirmative defense in everything but name. However, aside from that nominal source of confusion, the hypocrisy the defense exhibits, and the logic I present against their hypocritical arguments, are still the same.

### § 411(b) is indeed controlling in this case.

54.     In a desperate attempt to continue to revoke my statutory presumption of copyright validity, the intervenors make the incredibly strained argument that § 411(b) is not applicable in this case, when they argue "Plaintiff is confusing the copyright preregistration requirement under Section 411 of the Copyright Act with the presumption of copyright validity."

55.     § 411(b) unequivocally requires the Court to find both (A) that the inaccurate information was made deliberately with intent to defraud, and (B) that the correct information, if disclosed in the application, would have resulted in the

## SUPPLEMENTAL REPLY ARGUMENTS

Register refusing to grant registration of the copyright. If either of those two elements are not proven, the *registration* is still valid, which in turn means that the presumption of copyright validity under § 410(c) is also still valid, assuming the registration happened within 5 years of the first date of publication, which it did int his case (a fact which the intervenors do not even nominally deny).

56.    This really isn't all that complex. If § 411(b) weren't applicable, why then would the District Court have mentioned those two requirements in his order of dismissal?! The appellees are not challenging the propriety of this portion of the district court's order, so they obviously concede that both of the elements mentioned above are required in order to invalidate a registration. Since neither have been proven, the registration (and therefore the presumption of copyright validity) is still valid. Period.

<u>I can indeed prove, by a preponderence of the evidence, that it was most likely the result of an errant keystroke, rather than a software glitch, and that I was most likely creating something copyrightable.</u>

57.    But even if we assume that I must prove that the stream was a work of human authorship, and that I was in the process of creating an intentional, copyrightable work, the intervenors' assertion that I "can't prove" either of these things is simply false.

58.    Please understand that, at this point, I am arguing facts, not law. I am playing devil's advocate and entertaining the idea that I am required to affirmatively plead and subsequently prove human authorship and intent to create something (even if the accidental stream wasn't exactly what I intended to create), and I'm working from there. Even then, I still can meet this burden; it's just that the District Court didn't give me the chance to.

59.    Think about it: What exactly am I required to prove? They cite to no authority stating that I must prove *exactly what I was attempting to do* when I created the stream by accident. So all I have to prove is that I was in the process of making "something copyrightable." For the appellees to argue otherwise is akin to arguing that a prosecuting attorney cannot prove that the defendant committed the murder in question simply because he can't prove exactly what model of gun was used. Having that evidence would certainly help the prosecution's case, but it is not *required* for a conviction to be upheld on appeal.

## SUPPLEMENTAL REPLY ARGUMENTS

60.     By that logic, shouldn't the intervenors lose their case because they can't prove "exactly" what happened either. Their best theory is that it was a software glitch, but even then, they give no specifics as to exactly what triggered the glitch. It was just "a" software glitch of some kind. According to their own logic, shouldn't the lack of any details or personal knowledge of exactly what happened mean that they can't prove that the work wasn't the product of human authorship, which, according to § 410(c), is what they are legally required to prove?

61.     Also, I am not required to prove it beyond a reasonable doubt. I am only required to prove it by a *preponderance of the evidence*. In other words, as long as it is "more likely than not" that I was in the process of creating "something copyrightable" (specifics be damned), I should prevail. It simply has to be the *most plausible* of all the explanations. As long as my theory of what happened is *more plausible* than the appellees' theory (that it was a software glitch), then I have proven by a *preponderance of the evidence* that it was the result of human authorship and that I was in the process of creating "something copyrightable."

62.     That said, how exactly do I plan to prove this if given the chance? Well, my streaming software (OBS Studio) allows me to assign "hotkeys" to various functions. That is to say, I can assign either keystrokes or combinations of keystrokes to various functions, which is often more convenient than clicking on the icons with my mouse. Think about how many of you will often prefer to simply enter CTRL+S in order to save your Word documents, rather than use the mouse to select "file" and then "save," and you'll get the idea.

63.     As you can see from the following screenshot, I currently (as of the time of writing this Reply brief) have "start/stop streaming" assigned to the hotkey of Ctrl+Shift+Num*:



## SUPPLEMENTAL REPLY ARGUMENTS

64.    "Num*'" means the asterisk key on the numeric keypad on the far right of the keyboard, not to be confused with the asterisk you can type by typing Shift+8.

65.    However, that is what I have it set to *now.* At the time the accidental livestream happened, I had the "start streaming" function assigned to the hotkey of Ctrl+Num*. I changed it after the accidental stream in order to minimize the chances of this happening again.

66.    Those last three sentences got a paragraph all to itself for a reason: I want to emphasize that the contents of that last paragraph ***are indeed based on personal knowledge!!!*** I can testify under oath during deposition to this effect if I am given my day in court!

67.    As I have been alluding to for a while now, there is a strong possibility that I was in the process of making a YouTube video (undoubtedly an intentional, copyrightable work) at the time the accidental livestream began. This is because, as you can see from the following screenshot, my video editing software (NCH VideoPad) has a feature called "show entire region," which I can activate by either clicking on the appropriate icon, or simply pressing the "Num*" hotkey:



68.    Unlike OBS Studio, the hotkeys for NCH VideoPad are predetermined and I cannot change them. Therefore, there is no personal knowledge necessary; you can verify it yourselves simply by downloading a trial version of this software and

## SUPPLEMENTAL REPLY ARGUMENTS

seeing for yourselves.

69.     Therefore, the most likely explanation is that, on that fateful day, I was in the process of creating a YouTube video (and therefore was in the process of creating an intentional, copyrightable work) when I saved my project using Ctrl+S, or maybe I was cutting, copying, or pasting something, using the hotkeys of Ctrl+X, Ctrl+C, and/or Ctrl+V. There are a lot of things I could have potentially been doing that required the use of the Ctrl key. Then, I immediately entered "Num*" in order to "show entire region." However, I was so quick with my keystrokes that I inadvertently still had the Ctrl key slightly held down when I did so.

70.     It's kind of like when you inadvertently capitalize the first *two* letters of a sentence, when you should have only capitalized the first letter, because you were typing so fast that you hadn't fully let up on the shift key with your pinkie before entering the second letter, like so:

> `THe quick brown fox jumps over the lazy dog.`

71.     You've all done that a few times in you lives, yourselves. Don't deny it. You might have corrected it before sending it out, but you've all done it at least a few times. Everyone makes typos every now and then. Literally everyone.

72.     Therefore, the most likely explanation for what happened that fateful day was that (A) I was in the process of making a YouTube video, (B) I performed some function (such as saving, cutting, copying, and/or pasting) that required the use of the Ctrl key, (C) I then went to press the Num* key, but hadn't yet unpressed the Ctrl key with my pinkie just yet (a normally harmless and easily reversible mistake) and (D) inadvertently turned the streaming software on by mistake in the process, only to not realize what I had done until over 100 minutes later.

73.     If that is what happened, then that means that (A) I was indeed in the process of creating something intentional and copyrightable, and (B) the accidental stream was indeed caused by an errant keystroke, rather than a software glitch.

74.     So the $64,000 question is this: Which is "more likely" to be what really happened? This totally plausible sequence of events that I just described, or that I experienced a one in a million software glitch that is entirely undocumented in the history of OBS Studio that nobody else has ever reported experiencing and which the software developers have no explanation for? Remember that it is preponder-

## SUPPLEMENTAL REPLY ARGUMENTS

ance of the evidence, not beyond a reasonable doubt and certainly not "absolute certainty," that is the applicable burden of proof in this case. As long as my theory represents a *simple majority* likelihood of what really happened, I am entitled to prevail, which in turn means I am entitled to my day in court to be afforded the opportunity to prove it.

75.     Even if the intervenors could present evidence (aside from my inadmissible statements) that would elevate their theory of a software glitch to being plausible, there are two problems with that possibility: First, that can only be adjudicated in the district court in discovery, meaning this Court must still overturn the District Court's judgment and remand for further proceedings. Second, it still doesn't save them, because presenting a theory about what *could have happened* is not the same thing as proving that it *is in fact what most likely happened*. In order to truly save themselves, the evidence they present must show that it is, objectively, more likely to be a software glitch than an errant keystroke. And no, my statements in the Second Amended Complaint don't count because they were figures of speech and were not based on personal knowledge.

76.     If the intervenors still think they can prove that, then bring it on. But even then, we still need to remand back to the District Court in order to properly litigate that claim.

   I only didn't bring this up in the District Court because the judge didn't let me.

77.     At this point, I know what the Court is likely thinking: Why didn't I raise this theory in the District Court when I had the chance? The answer is simple: I *didn't* have the chance!

78.     When the District Court issued its initial order dismissing the action, he denied me leave to amend, making the false finding that the deficiencies in the complaint could not be cured by amendment, even though, as I demonstrated above, there was indeed a plausible sequence of events that would have led, both to the stream being a work of human authorship and me being in the process of creating an intentional, copyrightable work.

79.     Then, when I filed my motion for leave to file a motion for reconsideration, I heavily hinted at the set of facts mentioned above, when I said the following:

        "if I were operating my video editing software, trying to create a

## SUPPLEMENTAL REPLY ARGUMENTS

video to upload to Youtube, ... this is, by far, the thing I was most likely doing at the start of the stream (which is when the errant keystroke happened), for reasons I will discuss if I am given leave to file the motion to reconsider." See Dkt. 167, ¶ 15 (filed on August 4, 2022).

80.     However, as I mentioned in the Opening Brief, the District Court abused its power when it restyled my leave motion as a procedurally improper reconsider motion, and "then proceeded to deny the motion based on the fact that the motion does not contain fleshed out arguments or legal citations that *weren't supposed to be there*!" See DktEntry: 10 (Opening Brief), p. 16, ¶ 11.

81.     So "first time on appeal" is literally the first chance I have gotten to present this set of facts for the Court to consider, not because I only just now came up with the theory (as I showed above, there is documented proof that I had this theory on the brain as far back as August 2022, if not earlier), but because the Court physically blocked me from raising it.

82.     Even in the Opening Brief, I never brought up the specific sequence of events mentioned above, only because there was no occasion for me to. I mentioned that sequence of events specifically in response to the intervenors' argument that I "can't prove" that I was in the process of creating something copyrightable. That was an argument they had never before raised, so this was the first chance I had to rebut it.

83.     In fact, I can indeed prove (albeit through my oral testimony) that I had come up with this theory even before I filed this lawsuit. As I pointed out above, not only did I change the hotkeys in OBS Studio, but I did so in order to ensure this didn't happen again, and that much is indeed based on personal knowledge. In other words, even before I filed this lawsuit, I knew this was the most likely explanation for what happened and had already taken steps to correct it! It's just that the District Court shirked its duty to construe the complaint "in a light most favorable to the Plaintiff" and instead just did what he wanted.

84.     So really, the only time I could have mentioned the theory of events mentioned above, but didn't, is during the Complaint itself. However, as I mentioned in the Opening Brief, "I regret wording the Complaint the way I did. It has certainly caused me a lot of trouble. However, I should not be forever deprived

## SUPPLEMENTAL REPLY ARGUMENTS

of my right to my day in court simply because of a couching error. 'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.' See Foman v. Davis, 371 US 178, 181-82 (1962)." See DktEntry: 10, p. 41, ¶ 116.

85.     Therefore, as I have hopefully just shown, it was reversible error for the District Court to conclude that the deficiencies in my complaint cannot be cured by amendment, and deny me leave to amend accordingly. I can indeed show a plausible – even *likely* – sequence of events by a ***preponderance of the evidence*** that does indeed leave me as the human author of the livestream and that does indeed mean that I was "engaged in the process of creating an intended work" (Dkt. 158, p. 6, lines 8-9), assuming that the latter is even a legal requirement to begin with.

86.     All because the Judge personally doesn't like me because I issued that voluntary dismissal he didn't like, so he became determined to find my case to be lacking in merit by any means necessary, and then made whatever findings he needed to - no matter how legally baseless or entirely unsupported by any evidence - to retroactively justify the decision he had already decided he wanted to make.

87.     Therefore, this Court should reverse the judgment of the District Court and remand for further proceedings with instructions that I be allowed the opportunity to test my claim on the merits.

### Issue #6: No reason was offered for denying sanctions. Therefore, it is automatically an abuse of discretion.

88.     Next, the intervenors put forth a bare minimum argument regarding the District Court's order denying motion for sanctions. The intervenors do not address the grounds I argue for reversal: That the District Court's failure to give any explanation at all for its denial is automatically an abuse of discretion. This is not merely a case-specific principle, but is generally applicable to all aspects of the law, civil and criminal, across the board. No explanation means abuse of discretion, period.

89.     Also, the intervenors make no effort to counter the argument I made that the District Court erroneously found my basis for sanctioning them to be non-existent. Not merely insufficient, but entirely non-existent. Literally, the intervenors' entire

## SUPPLEMENTAL REPLY ARGUMENTS

case for claiming that the District Court's judgment should be affirmed begins and ends with "It's frivolous because we say it is." They literally make absolutely no effort whatsoever to argue why their grounds for believing their motion had merit was nonfrivolous. They don't even try to. It's literally nonfrivolous **because they say so**.

90.     This is especially ironic in this case, since even in the motion that I sought to have sanctioned, their entire grounds for relief was because they said so. Bear in mind that the motion that I sought to have sanctioned was one where they sought to have the same judge preside over a new case, pursuant to CA N.D. Local Rule 3-12. Their entire grounds for claiming that the two cases were "related" is that both lawsuits were "frivolous," but their entire case for claiming that the lawsuits were frivolous was ... because they said so.

91.     So it is especially ironic that they are doubling down on this non-existent logic on appeal. The appeal is frivolous **because they say so**. The original lawsuit was frivolous **because they say so**. The fact that I sued them (Alphabet, Inc. in particular) is frivolous **because they say so**. The Earth is flat **because they say so**. Donald Trump is the rightful winner of the 2020 Presidential Election **because they say so**.

92.     Literally JUST "because they say so."

93.     Because they have not provided any actual *reason* for why the District Court didn't abuse its discretion (because a complete failure to give any explanation at all automatically constitutes an abuse of discretion), I am entitled to reversal of the judgment.

94.     Finally, as for the remaining two issues (the sua sponte dismissal of the IIED and § 512(f) claims), the intervenors make no effort to justify affirming these claims. Therefore, they should be reversed.

## Conclusion

95.     In conclusion, my case was wrongfully dismissed *solely* because the judge personally didn't like me. He didn't like me because I issued the voluntary dismissal he personally didn't approve of. Therefore, to punish me for issuing it, he and the intervenors created an entirely new rule, out of thin air, saying that you have to "intend to create" something in order to get a copyright, despite that having

## SUPPLEMENTAL REPLY ARGUMENTS

no basis in the law. They also maliciously twisted my words to insist that I had confessed to a lack of human authorship, when the judge had not previously interpreted those words to mean that. It was a blatant changing of the story and a blatant violation of my right to have the factual allegations in the complaint be construed in a light most favorable to me, a right which the judge apparently felt entitled to revoke from me on a whim whenever he felt like it.

96.     The District Court and intervenors are literally making up the rules as they go along. They started from the position that they wanted me to not have an enforceable copyright, by any means necessary, and they worked from there. However, their blatant efforts to tack on a non-existent intent requirement to copyright that isn't supported by anything in the law is a blatant instance of the district court legislating from the bench, and it needs to be stamped out with extreme prejudice.

97.     In addition, the district judge needs to be reminded that the voluntary dismissal is absolute. It cannot be circumscribed or worked around in any way, shape, or form, no matter how creative or imaginative the workaround may be. He also needs to be reminded that punishing me with arbitrary rulings for having issued the voluntary dismissal, even when his judgments were otherwise discretionary, as well as issuing orders without explanations, are not allowed.

98.     Wherefore, premises considered, I respectfully pray that the judgment of the district court be reversed, and for any other relief to which I may be entitled.

So requested on this, the 4th day of November, 2023.

/s/ David Stebbins
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
870-212-4947
acerthorn@yahoo.com